# EXHIBIT 25 PART B

"Exempt Transfers." Section 3.2 allows transfers by a stockholder holding in excess of 10 percent if it offers "tag along" rights to the other stockholders that are party to the Stockholders Agreement.

10. Xyience appears to argue that the proposed sale of shares should not be approved because such a sale is not an "Exempt Transfer" under Section 3.1 and is thus not permitted. This argument appears to be based on the inartful drafting of the definition of "Exempt Transfer" found in Article 9.1 of the Stockholders Agreement. That definition includes in clause (a) a transfer "pursuant to an exercise of tag-along rights as an Other Holder under Section 3.2 ..." but does not include a transfer that triggers the tag-along rights of the Other Holders under Section 3.2. Because the definition of Exempt Transfer does not explicitly include the initial transfer of securities subject to Section 3.2, but does include transfers resulting from the exercise of tag-along rights under Section 3.2, Xyience apparently argues that the initial proposed transfer that gives rise to tag-along rights is itself not an Exempt Transfer and, therefore, is not permitted.

11. Xyience's argument reads Section 3.2 out of the Stockholders Agreement, which clearly permits transfers by stockholders with large holdings so long as the tag-along provisions are enforced. It makes no sense to find that the Stockholders Agreement permits transfers occasioned by an exercise of rights under Section 3.2 while not permitting the transfers that triggered such rights in the first place. Section 9.7 of the Stockholders Agreement addresses how to resolve such an ambiguity: "Whenever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law." This provision adopts the maxim of contractual interpretation that contracts

are to be read in a manner that gives meaning to each provision. This provision adopts the maxim of contractual interpretation that contracts are to be read in a manner that gives meaning to each provision. *Eversole v. Sunrise Villas VIII Homeowners Association*, 112 Nev. 1255, 1260, 925 P.2d 505, 509 (Nev. 1996) ("Contractual provisions should be harmonized whenever possible, and construed to reach a reasonable solution.") (internal citations omitted); *Quirrion v. Sherman*, 109 Nev. 62, 65, 846 P.2d 1051, 1053 (Nev. 1993) ("It is a well established principle of contract law, however, that where two interpretations of a contract provision are possible, a court will prefer the interpretation which gives meaning to both provisions rather than an interpretation which renders one of the provisions meaningless.") citing *Royal Indemnity Co. v. Special Service Supply Co.*, 413 P.2d 500 (1966). *Phillips v. Mercer*, 94 Nev. 279, 282, 579 P.2d 174, 176 (1978) ("A court should not interpret a contract so as to make meaningless its provisions.").[2] Applying this canon of construction to the definition of Exempt Transfer in the Stockholders Agreement leads to the conclusion that any transaction that triggers Section 3.2's tag-along rights is an "Exempt Transfer."

12. It also cannot be argued that Section 3.2 is not an independent basis under which securities may be sold, but rather relates only to transfers that occur under clauses (b) through (f) of the Exempt Transfer definition. For instance, clause (d) covers distributions of Xyience shares by a corporate stockholder to its own equity holders, a transaction that obviously would not implicate tag-along rights for Xyience stockholders.

---

[2] The Stockholders Agreement contains a provision requiring that it be interpreted and enforced in accordance with Nevada law. (Ex. E, Article 9.13).

13. Moreover, Section 3.2 contains over two pages of detailed provisions which, if the Stockholders Agreement is interpreted as Xyience proposes, would provide tag-along rights in extraordinarily limited, and even inapplicable, circumstances. Therefore, Section 3.2 cannot be disregarded or rendered void by a misreading of the inartful words of clause (a) of the Exempt Transfer definition. Section 3.2 clearly creates a mechanism for Brush Monroe to sell the shares it presently wishes to sell.

14. In his motion, the Receiver requests that he be granted authority to consent to Brush Monroe's agreement to sell its note and Xyience stock to Key. As demonstrated by the distressed financial condition of Xyience and the troubled history of Xyience's current management, Brush Monroe's decision to sell its note and Xyience stock is a prudent investment decision. Moreover, no investor of AA Capital has objected to the motion. The Receiver respectfully submits that prompt Court approval of the Receiver's motion is in the best interest of the receivership.

15. The Receiver further submits that the issues raised by Xyience under the Stockholders Agreement, if they need to be resolved at all at this juncture, are legal issues that can be decided by the Court without additional proceedings.

16. Finally, if the Court is troubled by Xyience's objections, the Receiver reserves his right to discuss an alternative transaction with Key whereby Brush Monroe would only sell the promissory note to Key, not any Xyience stock, thus not implicating any rights Xyience may have under the Shareholders Agreement.

**B. Xyience should be required to post a bond or letter of credit to protect the investors from loss in the event that any further delay results in a loss of the proposed sale.**

17. The Receiver is informed that Key is ready, willing, and able to close its purchase of the interests of Brush Monroe in Xyience and to pay Brush Monroe $9,000,000 cash for those interests. Xyience's day-to-day survival, however, depends on a steady flow of new working capital which, since early December, has been provided by Darlis Invest & Trade Corp. ("Darlis"), a company that the Receiver understands is related to Key. Darlis has told the Receiver that Darlis will cease providing such financing if the Receiver's consent to Brush Monroe's sale of Xyience stock and debt to Key remains unresolved for any further period of time. Without such financing, Xyience is flat broke, and will not be able to meet the marketing and advertising payments that it must make to preserve the value of its brand. If Xyience fails, it is unlikely that anyone will pay anything close to $9,000,000 for the Xyience interests held by Brush Monroe. Based on a liquidation analysis performed by Huron Consulting, Brush Monroe would recover only a fraction of its $10 million note and nothing on its Xyience stock if Xyience were to be liquidated.

18. At the hearing on February 21, 2007, the Receiver will have a witness in Court who can testify as to the current financial condition of Xyience and the impact to Xyience if it does not receive ongoing working capital financing. The Receiver asks that he be permitted to offer such evidence to support his request that Xyience be required to post a $9,000,000 cash bond or letter of credit should there be any further delay to Brush Monroe's ability to close its transaction with Key.

19. The Court, when acting in an equitable proceeding, has the inherent power to require security to protect a party against harm that may result from delay. *See Hecht Co. v. Bowles*, 64 S.Ct. 587, 591-92 (1944) ("We are dealing here with the requirements of equity practice with a background of several hundred years of history. The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity have distinguished it."). The effect of Xyience's opposition to the Receiver's motion is to enjoin the proposed transaction without invoking Rule 65 of the Federal Rules of Civil Procedure. If Xyience sought an injunction to prevent Brush Monroe from selling its interests in Xyience, it would be required under Rule 65(c) to post security for damages that Brush Monroe and its investors might suffer should they lose the opportunity to convert a distressed investment into $9 million cash. The amount of any bond to be posted is a discretionary matter, but should "ensure that the plaintiff will be able to pay all or at least some of the damages that the defendant incurs from the preliminary injunction if it turns out to have been wrongfully issued." *Coyne-Delany C., Inc. v. Capital Development Board of State of Illinois*, 717 F.2d 385, 391 (7th Cir. 1983). Brush Monroe's damages will be at least $9,000,000 if this deal is not consummated.

WHEREFORE, the Receiver requests that the Court grant the Receiver's motion for authority to consent to the sale by Brush Monroe of certain interests it holds in Xyience.

Dated: February 16, 2007

Respectfully submitted,

W. Scott Porterfield
Receiver for AA Capital Partners, Inc.

By: s/ William J. Barrett
William J. Barrett
One of His Attorneys

William J. Barrett (06206424)
Barack Ferrazzano Kirschbaum Perlman &
Nagelberg LLP
333 West Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone (312) 984-3100
Facsimile (312) 984-3150
william.barrett@bfkpn.com

## CERTIFICATE OF SERVICE

I, William J. Barrett, an attorney, hereby certify that on this 16th day of February, 2007, I caused to be served a copy of the foregoing pursuant to ECF as to Filing Users upon the following:

**Mitchell Benjamin Goldberg**
**John Scott Monical**
**Charles J. Risch**
**Paul Michael Weltlich**
**Michael Eric Wise**
Lawrence, Kamin, Saunders & Uhlenhop
208 South LaSalle Street
Suite 1750
Chicago, IL 60604
(312) 372-1947
mgoldberg@lksu.com
jmonical@lksu.com
crisch@lksu.com
pweltlich@lksu.com
mwise@lksu.com

**Christopher Shearer**
U.S. Securities & Exchange Commission
175 West Jackson Boulevard
Suite 900
Chicago, IL 60604
(312) 353-7418
shearerc@sec.gov

**Martin J. Bishop**
**William J. McKenna**
Foley & Lardner LLP
321 N. Clark Street, Suite 2800
Chicago, IL 60610
(312) 832-4500
mbishop@foley.com
wmckenna@foley.com

**Christopher P. Legghio**
Martens, Ice, Klass, Legghio & Israel, P.C.
306 S. Washington
Suite 600
Royal Oak, MI 48067
(248) 398-5900
cpl@martensice.com

I, William J. Barrett, an attorney, hereby certify that on this 16th day of February 2007, the foregoing was mailed electronically and by United States Postal Service, first class postage prepaid, to the following non-participants in Electronic Case Filing:


**Robert MacDonald Moye**
**John J. Sikora, Jr.**
**Kent W. McAllister**
**Jason Howard**
U.S. Securities & Exchange Commission
175 West Jackson Boulevard
Suite 900
Chicago, IL 60604
(312) 353-7418
moyer@sec.gov
sikoraj@sec.gov
mcallisterk@sec.gov
howardja@sec.gov

**John I. Tesija**
Novara Tesija & McQuire, P.L.L.C.
2000 Town Center
Suite 2370
Southfield, MI 48075
(248) 354-0380
tesija@novaratesija.com

**Stephen M. Saxon**
**James V. Cole**
**Alex Ryan**
**Miller Cochran**
**Katy Van Every**
Groom Law Group, Chartered
1701 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
(202) 861-6609
sms@groom.com
jvc@groom.com
aryan@groom.com
mcochran@groom.com
kvanevery@groom.com

**Christine Z. Heri**
U.S. Department of Labor
Office of the Solicitor
230 South Dearborn Street
8th Floor
Chicago, IL 60604
(312) 353-7836
heri-christine@dol.gov

**Dana M. Johnson**
Employee Benefits Security Admin.
200 W. Adams, Suite 1600
Chicago, IL 60606
(312) 886-0536
johnson.dana@dol.gov

**John J. Bobrowski**
**Dennis Flynn**
Martens, Ice, Klass, Legghio & Israel, P.C.
306 S. Washington
Suite 600
Royal Oak, MI 48067
(248) 398-5900
bobrowski@martensice.com
drf@martensice.com

**Gerry M. Miller**
**Nathan D. Eisenberg**
Previant, Goldberg, Uelmen,
Gratz Miller & Brueggeman, S.C.
1555 N. RiverCenter Drive
Suite 202
P.O. Box 12993
Milwaukee, WI 53212
(800) 841-5232
gmm@previant.com
nde@previant.com

**Jay Thomas Youngdahl**
The Youngdahl Law Firm
1414 Friendswood Drive
Friendswood, TX 77546
(281) 996-0750
jyoungdahl@youngdahl.com

I, William J. Barrett, an attorney, hereby certify that on this 16th day of February 2007, the foregoing was mailed by United States Postal Service, first class postage prepaid, to the following non-participants in Electronic Case Filing:

Brush Monroe General Partners, LLC
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

John Orecchio
615 E. Mayfair Road
Arlington Heights, IL 60005

Charles L. Wall, Jr.
10422 Penny Court North
Frankfort, IL 60423

Matthew R. Friesl
1260 W. Washington Blvd., Unit #404
Chicago, IL 60607

Mary Beth Stevens
1136 Cordula Circle
Naperville, IL 60564

Brian O'Keefe
333 S. Belmont Ave.
Arlington Heights, IL 60005

Jennifer Pedigo
710 Pleasant Avenue
Glen Ellyn, IL 60137

Randal David Profitt
10523 Pembroke Drive
Union, KY 41091

Elizabeth Govea
5501 S. Monroe Street
Hinsdale, IL 60521

s/ William J. Barrett

through his legal and financial advisers and two senior employees of AA Capital who are also managing members of Brush Monroe, has managed and assessed the business of Brush Monroe and Xyience.

7. Together with the General Partner, the Receiver and his professionals have evaluated Brush Monroe's investment in Xyience. The Receiver concurs with the determination of the General Partner that the Xyience investment is highly distressed and that Xyience has an immediate need for additional capital and new senior management. Among other problems with the investment, the Receiver believes that a portion of the funds invested by Brush Monroe did not in fact go to Xyience.

8. The General Partner has advised the Receiver that it is in the best interest of the limited partners of Brush Monroe that Brush Monroe sell most of its investment in Xyience.

**The Proposed Sale of Brush Monroe's Investment in Xyience**

9. As proposed, Brush Monroe will sell its $10,000,000 convertible secured note and 4,831,113 of its 7,331,113 shares in Xyience to Key Management SA (the "Purchaser") for $9 million cash. In connection with the transaction and several other transactions, Xyience will acquire additional capital of more than $20 million and will obtain new executive management. Brush Monroe will retain 2,500,000 common shares in the recapitalized Xyience.

10. The Receiver has reviewed the terms of Brush Monroe's proposed sale of its Xyience investment with Huron Consulting Group, his financial advisers, with the senior employees of AA Capital who also control the General Partner, and with his legal advisers. At the Receiver's direction, Huron Consulting conducted two on-site visits of Xyience and has reviewed financial reports and projections of Xyience. Huron Consulting also prepared a

**Form Number 1**

# EXHIBIT 14

ENTERED
CLERK, U.S. DISTRICT COURT
AUG 28 2006
CENTRAL DISTRICT OF CALIFORNIA
BY NV DEPUTY

FILED
CLERK, U.S. DISTRICT COURT
AUG 25 2006
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

Priority
Send
Clsd
Enter
JS-5/JS-6
JS-2/JS-3
Scan Only

THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(d).

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROCHE GROUP,<br><br>Plaintiff,<br><br>v.<br><br>REAGAN SILBER, ~~TREVOR PEARLMAN~~, ADAM FRANK, EDGE GROUP LLC and Does 1 through 50 inclusive,<br><br>Defendants. | Case No. CV 06-01206 DDP (Ex)<br><br>**ORDER RE MOTION FOR RECONSIDERATION**<br><br>[Motion filed on July 28, 2006] |

This matter is before the Court on the plaintiff's motion for reconsideration. After reviewing the submissions of the parties, the Court grants the motion, vacates the Order Granting Motion to Dismiss for Lack of Personal Jurisdiction (filed July 17, 2006), and amends the Order Compelling Arbitration and Staying Case (filed May 4, 2006) as follows.

**I. BACKGROUND**

On March 27, 2006, defendants Reagan Silber, Adam Frank and Edge Group LLC filed a motion to compel arbitration and stay

proceedings pending arbitration.

On December 7, 2004, the Roche Group and Foch Investments, Inc. ("Foch") entered into a partnership agreement, entitled Binding Memorandum of Understanding ("MOU"), to purchase and develop land in Las Vegas, Nevada. (Compl. ¶ 3.) The ultimate goal of this partnership was to acquire property in Harmon Corridor and negotiate a deal with Starwood Hotels and Resorts Worldwide, Inc. ("Starwood") to develop the W Hotel, Casino, and Residence project. (Id. ¶¶ 1, 18.) On December 8, 2004, Brian Roche, the sole owner of Roche Group, introduced the defendants Reagan Silber and Adam Frank to the principals of Foch. (Id. ¶ 20.) Silber and Frank, along with co-defendant Trevor Pearlman, comprise the defendant Edge Group LLC ("Edge Group"). Edge Group is a corporation that was pursuing Starwood to invest in a purportedly less-desirable location than the Harmon Corridor property. (Id. ¶¶ 3, 10, 12.)

The plaintiff alleges that following the December 2004 introductions, the defendants "proceeded to interfere with the Roche Group's signed contract, take the opportunity for themselves, and caused the Roche Group's co-fiduciaries to squeeze the Roche Group out of the planned development of the [Harmon Corridor properties]." (Id. ¶ 3.) Ultimately, Edge Group and Foch entered into an agreement, acquired the Harmon Corridor property, and are now working with Starwood to develop the project.

On February 10, 2006, the plaintiff brought this action in California state court, alleging (a) intentional interference with contractual relationships; (b) intentional interference with prospective economic advantage; (c) negligent interference with prospective economic advantage; and (d) aiding and abetting breach

of fiduciary duty. The plaintiff brings all claims against all defendants. Edge Group removed the action to this Court on February 27, 2006.

Defendant Pearlman moves to dismiss the actions against him for lack of personal jurisdiction. Defendants Reagan Silber, Adam Frank and Edge Group LLC move to compel arbitration pursuant to section 8 of the MOU. The MOU memorialized an understanding with regards to a joint venture between Roche Group and Foch "[i]n connection with the proposed acquisition of land and development of a W Hotel, Casino, and Residences in a venture with Starwood Hotels and Resorts Worldwide, Inc." ("W Hotel Project"). (Hawxhurst Decl. Ex. A at 13.) The MOU stated that "Foch will make Roche an equal partner in a new entity to be formed for the purpose of consummating [the W Hotel Project]." (Id. § 1.)

The MOU also included sections stating that the MOU "shall be considered binding between the parties upon execution," and that the agreement "shall be governed by the laws of the State of California and venue for any action related to it shall be in Los Angeles, California." (Id. §§ 6-7.) The MOU contained the following arbitration clause:

> The parties agree to submit all issues related to this transaction to binding arbitration before the American Arbitration Association("AAA") in Los Angeles, California and the prevailing party shall be entitled to reasonable attorneys' fess [sic.] and costs."

(Id. § 8.) The agreement was signed by two principals of Foch and by Brian Roche, on behalf of the Roche Group. (Id. at 14.) The defendants seek to compel arbitration and to stay the proceedings pending arbitration.

II. Discussion

A. Legal Standard

The arbitrability of a dispute is controlled by application of federal substantive law. Letizia v. Prudential Bache Secs., Inc., 802 F.2d 1185, 1187 (9th Cir. 1986). The Federal Arbitration Act requires federal courts to enforce arbitration agreements and to stay any litigation that contravenes such agreements. 9 U.S.C. §§ 1-16 (2006). There is a strong policy favoring arbitration, and "any doubts regarding the scope of arbitrable issues are to be resolved in favor of arbitration." Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).

Arbitration is a matter of contract, and the Court cannot require a party to arbitrate a dispute unless the party has agreed to do so. United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960). Accordingly, the Court's role is limited to (1) determining whether a valid agreement to arbitrate exists and, if it does, (2) deciding whether the agreement encompasses the dispute at issue. 9 U.S.C. § 4; Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 719-20 (9th Cir. 1999).

B. Analysis

The issue before the Court is whether the defendants, non-signatories to the MOU, may enforce the MOU's arbitration clause. The plaintiff argues that because it did not enter into an arbitration agreement with the defendants, it should not be required to arbitrate these claims.

Although arbitration is a matter of contract, courts have held that, under certain circumstances, non-signatories to a contract with an arbitration clause may compel arbitration under an

SCANNED

equitable estoppel theory. Although the Ninth Circuit has not yet spoken on this issue, the Eleventh Circuit has articulated two circumstances in which a non-signatory may compel arbitration:

> First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate. Second, application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. Otherwise the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.

MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir. 1999) (internal citations and quotation marks omitted).

The Fifth Circuit considered a similar situation in Grigson v. Creative Artists Agency L.L.C., 210 F.3d 524, 528 (5th Cir. 2000). There, the plaintiffs brought suit against several defendants. When one of the defendants who was the signatory of an arbitration clause sought to enforce the arbitration clause, the plaintiffs dismissed that defendant. The Fifth Circuit held that the plaintiffs were equitably estopped from resisting arbitration with the other defendants who were non-signatories to the underlying agreement. The court noted that the situation met both of the scenarios outlined by the Eleventh Circuit in MS Dealer. See also Fujian Pac. Elec. Co. v. Bechtel Power Corp., 2004 WL 2645974 (N.D. Cal. 2004) (endorsing the Eleventh Circuit's two-prong analysis and requiring arbitration).

The plaintiff argues that these Eleventh and Fifth Circuit cases are not persuasive because the Ninth Circuit has ruled on this issue. (Opp'n 4-5 (citing Comer v. Micor, Inc., 436 F.3d 1098 (9th Cir. 2006)).) However, the Comer Court considered whether a signatory to an arbitration clause could compel arbitration with a non-signatory. Here, the defendants are non-signatories seeking to require the Roche Group, a signatory, to arbitrate claims. The Ninth Circuit acknowledged that there is a line a federal cases examining non-signatories seeking arbitration, but did not discuss those cases. Comer, 436 F.3d at 1101-02.

The factors supporting the application of equitable estoppel are present. The plaintiff's claims reference and rely upon the MOU and on the conduct of Foch. Most importantly, the alleged misconduct of the defendants is intertwined with conduct of Foch, an unnamed party. The plaintiff asserts that Foch and the defendants worked in concert to commit the wrongs forming the basis of the suit. (Compl. passim.) According the Complaint, Foch breached the MOU and its fiduciary duty. (Id. at 10, 12.) The defendants allegedly knew about Foch's wrongful actions and abetted Foch. (Id. at 5.) Further, the Complaint describes the defendants and Foch as "co-conspirators." (Id. at 14.) The decision by the plaintiff not to name Foch appears motivated by a desire to avoid arbitration. This is inequitable. These factors combined with the federal policy favoring arbitration weigh in favor of compelling arbitration.

///

///

///

**III. Conclusion**

Based on the foregoing, the Court grants the motion to compel and stays the case against defendants Reagan Silber, Adam Frank and Edge Group LLC, amending the Order Compelling Arbitration and Staying Case (filed May 4, 2006). Further, the Court vacates the Order Granting Motion to Dismiss Trevor Pearlman for Lack of Personal Jurisdiction (filed July 17, 2006). The plaintiff has until Friday October 20, 2006 to conduct additional jurisdictional discovery. The plaintiff may submit a supplemental opposition to the motion to dismiss for lack of personal jurisdiction by the close of business on Monday October 30, 2006. The defendant Pearlman may then submit a reply brief by the close of business on November 6, 2006. There will be a hearing on the motion to dismiss at 10:00 a.m. on November 13, 2006.

SCANNED

IT IS SO ORDERED.

Dated: 8-25-06

DEAN D. PREGERSON
United States District Judge

Priority
✓ Send
Clsd
Enter
JS-5/JS-6
JS-2/JS-3
Scan Only

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No. CV 06-01206 DDP (Ex) Dated: November 9, 2006

Title: ROCHE GROUP -v- REAGAN SILBER, TREVOR PEARLMAN, ADAM FRANK, EDGE GROUP LLC and Does 1 through 50 inclusive

PRESENT: HONORABLE DEAN D. PREGERSON, JUDGE

John A. Chambers
Courtroom Deputy

None Present
Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS: None

ATTORNEYS PRESENT FOR DEFENDANTS: None

PROCEEDINGS: MINUTE ORDER (IN CHAMBERS)

**COUNSEL ARE NOTIFIED** that on the Court's own motion the MOTION BY DEFENDANT TREVOR PEARLMAN TO DISMISS FOR LACK OF PERSONAL JURISDICTION (FILED ON 03-27-06 / DOCKET NUMBER 12) set for November 13, 2006 at 10:00 a.m., is hereby VACATED.

DOCKETED ON CM
NOV 13 2006
BY ___ 009

MINUTES FORM 11
CIVIL -- GEN

Initials of Deputy Clerk ___

01/05/2007 52 NOTICE of Change of Firm Name by Michael A Sherman attorney for Plaintiff Roche Group, changing firm's name to Alschuler Grossman LLP. Filed by plaintiff Roche Group (ak, ) (Entered: 01/11/2007)

05/11/2007 53 NOTICE of Change of Address by Michael A Sherman attorney for Plaintiff Roche Group, changing firm's name to Bingham McCutchen LLP. Filed by plaintiff (ak, ) (Entered: 05/15/2007)

**Form Number 1**

# EXHIBIT 15

# Richard E. Bergeron

43 Longhill Drive
Sandwich, MA 02537
(617) 209-4325


## Objective

To find an opportunity as a writer and photographer in an environment where I can grow and thrive.

## Qualifications

I am detail oriented and focused on the whole picture. I have a perfectionist mentality when it comes to my work, and the editors I work for always notice that and appreciate me for making their jobs easier. I have also been able to establish great connections with youth as a teacher.

## Education

1995-1996: US AIR FORCE ACADEMY, Colorado Springs, CO, no degree
1996-1999: NORWICH UNIVERSITY*, Northfield, VT, Bachelor of Arts: English
*Virginia Military Institute exchange program (Spring of 1998)

## Employment

2000-20001 DISTRICT MANAGER, THE PATRIOT LEDGER
Supervised all newspaper routes in areas across the South Shore of Massachusetts. Worked in major cities and towns to further newspaper sales, deliver routes without carriers, recruit carriers, and handle all carrier and customer issues.

2001-2002 STRINGER, THE PATRIOT LEDGER
Wrote over 50 articles on town meetings, politics, high school sports, and some features I proposed. Reported regularly for both the South and City editions of the newspaper.

2002-2004 SUBSTITUTE TEACHER, SHAKER SCHOOL DISTRICT
Instructed and managed class groups ranging from kindergarten to high school seniors.

2003-2004 SKI INSTRUCTOR, GUNSTOCK
Taught all levels of skiers, from beginning to expert. Evaluated Children's center and outreach groups with written reports.

2004-2005 STAFF WRITER, THE LACONIA CITIZEN (www.citizen.com)
Wrote about the town of Gilford and was responsible for on-the-spot news, features, and a weekly section of the paper about the town. I covered rock concerts at Meadowbrook Musical Arts Center, town meetings, powerful feature stories about kids dealing with cancer and a family battling with Wal-Mart over their insurance, a series on a major first-amendment U.S. District Court case, and even a wild goose chase about Britney Spears buying property on posh Governor's Island in Gilford, NH.

### Other Experience

I also published four articles in small magazines. Vietnam Magazine, The Antiques Review, and College Bound Magazine printed my earliest work. St. Anthony's Messenger printed my last magazine piece. I have also done freelance photography for The Boston Globe and private customers. I currently run my own Web-site at www.unlimitedfightnews.com and have been writing primarily for the on-line market for the last few years. I also do public relations work for select clients as part of the Web-site's sponsorship program.

**Form Number 1**

# EXHIBIT 16

CRIMINAL COURT MINUTES

97-C-144444-C STATE OF NEVADA vs Pike, Russell C

08/07/97 08:30 AM 00 INITIAL ARRAIGNMENT

HEARD BY: Joseph S. Pavlikowski, Senior Judge; Dept. VJ30

OFFICERS: CINDY LORY, Relief Clerk
ANGELA CAMPAGNA, Reporter/Recorder

PARTIES: STATE OF NEVADA Y
006024 Krisko, Susan R. Y

Court noted it received a letter from Mr. Creman indicating he is out of town. THEREFORE, COURT ORDERED, matter continued.

O.R.

08-21-97 8:30 AM ARRAIGNMENT CONTINUED

---

08/21/97 08:30 AM 00 ARRAIGNMENT CONTINUED

HEARD BY: Joseph S. Pavlikowski, Senior Judge; Dept. VJ30

OFFICERS: CHERYL CASE, Court Clerk
JAMES HELLESO, Reporter/Recorder

PARTIES: STATE OF NEVADA N
004902 Adams, Danae Y

0001 D1 Pike, Russell C N
002381 Cremen, Frank J. Y

Mr. Cremen advised Defendant is in Washington and requested matter be continued. COURT SO ORDERED.

O.R.

CONTINUED TO: 08/27/97 08:30 AM 01

CRIMINAL COURT MINUTES

97-C-144444-C STATE OF NEVADA vs Pike, Russell C

CONTINUED FROM PAGE: 001

08/27/97 08:30 AM 01 ARRAIGNMENT CONTINUED

HEARD BY: Joseph T. Bonaventure, Judge; Dept. 6

OFFICERS: CINDY LORY, Relief Clerk
ROBERT MINTUN, Reporter/Recorder

| | | | |
|---|---|---|---|
| PARTIES: | | STATE OF NEVADA | Y |
| | 003649 | Kephart, William D. | Y |
| | 0001 D1 | Pike, Russell C | Y |
| | 002381 | Cremen, Frank J. | Y |

Mr. Kephart stated defendant has two cases and an amended information will be filed in both. He requested matter continued to file amended informations. COURT SO ORDERED.

O.R.

09-11-97 8:30 AM FILING OF AMENDED INFORMATION

NTINUED TO: 09/11/97 08:30 AM 02

---

09/11/97 08:30 AM 00 ALL PENDING MOTIONS 9-11-97

HEARD BY: Joseph S. Pavlikowski, Senior Judge; Dept. VJ30

OFFICERS: CINDY LORY/cc, Relief Clerk
JAMES HELLESO, Reporter/Recorder

| | | | |
|---|---|---|---|
| PARTIES: | | STATE OF NEVADA | N |
| | 004902 | Adams, Danae | Y |
| | 0001 D1 | Pike, Russell C | N |
| | 002381 | Cremen, Frank J. | Y |

ARRAIGNMENT CONTINUED...FILING OF AMENDED INFORMATION

Mr. Crement stated Defendant's presence was waived at the last Court date. AMENDED INFORMATION FILED IN OPEN COURT. Mr. Cremen entered a not guilty plea on behalf of Defendant PIKE and stated he will file a written acknowledgment stating he waives the 60 day rule. COURT ORDERED, matter set for trial.

O.R.

6/18/98 8:30 AM CALENDAR CALL

6/22/98 9:00 AM JURY TRIAL

CONTINUED ON PAGE: 003

CRIMINAL COURT MINUTES

97-C-144444-C STATE OF NEVADA vs Pike, Russell C

CONTINUED FROM PAGE: 002

06/18/98 08:30 AM 00 CALENDAR CALL

HEARD BY: Joseph S. Pavlikowski, Senior Judge; Dept. VJ30

OFFICERS: LINDA SKINNER, Court Clerk
JANICE HAMPTON/JMH, Relief Clerk
JAMES HELLESO, Reporter/Recorder

PARTIES: STATE OF NEVADA Y

0001 D1 Pike, Russell C N
004612 Gaudet, Paul M. Y

Phil Brown, DDA, represented the State. Mr. Gaudet appearing for Mr. Cremen, requested a continuance. COURT ORDERED, trial date VACATED AND RESET.

O.R.

5-6-99 8:30 AM CALENDAR CALL

5-10-99 9:00 AM JURY TRIAL

---

05/04/99 08:30 AM 00 STATE'S REQUEST NEGOTIATIONS

HEARD BY: Joseph S. Pavlikowski, Senior Judge; Dept. VJ30

OFFICERS: LINDA SKINNER, Court Clerk
JAMES HELLESO, Reporter/Recorder

PARTIES: STATE OF NEVADA Y
003813 Silver, Abbi Y

0001 D1 Pike, Russell C N
002381 Cremen, Frank J. Y

Mr. Cremen advised this matter was set for calendar call on 5/6 and does not know anything about this. Ms. Silver advised this matter was supposed to be for the filing of the witness list and expert witness. However, as this will not be going to trial, she would like to file an Amended Information. There being no objection, Court so GRANTED. Mr. Cremen requested trial date be vacated and reset. COURT SO ORDERED and directed Mr. Cremen to file a written acknowledgment.

O.R.

12/9/99 8:30 AM CALENDAR CALL

12/13/99 9:00 AM JURY TRIAL

CONTINUED ON PAGE: 004

CRIMINAL COURT MINUTES

97-C-144444-C STATE OF NEVADA vs Pike, Russell C

CONTINUED FROM PAGE: 003

12/09/99 09:00 AM 00 CALENDAR CALL

HEARD BY: Mark Gibbons, Chief Judge

OFFICERS: AMBER FARLEY, Court Clerk
RENEE SILVAGGIO, Reporter/Recorder

| | | | |
|---|---|---|---|
| PARTIES: | | STATE OF NEVADA | Y |
| | 006056 | Bauer, Elizabeth B. | Y |

Ms. McDonald informed the Court the State will not be proceeding. COURT ORDERED, CASE DISMISSED; trial date VACATED.

CASE CLOSED

STAD 10/8/07

ORIGINAL

FILED IN OPEN COURT
May 4 1999
SHIRLEY B. PARRAGUIRRE, CLERK
BY Linda Skinner
LINDA SKINNER DEPUTY

AINF
STEWART L. BELL
DISTRICT ATTORNEY
Nevada Bar #000477
200 S. Third Street
Las Vegas, Nevada 89155
(702) 455-4711
Attorney for Plaintiff

DISTRICT COURT
CLARK COUNTY, NEVADA

THE STATE OF NEVADA,

Plaintiff,

-vs-

RUSSELL CRAIG PIKE,
#745583

Defendant.

Case No. C144444
Dept. No. III
Docket E

SECOND AMENDED INFORMATION

STATE OF NEVADA )
) ss:
COUNTY OF CLARK )

STEWART L. BELL, District Attorney within and for the County of Clark, State of Nevada, in the name and by the authority of the State of Nevada, informs the Court:

That RUSSELL CRAIG PIKE, the Defendant(s) above named, having committed the crime of **DRAWING AND PASSING A CHECK WITHOUT SUFFICIENT FUNDS IN DRAWEE BANK WITH INTENT TO DEFRAUD (Felony - NRS 205.130)**, on or between November 6, 1995, and January 12, 1996, within the County of Clark, State of Nevada, contrary to the form, force and effect of statutes in such cases made and provided, and against the peace and dignity of the State of Nevada,

COUNT I

did, on or about November 10, 1995, wilfully, unlawfully, and with intent to defraud, draw and pass, a check to obtain money and/or credit extended by a licensed gaming establishment, drawn upon Primerit Bank made payable to MIRCO, at 3400 Las Vegas Blvd.

South, Las Vegas, Clark County, Nevada, in the amount of $150,000.00 when the said Defendant had insufficient money, property, or credit with the drawee of the instrument to pay it in full upon its presentation.

COUNT II

did, on or about November 11, 1995, wilfully, unlawfully, and with intent to defraud, draw and pass, a check to obtain money and/or credit extended by a licensed gaming establishment, drawn upon Primerit Bank made payable to MIRCO, at 3400 Las Vegas Blvd. South, Las Vegas, Clark County, Nevada, in the amount of $100,000.00 when the said Defendant had insufficient money, property, or credit with the drawee of the instrument to pay it in full upon its presentation.

COUNT III

did, on or about November 11, 1995, wilfully, unlawfully, and with intent to defraud, draw and pass, a check to obtain money and/or credit extended by a licensed gaming establishment, drawn upon Primerit Bank made payable to MIRCO, at 3400 Las Vegas Blvd. South, Las Vegas, Clark County, Nevada, in the amount of $50,000.00 when the said Defendant had insufficient money, property, or credit with the drawee of the instrument to pay it in full upon its presentation.

COUNT IV

did, on or about January 12, 1996, wilfully, unlawfully, and with intent to defraud, draw and pass, a check to obtain CASH AND/OR CREDIT EXTENDED BY A LICENSED GAMING ESTABLISHMENT, drawn upon PRIMERIT BANK, 3300 W SAHARA AVENUE, LAS VEGAS, made payable to MGM GRAND HOTEL, 3799 LAS VEGAS BLVD. SOUTH, LAS VEGAS, Clark County, Nevada, in the amount of $50,000.00, when the said Defendant had insufficient money, property, or credit with the drawee of the instrument to pay it in full upon its presentation.

COUNT V

did, on or about November 6, 1995, wilfully, unlawfully, and with intent to defraud, draw and pass, a check to obtain CASH AND/OR CREDIT EXTENDED BY A LICENSED

GAMING ESTABLISHMENT, drawn upon PRIMERIT BANK, 3300 W SAHARA AVENUE, LAS VEGAS, made payable to MGM GRAND HOTEL, 3799 LAS VEGAS BLVD. SOUTH, LAS VEGAS, Clark County, Nevada, in the amount of $35,000.00, when the said Defendant had insufficient money, property, or credit with the drawee of the instrument to pay it in full upon its presentation.

COUNT VI

did, November 6, 1995, wilfully, unlawfully, and with intent to defraud, draw and pass, a check to obtain CASH AND/OR CREDIT EXTENDED BY A LICENSED GAMING ESTABLISHMENT, drawn upon PRIMERIT BANK, 3300 W SAHARA AVENUE, LAS VEGAS, made payable to MGM GRAND HOTEL, 3799 LAS VEGAS BLVD. SOUTH, LAS VEGAS, Clark County, Nevada, in the amount of $50,000.00, when the said Defendant had insufficient money, property, or credit with the drawee of the instrument to pay it in full upon its presentation.

STEWART L. BELL
DISTRICT ATTORNEY
Nevada Bar #000477

BY [signature]
ABBI SILVER
Chief Deputy District Attorney
Nevada Bar #003813

Names of witnesses known to the District Attorney's Office at the time of filing this Information are as follows:

| NAME | ADDRESS |
|---|---|
| BAKUTIS, BARB | NORWEST BANK PHOENIX AZ |
| BEALS, STEPHANIE | MIRAGE 3400 LVBS LV NV |
| BENNETT, SOPHIE | MGM 3799 LVBS LV NV |
| CUMMINGS, MURIEL | MIRAGE 3400 LVBS LV NV |
| CUSTODIAN OF RECORDS | NORWEST BANK PHOENIX AZ |

| | |
|---|---|
| CUSTODIAN OF RECORDS | PRIMERIT 3300 W SAHARA LV NV |
| CUSTODIAN OF RECORDS | MIRAGE 3400 LVBS LV NV |
| CUSTODIAN OF RECORDS | MGM 3799 LVBS LV NV |
| CUSTODIAN OF RECORDS | SAM'S TOWN CASINO LV NV |
| GAMMAGE, DAMITA | MGM 3799 LVBS LV NV |
| GUSKIND, DEE | MGM 3799 LVBS LV NV |
| KELLY, JAN or Designee | LVMPD |
| SMITH, JANIS or Designee | LVMPD |

DA#96F02467X/ddh
LVMPD EV#960621l330/9606050557
D&P NSF CHECKS - F
(TK3)

CLARK COUNTY, NEVADA CLERK

THE STATE OF NEVADA,

Plaintiff,

-vs-

RUSSELL CRAIG PIKE

Defendant.

District Court Case No. C144444

Justice Court Case No. 96F02467X

III E

8/7

I, hereby certify the foregoing to be a full, true and correct copy of the proceedings as the same appear in the above case.

WITNESS my hand this 28th day of JULY, 19 97.

Justice of the Peace of Las Vegas Township

CE42

JC-6 (Criminal)
Rev. 12/89

# Justice Court, Las Vegas Township

CLARK COUNTY, NEVADA

THE STATE OF NEVADA,

Plaintiff,

—vs—

RUSSELL CRAIG PIKE

Defendant.

Case No. 96F02467X

**COMMITMENT**
**and**
**ORDER TO APPEAR**

An Order having been made this day by me, that

RUSSELL CRAIG PIKE

be held to answer upon the charge of

COUNTS I THROUGH III - DRAWING AND PASSING A CHECK WITHOUT SUFFICIENT FUNDS IN DRAWEE BANK WITH INTENT TO DEFRAUD

Committed in said Township and County, on or XXXXXX BETWEEN NOVEMBER 10, 1995 AND NOVEMBER 11, 1995 ________ day of ________________, 19______

IT IS FURTHER ORDERED that the Sheriff of the County of Clark is hereby commanded to receive ________________ into custody, and detain ________________ until ________ be legally discharged, and that ________ be admitted to bail in the sum of ________________ Dollars, and be committed to the custody of the Sheriff of said County, until such bail is given; and

IT IS FURTHER ORDERED that said Defendant ________________ is/are commanded to appear in Department 3 of the Eighth Judicial District Court, Clark County Courthouse, Las Vegas, Nevada, at 8:30 AM, on the 7th day of AUGUST, 19 97, for arraignment and further proceedings on the within charge s.

DATED this 28th day of JULY, 19 97.

[signature]

Justice of the Peace of Las Vegas Township

JC-3 (Commit)
Rev. 04/86

# Justice Court, Las Vegas Township

STATE VS. PIKE, RUSSELL CRAIG CASE NO. 96F02467X

PAGE THREE

| DATE, JUDGE OFFICERS OF COURT PRESENT | APPEARANCES — HEARING | CONTINUED TO: |
|---|---|---|
| JULY 24,1997<br>K. WOOFTER FOR #3<br>S. KOCHEVAR, DA<br>F. CREMEN, ESQ &<br>D. WINTERTON, ESQ<br>R. SILVAGGIO, CR<br>M. MCCREARY, CLK | DEFENDANT PRESENT IN COURT<br>ATTY F. CREMEN SUBSTITUTES IN AS ATTORNEY OF RECORD<br>MOTION BY DEFENSE TO RECALL BENCH WARRANT - GRANTED<br>PER NEGOTIATIONS: DEFENDANT UNCONDITIONALLY WAIVES RIGHT TO PRELIMINARY HEARING<br>DEFENDANT BOUND OVER AS CHARGED TO DISTRICT COURT<br>APPEARANCE DATE SET<br>DEFENDANT AGREES TO PAY FULL RESTITUTION.<br>AMOUNT OF RESTITUTION WILL INCLUDE CASE 96F02159X.<br><br>O/R CONTINUES | 8-7-97 8:30 AM #3<br>DISTRICT COURT<br><br>mm |
| | | |
| | | |
| | | |
| | | |

# Justice Court, Las Vegas Township

STATE VS. PIKE, RUSSELL CRAIG CASE NO 96F02467X

PAGE TWO

| DATE, JUDGE OFFICERS OF COURT PRESENT | APPEARANCES — HEARING | CONTINUED TO: |
|---|---|---|
| FEBRUARY 10, 1997<br>T. ABBATANGELO<br>M. ANDRESS, DA<br>D. WINTERTON, ESQ<br>D. ANTONACCI, CR<br>M. McCREARY, CLK | TIME SET FOR PRELIMINARY HEARING<br>DEFENDANT NOT PRESENT IN COURT<br>CONTINUED BY STIPULATION OF COUNSEL<br>DEFENSE HAD BEEN IN CONTACT WITH REPRESENTATIVES FROM MIRAGE HOTEL AND TRYING TO WORK THIS MATTER OUT<br>THERE HAS BEEN NO NEGOTIATIONS OFFERED BY THE STATE AT THIS TIME<br>O/R CONTINUES | 3-28-97 8:00 #3<br>TA<br>mb |
| MARCH 28, 1997<br>T. ABBATANGELO<br>D. ADAMS, DA<br>D. ANTONACCI, CR<br>M. MCCREARY, CLK | DEFENDANT NOT PRESENT IN COURT<br>BENCH WARRANT ISSUED - 3000/3000/6000 PER COUNT | fp |
| 3-31-97 | NOTICE TO PLACE ON CALENDAR FILED | fp |
| APRIL 01, 1997<br>T. ABBATANGELO<br>K. MAXSON, DA<br>D. ANTONACCI, CR<br>M. MCCREARY, CLK | DEFT NOT PRESENT IN COURT<br>MOTION BY STATE TO CONTINUE<br>MOTION BY STATE TO QUASH BENCH WARRANT-GRANTED<br>O/R CONTINUES | 04/07/97 8:00 #3<br>2<br>TTB |
| APRIL 7, 1997<br>T. ABBATANGELO<br>K. MAXSON, DA<br>D. WINTERTON, ESQ.<br>D. ANTONACCI, CR<br>M. MCCREARY, CLK | DEFENDANT NOT PRESENT IN COURT<br>PRELIMINARY HEARING DATE RESET<br>O/R CONTINUES | 6-30-97 9:00 #3<br>R<br>fp |
| JUNE 30, 1997<br>. ABBATANGELO<br>. KEPHART, DA<br>. WINTERTON, ESQ<br>. ANTONACCI, CR<br>. BAUMAN, CLK | TIME RESET FOR PRELIMINARY HEARING<br>DEFENDANT NOT PRESENT IN COURT<br>CONTINUED BY STIPULATION OF COUNSEL<br>DEFT TO BE PRESENT OR AUTHORIZATION TO WAIVE PRELIMINARY HEARING TO BE FILED<br>O/R CONTINUES | 7-17-97 8:00 #3<br>mb |
| JULY 17, 1997<br>T. ABBATANGELO<br>B. KOCHEVAR, DA<br>________, ESQ.<br>L. SILVAGGIO, CR<br>M. BAUMAN, CLK | DEFENDANT NOT PRESENT IN COURT<br>BENCH WARRANT ISSUED-$25,000/$25,000/$50,000 PER COUNT<br>DEFENDANT TO BE BOOKED - BENCH WARRANT WILL NOT BE QUASHED | do |

JC-1 (Criminal)
Rev. 10/96

# Justice Court, Las Vegas Township

CASE NO. 96F02467X

STATE VS. PIKE, RUSSELL CRAIG

CHARGE COUNTS I, II & III - DRAWING AND PASSING A CHECK WITHOUT SUFFICIENT FUNDS IN DRAWEE BANK WITH INTENT TO DEFRAUD

BAIL

| DATE, JUDGE OFFICERS OF COURT PRESENT | APPEARANCES — HEARING | CONTINUED TO: |
|---|---|---|
| JUNE 27, 1996<br>D. SMITH for DEPT 3<br>A. CHRYSANTHIS, DA<br>M. McCREARY, CLK | DEFENDANT NOT PRESENT IN COURT<br>ACTIVATE WARRANT<br>BAIL SET $100,075.00 CASH; 1,000,750.00 SURETY - COUNT I<br>$150,075.00 CASH; 1,500,750.00 SURETY - COUNT II<br>$50,175.00 CASH; 501,750.00 SURETY - COUNT III | mb |
| 7-15-96 | O/R WALK THROUGH PER JUDGE SMITH T/A | 8-5-96 8:00AM #2 |
| AUGUST 5, 1996<br>T. LEEN for DEPT 3<br>B. RUTLEDGE, DA<br>SUROWIEC, CR<br>McCREARY, CLK | INITIAL ARRAIGNMENT<br>DEFENDANT NOT PRESENT IN COURT<br>MOTION BY STATE TO CONTINUE FOR STATUS CHECK - GRANTED<br>STATE INDICATED THIS CASE IS BEING HANDLED BY THE BAD CHECK UNIT OF THE DISTRICT ATTORNEY'S OFFICE<br>O/R CONTINUES | 8-12-96 8:00 #3<br>RE mb |
| AUGUST 12, 1996<br>T. LEEN for DEPT 3<br>K. MAXSON, DA<br>B. OLSON, ESQ<br>C. INKENBRANDT, CR<br>M. BAUMAN, CLK | CONTINUED INITIAL ARRAIGNMENT<br>DEFENDANT NOT PRESENT IN COURT<br>DEFENSE ADVISED OF CHARGES/WAIVES READING OF COMPLAINT<br>MOTION BY DEFENSE TO CONTINUE FOR POSSIBLE RESOLUTION<br>MOTION GRANTED<br>O/R CONTINUES | 10-24-96 8:00 #3<br>RE mb |
| OCTOBER 24, 1996<br>T. ABBATANGELO<br>R. LANGFORD, DA<br>D. WINTERTON, ESQ<br>C. JASPER, CR<br>M. McCREARY, CLK | DEFENDANT PRESENT IN COURT<br>MOTION BY DEFENSE TO CONTINUE - MOTION GRANTED<br>DEFENSE TO CONTACT THE STATE IN REGARDS TO RESOLUTION<br>DEFENSE HAS BEEN IN CONTACT WITH CREDITORS IN MINNESOTA<br>O/R CONTINUES | 11-22-96 8:00 #3<br>mb |
| NOVEMBER 22, 1996<br>T. ABBATANGELO<br>L. ROJAS, DA<br>D. WINTERTON, ESQ<br>ANTONACCI, CR<br>McCREARY, CLK | DEFENDANT NOT PRESENT IN COURT<br>DEFENSE STATES THERE WAS A STIPULATION WITH THE STATE<br>STATE WANTS TO GO FORWARD SINCE NO RESTITUTION HAS BEEN PAID BY DEFT<br>MOTION BY DEFENSE TO CONSOLIDATE DEFT'S OTHER CASE WITH THIS CASE - GRANTED<br>DEFENSE TO FILE MOTION ON OTHER CASE<br>DEFENSE STATES THEY FILED CHAPTER 11 IN BANKRUPTCY COURT<br>PRELIMINARY HEARING DATE SET<br>O/R CONTINUES | 2-10-97 9:00 #3<br>mb |

JUSTICE COURT, LAS VEGAS TOWNSHIP

CLARK COUNTY, NEVADA

THE STATE OF NEVADA,

Plaintiff,

-vs-

RUSSELL CRAIG PIKE, 745583

Defendant.

CASE NO. 96F02467X

CRIMINAL COMPLAINT

The Defendant above named having committed the crime of DRAWING AND PASSING A CHECK WITHOUT SUFFICIENT FUNDS IN DRAWEE BANK WITH INTENT TO DEFRAUD (Felony - NRS 205.130), in the manner following, to-wit: That the said Defendant, on or between November 10, 1995 to November 11, 1995, at and within the County of Clark, State of Nevada,

COUNT I

did wilfully, unlawfully, and with intent to defraud, draw and pass, a check to obtain money and/or credit extended by a licensed gaming establishment, drawn upon Primerit Bank made payable to MIRCO, at 3400 Las Vegas Blvd. South, Las Vegas, Clark County, Nevada, in the amount of $150,000.00 when the said Defendant had insufficient money, property, or credit with the drawee of the instrument to pay it in full upon its presentation.

COUNT II

did wilfully, unlawfully, and with intent to defraud, draw and pass, a check to obtain money and/or credit extended by a licensed gaming establishment, drawn upon Primerit Bank made payable to MIRCO, at 3400 Las Vegas Blvd. South, Las Vegas, Clark County, Nevada, in the amount of $100,000.00 when the said Defendant had insufficient money, property, or credit with the drawee of the instrument to pay it in full upon its presentation.

COUNT III

did wilfully, unlawfully, and with intent to defraud, draw and pass, a check to obtain money and/or credit extended by a licensed gaming establishment, drawn upon Primerit Bank made payable to MIRAGE, at 3400 Las Vegas Blvd. South, Las Vegas, Clark County, Nevada, in the amount of

$50,000.00 when the said Defendant had insufficient money, property, or credit with the drawee of the instrument to pay it in full upon its presentation.

All of which is contrary to the form, force and effect of Statutes in such cases made and provided and against the peace and dignity of the State of Nevada. Said Complainant makes this declaration subject to the penalty of perjury.

[signature]
06/25/96

DA#96F02467X/mld
DAO EV# 960621-1330
D & P NSF CHECKS - F
(TK3)

CLARK COUNTY DISTRICT ATTORNEY

DECLARATION OF WARRANT/SUMMONS

CASE NO. 96F02467X

WILLIAM HEIN does hereby declare under penalty of perjury that the assertions of this Declaration are true.

1. That your declarant is a duly appointed and acting Deputy District Attorney with the Clark County District Attorney's Office and is familiar with Clark County District Attorney's Bad Check Unit case number 96F02467X, concerning the alleged criminal activities of RUSSELL CRAIG PIKE. Further, your declarant is informed and believes, and thereupon alleges, that the following is a representation of facts which would give rise to a finding of probable cause herein.

2. That a person identified as RUSSELL CRAIG PIKE by means of Nevada driver's license #306153833761 did, on or between November 10, 1995 and November 11, 1995, draw and pass three (3) checks, drawn upon Primerit Bank, made payable to MIRCO and THE MIRAGE, at 3400 Las Vegas Blvd. South, Las Vegas, Clark County, Nevada, for which RUSSELL CRAIG PIKE received money and/or credit extended by a licensed gaming establishment of the stated value.

Furthermore, the checks were deposited in the normal course of business and returned unpaid. Further, a certified letter was mailed to the name and address contained on the checks notifying RUSSELL CRAIG PIKE of the returned items and demanding payment thereon. That more than 10 days have passed since the mailing of the certified letter and RUSSELL CRAIG PIKE has failed to pay the checks in full.

That the above described events occurred in Clark County, Nevada.

| CHECK NO. | AMOUNT |
|---|---|
| 136 | $150,000.00 |
| 140 | 100,000.00 |
| 10171731 | 50,000.00 |

WHEREFORE, your declarant requests that a Warrant be issued for RUSSELL CRAIG PIKE

////

////

[redacted]

for THREE (3) COUNTS of DRAWING AND PASSING A CHECK WITHOUT SUFFICIENT FUNDS IN DRAWEE BANK WITH INTENT TO DEFRAUD, a violation of NRS 205.130, a Felony.

I declare under penalty of perjury that the foregoing is true and correct.

6/24/96 — William Hehn

(Date) WILLIAM HEHN