# EXHIBIT
# 25
# PART C

JUSTICE COURT, LAS VEGAS TOWNSHIP

CLARK COUNTY, NEVADA

THE STATE OF NEVADA,

Plaintiff,

-vs-

RUSSELL CRAIG PIKE, 745583

Defendant.

CASE NO. 96F02467X

REQUEST FOR ARREST WARRANT

COMES NOW, STEWART L. BELL, DISTRICT ATTORNEY, AND REQUESTS THAT A WARRANT OF ARREST BE ISSUED FOR THE ABOVE NAMED DEFENDANT PURSUANT TO NRS 171.106 AND THE COMPLAINT AND/OR AFFIDAVIT(S) ATTACHED HERETO AND INCORPORATED HEREIN BY THIS REFERENCE.

| NO. OF COUNTS | CHARGE | BAIL: CASH | SURETY |
|---|---|---|---|
| 1 | D & P NSF CHECKS | $100,075.00 | $1,000,750.00 |
| 1 | D & P NSF CHECKS | $150,075.00 | $1,500,750.00 |
| 1 | D & P NSF CHECKS | $ 50,175.00 | $ 501,750.00 |
| | TOTAL | $300,325.00 | $3,003,250.00 |

STEWART L. BELL
DISTRICT ATTORNEY
NEVADA BAR NO. 000477

PROBABLE CAUSE FOUND: X
PROBABLE CAUSE NOT FOUND: ____

JUSTICE OF THE PEACE
LAS VEGAS TOWNSHIP

********************** R E C A L L E D **********************

*******************************************************************************
*******************************************************************************
*
* *************** NCJIS WANTED PERSON SYSTEM *************** *
* *
* PIN-0209 NCJIS WARRANT HAS BEEN SUCCESSFULLY CLEARED *
* *
* CLEARING AGENCY /NV0020135 - CLARK COUNTY DETENTION CENTER *
* ARRESTING AGENCY / *
* ENTERING AGENCY /NV0020135 - CLARK COUNTY DETENTION CENTER *
* CONFIRMING AGENCY/NV0020135 - CLARK COUNTY DETENTION CENTER *
* VALIDATING AGENCY/NV0020178 - LAS VEGAS METROPOLITAN PD *
* NIH/W007234079 *
* SEQ/002 REASON/RECALLED DATE:07/24/97 *
* TIME:16:02:39 *
* WARRANT NAME /PIKE,RUSSELL CRAIG *
* BASE RECORD NAME/PIKE,RUSSELL C *
* COURT CASE #/96F02467X *
* COURT/NV002023J - LAS VEGAS JUSTICE COURT *
*******************************************************************************
*******************************************************************************

```
************************        S E R V E D.        ************************


****************************************************************************
****************************************************************************
*                                                                          *
*       *************** NCJIS WANTED PERSON SYSTEM ***************        *
*                                                                          *
*       PIN-0209  NCJIS SUCCESSFULLY CLEARED THE LAST WARRANT              *
*                 INCLUDING THE BASE AND SUPPLEMENTAL INFORMATION          *
* CLEARING AGENCY  /NV00201C3 - CLARK COUNTY DETENTION CENTER              *
* ARRESTING AGENCY /NV0020100 - LAS VEGAS METROPOLITAN POLICE              *
* ENTERING AGENCY  /NV0020135 - CLARK COUNTY DETENTION CENTER              *
* CONFIRMING AGENCY/NV0020135 - CLARK COUNTY DETENTION CENTER              *
* VALIDATING AGENCY/NV0020178 - LAS VEGAS METROPOLITAN PD                  *
* NIN/W006063026                                      DATE:07/15/96        *
* SEQ/001          REASON/SERVED                      TIME:16:53:50        *
* WARRANT NAME     /PIKE,RUSSELL CRAIG                                     *
* BASE RECORD NAME/PIKE,RUSSELL CRAIG                                      *
* COURT CASE #/96F02467X                                                   *
* COURT/NV002023J - LAS VEGAS JUSTICE COURT                                *
****************************************************************************
****************************************************************************
```

JUSTICE COURT, LAS VEGAS TOWNSHIP
CLARK COUNTY NEVADA

| | |
|---|---|
| THE STATE OF NEVADA<br>PLAINTIFF<br>VS.<br>RUSSELL CRAIG PIKE<br>ID# 00745583<br>DEFENDANT | CASE NO: 96F02467X<br>DEPT. NO: 3<br>AGENCY: DA INVESTIGATIONS<br>**ARREST WARRANT** |

THE STATE OF NEVADA,

TO: ANY SHERIFF, CONSTABLE, MARSHALL, POLICEMAN, OR PEACE OFFICER IN THIS STATE:

A COMPLAINT AND AN AFFIDAVIT UPON OATH HAS THIS DAY BEEN LAID BEFORE ME ACCUSING RUSSELL CRAIG PIKE, OF THE CRIME(S):

| COUNTS | CHARGE | BAIL: CASH | SURETY | PROPERTY |
|---|---|---|---|---|
| 3 | NON SUFFICIENT FUNDS/C | 300,325.00 | 3,003,200.00 | |

YOU ARE, THEREFORE, COMMANDED FORTHWITH TO ARREST THE ABOVE NAMED DEFENDANT AND BRING HIM BEFORE ME AT MY OFFICE IN LAS VEGAS TOWNSHIP, COUNTY OF CLARK, STATE OF NEVADA, OR IN MY ABSENCE OR INABILITY TO ACT, BEFORE THE NEAREST AND MOST ACCESSIBLE MAGISTRATE IN THIS COUNTY.

THIS WARRANT MAY BE SERVED AT ANY HOUR OF THE DAY OR NIGHT.

GIVEN UNDER MY HAND THIS 27TH DAY OF JUNE, 1996.

D S Smith
JUSTICE OF THE PEACE IN AND FOR SAID TOWNSHIP
DOUGLAS SMITH

SHERIFF'S RETURN

I HEREBY CERTIFY THAT I RECEIVED THE ABOVE AND FOREGOING WARRANT ON THE 15TH DAY OF JULY, 1996, AND SERVED THE SAME BY ARRESTING THE WITHIN DEFENDANT, Russell Craig Pike, AND BRINGING PIKE INTO COURT THIS 15TH DAY OF JULY, 1996.

JERRY KELLER, SHERIFF, CLARK COUNTY, NEVADA

BY: S/O [illegible] 4683, DEPUTY

CC

DEFENDANT PIKE, RUSSELL CRAIG DEFENDANT ID# 00745583 ENTERED HL

CASE NO: 96F02467X DEPARTMENT JCRT3

JUDGE DOUGLAS SMITH AGENCY: DA INVESTIGATIONS

ORI VRI NAME PIKE, RUSSELL CRAIG
DOB 051361 SOC 230769168 SID
RAC W SEX M HGT 400 WGT 050 HAI BRO EYE BRO

-------------------------------WARRANT-------------------------------

HOI COI WNM PIKE, RUSSELL CRAIG
NOC 00314 AOC OFC F FTP TRF JUV DSO DOW 062796
OCA 9606211330 CCN 96F02467X BAIL 300,325.00
TRA MIS

-------------------------------SUPPLEMENTAL-------------------------------

AKA PIKE, RUSSELL

SUBMITTING OFFICER ID#: NAME:

COUNTS CHARGE
3 NON SUFFICIENT FUNDS/CHECKS

W006063026/001

NRS-551D/205.130

JAN 27 4 38 PM '95

DSD RECORDS
WARRANTS UNIT

Page 1 of 1

LAS VEGAS METROPOLITAN POLICE DEPARTMENT
# TEMPORARY CUSTODY RECORD

I.D. #: 745583 Event #: 96F02467 X

DATE OF ARREST: 7/15/96 TIME OF ARREST: 1630

I.D. ESTAB. BY: NV. D.L.

| INTAKE NAME (AKA, ALIAS, ETC.) Last / First / Middle | TRUE NAME Last / First / Middle |
|---|---|
| N/A | PIKE, RUSSELL CRAIG |

| ADDRESS # NUMBER & STREET | BLDG/APT. # | CITY | STATE | ZIP |
|---|---|---|---|---|
| 2012 PLAZA DE SANTA FE | — | LAS VEGAS | NV. | 89102 |

| DATE OF BIRTH | RACE | SEX | HEIGHT | WEIGHT | HAIR | EYES | SOCIAL SECURITY # | PLACE OF BIRTH |
|---|---|---|---|---|---|---|---|---|
| 05/13/11 | W | M | 5-11 | 175 | BRN. | BRN. | 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 | CUMBERLAND MD. |

| LOCATION OF CRIME (# - Street - City - State - Zip) | ☐ CC ☐ LV | Citizen Arrest Y (N) | LOCATION OF ARREST | PCN # |
|---|---|---|---|---|
| CCDC | | | CCDC | |

| BKG. CODE | CHARGE ORD / NRS # | M | GM | F | ARR TYPE* | EVENT NUMBER | WARR / NCIC NUMBER | COURT LV | JC | DC | OTHER |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 5510 | NRS 205.130 / NSF CHECKS | ☐ | ☐ | ☒ | WA | | 96F02467X | ☐ | ☐ | ☒ | ☐ |
| | WALKTHRU | ☐ | ☐ | ☐ | | | | ☐ | ☐ | ☐ | ☐ |
| | X [signature] | ☐ | ☐ | ☐ | | | | ☐ | ☐ | ☐ | ☐ |
| | NO MONEY TAKEN | ☐ | ☐ | ☐ | | | | ☐ | ☐ | ☐ | ☐ |
| | NO PROPERTY TAKEN | ☐ | ☐ | ☐ | | | | ☐ | ☐ | ☐ | ☐ |
| | 7/15/96 ID # 745583 P# 4948 | ☐ | ☐ | ☐ | | | | ☐ | ☐ | ☐ | ☐ |

*ARREST TYPE: PC – PROBABLE CAUSE BS – BONDSMAN SURRENDER BW – BENCH WARRANT WA – WARRANT RM – REMAND GJI – GRAND JURY IND.

OTHER COURT:

[signature] HAL EDWARDS / 4657 LVMPD
Arresting Officer's Signature (Print Name) P # Agency

– SAME –
Transporting Officer's Signature (Print Name) P # Agency

APPROVAL CONTROL # FOR ADDITIONAL CHARGES:

Time Stamp at BOOKING

☐ FOR PROBABLE CAUSE/NCIC HIT ARREST SEE PAGE TWO FOR DETAILS

☐ BENCH WARRANT SERVED ON ____

☐ WARRANT SERVED ON ____

☐ GRAND JURY INDICTMENT SERVED ON ____

TYPE OF I.D. FOR VERIFICATION ____

FIRST APPEARANCE DATE: ____ TIME: ____

COURT

☐ JUSTICE ☐ MUNICIPAL ☐ JUVENILE

☐ STANDARD BAIL ☐ O.R. RELEASE ☐ PROBABLE CAUSE ☐ I.A.D.

JUDGE: ____

PK

LVMPD 22 (REV. 9-94) (1) COURT • ORIGINAL

FB 972 797 FA4

```
***********************     R E C A L L E D     ***********************

**********************************************************************
**********************************************************************
*                                                                    *
*      *************** NCJIS WANTED PERSON SYSTEM ***************    *
*                                                                    *
*      PIN-0309  NCJIS WARRANT HAS BEEN SUCCESSFULLY CLEARED         *
*                                                                    *
* CLEARING AGENCY   /NV0020135 - CLARK COUNTY DETENTION CENTER       *
* ARRESTING AGENCY /                                                 *
* ENTERING AGENCY   /NV0020135 - CLARK COUNTY DETENTION CENTER       *
* CONFIRMING AGENCY/NV0020135 - CLARK COUNTY DETENTION CENTER        *
* VALIDATING AGENCY/NV0020178 - LAS VEGAS METROPOLITAN PD            *
* NIN/W00S872880                                  DATE:04/01/97      *
* SEQ/002          REASON/RECALLED                TIME:16:27:54      *
* WARRANT NAME     /PIKE,RUSSELL CRAIG                               *
* BASE RECORD NAME/PIKE,RUSSELL C                                    *
* COURT CASE #/96F02467X                                             *
* COURT/NV002023J - LAS VEGAS JUSTICE COURT                          *
**********************************************************************
**********************************************************************
```

ALS ZERO

# Clark County Intake Services

330 S Casino Center Blvd
(702) 455-4284 or (702) 455-3460

DOA: 7/15/96
I.D. #: 745583

Charge(s): 96F02467X
NON-SUFFICIENT FUNDS/CHECKS

## RELEASE AGREEMENT

Name: PIKE, RUSSELL CRAIG Address: Phone #

YOU ARE HEREBY RELEASED ON THE FOLLOWING CONDITIONS LISTED BELOW

☐ REPORT IN PERSON to Intake Services on ____________ (DATE) between 9 A.M. to 11 A.M. or 1 P.M. to 3 P.M.

[XXX]
1) I will report to Intake Services one-half hour prior to all court appearances and immediately after each court appearance.
2) I will notify Intake Services of any change of address or telephone number.
3) I will notify Intake Services should I have any change of employment.
4) I will notify Intake Services should I want to leave the state advising them of destination and date of return.
5) I understand that if I am arrested on any other charges it may result in revocation of this release and being held without bail, per NRS 178.487.
6) If I fail to appear when so ordered and if I am taken into custody outside of this state, I waive any rights relating to extradition proceedings.

SPECIAL CONDITIONS

☐ INTENSIVE SUPERVISION

☐ Other:

YOUR NEXT COURT APPEARANCE IS:

YOUR NEXT COURT APPEARANCE IS:

☒ JUSTICE COURT # 2
200 S Third St • Las Vegas NV 89155
(702) 455-4435
Date & Time: 8/5/96 8AM

☐ DISTRICT COURT #
200 S Third St • Las Vegas NV 89155
(702) 455-3156
Date & Time:

[signature]
Intake Services

I understand all of the above conditions.
x [signature]
Defendant

7/15/96
Date

JUDGE SMITH
Release Authorized By

JC-2 (Intake Services)
Rev. 11/95

APPROPRIATE COURTROOM ATTIRE REQUIRED
NO SHORTS, HALTER TOPS OR TANK TOPS
SHOES ARE REQUIRED

NANCY

FILED

CASE NO. 2467X

DOCKET NO. 96F

DEPT. NO. 3

MAR 31 9 46 AM '97

BY ______ DEPUTY

# Justice Court, Las Vegas Township

## CLARK COUNTY, NEVADA

THE STATE OF NEVADA,

Plaintiff,

--vs--

PIKE, RUSSELL

Defendant.

NOTICE TO PLACE ON CALENDAR

Upon the application of STEWART L. BELL, CLARK COUNTY DISTRICT ATTORNEY, it is hereby requested that the above entitled matter be placed on the arraignment calendar for the purpose of Quashing b/w and setting status check date

DATED this 28th day of March 19 97

STEWART L. BELL, District Attorney

By: ______________________

Deputy District Attorney

The above entitled matter is to be placed on the arraignment calendar on the 1st day of April 1997.

R. RUSSELL EATON, Court Administrator, Clerk

By: Nancy Bates

RECEIPT OF COPY of the above Motion is acknowledged this ______ day of ______________, 19____.

By: ______________________

Winterton/notified

. BELL
TORNEY
OURTHOUSE
O STREET
ADA 89155

DA-65

NP

AO 245B (Rev. 8/96) Sheet 1 - Judgment in a Criminal Case

RETURN TO U.S.M. NEVADA

# United States District Court

## District of Nevada

UNITED STATES OF AMERICA
v.
RUSSELL PIKE

JUDGMENT IN A CRIMINAL CASE
(For Offenses Committed On or After November 1, 1987)

Case Number: 2:97CR00155-001

Randall Pike, Retained
Defendant's Attorney

THE DEFENDANT:

X pleaded guilty to count(s) 3 of the Indictment
___ pleaded nolo contendere to count(s) ___ which was accepted by the court.
___ was found guilty on count(s) ___ after a plea of not guilty.

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 18 U.S.C. § 1957 (a) | Money Laundering | 03/16/1995 | 3 |

ENTERED AND SERVED
JUN - 7 1999
CLERK, U.S. DISTRICT COURT
DISTRICT OF NEVADA
BY ___ DEPUTY

The defendant is sentenced as provided in pages 2 through 6 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

___ The defendant has been found not guilty on count(s) ___

X Count(s) remaining ___ are dismissed on the motion of the United States.

IT IS FURTHER ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.

Defendant's Soc. Sec. No.: 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
Defendant's Date of Birth: 08/13/1961
Defendant's USM No.: 35976-048
Defendant's Residence Address:
5117 Gentle River Drive
Las Vegas NV 89130

Defendant's Mailing Address:
5117 Gentle River Drive
Las Vegas NV 89130

06/01/1999
Date of Imposition of Judgment

[signature]
Signature of Judicial Officer

LLOYD D. GEORGE
UNITED STATES DISTRICT JUDGE
Name & Title of Judicial Officer

3 June 99
Date

47
4

DEFENDANT: RUSSELL PIKE
CASE NUMBER: 2:97CR00155-001

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of 59 month(s).

X The court makes the following recommendations to the Bureau of Prisons:

When eligible, the defendant be admitted to the BOP Boot Camp Program. The Court further recommends the defendant be incarcerated in Nevada, California, or Arizona to allow for family visitation.

__ The defendant is remanded to the custody of the United States Marshal.

__ The defendant shall surrender to the United States Marshal for this district:

__ at ________ a.m./p.m. on ________.

__ as notified by the United States Marshal.

X The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

X before ~~2 p.m.~~ Noon on 07/16/1999.

__ as notified by the United States Marshal.

__ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant ~~delivered~~ V/S on 07-16-99 to FPC Nellis

at Las Vegas NV, with a certified copy of this judgment.

G.E. TRAMMEL, Warden
UNITED STATES MARSHAL

By [signature]
Deputy U.S. Marshal

DEFENDANT: RUSSELL PIKE

CASE NUMBER: 2:97CR00155-001

# CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth on Sheet 5, Part B.

| | Assessment | Fine | Restitution |
|---|---|---|---|
| Totals: | $ 100.00 | $ | $ 2,367,146.00 |

__ If applicable, restitution amount ordered pursuant to plea agreement . . . . . . . . . . . . . $ ____________

# FINE

The above fine includes costs of incarceration and/or supervision in the amount of $ ____________.

The defendant shall pay interest on any fine of more than $2,500, unless the fine is paid in full before the fifteenth day after the date of judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 5, Part B may be subject to penalties for default and delinquency pursuant to 18 U.S.C. § 3612(g).

__ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

__ The interest requirement is waived.

__ The interest requirement is modified as follows:

# RESTITUTION

__ The determination of restitution is deferred in a case brought under Chapters 109A, 110, 110A and 113A of Title 18 for offenses committed on or after 09/13/1994, until ____________. An Amended Judgment in a Criminal Case will be entered after such determination.

__ The defendant shall make restitution to the following payees in the amounts listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportional payment unless specified otherwise in the priority order or percentage payment column below.

| Name of Payee | ** Total Amount of Loss | Amount of Restitution Ordered | Priority Order or Percentage of Payment |
|---|---|---|---|
| Totals: | $ ____________ | $ ____________ | |

** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994.

KATHRYN E. LANDRETH
United States Attorney
MARGARET M. STANISH
Assistant United States Attorney
701 East Bridger Avenue
Eighth Floor
Las Vegas, Nevada 89101
(702) 388-6336

FILED
OCT 13 1998
CLERK, U.S. DISTRICT COURT
DISTRICT OF NEVADA
BY ______ DEPUTY

*UNITED STATES DISTRICT COURT*

*DISTRICT OF NEVADA*

*-oOo-*

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. RUSSELL PIKE, Defendant | CR-S-97-155-LDG(RJJ) **PLEA MEMORANDUM** |

In compliance with Rule 11(e)(2) of the Federal Rules of Criminal Procedure, the United States of America wishes to acknowledge the following agreement between the United States of America, by and through Kathryn E. Landreth, United States Attorney, and Margaret M. Stanish, Assistant United States Attorney, the defendant **RUSSELL PIKE**, and the defendant's attorney, Leslie J. Fatowe, Assistant Federal Public Defender.

I.

**PLEA NEGOTIATION**

Pursuant to plea negotiations herein, the United States and the defendant, **RUSSELL PIKE**, have mutually examined the relative merits of the above case and have agreed to resolve it as follows, subject to the approval of the Court.

1. On July 9, 1997, an indictment was filed, charging the defendant with three counts of Bank Fraud and three counts of Money Laundering in violation of Title 18, United States

33

Codes, Sections 1344 and 1957. The defendant will plead guilty to Count Three, Money Laundering.

2. This plea is made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B) and is not binding upon the Court.

GUIDELINE CALCULATIONS

3. The base offense level is seventeen (17). (U.S.S.G., § 2S1.2(a)).

4. The offense level is increased by two (2) levels because the defendant knew that the funds were criminally derived from a bank fraud. (U.S.S.G. §2S1.2(b)(1)(B)).

5. The offense level is increased by fie (5) levels because the value of the funds laundered was between $1 million and $2 million. (U.S.S.G. §§ 2S1.1(b)(2)(F) and 2S1.2(b)(2).

6. The parties agree that no other specific offence characteristics or adjustments are applicable.

ACCEPTANCE OF RESPONSIBILITY

7. The United States will not oppose the defendant's request for a three (3) level reduction of the offense level due to defendant's acceptance of responsibility for his offense, if recommended by the United States Probation Office. (U.S.S.G., § 3E1.1).

GENERAL GUIDELINE AND SENTENCING CONSIDERATIONS

8. At sentencing, the government will argue for no more than the mid-range of the applicable guideline range. Assuming that the defendant's criminal history category is IV and his offense level is 21, the guideline range would be 57 to 71 months. If his Criminal History Category is III, the guideline range would be 46 to 57 months.

9. The defendant acknowledges that the ultimate determination regarding his offense level, criminal history category, and specific sentence to be imposed will be made by the Court. The Court is not bound by the recommendation contained in a pre-sentence report to be prepared by United States Probation. It is possible that the Court may consider factors unknown or unforeseen by the parties to this Plea Memorandum when determining the offense level, criminal

history category, and specific offense characteristics. Any unanticipated enhancements in the base offense level or criminal history category will not constitute cause to withdraw this plea.

10. The parties agree that no additional promises, agreements, and conditions have been entered into other than those set forth in this document, and none will be entered into unless in writing and signed by all parties.

11. The defendant acknowledges and represents to the Court that he is satisfied that his attorney has provided effective assistance of counsel.

## ADDITIONAL CHARGES

12. The United States Attorney for the District of Nevada agrees to not bring additional charges against the defendant arising out of the investigation which culminated in this Plea Memorandum. The Plea Memorandum is limited to the United States Attorney's Office for the District of Nevada and cannot bind any other federal, state or local prosecuting, administration, or regulatory authorities.

## RESTITUTION

13. The defendant agrees to pay restitution to the Primerit Bank or its successor in interest for the full loss caused by his activities. The defendant understands that any restitution imposed by the Court may not be discharged in whole or in part in any present or future bankruptcy proceeding.

## WAIVER OF APPEAL

14. Except as provided in this paragraph, the defendant agrees to waive the right to appeal all matters pertaining to this case and any sentence, including any order of restitution, fine, term of imprisonment, or condition of supervised release or probation. The defendant, however, reserves the right to appeal an upward departure from the applicable guideline range and the application of any specific offense characteristic and adjustment not contained above in Paragraphs 3 through 5, inclusive.

II.

PENALTY

Title 18, United States Code, Sections 1957, and 3571, provide for penalties of imprisonment for not more than ten (10) years, or a fine of not more than two hundred and fifty thousand dollars ($250,000.00), or both. Pursuant to Title 18, United States Code, Section 1957(b)(2), the Court may impose an alternate fine of not more than twice the amount of the criminally derived funds involved in the transaction. The sum of money involved in the transaction was $1,540,267.07. Twice this sum is $3,080,534.14.

The defendant is required to pay for the costs of his imprisonment, probation, and supervised release, unless he establishes that he does not have the ability to pay such costs, in which case the Court may impose an alternative sanction such as community service.

The defendant must pay a special assessment of one hundred dollars ($100.00) for each count for which he is convicted.

The defendant may be subject to a term of supervised release following any period of incarceration.

III.

ELEMENTS OF THE OFFENSE

The essential elements for the crime of Money Laundering, Title 18, United States Code, Section 1957, are as follows:

First: That the defendant knowingly engaged in a monetary transaction, namely an interstate money wire transfer;

Second: The value of the funds involved in the monetary transaction exceeded $10,000;

Third: The defendant knew that the funds involved in the monetary transaction were criminally derived property;

Fourth: The funds involved in the monetary transaction were proceeds of a specific unlawful activity, namely, Bank Fraud in violation of Title 18, United States Code, Section 1344; and

Fifth: The offense took place in the United States.

IV.

FACTS TO SUPPORT A PLEA OF GUILTY

The defendant is pleading guilty because he is in fact guilty of the offense charged in Count Three of the indictment. In pleading guilty to that offense, the defendant acknowledges that if he elected to go to trial instead of entering this plea, the United States could prove facts sufficient to establish the defendant's guilt on Count Three beyond a reasonable doubt. The defendant specifically admits the following facts, and declares under penalty of perjury that these facts are true and accurate:

1. In or about January 1995, the defendant applied for a revolving line of credit on behalf of his business, Advance Cart Technology ("ACT"), from the Primerit Bank, a financial institution located in Las Vegas, Nevada, with deposits insured by the Federal Deposit Insurance Corporation. The collateral for the loan consisted of the accounts receivable, inventory, and equipment of ACT.

2. Between on or about January 31, 1995, and November 15, 1995, the defendant knowingly made false representations to the Primerit Bank regarding the financial condition of ACT. In particular, the defendant periodically submitted to the bank documentation which substantially and falsely inflated the total amount of accounts receivable due and owing to ACT. The misrepresentations were material in that the bank reasonably relied upon them in making the decisions to extend credit to the defendant

3. Relying on the misrepresentations, the Primerit Bank allowed the defendant to draw funds of over $2 million from the line of credit between March 16, 1995, and November 15, 1995.

4. On or about March 16, 1995, the defendant caused a money wire transfer of $1,340,267.07, from Primerit Bank in Las Vegas, Nevada, to the account of P.D.S. Financial Corporation in Prairie, Minnesota. These funds were the proceeds of the bank fraud described above.

5. At all relevant times, the defendant knew that the funds involved in the monetary transaction were derived from the bank fraud.

## V.

## ACKNOWLEDGMENT

The undersigned defendant, **RUSSELL PIKE**, acknowledges by his signature below that he has read this Memorandum of Plea Agreement, that he understands the terms and conditions, and the factual basis, set forth herein, that he has discussed these matters with his attorney, and that the matters set forth in this Memorandum, including those facts which support a plea of Guilty, are true and correct.

The undersigned defendant acknowledges that he has been advised, and understands, that by entering a plea of Guilty he is waiving, that is, giving up, certain rights guaranteed to him by law and by the Constitution of the United States. Specifically, he is giving up:

The right to proceed to trial by jury on the original charges, or to a trial by a judge if he and the United States both agree;

The right to confront the witnesses against him at such a trial, and to cross-examine them;

The right to remain silent at such trial, with such silence not to be used against him in any way;

The right, should he so choose, to testify in his own behalf at such a trial;

The right to compel witnesses to appear at such a trial, and to testify in his behalf; and,

The right to have the assistance of an attorney at all stages of such proceedings.

The undersigned defendant, his attorney, and the attorney for the United States acknowledge that this Memorandum of Plea Agreement is the entire agreement negotiated by and agreed to by and between the parties, and that no other promise has been made or implied by either the defendant, his attorney, or the attorney for the United States.

KATHRYN E. LANDRETH
United States Attorney

10-13-98
DATED

MARGARET M. STANISH
Assistant United States Attorney

10-13-98
DATED

RUSSELL PIKE
Defendant

10-13-98
DATED

LESLIE J FATOWE
Assistant Federal Public Defender

KATHRYN E. LANDRETH
United States Attorney
ROBERT J. SCHUIT
Assistant United States Attorney
701 E. Bridger Avenue, Suite 800
Las Vegas, Nevada 89101
(702) 388-6336

FILED
JUL - 9 1997
CLERK, U.S. DISTRICT COURT
DISTRICT OF NEVADA
BY ______ DEPUTY

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA
-oOo-

| | |
|---|---|
| UNITED STATES OF AMERICA<br>PLAINTIFF<br>VS.<br>RUSSEL PIKE,<br>DEFENDANT | CRIMINAL INDICTMENT<br>CR-S-97-155<br>VIOLATION: 18 U.S.C. § 1344 - Bank Fraud; 18 U.S.C. § 1957(a) - Money Laundering 18 U.S.C. § 2 - Aiding and Abetting |

CR-S-97-00155-LDG (RJJ)

THE GRAND JURY CHARGES THAT:

## INTRODUCTION

1. RUSSELL PIKE was the majority owner and operator of a company known as Advanced Cart Technology, located during the relevant period at 6285 C Industrial Road, Las Vegas, Nevada 89118.

2. During the period of approximately January 31, 1995 to March 7, 1995, RUSSELL PIKE, defendant herein, and others known and unknown to the Grand Jury, knowingly executed and attempted to execute a scheme and artifice to defraud, and to obtain by means of false

and fraudulent pretenses, representations, and promises, the moneys, funds, credits, and assets of PriMerit Bank, a financial institution the funds of which were then insured by the Federal Deposit Insurance Corporation, which scheme and artifice was as follows:

SCHEME AND ARTIFICE TO DEFRAUD

3. It was part of the scheme and artifice that **PIKE** knowingly misrepresented the financial status of his company, Advanced Cart Technology (A.C.T.), to Primerit bank during the period of approximately January 31, 1995 and March 7, 1995. The purpose of these misrepresentations was to receive loans and a line of credit from Primerit Bank, which Pike and A.C.T. would not have been entitled to had Primerit Bank known the actual financial condition of A.C.T., and known that defendant **PIKE** intended to use a significant portion of the borrowed money to engage in gambling activities.

4. It was further part of the scheme and artifice to defraud that **PIKE** continued to provide false and fraudulent information to Primerit Bank through approximately November 15, 1995. Primerit required regular and continuous updates on A.C.T.'s financial status to both allow the credit line loans to remain outstanding and to allow additional withdrawals against the credit line.

5. Relying on the misrepresentations, Primerit Bank loaned defendant **PIKE**, and allowed **PIKE** to draw on the line of credit, sums totalling over two million dollars during the period of approximately March 16, 1995, to November 15, 1995.

. . .

. . .

. . .

. . .

. . .

## COUNT ONE
Bank Fraud

1. The allegations set forth in the Introduction, above, are incorporated herein by reference.

2. On or about and between January 31, 1995 and March 7, 1995, in the State and Federal District of Nevada, and elsewhere,

RUSSELL PIKE

defendant herein, and others known and unknown to the Grand Jury, knowingly executed and attempted to execute a scheme and artifice to defraud, and to obtain by means of false and fraudulent pretenses, representations, and promises, the moneys, funds, credits, and assets of Primerit Bank, a financial institution the funds of which were then insured by the Federal Deposit Insurance Corporation.

3. All in violation of Title 18, United States Code, Section 1344, and Title 18 United States Code, Section 2.

## COUNT TWO
Money Laundering

1. The allegations set forth in the Introduction, above, are incorporated herein by reference.

2. On or about March 16, 1995, in the State and Federal District of Nevada, and elsewhere,

RUSSELL PIKE

defendant herein, knowingly engaged, and attempted to engage in a monatary transaction in criminally derived property with a value greater than $10,000, with said property being derived from a specified unlawful activity, to wit, Bank Fraud in violation of Title 18, United States Code,

Section 1344, said monetary transaction occurring when **RUSSELL PIKE** caused $322,245.43 to be wired from Primerit Bank to Boatman's Bank, in St. Louis, Missouri.

3. All in violation of Title 18, United States Code, Section 1957(a)

**COUNT THREE**
Money Laundering

1. The allegations set forth in the Introduction, above, are incorporated herein by reference.

2. On or about March 16, 1995, in the State and Federal District of Nevada, and elsewhere,

**RUSSELL PIKE**

defendant herein, knowingly engaged, and attempted to engage in a monetary transaction in criminally derived property with a value greater than $10,000, with said property being derived from a specified unlawful activity, to wit, Bank Fraud in violation of Title 18, United States Code, Section 1344, said monetary transaction occurring when **RUSSELL PIKE** caused $1,540,267.07 to be wired from Primerit Bank to the account of P.D.S. Financial Corporation in Prairie, Minnesota.

3. All in violation of Title 18, United States Code, Section 1957(a)

**COUNT FOUR**
Bank Fraud

1. The allegations set forth in the Introduction, above, are incorporated herein by reference.

2. On or about August 15, 1995, in the State and Federal District of Nevada, and elsewhere;

RUSSELL PIKE

defendant herein, and others known and unknown to the Grand Jury, knowingly executed and attempted to execute a scheme and artifice to defraud, and to obtain by means of false and fraudulent pretenses, representations, and promises, the moneys, funds, credits, and assets of Primerit Bank, a financial institution the funds of which were then insured by the Federal Deposit Insurance Corporation.

3. All in violation of Title 18, United States Code, Section 1344, and Title 18 United States Code, Section 2.

## COUNT FIVE
Bank Fraud

1. The allegations set forth in the Introduction, above, are incorporated herein by reference.

2. On or about September 15, 1995, in the State and Federal District of Nevada, and elsewhere,

RUSSELL PIKE

defendant herein, and others known and unknown to the Grand Jury, knowingly executed and attempted to execute a scheme and artifice to defraud, and to obtain by means of false and fraudulent pretenses, representations, and promises, the moneys, funds, credits, and assets of Primerit Bank, a financial institution the funds of which were then insured by the Federal Deposit Insurance Corporation.

3. All in violation of Title 18, United States Code, Section 1344, and Title 18 United States Code, Section 2.

. . .

. . .

. . .

. . .

**COUNT SIX**
Bank Fraud

1. The allegations set forth in the Introduction, above, are incorporated herein by reference.

2. On or about November 15, 1995, in the State and Federal District of Nevada, and elsewhere,

**RUSSELL PIKE**

defendant herein, and others known and unknown to the Grand Jury, knowingly executed and attempted to execute a scheme and artifice to defraud, and to obtain by means of false and fraudulent pretenses, representations, and promises, the moneys, funds, credits, and assets of Primerit Bank, a financial institution the funds of which were then insured by the Federal Deposit Insurance Corporation.

3. All in violation of Title 18, United States Code, Section 1344, and Title 18 United States Code, Section 2.

DATED: this 9 day of July, 1997.

A TRUE BILL:

FOREPERSON OF THE GRAND JURY

KATHRYN E. LANDRETH
United States Attorney

ROBERT J. SCHUIT
Assistant United States Attorney

ORIGINAL

RECEIVED AND FILED

MAR 26 3 35 PM '03

U.S. BANKRUPTCY COURT
PATRICIA GRAY
CLERK

SHEA & CARLYON, LTD.
CANDACE C. CARLYON, ESQ.
Nevada Bar No. 002666
DENISE H. ABRAMOW, ESQ.
Nevada Bar No. 005851
233 S. Fourth Street, Second Floor
Las Vegas, Nevada 89101
Telephone: (702) 471-7432
Facsimile: (702) 471-7435

Attorneys for WELLS FARGO BANK, successor in interest to NORWEST BANK f/k/a PRIMERIT BANK

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>RUSSELL CRAIG PIKE,<br><br>Debtor. | CASE NO. BK-S-96-23057-LBR<br>Chapter 11<br><br>Adversary No.96-2216-LBR |
| NORWEST BANK f/k/a PRIMERIT BANK,<br><br>Plaintiff,<br><br>vs.<br><br>RUSSELL CRAIG PIKE,<br><br>Defendant. | |

**AFFIDAVIT OF RENEWAL OF JUDGMENT**

STATE OF NEVADA )
)
COUNTY OF CLARK )

Plaintiff, by and through Daron Thom, its authorized representative, pursuant to N.R.S. § 17.214, first being duly sworn according to law, hereby submits this Affidavit of Renewal of Default Judgment in the above captioned matter.

1. I am employed with Wells Fargo Bank of Nevada as a Vice President, and I make this Affidavit of Renewal of Default Judgment ("Affidavit") based upon my own personal knowledge. Should I be called to testify thereto, I could and would competently do so under oath.

2. The current judgment creditor in this matter is Wells Fargo Bank ("Judgment Creditor"), successor in interest to Primerit Bank, F.S.B.. Primerit Bank merged with Norwest Bank after the Default Judgment was obtained. Thereafter, Wells Fargo Bank merged with Norwest. I have been with Primerit Bank when the loan to these judgment debtors originated. The judgment debtors are Advanced Cart Technology, a Nevada corporation and Russell C. Pike ("Judgment Debtors").

3. The Default Judgment in the state court action was entered on May 30, 1996 in favor of Judgment Creditor and against Judgment Debtors in the principal sum of $2,435,258.60, together with interest accrued on the principal statutory rate from May 8, 1996 until paid in full, costs of suit in the amount of $1,048.00 and attorney's fees in the amount of $15,000.00 .

4. The Default Judgment entered in State Court was recorded with the Clark County Recorder's Office on May 30, 1996, at book no. 960530 and page no. 02085.

5. A Judgment of non dischargeability in the amount $2,435,258.60, together with interest accrued on the principal statutory rate from May 8, 1996 until paid in full, costs

of suit in the amount of $1,048.00 and attorney's fees in the amount of $15,000.00 was entered on March 26, 2003 on the Bankruptcy Court's docket, maintained on-line through PACER, at entry no. 11.

6. There are no writs of execution for enforcement of the Default Judgment currently outstanding.

7. There have been no payments made on the judgment as of the date of the filing of this Affidavit.

8. There are no setoffs or counterclaims in favor of the Judgment Debtors.

9. The amount currently owing as of March 26, 2003, is approximately $4,059,587.45, consisting of principal in the amount of $2,435,258.60, accrued interest in the amount of $1,608,280.56, costs of suit in the amount of $1,048.29, and attorneys' fees in the amount of $15,000.00. Interest continues to accrue at the statutory rate.

10. The Judgment is not a foreign judgment from another court.

11. Further, affiant sayeth naught.

DATED this 26th day of March, 2003.

Daron Thom, Vice President
Wells Fargo Bank

SUBSCRIBED AND SWORN to before
me this 26th day of March, 2003.

Notary Public in and for said County and State

MARIE VALLETTI
NOTARY PUBLIC
STATE OF NEVADA
APPT. No. 90-0781-1
MY APPT. EXPIRES OCT. 1, 2005

DANIEL G. BOGDEN
United States Attorney

EVAN J. DAVIS
PHYLLIS JO GERVASIO
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 7238
Washington, D.C. 20044
Tel.: (202) 514-0079
(202) 514-6539
Fax: (202) 514-6770
*Attorneys for Plaintiff United States*

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEVADA

UNITED STATES, )
)
Plaintiff,

CV-S-04-0455-LDG-LRL

v.

NATIONAL AUDIT DEFENSE NETWORK,
FREE TRADE ENTERPRISES, INC., d/b/a
ORYAN MANAGEMENT AND FINANCIAL )
SERVICES, DANIEL W. PORTER, )
ROBERT D. GOETSCH, ROBERT )
BENNINGTON, ALAN L. RODRIGUES, )
WESTON J. COOLIDGE, ADAM )
MANGABANG, JEFFREY KLINGENBERG, )
RICH KLINGENBERG, MICHELLE M. )
HERNANDEZ, LEE PANELLI, ALR, INC. d/b/a )
SUCCESS MATRIX GROUP, )
MARY ORIE, ADA ADVENTURE, INC., )
G&J EAGLE ENTERPRISES, CHRISTINE )
REID, and JOSEPH M. PROKOP, )
)
)
Defendants. )

# COMPLAINT FOR PERMANENT INJUNCTION AND OTHER RELIEF

Plaintiff, the United States of America, states as follows for its complaint against the defendants National Audit Defense Network ("NADN"); Robert Bennington; Weston J. Coolidge; Alan L. Rodrigues; ALR, Inc., d/b/a Success Matrix Group ("SMG"); Adam Mangabang; Jeffrey Klingenberg; Rich Klingenberg; Lee Panelli; G&J Eagle Enterprises, Inc.; Christine Reid; Mary Orie; Free Trade Enterprises, d/b/a Oryan Management and Financial Services; Daniel W. Porter; Robert D. Goetsch; ADA Adventure, Inc.; Michelle M. Hernandez; and Joseph M. Prokop.

## Nature of Action

1. This suit is brought to restrain and enjoin the defendants under 26 U.S.C. ("I.R.C.") §§ 7402, 7407, and 7408 from:

a. Preparing or assisting in the preparation of federal-income-tax returns for others;

b. Acting as an income-tax-return preparer while also guaranteeing the payment of any refund or the allowance of any credit;

c. Organizing, promoting, or selling the Mallforall, Shopn2000, or TaxBreak2000 programs, home-based businesses, incorporation services, or any other arrangements that facilitate or advocate noncompliance with the income tax laws or tax evasion or misrepresent the tax benefits realized by using the arrangements;

d. Making false representations that:

(i) prospective customers may take business tax deductions or credits without regard to whether the individuals have a *bona fide* business and business purpose;

(ii) prospective customers may claim the 26 U.S.C. § 44 disabled-access tax credit for any website modification (unless and until the Secretary of the Treasury promulgates regulations, pursuant to § 44(c)(5), that permit such use of the credit);

(iii) prospective customers may claim the 26 U.S.C. § 44 disabled-access tax credit and § 162 trade or business expense on their federal-income-tax returns, even if they have no *bona fide* business, the expense is not reasonable and necessary, or the business modification is sold along with the business itself;

(iv) prospective customers who purchase any product or service or start, own, or operate home-based businesses may automatically (or through simply handing out a business card or through mentioning—without making a demonstrated and sincere effort to conduct business—the business to someone) claim meal expenses, automobile expenses, travel (including vacation) expenses, and residence-related expenses (including mortgage, electricity, and insurance);

(v) prospective customers who start, own, or operate home-based businesses can demonstrate that they are trying to make a profit merely by printing up and/or handing out business cards;

(vi) prospective customers who start, own, or operate home-based businesses can employ their children between 7 and 17 years old, pay the children a wage, and then take the money back from the children;

(vii) prospective customers who start, own, or operate home-based businesses can "write off" or depreciate their home;

(viii) prospective customers can claim tax deductions and credits for hobby expenses or turn a hobby into a home-based business merely by printing business cards, handing out business cards, and/or keeping records;

(ix) tax credits and deductions that are available to all businesses, regardless of their form (*e.g.*, partnership, sole proprietorship, or corporation), are exclusively available to corporations;

(x) prospective customers will automatically reduce their federal-income-tax liability by forming a corporation;

(xi) prospective customers are guaranteed or promised a tax refund, additional tax deductions, or tax credits, merely by purchasing or signing up for any services or products, including purchasing a business or signing up for audit defense, tax-return review, and/or tax-return preparation;

(xii) prospective customers who purchase any products that include purported tax benefits and that are paid for with purported promissory notes can ignore the

promissory note or pay off the promissory note merely by clicking on a website link or by some other artifice;

(xiii) prospective customers who purchase any services or products that include purported tax benefits and that are paid for with promissory notes can rely on a third party to pay off the promissory note on their behalf, unless there is a binding contract with a legitimate, viable third party who has agreed to pay off promissory notes as described in the representation to the customers;

(xiv) prospective customers can "wait until the end of the year" to reconstruct their business records (purportedly to see "what you want [to be] in those records" in case the IRS wants to verify claimed business deductions);

(xv) prospective customers can or should create and/or use multiple corporations to "roll over" profits from one corporation to another, thereby creating the impression that a corporation that earned a profit didn't actually earn it;

(xvi) prospective customers can claim business-related expenses, even though the defendant or person working in association with the defendant, also states that "I don't care if you make a profit, as long as you are doing something that you can claim as a business" or any similar statement; or

(xvii) prospective customers can purchase "prepaid legal," "travel agency" or "NADN referral" businesses or any other business, membership, or any arrangement, and then automatically claim business-related tax deductions and credits, without making a demonstrated and sincere effort to earn a profit from the business, membership, or arrangement;

e. Engaging in activity subject to penalty under 26 U.S.C. § 6700, *i.e.*, organizing, promoting, or selling a plan or arrangement and in connection therewith making gross valuation overstatements or making statements regarding the excludibility of income or the securing of any other tax benefit that he or she knows or has reason to know are false or fraudulent as to any material matter;

f. Engaging in activity subject to penalty under 26 U.S.C. § 6701, *i.e.*, preparing and/or assisting in the preparation of a document related to a matter material to the internal revenue laws that includes a position that he or she knows will, if used, result in an understatement of tax liability; and

g. Engaging in other similar conduct that interferes with the administration or enforcement of the internal revenue laws.

**Jurisdiction and Venue**

2. Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1340 and 1345 and I.R.C. §§ 7401, 7402(a), 7407, and 7408.

3. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1396.

**Authorization**

4. This action has been authorized and requested by the Chief Counsel of the IRS, a delegate of the Secretary of the Treasury, and commenced at the direction of a delegate of the Attorney General, pursuant to the provisions of I.R.C. §§ 7402, 7407, and 7408.

**DEFENDANTS**

5. **NADN** is a corporation located and doing business at 4330 South Valley View, Las Vegas, Nevada 89103. NADN's phone number is 1-800-AWAY-IRS and its websites are www.awayirs.com, www.nadncorporations.com, www.developyourbusiness.org, and www.nadn-biz.com.

6. **Robert Bennington** resides at 9143 Imperial Castle Court, Las Vegas, Nevada 89147.

7. **Weston J. Coolidge** resides at 10716 Jubilee Mt. Ave., Las Vegas, Nevada 89129.

8. **Alan L. Rodrigues** resides at 918 Alta Oaks, Henderson, Nevada 89014.

9. **ALR, Inc., d/b/a Success Matrix Group's** ("SMG's") office is located at 3561 Lindell Road, Suite G, Las Vegas, Nevada 89103. SMG's website is www.successmatrixgroup.com.

10. **Adam Mangabang** resides at 8101 Rock Port Circle, Las Vegas, Nevada 89128.

11. **Lee Panelli** resides at 7765 Industrial Road, Las Vegas, Nevada 89139.

12. **Jeffrey Klingenberg and Rich Klingenberg** reside at 8570 La Madre, Las Vegas, Nevada 89129.

13. **G&J Eagle Enterprises, Inc.**, ("G&J Eagle") is a Nevada corporation whose offices are located at NADN.

14. **Christine Reid** resides at 1821 Imperial Cup Drive, #1050, Las Vegas, Nevada 89117.

15. **Mary Orie** resides at 2033 Wengert Avenue, Las Vegas, Nevada 89104.

16. **Free Trade Enterprises d/b/a Oryan Management and Financial Services's** ("Oryan's") office is located at 302 South Milliken Ave., Suite F, Ontario, California 91761. Oryan's own website is www.oryanmanagement.com.

17. **Daniel W. Porter** resides at 6188 Grant Street, Chino, California 91710.

18. **Robert D. Goetsch** resides at 28023 Dobbel Ave., Hayward, California 94542.

19. **ADA Adventure, Inc.** is a company related to Oryan. Plaintiff cannot locate an office for ADA Adventure, Inc.

20. **Michelle M. Hernandez** resides at1465 Shannon St., Upland California 91784.

21. **Joseph Prokop** resides at 6 Oak Grove, Mt. Baldy, California 91759.

**Defendants' Activities**

22. NADN is a 470-employee telemarketing firm that sells tax-related products and services and prepares federal-income-tax returns. NADN is divided into three primary departments: sales, tax-return preparation, and technical. The sales department consists of

telemarketers who use high-pressure sales tactics to promote, sell, and market tax-evasion schemes that lead to understatements of income-tax liability for NADN customers. NADN's tax-return-preparation department prepares and files federal income tax returns for customers, claiming bogus deductions and tax credits. NADN's return-preparation department prepared 4,747 federal income tax returns for the 2002 tax year alone. NADN's technical department represents customers during IRS audits and handles offers-in-compromise before the IRS. NADN currently has approximately 100,000 customers. NADN's tax-scam sales and return-preparation services have cost the Treasury over the past three years alone an estimated $324 million dollars in lost tax revenue.

23. NADN was co-founded in 1996 by Bennington and another person who is not a endant. NADN was sued in January, 2002 by the Federal Trade Commission and, in a separate suit, by the Nevada Attorney General's Office, for deceptive trade practices. The suits alleged that NADN refused to refund customers' money after customers had validly exercised NADN's money-back guarantee. After these suits were filed, Bennington and the other co-founder sold their interests in NADN to Coolidge, NADN's current president and owner. Bennington has remained with NADN as one of its top salespersons and as a sales manager, selling among other things the "Shopn2000" tax scheme, discussed below. Coolidge does not directly own NADN, but does so through a shell corporation named K-Star, Inc. Coolidge is involved with major decisions affecting NADN, including whether to sell certain tax products and services and whether to prepare tax returns that claim tax deductions and credits. NADN filed for Chapter 11 bankruptcy in June, 2003 and remains in bankruptcy.

24. For at least the past three years, Rodrigues has run NADN's day-to-day operations as general manager and executive vice president. Rodrigues also runs and owns SMG, another telemarketing firm that sells at least one of the abusive tax schemes discussed below, the Shopn2000 program. On information and belief, Rodrigues directed SMG to start selling the Shopn2000 program after NADN filed for bankruptcy. Rodrigues is involved with major decisions affecting NADN and SMG, including whether to sell certain tax products and services and whether to prepare tax returns that claim tax deductions and credits.

25. NADN's employees include defendants Adam Mangabang, Mary Orie, and Christine Reid. Mangabang is the director of a sales department (currently called Preferred Client Services, formerly called Advanced Services and Elite Services) that sells the more-expensive .d complex tax services and products in NADN's product list. Mangabang sells and directs telemarketers under his control to sell the three tax scams at issue here: the Shopn2000 program; bogus home-based businesses; and incorporation services.

26. Mary Orie is the director of NADN's return-preparation department. Orie directs return preparers to prepare and file federal-income-tax returns that claim false tax credits and deductions, including those related to the Shopn2000 program.

27. Christine Reid is nominally employed by Bridgeway Corporation, which is owned by Coolidge. However, Bridgeway Corporation's offices are located within NADN, and Reid does work for NADN as well, primarily related to setting up corporations for NADN's customers. Further, Reid was president of G&J Eagle Enterprises from late 2002 through late 2003. Reid,

through G&J Eagle, issued fraudulent IRS Forms 1099 for tax year 2002 to NADN customers who purchased Shopn2000 programs.

28. SMG, Rodrigues's other telemarketing firm, has sold Shopn2000 programs and advertises on its website www.successmatrixgroup.com incorporation services, home-based business "consulting," and return-preparation. Rich Klingenberg and Jeffrey Klingenberg are former NADN salespersons who sold Shopn2000 programs at NADN and also have sold Shopn2000 programs at SMG. SMG's current manager, Lee Panelli, also worked at NADN and oversees SMG's salespersons. Panelli has directed the salespersons to sell the Shopn2000 programs. Panelli claims that SMG stopped selling this program in February, 2004.

29. One of NADN's primary tax-scam products, Shopn2000, was designed by Daniel ter, former owner of Oryan. After the IRS executed a search warrant on Porter at his Oryan offices, Porter sold Oryan to Goetsch. Prokop is a salesperson who has worked for Oryan under both Porter's and Goetsch's leadership. Prokop also has trained salespersons at NADN and elsewhere on how to market the Shopn2000 program. Hernandez was Oryan's office manager under Porter and is president of ADA Adventure, Inc. Hernandez, through ADA Adventure, signed contracts with Shopn2000 purchasers that promised purchasers that ADA Adventure would pay over $2,000 per quarter to "advertise" on the purchasers' purported websites. As explained below, Shopn2000 purchasers paid $2,495 in cash, plus a $7,980 sham promissory note, to NADN and Oryan to buy a Shopn2000 product.

**The Shopn2000 programs**

30. Oryan, NADN, and SMG sell Shopn2000 programs to customers and falsely claim that Shopn2000 purchasers can claim a tax credit and tax deduction. NADN and SMG salespersons tell NADN customers that they can help the disabled by purchasing their own "Internet mall" website, known as Shopn2000 and MallforAll (herein "Shopn2000"), located at www.mallforall.com and www.shopn2000.com. Shopn2000 purchasers ostensibly pay $10,475 ($2,495 cash plus a bogus $7,980 promissory note) to then "modify" the purported websites up to three separate times to comply with the Americans with Disabilities Act. NADN and SMG salespersons claim that each purchaser receives his own Shopn2000 website, a "virtual Internet shopping mall," designated with a five-digit personal identification number ("PIN" a/k/a "Zip ode").

31. However, there is just *one* Shopn2000 website, not a separate one for each PIN purchaser. Each Shopn2000 purchaser simply gets a five-digit account number (the PIN) on that one Shopn2000 website. Further, the one Shopn2000 website already includes the so-called modifications—the one website is not modified again when each new purchaser's PIN account is added to the system. Therefore, the NADN salespersons' representations to potential Shopn2000 purchasers that each purchaser is buying a separate website and separate modifications are false.

32. Shopn2000.com links to dozens of merchants and permits Shopn2000.com visitors to click on a merchant's banner or a product displayed to then purchase products on the merchants' websites. Shopn2000 PIN purchasers purportedly can make money through commissions, typically 1% to 2% of the purchase price. Product purchases made after a visitor clicks through

the Shopn2000.com website are tracked by the five-digit PIN assigned to a PIN purchaser. If the Shopn2000.com website visitor does not select a PIN, then a random PIN is generated for the transaction. If the visitor chooses to select a particular PIN, then that PIN purchaser will usually obtain any commissions generated by that website visitor's purchases.

33. Over the four years in which Oryan has been selling Shopn2000 products, all Shopn2000 PIN purchasers—estimated at more than 10,000—combined have earned less than $24,000 in identified commissions. Therefore, the PIN purchasers have earned on average less than $2.40 total, or less than 60 cents per year. Despite this, Oryan, NADN, and SMG and claim that the Shopn2000 purchasers are buying viable businesses. Oryan, NADN, and SMG do not disclose to potential Shopn2000 PIN purchasers the amounts of commissions earned. Instead, yan, NADN, and SMG focus on the claimed tax benefits for purchasing a purported Shopn2000 website and "modifying" the website to ostensibly comply with the ADA.

34. Oryan's marketing materials and SMG's and NADN's salespersons tell potential Shopn2000 PIN purchasers that the purchase of the Shopn2000 program will result in a "tax benefit" to the customer in the amount of $10,475. NADN's and SMG's salespersons explain to potential purchasers that, after the purported website is formed, the site is "modified" to provide access to visually-, hearing-, and mobility-impaired users, purportedly to comply with the ADA. Oryan and NADN sold a different modification each year for three years, so a PIN purchaser could claim the tax benefits in three successive years.

35. These purported modifications are: (1) adding a "text-only" version of the website to allow blind users' screen-reader software to read the website aloud to blind users; (2) adding a

"chat" function that allows users, including hearing-impaired users, to discuss Shopn2000 website technical and other problems with Oryan; and (3) a downloadable "voice shopping" program that permits mobility-impaired users to give voice commands to the computer. Oryan subsequently dropped the chat function altogether and has combined the text-only website and the voice-shopping program as the exclusive purported modification. SMG, which began selling the Shopn2000 program later than NADN, sold exclusively the third-year modification and the new combined modification currently being sold.

36. The text-only version of the website has been inoperable for several weeks this year. Further, screen reading software can read the main website, so the text-only version is superfluous. The chat function was always unnecessary because few shopn2000.com visitors ever had questions about the website and e-mail would have sufficed to answer those questions. The voice-shopping function is useless because it is difficult to download and does not permit a voice-shopping user to complete a purchase.

37. There is no up-front cost to purchase a Shopn2000 program from NADN or SMG. Instead, each SMG or NADN customer agrees to pay Oryan 20% of any commissions, up to $2,500, as a purchase price, but most owners earn no commissions and therefore pay nothing for the program.

38. SMG and NADN salespersons tell SMG and NADN customers that each modification triggers a $5,000 I.R.C. § 44 tax credit and a $5,475 § 162 business tax deduction, which NADN salespersons say amounts to a total tax benefit in the amount of $10,475.