# EXHIBIT
# 25
# PART D

39. NADN salespersons, also on behalf of Oryan, have told potential purchasers at least four different stories about why they do not have to worry about paying off the purported promissory notes. First, the salespersons tell purchasers that ADA Adventure, Inc. will pay off the promissory note in exchange for ADA Adventure listing banners on the purchasers' purported Shopn2000 websites. Second, NADN and SMG salespersons promise that if anyone, including the Shopn2000 purchasers, clicks on a special "sponsored link" banner on the owner's purported Shopn2000 website, then Oryan would deduct $2.00 per click from the owner's promissory note. This $2.00 is never paid to Oryan, so the $2.00-per-click payment method shows that the promissory note is a sham. Third, NADN salespersons also falsely promise customers that they could give back the purported website, which would extinguish the ›missory note. And fourth, NADN now tells PIN owners that they can reduce their promissory note by referring others to purchase the Shopn2000 program. For each new potential customer referred who then becomes a PIN owner, a current PIN owner will receive a $500 credit against their promissory note. This makes the Shopn2000 promotion a pyramid scheme.

40. In April, 2001, five NADN technical department employees, including three lawyers, wrote a 14-page memorandum to NADN general manager Rodrigues that concluded the Shopn2000 programs would not generate the claimed tax advantages and that Oryan should not sell the Shopn2000 websites. The memorandum specifically warned that the "company, its officers and its employees who organized or assisted in organizing this program or who were involved (directly or indirectly) in the sale of this program could conceivably be subjected to

**criminal and or civil penalties under IRC §§ 6700, 6701 and 7206.** " (emphasis in original). Rodrigues shared this memorandum with NADN's managers and with Bennington.

41. NADN and Oryan then sought opinion letters from three attorneys. One opinion letter determined that the Shopn2000 program was not subject to federal securities laws, in part, because Oryan was selling a "tax credit" and was not promising profits. The other two opinion letters related solely to the § 44 tax credit. These letters did not address many issues raised by the 14-page memorandum and concluded that Shopn2000 program could only be sustained if it was marketed as a business, and not as a tax break. Despite receiving these opinions, Oryan and NADN sold the Shopn2000 program, internally designated it as the "TaxBreak2000" and TaxBreak3000" program, and sold it to customers as a tax break.

42. Oryan's marketing materials and NADN's salespersons continue to make fraudulent representations to potential Shopn2000 purchasers that the customers can save anywhere from $3,000 to $15,000 in taxes if they purchase the Shopn2000 program. NADN's and SMG's salespersons also continue to falsely claim that their customers can claim the $5,000 §44 tax credit and the $5,475 § 162 business tax deduction on their federal income tax returns.

43. NADN's return-preparation department also continues to file false and fraudulent federal income tax returns on behalf of NADN customers that claim the bogus Shopn2000 tax-related credit and deduction. Orie orders the return preparers under her control to prepare and file these false and fraudulent tax returns and threatens to fire return-preparers who refuse to prepare these false and fraudulent tax returns. The NADN return-preparation department's willingness to file tax returns containing false deductions and credits, in turn, enhances NADN's

tax-scam sales because NADN can keep selling these scams to customers, and then ensure that those customers see their tax returns filed with the improper deductions and credits promised by NADN's salespersons.

**Sham Home-Based Businesses**

44. NADN sells "memberships" to customers, falsely promising to potential customers $3,000 per year in tax savings. These false tax-savings promises are primarily based on customers starting or purchasing a home-based business and claiming improper business-related tax deductions. Further, NADN guarantees potential customers that, if the customer pay for NADN's return-preparation service, the customers will receive an additional $3,000 per year of tax savings. In addition, NADN guarantees that customers will receive refunds for prior tax ars if the customers pay for NADN to prepare amended federal-income-tax returns. SMG advertises similar home-based business services.

45. NADN salespersons make false and fraudulent statements by (1) overstating the likelihood of obtaining business-related tax deductions; (2) selling the NADN customers home-based businesses that lack a profit motive; and (3) suggesting that customers can turn a hobby into a business merely by printing business cards. These false and misleading statements are detailed, among other places, in the NADN publications themselves.

46. NADN's salespersons, supervised by Coolidge and Rodrigues—and including Mangabang, his subordinates, and Bennington—have made the following false statements: (1) I don't care if you make a profit, as long as you are doing something that you can claim as a business; (2) drop your business card off somewhere on the way to work, and you can write off

all of your commuting expenses; (3) when you go to dinner with your wife, drop your business card off and you can write off the dinner as a business expense; (4) customers can deduct on their tax returns automobile expenses ($.36/mile up to 20,000 miles), regardless of the purpose of their trips; (5) customers can deduct 50% for all meals eaten out (100% deduction if the meal cost more than $75); and (6) customers can claim an "educational tax credit" for using NADN's tax services.

**NADN and SMG Set Up Nevada Corporations, Claiming False Tax Savings and Suggesting That Customers Can Use Corporations to Hide from Creditors**

47. NADN's and SMG's websites and NADN salespersons sell incorporation services by making false and fraudulent statements regarding the purported tax advantages of incorporating generally, and particularly in Nevada. NADN salespersons and NADN's and SMG's websites routinely make false and misleading claims to NADN customers that overstate the tax advantages that corporations enjoy over other business forms such as sole proprietorships. These false and misleading claims include categorizing certain business deductions as only available to corporations. Most of these business expenses, if legitimately incurred, would be deductible for any business, not just corporations.

48. NADN salespersons make false and fraudulent statements including: (1) putting assets in a corporation will make the income from the assets tax-free; (2) putting a Shopn2000 purported website "business" into a corporation will shield all Shopn2000-related income from taxation; and (3) customers can write off their entire cost of a Shopn2000 program by putting it in a corporation. Further, NADN promises that, by incorporating, customers can hide income and assets from creditors.

**Count I:**

**Injunction under I.R.C. § 7408 for Violation of I.R.C. §§ 6700 and 6701.**

49. The United States incorporates by reference the allegations in paragraphs 1 through 48.

50. I.R.C. § 7408 authorizes a court to enjoin persons who have engaged in any conduct subject to penalty under 26 U.S.C. § 6700 or § 6701 if the court finds that injunctive relief is appropriate to prevent the recurrence of such conduct.

51. Under I.R.C. § 6700, any plan or arrangement having some connection to taxes can serve as a "tax shelter" and will be an "abusive" tax shelter if the defendant makes the requisite false and or fraudulent statements concerning the benefits of participation.

52. I.R.C. § 6700 penalizes any person who organizes or sells, or participates in the organization or sale of, an entity, a plan or arrangement and makes, or causes to be made, in connection with organizing or selling the plan or arrangement, false or fraudulent statements concerning the tax benefits to be derived from the entity, plan, or arrangement, that the person knows or has reason to know is false or fraudulent as to any material matter.

53. In the alternative, I.R.C. § 6700 penalizes any person who organizes or participates in the sale of a plan or arrangement and makes or causes another person to make a gross valuation overstatement as to any material matter. A gross valuation overstatement exists where the purported value of any property or services is more than double the correct valuation and the overstatement relates directly to an income-tax credit or deduction.

54. I.R.C. § 6701 imposes a penalty on any person who prepares or assists in the preparation of a return, affidavit, or other document that the person knows or has reason to believe will be used in connection with any material matter arising under the internal revenue laws, and that the person knows would result in an understatement of another person's tax liability.

55. Defendants NADN, Bennington, Coolidge, Rodrigues, SMG, Mangabang, Jeffrey Klingenberg, Rich Klingenberg, Panelli, G&J Eagle Enterprises, Inc., Reid, Oryan, Porter, Goetsch, ADA Adventure, Inc., Hernandez, and Prokop organize and sell the Shopn2000 abusive tax scheme and the incorporation schemes. These defendants (including, on information and belief, SMG, Panelli, Rich Klingenberg, and Jeffrey Klingenberg) also sell the home-based siness scam. In organizing and selling these abusive tax schemes, these defendants make or cause to be made false or fraudulent statements regarding tax benefits of participating in these schemes. These false or fraudulent statements include, among others, that purchasers of the Shopn2000 program will be entitled to a $5,000 tax credit and a $5,475 tax deduction on their federal-income-tax return. These defendants know or have reason to know that their programs and program materials contain false or fraudulent statements within the meaning of I.R.C. § 6700.

56. Defendants NADN, Bennington, Coolidge, Rodrigues, SMG, Mangabang, Jeffrey Klingenberg, Rich Klingenberg, Panelli, G&J Eagle Enterprises, Inc., Reid, Oryan, Porter, Goetsch, ADA Adventure, Inc., Michelle Hernandez, and Prokop knew or had reason to know that their statements about these tax schemes were false. For the Shopn2000 schemes in

particular, most of these defendants had been provided a legal opinion from NADN's own technical department stating that their statements were false and fraudulent. Further, the Shopn2000 scheme is fraudulent on its face. These false and fraudulent statements pertain to material matters because they are likely to influence potential customers to falsely understate their federal-income-tax liability.

57. Defendants NADN, Bennington, Coolidge, Rodrigues, SMG, Mangabang, Jeffrey Klingenberg, Rich Klingenberg, Panelli, G&J Eagle Enterprises, Inc., Reid, Oryan, Porter, Goetsch, ADA Adventure, Inc., Michelle Hernandez, and Prokop organize or participate in the sale of a plan or arrangement and make or cause another person to make a gross valuation overstatement as to a material matter. A gross valuation overstatement exists here because the purported value of the Shopn2000 so-called website modifications is more than twice the correct valuation of the purported modifications. This overstatement relates directly to an income-tax credit or deduction. This gross valuation overstatement includes these defendants' claims that the value of the Shopn2000 modification is $10,475. This is a gross valuation overstatement because all of the modifications are worthless or worth much less than $5,237.50. The defendants' statements to prospective purchasers that they can use this overvalued $10,475 figure on their tax returns to claim credits and deductions is a gross valuation overstatement.

58. Defendants NADN, Bennington, Coolidge, Rodrigues, SMG, Mangabang, Jeffrey Klingenberg, Rich Klingenberg, Panelli, G&J Eagle Enterprises, Inc., Reid, Oryan, Porter, Goetsch, ADA Adventure, Inc., Hernandez, and Prokop state or cause others to state that purchasers of the Shopn2000 programs can claim a false $10,475 modification value on their

federal income tax returns. These statements by defendants—that purchasers can claim a tax credit and deduction based in part on the $7,980 promissory note—is a *per se* gross valuation overstatement. However, even assuming the promissory note were real, all three purported modifications to the Shopn2000 program would still be grossly overvalued. The defendants' statements to purchasers of the Shopn2000 program that they can use this overvalued figure on their tax returns to claim credits and deductions is a gross valuation overstatement.

59. Defendants NADN, Bennington, Coolidge, Rodrigues, Oryan, Porter, Goetsch, Orie, ADA Adventure, Inc., Hernandez, and Prokop prepare or assist in preparing or direct others to prepare federal-income-tax returns, letters, or other documents that they know or have reason to believe will be used in connection with material matters arising under the internal revenue laws. :fendants know that the returns, letters, or other documents will result in understatements of their customers' tax liabilities.

60. Specifically, defendants NADN, Bennington, Coolidge, Rodrigues, Oryan, Porter, Goetsch, Orie, ADA Adventure, Inc., Hernandez, and Prokop prepare or assist in preparing or directing others to prepare false and fraudulent documents—federal-income-tax returns—that falsely report that purchasers of the Shopn2000 program are entitled to a $5,000 disabled access tax credit and a $5,475 business tax deduction. In addition, NADN, Bennington, Coolidge, Rodrigues, and Orie prepare or assist in preparing or directing others to prepare federal-income-tax returns that include inflated and false home-based business deductions. These defendants know that these returns will be used in connection with material tax matters, and that these returns will result in gross understatements of customers' tax liabilities.

61. If they are not enjoined, all of the defendants are likely to continue their illegal conduct, including organizing and selling abusive tax schemes and preparing tax returns understating their customers' tax liabilities.

**Count II:**

**Return-preparer injunction under I.R.C. § 7407 for violating I.R.C. §§ 6694 and 6695 and guaranteeing refunds and the allowance of tax credits.**

62. The United States incorporates by reference the allegations in paragraphs 1 through 61.

63. I.R.C. § 7407 authorizes a court to enjoin a person from acting as an income-tax-return preparer if that person has continually or repeatedly: (1) engaged in conduct subject to penalty under I.R.C. § 6694, which prohibits the preparation or submission of a return containing an unrealistic position or . . . (3) engaged in any other fraudulent or deceptive conduct substantially interfering with the proper administration of the tax laws, and the court finds that a narrower injunction (*i.e.*, one prohibiting only that specific conduct) would not be sufficient to prevent the return-preparer's conduct.

64. Defendants NADN, Bennington, Coolidge, Rodrigues, Oryan, Porter, Goetsch, Orie, ADA Adventure, Inc., Hernandez, and Prokop have prepared or assisted or directed others to prepare numerous federal-income-tax returns for NADN customers that claim false Shopn200-related credits and deductions. In addition, NADN, Bennington, Coolidge, Rodrigues, and Orie have prepared or assisted or directed others to prepare numerous federal-income-tax returns for NADN customers that claim improper home-based business deductions that the customers are not entitled to. These defendants knew or should have known that these returns contained

unrealistic positions. Indeed, NADN's technical department circulated a memorandum stating that customers could not claim the § 44 tax credit. Further, the Shopn2000 scheme is fraudulent on its face. In addition, NADN, Bennington, Coolidge, Rodrigues, and Orie knew or should have known that the return-preparation positions were based on false marketing statements, such as selling customers home-based businesses that lack a profit motive. Preparing federal-income-tax returns containing these unrealistic and frivolous positions subjects defendants to penalty under I.R.C. § 6694.

65. Defendants NADN, Bennington, Coolidge, Rodrigues, Oryan, Porter, Goetsch, Orie, ADA Adventure, Inc., Hernandez, and Prokop have repeatedly and continually engaged in conduct subject to penalty under I.R.C. §§ 6694. If these defendants are not enjoined under I.R.C. § 7407 from preparing or assisting in the preparation of others' tax returns, they will continue to interfere with the proper administration of the internal revenue laws.

**Count III:**

**Injunction under I.R.C. § 7402 for Unlawful Interference with Enforcement of the Internal Revenue Laws and Appropriateness of Injunctive Relief.**

66. The United States incorporates by reference the allegations in paragraphs 1 through 65.

67. I.R.C. § 7402 authorizes a court to issue orders of injunction as may be necessary or appropriate for the enforcement of the internal revenue laws.

68. Defendants, through the actions described above, have engaged in conduct that interferes substantially with the administration and enforcement of the internal revenue laws.

69. Defendants' conduct results in irreparable harm to the United States. Defendants' conduct is causing and will continue to cause substantial revenue losses to the United States Treasury, much of which may be unrecoverable. The IRS estimates that defendants' schemes have cost $324 million in tax losses in the past three years.

70. Unless defendants are enjoined, the IRS will have to devote substantial time and resources auditing and collecting taxes from new customers in addition to the tens of thousands of already existing customers. The burden of pursuing all these customers may be an insurmountable obstacle, given the IRS's limited resources.

71. Unless defendants are enjoined from substantially interfering with the administration and enforcement of the internal revenue laws, they are likely to continue to engage in this mful conduct.

WHEREFORE, plaintiff, the United States of America, respectfully prays for the following:

A. That the Court find that defendants NADN, Bennington, Coolidge, Rodrigues, SMG, Mangabang, Jeffrey Klingenberg, Rich Klingenberg, Panelli, G&J Eagle Enterprises, Inc., Reid, Oryan, Porter, Goetsch, ADA Adventure, Inc., Hernandez, and Prokop engaged in conduct subject to penalty under I.R.C. § 6700, and that injunctive relief under I.R.C. § 7408 is appropriate to prevent a recurrence of that conduct;

B. That the Court find that defendants NADN, Bennington, Coolidge, Rodrigues, Orie, Oryan, Porter, Goetsch, Hernandez, ADA Adventure, Inc., and Prokop engaged in conduct

subject to penalty under I.R.C. § 6701, and that injunctive relief under I.R.C. § 7408 is appropriate to prevent a recurrence of that conduct;

C. That the Court find that defendants NADN, Bennington, Coolidge, Rodrigues, Orie, Oryan, Porter, Goetsch, Hernandez, ADA Adventure Inc., and Prokop continually and repeatedly engaged in conduct subject to penalty under I.R.C. §§ 6694, and that injunctive relief, including permanently barring these defendants from acting as return preparers and preparing returns for others, under I.R.C. § 7407, is appropriate to prevent the recurrence of that conduct;

D. That the Court find that defendants NADN, Bennington, Coolidge, Rodrigues, SMG, Mangabang, Jeffrey Klingenberg, Rich Klingenberg, Panelli, G&J Eagle Enterprises, Inc., Reid, Orie, Oryan, Porter, Goetsch, ADA Adventure, Inc., Hernandez, and Prokop have engaged in ..nduct obstructing and interfering with the enforcement of the internal revenue laws, and that injunctive relief is appropriate to prevent the recurrence of that conduct, pursuant to the Court's inherent equity powers and under I.R.C. § 7402(a);

E. That this Court, pursuant to I.R.C. §§ 7402 and 7408, enter a permanent injunction prohibiting NADN, Bennington, Coolidge, Rodrigues, SMG, Mangabang, Jeffrey Klingenberg, Rich Klingenberg, Panelli, G&J Eagle Enterprises, Inc., Reid, Orie, Oryan, Porter, Goetsch, ADA Adventure, Inc., Hernandez, and Prokop, individually and through any other name or entity, and their representatives, agents, servants, employees, attorneys, and those persons in active concert or participation with them, from directly or indirectly:

a. Preparing or assisting in the preparation of federal-income-tax returns for others;

b. Organizing, promoting, or selling the Mallforall, Shopn2000, or TaxBreak2000 programs, home-based businesses, incorporation services, or any other

arrangements that facilitate or advocate noncompliance with the income tax laws or tax evasion or misrepresent the tax benefits realized by using the arrangements;

c. Making false or fraudulent representations, in conjunction with organizing or selling a plan or arrangement, that:

(i) prospective customers may take business tax deductions or credits without regard to whether the individuals have a *bona fide* business and business purpose;

(ii) prospective customers may claim the 26 U.S.C. § 44 disabled-access tax credit for any website modification (unless and until the Secretary of the Treasury promulgates regulations, pursuant to § 44(c)(5), that permit such use of the credit);

(iii) prospective customers may claim the 26 U.S.C. § 44 disabled-access tax credit and § 162 trade or business expense on their federal-income-tax returns, even if they have no *bona fide* business, the expense is not reasonable and necessary, or the business modification is sold along with the business itself;

(iv) prospective customers who purchase any product or service or start, own, or operate home-based businesses may automatically (or through simply handing out a business card or through mentioning—without making a demonstrated and sincere effort to conduct business—the business to someone) claim meal expenses, automobile expenses, travel (including vacation) expenses, and residence-related expenses (including mortgage, electricity, and insurance);

(v) prospective customers who start, own, or operate home-based businesses can demonstrate that they are trying to make a profit merely by printing up and/or handing out business cards;

(vi) prospective customers who start, own, or operate home-based businesses can employ their children between 7 and 17 years old, pay the children a wage, and then take the money back from the children;

(vii) prospective customers who start, own, or operate home-based businesses can "write off" or depreciate their home;

(viii) prospective customers can claim tax deductions and credits for hobby expenses or turn a hobby into a home-based business merely by printing business cards, handing out business cards, and/or keeping records;

(ix) tax credits and deductions that are available to all businesses, regardless of their form (*e.g.*, partnership, sole proprietorship, or corporation), are exclusively available to corporations;

(x) prospective customers will automatically reduce their federal-income-tax liability by forming a corporation;

(xi) prospective customers are guaranteed or promised a tax refund, additional tax deductions, or tax credits, merely by purchasing or signing up for any services or products, including purchasing a business or signing up for audit defense, tax-return review, and/or tax-return preparation;

(xii) prospective customers who purchase any products that include purported tax benefits and that are paid for with purported promissory notes can ignore the promissory note or pay off the promissory note merely by clicking on a website link or by some other artifice;

(xiii) prospective customers who purchase any services or products that include purported tax benefits and that are paid for with promissory notes can rely on a third party to pay off the promissory note on their behalf, unless there is a binding contract with a legitimate, viable third party who has agreed to pay off promissory notes as described in the representation to the customers;

(xiv) prospective customers can "wait until the end of the year" to reconstruct their business records (purportedly to see "what you want [to be] in those records" in case the IRS wants to verify claimed business deductions);

(xv) prospective customers can or should create and/or use multiple corporations to "roll over" profits from one corporation to another, thereby creating the impression that a corporation that earned a profit didn't actually earn it;

(xvi) prospective customers can claim business-related expenses, even though the defendant or person working in association with the defendant, also states that "I don't care if you make a profit, as long as you are doing something that you can claim as a business" or any similar statement; or

(xvii) prospective customers can purchase "prepaid legal," "travel agency" or "NADN referral" businesses or any other business, membership, or any arrangement, and then automatically claim business-related tax deductions and credits, without making a demonstrated and sincere effort to earn a profit from the business, membership, or arrangement;

d. Engaging in activity subject to penalty under 26 U.S.C. § 6700, *i.e.*, organizing, promoting, or selling a plan or arrangement and in connection therewith making gross valuation overstatements or making statements regarding the excludibility of income or the securing of any other tax benefit that he or she knows or has reason to know are false or fraudulent as to any material matter;

e. Engaging in activity subject to penalty under 26 U.S.C. § 6701, *i.e.*, preparing and/or assisting in the preparation of a document related to a matter material to the internal revenue laws that includes a position that he or she knows will, if used, result in an understatement of tax liability; and

f. Engaging in other similar conduct that interferes with the administration or enforcement of the internal revenue laws.

F. That the Court, under I.R.C. § 7407, enter a permanent injunction prohibiting NADN, Bennington, Coolidge, Rodrigues, Oryan, Porter, Goetsch, Orie, and Prokop and their representatives, agents, servants, employees, attorneys, and those persons in active concert or articipation with them, from preparing or assisting in the preparation of federal income tax returns and from directly or indirectly:

(1) Further engaging in any conduct subject to penalty under I.R.C. § 6694, *i.e.*, preparing any part of a return that includes an unrealistic position; and

(2) Further engaging in any other activity subject to injunction or penalty under I.R.C. §§ 7407 or 6694 including acting as an income-tax-return preparer while also guaranteeing the payment of any refund or the allowance of any credit and including fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal revenue laws;

G. That this Court, pursuant to I.R.C. § 7402(a), enjoin NADN, Bennington, Coolidge, Rodrigues, SMG, Mangabang, Jeffrey Klingenberg, Rich Klingenberg, Panelli, G&J Eagle Enterprises, Inc., Reid, Orie, Oryan, Porter, Goetsch, ADA Adventure, Inc., Hernandez, and Prokop from interfering with the enforcement of the internal revenue laws;

H. That this Court order NADN, Bennington, Coolidge, Rodrigues, SMG, Mangabang, Jeffrey Klingenberg, Rich Klingenberg, Panelli, G&J Eagle Enterprises, Inc., Reid, Orie, Oryan, Porter, Goetsch, ADA Adventure, Inc., Hernandez, and Prokop to send, either individually or in conjunction with other defendants, a copy of this injunction order with a court-approved cover letter, to all persons for whom they have, since 1996, prepared or helped to prepare federal tax returns or to whom they have sold or distributed, either directly or indirectly, the Shopn2000, Mallforall, or TaxBreak 2000 tax programs, incorporation services, home-based businesses, or any other product, shelter, plan or program, and order that, within 45 days of the date of this Order, the defendants shall file with this Court a certification stating that they have done so;

I. That this Court order NADN, Bennington, Coolidge, Rodrigues, SMG, Mangabang, Jeffrey Klingenberg, Rich Klingenberg, Panelli, G&J Eagle Enterprises, Inc., Reid, Orie, Oryan, Porter, Goetsch, ADA Adventure, Inc., Hernandez, and Prokop to provide, either individually or in conjunction with other defendants, to the United States a list of the names, telephone numbers, addresses, e-mail addresses, and social security or employer identification numbers of all individuals and entities: (1) for whom they have prepared or assisted in the preparation of federal tax returns since 1996, or (2) to whom they have sold or distributed, either directly or indirectly, tax plans, arrangements, or programs, or any other product, shelter, plan or program—where any tax-related statements or promises were made during the promotion thereof—in which they have been involved since 1996. NADN, Bennington, Coolidge, Rodrigues, SMG, Mangabang, Jeffrey Klingenberg, Rich Klingenberg, Panelli, G&J Eagle Enterprises, Inc., Reid, Orie, Oryan, Porter, Goetsch, ADA Adventure, Inc., Hernandez, and Prokop shall also provide to the Justice

Department all documents in their possession, custody, and control that identify these individuals and entities. NADN, Bennington, Coolidge, Rodrigues, SMG, Mangabang, Jeffrey Klingenberg, Rich Klingenberg, Panelli, G&J Eagle Enterprises, Inc., Reid, Orie, Oryan, Porter, Goetsch, ADA Adventure, Inc., Hernandez, and Prokop shall provide or give unrestricted access to this information to the Justice Department and file with this Court a certification stating that they have done so, within 45 days of the date of this Order;

J. That this Court order NADN, Bennington, Coolidge, Rodrigues, SMG, Mangabang, Jeffrey Klingenberg, Rich Klingenberg, Panelli, G&J Eagle Enterprises, Inc., Reid, Orie, Oryan, Porter, Goetsch, ADA Adventure, Inc., Hernandez, and Prokop must place a copy of this order, in its entirety, and the court-approved cover letter, on all SMG-, Oryan- and NADN-related websites, including www.successmatrixgroup.com, www.awayirs.com, www.nadncorporations.com, www.developyourbusiness.org, www.nadn-biz.com, www.oryanmanagement.com, and www.oryan-biz.com, in particular on the websites' "Home" pages (*i.e.* the first page seen when accessing the websites at the listed addresses), prominently featured at the top so that it is easily visible. NADN, Bennington, Coolidge, Rodrigues, SMG, Mangabang, Jeffrey Klingenberg, Rich Klingenberg, Panelli, G&J Eagle Enterprises, Inc., Reid, Orie, Oryan, Porter, Goetsch, ADA Adventure, Inc., Hernandez, and Prokop must also remove from these websites all content subject to penalty under I.R.C. §§ 6700, 6701, and 6694 or any other false tax-related statements made in connection with any product or service, and any statements guaranteeing the payment of any refund or the allowance of any tax credit. NADN, Bennington, Coolidge, Rodrigues, SMG, Mangabang, Jeffrey Klingenberg, Rich Klingenberg,

Panelli, G&J Eagle Enterprises, Inc., Reid, Orie, Oryan, Porter, Goetsch, ADA Adventure, Inc., Hernandez, and Prokop shall maintain these copies on all SMG-, Oryan- and NADN-related websites for one year from the date on which this order is entered;

K. That this Court shall retain jurisdiction over this action to implement and enforce this Final Judgment of Permanent Injunction and all other decrees and orders necessary or appropriate to the public interest;

L. That this Court grant the United States such other relief, including costs, as is just and equitable; and

M. That this Court order that the United States shall be entitled to conduct discovery permitted under the Federal Rules of Civil Procedure to monitor the defendants' compliance with ...e terms of this Final Judgment of Permanent Injunction.

DANIEL G. BOGDEN
United States Attorney

EVAN J. DAVIS
PHYLLIS JO GERVASIO
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 7238
Washington, D.C. 20044
Tel.: (202) 514-0079
(202) 514-6539
Fax: (202) 514-6770
*Attorneys for Plaintiff United States*

**Form Number 1**

# EXHIBIT 18

| | | | |
|---|---|---|---|
| from | Ric Klingenberg <rklingenberg@xyience.com> | hide details | Sep 12 (4 days ago) |
| to | | Rich Bergeron <rich.bergeron@gmail.com> | |
| date | | Sep 12, 2007 3:16 PM | |
| subject | | RE: help a good cause | |

Rich have you read,seen or heard of a movie titled "The Secret " ?
Thank-you,

Ric Klingenberg
XYIENCE
702.430.5491 Office
702.287.2121 Cell
ric@xyience.com

DO NOT read, copy or disseminate this communication unless you are the intended addressee. This e-mail communication contains confidential and/or privileged information intended only for the addressee. If you have received this communication in error, please call us immediately at 800-994-3623 and ask to speak to the sender of the communication. Also please e-mail the sender and notify the sender immediately that you have received the communication in error. Thank you. Xyience Inc.

**Form Number 1**

# EXHIBIT 19

TIM WILLIAMS

I was appointed on April 4, 2006 by Governor Kenny Guinn as the District Court Judge in Department 16. I have received the following endorsements in support of my campaign:

- *Las Vegas Metropolitan Police Managers and Supervisors Association (Captains, Lieutenants and Sergeants from Metro);*
- *Las Vegas Police Protective Association Metro, Inc.;*
- *Southern Nevada Central Labor Council (Council represents 11 Labor organizations);*
- *Nevada State AFL-CIO;*
- *Culinary Union.*
- *Henderson Police Officers Association;*
- *Clark County Medical Society*
- *Station Casinos;*
- *North Las Vegas Police Officers Association, Inc.;*
- *Southwest Regional Council of Carpenters*
- *Professional Fire Fighters of Nevada*

**Form Number 1**

**"I am pleased to inform you that your name has been included in Station Casinos' 2005 Primary Election team Member Voting Guide as a preferred candidate for the 2006 Nevada primary election."**

September 7, 2006

Mr. Tim Williams

Dear Mr. Tim Williams:

[illegible] Primary Election Team Member Voting Guide as a preferred candidate for the 2006 Nevada primary election.

The purpose of this pamphlet is to make certain that our team members know that Station Casinos supports your candidacy and that you understand and share the concerns of [illegible] relating to your candidacy.

[illegible] share of the in-kind value of the Station Casinos Team Member Voting Guides for the 2006 Primary Election is [illegible].

This value was determined by [illegible] printing, envelopes, postage and handling of the guides and dividing that amount by the number of candidates featured.

Guides have been mailed to all Station Casinos team members. If you have questions or concerns, please contact Melissa Nelson at 495-4249.

Sincerely,

Lesley Pittman
Vice President Corporate & Government Relations

LAP/kp

6081
6082
6083
6084
6085
6086
6087

STAD 10/8/07

# EXHIBIT 20

**STATE OF CALIFORNIA**
**BUSINESS, TRANSPORTATION AND HOUSING AGENCY**
**DEPARTMENT OF CORPORATIONS**

TO: **Russell Craig Pike**
**Xyience Incorporated**
10650 West Charleston Blvd., Suite 110
Las Vegas, NV 89135
and
www.xyience.com

**DESIST AND REFRAIN ORDER**

**(For violations of sections 25110 and 25401 of the Corporations Code)**

The California Corporations Commissioner finds that:

1. At all relevant times, Russell Craig Pike ("Pike") was the control person, President, Chief Executive Officer and Chairman of the Board of Xyience Incorporated ('Xyience"), a Nevada corporation formed on May 25, 2004. Xyience, a nutrition supplement company, maintains a business address at 10650 West Charleston Blvd., Suite 110, Las Vegas, Nevada 89135 and a Web site at www.xyience.com.

2. Beginning in or about 2005, Pike and Xyience offered and sold securities, in the form of Xyience common stock, in the State of California.

3. Through general solicitations in the form of an investor recruitment network, Pike and Xyience offered or sold at least 1,541,667 shares of Xyience common stock to raise in excess of $2,100,000.00 from California residents.

4. The purported purpose of the common stock offering was to fund the growth and on-going operations of Xyience.



State of California - Department of Corporations

5. These securities were offered and sold in this state in issuer transactions. The Department of Corporations has not issued a permit or other form of qualification authorizing any person to offer or sell these securities in this state.

6. In connection with the offers and sales of securities, Pike and Xyience misrepresented to investors:

a. In Xyience's Private Placement Memorandum dated July 17, 2006, that "... in the course of business [Xyience] has legal issues that arise; management does not believe there are any material litigation to be concerned with." In fact, on June 22, 2006, Xyience shareholders GIG Enterprises, L.L.C. and Maurice Owens filed a lawsuit in Nevada state court, Eighth Judicial District for the County of Clark, alleging that Pike, Xyience and the Pike Family Trust engaged in civil racketeering, breach of contract for the sale of stock, breach of the covenant of good faith and fair dealing, and requested the appointment of a receiver over Xyience.

b. In Xyience's Private Placement Memoranda dated October 10, 2005, January 1, 2006, February 10, 2006, July 17, 2006 and October 20, 2006, that Pike was a successful entrepreneur, founding Advanced Cart Technology, Inc. and All Creative Technologies which "generated millions in revenue prior to Russell [Pike] selling the business in the 90's." In fact, Advanced Cart Technology, Inc. filed for bankruptcy on June 17, 1996 in U.S. Bankruptcy Court for the District of Nevada, which was discharged on August 21, 1998.

7. In connection with the offers and sales of securities, Xyience and Pike omitted to disclose to investors that:

a. On February 10, 1998, the Mirage Casino-Hotel ("Mirage") filed a lawsuit in Nevada state court, Eighth Judicial District for the County of Clark, against Pike alleging that over a two day period in November 1995 Pike wrote three checks totaling $300,000.00, made payable to Mirage, from an account with insufficient funds. Pike failed to respond to Mirage's lawsuit which led to the Nevada state court entering a default judgment against him on July 7, 1998 and ordering Pike to repay Mirage $300,000.00 plus interest.



State of California - Department of Corporations

State of California - Department of Corporations

b. On August 17, 1998, a group of Advanced Cart Technology, Inc. shareholders filed a lawsuit in Nevada state court, Eighth Judicial District for the County of Clark, against Pike, the founder, majority shareholder and director of Advanced Cart Technology, Inc., alleging that Pike convinced them to invest through the use of false pretenses, false representations and fraud. On March 10, 1999, Pike signed confessions of judgment awarding the shareholders a return of their principal investment plus interest.

c. On July 9, 1997, Pike was indicted in U.S. District Court for the District of Nevada on counts of bank fraud, money laundering and aiding and abetting, in connection with his operation of Advanced Cart Technology, Inc. On October 13, 1998, Pike entered a guilty plea to the charge of money laundering. On June 4, 1999, Pike was sentenced to 59 months in a federal prison, three years of supervised release and was ordered to pay restitution of $2,367,146.00.

d. On June 17, 1996, Advanced Cart Technology, Inc. filed for bankruptcy in U.S. Bankruptcy Court for the District of Nevada, which was discharged on August 21, 1998.

e. On June 11, 1996, Pike filed for bankruptcy in the U.S. Bankruptcy Court for the District of Nevada. On October 7, 1998, in relation to this bankruptcy, Shuffle Master Gaming was awarded $4,249,785.23 by the U.S. Bankruptcy Court in a default judgment against Pike.

f. On February 14, 1996, PriMerit Bank Federal Savings Bank ("PriMerit") filed a lawsuit in Nevada state court, Eighth Judicial District for the County of Clark, against Pike and Advanced Cart Technology, Inc. alleging that they defaulted on more than $2,400,000.00 in loans. PriMerit further alleged that Pike was depleting the collateral for the loans and that over $5,000,000.00 in corporate assets could not be accounted for. Pike and Advanced Cart Technology, Inc. failed to respond to PriMerit's lawsuit which led to the Nevada state court entering a default judgment against them on May 30, 1996 and ordering Pike and Advanced Cart Technology, Inc. to repay PriMerit $2,435,258.60 plus interest.

g. On June 29, 1987, Pike was indicted in Superior Court of California, County of Orange, on counts of grand theft and forgery. Pike pled guilty to both counts and was sentenced to prison.

///

State of California - Department of Corporations

Based upon the foregoing findings, the California Corporations Commissioner is of the opinion that the common stock of Xyience Incorporated is a security subject to qualification under the California Corporate Securities Law of 1968 (California Corporations Code section 25000 et seq.) and is being or has been offered or sold without being qualified in violation of Corporations Code section 25110. Pursuant to section 25532 of the Corporate Securities Law of 1968, Russell Craig Pike and Xyience Incorporated are hereby ordered to desist and refrain from the further offer or sale in the State of California of securities, including but not limited to common stock, unless and until qualification has been made under the law or unless exempt.

In addition, the California Corporations Commissioner is of the opinion that the securities of Xyience Incorporated were offered or sold in this state by means of written or oral communications which included an untrue statement of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, in violation of section 25401 of the Corporate Securities Law of 1968. Pursuant to section 25532 of the Corporate Securities Law of 1968, Russell Craig Pike and Xyience Incorporated are hereby ordered to desist and refrain from offering or selling or buying or offering to buy any security in the State of California, including but not limited to common stock, by means of any written or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

This Order is necessary, in the public interest, for the protection of investors and consistent with the purposes, policies and provisions of the Corporate Securities Law of 1968.

Dated: September 10, 2007

PRESTON DuFAUCHARD
California Corporations Commissioner

COMMISSIONER OF CORPORATIONS · STATE OF CALIFORNIA · EUREKA

By ______________________
ALAN S. WEINGER
Lead Corporations Counsel

**Form Number 1**

# EXHIBIT 21

6381

| | | | |
|---|---|---|---|
| from | "Jamie S. Cogburn" <jsc@cogburnlaw.com> | hide details | Sep 27 (1 day ago) |
| reply-to | | jsc@cogburnlaw.com | |
| to | | Rich Bergeron <rich.bergeron@gmail.com> | |
| date | | Sep 27, 2007 3:33 PM | |
| subject | | RE: Xyience v. Bergeron | |
| mailed-by | | cogburnlaw.com | |

6382

Where is the SEC Investigation you reported? Where is the verification that your "email" is accurate and legitimate? Who cares if he has an email address that says Xyience. There is Xyience Training Center and Apparel, which he [PIKE] consults for. Pete Rinato also does consulting work. Since when did that become a crime? I look forward to your motion, but we filed notice of default already as you should have already filed an Answer or some other responsive pleading.
To confirm, where do I send notices to you? I want to confirm that when I send a notice that is not filed with the Court you receive them and can't come back later and cry that you never got it.

6383

| Entity Name | Entity Number | Status |
|---|---|---|
| XYIENCE INCORPORATED | C13892-2004 | Active |
| XYIENCE ADVERTISING, INC. | E0025742006-7 | Dissolved |
| XYIENCE APPAREL, INC. | E0009012006-0 | Dissolved |
| XYIENCE BARS & SNACKS, INC. | E0010092006-1 | Dissolved |
| XYIENCE BEVERAGES, INC. | E0010082006-0 | Dissolved |
| XYIENCE DEVELOPMENT INCORPORATED | E0004462007-9 | Dissolved |
| XYIENCE ENTERTAINMENT, INC. | E0053632006-8 | Dissolved |
| XYIENCE LAS VEGAS TRAINING CENTER I, LLC | E0053592006-2 | Default |
| XYIENCE MEDIA & PUBLICATIONS, INC. | E0053512006-4 | Dissolved |
| XYIENCE PUBLICATIONS, INC. | E0025882006-3 | Dissolved |
| XYIENCE SKATEBOARDS, INC. | E0010052006-7 | Dissolved |
| XYIENCE SUPPLEMENTS, INC. | E0008972006-3 | Dissolved |
| XYIENCE THERMOGENICS, INC. | E0004482007-1 | Dissolved |
| XYIENCE TRAINING CENTER, INC. | E0010062006-8 | Default |
| XYIENCE UBT, INC. | | |

6384
6385
6386
6387
6388
6389
6390
6391
6392

**Form Number 1**

# EXHIBIT 22

----- Original Message -----
From: "Ronald Solomon" <ronaldsol@msn.com>
To: < mpoma@estilosfit.com>
Sent: Tuesday, April 11, 2006 4:43 PM
Subject: Xyience Investment Instructions

> Dear Mr. Poma, Attached is the Xyience offering memorandum. Please have
> you and your investors complete the subscription agreement on page 55 and
> fax it to 702-430-3310. Then wire the funds using the information below.
> If you have any questions, feel free to call me at 786-333-5736. Thank
> you, Ronald Solomon
>
> Wire to:
> Wells Fargo Bank
> Las Vegas, NV
> ABA# 121000248
> Acct of Xyience Inc
> Acct# 9065848799

**Form Number 1**

# EXHIBIT 23

Russell,

Kirk and I very much look forward to sharing the information on Xyience's history that has been uncovered. We are very confident in the shareholder's ability to draw their own conclusions when they have the facts in front of them.

Adam

----- Original Message -----
From: Russell Pike <rpike@xyience.com>
To: Adam Frank; William Underhill AOL <bunderhi@aol.com>; Katie Lever <klever@gcamail.com>; Kirk Sanford <ksanford@gcamail.com>; mk@arcinvestmentpartners.com <mk@arcinvestmentpartners.com>
Cc: rsozzi@rvsventures.com <rsozzi@rvsventures.com>; rinaldi5@cox.net <rinaldi5@cox.net>; sjbock@hotmail.com <sjbock@hotmail.com>; brent@pbgmail.com <brent@pbgmail.com>; pb@crowncapitalsa.com <pb@crowncapitalsa.com>; kmaskatiya@gcamail.com <kmaskatiya@gcamail.com>; Ric Klingenberg <rklingenberg@xyience.com>; janisgrady@aol.com <janisgrady@aol.com>; flamencovivo@aol.com <flamencovivo@aol.com>; apwstrategies@gmail.com <apwstrategies@gmail.com>; Michael Eisner <meisner@eisnerlaw.com>; ksutton@eisnerlaw.com <ksutton@eisnerlaw.com>; jkjets@aol.com <jkjets@aol.com>; Marc Rock <marc.rock@gmail.com>; Susan Curry <scurry@Xyience.com>; Michael Levy <mlevy@Xyience.com>; sbock@cox.net <sbock@cox.net>; dianefrankteam@yahoo.com <dianefrankteam@yahoo.com>; kriech18@hotmail.com <kriech18@hotmail.com>; cjs@hexagoninc.com <cjs@hexagoninc.com>; TLC FORWARDING <terry@tlcconsulting.biz>; chubilly@yahoo.com <chubilly@yahoo.com>; billyzb@yahoo.com <billyzb@yahoo.com>; paul personal <paulgrady@aol.com>; Matt R. Friesl <Matt@aacapitalpartners.com>; Reuben Rios <rrios@Xyience.com>; Devin Keays <dkeays@xyience.com>; Siobhan Oldham <soldham@Xyience.com>; Michael Rusnak <mrusnak@Xyience.com>; plamatte@xyience.com <plamatte@xyience.com>; swierczbicki@xyience.com <swierczbicki@xyience.com>; Stephen Smith <ssmith@Xyience.com>; Dara Asuncion <dasuncion@Xyience.com>; Nina Rodriguez <nrodriguez@Xyience.com>; Darin T. Mahlke <dmahlke@Xyience.com>; ronaldsol@msn.com <ronaldsol@msn.com>
Sent: Tue Oct 02 17:21:22 2007
Subject: RE: XYIENCE NOTICE OF CESSATION OF OPERATIONS

Adam,

The truth will come out about your actions that have brought us to this point.
A shareholder meeting has been called to give full disclosure to the shareholders and determine proper action.

As stated below, I had agreed as long as Mike Clark was treated fairly, which he was not.

Shareholders will be receiving a report of your actions and will take appropriate action against all involved.

---

From: Adam Frank [mailto:adam@adam-frank.com]
Sent: Tuesday, October 02, 2007 2:10 PM
To: William Underhill AOL; Katie Lever; Kirk Sanford; mk@arcinvestmentpartners.com
Cc: rsozzi@rvsventures.com; Russell Pike; rinaldi5@cox.net; sjbock@hotmail.com; brent@pbgmail.com; pb@crowncapitalsa.com; kmaskatiya@gcamail.com; Ric Klingenberg; janisgrady@aol.com; flamencovivo@aol.com; apwstrategies@gmail.com; Michael Eisner; ksutton@eisnerlaw.com; jkjets@aol.com; Marc Rock; Susan Curry; Michael Levy; sbock@cox.net; dianefrankteam@yahoo.com; kriech18@hotmail.com; cjs@hexagoninc.com; TLC FORWARDING; chubilly@yahoo.com; billyzb@yahoo.com; paul personal; Matt R. Friesl; Reuben Rios; Devin Keays; Siobhan Oldham; Michael Rusnak; plamatte@xyience.com; swierczbicki@xyience.com; Stephen Smith; Dara Asuncion; Nina Rodriguez; Darin T. Mahlke
Subject: XYIENCE NOTICE OF CESSATION OF OPERATIONS
Importance: High

Board, Shareholders, and Employees:

This is formal notice that we are ceasing all business operations, because we have come to the conclusion that there is

**Form Number 1**

virtually no likelihood that there will be money to meet payroll obligations. (Nor can the company meet greater than $4M of other obligations that come due by Friday)

Even if we had the money for payroll, Bill Bullard, CEO of Fertitta Enterprises, has begun the foreclosure process, which will collect on the first $1,500,000 in value. Further, we have also received a notice of default from Darlis Investment and Trade Corp, the holders of the next $6,000,000 of secured debt. In addition, we are also starting to receive numerous notices of default pertaining to the vendor settlements and structured payments which we have worked so hard to line up. Thus, even to make payroll, we believe that we would need to raise nearly $8M by Friday because all of these obligations would need to be satisfied concurrently.

The issue that is preventing the Fertittas from funding the company and solving the aforementioned payment obligation has boiled down to Russell's unwillingness to sign an agreement required by the Fertittas whereby any stock that Russell, Billy, or Mike own would have a voting restriction in it which would transfer to any other shareholder who purchased the stock.

Russell, Billy, and Mike received this agreement last Thursday. As of Friday, the board believed that Russell, Mike, and Billy had signed the agreement. On Monday, we learned that only Mike Clark had in fact signed the voting agreement. There apparently had been some signals crossed on whether the voting agreement was in fact signed, and there are claims that Russell represented that he and his family had in fact signed the agreement. On Monday, Kirk and I received an email from Russell that he had finally read the agreement, and was taking issue with the requirement that all of his, Billy's, and Mike's share certificates would need to be imprinted with a Legend that made them non-voting only during the term that the Fertitta Loan was outstanding.

The board has already unanimously approved the Fertitta transaction.

In addition, shareholders (including Russell Pike, Billy Pike Jr, Mike Clark), have approved the Fertitta transaction as required by the Fertittas and by XYIENCE's own by-laws.

The concern that Russell has expressed is that this will result in diminution of value of those shares, and restrict his and Mike's ability to sell these shares.

Kirk and I went back to Bill Bullard and asked him to consider allowing the shares to become voting to the extent that Russell, Billy, or Mike transferred them to non-affiliated parties. Bullard refused, for the following reasons:

(1) He thought it inappropriate that the founders should continue to be out selling stock during this period while other investors need to wait and moreover while the company needs to raise more money

(2) He did not want to have to police to whom the shares were being transferred

(3) He has grown tired of this deal dragging on and there always being "one more issue"
Kirk and I had numerous follow up conversations with Russell and Bill Bullard to try to broker some sort of compromise. This morning, Russell told us that he would agree to have his shares imprinted with the Legend thereby restricting their ability to vote, even if sold or transferred, so long as we could broker some compromise which allowed Mike Clark to have some flexibility on selling his shares without the Legend.

In a final appeal, Kirk and I went back to Bullard to propose this. What Bullard begrudgingly agreed to was that 1,000,000 of Mike Clark's shares would be allowed to be transferred without voting restrictions, so long as (a) he complied with a sales process that was approved by the company and provided for review and approval of prospective purchasers (b) a process that made requisite disclosures to prospective purchasers.

Kirk and I went back to Russell with this proposal. Russell hung up abruptly and told us to tell Bullard there was *NO DEAL* and that Kirk and I should call Ray Sozzi as Ray had an alternative plan for the company, and that "Ray would not let the company go under."

Kirk and I have called Ray twice but have not heard back.

Today, I had a telephone conversation with Mike Clark and he said he was going to give this proposal some consideration.

It appears that Russell's self interest in continuing to sell his shares is preventing the company from doing what is in the company and the shareholder's best interest.

Anything that anyone can do to convince Russell of the selfishness of his actions and prevent this course of consequences would be greatly beneficial to the shareholders who stand to lose their entire investment if the company ceases operations.

In any event, the stark reality is that we need SEVERAL MILLION DOLLARS by Thursday. Regardless of anyone's opinion of the (only) deal on the table, we have gone back and forth several times and tried to broker a compromise, and we have clearly been told that there is no more room for discussions. To be clear, the only options are: 1) that Russell signs the document, or 2) the deal dies. There is no in-between, and nothing is open for discussion, and an answer must be given by end of day today.

We also have been open to any other financing proposals, but no firm offer has been received over the past several months. The likelihood of another deal coming through, and being negotiated, signed, and funded – by Thursday, is obviously extremely remote.

Accordingly, our duties require us to immediately inform you of the grave nature of this situation. Given Russell's refusal to cooperate, and the fact that will prevent the Fertitta deal from closing, we believe that there will not be any money for payroll, so we must cease business operations, and we also believe that the failure to make payments due Thursday and Friday for debts will result in foreclosure and/or bankruptcy. Therefore, we are sending this formal notice, and ceasing operations immediately.

We are attempting to schedule an immediate board meeting. If anything results that will save the company, we will immediately inform you, but based on the facts as we know them now, we are taking the action set forth above.

Thank you,

Kirk and Adam