1   GORDON & SILVER, LTD.                                E-Filed On _3/24/08_
    GREGORY E. GARMAN, ESQ.
2   Nevada Bar No. 6654
    E-mail: ggarman@gordonsilver.com
3   MATTHEW C. ZIRZOW, ESQ.
    Nevada Bar No. 7222
4   E-mail: mcz@gordonsilver.com
    3960 Howard Hughes Pkwy., 9th Floor
5   Las Vegas, Nevada 89169
6   Telephone (702) 796-5555
    Facsimile (702) 369-2666
7   Attorneys for Fertitta Enterprises, Inc.

8

9                  UNITED STATES BANKRUPTCY COURT

10                   FOR THE DISTRICT OF NEVADA

11  In re:                                │ Case No.: BK-S-08-10474-MKN
                                          │ Chapter 11
12  XYIENCE, INCORPORATED,                │
    a Nevada corporation,                 │
13                                        │
                                          │
14           Debtor.                      │
    ──────────────────────────────────────│
15  XYIENCE INCORPORATED,                 │ Adversary No. 08-1082-MKN
    a Nevada corporation,                 │
16                                        │
                                          │
17           Plaintiff,                   │
                                          │
18  v.                                    │
                                          │
19  RICHARD BERGERON, an individual,      │
                                          │
20           Defendant.                   │
    ──────────────────────────────────────│
21  RICHARD BERGERON, an individual,      │ **MOTION OF COUNTERDEFENDANT**
                                          │ **FERTITTA ENTERPRISES, INC. TO**
22           Counterclaimant,             │ **DISMISS ADVERSARY PROCEEDING**
23                                        │
                                          │
24  v.                                    │
                                          │
25  XYIENCE INCORPORATED, a Nevada        │
    corporation; FERTITTA ENTERPRISES,    │
26  INC., a Nevada corporation,           │
                                          │ Date:   April 30, 2008
27           Counterdefendants.           │ Time:   9:30 a.m.
28

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89169
(702) 796-5555

101630-001/551218_2.doc

Counterdefendant, Fertitta Enterprises, Inc., a Nevada corporation ("Fertitta Enterprises"), by and through its counsel, the law firm of Gordon & Silver, Ltd., hereby submits its Motion to Dismiss Adversary Proceeding (the "Motion") in the above-referenced adversary proceeding.

This Motion is made and based on Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Rules"), made applicable to this adversary proceeding pursuant to Rule 7012(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for "failure to state a claim upon which relief can be granted." The Motion is further based on the points and authorities which follow, any papers or pleadings contained in this Court's file, judicial notice of which is hereby requested, and any arguments entertained at the time of the hearing on this matter.

## POINTS AND AUTHORITIES

### I.
### STATEMENT OF FACTS

1.      On July 18, 2007, Xyience Incorporated, a Nevada corporation ("Xyience"), now currently a debtor and debtor-in-possession in the above-captioned bankruptcy case, filed its Complaint (the "Complaint") against Rich Bergeron ("Bergeron") in the Eighth Judicial District Court, Clark County, Nevada (the "State Court"), being Case No. A544781 (the "Litigation"). Xyience was the only plaintiff in the Complaint, and Bergeron was the only defendant in the Complaint. See Adversary Docket No. 3, Ex. 2

2.      Also on July 18, 2007, Xyience first filed its Motion for Preliminary Injunction (the "Preliminary Injunction Motion") against Bergeron in the Litigation seeking to restrain and enjoin him from posting allegedly defamatory remarks on the internet concerning Xyience and to remove certain allegedly false and defamatory articles on Bergeron's website. Xyience refiled its Preliminary Injunction Motion on August 3, 2007, and later supplemented it on August 17, 2007. See id. at Exs. 3, 8 and 12.

3.      On August 19, 2007, Bergeron, who has represented himself *pro se* throughout the Litigation, filed his Opposition to Motion for Preliminary Injunction. See id. at Ex. 13.

4.      On August 22, 2007, Xyience filed its Reply in Support of its Motion for

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89169
(702) 796-5555

101630-001/551218_2.doc

2

1  Preliminary Injunction in the Litigation. See id. at Ex. 14.

2       5.      On September 6, 2007, the State Court issued its Preliminary Injunction Order

3  (the "Preliminary Injunction Order"), which granted Xyience a preliminary injunction against

4  Bergeron and ordered him to remove "all articles or postings regarding false claims about

5  Xyience from the internet and [Bergeron] shall be enjoined from communicating any statements

6  or making any representations which in any manner state, advise, represent, assert, allege,

7  suggest, or imply, in any manner which is intended to, or does evoke an inference or create

8  impression that Xyience is being investigated by the SEC." See id. at Ex. 18. The Preliminary

9  Injunction Order further ordered that Bergeron "shall remove any and all articles claiming that

10 Xyience is defrauding investors and/or is conspiring with Dana White or the Ultimate Fighting

11 Challenge to defraud investors." The Preliminary Injunction Order further ordered that Bergeron

12 "shall be enjoined from communicating any statements or making any representations which in

13 any manner state, advise, represent, asset, allege, suggest or imply in any manner which is

14 intended to, or does evoke an inference or create impression that Xyience is defrauding investors

15 and/or conspiring with Dana White or the Ultimate Fighting Challenge to defraud investors."

16      6.      On September 26, 2007, Xyience filed its Motion to Modify Preliminary

17 Injunction Order in the Litigation, which apparently was unopposed by Bergeron. See id. at Ex.

18 22.

19      7.      On November 6, 2007, the State Court entered its Modified Preliminary

20 Injunction Order in the Litigation. See id. at Ex. 28.

21      8.      On January 3, 2008, an Involuntary Petition under Chapter 11 of the Bankruptcy

22 Code was filed against Xyience, being Case No. BK-S-08-10049-MKN, in the U.S. Bankruptcy

23 Court for the District of Nevada.

24      9.      On January 22, 2008, Xyience filed its Voluntary Petition under Chapter 11 of the

25 Bankruptcy Code, being Case No. BK-S-08-10474-MKN, thereby commencing the above-

26 captioned bankruptcy case.

27      10.     On February 19, 2008, Bergeron filed his Answer to Complaint and Counterclaim

28 for Declamatory Relief [sic] (the "Counterclaim") in the Litigation. See id. at Ex. 50. In

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89169
(702) 796-5555

3

1    addition to asserting counterclaims against Xyience,[1] Bergeron also asserted the same

2    counterclaims against Fertitta Enterprises, thereby joining Fertitta Enterprises for the first time as

3    a party to the Litigation.[2]

4        11.    Prior to being joined in by Bergeron as a counterdefendant in the Litigation,

5    Fertitta Enterprises never made any appearance or filed any papers or pleadings in the Litigation.

6    See id. at Ex. 1 (docket), and Exs. 2-49.  Moreover, since being joined in by Bergeron as a

7    counterdefendant in the Litigation, Fertitta Enterprises has not filed any papers or pleadings in

8    the Litigation except for this Motion.  See id. at Ex. 1 (docket), and Exs. 51-71.

9        12.    On March 20, 2008, Xyience removed the Litigation to Bankruptcy Court where

10    the case now remains pending as the above-captioned adversary proceeding.  See Adversary

11    Docket No. 1.

## II.
## LEGAL AUTHORITY

**A.    Legal Standard On A Motion To Dismiss.**

A Rule 12(b)(6) dismissal must be granted where there is either "no cognizable legal

theory or an absence of sufficient facts alleged to support a cognizable legal theory." Siaperas v.

Montana State Comp. Ins. Fund, 480 F.3d 1001, 1003 (9th Cir. 2007) (citing Balistreri v. Pacifica

Police Dept., 901 F.2d 696, 699 (9th Cir. 1990)).

In resolving a Rule 12(b)(6) motion, the Court must: (1) construe the complaint in the

light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true, as well

as reasonable inferences to be drawn from them; and (3) determine whether the plaintiff can

---

[1] Bergeron's filing of counterclaims against Xyience during the pendency of its bankruptcy case was a clear and knowing violation of the automatic stay pursuant to Section 362 of the Bankruptcy Code.

[2] Bergeron has never properly served his Counterclaim on Fertitta Enterprises.  Specifically, Bergeron's Counterclaim had a Proof of Service attached to it, which claimed that the Counterclaim had been hand delivered to Fertitta Enterprises as of February 19, 2008, but the Proof of Service was not executed. On February 21, 2008, Bergeron filed a separate Certificate of Mailing for the Counterclaim, which indicated that he had mailed the Counterclaim via regular mail to Fertitta Enterprises.  Bergeron never hand delivered the Counterclaim to Fertitta Enterprises and service of the Counterclaim via regular mail was ineffective pursuant to NRCP 4 and 5, and NRS §§ 14.020(2) and 78.090(4).

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89169
(702) 796-5555

101630-001/551218_2.doc                4

1    prove any set of facts to support a claim that would merit relief. See Cahill v. Liberty Mut. Ins.

2    Co., 80 F.3d 336, 337-338 (9th Cir. 1996).

3         "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

4    factual allegations, a plaintiff's obligation to provide the 'grounds of his 'entitle[ment] to relief'

5    requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

6    of action will not do . . . . Factual allegations must be enough to raise a right to relief above the

7    speculative level, on the assumption that all the allegations in the complaint are true (even if

8    doubtful in fact)." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007) (internal

9    citations omitted). To avoid a Rule 12(b)(6) dismissal, a complaint must plead "enough facts to

10   state a claim to relief that is plausible on its face" and that "[b]ecause the plaintiffs here have not

11   nudged their claims across the line from conceivable to plausible, their complaint must be

12   dismissed." Id. at 1974.

13        The court need not accept as true allegations that contradict facts which may be judicially

14   noticed by the court. See Mullis v. United States Bank. Ct., 828 F.2d 1385, 1388 (9th Cir. 1987).

15   For example, the court may properly consider matters of public record such as pleadings, orders

16   and other papers on file, as long as the facts noticed are not subject to reasonable dispute, in a

17   motion to dismiss. See Intri-Plex Techs., Inc. v. Crest Group, Inc., 499 F.3d 1048, 1052 (9th Cir.

18   2007); MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986).

19        In the case at hand, Bergeron's Counterclaim against Fertitta Enterprises raises the

20   following four counterclaims for relief: (1) defamation, (2) violation of first amendment rights,

21   (3) tortious interference with prospective economic advantage, and (4) pain and suffering. Each

22   of these claims must be dismissed as more fully set forth below.

23   **B.     First Counterclaim: Defamation.**

24        Bergeron's first counterclaim alleges that he has been defamed in pleadings filed by

25   Xyience in the Litigation, see Counterclaim, ¶¶ 30 and 32, and that he has been defamed "in

26   bogus blogs produced about him and connected directly to Xyience employees and/or associates

27   through IP addresses." Id. at ¶ 31.

28   . . .

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89169
(702) 796-5555

1    **1.    No Facts Pled Against Fertitta Enterprises.**

2    As an initial matter, the Counterclaim makes no allegation that Fertitta Enterprises took

3    part in any of the alleged defamatory statements; rather, the Counterclaim only makes such

4    allegations against Xyience and/or its employees. See Counterclaim, ¶ 30 ("There was never any

5    factual basis for Xyience to claim . . ."); ¶ 31 (referencing blogs "connected to Xyience

6    employees and/or associates"); ¶ 32 (referencing the actions of only a "Xyience representative")

7    (emphases added).    As such, any alleged defamation claim against Fertitta Enterprises must be

8    dismissed because the Counterclaim lacks any facts pled to support such a claim against Fertitta

9    Enterprises.[3]  Even if the Counterclaim could ever be read to include a defamation claim against

10    Fertitta Enterprises, such claims must be dismissed as set forth below.

11    **2.    Claims Allegedly Arising From Statements Made In The Litigation.**

12    To the extent Bergeron's defamation counterclaim against Fertitta Enterprises arises out

13    of any pleadings or papers filed in the Litigation, such claims must be dismissed for several

14    reasons.  First, as previously noted, Fertitta Enterprises was not even a party or in any way

15    involved in the Litigation until Bergeron joined them as an additional counterdefendant in his

16    Counterclaim filed on February 19, 2008.  Prior to being dragged in by Bergeron in his

17    Counterclaim, Fertitta Enterprises was not a party to the Litigation and did not submit any papers

18    or pleadings in support of anything, including but not limited to Xyience's original Complaint or

19    Preliminary Injunction Motion.  In fact, this Motion is the first pleading Fertitta Enterprises has

20    ever filed in this Litigation.  As such, to the extent any liability could ever result from the filings

21    in the Litigation, it is clear that Fertitta Enterprises took no part in those matters.

22    Second, even if Fertitta Enterprises did take any part in the Litigation prior to Bergeron's

23    filing of his Counterclaim, which Bergeron has never alleged, the litigation privilege provides

24

25    [3] Moreover, because defamation is an intentional tort, it would be outside the scope of any
      employee's employment or agent's agency, and thus something for which the individual would

26    be personally liable, not Fertitta Enterprises. See, e.g., Rockwell v. Sun Harbor Budget Suites,
      925 P.2d 1175, 1179 (Nev. 1996); Prell Hotel Corp. v. Antonacci, 469 P.2d 399, 400 (Nev.

27    1970).  In this regard, the Counterclaim fails to plead any specific facts to establish *respondeat*

28    *superior* liability of Fertitta Enterprises for any such alleged acts anyway.

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89169
(702) 796-5555

101630-001/551218_2.doc                                    6

1  absolute immunity against defamation claims that are based on communications uttered or

2  published in the course of judicial proceedings. See Fink v. Oshins, 49 P.3d 640, 643-44 (Nev.

3  2002); Circus Circus Hotels v. Witherspoon, 657 P.2d 101, 104 (Nev. 1983); In re Davis, 312

4  B.R. 681, 689-90 (Bankr. D. Nev. 2004). As such, to the extent any of Bergeron's allegations

5  are based on any statements made by Fertitta Enterprises in connection with the Litigation, such

6  claims are privileged in any event.

7  **3.    Claims Allegedly Arising From Anonymous Opinions Posted On Blogs.**

8  To the extent Bergeron's defamation counterclaim against Fertitta Enterprises arises out

9  of the alleged anonymous postings on unidentified blogs, such claims also must be dismissed. A

10  blog (a portmanteau of web log) is an interactive website that provides a forum for users to

11  provide commentary and discussion on a particular subject. Users can post comments on a blog

12  under assumed names and/or anonymously.

13  Defamation requires "publication of a false statement of fact." Pegasus v. Reno

14  Newspapers, Inc., 57 P.3d 82, 87 (Nev. 2002) (citing Posadas v. City of Reno, 851 P.2d 438, 442

15  (Nev. 1993)). "Statements of opinion cannot be defamatory because 'there is no such thing as a

16  false idea. However pernicious an opinion may seem, we depend for its correction not on the

17  conscience of judges and juries but on the competition of other ideas.'" Pegasus, 57 P.3d at 87

18  (Gertz v. Robert Welch, Inc., 418 U.S. 323, 339-40 (1974)).

19  In the specific context of blogs, courts recognize that internet sources by their nature are

20  inherently unreliable, and are for the expression of opinions, not facts. See SPX Corp. v. Doe,

21  253 F. Supp. 2d 974, 981 (N.D. Ohio 2003) (granting motion to dismiss defamation claim and

22  stating that "[s]uch message boards are accessible to anyone of the tens of millions of people in

23  this country (and more abroad) with Internet access, and no one exerts control over the content.

24  Pseudonym screen names are the norm. A reasonable reader would not view the blanket,

25  unexplained statements at issue as 'facts' when placed on such an open and uncontrolled

26  forum."); Global Telemedia Intern., Inc. v. Doe 1, 132 F. Supp. 2d 1261, 1267 (C.D. Cal. 2001)

27  (granting SLAPP motion to dismiss defamation claims and stating that "[h]ere, the general tenor,

28  the setting and the format of both [poster's] statements strongly suggest that the postings are

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89169
(702) 796-5555

101630-001/551218_2.doc

7

1    opinion.  The statements were posted anonymously in the general cacophony of an Internet chat-

2    room in which about 1,000 messages a week are posted about GTMI.  The postings at issue were

3    anonymous as are all the other postings in the chat-room.  They were part of an on-going, free-

4    wheeling and highly animated exchange about GTMI and its turbulent history.  At least several

5    participants in addition to Defendants were repeat posters, indicating that the posters were just

6    random individual investors interested in exchanging their views with other investors.

7    Importantly, the postings are full of hyperbole, invective, short-hand phrases and language not

8    generally found in fact-based documents, such as corporate press releases or SEC filings. . . .  To

9    put it mildly, these postings, as well as the others presented to the Court, lack the formality and

10   polish typically found in documents in which a reader would expect to find facts. . . .  In short,

11   the general tone and context of these messages strongly suggest that they are the opinions of the

12   posters.  In addition, the content and style of the individual postings support a finding that they

13   are the opinions of the posters."); Penn Warranty Corp. v. DiGiovanni, 810 N.Y.S.2d 807, 815

14   (N.Y. Sup. Ct. 2005) (granting summary judgment dismissing defamation claims allegedly

15   arising from internet postings as opinions); see also Doe v. Cahill, 884 A.2d 451, 465 (Del.

16   2005) ("Blogs and chat rooms tend to be vehicles for the expression of opinions; by their very

17   nature, they are not a source of facts or data upon which a reasonable person would rely.");

18   DiMeo v. Max, 433 F. Supp. 2d 523, 531 n.14 (E.D. Pa. 2006) ("After viewing the

19   tuckermax.com message boards, which are read by people using screen names like 'Jerkoff,'

20   'Drunken DJ,' and 'footinmouth,' the intended audience could not mistake the site for the New

21   York Times.  In short, it palpably is not serious.").

22        As such, and in addition to the fact that Bergeron never even alleges that any of the

23   anonymous blog postings about him were attributable to Fertitta Enterprises, any such postings

24   are merely expressions of opinion, not fact, and thus are not actionable defamation claims.

25   **C.    Second Counterclaim: "Violation Of First Amendment Rights."**

26        Bergeron's second counterclaim alleges a violation of his First Amendment rights, which,

27   presumably, is a claim for a civil rights action under 42 U.S.C. § 1983.  See Counterclaim, pp. 8-

28   9.

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89169
(702) 796-5555

101630-001/551218_2.doc                                    8

Section 1983 provides, in pertinent part, as follows:

> Every person who, <u>under color of</u> any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory injunction was violated or declaratory relief was unavailable.

42 U.S.C. § 1983 (emphasis added).

An action pursuant to Section 1983 provides a means of redress to individuals who have been deprived of federal constitutional or federal statutory rights by persons acting under color of state law. See <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988). Section 1983 does not create any substantive rights, but is instead a vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials. See <u>Cholla Ready Mix, Inc. v. Civish</u>, 382 F.3d 969, 978 (9th Cir. 2004). Violation of state law does not give rise to a claim under Section 1983; rather, only violations of rights or privileges created by the U.S. Constitution or federal law. See <u>Moreland v. Las Vegas Metro. Police Dep't</u>, 159 F.3d 365, 373-74 (9th Cir. 1998).

To sustain an action under Section 1983, a plaintiff must show: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a constitutional right. See <u>Balistreri v. Pacifica Police Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1990) (citing <u>Rinker v. Napa County</u>, 831 F.2d 829, 831 (9th Cir. 1987)); <u>see also</u> <u>Butler v. Bayer</u>, 168 P.3d 1055, 1061 (Nev. 2007) (discussing requirement of state action); <u>Boulder City v. Cinnamon Hills Assocs.</u>, 871 P.2d 320, 324-25 (Nev. 1994).

In the case at hand, Fertitta Enterprises is a private party, and private parties generally do not act under color of state law. See <u>Price v. Hawaii</u>, 939 F.2d 702, 707-08 (9th Cir. 1991). Under certain limited circumstances, however, private persons can be acting under color of law

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89169
(702) 796-5555

101630-001/551218_2.doc

9

1    for Section 1983 purposes if engaged jointly with state officials with respect to a challenged

2    action. See Dennis v. Sparks, 449 U.S. 24, 28 (1980). In the case at hand, the only state action

3    apparently claimed by Bergeron is the use of the courts to bring the Complaint and the

4    Preliminary Injunction Motion.

5         "Of course, 'merely resorting to the courts and being on the winning side of a lawsuit

6    does not make a private party a joint actor with the judge.'" Schucker v. Rockwood, 846 F.2d

7    1202, 1205 (9th Cir. 1988) (quoting Dennis, 449 U.S. at 28)). "Invoking state legal procedures

8    does not constitute 'joint participation' or 'conspiracy' with state officials sufficient to satisfy

9    section 1983's state action requirement." Id. (citing Lugar v. Edmondson Oil Co., 457 U.S. 922,

10    939 n.21 (1982)); see also Copple v. Astrella & Rice, P.C., 442 F. Supp. 2d 829, 837 (N.D. Cal.

11    2006); Thomason v. Norman E. Lehrer, P.C., 182 F.R.D. 121, 128-29 (D.N.J. 1998).

12         In the case at hand, Fertitta Enterprises was not a party to and had no involvement in the

13    Litigation until Bergeron included it as an additional counterdefendant in his Counterclaim. As

14    such, Fertitta Enterprises had no involvement in either instituting the Litigation or obtaining the

15    Preliminary Injunction Order against Bergeron. Moreover, even if Fertitta Enterprises did have

16    any involvement in the Litigation, which has never even been alleged, it is a private party merely

17    invoking legal procedures, and thus any such claim lacks the necessary state action for a claim

18    under Section 1983. As such, Bergeron's second counterclaim for violation of his First

19    Amendment rights must be dismissed because it does not allege a cognizable legal theory.[4]

20    **D.    Third Counterclaim: Tortious Interference With Prospective Economic Advantage.**

21         Bergeron's third counterclaim alleges "tortuous" [sic] interference with prospective

22    economic advantage. See Counterclaim, pp. 9-10.

23         Liability for the tort of intentional interference with prospective economic advantage

24    requires proof of the following elements:

25              1.    A prospective contractual relationship between the plaintiff

26    _____

27    [4] In fact, Bergeron's Section 1983 action against Fertitta Enterprises is so meritless and frivolous that Fertitta Enterprises should be awarded its attorneys' fees in having to defend this matter pursuant to 42 U.S.C. § 1988(b). See Cuzze v. University and Cmty. College Sys. of Nev., 172

28    P.3d 131, 135-36 and n.17 (Nev. 2007) (citing Hughes v. Rowe, 449 U.S. 5, 14 (1980)).

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89169
(702) 796-5555

101630-001/551218_2.doc                    10

and a third party;

2.    Knowledge by the defendant of the prospective relationship;

3.    Intent to harm the plaintiff by preventing the relationship;

4.    The absence of privilege or justification by the defendant; and

5.    Actual harm to the plaintiff as a result of the defendant's conduct.

Wichinsky v. Mosa, 847 P.2d 727, 730 (Nev. 1993) (citing Leavitt v. Leisure Sports, Inc., 734 P.2d 1221, 1225 (1987)).

"At the heart of [an intentional interference] action is whether Plaintiff has proved intentional acts by Defendant intended or designed to disrupt Plaintiff's contractual relations. . . ." Lake at Las Vegas Investors Group, Inc. v. Pacific Malibu Dev. Corp., 867 F. Supp. 920, 925 (D. Nev. 1994) (quoting National Right to Life P.A. Com. v. Friends of Bryan, 741 F. Supp. 807, 814 (D. Nev. 1990)).

In the case at hand, Bergeron claims that the interference inflicted upon him is the filing of the Litigation and his having to defend himself in the Litigation. See Counterclaim, ¶ 45. As noted previously herein, Fertitta Enterprises was never a party to the Litigation until Bergeron himself joined it as an additional counterdefendant in his Counterclaim filed on February 19, 2008. Moreover, the only action Fertitta Enterprises has taken in this case to date is the filing of the instant Motion.[5] As such, it is clear that Fertitta Enterprises could never have had any intent to do anything to Bergeron in the Litigation, or, in fact, caused any harm to him in the Litigation. As such, Bergeron's counterclaim for intentional interference with prospective economic advantage against Fertitta Enterprises is simply not plausible, and thus must be dismissed.

E.    **Fourth Counterclaim: "Pain and Suffering."**

Bergeron's fourth counterclaim alleges "pain and suffering" allegedly resulting from the Litigation. See Counterclaim, pp. 10-12. This "claim" must be dismissed because it is not a

---

[5] One who acts in good faith and by appropriate means in defense of a legally protectable interest does not engage in improper interference. See Restatement (Second) Torts, § 773.

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89169
(702) 796-5555

101630-001/551218_2.doc

11

1    cognizable legal theory.

2    First, "pain and suffering" is not a claim for relief; rather, it is a specific type of damages

3    that can be sought if liability based on an underlying claim is established.  See, e.g., Paul v.

4    Imperial Palace, Inc., 908 P.2d 226, 228-29 (Nev. 1995) (discussing damages sought for future

5    pain and suffering arising out of a "slip and fall" negligence action); Banks ex rel. Banks v.

6    Sunrise Hosp., 102 P.3d 52, 61-62 (Nev. 2004).

7    Federal Rule 8(a), made applicable to this adversary proceeding pursuant to Bankruptcy

8    Rule 7008(a), provides, in pertinent part, as follows:

9          (a)    Claim for Relief.  A pleading that states a claim for relief
      must contain:

10          . . .

11          (2)    a short and plain statement of the claim showing
      that the pleader is entitled to relief; and

12
13          (3)    a demand for the relief sought, which may included
      relief in the alternative or different types of relief.

14    Fed. R. Civ. P. 8(a) (emphases added).  Bergeron has set forth alleged damages in the form of

15    "pain and suffering" per Rule 8(a)(3), but has never alleged a cognizable underlying claim to

16    support the recovery of such damages per Rule 8(a)(2).  As such, Bergeron's fourth counterclaim

17    for "pain and suffering" is really not a claim at all, and must be dismissed as a matter of law.

18    Second, to the extent Bergeron's counterclaim for "pain and suffering" could ever be

19    construed as a cognizable claim for relief, it must be dismissed as to Fertitta Enterprises.

20    Xyience originally filed this Litigation against Bergeron, not Fertitta Enterprises.  In response,

21    Bergeron counterclaimed against Xyience and also dragged in Fertitta Enterprises as an

22    additional counterdefendant in his Counterclaim filed on February 19, 2008.  Fertitta Enterprises

23    was not a party to or involved in any way in the Litigation prior to being named a

24    counterdefendant, and thus could have never caused him any pain and suffering in the Litigation.

25    As such, Bergeron's counterclaim against Fertitta Enterprises for pain and suffering arising out

26    of this Litigation is simply not plausible, and thus must be dismissed as a matter of law.

27    . . .

28

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89169
(702) 796-5555

101630-001/551218_2.doc

### III.
### CONCLUSION

WHEREFORE, Fertitta Enterprises respectfully requests that the Court grant the Motion in its entirety, thereby dismissing all of the counterclaims in this matter against it pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Fertitta Enterprises also requests such other and further relief as is just and proper.

DATED this 24th day of March, 2008.

GORDON & SILVER, LTD.

By: _____
GREGORY E. GARMAN, ESQ.
MATTHEW C. ZIRZOW, ESQ.
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89169
Attorneys for Fertitta Enterprises, Inc.

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89169
(702) 796-5555

101630-001/551218_2.doc

13