FENNEMORE CRAIG, P.C.
Laurel E. Davis (NV Bar No. 3005)
Jon T. Pearson (NV Bar No. 10182)
300 South Fourth Street, Suite 1400
Las Vegas, Nevada 89101
Telephone: (702) 692-8000
E-Mail: ldavis@fclaw.com
E-Mail: jpearson@fclaw.com

Attorneys for Plaintiff/Counter-Defendant
**Xyience Incorporated**

**E-filed April 9, 2008**

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>XYIENCE INCORPORATED,<br>a Nevada corporation,<br><br>Debtor. | Chapter 11<br><br>No. BK-S-08-10474-MKN |
| XYIENCE INCORPORATED, a Nevada Corporation,<br><br>Plaintiff,<br><br>v.<br><br>RICHARD BERGERON, an individual<br><br>Defendant. | Adv. No. 08-01082<br><br>**XYIENCE INCORPORATED'S MOTION TO DISMISS AND TO STRIKE RICHARD BERGERON'S COUNTERCLAIMS** |
| RICHARD BERGERON, an individual,<br><br>Counterclaimant,<br><br>v.<br><br>XYIENCE INCORPORATED, a Nevada corporation; FERTITTA ENTERPRISES, INC., a Nevada corporation,<br><br>Counterdefendants. | Date: May 14, 2008<br>Time: 9:30 a.m.<br>Location: 300 Las Vegas Blvd. South<br>Courtroom #2<br>Las Vegas, NV 89101 |

Pursuant to Fed.R.Bankr.P. 7012(b), which incorporates Fed.R.Civ.P. 12(b)(6), Plaintiff/Counter-Defendant Xyience Incorporated ("Xyience" or the "Debtor") submits this Motion to Dismiss Defendant/Counter-Plaintiff Richard Bergeron's ("Mr. Bergeron") Counterclaim for Declamatory [sic] Relief. This Motion is based upon the following points and authorities, the pleadings, papers and other records on file herein, and such argument and further evidence presented to the Court at the time of the hearing.

**POINTS AND AUTHORITIES**

**I.**

**STATEMENT OF FACTS**

1. On July 18, 2007, Xyience filed a Complaint against Mr. Bergeron in the Eighth Judicial District Court, Clark County, Nevada, as Case No. A544781, seeking damages for defamation, tortuous interference with prospective economic advantage, and intentional interference with contract. (See Complaint at Dkt. #3, Exh. 2.) In addition, Xyience sought injunctive relief against Mr. Bergeron with respect to Mr. Bergeron's posting of defamatory material regarding Xyience on his Myspace.com and UnlimitedFightNews.com websites (the "Litigation"). (Id.)

2. On September 6, 2007, the State Court issued a preliminary injunction enjoining Mr. Bergeron, *inter alia*, from posting defamatory remarks on the internet concerning Xyience and requiring him to remove certain defamatory articles that he had posted on the internet. (See Preliminary Injunction Order at Dkt. #3, Exh. 18.)

3. On November 6, 2007, the Preliminary Injunction Order was modified to include Google and Earthlink Inc. so that each may take appropriate action to remove certain defamatory articles that Mr. Bergeron had posted on the internet. (See Modified Preliminary Injunction Order at Dkt. #3, Exh. 28.)

4. On January 18, 2008, Xyience filed its voluntary petition for chapter 11 relief.

5. On February 19, 2008, and despite knowledge that Xyience had sought bankruptcy

relief, Mr. Bergeron filed an Answer to Complaint and Counterclaim for Declamatory [sic] Relief against Xyience asserting claims for relief for: (i) defamation; (ii) violation of first amendment rights; (iii) tortuous interference with prospective economic advantage; and (iv) pain and suffering. (See Counterclaims at Dkt. #3, Exh. 50 ("Counterclaim").) In addition to asserting counterclaims against Xyience,[1] Mr. Bergeron also asserted the same counterclaims against Fertitta Enterprises. (Id.)

6. Notwithstanding Mr. Bergeron's violation of the automatic stay of Section 362 of the Bankruptcy Code, Mr. Bergeron has never properly served his Counterclaim on Xyience. Specifically, Mr. Bergeron's Counterclaim had a Proof of Service attached to it, which claimed that the Counterclaim had been hand delivered to Xyience's previous counsel, Hunterton & Associates as of February 19, 2008, but the Proof of Service was not executed. (See Counterclaim at Dkt. #3, Exh. 50.) On February 21, 2008, Mr. Bergeron filed a separate Certificate of Mailing for the Counterclaim, which indicated that he had mailed the Counterclaim via regular mail to Xyience at its business address of 4572 West Hacienda Avenue, Las Vegas, Nevada 89118. (See Certificate of Mailing at Dkt. #3, Exh. 55.) Mr. Bergeron's service of his Counterclaim at Xyience's business address, however, is not effective because NRCP 5(b)(1) requires service to be upon the attorney unless the Court orders that service be made upon the party.

7. Xyience's current counsel, Fennemore Craig, P.C., did not make its first appearance as counsel for Xyience in the Litigation until February 25, 2008. (See Substitution of Counsel at Dkt. #3, Exh. 58.)

8. On March 20, 2008, Xyience removed the Litigation to Bankruptcy Court where it now remains, pending as the above-captioned adversary proceeding. (See Removal at Dkt. #1.)

---

[1] Mr. Bergeron's filing of counterclaims against Xyience during the pendency of its bankruptcy case was a clear and knowing violation of the automatic stay imposed by Section 362 of the Bankruptcy Code.

## II.

## STANDARD OF REVIEW

Pursuant to Fed.R.Civ.P. 12(b)(6), the Court may dismiss a complaint for "[i] lack of a cognizable legal theory or [ii] insufficient facts under a cognizable legal claim." Henkle v. Gregory, 150 F. Supp. 2d 1067, 1071 (D. Nev. 2001) (quoting Smilecare Dental Group v. Delta Dental Plan, 88 F.3d 780, 783 (9th Cir. 1996)). Although the Court must assume that the facts as alleged in the complaint are true, the Court cannot "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." Comm. for Reasonable Regulation of Lake Tahoe v. Tahoe Reg'l Planning Agency, 311 F. Supp. 2d 972, 984 (D. Nev. 2004) (quoting W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981). In fact, "conclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss." Comm. for Reasonable Regulation of Lake Tahoe, 311 F. Supp. 2d at 984.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atlantic Corp. v. Twombly, --- U.S. ---, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007) (internal citations omitted); see also Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 2944, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

## III.

## ARGUMENT

### A. Mr. Bergeron Has Failed to State a Claim for Relief for Defamation (First Counterclaim).

The general elements of a defamation claim require a plaintiff to prove: (i) a false and defamatory statement by a defendant concerning the plaintiff; (ii) an unprivileged publication to a third person; (iii) fault, amounting to at least negligence; and (iv) actual or presumed damages.

Pegasus v. Reno Newspapers, Inc., 118 Nev. 706, 718, 57 P.3d 82, 90 (2002); Chowdhry v. NLVH, Inc., 109 Nev. 478, 483, 851 P.2d 459, 462 (1993). Moreover, the Supreme Court of Nevada recognizes "the long-standing common law rule that communications uttered or published in the course of judicial proceedings are absolutely privileged." Fink v. Oshins, 118 Nev. 428, 432-33, 49 P.3d 640, 643 (2002); Circus Circus Hotels v. Witherspoon, 99 Nev. 56, 60, 657 P.2d 101, 104 (1983); see Lisowski v. Davis (In re Davis), 312 B.R. 681, 689-90 (Bankr. D. Nev. 2004). This privilege, as its name indicates, is absolute: it "precludes liability even where the defamatory statements are published with knowledge of their falsity and personal ill will toward the plaintiff." Fink, 118 Nev. at 433, 49 P.3d at 643.

Mr. Bergeron's defamation claim is based on: (i) alleged statements that have been made in connection with this Litigation; and (ii) alleged opinions that were posted on anonymous blogs. (See Counterclaims at ¶¶ 30-32.) With respect to any statements that may have been made in connection with this Litigation, it is undeniable that such statements are privileged and, therefore, do not subject Xyience to a claim for defamation.

As for alleged opinions that were posted on anonymous blogs, Mr. Bergeron has failed to make any allegations that such postings were directly attributable to Xyience. Mr. Bergeron merely states that such blogs were "connected . . . to Xyience employees and/or associates through IP addresses." (See Counterclaim at ¶31.) An Internet Protocol ("IP") address is a numeric address for a computer that is connected to the internet.[2] Thus, such alleged blogs were posted anonymously. Moreover, Mr. Bergeron has failed to allege that Xyience's officers and/or directors authorized or directed such alleged employees or associates[3] to post these anonymous blogs. He has also failed to identify the alleged employees or associates or to demonstrate that such actions were taken at the request of Xyience. Accordingly, even assuming all of the facts

---

2 See MERRIAM-WEBSTER ONLINE DICTIONARY, *at* http://www.merriam-webster.com/dictionary/ip%20address.

3 It is worth noting that it is not clear how these alleged associates were even affiliated/related to Xyience.

alleged by Mr. Bergeron in his Counterclaim as true, it is legally impossible for him to state a claim upon which relief can be granted for defamation because: (i) of the litigation privilege; (ii) the alleged blogs were posted anonymously; and (iii) Mr. Bergeron has failed to identify the alleged employees or association or to any way connect them with Xyience and, therefore, his claim for relief for defamation must be dismissed.

**B. Mr. Bergeron Has Failed to State a Claim for Relief for Violation of His First Amendment Rights (Second Counterclaim).**

The United States Supreme Court has long held that the United States Constitution only applies to actions by governments and their agents, and private conduct (*i.e.,* private actors) generally is not regulated by the United States Constitution. See, e.g., Edmonson v. Leesville Concrete Co., Inc., 500 U.S. 614, 619, 111 S. Ct. 2077, 2082, 114 L. Ed. 2d 660 (1991) ("The Constitution's protections of individual liberty . . . apply in general only to action by the government."). In fact, it is a fundamental principle of constitutional law that the First Amendment applies only to state actors.[4] Cooper v. U.S. Postal Service, 482 F. Supp. 2d 278, 286-87 (D. Conn. 2007); Gorman-Bakos v. Cornell Co-op Extension of Schenectady County, 252 F.3d 545, 551 (2d Cir. 2001); see also Riser v. WSYS-TV ABC-6, 2002 U.S. Dist. LEXIS 23654 at *30 (S.D. Ohio July 17, 2002) (stating "the First Amendment . . . does not protect individuals from infringement by private actors"). The purpose of this "state action" requirement is not only to "preserv[e] an area of individual freedom by limiting the reach of federal law and avoi[d] the imposition of responsibility on a State for conduct it could not control . . . but also to assure that constitutional standards are invoked when it can be said that the State is responsible for the specific conduct of which the plaintiff complains." Cooper, 482 F. Supp. 2d at 287; Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295, 121 S. Ct. 924, 148 L. Ed. 2d

---

[4] The Due Process Clause of the Fourteenth Amendment made most provisions of the Bill of Rights, including the First Amendment, applicable to state and local governments, but not to private actors. See, e.g., Cantwell v. Ct., 310 U.S. 296, 303, 60 S. Ct. 900, 903, 84 L. Ed. 1213 ("The fundamental concept of liberty embodied in [the Fourteenth] Amendment embraces the liberties guaranteed by the First Amendment").

FENNEMORE CRAIG, P.C.
LAS VEGAS

807 (2001) (internal quotation marks and citations omitted) (alterations in original).

Moreover, as set forth by Fertitta Enterprises in its Motion to Dismiss the Adversary Proceeding [Dkt. #7], Mr. Bergeron appears to seek to assert a claim under 42 U.S.C. § 1983.[5] However, 42 U.S.C. § 1983, pertains to liability for persons who violate the United States Constitution only when acting pursuant to state government authority (*i.e.,* acted under color of state law). See 42 U.S.C. § 1983.

Xyience is a private party, and private parties generally do not act under color of state law. See Price v. Hawaii, 939 F.2d 702, 707-08 (9th Cir. 1991). The only apparent state action presumably involved is Xyience invoking state legal procedures by commencing this Litigation and seeking an injunction against Mr. Bergeron. However, "merely resorting to the courts and being on the winning side of a lawsuit does not make a private party a joint actor with the judge.'" Schucker v. Rockwood, 846 F.2d 1202, 1205 (9th Cir. 1988) (quoting Dennis v. Sparks, 449 U.S. 24, 28, 101 S. Ct. 183, 186, 66 L.Ed.2d 185 (1980)). In fact, "[i]nvoking state legal procedures does not constitute 'joint participation' or 'conspiracy' with state officials sufficient to satisfy section 1983's state action requirement." Schucker, 846 F.2d at 1205 (citing Lugar v. Edmondson Oil Co., 457 U.S. 922, 939 n.21, 102 S. Ct. 2744, 2755 n.21, 73 L. Ed. 2d 482 (1982)). Accordingly, because Mr. Bergeron failed to make any allegations that Xyience was acting under color of state law, and because of his failure to allege a cognizable legal theory, Mr. Bergeron's Second Counterclaim – Violation of his First Amendment rights – must be dismissed.

---

[5] An action pursuant to Section 1983 provides a means of redress to individuals who have been deprived of federal constitutional or federal statutory rights by persons acting under color of state law. See West v. Atkins, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55, 101 L. Ed. 2d 40 (1988). Section 1983 does not create any substantive rights, but is instead a vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials. See Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 978 (9th Cir. 2004). Violation of state law does not give rise to a claim under Section 1983. Instead, only violations of rights or privileges created by the United States Constitution or federal law. See Moreland v. Las Vegas Metro. Police Dep't, 159 F.3d 365, 373-74 (9th Cir. 1998).

**C. Mr. Bergeron Has Failed To State a Claim for Relief for Tortuous Interference With Prospective Economic Advantage (Third Counterclaim)**

To assert a claim for relief for tortuous interference with prospective economic advantage, a party must prove: (i) A prospective contractual relationship between the plaintiff (or counterclaimant) and a third party; (ii) Knowledge by the defendant (or counter-defendant) of the prospective relationship; (iii) Intent to harm the plaintiff by preventing the relationship; (iv) The absence of privilege or justification by the defendant; and (v) Actual harm to the plaintiff as a result of the defendant's conduct. Wichinsky v. Mosa, 109 Nev. 84, 87-88, 847 P.2d 727, 730 (1993). Improper or illegal interference is crucial to the establishment of this tort. Las Vegas-Tonopah-Reno Stage Line, Inc. v. Gray Line Tours of S. Nev., 106 Nev. 283, 287 n.1, 792 P.2d 386, 388 n.1 (1990).[6] Failure to plead and provide sufficient proof for each of these elements should result in dismissal of the claim. Wichinsky, 109 Nev. at 88, 847 P.2d at 730.

Mr. Bergeron claims that the interference inflicted upon him is the commencement of the Litigation and his having to defend himself in the Litigation. (See Counterclaim at ¶45.) Even assuming all of the facts alleged by Mr. Bergeron in his Counterclaims as true, it is legally impossible for him to state a claim upon which relief can be granted for this tort because he has failed to allege that Xyience knew of any prospective contractual relationship between Mr. Bergeron and a third party, nor has he alleged that Xyience commenced this Litigation with the intent to harm Mr. Bergeron by preventing the relationship with such third party. Moreover, by commencing this Litigation, Xyience did not do anything illegal or improper. Xyience is ***justified***

---

[6] With respect to the intent element, Nevada has adopted the view expressed in the Restatement (Second) of Torts: "The interference with the other's prospective contractual relation is intentional if the actor desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action." Las Vegas-Tonopah-Reno Stage Line, Inc.,106 Nev. at 287-88, 792 P.2d at 388 (1990); RESTATEMENT (SECOND) OF TORTS § 766B(d) (1979). "At the heart of [an intentional interference] action is whether Plaintiff has proved intentional acts by Defendant intended or designed to disrupt Plaintiff's contractual relations . . . ." Lake at Las Vegas Inv. Group, Inc. v. Pac. Malibu Dev. Corp., 867 F. Supp. 920, 925 (D. Nev. 1994) (quoting Nat. Right to Life P.A. Com. v. Friends of Bryan, 741 F. Supp. 807, 814 (D. Nev. 1990)).

in seeking protection from the courts for actions taken by Mr. Bergeron. Accordingly, Mr. Bergeron's claim for relief for intentional interference with prospective economic advantage must be dismissed.

**D. Mr. Bergeron's "Claim" For Pain and Suffering Must Be Dismissed.**

Mr. Bergeron has improperly denominated certain remedies as claims for relief or causes of action. Specifically, "pain and suffering" is a specific type of damage (*i.e.,* a remedy for an alleged wrong) that can be sought if liability based on an underlying claim is established; however, it is not a separate cause of action. See, e.g., Paul v. Imperial Palace, Inc., 111 Nev. 1544, 1548, 908 P.2d 226, 228-29 (1995) (discussing damages sought for future pain and suffering arising out of a "slip and fall" negligence action); Banks ex rel. Banks v. Sunrise Hosp., 120 Nev. 822, 836, 102 P.3d 52, 61-62 (2004). It is well-settled that remedies disguised as causes of action must be dismissed. See, e.g., Hoover v. Crawford, No. 3:06-CV-00212, 2007 WL 1381777 at *8 (D. Nev. May 10, 2007) (dismissing remedies because they are not causes of action); Lund v. J.C. Penny Outlet, 977 F. Supp. 442, 445 (D. Nev. 1996) (dismissing cause of action for punitive damages because it is a remedy not a cause of action); see also Badillo v. Am. Brands, Inc., 117 Nev. 34, 41, 16 P.3d 435, 440 (2001) (holding that "[w]e cannot recognize a remedy absent an underlying cause of action").

Mr. Bergeron's Fourth Counterclaim – Pain and Suffering, is not a cause of action. "Pain and suffering," is a measure of damages, and Mr. Bergeron has failed to state any cognizable underlying cause of action to support such a measure of damages. Accordingly, Mr. Bergeron's Fourth Counterclaim – Pain and Suffering – must be dismissed.

**E. Mr. Bergeron's "Points and Authorities" Should Be Stricken**

Fed.R.Civ.P. 12(f) provides that "the court may strike from a pleading an insufficient defense or any redundant, ***immaterial, impertinent***, or scandalous matter." See Fed.R.Civ.P. 12(f) (emphasis added). In addition to his counterclaims, Mr. Bergeron has also provided Points and Authorities in his Answer and Counterclaim. (See Counterclaim pp. 14-28.) The Points and

Authorities are immaterial and to the Counterclaim. Accordingly, pursuant to Fed.R.Civ.P. 12(f), Xyience respectfully requests that Mr. Bergeron's Points and Authorities, and the supporting exhibits, be stricken.

## IV.

## CONCLUSION

For the reasons set forth above, Xyience respectfully requests that this Court grant its Motion to Dismiss and dismiss Mr. Bergeron's Counterclaims.

DATED this 9th day of April, 2008.

FENNEMORE CRAIG, P.C.

By: /s/ Jon T. Pearson
Jon T. Pearson

Counsel for Plaintiff/Counter-Defendant
**Xyience Incorporated**

18485.1/23805.002