RECEIVED & FILED

ORIGINAL APR 3 3 10 PM '08

U.S. BANKRUPTCY COURT
MARY A. SCHOTT, CLERK

Rich Bergeron
147 OLD COUNTY ROAD
East Sandwich, MA 02537
Telephone: (617) 209-4325
Defendant as Pro Se Attorney

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

In Re:

XYIENCE, INC., A Nevada Corporation

Debtor.

XYIENCE INCORPORATED, a Nevada Corporation,
Plaintiff,

v.

RICHARD BERGERON, an individual
Defendant.

RICHARD BERGERON, an individual,

Counterclaimant,

v.

XYIENCE INCORPORATED, a Nevada corporation; FERTITTA ENTERPRISES, INC., a Nevada corporation,

Counterdefendants.

No. BK-S-08-10474-MKN
Chapter 11

Eighth Judicial District Court
Las Vegas, Clark County, Nevada
Case No. A544781, Dept. XXIII

CASE NO. BK-2-08-AP-01082-MKN

**COUNTERCLAIMANT'S OPPOSITION TO FERTITTA ENTERPRISES, INC. MOTION TO DISMISS ADVERSARY PROCEEDING**

Hearing Date: April 30, 2008

Time: 9:30 AM

Location: 300 Las Vegas Blvd. South
Courtroom #2
Las Vegas, NV 89101

**"The Constitution exists precisely so that opinions and judgments, including esthetic and moral judgments about art and literature, can be formed, tested, and expressed. What the Constitution says is that these judgments are for the individual to make, not for the Government to decree, even with the mandate or approval of a majority. Technology expands the capacity to choose; and it denies the potential of this revolution if we assume the Government is best positioned to make these choices for us."**

***Supreme Court Justice Anthony M. Kennedy, United States et al. v. Playboy Entertainment Group, Inc.***

Fertitta Enterprises, Inc. attorneys Gordon & Silver, Ltd seeks dismissal of the counterclaim filed against their client in this case based on their contention that Counter-Plaintiff Rich Bergeron failed to state a claim upon which relief can be granted. The motion to dismiss is flawed in many areas, and it actually goes as far as making Bergeron's case for him in several instances.

Gordon & Silver, Ltd Attorneys also misrepresent the facts of the case significantly and point to their client having no involvement in Xyience's case against Bergeron. This is an outright lie. Fertitta Enterprises is heavily involved in this litigation against Bergeron and is responsible for violating Bergeron's First Amendment rights by inspiring this frivolous lawsuit in the first place. Fertitta Enterprise's quid-pro-quo agreement with Xyience to fund the company in exchange for Xyience securing a preliminary injunction is confirmed both by Xyience's initial request for a preliminary injunction and by the e-mail and faxed injunction order sent by Mike Hilson and listed as Exhibit 11.

Fertitta Enterprises also oversaw the case against Bergeron as the primary financier of Xyience once they provided the funding. Under that financing the Bergeron case has thus far had 3 different lawyers representing the plaintiff Xyience. These lawyers would have naturally been paid for by the Fertitta financing. Representatives acting on behalf of Fertitta Enterprises subsidiary Zyen, LLC actually engaged in settlement negotiations with Bergeron that resulted in a rejected $5,000 offer to Bergeron in November, 2007. As part of those negotiations Bergeron was flown to New York City, given two tickets to the Ultimate Fighting Championship's UFC 78, treated to lunch, provided $700 in spending money, and put up in a $600 per-night hotel room in Times Square.

The counter-defendant's attorneys are clearly unaware of the details of this case and have not done sufficient research to debunk any of Bergeron's claims. They point to the need for Bergeron to state a "plausible," and not merely "conceivable" argument, yet they have provided absolutely no factual evidence to dispute any of Bergeron's information and evidence in the counterclaim.

The counter-defendant's own motion indicates that the injunction order in this case made

specific reference to the UFC, which is 90% owned by Lorenzo and Frank Fertitta III:

> impression that Xyience is being investigated by the SEC." See id. at Ex. 18. The Preliminary Injunction Order further ordered that Bergeron "shall remove any and all articles claiming that Xyience is defrauding investors and/or is conspiring with Dana White or the Ultimate Fighting Challenge to defraud investors." The Preliminary Injunction Order further ordered that Bergeron "shall be enjoined from communicating any statements or making any representations which in any manner state, advise, represent, asset, allege, suggest or imply in any manner which is intended to, or does evoke an inference or create impression that Xyience is defrauding investors and/or conspiring with Dana White or the Ultimate Fighting Challenge to defraud investors."

At all times this litigation was meant to deny Bergeron his First Amendment rights. The filing of this frivolous lawsuit and the resulting unconstitutional preliminary injunction order was meant to illegitimately cleanse the reputations of Xyience and Fertitta Enterprises representatives while sullying Bergeron's good name. Though Fertitta Enterprises was never a formal party to this litigation until Bergeron named them as counter-defendants, they acted in direct support of this litigation and benefited greatly from the injunction order. At all times both counter-plaintiffs acted in collusion to remove Bergeron's true stories from the Internet and to prevent Bergeron from writing about the fraudulent activity both counter-defendants engaged in to ultimately support and sustain the bankruptcy now underway.

Even though Fertitta Enterprises may be justified in denying culpability as far as their direct involvement in defaming Bergeron, they provide the following argument (from page 7 of their motion to dismiss) that actually debunks their fellow counter-plaintiff Xyience's case against Bergeron:

> In the specific context of blogs, courts recognize that internet sources by their nature are inherently unreliable, and are for the expression of opinions, not facts. See SPX Corp. v. Doe, 253 F. Supp. 2d 974, 981 (N.D. Ohio 2003) (granting motion to dismiss defamation claim and stating that "[s]uch message boards are accessible to anyone of the tens of millions of people in this country (and more abroad) with Internet access, and no one exerts control over the content. Pseudonym screen names are the norm. A reasonable reader would not view the blanket, unexplained statements at issue as 'facts' when placed on such an open and uncontrolled forum."); Global Telemedia Intern., Inc. v. Doe 1, 132 F. Supp. 2d 1261, 1267 (C.D. Cal. 2001)

Regardless of their claims above, Xyience and Fertitta Enterprises were equally culpable when they provided a statement to News Radio 840 KXNT Talk Show Host Casey Hendrickson in which they defamed Bergeron repeatedly.

The Supreme Court established the modern version of the "clear and present danger" doctrine

in the case of Brandenburg v. Ohio, 395 U.S. 444, 89 S. Ct. 1827, 23 L.Ed.2d. 430 (1969), holding that states only could restrict speech that "is directed to inciting or producing imminent lawless action, and is likely to incite or produce such action." Xyience and Fertitta Enterprises both colluded to deny Bergeron his due right to report on their collective activities.

Xyience and Fertitta Enterprises both acted under the color of the law through several licensed legal representatives and the Nevada court system to deny Bergeron's right to report the truth. Furthermore, when public figures are involved, there are even broader constitutional protections against injunction of speech and press reports. Bergeron has cited these statutes in multiple pleadings and provided ample evidence proving both counter-defendants are either public figures or become such by aligning themselves with a major public issue (i.e. the sport of mixed martial arts).

The Fertitta motion to dismiss further proves Bergeron's case against them by citing 42 U.S.C. Section 1983, though Bergeron is not specifically asking for relief under that statute. Nevertheless, by their own argument, they show their culpability for violating Bergeron's civil rights. The quoted portion of Section 1983 listed in the Fertitta motion points directly to the appropriate liability due to "the party injured in an action at law, suit in equity, or other proper proceeding for redress." That glaring evidence they provided against themselves unwittingly also debunks their claim of immunity since the matter at hand is related to litigation against Bergeron.

Further representing their complete lack of knowledge of the facts of the case, the counter-defendants attorneys also include the following flawed argument on page 10 of their motion to dismiss:

> "Of course, 'merely resorting to the courts and being on the winning side of a lawsuit does not make a private party a joint actor with the judge.'" Schucker v. Rockwood, 846 F.2d 1202, 1205 (9th Cir. 1988) (quoting Dennis, 449 U.S. at 28)). "Invoking state legal procedures does not constitute 'joint participation' or 'conspiracy' with state officials sufficient to satisfy section 1983's state action requirement." Id. (citing Lugar v. Edmondson Oil Co., 457 U.S. 922, 939 n.21 (1982)); see also Copple v. Astrella & Rice, P.C., 442 F. Supp. 2d 829, 837 (N.D. Cal. 2006); Thomason v. Norman E. Lehrer, P.C., 182 F.R.D. 121, 128-29 (D.N.J. 1998).

First and foremost, neither Xyience or Fertitta Enterprises is "on the winning side" of this lawsuit. Additionally, they have not invoked "state legal procedures" alone. They have willingly and knowingly elevated what they know to be a frivolous case to the federal level through removing this action to bankruptcy court. The frivolous character of the proceedings are evidenced by Bergeron's

multiple exhibits proving his innocence of all charges.

Fertitta Enterprises was in a direct funding position of Xyience when the decision to relieve Attorney Jamie Cogburn was made after Bergeron had categorically proven Cogburn's case to be completely frivolous. Bergeron's Rule 11 Motion outlines each and every area in which Cogburn manipulated the evidence, made up facts, and misrepresented his own exhibits. Cogburn furthermore suborned perjury when he drafted Adam Frank's affidavit and instructed Frank to sign the statement that Frank would later contradict in a recorded conversation. Despite their refusal to pay Cogburn under Fertitta Enterprises funding, Xyience hired a new lawyer to continue his frivolous case. While failing to support any of the case's merits and neglecting to present any new evidence contradicting what Bergeron has since provided, Fertitta Enterprises colluded to deny Bergeron his First Amendment rights. The counter-defendant did so through a proceeding that also sought to extract a $25 million judgment from Bergeron based on a completely false claim they knew they could never justify.

By the following statement in the Fertitta motion, Gordon & Silver, Ltd takes a page out of Cogburn's book and tries to misrepresent and make up the facts:

> In the case at hand, Fertitta Enterprises was not a party to and had no involvement in the Litigation until Bergeron included it as an additional counterdefendant in his Counterclaim. As such, Fertitta Enterprises had no involvement in either instituting the Litigation or obtaining the Preliminary Injunction Order against Bergeron. Moreover, even if Fertitta Enterprises did have any involvement in the Litigation, which has never even been alleged, it is a private party merely invoking legal procedures, and thus any such claim lacks the necessary state action for a claim under Section 1983. As such, Bergeron's second counterclaim for violation of his First Amendment rights must be dismissed because it does not allege a cognizable legal theory.[4]

It is a complete falsehood that Fertitta Enterprises had "no involvement" in this litigation until they were added as a counter-defendant. It is even more egregious and paramount to perjury to proclaim that they also had "no involvement in either instituting the Litigation or obtaining the Preliminary Injunction Order against Bergeron." On the contrary, Fertitta Enterprises inspired both the litigation and the seeking of the unconstitutional injunction through their direct promise to Xyience officials to provide up to $15 million in capital should Bergeron's stories be successfully removed from the Internet. The above passage further misrepresents the facts by claiming that Bergeron's claim seeking redress due to Fertitta Enterprises' egregious behavior in this matter does not justify a "cognizable legal theory." To fully support that argument, Fertitta Enterprises attorneys

would have to additionally prove that the First Amendment to the United States Constitution fails to state Bergeron's right to free speech and has nothing to do with freedom of the press. Those same attorneys would have to prove the Supreme Court's entire history of ruling against prior restraints is inapplicable to these proceedings.

The Fertitta motion spends only a few fleeting paragraphs on trying to prove no culpability as to Fertitta Enterprises regarding Bergeron's third and fourth counterclaims. Fertitta Enterprises was in a position to directly influence and inspire this litigation, and at all times they sought to prevent Bergeron from publishing the facts of their involvement. Their behavior in making a promise of capital to Xyience in order to promote the quest for a preliminary injunction is evident in the fact that Xyience has made absolutely no effort to return to any merits of their case since the Fertitta funding became official after they secured the injunction. They have virtually abandoned the case except for trying to delay relief and avoid accountability at all costs. Bergeron stands by the third and fourth counterclaims and points to the justification for them that he has already laid out in the February 19th Counterclaim motion with attached evidence to back up the merits of those claims.

**CONCLUSION**

James Madison's version of the First Amendment's speech and press clauses, introduced in the House of Representatives on June 8, 1789, provided: "The people shall not be deprived or abridged of their right to speak, to write, or to publish their sentiments; and the freedom of the press, as one of the great bulwarks of liberty, shall be inviolable."

Full acceptance of the theory that the Amendment operates not only to bar most prior restraints of expression but subsequent punishment of all but a narrow range of expression, in political discourse and indeed in all fields of expression, dates from a quite recent period, although the Supreme Court's movement toward that position began in its consideration of limitations on speech and press in the period following World War I.

18 U.S.C. § 241 provides in pertinent part:

"If two or more persons conspire to injure, oppress, threaten, or intimidate any inhabitant of any State. . . in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same . . . They shall be [guilty of an offense against the United States]."

The statute thus specifically prohibits individuals from conspiring to violate federally

protected rights. As the Supreme Court has repeatedly held, Section 241 is a valid exercise of congressional authority to enforce all rights guaranteed by the Constitution and laws of the United States. See, e.g., United States v. Johnson, 390 U.S. 563 (1968); United States v. Price, 383 U.S. 787 (1966), United States v. Classic, 313 U.S. 299 (1941).

Both counter-defendants are now utilizing this federal court system to continue their attempts to deprive Bergeron of his constitutional protections. The case itself was designed through a conspiracy between both counter-defendants to fabricate a frivolous piece of litigation in order to achieve a preliminary injunction that Fertitta Enterprises would pay $15 million to Xyience in order to achieve.

The First Amendment is a powerful and over-riding document that protects a great deal of speech and expression, even if it may be highly offensive. Most instances of hate speech and the act of cross burning are protected despite the moral repugnance most U.S. citizens feel toward that behavior. Yet, here before this court is an instance in which a reporter has been enjoined for promoting the morally responsible absolute truth and is still being victimized by a frivolous lawsuit seeking $25 million in damages against him. Bergeron has followed the tenets of his profession as a journalist and acted in accordance with his duties and moral obligations as a writer, a Catholic, and a principled individual parented by two civil servants. His character is further steeled by his graduation from military college in which he followed an honor code faithfully and had the value of "service before self" ingrained in him.

To go even further, Bergeron has taken up the cause of countless victims of this egregious situation by filing these counterclaims in an effort to provide relief to all injured parties. The preliminary injunction secured against Bergeron set in motion a chain of events which significantly altered the course of hundreds and perhaps thousands of lives in a negative manner. Xyience and Fertitta Enterprises utilized the court system to victimize these people, and they continue to act with great disrespect for the law and the entire judicial system by pressing what they know to be a frivolous case. Each and every motion they file to justify their egregious actions or escape accountability is an affront to justice itself.

Despite no formal discovery accomplished in this case, Bergeron has compiled a virtual library of information documenting the fraudulent behavior of both counter defendants. The plaintiffs have failed to initiate any discovery, knowing that once they enter that stage of the

litigation they will be forced to produce further evidence of what Bergeron has already discovered. They also know that discovery will be useless to them, because they will be unable to discover what was never true in the first place.

Bergeron's motions and actions in this litigation have always been motivated by admirable principles. Through fighting for his First Amendment rights to print the painful truth he is providing a precedent for other writers like himself, other folks who find themselves unable to afford an attorney despite knowing they are in the right, and all those suffering from the counter defendants' pressing of a fraudulent bankruptcy scheme designed to unjustly enrich themselves.

Bergeron fully intends to amend his counterclaims in this case to include Civil Rico Act claims and to attach multiple aggrieved parties injured by Fertitta Enterprises and Xyience pursuing a corrupt scheme which at all times sought to alienate everyone who helped create and build Xyience. He can only make that claim because he is in possession of numerous documents, has a vast array of inside knowledge gleaned from hours of conversations with some of the most integral players, and has been forced by this very litigation to dig as deep as possible into the activities of all involved in these bankruptcy proceedings.

Although it has by no means been an enjoyable process to have to go to such great lengths to prove his innocence, as a result of this case Bergeron has strengthened the evidence of the counter defendants' fraudulent behavior that he simply hinted at in the first stories he published. He has provided actionable information to federal investigators since discovering the true depth of the fraud in this case, and he continues to communicate with those investigators. As mentioned in the counterclaim, he has even been duty bound to downplay the extent of his knowledge base and fostered relationship with federal agencies due to their need for secrecy to conduct a more effective investigation.

The founders of this great Democracy took bold steps to make sure that all citizens of this country would be guaranteed certain rights that were meant to be absolute and "unalienable." Not only were bloody military campaigns fought to initially secure those rights through secession and independence from England, but conflicts are still being fought today to protect the same rights and help bring them to the people of foreign lands. It is deplorable to imagine that a situation like Bergeron faces here is not easily corrected in such a society so many have worked so hard and sacrificed so much to create and sustain. Yet, it is actually happening, so there is no need for

imagination.

It is as if the counter-defendants in this case have been able to drag these proceedings on for nearly nine months now based solely on what they believe to be the infallible principle that two plus two equals five. Instead of recognizing the absolute ridiculousness of such a statement, the courts have thus far accepted and ratified it by allowing these proceedings to continue and thrive, wasting precious time and energy on what is clearly a frivolous matter. Meanwhile the plaintiffs and their lawyers have enriched themselves unjustly while instigating an incredible amount of damage done to countless injured parties.

Should relief not be granted in a timely manner, Fertitta Enterprises and Xyience will be able to continue and complete the process of defrauding Bergeron, hundreds of investors, various creditors, the general public, investment outfits, banking institutions, and this very court. The counter-defendants have both failed to implicate Bergeron in any false reporting via definitive evidence that cannot be contradicted.

According to the National Bureau of Economic Research:

> What external control mechanisms are most effective in detecting corporate fraud? To address this question we study in depth all reported cases of corporate fraud in companies with more than 750 million dollars in assets between 1996 and 2004. We find that fraud detection does not rely on one single mechanism, but on a wide range of, often improbable, actors. Only 6% of the frauds are revealed by the SEC and 14% by the auditors. More important monitors are media (14%), industry regulators (16%), and employees (19%).

To adequately root out fraudulent behavior in today's society, a vigilant work force and press are essential. Bergeron has relied on several high and low level Xyience employees and honest, hard-nosed investigative reporting to find the truth at the heart of this matter. He has also presented complete audit reports that Xyience itself has not released to date in this bankruptcy. In addition, he has engaged in conversation and communications with federal investigators that include SEC agents. He has managed to recruit the help of all but one of the above actors in detecting fraud at highly profitable institutions.

He has done all this to root out fraud at a highly volatile corporation which could have had much greater promise and potential if led by more honest people. His reports and great efforts to expose the ongoing fraud have thus far been met with the justice system's reluctance to see the big picture and examine the bulk of the evidence. It is not too late to ensure that Bergeron's example is validated as the truly noble cause it represents instead of being vilified as the witch hunt it has been

improperly characterized as. The ongoing tragedy will only get worse the longer dishonesty continues to prevail and dirty legal tricks can be utilized to escape accountability.

Fertitta Enterprises is the instigator of this entire fraud, the motivating financial factor behind the institution of this frivolous case, and the facilitator of the constant suffering of so many innocent people affected by this illegitimate bankruptcy filing. They have exhibited similar behavior before and will keep doing so until someone stands in their way and stops believing in their lies. They should be duly punished for perpetrating those lies instead of being allowed to use the courts to illegitimately persecute the one trying to expose their fraud for what it is.

Furthermore, the question must be asked:

How can the counter-defendant be granted a hearing on their motion to dismiss before Bergeron can be allowed to participate in hearings on his motions that have been filed for months in this matter? Bergeron's motion for Rule 11 sanctions and motion to dismiss the initial case should be heard well before the counter-defendant's motion to dismiss should even be entertained. Bergeron is due a fair opportunity to prove outright that the plaintiff's entire case is frivolous before the counter-defendants can be allowed to attempt to throw his counterclaim out. It would be operating in a backwards, completely illogical manner to hear a motion on the counterclaim before long-awaited motions on the initial case are able to be held.

Until Fertitta Enterprises can miraculously produce some proof that they really had nothing to do with dragging Bergeron through this court process and instigating this frivolous suit, the counter-defendant's motion to dismiss should be denied and Bergeron's motion for summary judgment should be granted.

Dated This 7th Day of April, 2008

IN PROPER PERSON

Rich Bergeron

Rich Bergeron M.S.

Rich Bergeron
147 Old County Road
East Sandwich, MA 02537
617-209-4325
Attorney Pro-Se
Rich.Bergeron@gmail.com

**EXHIBIT 11**

**Form Number 1**
From: Mike Hilson < mike_hilson@hotmail.com>
Date: Sep 7, 2007 3:05 AM
Subject: RE: A little Xyience Update
To: rich.bergeron@gmail.com

Rich :

For the past couple of months I have not kept current on Xyience. Until today I had assumed that the company was running out of money and was just trying to hang on for a few more months for a futile IPO attempt. (My "investor" friend got a letter addressed to current shareholders about a month ago begging for a further investment in shares to be priced in the $2.50 to $3.50 range. This alarmed him because he paid $4.00 each back in February).

Anyways, today my friend got an unexpected visit from the roper who convinced him to buy stock back in February. I was present, as I was meeting my friend on an unrelated matter.

This roper proclaimed he had some great news about Xyience, and gave my friend photocopies of a "PRELIMINARY INJUNCTION ORDER" filed by Xyie counsel on 9-06-2007 at 10:07 a.m. (I can fax it to you if you provide a number).

He claimed that Xyience had successfully sued you and that they were awarded legal costs and that furthermore, you had been fined $1,000.00 and sentenced to 30 days jail, suspended. Also, that you had been ordered to remove from the Internet all references to Xyience by midnight tonight or be found in contempt.He claimed that you were a former employee/investor who was on a vendetta. The "good" news was that with you out of the way, Xyience could now raise the necessary bridge financing (he mentioned Dana White and the Fertittia brothers by name as sources for $15 million each), and go public- at $20-$30 per share- in January. He claimed that 10 investment houses were competing for the offering and that Xyience was going with Bear Stearns. He also claimed that he had increased his shareholdings in Xyience and had lent Russell Pike a 6-figure amount which would earn interest at 10% per month !!!! until Xyience goes public. He mentioned to my friend that Mr. Pike would like to borrow more money on these terms and seemed to be trying to persuade my friend to put money in both of these dubious investments. After listening to this nut praise Mr. Pike and his creditworthiness for a few minutes, I made a photocopy of the court document and excused myself.

Rich, I want you to know that I am inclined to believe that you are an earnest journalist who wants to report the truth. From personal experience, I know that it is hard to fight a court injuction. I also know that lawyers for crooks are rarely held accountable for what they say or submit in writing to a court, and that fighting the good fight can be long and lonely. If there is anything I can do to help you (except cash.... I'm tapped!), do not hesitate to contact me.

Best of luck,
Mike.

FAX SENT BY HILSON:

SEP 07 2007 2:14PM HP LASERJET 3200 P.1

ORDR
**COGBURN LAW OFFICES**
JAMIE S. COGBURN, ESQ.
Nevada State Bar No. 008409
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 384-3616
Attorneys for Plaintiff

FILED
Sep 6 10 07 AM '07
CLERK OF THE COURT

COGBURN LAW OFFICES
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 384-3616 FAX: (702) 943-1936

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

XYIENCE INCORPORATED, a Nevada Corporation,

Plaintiff,

v.

RICHARD BERGERON, an Individual,

Defendant.

Case No: A 544781
Dept. No.: XVI

**PRELIMINARY INJUNCTION ORDER**

Date of Hearing: August 9, 2007
Time of Hearing: 9:00 a.m.

THIS MATTER having come on before this court on the 9th day of August, 2007, on Plaintiff's Motion for Preliminary Injunction with Plaintiffs appearing by and through their counsel of record, Jamie S. Cogburn, Esq., and Defendant, Richard Bergeron not present, but having sufficient notice of the hearing. The Court having reviewed the papers and pleadings on file herein, and having heard the argument of counsel and good cause appearing therefore,

**IT IS HEREBY ORDERED**, that Plaintiffs Motion for Preliminary Injunction is Granted pursuant to NRCP 65 and Sobol v. Capital Mangmt. Consultants, 102 Nev. 444, 726 P.2d 335 (1986), as Xyience has showed that there is a strong likelihood of success on the merits, there is a threat of irreparable harm, there is little to no harm that will result to the Defendant, and this Court has an interest to protect the public from defamatory statements.

COGBURN LAW OFFICES
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 384-3616 FAX: (702) 943-1936

**IT IS FURTHER ORDERED**, that the Defendant, Richard Bergeron, shall remove any and all articles or postings regarding false claims about Xyience from the internet and Defendant shall be enjoined from communicating any statements or making any representations which in any manner state, advise, represent, assert, allege, suggest, or imply, in any manner which is intended to, or does evoke an inference or create an impression that Xyience is being investigated by the SEC.

**IT IS FURTHER ORDERED** that the Defendant, Richard Bergeron, shall remove any and all articles claiming that Xyience is defrauding investors and/or is conspiring with Dana White or the Ultimate Fighting Challenge to defraud investors. Richard Bergeron shall be enjoined from communicating any statements or making any representations which in any manner state, advise, represent, assert, allege, suggest, or imply, in any manner which is intended to, or does evoke an inference or create an impression that Xyience is defrauding investors and/or conspiring with Dana White or the Ultimate Fighting Championship to defraud investors.

**IT IS FURTHER ORDERED** that if Defendant, Richard Bergeron, fails to remove the defamatory articles regarding Xyience, then Xyience may take appropriate actions with internet service providers to have the defamatory articles removed.

SEP 07 2007 2:14PM HP LASERJET 3200 p.3

**IT IS FURTHER ORDERED** that the instant Preliminary Injunction Order is conditioned upon the posting of security by Plaintiffs in the sum of $ 1,000.00.

TIMOTHY G. WILLIAMS

DISTRICT COURT JUDGE 9/26/07

Respectfully submitted by:

COGBURN LAW OFFICES

By: ______________________

Jamie S. Cogburn, Esq.
Nevada State Bar No. 008409
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
Attorneys for Plaintiff

COGBURN LAW OFFICES
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 384-3616 FAX: (702) 943-1936