FENNEMORE CRAIG, P.C.
Laurel E. Davis (NV Bar No. 3005)
Jon T. Pearson (NV Bar No. 10182)
300 South Fourth Street, Suite 1400
Las Vegas, Nevada 89101
Telephone: (702) 692-8000
E-Mail: ldavis@fclaw.com
E-Mail: jpearson@fclaw.com

Attorneys for Plaintiff/Counter-Defendant
**Xyience Incorporated**

**E-filed April 21, 2008**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>XYIENCE INCORPORATED, a Nevada corporation,<br><br>Debtor. | Chapter 11<br><br>No. BK-S-08-10474-MKN |
| XYIENCE INCORPORATED, a Nevada Corporation,<br><br>Plaintiff,<br><br>v.<br><br>RICHARD BERGERON, an individual<br><br>Defendant. | Adv. No. 08-01082<br><br>Date: (Not set for hearing)<br>Time: (Not set for hearing)<br>Location: 300 Las Vegas Blvd. South<br>Courtroom #2<br>Las Vegas, NV 89101 |
| RICHARD BERGERON, an individual,<br><br>Counterclaimant,<br><br>v.<br><br>XYIENCE INCORPORATED, a Nevada corporation; FERTITTA ENTERPRISES, INC., a Nevada corporation,<br><br>Counterdefendants. | **XYIENCE'S OPPOSITION TO DEFENANT/COUNTERCLAIMANT RICHARD BERGERON'S MOTION TO DISMISS** |

Plaintiff/Counter-Defendant Xyience Incorporated ("Xyience" or the "Debtor") submits this Opposition to Defendant/Counterclaimant Richard Bergeron's ("Mr. Bergeron") *Motion to Dismiss [Dkt. #3, Exh. 47]* ("Motion"). This Opposition is based upon the following points and authorities, the pleadings, papers and other records on file herein, and such argument and further evidence presented to the Court at the time of any hearing.

## POINTS AND AUTHORITIES

## I.

## STATEMENT OF FACTS

1. On July 18, 2007, Xyience filed a Complaint against Mr. Bergeron in the Eighth Judicial District Court, Clark County, Nevada ("State Court"), as Case No. A544781, seeking damages for defamation, tortuous interference with prospective economic advantage, and intentional interference with contract. (See Complaint at Dkt. #3, Exh. 2.) In addition, Xyience sought injunctive relief against Mr. Bergeron with respect to Mr. Bergeron's posting of defamatory material regarding Xyience on his Myspace.com and UnlimitedFightNews.com websites (the "Litigation"). (Id.)

2. On September 6, 2007, the State Court issued a preliminary injunction enjoining Mr. Bergeron, *inter alia*, from posting defamatory remarks on the internet concerning Xyience and requiring him to remove certain defamatory articles that he had posted on the internet. (See Preliminary Injunction Order at Dkt. #3, Exh. 18.)

3. On or about October 5, 2007, because Mr. Bergeron had failed to answer the Complaint, a Three Day Notice was sent and a default was entered against Mr. Bergeron ("Default"). (See Default at Dkt. #3, Exh. 23 and Three Day Notice at Dkt. #3, Exh. 24.) Although a Default had been entered against Mr. Bergeron, Mr. Bergeron continued to improperly file subsequent motions, such as his Motion to Dismiss that he filed on October 9, 2007, in the Litigation.

4. On November 6, 2007, the Preliminary Injunction Order was modified to include

Google and Earthlink Inc. so that each may take appropriate action to remove certain defamatory articles that Mr. Bergeron had posted on the internet. (See Modified Preliminary Injunction Order at Dkt. #3, Exh. 28.)

5. On January 18, 2008, Xyience filed its voluntary petition for chapter 11 relief ("Chapter 11 Case").

6. On February 7, 2008, Mr. Bergeron re-filed a Motion to Dismiss. [Dkt. #3, Exh. 47.]

7. On February 7, 2008, Xyience's Motion to Quash or Motion to Strike, Motion to Vacate and Motion for Attorneys' Fees was heard by the State Court. The State Court ordered, *inter alia*, that: (i) the Default against Mr. Bergeron be set aside; (ii) Mr. Bergeron may file an answer and/or whatever pleading he deems appropriate in the Litigation; and (iii) Mr. Bergeron's Motion to Dismiss was set to be heard on March 5, 2008. (See Order at Dkt. #3, Exh. 54.) Mr. Bergeron's Motion for Rule 11 Sanctions was set to be heard on March 18, 2008. (See Re-Notice at Dkt. #3, Exh. 49.)

8. On February 19, 2008, and despite knowledge that Xyience had sought bankruptcy relief, Mr. Bergeron filed an Answer to Complaint and Counterclaim for Declamatory [sic] Relief against Xyience asserting claims for relief for: (i) defamation; (ii) violation of first amendment rights; (iii) tortuous interference with prospective economic advantage; and (iv) pain and suffering. (See Counterclaims at Dkt. #3, Exh. 50 ("Counterclaim").) In addition to asserting counterclaims against Xyience,[1] Mr. Bergeron also asserted the same counterclaims against Fertitta Enterprises, Inc. (Id.)

9. Xyience's reorganization counsel, Fennemore Craig, P.C., did not make its first appearance in the Litigation until February 25, 2008. (See Substitution of Counsel at Dkt. #3,

[1] Mr. Bergeron's filing of counterclaims against Xyience during the pendency of its bankruptcy case was a clear and knowing violation of the automatic stay imposed by Section 362 of the Bankruptcy Code.

Exh. 58.)

10. On February 27, 2008, because Xyience's current counsel, Fennemore Craig, P.C., had only recently made its first appearance as counsel for Xyience in the Litigation, Xyience filed an *Ex Parte* Motion for an extension, and a Motion to continue hearings on Mr. Bergeron's Motion for Rule 11 Sanctions and Motion to Dismiss on order shortening time ("*Ex Parte* Motion"). (See *Ex Parte* Motion at Dkt. #3, Exh. 57.)

11. On March 3, 2008, the State Court entered an order, *inter alia*, continuing the hearing on Mr. Bergeron's Motion for Rule 11 Sanctions and Motion to Dismiss, and that Xyience's Oppositions to such motions were not due until April 21, 2008. (See Order at Dkt. #3, Exh. 68.)

12. On March 20, 2008, Xyience removed the Litigation to Bankruptcy Court where it now remains pending as the above-captioned adversary proceeding. (See Removal at Dkt. #1.)

13. Mr. Bergeron's Motion to Dismiss has not been set for a hearing in this Court.

## II.

## STANDARD OF REVIEW

Dismissal for failure to state a claim under Fed.R.Civ.P. 12(b)(6)[2] is proper only if it is beyond doubt that plaintiff can prove no set of facts in support of his claim that would entitle plaintiff to relief. Comm. for Reasonable Regulation of Lake Tahoe v. Tahoe Reg'l Planning Agency, 311 F. Supp. 2d 972, 983 (D. Nev. 2004); Williamson v. Gen. Dynamics Corp., 208 F.3d 1144, 1149 (9th Cir.2000). The review is limited to the complaint, and all allegations of material fact are taken as true and viewed in the light most favorable to the non-moving party. Comm. for Reasonable Regulation of Lake Tahoe, 311 F. Supp. 2d at 983-84; In re Stac Elecs. Sec. Litig., 89 F.3d 1399, 1403 (9th Cir.1996). Although courts generally assume the facts alleged are true, courts do not "assume the truth of legal conclusions merely because they are cast in the form of

[2] Fed.R.Bankr.P. 7012 incorporates Fed.R.Civ.P. 12. Although Mr. Bergeron filed his Motion to Dismiss in State Court, because this case has been removed to Bankruptcy Court, the Federal Rules of Bankruptcy Procedure apply.

factual allegations." Comm. for Reasonable Regulation of Lake Tahoe, 311 F. Supp. 2d at 984; W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir.1981).

Moreover, on a motion to dismiss, "[courts] presum[e] that general allegations embrace those specific facts that are necessary to support the claim." Comm. for Reasonable Regulation of Lake Tahoe, 311 F. Supp. 2d at 983-84; Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990)). However, conclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss. In re Stac Elecs., 89 F.3d at 1403. Furthermore, if matters outside the pleadings are submitted, the motion to dismiss may be treated as one for summary judgment if the district court relies on the materials. Comm. for Reasonable Regulation of Lake Tahoe, 311 F. Supp. 2d at 984.

## III.

## ARGUMENT

### A. Mr. Bergeron's Motion to Dismiss is Moot.

Mr. Bergeron filed this Motion to Dismiss on February 7, 2008, and on February 19, 2008, he filed an Answer and Counterclaim. It would appear that Mr. Bergeron's Motion to Dismiss is now moot because he has filed an Answer to Xyience's Complaint. Accordingly, Xyience respectfully requests that this Court deny Mr. Bergeron's Motion to Dismiss because it is now moot.

### B. Mr. Bergeron Has Failed to Provide Any Basis for Which This Court Could Dismiss Xyience's Complaint

After reviewing Mr. Bergeron's Motion to Dismiss, it is quite apparent that Mr. Bergeron is not familiar with the applicability of Fed.R.Civ.P. 12(b)(6) (or at the time he filed his Motion in State Court with NRCP 12(b)(6)). Instead of focusing his Motion to Dismiss to the allegations in Xyience's Complaint, Mr. Bergeron asserts irrelevant and unsubstantiated allegations, all of which provide no basis for a Motion to Dismiss. Although Mr. Bergeron's Motion to Dismiss

should not be given much thought, Xyience will briefly address why each of its claims against Mr. Bergeron should survive a Motion to Dismiss.

### 1. **Defamation**

The general elements of a defamation claim require a plaintiff to prove: (i) a false and defamatory statement by a defendant concerning the plaintiff; (ii) an unprivileged publication to a third person; (iii) fault, amounting to at least negligence; and (iv) actual or presumed damages. Pegasus v. Reno Newspapers, Inc., 118 Nev. 706, 718, 57 P.3d 82, 90 (2002); Chowdhry v. NLVH, Inc., 109 Nev. 478, 483, 851 P.2d 459, 462 (1993). Moreover, if the plaintiff is a public figure, a defendant will not be held liable for damages in a defamation action involving such public figure, unless "actual malice" is alleged and proven by clear and convincing evidence. Pegasus v. Reno Newspapers, Inc., 118 Nev. 718-19, 57 P.3d at 90. Actual malice has been defined as "knowledge that [the statement] was false or with reckless disregard of whether it was false or not." Id. at 718, 57 P.3d at 90 (citations omitted). Reckless disregard means that the publisher of the statement acted with a "'high degree of awareness of . . . [the] probable falsity'" of the statement or had serious doubts as to the publication's truth. Id., 57 P.3d at 90-91.

Xyience alleged, *inter alia*, that: (i) Mr. Bergeron posted false and defamatory statements concerning Xyience on the internet (see Dkt. #3, Exh. 2 at ¶¶16-19); (ii) the defamatory statements were accessible by the general public on a daily basis (see Dkt. #3, Exh. 2 at ¶22); (iii) Mr. Bergeron made such statements knowing that they were false and that he knew he had no reasonable basis and fact to make such statements (see Dkt. #3, Exh. 2 at ¶¶24-25); (iv) Mr. Bergeron failed to use reasonable care to determine the truth or falsity of such statements (see Dkt. #3, Exh. 2 at ¶26); (v) the defamatory statements caused injury to Xyience (see Dkt. #3, Exh. 2 at ¶¶22-23 and 29); and (vi) that Mr. Bergeron acted with ill will toward Xyience and that he knew that his false statements would injure Xyience's business and/or reputation (see Dkt. #3, Exh. 2 at ¶¶ 16-18). Assuming all facts as alleged as true, Xyience has properly pled a claim for defamation against Mr. Bergeron.

**2. Tortuous Interference with Prospective Economic Advantage**

To assert a claim for relief for tortuous interference with prospective economic advantage, a party must show: (i) A prospective contractual relationship between the plaintiff (or counterclaimant) and a third party; (ii) Knowledge by the defendant (or counter-defendant) of the prospective relationship; (iii) Intent to harm the plaintiff by preventing the relationship; (iv) The absence of privilege or justification by the defendant; and (v) Actual harm to the plaintiff as a result of the defendant's conduct. Wichinsky v. Mosa, 109 Nev. 84, 87-88, 847 P.2d 727, 730 (1993).[3]

Xyience alleged that: (i) Mr. Bergeron knew that his defamatory statements would deter potential investors from investing in Xyience (see Dkt. #3, Exh. 2 at ¶34); (ii) Mr. Bergeron was aware of Xyience's prospective economic relationship with outside investors (see Dkt. #3, Exh. 2 at ¶35); (iii) Mr. Bergeron intended or was substantially certain that his conduct would cause the outside investor not to invest in Xyience (see Dkt. #3, Exh. 2 at ¶38); (iv) Mr. Bergeron did not have any justification or privilege to interfere with Xyience's contractual or prospective economic relationship with its outside investors (see Dkt. #3, Exh. 2 at ¶37); and (v) Xyience was harmed by Mr. Bergeron's actions, as such outside investors did not invest any funds in Xyience (see Dkt. #3, Exh. 2 at ¶¶36 and 39). Assuming all facts as alleged as true, Xyience has properly pled a claim for intentional interference with prospective economic advantage against Mr. Bergeron.

**3. Intentional Interference with Contract**

To maintain a cause of action for intentional interference with contractual relations, the

---

[3] With respect to the intent element, Nevada has adopted the view expressed in the Restatement (Second) of Torts: "The interference with the other's prospective contractual relation is intentional if the actor desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action." Las Vegas-Tonopah-Reno Stage Line, Inc.,106 Nev. at 287-88, 792 P.2d at 388 (1990); RESTATEMENT (SECOND) OF TORTS § 766B(d) (1979). "At the heart of [an intentional interference] action is whether Plaintiff has proved intentional acts by Defendant intended or designed to disrupt Plaintiff's contractual relations . . . ." Lake at Las Vegas Inv. Group, Inc. v. Pac. Malibu Dev. Corp., 867 F. Supp. 920, 925 (D. Nev. 1994) (quoting Nat. Right to Life P.A. Com. v. Friends of Bryan, 741 F. Supp. 807, 814 (D. Nev. 1990)).

plaintiff must show: (i) a valid and existing contract; (ii) the defendant's knowledge of the contract; (iii) intentional acts intended or designed to disrupt the contractual relationship; (iv) actual disruption of the contract; and (v) resulting damage. Las Vegas Investors v. Pacific Malibu Dev. Corp., 867 F.Supp. 920, 925 (D.Nev.1994).

Xyience alleged that: (i) Mr. Bergeron knew that his defamatory statements would deter potential investors from investing in Xyience (see Dkt. #3, Exh. 2 at ¶42); (ii) Mr. Bergeron was aware of pending deals between Xyience and outside investors, which suggests a contract between Xyience and its outside investors (see Dkt. #3, Exh. 2 at ¶43); (iii) Mr. Bergeron intended or was substantially certain that his conduct would cause the outside investor not to invest in Xyience (see Dkt. #3, Exh. 2 at ¶46); (iv) Mr. Bergeron did not have any justification or privilege to interfere with Xyience's contractual relationship with its outside investors (see Dkt. #3, Exh. 2 at ¶45); and (v) Xyience was harmed by Mr. Bergeron's actions, as such outside investors did not invest any funds in Xyience (see Dkt. #3, Exh. 2 at ¶¶44 and 47). Assuming all facts as alleged as true, Xyience has properly pled a claim for intentional interference with contract against Mr. Bergeron.

### C. Assuming, *Arguendo*, Mr. Bergeron's Motion to Dismiss is for Summary Judgment, Such Motion Must Be Denied.

Summary judgment may be granted pursuant to Fed.R.Bankr.P. 7056, which incorporates Fed.R.Civ.P. 56, when, viewing the evidence in the light most favorable to the nonmoving party, "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." See Fed.R.Civ.P. 56(c). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 2 (1986).

Moreover, Local Rules of Bankruptcy Practice of the United States District Court for the District of Nevada ("LR") 9014(c)(1) provides that "[t]he motion must state the facts on which it

is based and ***must contain a legal memorandum***." LR 9014(c)(1) (emphasis added). Furthermore, LR 7056(a) provides "[m]otions for summary judgment must include a concise statement setting forth each fact material to the disposition of the motion that the party claims is, or is not, genuinely in issue, citing the particular portions of any pleading, affidavit, deposition, interrogatory, answer, admission or other matter on which the party relies."

In the event Mr. Bergeron is attempting to seek summary judgment on Xyience's claims against him, such attempt fails to comply with Fed.R.Civ.P. 56 and LR 9014 and 7056. In fact, Mr. Bergeron fails to provide any existing authority which would support summary judgment on Xyience's claims. Rather, Mr. Bergeron continues to provide unsubstantiated allegations and conspiracy theories, as well as, assertions concerning the validity of the Preliminary Injunction Order, all of which provide no basis for summary judgment. Moreover, Mr. Bergeron attached unauthenticated exhibits to his Motion, which lack proper foundation and are inadmissible hearsay. See Orr v. Bank of Am., 285 F.3d 764, 773 (9th Cir. 2002). Thus, Mr. Bergeron has failed to provide any admissible evidence which would support a Motion for Summary Judgment. Accordingly, for these reasons, Mr. Bergeron's Motion should be denied in its entirety.

## IV.

## CONCLUSION

For the reasons stated above, Mr. Bergeron's Motion to Dismiss should be denied in its entirety.

DATED this 21st day of April, 2008.

FENNEMORE CRAIG, P.C.

By: /s/ Jon T. Pearson
Jon T. Pearson

Counsel for Plaintiff/Counter-Defendant
**Xyience Incorporated**