Rich Bergeron
147 OLD COUNTY ROAD
East Sandwich, MA 02537
Telephone: (617) 209-4325
Defendant as Pro Se Attorney

ORIGINAL

RECEIVED AND FILED
MAY 6 3 41 PM '08
U.S. BANKRUPTCY COURT
MARY A. SCHOTT, CLERK

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In Re:<br><br>XYIENCE, INC., A Nevada Corporation<br><br>Debtor. | No. BK-S-08-10474-MKN<br>Chapter 11<br><br>Eighth Judicial District Court<br>Las Vegas, Clark County, Nevada<br>Case No. A544781, Dept. XXIII |
| XYIENCE INCORPORATED, a Nevada Corporation,<br>Plaintiff,<br><br>v.<br><br>RICHARD BERGERON, an individual<br>Defendant. | CASE NO. BK-2-08-AP-01082-MKN<br><br>**DEFENDANT AND COUNTERCLAIMANT'S REPLY TO PLAINTIFF XYIENCE, INCORPORATED'S OPPOSITION TO: DISPOSITIVE MOTION FOR RULE 11 SANCTIONS; MOTION TO DISMISS; AND MOTION TO STRIKE ADAM FRANK'S AFFIDAVIT AS PERJURED TESTIMONY AND ALL ORDERS BASED ON THAT TESTIMONY OR DEFENDANT'S FAILURE TO APPEAR** |
| RICHARD BERGERON, an individual,<br><br>Counterclaimant,<br><br>v.<br><br>XYIENCE INCORPORATED, a Nevada corporation; FERTITTA ENTERPRISES, INC., a Nevada corporation,<br><br>Counterdefendants. | Hearing Date: May 14, 2008<br><br>Time: 9:30 AM<br><br>Location: 300 Las Vegas Blvd. South<br>Courtroom #2<br>Las Vegas, NV 89101 |

**INTRODUCTION:**

Defendant Rich Bergeron hereby submits this reply in consolidated form and will forthwith address all three outstanding motions mentioned in the title of this document. For the convenience of the court, Bergeron will divide this reply into three sections, one for each reply brief.

**SECTION I: REPLY TO OPPOSITION TO MOTION FOR RULE 11 SANCTIONS:**

Defendant Rich Bergeron has been railroaded from the very beginning in this case by an irresponsible attorney who manufactured and misrepresented evidence from day one and passed the frivolous case he filed on to two subsequent law firms. He did so with direct support from the plaintiff, Xyience Incorporated, which was motivated by a $15 million pay day from Fertitta Enterprises for getting Bergeron's stories removed from the Internet. Attorney Pamela Lawson took over after Cogburn withdrew due to Xyience refusing to pay him in Late November of 2007. The current law firm on the case, Fennemore Craig, received the case shortly after bankruptcy proceedings for Xyience began.

Cogburn himself and each attorney taking the case after Cogburn and filing any supportive pleading without a legitimate inquiry into the facts of the case and the applicable law is liable for Rule 11 sanctions per the amended stipulations of that rule. The client Xyience and anyone in an ownership position of that company while this suit continued and pleadings were filed in support of Cogburn's case are also culpable. The doctrine of employer vicarious liability applies here.

The culpability of Fennemore Craig is especially relevant concerning all written defense in support of the pleadings challenged as frivolous by Bergeron with supporting evidence. Special notice should be taken in the plaintiff's opposition to Bergeron's motion to dismiss. Several glaring

issues result from that pleading leaving the plaintiff's latest attorneys open to sanctions. First of all, in defending the initial complaint the plaintiff's attorneys raise the issue of "actual malice" needing to be demonstrated regarding allegedly defamed public figures. By raising this issue, the plaintiff's attorneys prove their own awareness of this doctrine. They do not explain why they bring the "actual malice" standard up, but they also do not try to explain that their client does not qualify. Since there is a preponderance of evidence showing both Xyience and Fertitta Enterprises should be considered public figures, it is therefore impossible to prove Bergeron's culpability for any defamation even if that defamation did in fact occur, which it did not.

Secondly, in almost all their defenses raised in support of Cogburn's initial pleading, they cite the Adam Frank Declaration (Plaintiff's Exhibit 2) that Bergeron called into question in a formal motion. Fennemore and Craig were in possession of that motion when they filed their opposition and knew evidence existed that proved Adam Frank's declaration to be supportive of a frivolous complaint and rife with perjury. They had evidence that this document was a statement of perjury and did no research on their own to provide any new untainted documentation to prove the initial pleading was in any way valid. An attorney may be sanctioned under Rule 11 for pressing claims after post-complaint or motion evidence shows the claim to be frivolous. See Fed. R. Civ. P. 11(b); O'Brien v. Alexander, 101 F.3d 1479 (2d Cir., 1996) (Court may sanction counsel for maintaining frivolous position in court even without submission of frivolous paper).

Bergeron specifically made it a point to contact not only the attorneys handling this case but also senior lawyers at Fennemore Craig to inform them that pursuing the case would be unwise and open them up to possible penalties for supporting a frivolous action. Bergeron sent an email to Fennemore Craig Director John Mowbray on February 27th, 2008 in which he clearly explained the

frivolous nature of the case. "If you want to make the biggest mistake of your firm's life you can try to invent something out of nothing and pursue this case," Bergeron wrote to Mowbray in that email. He later added, "You can't erase or rewrite the truth no matter how many of your firm's lawyers you put on this case." Attorney Laurel Davis subsequently contacted Bergeron to inform him to cease communicating with Mowbray.

Knowing that not only was Bergeron challenging the charges against him but also providing evidence of negligent and irresponsible behavior in the drafting and producing of supporting paperwork for the initial claim, Fennemore Craig should have taken direct action to provide their own independent investigation of the claims. They did not, which is borne out in their motions. Their pleadings also betray that these latest attorneys have not even communicated adequately with their own client in regards to this situation. Essentially, they had no idea what they were getting into and made no effort to find out. The fact that they were allowed a 60-day extension in which they should have been able to get up to speed on the case and discover any new applicable evidence that might be available makes their offenses even more worthy of sanctions.

A factual inquiry is more likely to be deemed reasonable if counsel interviewed the client and other important witnesses and inspected and studied relevant documents and other tangible evidence, as well as the law, before commencing the action. Wold v. Minerals Eng'g Co., 575 F. Supp. 166, 167 (D. Colo., 1983); Florida Monument Builders v. All Faiths Memorial Gardens, 605 F. Supp. 1324 (S.D. Fla. 1984). Attorney Jamie Cogburn clearly did not initiate any interview with Attorney David Winterton as to Winterton's quotes in Bergeron's reports. The initial pleading also shows that Cogburn did not even properly investigate the exhibits he presented, citing claims that completely misrepresented his own evidence. Fennemore Craig attorneys and Attorney Patricia Lawson also did

nothing to indicate they had done their own investigation into the accuracy of Cogburn's initial claims and are therefore liable for sanctions. Fertitta Enterprises, in a direct priority lienholder position in regards to Xyience should also be liable since they were the entity providing all the capital for Xyience that would be used to pay for Fennemore Craig's services on behalf of Xyience. Vicarious liability applies since they were essentially in the position of employer once they provided their financing package of $12 million after threatening to cease operations if that agreement was not reached.

The initial Rule 11 Motion was officially filed on December 15th, 2007. Bergeron was treated by Xyience to an all-expenses paid trip to UFC 78 in mid-November, 2007, which was held in Newark, New Jersey. Prior to the event Bergeron met with then Xyience Co-CEOs Adam Frank and Kirk Sanford in Manhattan's Times Square at a restaurant on the ground floor of the W Hotel.

There was no lawyer at this meeting, and there was not a single figure raised as to what the company would provide in any settlement arrangement. The only indication given at that meeting that the case would be settled was Adam Frank's question to Bergeron as to what it felt like to know the case against him would soon be over. In a previous conversation (partially recorded), Frank and Sanford told Bergeron they would provide him $5,000 for travel, but there was also no mention of actual settlement figures in that conversation. No lawyer was on that call, and neither of the CEOs spoke about any formal settlement offer on that call.

The current lawyers for Xyience have shown in their pleadings thus far that not only have they failed to conduct a reasonable inquiry into the facts of the case, but they have also neglected to speak to their clients and the principal players involved in this case. Two of the main players, Adam Frank and Kirk Sanford should have been able to tell Fennemore Craig's attorneys that Bergeron did

not simply file the Rule 11 motion on December 15, 2007.

Though Bergeron did not honestly become officially aware of the "Safe Harbor" provision until he saw it mentioned in the plaintiff's initial response to the motion filed on February 26, 2008, he did, in fact, inadvertently serve the Rule 11 Motion on both Co-CEOs upon his return from New York City. Marked at the end of this brief as Exhibit 44 is an email Bergeron sent to both Frank and Sanford including the Rule 11 motion attached. The email, sent on the evening of November 19, 2007, arrived well in advance of 21 days before the motion was officially filed with the court.

Bergeron received promises from both CEOs that the case against him would end, but no official deal was reached or even discussed during his trip to New York. Upon his return from the UFC trip he encountered a great deal of new information sent to his email accounts regarding new and ongoing fraud at Xyience despite the removal of Russell Pike and directly involving Frank and Sanford. Bergeron also began receiving emails from stockholders in Global Cash Access Holdings, which Sanford left shortly before the stock took a mid-November nosedive, losing ¾ of its per-share value. Sanford and several other associates were recently named in multiple class actions suits regarding the situation that occurred at GCA before he resigned as CEO of that company in November of 2007.

Bergeron eventually concluded due to overwhelming evidence that Sanford and Frank's stated plan to bankrupt Xyience would only serve to victimize hundreds of Xyience shareholders. Both CEOs admitted they would be bankrupting the company in front of both Bergeron and Standard General Employee Robert Lavan at the Times Square meeting prior to UFC 78. Sanford actually used the words "scorched earth" to describe the plan.

After weighing all the issues upon returning from the New York City trip, Bergeron offered

to settle the case for $1,000,000 through an email he sent at the time, and he told Frank and Sanford in that chain of communication that the settlement could potentially be paid in increments. He also offered to be hired on as a consultant at the company to advise the board of directors and allow for the settlement to be treated as company compensation. Sanford and Frank had also told Bergeron earlier that they might need his help in their lawsuit against Xyience Founder Russell Pike. Bergeron specifically informed Frank and Sanford that if there were to be no settlement on the terms he stipulated, he would file the Rule 11 Motion (See Exhibit 44). Both men later claimed there would be no way they could provide the funds Bergeron requested.

Meanwhile, the relationship between Xyience and Attorney Jamie Cogburn was breaking down at the same time the communications with the CEOs were ongoing. Bergeron received word from Cogburn himself by email on November 10, 2007 that he had withdrawn from the case. Bergeron's last e-mail message to Sanford and Frank regarding a possible settlement went out on November 28, 2007. Cogburn filed a MOTION TO WITHDRAW AS COUNSEL TO PERFECT LIEN & FORECLOSE on November 30, 2007 citing his unpaid legal fees as the major issue. He later indicated to Bergeron that he would never work for Xyience again unless Sanford and Frank were removed.

When Attorney Pamela Lawson took over the case Bergeron was able to secure a telephonic hearing (recording available at http://unlimitedfightnews.com/wordpress/?p=1093) in which he was able to set aside the default order. Bergeron had previously been erroneously instructed by a Clark County court clerk that he would be unable to appear telephonically since the judge's court was not properly equipped. Only when he noticed the court including the stipulation in the notice that he would be able to appear telephonically did another clerk inform him the telephonic hearing would

indeed be possible. During the hearing Bergeron told the judge that the default order never should have been allowed in the first place since he had responded within the three business days stipulated by the notice of intent to enter default. The judge checked with the clerk and the computer records and agreed that Bergeron had met the proper deadline. Yet, when Bergeron persisted in arguing that setting aside the order was tantamount to recognizing an order that should have never been entered, the judge brought the proceedings to a close in a huff.

The above-mentioned hearing also included Judge Timothy Williams ordering Bergeron to send Lawson another copy of the Rule 11 motion. The judge never cited the Safe Harbor Provision, and neither did Lawson. Williams also ordered Bergeron to file an answer or responsive pleading at that time. He subsequently did that by filing the answer and counterclaims against Xyience and Fertitta Enterprises.

Furthermore, the fact that the plaintiffs managed to delay the hearing on Rule 11 sanctions by recusing Judge Williams, receiving a 60-day extension, and then transferring the matter to bankruptcy court allowed Fennemore Craig attorneys a period of time much longer than the stipulated 21 days of the "Safe Harbor" provision. There was ample opportunity for Fennemore Craig attorneys to withdraw or correct the initial claim as a direct result of the incessant delays, and they did not.

Fennemore Craig attorneys have also yet to file a single offensive motion in the case indicating they have any grounds to continue the action or any new evidence to justify the initial complaint. The spirit of the Safe Harbor provision is to allow enough time for a plaintiff to institute due diligence in examining a claim to properly decide whether to withdraw or correct the claim. In this case the plaintiff had at least three times the amount of time normally afforded plaintiffs in

similar situations in which to act to avoid sanctions.

As to claims that the Rule 11 Motion is "substantively flawed" Fennemore Craig attorneys make the pathetic attempt to distance their client from responsibility without due evidence of any lack of culpability. Suggesting Bergeron had other outlets to challenge the preliminary injunction and making assumptions as to Bergeron's motivations, the opposing attorneys present no valid argument regarding any actual flaws to the motion itself and the grounds for sanctions cited by Bergeron. Furthermore, the opposition motion makes the idiotic and absolutely ridiculous claim that Bergeron's Rule 11 claims are not valid because they are not supported by affidavits or declarations. As his own attorney in the case Bergeron is well aware that any pleading he signs is also subject to Rule 11 sanctions against him. The Federal Rules of Civil Procedure regarding Rule 11 stipulate:

(a) Signature.

Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name — or by a party personally if the party is unrepresented. The paper must state the signer's address, e-mail address, and telephone number. Unless a rule or statute specifically states otherwise, a pleading need not be verified or accompanied by an affidavit. The court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention.

(b) Representations to the Court.

By presenting to the court a pleading, written motion, or other paper — whether by signing, filing, submitting, or later advocating it — an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Affidavits and declarations would hence be redundant in this matter due to Bergeron's Pro-Se

status. To make matters worse, the opposition to the Rule 11 Motion makes suggestions as to how Bergeron should have pled his case and managed his defense. In regard to the preliminary injunction order Bergeron certainly argues that it is a prior restraint and is invalid on its face, however the Rule 11 Motion is not designed simply to eliminate the order and does not actually focus merely on the order itself. Instead, the motion centers on the methods by which Xyience was able to secure such a bogus order in the first place through the manufacturing and misrepresentation of evidence by Cogburn with the aid of Xyience. Bergeron further contends that Fertitta Enterprises (i.e. "one investor" in the initial complaint) specifically encouraged Xyience to obtain the order in exchange for $15 million in capital.

There have also been several other assumptions made by Xyience attorneys regarding the idea that Bergeron is supposedly seeking sanctions simply because Xyience has been successful in some of its prior pleadings or is "on the winning side" of this case. There is no basis for this type of claim, as Bergeron has clearly delineated and provided documentation and direct evidence of this entire matter being frivolous to start with and orchestrated for the sole purpose of gaining capital for Xyience from Fertitta Enterprises. The only victory Xyience has been able to champion thus far is the securing of a prior restraint granted by a District Court judge with a direct connection to Fertitta Enterprises.

Perhaps the most laughable and preposterous claim in Xyience's opposition to the Rule 11 Motion is the following passage from page 8 of that filing:

> 9011. With respect to any allegations concerning documents that have been presented to the Court, it is impossible to determine exactly what specific document(s) that Mr. Bergeron is attacking because he failed to tie his unsubstantiated allegations to any particular document. While Mr. Bergeron does mention a Declaration that was signed by Xyience's ex-Ceo, Mr. Adam Frank, Mr. Bergeron's allegations do not support a Motion for Rule 11 Sanctions.[3] Rather, Mr. Bergeron's allegations merely attack the creditability and weight of the evidence presented in Mr. Frank's Declaration. In fact, Mr. Bergeron's arguments concerning the Declaration should have been addressed in an Opposition to the Motion for Preliminary Injunction.

Bergeron made specific mention in his Rule 11 Motion that, "Virtually every document that Cogburn has signed that is not a simple formality of the litigation process, has contained some lie, false evidence, or misrepresentation of the facts." (see page 13, paragraph 2). As far as the Frank Declaration Bergeron does not merely attack the credibility and weight of the evidence within that declaration as much as he flat out denies the declaration includes ANY VALID EVIDENCE WHATSOEVER. Frank was in no position to testify about the accuracy of Winterton's quotes, any communications with Bergeron he was not party to, or any allegations of Fraud at Xyience prior to his installment on the company's board of directors. The bulk of Bergeron's report attached to the initial complaint contained information regarding activity at the company that took place long before Frank had anything to do with Xyience. The affidavit Frank signed is flat out perjury, and Cogburn had to know that he was encouraging perjury by asking Frank to sign it. Xyience itself and any attorney representing the company after Bergeron's filing of the Rule 11 Motion clearly should have known that new evidence would be needed in order to pursue this case any further.

As far as parties not named to the litigation itself being culpable because they are no longer employed by Xyience, there is no legal foundation for absolving parties of liability because they have been fired or they have resigned. Our system of laws were not designed to provide immunity from liability simply through the process of removing an employee from the company involved in litigation. The stipulated transgressions against Bergeron all took place while the parties indicated were in the direct employ of Xyience, or in the case of Fertitta Enterprises while they were in a direct supervisory position of the company.

Federal Rule 11 also provides the following stipulation:

**(4) Nature of a Sanction.**

**A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or**

**comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees *and other expenses* directly resulting from the violation.**

The $5 million Bergeron has requested is clearly justified. Yet, Fertitta Enterprises should also be held culpable for sanctions. The $5 million request may not "suffice to deter repetition of the conduct or comparable conduct" since Fertitta Enterprises has demonstrated a long history of acting in a fraudulent manner (see http://unlimitedfightnews.com/wordpress/?p=1415) in their business practices. Their billionaire status puts them in another category altogether regarding appropriate sanctions and a greater penalty should be imposed against them since they provided the main motivation for the suit in the first place.

Vicarious liability should extend sanction culpability to Fertitta Enterprises, Xyience, Cogburn, Frank, Attorney Pamela Lawson and Fennemore Craig as a whole firm since Bergeron cautioned that firm's director (Mowbray) about the situation.

It is really impossible to put an adequate number on the damage done and the waste of time perpetuated by this case continuing so long based on lies. Certainly there are grounds for a payment to the courts overseeing this matter to this point, and there is also evidence to suggest legal ethics training should be mandated for the firms and specific attorneys involved on behalf of the plaintiff.

If there is any way possible for monies to be set aside and dispersed by the trustee to the numerous creditors in the ongoing bankruptcy case, Bergeron hereby requests that such funds be provided through sanctions.

Finally, as far as "other expenses directly resulting from the violation" it is truly impossible to quantify an exact number, but as previously stipulated Bergeron requests $500,000 be awarded out of the $5 million requested. Although the plaintiff has noted that attorney fees cannot be granted to a

pro-se attorney, this case has come at a heavy cost for Bergeron. The cost of this case to Bergeron's reputation is far worse than any monetary damage done. He has also lost a voluminous amount of unpaid time spent learning how to be his own attorney; researching, writing and filing various motions; and trying to recruit lawyers to take his case Pro Bono. To award $500,000 in expenses to Bergeron would be extremely generous toward the parties culpable considering the damage they have caused through their collective actions. Bergeron submits to the discretion of the judge in this case to determine how the rest of the monetary sanctions should be distributed.

## SECTION II: REPLY TO OPPOSITION TO MOTION TO DISMISS

The plaintiff's opposition to Bergeron's motion to dismiss is completely baseless and goes to great lengths to introduce statutes and case law that simply make Bergeron's case for him.

Moreover, Judge Williams ORDERED Bergeron to file an answer or responsive pleading at the February 7th hearing knowing full well Bergeron had already filed the Motion to Dismiss. Bergeron specifically asked the judge at that time about whether or not his Motion to Dismiss qualified as an answer, and the judge explained that he would still be required to file an answer.

The plaintiff also provides a lengthy explanation of the "actual malice" standard required to prove defamation of a public figure, seemingly admitting their client is such. In order to prove actual malice, it stands to reason that the plaintiff must prove beyond reasonable doubt that the defendant ***knew*** the information published was false and acted with reckless disregard in making the information public. Fennemore Craig attorneys only utilize the Adam Frank Declaration (plaintiff's exhibit 2) as evidence to prove their claims of defamation (from page 6 of Plaintiff's opposition):

> Mr. Bergeron made such statements knowing that they were false and that he knew he had no reasonable basis and fact to make such statements (see Dkt. #3, Exh. 2 at ¶¶24-25); (iv) Mr. Bergeron failed to use reasonable care to determine the truth or falsity of such statements (see Dkt. #3, Exh. 2 at ¶26); (v) the defamatory statements caused injury to Xyience (see Dkt. #3, Exh. 2 at ¶¶22-23 and 29); and (vi) that Mr. Bergeron acted with ill will toward Xyience and that he knew that his false statements would injure Xyience's business and/or reputation (see Dkt. #3, Exh. 2 at ¶¶ 16-18). Assuming all facts as alleged as true, Xyience has properly pled a claim for defamation against Mr. Bergeron.

As previously stated, Bergeron never had any conversations with Adam Frank prior to the suit being filed against him by Xyience. The Adam Frank Declaration does not hold up under any legitimate scrutiny as far as proving there was any clear and convincing evidence of "actual malice." In fact, Bergeron wanted to help the company remove itself from the control of those defrauding it. He is still trying to accomplish that through this court. Without a deposition of Bergeron or any other evidence proving his specific state of mind regarding his reports on Xyience, there is no basis for a conclusion that Bergeron acted with any malice whatsoever. This is beside the fact that Bergeron's reports included absolutely no defamation to begin with.

Since there is no evidence held by Xyience relating to Bergeron's reasoning and no evidence that is discoverable, the remainder of Xyience's claims against him are also fatally flawed. Also, due to the Adam Frank declaration being contradicted by direct evidence Bergeron has presented, it cannot be relied upon as definitive evidence of any defamation. Furthermore, since no defamation occurred in the first place and the plaintiff has failed to prove any merit to their case, the Motion to Dismiss is valid and ripe for a ruling favorable to Bergeron.

As far as the plaintiff's assumption that the motion is intended as one for summary judgment, that is also a fatally flawed argument considering Bergeron already filed a separate motion for summary judgment.

The plaintiffs have absolutely no convincing evidence of any defamation or other claims which can be legitimately brought against Bergeron. The entire case against Bergeron has been a scare tactic and an instrument of harassment that Attorney Cogburn manufactured in bad faith and subsequent attorneys and law firms have tried to support without any proper investigation or attempt to provide any further evidence.

If indeed the plaintiff wishes to stand by the Adam Frank Declaration as its smoking gun evidence, Frank should be mandated to attend the hearings on May 14t[h] regarding this matter so he can testify in open court and be subject to cross examination. Without such testimony, there is no way to prove how Adam Frank came to conclude that Bergeron knew anything he wrote about Xyience was false. Should Frank not appear to explain his declaration, and should Bergeron's motion to strike his declaration be successful, Xyience has no case against Bergeron whatsoever. Nearly their entire opposition to the motion to dismiss relied solely on this declaration laced with perjury, and the fact that this case has been able to continue based on that slim piece of fabricated evidence alone is disturbing to say the least.

If there was any other evidence available to the plaintiff up to this point in the case, Xyience attorneys surely should have been able to find it by now. Considering the fact that Fennemore Craig attorneys have been given a 60-day continuance and more than 9 months have passed since the initial filing, the lack of substantial evidence is telling. The opposition has employed three different law firms and have yet to produce a single shred of evidence beyond what Cogburn put on the record thus far. Furthermore, there has not been a single offensive motion filed on behalf of the plaintiff in this case since Attorney Pamela Lawson unsuccessfully attempted to enforce the illegitimate default order in the case in January of this year. Prior to her filings in the case the only offensive motions

outside of the initial pleading regarded the preliminary injunction.

The very conduct of the plaintiff's various attorneys in this case bear out the fact that there was never any intention to actually secure any judgment. Instead, the blatantly obvious intention of this suit was to obtain the prior restraint injunction and in turn receive 15 million dollars from Fertitta Enterprises as a direct result of that effort. There has been no attempt on behalf of the plaintiff to enter into discovery, no introduction of any independently acquired evidence on their behalf, and two separate settlement offers extended thus far that would provide the defendant with funds to simply walk away from the litigation filed against him.

Beyond the legal statutes and precedent cases, aside from the weight of the evidence, and on the bare accounting of the situation in terms of logic itself there is no basis for this case to continue any further in regards to Xyience's initial complaint. Should the matter somehow continue any further it will be at the expense of justice itself.

**SECTION III: RELPY TO OPPOSITION TO MOTION TO STRIKE ADAM FRANK DECLARATION, ETC.**

The plaintiff's opposition to Bergeron's motion to strike Adam Frank's Declaration is once again an instrument that further proves Bergeron's case. To start, the plaintiff's contention that it is "immaterial" as to whether federal law trumps state law is ignorant and inaccurate. The weight of federal law versus state law is wholly and absolutely relevant to this case, and since both parties are now proceeding in a federal court, federal law must take precedence.

Adam Frank and Kirk Sanford were not qualified to participate in a formal settlement

conference as the plaintiff tries to maintain. Fennemore Craig attorneys should be well aware that settlement conferences are traditionally held within the presence of a judge and always include the lawyers from both sides. While Bergeron is acting pro-se in this case, there were no legal representatives of the plaintiff on the line during the call. Furthermore, the recorded portion of the call included no discussion of "compromise negotiations regarding the claim" as stipulated in Fed. R. of Evid. 408. It was more a general discussion, which is evidenced by the final recorded words of Adam Frank, "We'd like to have a relationship with you where we could just talk."

Additionally, the claim that the recording is inadmissable because it is not authenticated is completely bogus. Bergeron produced and signed a declaration, as redundant as such an instrument may be since he is representing himself, to be sure that he would be able to introduce the recording into evidence. Bergeron's recording also included the full names of both men being stated out loud in their introduction.

As to the applicability of any state laws of Massachusetts to the situation there is no basis since the call was an interstate call and only one of the two parties (the consenting party) resided and was situated in Massachusetts at the time of the call. Had the plaintiff's former CEOs initiated the recording of the call, there would be an issue, but it was Bergeron who consented to the recording and initiated it.

Further, even if Massachusetts state law should apply, there is an exemption for persons using recording devices in the normal course of business. (M.G.L. Chapter 272: Section 99, D. 1(b)) Bergeron operates a Web-site as sole proprietor, and the phone line he used for the call in question is attached to that business. The Skype Internet phone system is set up to record all phone calls unless Bergeron disconnects the recording device. This is the primary phone for the business, and since

Bergeron was using the information obtained for his Web-site and subsequently published the recording on his Web-site, the recording is legal and admissable in every aspect.

As far as the further request for the striking of all other orders in the case based on Frank's faulty and perjury laden declaration and Bergeron's inability to appear, the plaintiff must think the First Amendment is written on a roll of toilet paper. To argue that there is no existing law which provides any basis for striking the preliminary injunction order is simply not true. That order is a prior restraint, clear and simple. It enjoins Bergeron from stating facts, and it squelches free speech of an individual for the benefit of a corporation. Regardless of the fact that no defamation has been substantiated whatsoever, any injunction issued against a party when there has not been a full and fair trial held on the merits of a defamation claim is a prior restraint by definition. Furthermore, when an order is written based on evidence that is later determined to be perjury, the information which would be required to challenge such an order would not be available prior to the order being issued. Therefore the plaintiff's contention that other methods should have been used to prevent the order from being issued in the first place is moot.

Bergeron's right to due process was also circumvented by the District Court clerk's initial insistence that he could not appear telephonically in his own defense. Constitutional rights to a fair trial and due process are clear and unquestionable. Bergeron was shut out of the process by being told he could not appear telephonically despite being nearly 3,000 miles away from the venue and having an order to proceed informa pauperis before the court for review. Any orders obtained due to the plaintiff having an unfair advantage should not stand, and whether they be stricken, vacated, or quashed they are illegitimate on their face due to the circumstances under which they were secured.

The idea that this Court should allow Bergeron's First Amendment rights to be violated

simply because he did not file a First Amendment Writ in the case is not only ridiculous but moronic as well. The First Amendment is absolute, and to attempt to maintain that a Prior Restraint should be allowed to stand just because it was not challenged earlier in the process is as fickle as trying to argue that the United States Supreme Court has no legal authority. On the contrary, considering this is a federal Court, the First Amendment should be held in even higher regard and the order should be immediately overturned since it is entirely clear that it is a prior restraint.

Judge Williams cited an antiquated Nevada ruling in setting the order in place, and Williams was also connected to the plaintiff at that time through his endorsement for office by Station Casinos, the most significant business interest of Fertitta Enterprises. The basis for the injunction relied on a case in which the dispute arose over one party usurping another's business name. There were no common issues as to the press or the Internet. There is certainly a basis for Williams himself being sanctioned for such conduct and refusal to recognize the prior restraint issues involved.

The plaintiff's attorneys in this case do not even argue that the order was not a prior restraint. They only maintain that Bergeron failed to show the state court that it was, and by this logic the opposition maintains that since the state court did not rule the injunction to be a prior restraint it should stand. This logic is flawed in every respect. State courts are not infallible, and the judge's precarious relationship with a party having financial interests directly tied to the plaintiff had been raised and ignored by Williams.

Williams recused himself later only because he had a previous working relationship with Fennemore Craig, but he did not recuse himself for having a clear connection to a close business associate of the plaintiff that essentially helped secure him his seat on the bench. Williams publicly acknowledged this connection on his own Web-site. Whether Williams issued the order because of

ignorance of its qualification as a prior restraint or due to his bias toward the plaintiff, there was a clear error in judgment on his part that simply must be corrected.

As far as attorneys fees, affidavits and declarations submitted in bad faith are punishable by the same stipulations available under Rule 11 sanctions. Expenses for the effort and work involved in responding to the faulty affidavit may be awarded as well as attorney fees.

Should there be any question remaining before the May 14th hearings regarding the admissability of the Frank and Sanford recording, both Adam Frank and Attorney Jamie Cogburn should both be compelled to appear at the May 14th hearings to answer questions regarding the Adam Frank Declaration. Without such testimony and cross-examination the declaration should not be permitted to stand.

**CONCLUSION:**

Though the motions written by the defendant in this matter may lack perfect adherence to traditional legal standards and skirt the formalities of the process in some respects, they are nonetheless reliant upon the honest facts and merits of the case. Bergeron would like nothing more than to be able to have the ability to afford the services of an attorney. At the same time this egregious process has taught him that lawyers who may know the law backward and forward are not always apt to live by it and practice their craft with honesty if they can get away with being dishonest.

In the case before this court Fennemore Craig attorneys have mounted a defense against Bergeron's motions which on its face is lacking in any substance whatsoever. Though he may have his own weaknesses to worry about as far as minor nuances, he has the excuse of having not attended

years of law school to prepare him for this situation. The plaintiff's attorneys have no such excuse and should therefore be held to a higher standard. Thus, punishment should be severe for the way in which they've lied to this court, needlessly dragged Bergeron's reputation through the mud, and abused the judicial process while collecting fat paychecks and trying to mandate that Bergeron be made responsible for their outlandish fees. Based on their complete lack of any ground to stand on and their incompetence in producing any new evidence to prove their case despite months of delay tactics, they should not be paid at all and should forfeit their fees to the court for wasting its time.

The First Amendment is absolute in its protections. The plaintiffs should only prevail if at the same time they can manage to repeal the First Amendment in its entirety, which this Court obviously cannot accomplish or even entertain. These hearings have been needlessly delayed time and again, and Bergeron has had no hand in delaying them. Every step of the way the plaintiff through its attorneys has been trying to avoid being caught red handed in their abuse of the process. Picking on an individual they believed to have no possible means of defending himself, they unleashed paid attorneys to wreak havoc on Bergeron and have succeeded thus far in making his life miserable despite having no basis to either file or press this frivolous case.

Now that the case rests in bankruptcy court Xyience would have this Court believe they should be able to continue to maintain this case as an asset while at the same time affording Bergeron absolutely no remedy for relief even if the plaintiff filed this case in bad faith and manufactured evidence to do so. This case has raged on more than 9 months too long. It should have never been filed in the first place based on such a shaky foundation and lack of evidence. There is no reason for it to continue any further unless it should be determined that Summary Judgment is not in order on the counterclaims, and then only the counterclaims should proceed. Bergeron should be

granted a favorable judgment on all outstanding motions and finally be relieved of the suffering this matter has caused him based on his choice to pursue and report the truth.

*Dated May 5, 2008*

IN PROPER PERSON

Rich Bergeron
147 Old County Road
East Sandwich, MA 02537
617-209-4325
Attorney Pro-Se
Rich.Bergeron@gmail.com

*EXHIBIT 44*

Yahoo! My Yahoo! Mail Tutorials More **Make Y! your home page** Welcome, **boxer_47** Sign Out All-New Mail Help

YAHOO! MAIL Search: Web Search

You want to
What's on eBay right now? Roll over and find out!
Shop Victoriously
AdChoices Find Yours

Mail Contacts Calendar Notepad **Mail For Mobile - Mail Upgrades - Options**

Check Mail Compose Search Mail Search the Web

Unlimited calls: just $24.99/m

Previous | Next | Back to Search Results

Delete Reply Forward Move...

**Folders** [Add - Edit]
Inbox (436)
Draft
Sent
Bulk (5908) [Empty]
Trash [Empty]
**My Folders** [Hide]
Important
**Search Shortcuts**
My Photos
My Attachments

See your credit score - free
Get A Free iPhone. Act Now
Unlimited calls: just $24.99/m
How to graduate while you work

This message is not flagged. [ Flag Message - Mark as Unread ] Printable View

From Rich Bergeron Mon Nov 19 21:11:50 2007

| | |
|---|---|
| **Received:** | from [75.67.179.170] by web33912.mail.mud.yahoo.com via HTTP; Mon, 19 Nov 2007 21:11:51 PST |
| **Date:** | Mon, 19 Nov 2007 21:11:50 -0800 (PST) |
| **From:** | "Rich Bergeron" <boxer_47@yahoo.com> Add to Address Book Add Mobile Alert |
| **Subject:** | Rule 11 Motion |
| **To:** | ksanford-gcainc@att.blackberry.net, adam@adam-frank.com |
| **MIME-Version:** | 1.0 |
| **Content-Type:** | multipart/mixed; boundary="0-989767956-1195535510=:65867" |
| **Content-Transfer-Encoding:** | 8bit |
| **Content-Length:** | 2552577 |

Adam and Kirk,

I have updated the Rule 11 motion to focus more on Pike and Cogburn, the true culprits of this suit. I don't know yet if I am going to send it, but I really think I may have to. I have also attached a dismissal order. These two will be signed, sealed and delivered, placed on the docket, and in front of the judge before a class action suit can even be launched by your opposition. The case will be over, and precedent will be set.

The whole time sitting in the stands at UFC 78 I was overcome with the duplicity of my whole situation. Here I was a guest of the company at a major fighting event while there is an ongoing lawsuit against me claiming I defamed them. There are now people on both sides of the fence appealing to me for help, but I can't even print the truth or even "infer it" based on a bogus case including an affidavit you signed, Adam. You perjured yourself to give the company a better position against me having never even met or spoken to me. Kirk, whatever you did with GCA and whatever you did to get yourself millions of stock options is not helping out the little guy here who bought in early and gave all he had. Those folks gave what they had based on the dream you're trying to make real for yourself and a few associates rather than the whole rowdy lot of 340 interested parties and you and your friends. You don't know if you want to go public for sure, you don't have any significant capital source, and you've got a class action suit on the horizon. I can't wait any longer to get this case settled.

I have lost sleep and been extremely damaged in various ways by the persecution of character your company has put me through with this suit. I have done nothing wrong, and everyone knows it now. Part of me wants to stick it out to the end, because I didn't set out to lose. I'm not going to lose now, and settling is losing in my eyes if you consider the potential of a case like this ending in my favor based on the facts trumping the lies. Final judgment should be determined by the true merits, and now what started as a witch hunt to destroy me has led to people on all sides trying to drag me in to help. It really makes a guy say, "What the fuck?" It's blowing my mind to even think about how far I've come, how this situation has developed, and what great potential this true story has.

I don't mean to play hardball, but I want you to know that by the very nature of your ongoing lawsuit we are still at war. If I win that war I can do what I want with my stories. You have already confirmed they are all true. I can tell Google to put them back up when I get the dismissal order and the notice that vacates the new "fraud"ified preliminary injunction.

You both have to admit it's pretty fucked up that a guy getting sued for $25 million for ruining a company's reputation is now being asked by the highest of company authorities to come on board and make things right.

I'm prepared to send this motion soon if I have to and never look back. I'm not liking the idea of getting involved in something major with someone suing me for $25 million for something I didn't do. To agree to a partership and forget what you did to me will be hard for me to live with personally if the right thing to do is not carried out while I am involved. I won't stamp my name to new fraud or fucked up number crunching and excessive incentives for little tangible work.

It is time to knock on doors. Lavan is right about that. You all need to knock on doors and start talking to these investors. You need to make these people your new family, whether you intend to buy them out or not. You have until mid December to get ready for the next shareholder meeting if I understand the schedule correctly. The disgruntled shareholders want to have a class action suit filed against you by the end of this month. There is no time to waste. If you want to save this company you have to be ready to really work for those stock options.

I really want to help this company, but I don't want to help any process that neglects to consider all those 340 folks invested already. If you shut them out, you shut me out. Time is sensitive to me right now, and the more time I spend on this process the less I have to get on with my life and start putting positive energy into new projects. You have no idea what that feels like. It is the most annoying feeling you can have. You know you stand for truth, you know justice should exonerate you, and you know either way you play it you win, but yet they still have a claim against you for $25 million. Neither of you can know what that feels like until you've seen it through my eyes and walked through it in my shoes. Adam, you helped put me in this position with your signature placed on a list of lies and submitted in a court of law calling me a liar. Now you want to work with me? Again, one must ask, "What the fuck?"

I can either treat my visit to New York as an informal deposition or a reason to believe all of us can work together. It's up to you, but either option you choose in this situation you need to know that if you try to swindle these people you will get burned. You have two choices. You can do the right thing with my help and come out looking like heroes, or you can fight it all with no help and come out with empty pockets and a newfound sense of what it's like to learn the value of a conscience the hard way.

Already you have been dishonest in our dealings. You promised $5,000 for travel expenses twice and delivered only $500. You said the case could be settled and done with before I came to New York. It wasn't, as you know. It still hangs over my head, and so does the feeling that this whole legal battle is far from over. I can't in good conscience not try to pave the way for the next generation of bloggers coming up who want to try to do something like this and expose fraud. A positive result has to blossom from this mess, and I can lead you to it.

The time to act is now. Action is immediate and can be permanent. Litigation takes forever and often solves nothing. I can have this motion in the mail by Wednesday, or I could be on my way to sign a deal by Friday to move past this. Either way, this whole thing can't stand. It drives me nuts just looking at this stuff knowing what I know. Please realize this has to be settled before anything can be accomplished between us.

Be a better pen pal. Text or chat with friends inside Yahoo! Mail. See how.

**Attachments**

**Files:**

**RULE11MOTION.doc** (1.3MB) [Preview] Scan and Save to Computer

**dismissalorder.doc** (496k) [Preview] Scan and Save to Computer

Delete | Reply | Forward | Move...

Previous | Next | Search Results Save Message Text | Brief Headers

Check Mail | Compose Search Mail | Search the Web

Copyright © 1994-2008 Yahoo! Inc. All rights reserved. Terms of Service - Copyright/IP Policy - Guidelines
NOTICE: We collect personal information on this site.
To learn more about how we use your information, see our Privacy Policy