ORIGINAL

RECEIVED AND FILED

MAY 6 3 43 PM '08

U.S. BANKRUPTCY COURT
MARY A. SCHOTT, CLERK

Rich Bergeron
147 OLD COUNTY ROAD
East Sandwich, MA 02537
Telephone: (617) 209-4325
Defendant as Pro Se Attorney

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In Re:<br><br>XYIENCE, INC., A Nevada Corporation<br><br>Debtor. | No. BK-S-08-10474-MKN<br>Chapter 11<br><br>Eighth Judicial District Court<br>Las Vegas, Clark County, Nevada<br>Case No. A544781, Dept. XXIII |
| XYIENCE INCORPORATED, a Nevada Corporation,<br>Plaintiff,<br><br>v.<br><br>RICHARD BERGERON, an individual<br>Defendant. | CASE NO. BK-2-08-AP-01082-MKN<br><br>**DEFENDANT AND COUNTERCLAIMANT'S REPLY TO: COUNTERDEFENDANTS' OPPOSITION TO COUNTERCLAIMANT'S (1) EMERGENCY MOTION TO SUSPEND BANKRUPTCY PROCEEDINGS, AND (2) MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S RULE 11 MOTION, MOTION TO DISMISS, AND COUNTERCLAIMS** |
| RICHARD BERGERON, an individual,<br><br>Counterclaimant,<br><br>v.<br><br>XYIENCE INCORPORATED, a Nevada corporation; FERTITTA ENTERPRISES, INC., a Nevada corporation,<br><br>Counterdefendants. | Hearing Date: May 14, 2008<br><br>Time: 9:30 AM<br><br>Location: 300 Las Vegas Blvd. South<br>Courtroom #2<br>Las Vegas, NV 89101 |

Both counter defendants having filed oppositions to Bergeron's two-part motion, and this reply addresses both documents and sets forth an affirmative defense of that motion.

Though both counter defendants maintain that no cause exists for the suspension or dismissal of the bankruptcy proceedings, considerable damage has already been done by allowing this case to continue without a full and fair accounting of all creditor concerns. As far as the benefit to the debtor itself, there would be tremendous benefit to the Xyience name and reputation in the industry if all the outstanding contested issues were to be resolved appropriately. As it stands, and as is supported by Xyience's latest accounting of financial figures presented in the bankruptcy case, the most significant payments going out of Xyience during this case have been made to Zuffa interests and the Cott Corporation. Most of the other major creditor concerns have been ignored.

On page 9, paragraph 3 of the Fertitta Enterprises opposition, specific mention is made in regard to when a suspension of such a case is warranted. The entire paragraph provides ample grounds as to why this situation applies perfectly to conditions where a suspension must be granted. Already, a sale has been granted in which insufficient time has been allowed to secure a better, arm's length offer from potential buyers. There are also numerous creditor concerns and issues with the derivative shareholder suit being improperly removed to this court. As far as an "unsettled issue of non-bankruptcy law," this very case is a primary example of that situation existing.

Significant fraud at the heart of the entire bankruptcy has been reported and should be properly investigated before allowing any further rewards or concessions to the debtor without considering the initial shareholders' interests that were improperly usurped by the Fertitta Enterprises loan agreement.

As far as orders already secured in this matter, Bergeron submitted this motion and labeled it

as an emergency motion specifically to alert the Court that those orders were being sought in bad faith. Though it may seem that this makes the entire motion moot according to the Fertitta opposition, there are still remedies available to prevent further transgressions of the debtor. Steps should be taken as soon as possible to ensure that a full investigation into the outstanding charges of fraud be initiated and allowed to be completed before the Bankruptcy case can proceed.

Bergeron did not intend the motion before this court to be a request for leave to file an amended pleading. He merely wanted it put on the record that he intends to amend the counterclaim in the future to add more counter-plaintiffs and explore Civil RICO charges. Bergeron has not decided whether to do so in this Court. In fact, he reserves the right to remove the counterclaim to US District Court due to the Federal First Amendment question involved. He has decided to wait until the disposition of the initial claim as far as his outstanding motions go before making any determination on how to proceed with amending his own claims.

Relating to summary judgment the counter defendants have repeatedly held that Bergeron's evidence is inadmissable when the bankruptcy court has actually accepted as evidence portions of the A.J. Robbins audit already and an affidavit confirming the authenticity of any exhibits would be redundant considering Bergeron's status as pro-se attorney in this matter.

As far as the actual claims within the cross complaint filed by Bergeron, he stands by these claims although acknowledging that Xyience is more culpable than Fertitta Enterprises with regards to direct connection to instances of defamation.

As far as the claim of a violation of his First Amendment rights and the opposition trying to pigeonhole that claim under 42 U.SC. Section 1983, Bergeron has provided more than sufficient evidence to justify a claim of that nature despite not actually intending to seek that disposition. In

regard to Fertitta Enterprises' attempts to distance themselves from such a claim, they are hopelessly tied to such a claim considering the doctrine of employer vicarious liability. They continue to lie to this court by representing they had nothing to do with this litigation when they not only motivated it in the first place with a quid pro quo agreement, but they have also been in a primary lineholder position and exerted supervisory authority over Xyience while it pressed the frivolous case against Bergeron willfully.

The Fertitta opposition's contention that even if they were involved in the litigation they were "merely invoking legal procedures" is patently false. Their conduct goes above and beyond regular and fair use of the judicial process. As outlined in Bergeron's reply to the opposition to his Motion For Rule 11 Sanctions, Fertitta Enterprises sustained a case against Bergeron in bad faith after providing him with an all-expenses-paid trip to New York City for UFC 78. Under the direct authority of Fertitta Enterprises as the primary lienholder of Xyience, Kirk Sanford and Adam Frank later attempted to offer Bergeron $5,000 to walk away from the case THEY FILED AGAINST HIM.

Bergeron's third counterclaim goes beyond the situation with the book he is writing about Lucille Iacovelli and extends into the running of his Web-site. While in the position of being needlessly harassed by the Xyience litigation, Bergeron found it increasingly difficult to obtain sponsorships and advertising. Xyience and Fertitta Enterprises clearly knew of Bergeron's Web-site and had to realize that he would have difficulty running it and receiving support while being sued by Xyience.

The fourth counterclaim may not be a sound principal of law in that it represents a valid claim, and it may not therefore be framed properly, but it does not make the damages requested any less applicable to the proceedings. This case, which both counter defendants helped each other

orchestrate and both pressed with the knowledge it was frivolous, has permanently altered Bergeron's life. As such, and as outlined in the cross complaint, Bergeron is entitled to proper relief.

The Fertitta opposition also contends that sanctions do not apply in their case. Though Bergeron has already extensively explained this matter in his Reply brief relating to the sanctions motion, some other issues should be clarified. First, Fertitta Enterprises was in a direct primary lienholder position over Xyience at the time Bergeron served his Rule 11 Motion on Kirk Sanford and Adam Frank. Bergeron seeks sanctions against Fertitta Enterprises not on the basis of the motion for summary judgment itself, but on that motion. Based on the doctrine of Employer vicarious liability, Fertitta Enterprises should be held culpable.

**CONCLUSION:**

**"Implicit in the right to [self-representation] is the obligation on the part of the Court to make reasonable allowances to protect Pro Se litigants from inadvertent forfeiture of important rights because of their lack of legal training." And the "Court's duty is even broader in the case of a [Pro Se] defendant who finds [himself] in court against [his] will with little time to learn the intricacies of civil procedure and law." See 28 U.S.C.A. 1654.**

**Traguth v. Zuck, 710 F. 2d 90, 91 (1983)**

Bergeron is admittedly not a masterful attorney, yet he is an investigative reporter with a duty to report the truth. At all times in this case he has provided evidence in that vein to promote and explain the actual truth that his adversaries are attempting to obscure. He has a right to mount a defense, and he swears by his evidence presented as far as its authenticity, truth, relevance, and accuracy. If need be he will affirm that at the hearings on these matters.

Above all issues pertinent to the matter at hand is the First Amendment's over-riding authority. Bergeron's First Amendment rights have clearly been violated. A prior restraint has been approved and placed on the docket in the state court in the form of a preliminary injunction. The law

is clear on prior restraints:

*and Comm'rs of Princess Anne*, 393 U.S. 175, 181 (1968)). A court-issued preliminary injunction is a particularly dangerous form of prior restraint. "Injunctions ... carry greater risks of censorship and discriminatory application than do general ordinances." *Madsen v. Women's Health Ctr.*, 512 U.S. 753, 764 (1994). As the Supreme Court has explained:

> [P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights. A criminal penalty or a judgment in a defamation case is subject to the whole panoply of protections afforded by deferring the impact of the judgment until all avenues of appellate review have been exhausted. Only after judgment has become final, correct or otherwise, does the law's sanction become fully operative.
> A prior restraint, by contrast and by definition, has an immediate and irreversible sanction. If it can be said that a threat of criminal or civil sanctions after publication "chills" speech, prior restraint "freezes" it at least for the time.

*Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976).

**From Page 8 of Bergeron's Opposition to Motion For Preliminary Injunction**

Bergeron raised not only the above issues but also the connection of Judge Timothy Williams to Fertitta Enterprises in his opposition to the injunction. Williams ignored both the law and his duty to recuse himself in this case for having a connection to the client that could potentially result in an appeal of any of his decisions. The official partnership between Fertitta Enterprises was imminent at the point the suit against Bergeron came into Williams' courtroom, and the two parties were already indirectly connected through the Xyience sponsorship partnership with Zuffa, LLC, which Lorenzo and Frank Fertitta III (Fertitta Enterprises' primary officers) are 90 percent owners of.

The Williams connection appears to be a matter that casts considerable doubt on the fairness of the process and raises concerns about whether or not Fertitta Enterprises exerted control over the judge in any way in order to secure a favorable ruling in the matter.

In all the legal paperwork Fertitta Enterprises has placed before this court there is no definitive denial on behalf of Fertitta Enterprises that there was a quid-pro-quo agreement between

Xyience and Fertitta Enterprises regarding this case's initial filing and the securing of a preliminary injunction in this case. Xyience was told to secure the injunction by Fertitta Enterprises in exchange for $15 million in capital. There is no other logical explanation for the contention in the initial claim revolving around the "one investor" that reportedly wished to invest that sum, which coincidentally is nearly exactly parallel to the official tally of the total Fertitta Enterprises investment in Xyience to this point.

Furthermore, there is absolutely no official denials of any of these charges presented on behalf of the counter defendants themselves. There has been no testimony entered into the record in any form in regard to Fertitta Enterprises or Xyience officials. No party related in any fashion to the counter defendants other than attorneys have stated any facts for the record in these entire proceedings since the Adam Frank declaration. Licensed attorneys representing clients can either be lawyers or witnesses, but not both. Until such point as Xyience and Fertitta Enterprises officials come forward to officially deny these allegations, summary judgment is appropriate.

Still, Bergeron is prepared for the worst. He is now aware of the name of the Xyience roper (Gary Nelson) who explained the Fertitta connection to Mike Hilson and a Xyience investor immediately after the injunction was signed by Williams. (See Exhibit 11). Bergeron has had conversations with this witness, and should this case be allowed to continue and discovery is conducted, Gary Nelson will be called to testify as to the nature of the Fertitta Enterprises/Xyience partnership. Bergeron will also conduct a deposition of Mr. Hilson to fully corroborate and authenticate Exhibit 11 from all sides.

Should there be no awarding of summary judgment with regard to the counterclaims, Bergeron is fully capable of proceeding on the merits and conducting discovery. As he stated at the

status check hearing for this case, he believes the counter defendants are both afraid of discovery and wish to block that process at all costs.

If the Court can forgive Bergeron's lack of legal mastery and procedural skill and look directly to the merits of the case, there is no reason to deny him immediate relief. However, knowing full well that this is not a simple case, he is ready to proceed on the merits if he must.

As an outsider dragged into this mess, Bergeron is in a unique position. He is not just fighting for himself and never has been. Regardless of the fact that he is by no means obligated to attempt to provide relief for anyone other than himself, it is in his nature to help others. Though he has no financial interest and is not a creditor to this case, he willingly proceeds here in bankruptcy court with the right to remove the case at a later date should conditions mandate that removal. He proceeds here because he realizes that more can be done to facilitate justice at this level at the moment. More victims could be helped here who have been defrauded. He has received communications from attorneys representing multiple parties aggrieved by this situation not because he has produced a series of believable lies, but because he stands for the truth and is not wielding that truth in any selfish nature.

At all times Bergeron has championed the truth and sought to get it on the record for all to see. Should this case continue as to the counterclaims, it will be no burden greater than what he has already experienced, and he will be ready to proceed and continue to fight for the truth as long as he must.

*DATED this 6th day of May, 2008.*

IN PROPER PERSON

Rich Bergeron
147 Old County Road
East Sandwich, MA 02537
617-209-4325
Attorney Pro-Se
Rich.Bergeron@gmail.com