RECEIVED
AND FILED
MAY 7 3 27 PM '08
U.S. BANKRUPTCY COURT
MARY A. SCHOTT, CLERK

ORIGINAL

Rich Bergeron
147 OLD COUNTY ROAD
East Sandwich, MA 02537
Telephone: (617) 209-4325
Defendant as Pro Se Attorney

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

In Re:

XYIENCE, INC., A Nevada Corporation

Debtor.

No. BK-S-08-10474-MKN
Chapter 11

Eighth Judicial District Court
Las Vegas, Clark County, Nevada
Case No. A544781, Dept. XXIII

---

XYIENCE INCORPORATED, a Nevada Corporation,
Plaintiff,

v.

RICHARD BERGERON, an individual
Defendant.

CASE NO. BK-2-08-AP-01082-MKN

---

RICHARD BERGERON, an individual,

Counterclaimant,

v.

XYIENCE INCORPORATED, a Nevada corporation; FERTITTA ENTERPRISES, INC., a Nevada corporation,

Counterdefendants.

**COUNTERCLAIMANT'S OPPOSITION TO XYIENCE, INCORPORATED'S MOTION TO DISMISS**

Hearing Date: May 14, 2008

Time: 9:30 AM

Location: 300 Las Vegas Blvd. South
Courtroom #2
Las Vegas, NV 89101

**INTRODUCTION:**

As far as any service issues regarding the counterclaims in this case raised by Xyience Attorneys Fennemore Craig, they are moot considering Bergeron has since effectuated proper service through a licensed Nevada attorney and has now served Attorney Pamela Lawson of Hunterton and Associates, Xyience headquarters, and Fennemore Craig attorneys. Though Bergeron readily admits that Fennemore Craig attorneys were not immediately served with these counterclaims, Fennemore Craig stipulates in various prior pleadings that they did not even officially appear as counsel in this case until February 25, 2008. Bergeron is not clairvoyant, although he has been compared to Nostradamus regarding his predictions regarding Xyience. He had no way of knowing Fennemore Craig attorneys needed to be served or were officially representing Xyience when he served the documents on Xyience headquarters. Bergeron did not even receive any direct communication from Fennemore Craig representatives until February 27th, 2008.

The Bankruptcy stay in this case is inapplicable, and Fennemore Craig attorneys are well aware of this fact despite their hollow contentions that it does somehow apply. The original action was not brought by Bergeron, it was brought by Xyience. Since Bergeron has laid out in intimate detail the evidence to prove the entire original matter is purely frivolous, he has a right to claim relief.

Furthermore, with regard to Xyience's attempts to prove Bergeron has failed to state a claim upon which relief can be granted, the very defense Xyience mounts in their opposition pleading amounts to evidence that he has valid claims. For one, except for the second and final counterclaim (which Bergeron admits to misunderstanding as far as it being more fitting of classification as a type of damages), Bergeron claimed the very same torts Xyience did in their initial pleading. By

providing their defenses against this claim, Xyience proves Bergeron's case that the entire litigation against him is frivolous.

Bergeron was not aware when he filed the counterclaims that he might have difficulty in applying the final two counterclaims to a counter suit, yet he is now willing to withdraw the final two claims considering there are clear weaknesses. However, with regard to damages he still asserts that he is due damages for pain and suffering and only submits to the fact that stipulating a damage type as a claim was erroneous. Also, while the tort of interference with prospective economic advantage does not seem to fully apply, there are partial considerations which do apply. For instance, Xyience and Fertitta Enterprises both knew Bergeron had a Web-site and also had to know that Bergeron would have difficulty acquiring work from any third party with a defamation suit looming. Still, for the sake of clearing the record and narrowing down the claims to those most applicable to the situation Bergeron will submit to withdrawing those final two claims and proceed on the defamation and violation of First Amendment rights claims.

The request to have Bergeron's points and authorities eliminated from the counterclaim is contradicted by Xyience's own defense tactics in their motion, which will be outlined later in this pleading.

Bergeron is also willing to concede that Fertitta Enterprises is not directly culpable for the defamation claim's charges. He will accordingly agree to have that claim alone applied strictly to Xyience. For the purposes of providing a clear and accurate record which cannot be disputed by anything set forth in defense by either counter defendant, Bergeron hereby requests that his summary judgment motion be applied only to the first two counterclaims with only the second counterclaim applying to both parties. He also requests damages for pain and suffering be factored in since they

were not the sole claim sought in the complaint and therefore have merit as damages despite not qualifying as a valid claim.

In all respects in which Bergeron misinterpreted the law or did not apply it properly it has been a result of having far too much to accomplish on his own in this case with extremely minimal outside help and guidance. Nonetheless, he has assembled ironclad counterclaims in regard to his First Amendment rights being violated and his defamation at the hands of Xyience officials. Summary judgment should apply to these claims and be granted.

**I. THE BANKRUPTCY STAY IS NOT APPLICABLE TO THIS CASE:**

Bankruptcy courts have the sole authority to determine the scope of the automatic stay imposed by title 11 United States Code section 362(a), subject to federal appellate review. (*In re Gruntz*, *supra*, 202 F.3d at p. 1087.) In general, a "'core proceeding'" in bankruptcy is one that "'invokes a substantive right provided by title 11 or . . . a proceeding that, by its nature, could arise ***only*** in the context of a bankruptcy case.'" (*In re Gruntz, supra,* 202 F.3d at p. 1081.) "'Non-core proceedings' are those not integral to the restructuring of debtor-creditor relations and not involving a cause of action arising under title 11." (*Ibid.*)

This case, initially brought by Xyience and directly motivated by the promise of payment from Fertitta Enterprises, does not now and never did qualify as one that the bankruptcy stay can logically or legally apply to. Bergeron is not now and never was a creditor in the bankruptcy case. The primary and superceding First Amendment issues provide for an eventual possible elevation of this matter to US District Court. Bergeron only allowed the removal to bankruptcy court to remain in effect because he believes it provides him a channel for attempting to provide relief for those defrauded by this egregious situation. Having set forth evidence of a bad faith bankruptcy filing and

several glaring signs of bankruptcy fraud existing, Bergeron has acted with due diligence to look beyond his own wants and needs in order to inspire justice for all aggrieved parties.

The bankruptcy stay is in all situations designed to relieve the debtor from having to pay the bulk of past debts that are not exempt from such a stay. There are two specific words that are wholly important in determining whether or not a party is entitled to request relief despite the stay being in place. The first word is debt. Bergeron has exhaustively searched the internet for pertinent case law and explanations of what bankruptcy stays are all about and how they apply. His research led him to decide against filing a Motion For Relief from the stay, because under no circumstances has this case revolved around any official debt owed to him from any business relationship with Xyience. The second word is creditor. Nowhere in the bankruptcy case proceedings is Bergeron's case classified officially as an asset or liability. In fact, Bergeron's case is not even classified in the A.J. Robbins audit of Xyience which included an assessment of Xyience reaching into November of 2007 and contained various other cases Xyience was engaged in at the time. Yet, in previous pleadings Fennemore Craig attorneys have tried to paint this case as an asset. Nowhere in any of Xyience's financial documents submitted in their bankruptcy filings is this case formally listed as any type of asset. Bergeron is not a creditor in this bankruptcy and is also not named anywhere as a creditor in the bankruptcy documents. (See Bankruptcy Case 08-10474-mkn, Docket #1, all exhibits).

Therefore, there is no basis for the bankruptcy stay to apply to these proceedings, and Fennemore Craig attorneys having an exclusive position as the official firm handling the bankruptcy should have known this. Their coercive attempts and empty threats to get Bergeron to seek an improper course of action should result in their censure by this court. The following is an excerpt from their unreasonable, unwarranted, and unsubstantiated demand letter sent to Bergeron on

February 28, 2008 without any conceivable basis whatsoever:



The tough talk leveled at Bergeron was a direct attempt to railroad him into bringing his claim to the bankruptcy court on his own, which he never actually had to do. It has since come to Bergeron's attention that Fennemore Craig attorneys also acted erroneously and irresponsibly in improperly removing the derivative shareholder complaint to the bankruptcy court. Fennemore Craig attorneys never had any standing to bring contempt charges against Bergeron or even threaten such an action considering his case has absolutely nothing to do with the bankruptcy.

Deciding to fight the matter out in state court instead of succumbing to Fennemore Craig Attorney Jon Pearson's hollow demand letter, Bergeron was never subsequently served with a motion for an order to show cause why he should not be held in contempt. The counter defendant Xyience continued litigating the matter in state court with no further threats or demands until Fennemore Craig attorneys filed for removal to this court. That removal only came after Bergeron's opportunity to appear at a hearing on the matter of an extension and his right to appear telephonically was circumvented by a Fennemore Craig attorney purposely securing a hearing before the stipulated

time the hearing was set for. Bergeron was unable to appear despite calling in on time for the hearing. The result of that hearing was highly favorable to the plaintiff considering Bergeron was barred from appearing telephonically and an extension of 60 days was granted without Bergeron being afforded a chance to argue against the extension.

The judge's secretary had previously left a recorded message for Bergeron outlining the stipulated time for the hearing and instructing Bergeron to call the court at that time. Bergeron subsequently left a message for Fennemore Craig attorneys regarding the stipulated time set for the hearing, as per the instructions of the same secretary. The hearing held on the set day was commenced much earlier than the time the defendant was instructed to call the court, and Bergeron had to petition the court twice in order to achieve a partial remedy through filing an ex parte motion to strike the extension order. He then managed to convince the judge to rule on all future motions in chambers since Bergeron had been denied a fair chance to plead his case in public by the order refusing his right to appear telephonically. Almost as soon as the judge decided to level the playing field in that regard, Fennemore Craig attorneys filed a removal to the bankruptcy court.

Fennemore Craig attorneys utilized their connections and inside knowledge of the Nevada court system to circumvent Bergeron's right to due process and employed incessant delay tactics to stall Bergeron's properly noticed and scheduled hearings. While their removal was primarily designed to produce a more convenient situation for them by bringing the matter into a realm they have more experience in, it is essentially a move that made their position significantly weaker.

Firstly, by bringing the matter into the bankruptcy court on their own, they contradicted their demand letter completely and unquestionably. Secondly, they created a situation in which their clinging to "safe harbor" protections regarding the Rule 11 motion became suicidally flawed. They

afforded themselves an extensive period of delay through not only achieving a 60-day extension but also managing to get Judge Williams to recuse himself and then earning further delay by bringing the matter into bankruptcy court. This provided them an extremely lengthy period to consider withdrawing or correcting the faulty complaint, and they did neither. At the same time they did not justify this inaction on the Rule 11 motion in any fashion as far as producing more definitive, supporting evidence to ensure their claim could hold up to scrutiny. Finally, by bringing the matter into direct contact with the bankruptcy court they have basically acknowledged that the case is stay-proof and their only remedy has been to hale Bergeron into another entirely different court with the hopes of losing him in a new and unfamiliar procedural maze.

**XYIENCE'S DEFENSES AGAINST BERGERON'S COUNTERCLAIMS INADVERTENTLY PROVE THEIR OWN INITIAL CASE IS WHOLLY FRIVOLOUS:**

Bergeron has presented evidence showing that both William Pike and John Chadwell, while in Xyience's employ, were responsible for posting defamatory remarks about Bergeron. Both betrayed their identity in their ramblings and blog postings defaming Bergeron and harassing him incessantly and needlessly. Fennemore Craig attorneys prove through their ignorance of previous filings and evidence already on the record that they obviously wasted their extensive delays by not getting themselves up to speed on the existing background of the case. Bergeron's earliest motions provide volumes of evidence regarding this defamation that can be directly attributed to at least those two Xyience employees.

Most of the people who posted anonymous, subversive, and abusive comments across the Internet operated as if they sought to shoot down the messenger so no more bad news would come out affecting the value of the company. Regardless of the fact that Bergeron's stories were true, those

obviously connected to Xyience in some way painted him as the enemy until the Fertitta loan virtually wiped them all out financially. At that point these same detractors came out in full force to champion Bergeron's search for the truth behind this fraudulent bankruptcy. This pattern of history and behavior is evident and apparent.

Furthermore, William Pike and John Chadwell both betrayed their identity through their public statements printed across the net. Pike did so through describing a phone message Bergeron left on his phone while Chadwell gave up his mask of anonymity by leaving a traceable IP address that linked his postings left with his own email address to postings left under an anonymous alias. Xyience's opposition provides no valid legal argument as to why this cannot be categorized as defamation.

As far as defamation tied to the litigation, there may well be protections for defamatory statements made during the normal course of litigation, but defamation resulting from the willfully irresponsible acts of attorneys and law firms handling this case is an entirely different matter. Frivolous litigation which is on its face designed to harass the defendant and delay justice based on the perpetration of lies should not be afforded the same protections as normal, earnest litigation filed in good faith. The fact remains that these proceedings were filed and pursued in bad faith with a complete lack of any significant investigation into the facts involved. That opens up the possibility of disqualifying the Xyience attorneys and their filings in this case from usurping their cited litigation protections in regard to the defamation claim. Essentially, those who so egregiously abuse the process should not be able to hide behind protections designed for those who use the process as it is naturally designed and intended. Further, all of the statutes noted by the counter defendant Xyience regarding the litigation protections against defamation are wholly Nevada based and do not rise to

the standard of this federal court as being absolute. Therefore, the defamation claim cannot be thrown out based on these contentions.

Regarding the second counterclaim, Fertitta Enterprises and Xyience both purposely used and abused the Nevada Judicial system to punish Bergeron for an offense he did not commit. Bergeron presented adequate and duly noted objections to jurisdiction being proper in Nevada and cited numerous Supreme Court decisions as precedented examples of prior restraints. The plaintiff and Fertitta Enterprises both utilized their combined political and financial pull to create a situation in which they could easily violate Bergeron's First Amendment rights. Both parties acted in collusion with the state and Judge Williams to steamroll justice at the expense of Bergeron. As soon as Williams showed the vaguest indication of leaning in Bergeron's favor a substitution of counsel quickly remedied the situation creating a scenario in which Williams had an excuse to recuse himself without looking suspicious.

The parties infringing on Bergeron's First Amendment rights were never simply private actors. Fertitta Enterprises and their chief officers influence politics on a grand scale, as evidenced by their multiple and generous national and local political campaign donation records submitted as part of the counterclaim.

Bergeron's First Amendment rights have clearly been violated. There is no question that the preliminary injunction is a prior restraint. It was secured not only through a process which proved to violate Bergeron's First Amendment rights but also eliminated his right to due process on several occasions by denying him access to the courts in order to publicly plead his case. For the bulk of this case there was no level playing field afforded to Bergeron to participate in his own defense except for one lone hearing in the District Court and a status check hearing thus far in this Court. Xyience

and Fertitta Enterprises both orchestrated this situation through their abuse of the state court process and are now trying to continue that same behavior at the federal level by hiding behind technicalities and procedural nuances.

With regard to 42 U.S.C. Section 1983, if that is the only claim Bergeron can allegedly champion, he has more than enough grounds to do so. Paragraph 2 on page 7 of Xyience's opposition includes an accounting of that statute Xyience tries to represent as favorable to no valid claim existing for which Bergeron can request relief. Yet their own precedent cases prove Bergeron's case. This accounting neglects to include the true facts of Bergeron's well-substantiated allegations.

Xyience and Fertitta Enterprises may appear to be private parties at first glance, but their behavior is wholly public and a topic of public interest, hence their requirement to meet the "actual malice" standard in proving defamation against Bergeron. Xyience, Fertitta Enterprises, and the various attorneys handling this case all acted under color of the law. They bastardized that law every chance they could and created a situation in which it was easy to persecute Bergeron despite his innocence. They used their undue influence and swayed the court to violate Bergeron's rights to a fair and speedy trial, due process, and free speech.

The entire argument made by Xyience in section C. of their Motion to Dismiss beginning on page 8 and ending on page 9 completely and unquestionably negates Xyience's identical claim against Bergeron. Xyience's vague assertion in the initial complaint that "one investor" refused to invest in Xyience because of Bergeron's stories was not sufficient enough to justify tortuous interference according to their own argument here. The Adam Frank Declaration was also insufficient to prove Bergeron's intent. Only someone who was close enough to Bergeron to know his character and demeanor regarding the situation would be able to determine his intent. Further,

there has been no evidence provided to show Bergeron wished to prevent the relationship between Xyience and any investors. Bergeron simply reported the facts of the matter. He did not print any suggestions telling investors to stay away. He presented only a staunch call for the corruption to be cleaned up so as Xyience could prosper. Finally, as to any actual harm being done to the plaintiff by Bergeron's conduct, there is no evidence of any damage done to Xyience as a result of his reports. It is the plaintiff's own conduct and fraudulent behavior that led to the bankruptcy, not Bergeron's accurate and extensive exposure of the bad behavior exhibited by the company's principals.

In light of the improper classification of Pain and Suffering as a cause, Bergeron agrees with Xyience attorneys that it should be set aside as a cause of action. Yet, as a remedy it should be allowed to stand considering another cause of action has been laid out extensively enough to prove both parties are culpable. The statutes cited by the plaintiff and counter defendant all bear out the fact that a remedy should be dismissed only if there is no cause of action to justify it.

Bergeron has more than justified the awarding of damages for pain and suffering. Bergeron has no law clerks and receives nothing even remotely close to the hundreds of dollars per hour that the opposition's lawyers can command from their clients. The amount of work he's done to defend himself from a case that has been allowed to continue based on complete garbage and manufactured evidence is tremendous and overwhelming. He's lost sleep, suffered anxiety, and sacrificed a voluminous amount of time that could have been spent on a variety of much more productive endeavors. This case has been a detriment to his physical and mental well being, all in the name of a claim that should have never been allowed to proceed against him. The initial complaint is based on no tangible evidence and came before the state court with an overwhelming absence of any merit. Jurisdiction was never even proper considering Bergeron had no contact with Nevada sufficient to

justify being haled into Nevada state court in the first place.

**<u>XYIENCE'S ARGUMENT FOR STRIKING THE COUNTERCLAIM AND EXHIBITS IS BASELESS:</u>**

Xyience sets forth in its own argument:



The above passage comes from the first paragraph of page 4 of their motion to dismiss. The question must be asked: how can Xyience claim the stipulations above on the one hand while on the other they attempt to strike all supporting evidence and sufficient facts underlying the claim? Further, the counter defendant provides no direct definitive evidence that any of the points and authorities or exhibits are redundant, immaterial, impertinent or scandalous. If there is any lack of a cognizable legal theory in this case it rests with Xyience's entire initial claim and all subsequent defenses of that claim and attempts to avoid accountability.

The opposition has attempted numerous times to ask for exhibits to be stricken while at the same time providing no pertinent justification other than a baseless argument that they are unauthenticated. Even as an unlicensed, inexperienced pro-se litigant Bergeron has been able to put forth valid, verifiable, unquestionable evidence in each of his motions requesting striking of pleadings and/or orders in this case.

Bergeron's counterclaims should be allowed to be judged on their full weight and substance. The plaintiffs have received bountiful leeway at every stage of the process having their own hollow pleadings and supposed supporting evidence kept on the record. They have introduced perjured, manufactured, and misrepresented evidence and insufficient pleadings throughout the entire length

of this case thus far. Bergeron should be given the benefit of any doubt until such time that the counter defendants provide actual evidence of their own contradicting Bergeron's facts and evidentiary support.

**CONCLUSION:**

Both counter defendants would be overjoyed if this Court were only driven by technicalities and procedural nuances that trump true merits. However, no court is situated to ignore merits and defensible arguments that are based soundly on fact. Bergeron is not the only one involved in this bankruptcy proceeding launching these common allegations. There is an entire committee of unsecured creditors and a slew of burned investors engaged in a derivative lawsuit making the same contentions of fraud, breach of fiduciary duty, and misuse of the process for the benefit of the higher echelon Xyience players and Fertitta Enterprises. Specific notice should be taken of the initial bankruptcy case's unsecured creditor's committee pleading marked as Docket # 167, filed on 3/31/2008 and all the supporting evidence. While the author of that pleading is clearly a much better attorney, Bergeron's pleadings are peppered with the same allegations and explanations that ring just as true. Compared to the evidence already on file in all cases attached to the original bankruptcy proceeding making the same contentions of fact, Bergeron's pleadings may be all the more remarkable because he is not a practicing or licensed attorney.

While other attorneys have clearly laid out the evidence for all to see and made potent arguments for the validity of all the so-called "conspiracy theories" Bergeron has thus far been the only litigant to actually ask the court to stop this case in its tracks and hold the guilty parties accountable for the fraud that is still ongoing and still injuring multiple parties for the purpose of providing unjust enrichment for Fertitta Enterprises and their self-installed Xyience minions.

Bergeron is the only litigant actually willing to sacrifice his own personal gain to fight for everyone victimized here for no outrageous fees.

Furthermore, as pro-se attorney Bergeron actually has the lone advantage of being able to plead the case based exactly on the experiences and first hand knowledge of his client. Xyience and Fertitta Enterprises have no such luxury. An attorney cannot enter evidence into a case. Only a competent witness can. (Trinsey v Pagliaro, 229 F.Supp. 647).

It is telling and entirely hypocritical for the counter defendants to contend that the weight of Bergeron's merits and evidence cannot be accepted merely because he does not file numerous affidavits. The fact remains that the attorneys currently opposing Bergeron have filed not one single affidavit or declaration of their own in support of any pleading that will be entertained at the May 14th hearings. There is no evidence that any facts or merits presented for the record on the opposing attorneys' behalf is the result of direct discussions with their clients or any competent witnesses without such affidavits or declarations from themselves or their clients. Essentially every written word that is not pertaining to a statute, point of law, or precedent case is inadmissable hearsay without credible witness testimony of some kind to back it up.

Further and even more importantly, Bergeron has been painfully honest in admitting his own faults despite broad protections afforded to pro-se litigants. He could easily avoid even having to justify a defense for failure to state a claim upon which relief can be granted. Haines v. Kerner, Et Al, 404 U.S. 519 (1972) states that a Pro Se litigant's complaint cannot be dismissed for failure to state a claim upon which relief can be granted. Haines v. Kerner, et al - Court's Opinion:

**...allegations such as those asserted by petitioner, however inartfully pleaded, are sufficient to call for the opportunity to offer supporting evidence. We cannot say with assurance that under the allegations of the pro se complaint, which we hold to less stringent standards than formal pleadings drafted by lawyers, it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). See Dioguardi v. Durning, 139 F.2d 774 (CA2 1944).**

Regardless of the deficiencies in their pleadings, pro se litigants are entitled to the opportunity to submit evidence in support of their claims. In re Platsky: court errs if court dismisses the pro se litigant (Defendant is a pro se litigant) without instruction of how pleadings are deficient and how to repair pleadings. In re Anastasoff: litigants' constitutional rights are violated when courts depart from precedent where parties are similarly situated. All litigants have a constitutional right to have their claims adjudicated according the rule of precedent. See Anastasoff v. United States, 223 F.3d 898 (8th Cir. 2000).

**Statements of counsel, in their briefs or their arguments are not sufficient for a motion to dismiss. Platsky v. C.I.A. 953 F.2d. 25, and Anastasoff v. United States, 223 F.3d 898 (8th Cir. 2000) relying on Willy v. Coastal Corp., 503 U.S. 131, 135 (1992), "United States v. International Business Machines Corp., 517 U.S. 843, 856 (1996), quoting Payne v. Tennessee, 501 U.S. 808, 842 (1991) (Souter, J., concurring). Trinsey v. Pagliaro, D.C. Pa. 1964, 229 F. Supp. 647, American Red Cross v. Community Blood Center of the Ozarks, 257 F.3d 859 (8th Cir. 07/25/2001).**

The counter defendants, in FACT, cannot uprightly, straightforwardly, forthrightly, honestly, and impartially respond with any actual integrity without properly addressing the merits of this case and providing some kind of tangible evidence of their client's lack of complete culpability. As far as this case goes there can be no moving forward beyond May 14th without lady justice losing her blindfold and scales to the wicked winds of deception and legal trickery. Summary judgment on all outstanding counterclaims should be granted forthwith.

*DATED this 6th day of May, 2008.*

IN PROPER PERSON

RB

Rich Bergeron
147 Old County Road
East Sandwich, MA 02537
617-209-4325
Attorney Pro-Se