RECEIVED & FILED

ORIGINAL

JUL 11 3 33 PM '08

U.S. BANKRUPTCY COURT
MARY A. SCHOTT, CLERK

Rich Bergeron
147 OLD COUNTY ROAD
East Sandwich, MA 02537
Telephone: (617) 209-4325
Defendant as Pro Se Attorney

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In Re:<br><br>XYIENCE, INC., A Nevada Corporation<br><br>Debtor. | No. BK-S-08-10474-MKN<br>Chapter 11<br><br>Eighth Judicial District Court<br>Las Vegas, Clark County, Nevada<br>Case No. A544781, Dept. XXIII |
| XYIENCE INCORPORATED, a Nevada Corporation,<br>Plaintiff,<br><br>v.<br><br>RICHARD BERGERON, an individual<br>Defendant. | CASE NO. BK-2-08-AP-01082-MKN<br><br>**COUNTERCLAIMANT'S (1) REPLY TO FERTITTA ENTERPRISES EX PARTE MOTION AND (2) MOTION TO COMPEL COURT TO RULE ON ALL OUTSTANDING MOTIONS**<br><br>Next Hearing Date: August 13, 2008<br><br>Time: 9:30 AM<br><br>Location: 300 Las Vegas Blvd. South<br>Courtroom #2<br>Las Vegas, NV 89101 |
| RICHARD BERGERON, an individual,<br><br>Counterclaimant,<br><br>v.<br><br>XYIENCE INCORPORATED, a Nevada corporation; FERTITTA ENTERPRISES, INC., a Nevada corporation,<br><br>Counterdefendants. | |

**INTRODUCTION:**

Counterclaimant Rich Bergeron hereby submits this reply to Fertitta Enterprises' un-served Ex Parte Motion for Order to Show Cause re: Unauthorized Recording of Court Proceedings. Also enclosed in this motion is an argument designed to promote a fair ruling based on the evidence and merits presented in all the outstanding motions before the court. Primarily, all motions relating to the initial Xyience, Incorporated case should be adjudicated as soon as possible. It has been 9 months since Bergeron initially filed his motion to dismiss this matter. The plaintiff's attorneys have managed to delay official court decisions on that motion and Bergeron's motion for sanctions, filed on December 15 of 2007, for an extremely ridiculous amount of time. Bergeron has a right to a speedy trial, and all of the plaintiff's docketed motions have been ruled upon thus far with the exception of a motion to dismiss the counterclaim that they filed in this court. Fair relief should be granted where it is due, and the latest issues involved with the counterclaim are somewhat dependent on a final determination of the initial case. The court process should not be corrupted in such a manner that a decision is made on the counterclaim that was filed long after Bergeron's Motion to Dismiss and Motion for Rule 11 Sanctions.

**ARGUMENT:**

The ongoing litigation before this court is much more worthy of a Kafka novel than it is for this federal legal venue. The question must be asked: At what cost does this case continue to rage on senselessly with no purpose or direction?

In recent weeks there have been no further updates, reports, or links added to the Web-site at the heart of this dispute that relate in any way to Xyience. Understanding the idea that the company

itself needs time to turn itself around without so much public scrutiny of its past, Bergeron has kept fairly quiet in regard to the entire Xyience investigative report series. He has ceased writing, marketing, and investigating further stories in the hopes that a settlement might be reached.

Bergeron has only conducted one recent interview with an obscure, Ireland-based Web-site. The matter of the hearings' recording placed on that site is related to the documentary discussed in the interview. The Seattle-based filmmaker (who listened to the hearings on another line) could not get cameras approved for the courtroom and wanted to understand what Bergeron was dealing with in this case. Bergeron was not aware that the recording was being made, but the filmmaker did send him a copy of the recording later on, which Bergeron gave to the Ireland-based author of his interview. Considering the difficulty the court had in hearing Bergeron at the proceedings, the recordings can help all parties involved review Bergeron's commentary clearly.

There is no need for a show cause hearing unless it is to determine if formal perjury charges should be brought against Adam Frank for his fabricated affidavit, and Bergeron would not be able to afford to travel to Nevada anyway. If the counter-defendants wish to pay his expenses, he would gladly come before the court personally to state exactly what is written above for the record. However, it seems that the defense only makes this outrageous request in order to force Bergeron into a situation where he would be at a clear disadvantage.

The counter-defendants have assumed in their version of events that Bergeron is motivated by an over-riding desire to profit from any documentary and/or book project. This is absolute malarkey, and Bergeron has always publicly stated his reasoning for telling the Xyience story. His purpose has nothing to do with any plan to profit unfairly from this situation. He has invested a great deal of unpaid time in detailing this saga and continuing to fight this case with the burned

shareholders in mind, and if money were his main concern he would not be continuing to ask that relief be granted to those shareholders in addition to himself. Bergeron has always acted in a manner that betrays his main weakness in life: he cares too much about the plight of others, especially those who have been really taken advantage of so rich people can get richer.

A book/documentary project will go a long way in exposing exactly what went wrong here and why. It will stand the test of time and serve as a warning to other crooked businessmen who might try the same con on some other unsuspecting victims. More so than any judgment, a book will solidify the inherent values, morals, and life lessons involved in one man doing his best to fight for what he believes in.

But, the little guy always loses in real life, doesn't he? It may work for the reluctant hero in movies and novels, but the harshness of reality doesn't usually allow for luck, fairness, and help from a wise old sage in any true battle against corrupt forces of influence. The legal system is serious, definite, and official. Sometimes the stigma of a bad decision can stay with someone for life. This little guy doesn't deserve that. At what cost to all the other little guys trying to fight corruption and greed do we continue to allow a baseless case to go on against an innocent, altruistic actor?

A decision in this case must not betray the rule of law, the First Amendment, and the right of victims to adequate relief. Bergeron seeks most damages for distribution to the shareholders who were victimized by the plaintiff and counter-defendant conspiring to use the courts to silence Bergeron.

Bergeron is not alone in describing the despicable, underhanded, horrendously and overtly corrupt methods used to cripple Xyience and shore up the bank accounts of a select few bad actors who set the whole crooked scenario up from the start. Almost a year since this unfounded and

unwarranted case hit the docket the plaintiff's corporation is still paying out voluminous legal fees for no progress to be made toward any meaningful discovery or actual trial. No new evidence on behalf of the plaintiff has come to light in recent months, and to even draft this case to begin with based on the complete lack of definitive evidence was highly unethical, irresponsible, and negligent. Continuing the matter without producing any indisputable evidence or demonstrating any merits of the initial claim is by the same token unacceptable. Doing so only wastes this court's valuable time.

Punishment simply must be handed down for this appalling, offensive, and disrespectful abuse of the legal process by initial Plaintiff's Attorney Jamie Cogburn and every subsequent attorney who continued to fight this bogus case even after Cogburn's withdrawal. This case is a complete sham, and plenty of evidence to prove it as such has already been entered on the docket. The evidence is now stacked in Bergeron's favor in a case in which he was meant to be the defendant. If there were no merit to his arguments, this case would not have made it this far where incessant delay of the inevitable is the ultimate goal of his opposition.

Bergeron remains hopeful that a lack of a decision thus far represents the intricate and complicated nature of the case itself. This is likely an unprecedented situation for any bankruptcy court to contend with. Yet, this does not change the fact that a falsely characterized and orchestrated bankruptcy has been allowed to continue unabated. A reporter has been denied his rights to speak the truth and those behind the scheme have utilized their broad financial base and their incredibly powerful state and nationwide influence in order to commit fraud. They have made this court itself a victim of that fraud along with hundreds of shareholders and creditors.

This court needs to make its own precedent here if necessary. Even if the final award of damages is structured as a payment plan, it would be better than forcing Bergeron to continue to

spend money he doesn't have on a process that continues to victimize him based on garbage accusations and fabricated evidence.

United States District Court may be the best place for the counterclaims. This is not because the Nevada bankruptcy court cannot decide the matter. The court here may very well weigh the matter fairly and make a strict, bombproof decision leaving no room for appeal. Yet, a trial may be needed where both sides have completely equal footing. This court could conceivably only make a final determination on the initial Xyience case and grant Bergeron leave to file for the counterclaim's removal to U.S. District Court. This will allow Bergeron the chance to appear in person and present his case in a public forum.

However this court may rule, it is essential that any ruling be timely and allow for needed discovery to take place. Already the scheduling conference has been twice delayed and pre-trial hearings on some motions have been circumvented after being clearly ordered for the May 14th date and then somehow overlooked once that date arrived. Despite Bergeron having several outstanding motions set for hearing on that date with most targeted on the initial Xyience case against him, only the hearings associated with the counterclaim were heard. This creates a situation in which the counterclaim concerns have taken undue precedence over the adjudication of the original case itself. The hearings that have yet to be held were scheduled and rescheduled several times already, delayed until the last possible moment, and then set for a calendar date only to be changed by the court at the last possible second. The judge's order prior to the May 14 hearing date in this matter clearly outlined 6 hearings would take place on that date while only three actual hearings were held.

Bergeron does not read anything into why these hearings never came to pass, but at the same time it does raise questions as to whether or not he can obtain a fair trial in Nevada. Fertitta

Enterprises pays a considerable amount of taxes in Nevada, wields broad influence across the state, and owns a considerable amount of real estate. The Fertittas are responsible for inspiring a great deal of tourism with their existing resorts, casinos, and luxury communities. They are also responsible for ongoing developments. The courts here may not be able to fully distance themselves from this undue influence that may slant a potential ruling in favor of the Fertittas.

Already the incessant, willing, intentional delay tactics successfully utilized by both counter-defendants have shown that if they cannot hope to sway the court's decisions in their favor they can at least be comfortable knowing they can prevent the court from making a decision until they are ready for it. While delaying this matter for all manner of bogus reasons, Xyience's attorneys in particular have made absolutely no good use of their time as far as building up any additional merits to their case or presenting any new evidence. They have allowed all their responsive pleadings and motions to focus strictly on technicalities and loopholes in the law that they hope will allow them to escape accountability. The initial case is impossible for them to even argue at this point since it was fabricated from the beginning as a way to silence Bergeron without a fight. Still, the opposition's tactics are to keep on preventing decisions until a point at which they hope Bergeron will just give up.

Bergeron has come this far on his own for a reason. He is truly innocent and always reported the absolute truth about the ongoing situation with Xyience. His counterclaim may not be airtight as far as the correctly stated claims he needs to put forth, but he does indeed have claims against both counter-defendants that are valid, and those claims have clearly outlined merits. The statutes and precedents mentioned in Bergeron's responsive pleadings to the motions to dismiss his claims in this case clearly explain that as a pro-se attorney his counterclaims cannot be dismissed for failure to

state a claim upon which relief can be granted. The judge must instead explain where the counterclaim goes astray and what sections of the counterclaim need to be restructured.

Yet, even more important than the counterclaim is the adjudication of the initial $25 million lawsuit. Somehow the counterclaim has already outpaced those proceedings as if the court completely forgot where this thing started in the first place. We cannot forget why we are here at this point. All this ongoing litigation attached to this matter with all its various legal representatives latching onto this case for almost a full year now, all of it began as a sham of a case that never should have been allowed to enter any courtroom based on such flimsy, perjured evidence.

What have the plaintiffs accomplished in all that time to prove there are any merits to their case? They have only managed to cling to technicalities and allow their case to deteriorate the more it is scrutinized. What have they done to responsibly move toward trial? The answer is nothing. The latest attorneys for Xyience have not filed a single offensive motion since taking this case on.

Those most recent attorneys, Fennemore and Craig, stated at the May 14, 2008 hearing that they don't believe the Xyience board of directors is interested in continuing this matter, but they have yet to even reach out by either email or phone to explore any kind of settlement. Their billing statements reveal they have engaged in settlement talks with plenty of other parties, but they refuse to come to the negotiating table with Bergeron. They would rather keep lying for their client, abusing the system, and utterly wasting this court's time with a case they know they can't win and don't even want to try. If they were eager to win this case they would be pushing for discovery, but in reality there is nothing to discover since there is no merit to their case.

Each waking moment the court allows the plaintiff to continue such a charade is corrupt in itself. They should not be permitted to soak up so much time with delay tactics and evasive

maneuvers while showing no outright motivation to actually bring this matter to a trial and no intention of producing new, indisputable evidence.

No corporation, be it bankrupt or not, should be allowed to act against an innocent individual the way Xyience has against Bergeron. No court in this free country should allow such treatment to persist when the sheer amount of evidence favors closure and dismissal of what is clearly a frivolous case. This court does not operate as the wing of a communist government. Fennemore and Craig Attorney Laurel Davis actually stated at the May 14th hearing that Bergeron has no right and therefore cannot be granted relief. Apparently thinking this is a case in which free speech can be squelched, Davis woefully misrepresented the situation at hand.

Bergeron is not an employee of Xyience, not a citizen of a communist community led by Xyience, and he is not enrolled in a private school under their control. When a person voluntarily signs on with an organization, community or company and agrees to follow their wishes, guidelines, and rules, certain rights can sometimes be legally snatched away from them. Case in point is in our own military, where speaking out against the commander in chief is strictly forbidden. In this case, however, Bergeron is not sworn to uphold any allegiance to Xyience. There is no reason for Xyience to be permitted to circumvent his rights to free speech. If Ms. Davis was referring to the fact that he is not a shareholder and therefore somehow has no remedy in this court, then by the same token this case should have never been transferred to this court. Her firm most likely irresponsibly removed the matter to this venue, which in itself is deserving of sanctions. Yet, here we are now in this venue, and we must resolve at least part of this situation where it stands.

Beyond the rights to free expression and speech contained within the nuances of this litigation are the rights of every individual to be free from tyranny. Nobody in this country should

have the right to falsely accuse people of wrongdoing for doing their civic duty to the public and exposing corruption. A person who deserves praise should not be punished instead simply because the wrong he is exposing is being committed by a group of people with a great deal of money and power.

A delayed decision not accounting for the absolute truth and the preponderance of existing evidence supporting sanctions and dismissal of the initial claim serves none of the vast amount of victims. Bergeron is asking very little considering what both counter-defendants have done to him. He asks for just $500,000 despite experiencing more than a year of absolute legal Hell for no purpose whatsoever. That prayer is entirely fair, and so is his request that shareholders and creditors receive at least some small stipend as well.

Bergeron hereby begs of this court to make a swift and final determination on the initial $25 million claim against him. He also asks for leave to elevate the counterclaim matters to U.S. District Court. Should the court decide against Bergeron, any order stipulating such should be accompanied by an extradition order for charges of contempt. For, if he is truly guilty of the initial case's charges he has violated the Clark County District Court's Temporary Restraining Order multiple times and admitted to this court as much on several occasions now.

Either way, delaying a decision only hurts one party and puts the ball more squarely in their court despite the advantages they already have over Bergeron. It's not the big corporations suffering right now, it is the individual who is simply asking for fair relief.

This country was founded on the pure, unfettered principles of a few well-educated individuals chosen by the masses to be representatives of the whole citizenry. These founders of our great nation were not moved to action by corporations, and they did not create this country with the

intent of making corporations within it infallible or all powerful. It is the true, inherent, natural desire of every man, woman, and child to live, speak, and act freely which inspired the creation of these United States. Just because big corporations have sprouted up since then with vast financial influence and the power to indirectly cripple their detractors' careers does not mean we should forget that all citizens of this country are entitled to their basic freedoms.

The motion for sanctions has been undecided for months now, and it is long past due for a final decision. The same goes for all outstanding motions based on the initial case. Bergeron only asks for fair relief, and all the evidence proves he bears no malice toward Xyience and never defamed the company in the first place. It makes no logical or legal sense to allow this case to continue one minute further. Unfortunately, the plaintiffs have already managed to make a mockery out of these proceedings by pressing a case that had no supporting evidence to begin with. Yet, there is the potential for more damage to be done the longer this situation goes on uncorrected. It is time to shut this initial case down once and for all and allow the counterclaims to be decided in the correct venue and jurisdiction.

*Dated July 7, 2008*

IN PROPER PERSON

[signature] RB

Rich Bergeron
147 Old County Road
East Sandwich, MA 02537
617-209-4325
Attorney Pro-Se
Rich.Bergeron@gmail.com