ORIGINAL

RECEIVED & FILED

'08 SEP 18 A9:07

Rich Bergeron
147 OLD COUNTY ROAD
East Sandwich, MA 02537
Telephone: (617) 209-4325
Defendant as Pro Se Attorney

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In Re:<br><br>XYIENCE, INC., A Nevada Corporation<br><br>Debtor. | No. BK-S-08-10474-MKN<br>Chapter 11<br><br>Eighth Judicial District Court<br>Las Vegas, Clark County, Nevada<br>Case No. A544781, Dept. XXIII |
| XYIENCE INCORPORATED, a Nevada Corporation,<br>Plaintiff,<br><br>v.<br><br>RICHARD BERGERON, an individual<br>Defendant. | CASE NO. BK-2-08-AP-01082-MKN<br><br>**DEFENDANT AND COUNTERCLAIMANT RICH BERGERON'S AFFIDAVIT IN SUPPORT OF: (1) RESPONSE TO SHOW CAUSE ORDER AND MOTION TO RECUSE JUDGE NAKAGAWA; (2) ALL PRIOR MOTIONS/REPRESENTATIONS MADE IN CLARK COUNTY DISTRICT COURT AND THIS BANKRUPTCY COURT.** |
| RICHARD BERGERON, an Individual,<br><br>Counterclaimant,<br><br>v.<br><br>XYIENCE INCORPORATED, a Nevada corporation; FERTITTA ENTERPRISES, INC., a Nevada Corporation,<br><br>Counterdefendants. | Hearing Date: September 10, 2008<br><br>Time: 9:30 AM<br><br>Location: 300 Las Vegas Blvd. South<br>Courtroom #2<br>Las Vegas, NV 89101 |

**DEFENDANT AND COUNTERCLAIMANT RICH BERGERON'S AFFIDAVIT IN SUPPORT OF: (1) RESPONSE TO SHOW CAUSE ORDER AND MOTION TO RECUSE JUDGE NAKAGAWA; (2) ALL PRIOR MOTIONS/REPRESENTATIONS MADE IN CLARK COUNTY DISTRICT COURT AND THIS BANKRUPTCY COURT.**

**Richard Edward Bergeron III, being first duly sworn, states as follows:**

1. I am a pro-se representative and have been at all times in these proceedings currently pending as *Xyience, Incorporated vs. Richard Bergeron*, Case #: 08-01082-MKN and currently listed as an adversary proceeding under Debtor Xyience Case #: 08-10474-MKN.
2. I make this affidavit in support of (1) the response to show cause order and motion to recuse Judge Nakagawa that was filed on August 29th, 2008; and (2) all prior representations, descriptions, and testimony contained within every filing (all prior motions, briefs, and declarations, etc.) and spoken within every court hearing thus far in this case.
3. I have personal knowledge of, and I am competent to testify to the facts contained in this Affidavit, except those matters based upon information and belief and, as to such matters, I believe them to be true.
4. On July 18, 2007 Xyience filed this case against me in Clark County District Court with direct intent to silence my investigative reporting of ongoing fraudulent activity at the struggling supplement company.
5. Xyience's own initial complaint points to at least two investors willing to provide $15 million in financing if my stories were removed from the internet.
6. In the midst of these proceedings, just a day after the injunction order in this case became official, I received an email from a Xyience shareholder's friend. This friend, Mike Hilson described a scenario in which a representative of Xyience brought his friend a copy of the injunction order and made several misrepresentations as to what the order stipulated. This Xyience representative, who I may name later if necessary, also intimated that because of the injunction the Fertittas would now be investing $15 million into

Xyience. This evidence (that is clearly outlined by Hilson's email and fax to me) is labeled as Exhibit 11.

7. Xyience's initial complaint and Adam Frank's initial declaration both contained several misrepresentations and clear factual errors, as outlined in previous motions. Frank was also never in a position to testify as to my intent since he did not even communicate with me until the late fall of 2007. Neither Frank, nor Attorney Jamie Cogburn were in any position to represent that my reports on Xyience were written with malicious intent. I have never put a word to paper that has been motivated by any malice whatsoever toward Xyience. I have at all times been attempting to assist Xyience as it attempts to remove itself from a chain of fraudulent actors that have controlled it in recent years.

8. My first conversation with Adam Frank and Kirk Sanford (http://www.fileden.com/files/2007/9/16/1434673/frankandsanford.mp3) was a call that came from a Utah cabin owned by Kirk Sanford and in which Frank and Sanford spoke initially of free will without an inquiry as to whether the call was being recorded. I disconnected my recording equipment when they did ask whether or not they were being recorded and requested the call continue without recording. They never, even during the unrecorded portion of the call, protested the initial recorded portion of the conversation. During that conversation they agreed my Web-site was a resource for them to find out more about the company.

9. Adam Frank and Kirk Sanford invited me to the Ultimate Fighting Championships 78 show on Saturday, November 17th, 2008 and met with me the morning of November 17th at a restaurant in the W Hotel in Times Square, New York City. The entire trip was paid for by Xyience, but there was no talk of the words "settlement conference" and no lawyer for Frank, Sanford, or Xyience participated in the discussions held with Frank and Sanford on that weekend. Frank and Sanford were operating at the time in direct subordination to Fertitta Enterprises, namely the General Manager of Fertitta Enterprises: Bill Bullard. Fertitta Enterprises formed Zyen, LLC in a direct attempt to avoid attaching Xyience directly to their own multi-billionaire interests under direct supervision of Fertitta Enterprises. Sanford and Frank represented Xyience at the time as the company's Co-CEOs. Both men mentioned Fertitta Enterprises and admitted they were acting on

behalf of the company.

10. Robert Lavan, an employee of NYC based Standard General, attended the meeting with myself and Frank and Sanford on November 17th. During the course of the conversation Adam Frank and Kirk Sanford both repeatedly mentioned that they were going to bankrupt the company and there was no hope to salvage anything. Sanford specifically used the term "scorched earth." Lavan gave both men extensive advice on what other courses they might possibly take that could avoid an ugly bankruptcy. Sanford was fully aware that his approach would burn over 340 investors, and he actually used the 380 figure to describe those shareholders who would lose their interests in the company in the event of bankruptcy.

11. At the end of the conversation Frank and Sanford each gave me $100 in order to get to the New Jersey venue for the night's fight: The Prudential Center in Newark, New Jersey. I met New Jersey Boxing Writer and Web-site Owner Danny Seratelli at the fights, and he also met Frank and Sanford in one of Xyience's luxury boxes. Xyience provided tickets for both of us to watch the event. At the end of the event I was unable to get in touch with Frank and Sanford and did not get a chance to meet with them the following day. If the meeting was supposed to pertain to settlement, Sunday, November 18th would have been the day to discuss it, but there was no attempt to contact me further until after I returned home later that day.

12. When I returned home from the trip I found several concerned individuals' emails in my inbox. One of them was from a representative of Xyience who had an office directly next door to Omer Sattar's. Knowing layoffs were imminent and a select few were stealing all the spoils for themselves, this witness heard all the planning going on through the thin office walls. He intimated that the Xyience investment was all orchestrated to back up the covenants of a senior secured credit facility for one of the Fertittas' other businesses: Zuffa, LLC. This $350 million loan was reported to me to be based on strong sponsorships. Instead, Zuffa obtained the loan based on information Fertitta Enterprises reps would have known to be completely false since they were in direct financial control of the company and orchestrated that control by promising to pump money in that would avoid bankruptcy.

13. Investors with shares in Global Cash Access also contacted me around this time by phone and email to tell me what had happened in regards to all ex-GCA employees who transferred to Xyience. Kirk Sanford, Karim Maskatiya, and Kathryn Lever all left GCA just before a major scandal became public relating to millions of dollars in commissions owned to facilities where their cash machines were located. Sanford personally unloaded thousands of shares before leaving the company to head up Xyience. I later discovered that Global Cash Access had contracts with multiple Station Casinos locations. Station Casinos is owned by Fertitta Enterprises.

14. Fertitta Enterprises had to know that the GCA officials had been in place at the company and may have had knowledge of the lack of commissions going out, yet GM Bill Bullard gave three of GCA's former officials an immediate spot at XYIENCE. Bullard even made sure Maskatiya's nephew Omer Sattar earned a slot as the company's President. Even though the Fertittas would have been on the list of defrauded companies due to the commission scheme, Fertitta Enterprises did not remove the former GCA employees when the information came out about their engagement in possible fraud at GCA. Sanford and Frank instead resigned voluntarily. These Global Cash Access employees would not have been in position to take over the company and bankrupt it had (1) Karim Maskatiya not invested millions of dollars of his own money into the company (2) Fertitta Enterprises had never dealt with the company before in previous engagements. This is a clear indication, based also on voluminous testimony from multiple sources, that Fertitta Enterprises and Global Cash Access are coordinating with each other to purposely commit fraud.

15. I have been told by sources currently on the inside of Xyience and those formerly on the inside that the Fertittas never wanted it known that they had any control over Xyience. I have also been told by very reliable contacts that the GCA officials and Adam Frank were all put in place with the specific purpose of bankrupting the company.

16. I have been in contact with various investors and other lawyers engaged in litigation pertaining to Xyience. All of them have outlined similar concerns in relation to the quickness of the bankruptcy and the initial promises of Fertitta Enterprises to provide the influx of capital in order to prevent bankruptcy when in fact the purpose was to prevent

defaulting on their $350 million loan. This was the only reason Xyience signed such a quick sponsorship deal with the UFC that they clearly couldn't afford at the time due to the ongoing financial hardship. Fertitta Enterprises used this deal to take money out of a newly acquired company they cared nothing about in order to put it in an established company they have been grooming for years.

17. I have been contacted by lawyers all over the country seeking information on the companies and parties involved. I have been interviewed by a print magazine and three different web-sites thus far due to my expertise on the subject. I have compiled almost all the related court documents with the intent to study as much as possible and produce a non-fiction book at the end of the whole process.

18. I hereby attest that all the information and allegations present on or linking out from http://www.unlimitedfightnews.com/xyience.htm are true and backed up by facts and research. Those inclusions obviously meant to infer satire are exempt.

19. All the facts and allegations contained within and linking from the following web-site addresses are also true and point to serious, witness substantiated allegations that will be proven through discovery and will be exposed outright during any future trial. These facts and allegations also are of the serious nature that should warrant an immediate and thorough investigation into this bankruptcy:

http://podcast.thelightsoutshow.com/2007/04/18/vol-11a--wwwthelightsoutshowcom.aspx

http://www.fightopinion.com/?s=Rich+Bergeron

http://www.unlimitedfightnews.com/xyiencewow.htm

http://unlimitedfightnews.com/wordpress/?cat=15

http://unlimitedfightnews.com/wordpress/?cat=15&paged=2

http://unlimitedfightnews.com/wordpress/?cat=15&paged=3

http://www.fightlinker.com/?p=1911

http://www.fightlinker.com/?p=1670

http://www.fightlinker.com/?p=1588

20. I currently have 4 outstanding motions pending, and all were already noticed for hearing (although only three of 6 hearings were officially held on the date they were scheduled for, 2 of which were opposing motions): One motion is outstanding in bankruptcy court as Motion for Summary Judgment and Motion to Suspend Bankruptcy Proceedings; and there are three motions dating back to the Clark County District Court that have been duly noticed here:

1). 03/03/2008 → DEFT'S MTN TO STRIKE AFFIDAVIT AS PERJURED TESTIMONY /13

2.) 12/15/2007 →DISPOSITIVE MOTION FOR RULE 11 SANCTIONS

3.) 10/09/2007 →MOTION TO DISMISS

20. All of the factual contentions and various allegations contained within those various motions and all other filings, pleadings, and declarations I have filed thus far are true and backed up by constant research into the players involved, conversations with those in direct position to know about what is going on at the different corporations involved, and first hand knowledge gleaned through reviewing official court documents and other pertinent company documents and communications I have been able to intercept or collect from witnesses, some of whom will be called to be deposed in discovery.

21. I have been engaged in reporting for much of my adult life, having completed several previous investigative reports and thousands of published articles without incident. I have never before this case been accused of defamation by any article subject in over 7 years of reporting experience. I know and abide by the various journalists' codes and ethical rules that pertain to defamation and anonymous sources, and I am well aware of the protections of the First Amendment. I have never printed or published anything in print or on-line that I didn't have sufficient facts to back up, usually from multiple sources who demonstrate clear knowledge of what's going on and a

clear connection to the subject matter.

22. Judge Mike Nakagawa has shown extreme deference to the opposing attorneys with particular favoritism given to the Fennemore and Craig attorneys attached to the bankruptcy case as well. Nakagawa has had access to the case files since April of 2008 and has since held three hearings on behalf of the opposing attorneys while only holding one official hearing for a motion of my own. Nakagawa has continued the scheduling conference five times now (see response to show cause order and motion to recuse Judge Nakagawa), failed to rule on six supremely important outstanding motions after promising on at least three occasions to deliver these decisions by a certain date (these motions include four of mine, one of Fertitta Enterprises', and one of Xyience's), and failed to initiate the discovery process in a timely fashion, which in turn allowed Xyience to secure approval for their reorganization plan before either this case or the adversary proceeding related to the derivative shareholder action could get to their discovery phases.

23. Discovery is essential to my case should the judge's decision on Summary Judgment be insufficient to inspire proper relief. Without the ability to build my counterclaims and without the judge throwing out the initial case against me, I am at a severe disadvantage financially and judicially. I live on a very meager income and cannot afford the excessive Court Call fees that are mounting because of Judge Nakagawa's refusal to act in a timely manner in this matter. Nakagawa's failure to live up to his own publicly made promises is a clear indication of bias toward the counter defendants. It is the counter defendants who do not want discovery to take place, and it is they who benefit from needless delay. The deeper they get into the bankruptcy process, the harder it will be to obtain due and proper relief.

24. Judge Nakagawa called a Show Cause Hearing even after I publicly stated in court that I did not personally record the May 14th hearings in this case. Nakagawa also put out an order on that matter before placing on the docket any actual decisions relating to much more important hearings and other motions scheduled for hearings but not yet heard. Nakagawa did this even though some of those motions dated back to long before the motion for the show cause hearing hit the docket.

25. I did not record any hearings in this matter other than those pertaining to Clark County District Court and before Judge Timothy Williams. The May 14th hearings held in this court were not recorded by me personally. At the time of the hearings I was not aware they were being recorded by a Seattle film-maker who is working on a documentary about my reporting and this case. I allowed the documentary maker to listen into the hearings via my Skype computer phone system that allows conference calls between multiple parties. He subsequently sent the recordings to me, and I distributed them.

26. Judge Nakagawa is clearly biased and prejudiced against the petitioner and has shown extreme negligence in case management which has allowed the debtor in the bankruptcy case to carry on a charade of a complaint with no merit while I have been prevented from conducting due and timely discovery.

27. Despite one motion filed in March labeled "Emergency" and outlining severe issues of fraud, Nakagawa has yet to rule on that matter. I requested the proceedings be suspended in that motion and an investigation be launched. Nakagawa did neither. What he has done is approve the company's reorganization plan, making absolutely no mention of my various noted objections from the suspension motion.

28. Nakagawa is overlooking several serious First Amendment issues in this case and delaying justice to appease the core proceedings. Furthermore, he is ignoring serious concerns which warrant an immediate and through investigation into the motivations and self-serving actions behind the initial filing of the core proceedings. The chain of events that led to the bankruptcy and that I have been reporting on since December of 2006 contain several red flags and indicators of sophisticated fraud. No evidence of any serious inquiry into this fraudulent behavior exists on the core docket or on any of the adversary proceedings' dockets. The trustee has plenty of evidence with which to pursue such an investigation based on the various indications of fraud that have been reported, but no such investigation has been initiated.

29. I have compiled enough evidence and compiled enough potential witnesses to file formal Civil RICO charges against the players involved in this bankruptcy proceedings, and I plan to file an amended complaint through an appointed attorney should this case be adjudicated properly and only the counterclaims are allowed to continue. Even without such relief I may find a way to get that task done, as I am committed to obtaining relief for the hundreds of burned shareholders who have been

victimized by this situation.

30. I have just been made aware of provisions of the federal rules of procedure and the bankruptcy code which permit me to ask for a transfer of venue and also a provision which allows me to challenge the reorganization plan. At the soonest possible opportunity I will be filing a joint motion requesting hearings on both matters.

31. I do not believe it is possible to obtain a fair trial in the State of Nevada due to the Fertittas' broad financial control and political reach.

32. I stand by each and every exhibit I have entered into these proceedings and the evidence contained within each exhibit. These documents are all genuine and come from either insiders at the companies involved or directly from the PACER service system. With respect to audio evidence and evidence within on-line articles: these were gleaned during the course of my investigative reporting and were produced with particular attention paid to verifying information from all anonymous sources.

33. I have purposely had to suppress certain aspects of my defense due to ongoing law enforcement agency inquiries and investigations into Xyience, Incorporated and the various players and corporations involved in the bankruptcy.

34. Fertitta Enterprises, Adam Frank, Kirk Sanford, Zyen, LLC, Manchester Consolidated Corporation, Anthony Pallante, William Smith, Bill Bullard, Xyience, Karim Makatiya, Omer Sattar, and Kathryn Lever all engaged themselves in a massive scheme to defraud investors and utilized the services of paid attorneys to do so. At all times Fertitta Enterprises operated with the purpose of unjustly enriching themselves through the Xyience bankruptcy process.

35. Despite my constant reminders, Xyience still has fighters currently wanting nothing to do with the company represented on their web-site as sponsored fighters. Some fighters pictured have publicly decried the supplement maker and/or said officially they have nothing to do with the company and are no longer sponsored: namely Matt Hughes.

36. Those connected to Fertitta Enterprises and Xyience have used intimidation tactics up to and including death threats to deter potential witnesses.

37. Fertitta Enterprises knew about Xyience founder Russell Pike's gambling problems and yet continued to allow him to be comped regularly at their newest Red Rock Casino even after Pike's transgressions were reported in my stories.

38. I have spoken with an individual who wore a wire for the FBI to help investigate Global Cash Access, and this individual informed me that international money laundering is at the root of the company's operations which led to the major scandal regarding improper commission payouts to casinos.

39. I provided the IRS with actionable information which led to a summons for Russell Pike, his family, and some of his associates.

40. I have none now and have never had any malicious intent to do damage to either Xyience or Fertitta Enterprises. I simply am seeking to hold both parties responsible for their previous transgressions.

41. At all times I have engaged in this investigation with the hopes of exposing the ultimate truth for the benefit of the victims who have lost their entire investments because of the crude and corrupt practices of criminal minded billionaires.

42. My First Amendment rights have been violated by this case, I have been subjected to public ridicule at times, I have lost work opportunities, and I have been discriminated against by potential sponsors because of these fraudulent proceedings.

43. Xyience never had any grounds to pursue this lawsuit, and their case never had any supporting evidence that could not be exposed as perjury with a sufficient hearing. This case has actually been allowed to continue unchecked for over a year with only one weak declaration supporting it. That declaration has already been proven in the recording I made to be completely bogus and an instance of clear perjury. Adam Frank should be appropriately sanctioned.

44. I have spoken with attorney Jamie Cogburn and emailed him several times. He personally informed me he will no longer work again for Adam Frank and Kirk Sanford, and he has yet to be even paid for the completely fraudulent case he compiled against me. Cogburn lied repeatedly and misrepresented several facts pertaining to the case (see sanctions motion).

45. All attorneys taking the case on after Cogburn's withdrawal were operating under Xyience's direct control while the company was owned and overseen by Fertitta Enterprises.

46. I have never submitted to this court's jurisdiction, I have no significant contacts with Nevada to justify personal jurisdiction, and this case belongs in U.S. District Court. I have repeatedly mentioned this in prior pleadings.

47. If the counter defendants are allowed to further this complicated scheme there will be more

victims affected in the long run and it will make it easier for these corporations and individuals to victimize more people down the line. For these reasons and for good cause, Rich Bergeron hereby respectfully requests that this court refuse to sanction me and provide just and proper relief as outlined in my previous motions asking for such relief for myself and the affected shareholders. Judge Nakagawa should also recuse himself from the case based on the affirmations made here and his mismanagement and negligence regarding both adversary proceedings.

DATED this 14th of September, 2008

IN PROPER PERSON

Rich Bergeron
147 Old County Road
East Sandwich, MA 02537
617-209-4325
Attorney Pro-Se
Rich.Bergeron@gmail.com

Subscribed and Sworn to before me

This ____ day of September, 2008.

==========================
NOTARY PUBLIC

My Commission Expires:

47. If the counter defendants are allowed to further this complicated scheme there will be more victims affected in the long run and it will make it easier for these corporations and individuals to victimize more people down the line. For these reasons and for good cause, Rich Bergeron hereby respectfully requests that this court refuse to sanction me and provide just and proper relief as outlined in my previous motions asking for such relief for myself and the affected shareholders. Judge Nakagawa should also recuse himself from the case based on the affirmations made here and his mismanagement and negligence regarding both adversary proceedings.

DATED this 14th of September, 2008

IN PROPER PERSON

Rich Bergeron
147 Old County Road
East Sandwich, MA 02537
617-209-4325
Attorney Pro-Se
Rich.Bergeron@gmail.com

Subscribed and Sworn to before me

This 16th day of September, 2008.

_________________________
NOTARY PUBLIC

My Commission Expires: 8-15-2014