**Entered on Docket**
**October 14, 2008**

**Hon. Mike K. Nakagawa**
**United States Bankruptcy Judge**

---

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

* * * * * *

| | |
|---|---|
| In re:<br><br>XYIENCE INCORPORATED, a Nevada corporation,<br>Debtor. | BK-S-08-10474-MKN<br><br>Chapter 11 |
| XYIENCE INCORPORATED, a Nevada corporation,<br>Plaintiff,<br>v.<br>RICHARD BERGERON, an individual,<br>Defendant. | Adversary No. 08-1082<br><br>Date: September 10, 2008<br>Time: 9:30 a.m. |
| RICHARD BERGERON, an individual,<br>Counterclaimant,<br>v.<br>XYIENCE INCORPORATED, a Nevada corporation; FERTITTA ENTERPRISES, INC., a Nevada corporation,<br>Counterdefendants. | |

**MEMORANDUM DECISION ON DEFENDANT AND COUNTERCLAIMANT'S MOTION TO RECUSE JUDGE NAKAGAWA**

Defendant and Counterclaimant Richard Bergeron's motion to recuse the assigned

bankruptcy judge was heard on September 10, 2008. The appearances of counsel and the parties were noted on the record. The matter was taken under submission after presentation of oral arguments.

**BACKGROUND**[1]

On July 18, 2007, Xyience Incorporated ("Xyience"), a Nevada corporation, commenced an action against Richard Bergeron in the district court for Clark County, Nevada, denominated Case No. A544781 ("State Court Action"). The complaint is framed as three separate causes of action, alleging defamation, tortuous (sic) interference with prospective economic advantage, and intentional interference with contract. No other parties were named in the complaint.

In connection with the complaint, Xyience sought from the Eighth Judicial District Court for Clark County, Nevada ("state court"), a preliminary injunction against defendant Bergeron seeking to restrain and enjoin him from placing and retaining on his internet website certain allegedly defamatory remarks concerning Xyience. Mr. Bergeron filed written opposition to the requested preliminary injunction.

The state court issued a preliminary injunction order directing Mr. Bergeron to remove false information about Xyience from his website and enjoined him from posting any representations intended to create an impression that Xyience is the subject of an investigation by the Securities and Exchange Commission. The preliminary injunction entered by the state court further ordered Mr. Bergeron to remove all articles from his website claiming that Xyience is defrauding investors or is engaged in a conspiracy to defraud investors.

After the preliminary injunction was entered, an involuntary Chapter 11 proceeding was commenced against Xyience on January 3, 2008. Thereafter, Xyience commenced an voluntary Chapter 11 proceeding on January 22, 2008. On January 31, 2008, the involuntary proceeding, denominated Case No. BK-S-08-10049, was dismissed by stipulation, and the voluntary Chapter

---

[1] In the text and footnotes of this Memorandum Decision, all references to "Section" shall be to the provisions of the Bankruptcy Code appearing in Title 11 of the United States Code, unless otherwise indicated. All references to "FRCP" shall be to the Federal Rules of Civil Procedure. All references to "Rule" shall be to the Federal Rules of Bankruptcy Procedure, unless otherwise indicated.

11 proceeding went forward with Xyience as the debtor-in-possession.

While Xyience was in bankruptcy, Mr. Bergeron, appearing *in propria persona,* filed an answer in the State Court Action on February 19, 2008, that included a "Counterclaim for Declamatory (sic) Relief." ("Counterclaim") The Counterclaim includes claims against Xyience, as well as against Fertitta Enterprises, Inc. ("Fertitta"), a Nevada corporation. That pleading is styled as four separate "counterclaims" alleging that Mr. Bergeron was defamed in pleadings filed by Xyience, that his rights under the First Amendment to the United States Constitution have been violated, that tortious interference with prospective economic advantage has occurred, and that he has been subjected to "pain and suffering".

After the Counterclaim was filed, Xyience removed the State Court Action to the Bankruptcy Court pursuant to a notice of removal filed under 28 U.S.C. section 1452(a). The State Court Action was assigned Adversary Proceeding No. 08-1082.

On August 18, 2008, the Court issued an Order to Show Cause re Unauthorized Recording of Court Proceedings ("Recording OSC") to formally address allegations that Mr. Bergeron had, without court approval, made an audio recording of a proceeding that had been conducted on May 14, 2008. On August 29, 2008, Mr. Bergeron filed a written response to the OSC that included a Motion to Recuse ("Recusal Motion") the bankruptcy judge assigned to the case.

Written opposition to the Recusal Motion was filed by Fertitta ("Fertitta Opposition"). Oral arguments on the matter were presented on September 10, 2008. On September 18, 2008, Mr. Bergeron filed a supplemental declaration in connection with the Recording OSC which includes references to the Recusal Motion.[2]

**DISCUSSION**

Rule 5004(a) provides that "a bankruptcy judge shall be governed by 28 U.S.C. § 455, and disqualified from presiding over a proceeding or contested in which the disqualifying circumstances arises or, if appropriate, shall be disqualified from presiding over the case."

---

[2] The Recording OSC is the subject of a separate memorandum decision entered concurrently herewith.

28 U.S.C. section 455(a) provides that "any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." An objective standard is applied for recusal under this provision: "whether a reasonable person with knowledge of all the facts would concluded that the judge's impartiality might reasonably be questioned." United States v. Nelson, 718 F.2d 315, 321 (9th Cir. 1983). Recusal under Section 455(a) generally does not apply to conduct of the judge occurring within the judicial proceeding, but only to asserted bias or prejudice derived from an extrajudicial source. See Liteky v. United States, 510 U.S. 540, 555, 114 S.Ct. 1147, 1157 (1994); Ryan v. Corey (In re Corey), 892 F.2d 829, 839 (9th Cir. 1989). That is, the alleged bias or prejudice must arise from an extrajudicial source and cannot be based solely on information gained in the course of the proceedings. See Hasbrouck v. Texaco, Inc., 830 F.2d 1513, 1524 (9th Cir. 1987). A judge's rulings while presiding over a case do not constitute extrajudicial conduct. See Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydroelec, 854 F.2d 1538, 1548 (9th Cir. 1988).

28 U.S.C. section 455(b)(1) also provides that a judge shall disqualify himself "where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."[3]

Recusal motions should be heard and decided by the judge assigned to the case. See Berry v. Deutsche Bank Trust Co. Americas, 2007 WL 2363366 at *3 (D.Hawaii August 13, 2007), citing Bernard v. Coyne (In re Bernard), 31 F.3d 842, 843 (9th Cir. 1994). Recusal of the assigned judge must be sought on a timely basis and at the earliest moment when the moving party obtains knowledge of facts that form the basis for disqualification. See, e.g., In re Abijoe Realty Corp., 943 F.2d 121, 126-27 (1st Cir. 1991)(attempt on appeal invalidate adverse ruling based on alleged bias of the bankruptcy judge). Recusal requests made only after receipt of an adverse ruling are untimely. See In re Medrano Diaz, 182 B.R. 654, 658 (Bkrtcy.D.P.R. 1995).

---

[3] 28 U.S.C. section 144 also provides for disqualification based on judicial bias or prejudice, but the provision does not apply to bankruptcy judges. See In re Smith, 317 F.3d 918, 932 (9th Cir. 2002).

Conclusory allegations are not sufficient and recusal motions are seldom granted because a litigant can use recusal motions to shop for another judge. See In re Alpern, 246 B.R. 578, 581 (Bkrtcy.N.D.Ill. 2000); In re Chandler's Cove Inn, Inc., 74 B.R. 772, 776 (Bkrtcy.E.D.N.Y. 1987).

In this case, Mr. Bergeron seeks recusal of the assigned judge primarily on the ground that the Court has not issued rulings on matters before it as timely as he would like. He also points to perceived calendaring errors for certain motions for which he did not comply with applicable local rules for providing notice. Mr. Bergeron suggests that rulings have been in favor of other parties and therefore constitute evidence of favoritism towards such parties and their counsel. He also asserts that recusal is required because the Court issued the Recording OSC in spite of his unattested representations that he had not personally recorded the hearing that took place on May 14, 2008.[4]

With respect to the Recording OSC, the Court directed Mr. Bergeron to file no later than September 19, 2008, a declaration or affidavit under penalty of perjury as to the circumstances of the recording of the May 14 hearing. He filed an affidavit on September 18, 2008, in which he attests to the circumstances of the recording, as well as to additional matters ostensibly in response to other issues in the bankruptcy proceedings, and to the same arguments he made in the Recusal Motion.

Taken together, the Recusal Motion and the September 18 Affidavit express Mr. Bergeron's disenchantment with the Court's management of the legal proceeding but demonstrates no bias or prejudice from an extrajudicial source or any other source. More importantly, whatever opinions Mr. Bergeron may hold about the legal process, no personal bias or prejudice concerning Mr. Bergeron or any party in this proceedings exists. See, e.g., In re Russell, 392 B.R. 315 (Bkrtcy.E.D.Tenn. 2008)(denial of pro se debtor's recusal motion in

---

[4] Other than through the telephonic appearances permitted by the Court, Mr. Bergeron has acknowledged that he is aware of no other contact with the assigned judge.

adversary proceeding objecting to discharge).[5]

Disqualification under 28 U.S.C. section 455(a) as well as section 455(b)(1) therefore is not appropriate.

**CONCLUSION**

For the reasons set forth above, the Motion to Recuse will be denied. A separate order has been entered concurrently herewith.

Copies noticed through ECF to:

LAUREL E. DAVIS ldavis@fclaw.com, mhurtado@fclaw.com;lgolonka@fclaw.com

JON PEARSON jpearson@fclaw.com, mhurtado@fclaw.com

MATTHEW C. ZIRZOW bankruptcynotices@gordonsilver.com, bknotices@gordonsilver.com

MATTHEW E. MCCLINTOCK mmcclintock@bellboyd.com, sthoma@bellboyd.com

GREGORY E GARMAN bankruptcynotices@gordonsilver.com, bknotices@gordonsilver.com

and sent to BNC to:

RICH BERGERON
147 OLD COUNTY ROAD
EAST SANDWICH, MA 02537

# # #

[5] In Russell, the court observed: "In this regard, the court should try to explain professional detachment. The court is concerned with reaching correct decisions in the bankruptcy case and the adversary proceeding based on the law and the evidence that is admitted, after affording the parties a fair process, but the court does not care who the parties or their lawyers are. The disputes between the debtor and the U.S. Trustee could be disputes between a different debtor and a different trustee with different lawyers. With the same pleadings and evidence, the court would reach essentially the same results. The debtor seems to think that the court is so concerned about her as an individual that the court would engage in illegal ex parte communications and reach incorrect decisions for the purpose of favoring the U.S. Trustee or other interested parties. She could not be more wrong." 392 B.R. at 377.