**Entered on Docket**
**October 14, 2008**

**Hon. Mike K. Nakagawa**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

* * * * * *

| | |
|---|---|
| In re:<br><br>XYIENCE INCORPORATED, a Nevada corporation,<br><br>Debtor. | BK-S-08-10474-MKN<br><br>Chapter 11 |
| XYIENCE INCORPORATED, a Nevada corporation,<br><br>Plaintiff,<br><br>v.<br><br>RICHARD BERGERON, an individual,<br><br>Defendant. | Adversary No. 08-1082<br><br>Date: May 14, 2008<br>Time: 9:30 a.m. |
| RICHARD BERGERON, an individual,<br><br>Counterclaimant,<br><br>v.<br><br>XYIENCE INCORPORATED, a Nevada corporation; FERTITTA ENTERPRISES, INC., a Nevada corporation,<br><br>Counterdefendants. | |

**MEMORANDUM DECISION ON XYIENCE INCORPORATED'S MOTION TO DISMISS ADVERSARY PROCEEDING AND TO STRIKE RICHARD BERGERON'S COUNTERCLAIMS**

Counterdefendant Xyience Incorporated's motion to dismiss was heard on May 14, 2008.

The appearances of counsel and the parties were noted on the record. The matter was taken under submission after presentation of oral arguments.

**BACKGROUND**[1]

On July 18, 2007, Xyience Incorporated ("Xyience"), a Nevada corporation, commenced an action against Richard Bergeron in the district court for Clark County, Nevada, denominated Case No. A544781 ("State Court Action"). The complaint is framed as three separate causes of action, alleging defamation, tortuous (sic) interference with prospective economic advantage, and intentional interference with contract. No other parties were named in the complaint.

In connection with the complaint, Xyience sought from the Eighth Judicial District Court for Clark County, Nevada ("state court"), a preliminary injunction against defendant Bergeron seeking to restrain and enjoin him from placing and retaining on his internet website certain allegedly defamatory remarks concerning Xyience. Mr. Bergeron filed written opposition to the requested preliminary injunction.

The state court issued a preliminary injunction order directing Mr. Bergeron to remove false information about Xyience from his website and enjoined him from posting any representations intended to create an impression that Xyience is the subject of an investigation by the Securities and Exchange Commission. The preliminary injunction entered by the state court further ordered Mr. Bergeron to remove all articles from his website claiming that Xyience is defrauding investors or is engaged in a conspiracy to defraud investors.

After the preliminary injunction was entered, an involuntary Chapter 11 proceeding was commenced against Xyience on January 3, 2008. Thereafter, Xyience commenced an voluntary Chapter 11 proceeding on January 22, 2008. On January 31, 2008, the involuntary proceeding, denominated Case No. BK-S-08-10049, was dismissed by stipulation, and the voluntary Chapter 11 proceeding went forward with Xyience as the debtor-in-possession.

---

[1] In the text and footnotes of this Memorandum Decision, all references to "Section" shall be to the provisions of the Bankruptcy Code appearing in Title 11 of the United States Code, unless otherwise indicated. All references to "FRCP" shall be to the Federal Rules of Civil Procedure. All references to "Rule" shall be to the Federal Rules of Bankruptcy Procedure, unless otherwise indicated.

While Xyience was in bankruptcy, Mr. Bergeron, appearing *in propria persona,* filed an answer in the State Court Action on February 19, 2008, that included a "Counterclaim for Declamatory (sic) Relief." ("Counterclaim") The Counterclaim includes claims against Xyience, as well as against Fertitta Enterprises, Inc. ("Fertitta"), a Nevada corporation. That pleading is styled as four separate "counterclaims" alleging that Mr. Bergeron was defamed in pleadings filed by Xyience, that his rights under the First Amendment to the United States Constitution have been violated, that tortious interference with prospective economic advantage has occurred, and that he has been subjected to "pain and suffering".

After the Counterclaim was filed, Xyience removed the State Court Action to the Bankruptcy Court pursuant to a notice of removal filed under 28 U.S.C. section 1452(a). The State Court Action was assigned Adversary Proceeding No. 08-1082. Thereafter, Xyience filed the instant motion seeking to dismiss Mr. Bergeron's counterclaims ("Xyience Dismissal Motion") under Federal Rule of Civil Procedure 12(b)(6).[2] Mr. Bergeron filed written opposition ("Opposition") to which Xyience filed a written reply brief ("Xyience Reply").[3]

**APPLICABLE LEGAL STANDARDS**

Under FRCP 12(b)(6), incorporated by reference under Rule 7012, an action may be dismissed if it "fails to state a claim for which relief may be granted." In assessing whether to dismiss a claim under this provision, the allegations of the complaint (or counterclaim) must be construed in the light most favorable to the plaintiff and all well-pleaded factual allegations are accepted as true, as well as reasonable inferences that may be drawn from them. See Cahill v. Liberty Mutual Insurance Co., 80 F.3d 336. 337-38 (9th Cir. 1996). While the allegations of a

---

[2] Citations to the written arguments submitted by parties will refer to the page number and then line number, separated by a colon, e.g., 4:10-15 would refer to page 4, line 10 through line 15 of the document.

[3] Mr. Bergeron's opposition was filed with the Court on May 7, 2008, even though the order scheduling the hearing on the motion required it to be filed no later than April 28, 2008. Because the opposition was not timely filed, Xyience suggests that its dismissal motion should be deemed unopposed and granted under Local Rule 9014(d)(3). See Xyience Reply at 2:15 to 3:4. It does not appear that Xyience was prejudiced by Mr. Bergeron's untimely filing, however, and the Court therefore has considered Mr. Bergeron's opposition memorandum.

pro se complaint are held to a less stringent standard than formal pleadings drafted by an attorney, sweeping conclusory allegations will not suffice. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988). General or vague allegations are not enough to withstand a motion to dismiss. See Funderburk v. McDaniel, 2007 WL 4191963 at *2 (D. Nev. November 21, 2007).

In Bell Atlantic Corporation v. Twombly, ___ U.S. ___, 127 S.Ct. 1955 (2007), the Court recently observed as follows:

> "While a complaint...does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds for his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of elements of a cause of action will not do...Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."

127 S.Ct. at 1965. Rather, to avoid being dismissed for failure to state a claim, the complaint must set forth "...enough facts to state a claim for relief that is plausible on its face..." 127 S.Ct. at 1974. See, e.g., In re Friedman's Inc., 385 B.R. 381, 410 (S.D.Ga. 2008).

Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by an amendment. See Kendall v. Visa U.S.A., Inc., 518 F.3d 1042, 1051 (9th Cir. 2008), citing Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).

Under FRCP 12(f), "any redundant, immaterial, impertinent, or scandalous" matters may be stricken from a pleading. A request to strike such matters is rarely granted and any doubts should be resolved in favor of retaining the matters where the moving party shows no prejudice therefrom. See California Dept. of Toxic Substances Control v. Alco Pacific, Inc., 217 F.Supp.2d 1028, 1033 (C.D.Cal. 2002).

**DISCUSSION**

The Counterclaim seeks an award of punitive damages against Xyience and Fertitta in the amount of $10 million, interest at the legal rate, attorney's fees to be determined, $5 million in additional sanctions apparently for the benefit of third parties, and other relief as may be appropriate.

The First Counterclaim (Defamation) alleges that Mr. Bergeron "has been slandered and defamed in bogus blogs produced about him and connected directly to Xyience employees

and/or associates through IP addresses." Counterclaim at ¶ 31. The Second Counterclaim (Violation of First Amendment Rights) alleges, inter alia, that Xyience and Fertitta "engaged in a quid-pro-quo agreement...that sought a prior restraint to enjoin Bergeron from reporting the truth about the fraudulent activities of both companies." Counterclaim at ¶ 34. The Third Counterclaim (Tortuous Interference with Prospective Economic Advantage) alleges, inter alia, that "through the direct actions of the Counter-Defendants...he has lost untold streams of income due to having to rigorously defend the spurious charges against him restore his good name through fighting litigation that should have never been filed, and having to forego work on countless other more meaningful and profitable projects." Counterclaim at ¶ 45. The Fourth Counterclaim (Pain and Suffering) alleges, inter alia, that Mr. Bergeron "has suffered endless stress and anxiety", see Counterclaim at ¶ 53, "has lost untold amounts of sleep", see Counterclaim at ¶ 55, and "has experienced extreme mental anguish." See Counterclaim at ¶ 56.

Fertitta seeks to dismiss each of the Counterclaims under FRCP 12(b)(6) for failure to state a claim for which relief may be granted. It also seeks to strike certain materials that are attached to the Counterclaim under FRCP 12(f).

**1. First Counterclaim (Defamation).**

To be actionable, a claim for defamation must allege that the defendant published or caused to be published a false statement of fact. See Blank v. Hager, 360 F.Supp.2d 1137, 1159 (D.Nev. 2005), citing Posadas v. City of Reno, 109 Nev. 448, 452, 851 P.2d 438, 442 (Nev. 1993). While the prayer of the Counterclaim seeks punitive damages against both Xyience and Fertitta, even though there are no allegations in the First Counterclaim of any defamatory statements being made by Fertitta.

The First Counterclaim asserts that the complaint in the State Court Action falsely alleged that Mr. Bergeron had engaged in defamatory conduct. See Counterclaim at ¶¶ 27 and 30. It is well-established, however, that a defamation claim cannot be based on statements made or published in the course of judicial proceedings. See In re Davis, 312 B.R. 681, 689-90 (Bkrtcy.D.Nev. 2004), citing Fink v. Oshins, 118 Nev. 428, 433, 49 P.3d 640, 644 (Nev. 2002).

The privilege for statements made during the course of litigation "precludes liability even where the defamatory statements are published with knowledge of their falsity and personal ill will toward the plaintiff." Fink v. Oshins, supra, 118 Nev. at 433, 49 P.3d at 643. To the extent the First Counterclaim is based on statements during the course of the State Court Action, it fails to state a claim for relief against Xyience.

The First Counterclaim also asserts that Mr. Bergeron "has been slandered and defamed in bogus blogs produced about him and connected directly to Xyience employees and/or associates through IP addresses." See Counterclaim at ¶ 31. Xyience argues that while its employees may have had access to a computer that was connected to the internet, Mr. Bergeron fails to allege that Xyience "authorized or directed such alleged employees or associates to post these anonymous blogs." See Xyience Dismissal Motion at 5:21-22. In his response, Mr. Bergeron asserts that the blog postings were by William Pike and John Chadwell, see Opposition at 8:14-15, one of whom is alleged to have been an investor or associate of Xyience, see Counterclaim at ¶ 22, but the assertions are not part of the factual allegations of the First Counterclaim. Inasmuch as the Court's inquiry is limited to what is pled in the Counterclaim, see Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003)[4], the First Counterclaim also fails to state a claim with respect to the blog postings.

**2. Second Counterclaim (Violation of First Amendment Rights).**

The Second Counterclaim alleges that Xyience and Fertitta agreed to seek "a prior restraint to enjoin Bergeron from reporting the truth about [their] fraudulent activities." See Counterclaim at ¶ 34. It alleges that both Xyience and Fertitta "became complicit in supporting and sustaining a direct violation of Bergeron's First Amendment rights." Id. at ¶ 38.

The First Amendment to the United States Constitution protects an individual's freedom of expression, including freedom of speech, from government interference. See Edmonson v. Leesville Concrete Co., Inc., 500 U.S. 614, 619, 111 S.Ct. 2077, 2082 (1991). It does not create

---

[4] The court in Broam also noted that facts raised for the first time in the plaintiff's opposition papers should be considered in determining whether to grant leave to amend, citing Orion Tire Corp. v. Goodyear Tire & Rubber Co., 268 F.3d 1133, 1137-38 (9th Cir. 2001).

a right to be free of such interference by non-governmental entities. See Gorman-Bakos v. Cornell Co-op Extension of Schenectady County, 252 F.3d 545, 551 (2nd Cir. 2001). Cf., Van Ort v. Estate of Stanewich, 92 F.3d 831, 835 (9th Cir. 1996)(liability of municipality under Section 1983).

In the present motion, Xyience argues that the Second Counterclaim should be treated as a civil rights action under 42 U.S.C. section 1983 ("Section 1983"). See Xyience Dismissal Motion at 7:2-6. The Court agrees.

To state a claim under Section 1983, a plaintiff must allege (1) a deprivation of a federal constitutional or federal statutory right, and (2) that the defendant acted "under color of" state law. See Angel v. Eldorado Casino, Inc., 2008 WL 1914330 at *1 (D.Nev. April 25, 2008) citing Kirtley v. Rainey, 326 F.3d 1088, 1092 (9th Cir. 2003). See also Moreland v. Las Vegas Metropolitan Police Department, 159 F.3d 365, 373-74 (9th Cir. 1998). Section 1983 does not create substantive rights, but is a mechanism by which plaintiffs can challenge actions by state and local officials that violate federal constitutional and statutory rights. See Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006), citing Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 978 (9th Cir. 2004).

It is presumed that private parties are not acting under color of state law for purposes of Section 1983. See Simmons v. Sacramento County Superior Court, 318 F.3d 1156, 1161 (9th Cir. 2003). If a private party acts jointly with state officials in conduct that violates a plaintiff's federal rights, that private party may be acting under color of state law. See Dennis v. Sparks, 449 U.S. 24, 28, 101 S.Ct. 183, 186 (1980). However, merely seeking relief from a state court does not render the defendant a joint actor with the state court judge or with state judicial officials for purposes of Section 1983. See Schucker v. Rockwood, 846 F.2d 1202, 1205 (9th Cir.), cert. denied, 488 U.S. 995 (1988).[5]

---

[5] Mr. Bergeron argues that Xyience and Fertitta "have not invoked 'state procedures alone.' They have willingly and knowingly elevated what they know to be a frivolous case to the federal level through removing this action to bankruptcy court." Opposition at 4:25-27. Since the Section 1983 claim must have existed, if at all, at the time the Counterclaim was filed in the State Court Action, subsequent removal to federal court would not alter the elements of

While the Second Counterclaim employs the language of "prior restraint" commonly used in cases interpreting the First Amendment, see Counterclaim at ¶ 37[6], it alleges no facts from which it can be inferred that Xyience acted under color of state law. In response, Mr. Bergeron does not disagree that Section 1983 provides the basis for his First Amendment theory, see Opposition at 11:4-6, but asserts that the "behavior " of Xyience and Fertitta is "wholly public" and that they "acted under color of the law." Id. at 11:10-14. These assertions, however, fall far short of suggesting that Xyience is a "state actor" for purposes of Section 1983. Thus, the Second Counterclaim fails to state a claim for relief.

**3. Third Counterclaim (Tortuous (sic) Interference with Prospective Economic Advantage).**

A cause of action for tortious interference with prospective economic advantage requires the plaintiff to prove all of the following elements: (1) a prospective contractual relationship between the plaintiff and a third party, (2) knowledge by the defendant of the prospective relationship, (3) defendant's intent to harm the plaintiff by preventing the relationship, (4) the absence of a privilege encompassing the defendant's conduct or other justification by the defendant, and (5) actual harm to the plaintiff as a result of the conduct. See Reva International, Ltd. v. MBraun, Inc., 2007 WL 4592216 at *9 (D. Nev. December 28, 2007), citing Wichinsky v. Mosa, 109 Nev. 84, 88, 847 P.2d 727, 730 (Nev. 1993). Compare Lake at Las Vegas Investors Group, Inc. v. Pacific Malibu Development Corp., 867 F.Supp. 920, 925 (D.Nev. 1994)(intentional interference with contractual relations). Each of the elements must be pled and proven to prevent dismissal. See Wichinsky v. Mosa, supra, 109 Nev. at 88, 847 P.2d at 730.

The Third Counterclaim alleges that as a result of having to defend the State Court Action, Mr. Bergeron has been unable to work on a book project, see Counterclaim at ¶ 46, has been unable to solicit work for various magazines after having successfully published an article

---

the cause of action.

[6] See also Opposition at 6:2-3.

in the summer of 2007, id. at ¶ 47, and has been unable to work on developing and maintaining his website. Id. at ¶ 48. There are no factual allegations, however, regarding the knowledge of Xyience or Fertitta as to the existence of Mr. Bergeron's business relationships, or of any intent to harm a relationship for which no knowledge has been asserted. Likewise, there is no allegation addressing the absence of privilege or justification.[7]

In his response, Mr. Bergeron does not deny that these pleading deficiencies exist, but argues that Xyience's claim under the same legal theory is not supported by the evidence. See Opposition at 11:19 to 12:8. This does not remedy, much less address, the adequacy of the claim. Under these circumstances, the Third Counterclaim fails to state a claim for which relief may be granted.

**4. Fourth Counterclaim (Pain and Suffering).**

It is well-established that "Causes of action should be distinguished from remedies. One precedes and gives rise to the other, but they are separate and distinct." United States v. Smelser, 87 F.2d 799, 800 (5th Cir. 1937). A cause of action must be distinguished from the remedy by which the duty to the plaintiff is effectuated. See Venuto v. Owens-Corning Fiberglas Corp., 22 Cal.App.3d 116, 123-24, 99 Cal.Rptr. 350, 355 (1st Dist.1971). In essence, there can be no remedy without an underlying cause of action. See Badillo v. American Brands, Inc., 117 Nev. 34, 41, 16 P.3d 435, 440 (Nev. 2001).

An award of damages is a form of remedy for a cause of action. See Hartzell v. Myall, 115 Cal.App.2d 670, 678, 252 P.2d 676, 681 (1st Dist.1953). See also Doe v. Colligan, 753 P.2d 144, 145 n. 2 (Alaska 1988)("Punitive damages do not constitute a cause of action."). "Pain and suffering" is a type of injury for which damages may be awarded to a successful plaintiff, see, e.g., Paul v. Imperial Palace, Inc., 111 Nev.1544, 1547, 908 P.2d 226, 228-29 (Nev. 1995), but the type of injury is not an independent basis of liability. While Mr. Bergeron might be awarded damages for pain and suffering should he prevail under a cognizable legal theory, mere allegations regarding his stress, anxiety, loss of sleep, and mental anguish do not give rise to a

---

[7] Xyience argues that it was in fact justified in commencing the State Court Action against Mr. Bergeron. See Xyience Dismissal Motion at 8:18 to 9:1.

claim for relief. The Fourth Counterclaim pleads a remedy, rather than a cause of action. It therefore fails to state a claim and must be dismissed. Cf., Hoover v. Crawford, 2007 WL 1381777 at *8 (D.Nev. May 10, 2007).[8]

**5. Materials Attached to the Counterclaim.**

Attached to the Counterclaim as pages 14 through 28 are "Points and Authorities" through which Mr. Bergeron argues that punitive damages should be awarded and there is a high probability of prevailing on the merits. Xyience argues that the Points and Authorities, and the exhibits attached to it, are immaterial to the Counterclaim and should be stricken. See Xyience Dismissal Motion at 9:26 to 10:1. While suggesting that the items are immaterial, Xyience does not allege or demonstrate that any prejudice will occur if the Points and Authorities and exhibits remain attached to the Counterclaim. Under these circumstances, relief under FRCP 12(f) is not appropriate.

## CONCLUSION

For the reasons set forth above, the First, Second, Third and Fourth Counterclaims must be dismissed as to Xyience for failure to state claims for which relief may be granted. Leave to amend will be granted only as to the First Counterclaim. The request to strike the materials attached to the Counterclaim must be denied. A separate order has been entered concurrently herewith.

Copies noticed through ECF to:

LAUREL E. DAVIS ldavis@fclaw.com, mhurtado@fclaw.com;lgolonka@fclaw.com

JON PEARSON jpearson@fclaw.com, mhurtado@fclaw.com

MATTHEW C. ZIRZOW bankruptcynotices@gordonsilver.com, bknotices@gordonsilver.com

MATTHEW E. MCCLINTOCK mmcclintock@bellboyd.com, sthoma@bellboyd.com

[8] In his response, Mr. Bergeron concedes that "pain and suffering" does not constitute a cause of action, see Opposition at 12:9-14, but argues that damages for pain and suffering should be awarded. Id. at 3:5-8.

GREGORY E GARMAN bankruptcynotices@gordonsilver.com, bknotices@gordonsilver.com

and sent to BNC to:

RICH BERGERON
147 OLD COUNTY ROAD
EAST SANDWICH, MA 02537

# # #

# CERTIFICATE OF NOTICE

| | | | |
|---|---|---|---|
| District/off: 0978-2 | User: lyonsmk | Page 1 of 1 | Date Rcvd: Oct 14, 2008 |
| Case: 08-01082 | Form ID: pdf954 | Total Served: 1 | |

The following entities were served by first class mail on Oct 16, 2008.
aty +RICH BERGERON, 147 OLD COUNTY ROAD, EAST SANDWICH, MA 02537-1465

The following entities were served by electronic transmission.
NONE. TOTAL: 0

***** BYPASSED RECIPIENTS *****
NONE. TOTAL: 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

**I, Joseph Speetjens, declare under the penalty of perjury that I have served the attached document on the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

**Date: Oct 16, 2008** **Signature:** Joseph Speetjens