GORDON SILVER
GREGORY E. GARMAN, ESQ.
Nevada Bar No. 6654
E-mail: ggarman@gordonsilver.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@gordonsilver.com
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89169
Telephone (702) 796-5555
Facsimile (702) 369-2666
Attorneys for Fertitta Enterprises, Inc.

E-Filed On 11-24-08

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>XYIENCE, INCORPORATED,<br>a Nevada corporation,<br><br>Debtor. | Case No.: BK-S-08-10474-MKN<br>Chapter 11 |
| XYIENCE INCORPORATED,<br>a Nevada corporation,<br><br>Plaintiff,<br>v.<br><br>RICHARD BERGERON, an individual,<br><br>Defendant. | Adversary No. 08-1082-MKN |
| RICHARD BERGERON, an individual,<br><br>Counterclaimant,<br>v.<br><br>XYIENCE INCORPORATED, a Nevada corporation; FERTITTA ENTERPRISES, INC., a Nevada corporation,<br><br>Counterdefendants. | **MOTION OF COUNTERDEFENDANT, FERTITTA ENTERPRISES, INC., TO DISMISS AMENDED COUNTERCLAIM OF DEFENDANT/COUNTERCLAIMANT, RICHARD BERGERON**<br><br>Date: January 7, 2009<br>Time: 9:30 a.m. |

Counterdefendant, Fertitta Enterprises, Inc., a Nevada corporation ("Fertitta Enterprises"), by and through its counsel, the law firm of Gordon Silver, hereby submits its Motion to Dismiss (the "Motion") the Amended Counterclaim [Adv. Docket No. 106] filed by Defendant/Counterclaimant, Richard Bergeron ("Bergeron"), in this matter. This Motion is made and based on Fed. R. Civ. P. 12(b)(6), made applicable to this adversary proceeding pursuant to Fed. R. Bankr. P. 7012(b), for failure to state a claim upon which relief can be granted. The Motion is further based on the points and authorities which follow, the Declaration of Matthew C. Zirzow, Esq. in Support of Motion of Counterdefendant, Fertitta Enterprises, Inc., to Dismiss Amended Counterclaim of Defendant/Counterclaimant, Richard Bergeron (the "Zirzow Declaration"), any papers or pleadings contained in this Court's file, judicial notice of which is hereby requested, and any arguments entertained at the time of the hearing on this matter.

## POINTS AND AUTHORITIES

## I.
## STATEMENT OF FACTS

1. On July 18, 2007, Xyience Incorporated, a Nevada corporation ("Xyience"), now currently a debtor and debtor-in-possession in the above-captioned bankruptcy case, filed its Complaint (the "Complaint") against Rich Bergeron ("Bergeron") in the Eighth Judicial District Court, Clark County, Nevada (the "State Court"), being Case No. A544781 (the "Litigation"). See Adv. Docket No. 3, Ex. 2. Fertitta Enterprises was not a party to the Complaint.[1]

2. Also on July 18, 2007, Xyience first filed its Motion for Preliminary Injunction (the "Preliminary Injunction Motion") against Bergeron in the Litigation seeking to restrain and enjoin him from posting allegedly defamatory remarks on the internet concerning Xyience and to remove certain allegedly false and defamatory articles on Bergeron's website. See id. at Exs. 3,

[1] All references to the docket in this adversary proceeding are hereinafter referred to as "Adv. Docket," and all references to the docket in Debtor's underlying bankruptcy case are hereinafter referred to as "Docket."



Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

8 and 12. The Preliminary Injunction Motion was fully briefed by those parties. See id. at Exs. 13 (Bergeron Opposition), and 14 (Xyience Reply).

3. On September 6, 2007, the State Court issued its Preliminary Injunction Order (the "Preliminary Injunction Order"), which granted Xyience a preliminary injunction against Bergeron and held, among other matters, as follows:

> **IT IS FURTHER ORDERED**, that the Defendant, Richard Bergeron, shall remove any and all articles or postings regarding false claims about Xyience from the internet and [Bergeron] shall be enjoined from communicating any statements or making any representations which in any manner state, advise, represent, assert, allege, suggest, or imply, in any manner which is intended to, or does evoke an inference or create impression that Xyience is being investigated by the SEC.
>
> **IT IS FURTHER ORDERED**, that the Defendant, Richard Bergeron, shall remove any and all articles claiming that Xyience is defrauding investors and/or is conspiring with Dana White or the Ultimate Fighting Challenge to defraud investors. Richard Bergeron shall be enjoined from communicating any statements or making any representations which in any manner state, advise, represent, asset, allege, suggest or imply in any manner which is intended to, or does evoke an inference or create impression that Xyience is defrauding investors and/or conspiring with Dana White or the Ultimate Fighting Challenge to defraud investors.

See id. at Ex. 18.

4. On September 26, 2007, Xyience filed its Motion to Modify Preliminary Injunction Order in the Litigation, which the State Court thereafter granted. See id. at Exs. 22 and 28.[2]

5. On January 3, 2008, an Involuntary Petition (the "Involuntary Petition") under Chapter 11 of the Bankruptcy Code was filed against Xyience, being Case No. BK-S-08-10049-MKN.

---

[2] Bergeron never filed any appeal from the State Court's Preliminary Injunction Order or the Modified Preliminary Injunction Order. An order granting an injunction is immediately appealable pursuant to Nev. R. App. P. 3A(b)(2). A party has thirty (30) days after entry of an order to file a notice of appeal pursuant to Nev. R. App. P. 4(a)(1). This thirty-day period expired prior to any of Xyience's bankruptcy filings.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

6. On January 22, 2008, Xyience filed its Voluntary Petition (the "Voluntary Petition") under Chapter 11 of the Bankruptcy Code, being Case No. BK-S-08-10474-MKN, thereby commencing the above-captioned bankruptcy case. See Docket No. 1.

7. On January 31, 2008, the Involuntary Petition against Xyience was dismissed pursuant stipulation, and its voluntary bankruptcy case proceeded. See Docket No. 55.

8. On February 19, 2008, Bergeron filed his Answer to Complaint and Counterclaim for Declamatory Relief [sic] (the "Old Counterclaim") in the Litigation. See Adv. Docket No. 3, Ex. 50. Bergeron filed his Old Counterclaim against not only Xyience, but also joined in Fertitta Enterprises for the first time as a party to the Litigation. Prior to being joined in by Bergeron as a counterdefendant in the Litigation, Fertitta Enterprises never made any appearance or filed any papers or pleadings in the Litigation. Bergeron's Old Counterclaim alleged the following four counterclaims for relief against both Xyience and Fertitta Enterprises: (a) defamation, (b) violation of First Amendment rights, (c) tortious interference with prospective economic advantage, and (d) pain and suffering.

9. On March 20, 2008, Xyience removed the Litigation to Bankruptcy Court. See Adv. Docket No. 1.

10. On March 24, 2008, Fertitta Enterprises filed its Motion to Dismiss Adversary Proceeding, which was fully briefed. See Adv. Docket Nos. 7 (Motion); No. 16 (Opposition),[3] and 28 (Reply). In his opposition to Fertitta Enterprises' motion to dismiss, Bergeron admitted that "Fertitta Enterprises may be justified in denying culpability as far as their direct involvement in defaming Bergeron . . . ." Adv. Docket No. 16, p. 3.

11. On March 28, 2008, Bergeron filed what he called an (I) Emergency Motion to Suspend Bankruptcy Proceedings Pending Investigation of Fraudulent Bankruptcy Filing, and

[3] In this pleading, Bergeron argues that he "is in possession of numerous documents and a vast array of inside knowledge gleaned from hours of conversations with some of the most integral players, and has been forced by this very litigation to dig as deep as possible into the activities of all involved in these bankruptcy proceedings." Docket No. 16, p. 8. Moreover, later in this same pleading, Bergeron continues on about how he claims to be an investigative reporter trying to "root out" the truth in this case. See id. at pp. 9-10.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

(II) Motion for Summary Judgment on Defendant's Rule 11 Motion, Motion to Dismiss and Counterclaims (the "Motion to Suspend"), which was fully briefed. See Adv. Docket Nos. 11 (Motion to Suspend)[4]; 17 (Debtor Opposition), 19 (Fertitta Enterprises Opposition), and 42 (Reply).[5]

12. On April 9, 2008, Debtor also filed its own Motion to Dismiss and to Strike Bergeron's Old Counterclaim, which was fully briefed. See Adv. Docket Nos. 13 (Motion), 44 (Opposition), and 46 (Reply).

13. On April 22, 2008, Bergeron filed his Brief in Advance of Scheduling Conference. See Adv. Docket No. 31.[6]

14. On May 6, 2008, Bergeron filed what he called his First Amendment Brief. See Adv. Docket No. 40.[7]

15. On June 5, 2008, Fertitta Enterprises filed an Application for Order to Show Cause Re: Unauthorized Recording of Court Proceedings (the "OSC Application") and declaration in support thereof. See Adv. Docket Nos. 51 and 52.

16. On July 11, 2008, Bergeron filed what he called his (1) Reply to Fertitta Enterprises Ex Parte Motion and (2) Motion to Compel Court to Rule on All Outstanding Motions (the "OSC Reply"). See Adv. Docket No. 54. In his OSC Reply, Bergeron's explanation for how the unauthorized recording of court proceedings came to be in existence was that an unidentified Seattle-based filmmaker, which filmmaker was purportedly doing a

---

[4] In this pleading, Bergeron appears to compare himself to a "great investigative reporter," Adv. Docket No. 11, p. 19, and argues that he is only attempting to report matters through thee Litigation. See id. at p. 22.

[5] In this pleading, Bergeron calls himself an "investigative reporter." Docket No. 42, p. 5.

[6] In this pleading, Bergeron alleges that "he has conducted a fully and heavily involved investigation of the plantiff's activities . . . ," see Adv. Docket No. 31, p. 2, and that he has no monetary interest in this case. See id. at pp. 9-10.

[7] In this pleading, Bergeron alleges that "I have researched my articles to stand up to scrutiny," Adv. Docket No. 40, p. 3, and that he was "the only reporter with a bead on what [Debtor and Fertitta Enterprises] were scheming to do." Id. at p. 5. In other parts of this pleading, Bergeron compares himself to a "citizen soldier." Id. at p. 7.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

documentary on Bergeron and/or Debtor, was listening in on the hearing on another line. Bergeron further alleged that he was not aware that the recording was being made, and that the filmmaker sent him a copy of the recording after the hearing, which Bergeron then provided to an interviewer to be posted on-line. See Docket No. 54, p. 3 , ll. 4-12.

17. On August 18, 2008, the Court entered an Order to Show Cause (the "OSC"). See Adv. Docket No. 56.

18. On August 29, 2008, Bergeron filed what he called his Response to Order to Show Cause And Motion to Recuse Judge Nakagawa (the "Motion to Recuse"), which was fully briefed. See Adv. Docket Nos. 60 (Motion to Recuse),[8] and 63 (Fertitta Enterprises Opposition).

19. On September 18, 2008, Bergeron filed a Motion to Revoke the Bankruptcy Debtor's Reorganization Plan Approval Order, and Motion to Transfer Adversary Proceeding to Proper Venue (the "Motion to Revoke/Transfer Venue"), which was fully briefed. See Adv. Docket Nos. 66 (Motion to Revoke/Transfer Venue); 69 (Fertitta Enterprises Opposition), and 71 (Debtor Joinder in Opposition).

20. On October 14, 2008, the Court entered the following decisions and orders:

a. Denying Bergeron's Motion to Suspend, see Adv. Docket Nos. 72 and 104;

b. Denying Bergeron's Motion to Recuse, see Adv. Docket Nos. 81 and 82;

c. Denying Bergeron's Motion to Revoke/Transfer Venue, see Adv. Docket Nos. 73, 83, 84, 86, and 87;[9]

d. Declining to award any sanctions for Bergeron's unauthorized recording of court proceedings, see Adv. Docket Nos. 79 and 80;

e. Granting Fertitta Enterprises' Motion to Dismiss the Old Counterclaim, but granting Bergeron leave to amend his defamation counterclaim, see Adv. Docket

---

[8] In this pleading, Bergeron further addressed the issue of his unauthorized recording of court proceedings, thereby adding to what he had previously stated in his OSC Reply.

[9] Adv. Docket Nos. 73 and 84 are duplicative.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

Nos. 74 and 75; and

f. Granting Debtor's Motion to Dismiss the Old Counterclaim, but granting Bergeron leave to amend his defamation counterclaim, see Adv. Docket Nos. 76-78.

21. On November 3, 2008, Bergeron filed his Amended Counterclaim, see Adv. Docket No. 106, as well as the Affidavit of Richard Bergeron, the Affidavit of Bart Donovan, and the Affidavit of Gary Nelson (collectively, the "Affidavits") in support thereof. See Adv. Docket Nos. 107-109.

22. In his Amended Counterclaim, Bergeron abandons his prior defamation allegations as against Fertitta Enterprises, and now asserts that he was defamed by a comment made by Fertitta Enterprises' attorney, which comment was republished in an on-line newsweekly called TheDeal.com on September 12, 2008 (the "Article"). A true and correct copy of the entire Article is attached to the Zirzow Declaration as Exhibit "1" thereto. See Zirzow Declaration, ¶ 4.

23. In his Amended Counterclaim, Bergeron alleges that he operates the following website: http://www.unlimitedfightnews.com/xyience.htm. This is a link to the webpage (the "Xyience Webpage") on the website referred to in ¶ 1 of the Amended Counterclaim, which website Bergeron alleges he operates as a home-based business (the "Bergeron Website"). Among other features, the Xyience Webpage on Bergeron's Website includes a picture of a Dick Tracy-like police detective in a hat and trench coat, as well as a picture of a badge with the inscription "Private Investigator" on it. Bergeron's Website and Xyience Webpage contained the foregoing items for many months prior to the Article's publication. A true and correct copy of a printout retrieved from the Xyience Webpage is attached to the Zirzow Declaration as Exhibit "2" thereto. See Zirzow Declaration, ¶ 5.

24. In addition, the Xyience Webpage contains hypertext links to many additional related articles apparently authored by Bergeron, including but not limited to the following: (a) the "Zyen Full Disclosure Report" available at http://unlimitedfightnews.com/wordpress/?p=1342 (last visited November 24, 2008), and (b) the "Xyience: The Enron of MMA" available at http://unlimitedfightnews.com/xyiencewow.htm



Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

(last visited November 24, 2008). These articles having been published on Bergeron's Website for many months prior to the Article's publication. True and correct copies of printouts of the foregoing articles retrieved from the Bergeron Website are attached to the Zirzow Declaration as Exhibits "3" and "4" thereto, respectively. See Zirzow Declaration, ¶ 6.

## II.
## LEGAL AUTHORITY

### A. Legal Standard On A Motion To Dismiss.

A Rule 12(b)(6) dismissal must be granted where there is either "no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Siaperas v. Montana State Comp. Ins. Fund, 480 F.3d 1001, 1003 (9th Cir. 2007) (citing Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990)). In deciding a Rule 12(b)(6) motion, the Court must construe the allegations in the complaint (or counterclaim) in the light most favorable to the plaintiff (or counterclaimant), and accept all well-pleaded factual allegations as true. See Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-338 (9th Cir. 1996). While the allegations of a *pro se* complaint are held to a less stringent standard than formal pleadings drafted by an attorney, sweeping conclusory allegations will not suffice. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988). General or vague allegations are not enough to withstand a motion to dismiss. See Funderburk v. McDaniel, 2007 WL 4191963 at *2 (D. Nev. Nov. 21, 2007); see also Committee for Reasonable Regulation of Lake Tahoe v. Tahoe Reg'l Planning Agency, 311 F. Supp. 2d 972, 1000 and n.25 (D. Nev. 2004) (holding that courts do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations") (citing cases).

In Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007), the U.S. Supreme Court recently observed as follows:

> While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds for his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the



Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

> allegations in the complaint are true (even if doubtful in fact).

Id. at 1964-65. To avoid being dismissed for failure to state a claim, the complaint must set forth "enough facts to state a claim for relief that is plausible on its face . . . ." Id. at 1974.

"As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001) (quotation omitted). As the Ninth Circuit explained in Lee:

> There are, however, two exceptions to the requirement that consideration of extrinsic evidence converts a 12(b)(6) motion to a summary judgment motion. First, a court may consider 'material which is properly submitted as part of the complaint' on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment. If the documents are not physically attached to the complaint, they may be considered if the documents' authenticity is not contested and the plaintiff's complaint necessarily relies on them. Second, under Fed. R. Evid. 201, a court may take judicial notice of matters of public record.

See id. at 688-89 (citations and quotations omitted); see also Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) (approving review of material not attached to but referenced in a complaint in a defamation action). As such, although Bergeron does not physically attach the Article or other items to his Amended Counterclaim, and instead only lists a specific web address where the Article can be found, the Court may consider the Article and other matters because the Amended Counterclaim specifically relies upon them, and their authenticity, as supported by the Zirzow Declaration, is not disputed.

**B. Limited Allegations Made Against Fertitta Enterprises.**

Like his Old Counterclaim, Bergeron's Amended Counterclaim makes many allegations against Xyience, but only very limited allegations against Fertitta Enterprises. For example, Bergeron alleges, similar to this Old Counterclaim, that he has been "slandered and defamed in bogus blogs produced about him" by Xyience. Amended Counterclaim, ¶ 36. Bergeron also alleges, similar to his Old Counterclaim, that "[a] Xyience representative named Gary Nelson (see affidavit) used the District Court's preliminary injunction to misrepresent to at least one Xyience shareholder (see Bart Donovan Affidavit)" various matters about Bergeron. Id. at ¶ 37

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

(emphasis added). Third, Bergeron also alleges, similar to his prior allegations in this case, that "Xyience submitted a statement regarding Bergeron to Radio Talk Show Host Casey Hendrickson that he read on air during a KXNT broadcast," which Bergeron claims was defamatory and/or slanderous. Id. at ¶ 38 (emphasis added). Critically, Bergeron only makes the foregoing allegations against Xyience, and does not allege any involvement whatsoever by Fertitta Enterprises.

In fact, the only specific defamation allegations that Bergeron makes in his Amended Counterclaim against Fertitta Enterprises are as follows:

> 39. The September 15-21 issue of The Deal Magazine . . . includes the following quote from Attorney Gregory Garman: "The suit is nonsense," [declares Garman.] "Bergeron is neither a creditor or had any relationship with Xyience. HE BELIEVES THAT THE BEST WAY TO DO INVESTIGATIVE JOURNALISM IS TO SUE THE COMPANY YOU ARE TRYING TO INVESTIGATE."
>
> 40. Mr. Garman cannot state a fact he cannot possibly know since it is Bergeron's sole discretion as far as what he believes.

Amended Complaint, ¶¶ 39 and 40 (caps in original). Bergeron alleges that the text he has put in all capital letters in his Amended Counterclaim (which text was not in capital letters in the originally published Article) was defamatory. As set forth below, Bergeron's Amended Counterclaim must be dismissed as to Fertitta Enterprises for numerous reasons.

**C. Failure To Plead The Most Basic Required Elements Of A Defamation Claim.**

The Amended Complaint runs through a series of "stock" allegations in support of the defamation counterclaim. See id. at ¶¶ 41-47. Importantly, in each of these seven (7) "stock" paragraphs, the allegations are only made against "plaintiff" and/or "plaintiff's representative," which is Xyience, and none of these allegations reference the Counterdefendant, Fertitta Enterprises. As such, Bergeron's Amended Counterclaim fails to set forth even the most basic elements for a defamation claim as against Fertitta Enterprises, including that the statement was false, that the communication was not privileged, that Fertitta Enterprises was at least acting negligently in making the statement, and that Bergeron was damaged as a result of this specific

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

statement. See Pegasus v. Reno Newspapers, Inc., 57 P.3d 82, 87 (Nev. 2002). Similarly, in Bergeron's prayer for relief, he does not even allege any general, compensatory damages against Fertitta Enterprises (or Debtor for that matter), and instead only seeks punitive damages and sanctions against these parties. See Amended Counterclaim, pp. 10-11. As such, Bergeron's new defamation counterclaim fails to allege even the most fundamental elements as against Fertitta Enterprises, including general damages, and thus must be dismissed as a matter of law for failure to state a claim upon which relief may be granted.

**D. The Statement Was Not Defamatory As A Matter Of Law.**

"Defamation is a publication of a false statement of fact." Pegasus v. Reno Newspapers, Inc., 57 P.3d 82, 87 (Nev. 2002) (citing Posadas v. City of Reno, 851 P.2d 438, 442 (Nev. 1993)) (emphasis added). "Statements of opinion cannot be defamatory because 'there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas.'" Id. at 87 (Gertz v. Robert Welch, Inc., 418 U.S. 323, 339-40 (1974)) (emphasis added). "Statements of opinion as opposed to statements of fact are not actionable." Id. (quoting Nevada Indep. Broad. Corp. v. Allen, 664 P.2d 337, 341 (Nev. 1983). "[W]hether a statement is conditionally privileged is a question of law for the court." Id. at 88.

"[A] statement is not defamatory if it is an exaggeration or generalization that could be interpreted by a reasonable person as 'mere rhetorical hyperbole.'" Id. (quoting Wellman v. Fox, 825 P.2d 208, 211 (Nev. 1992)). "Nor is a statement defamatory if it is absolutely true, or substantially true." Id. "The doctrine of substantial truth provides that minor inaccuracies do not amount to falsity unless the inaccuracies 'would have a different effect on the mind of the reader from that which the pleaded truth would have produced.' Specifically, the court must determine whether the gist of the story, or the portion of the story that carries the 'sting' of the article, is true." Id. (quoting Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 517 (1991)).

In determining whether a statement is actionable for the purposes of a defamation suit, the court must ask "whether a reasonable person would be likely to understand the remark as an expression of the source's opinion or as a statement of existing fact." Id. (quoting Nevada Indep.





Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

Broad. Corp., 664 P.2d at 342). In Nevada, the following three factors are considered for determining whether an alleged defamatory statement includes a factual assertion: "(1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact; (2) whether the defendant used figurative or hyperbolic language that negates that impression; and (3) whether the statement in question is susceptible to being proved true or false." Id. at n.19 (quoting Flowers v. Carville, 112 F. Supp. 2d 1202, 1211 (D. Nev. 2000)). Allegedly defamatory comments must be considered in context. Id. (citing Nevada Indep. Broad. Corp., 664 P.2d at 343).

The general elements of a defamation claim require a plaintiff to prove: "(1) a false and defamatory statement by [a] defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." Id. at 90 (quoting Chowdhry v. NLVH, Inc., 851 P.2d 459, 462 (1993)).

"In enforcing laws that impose liability for mere speech, a right explicitly guaranteed to the people in the United States Constitution, states tread perilously close to the limits of their authority. Courts have acknowledged the tension between defamation claims and the First Amendment's protection of speech, and held that when reviewing state-law cases that raise First Amendment issues, appellate courts must make sure that 'the judgment does not constitute a forbidden intrusion on the field of free expression.'" Knievel v. ESPN, 393 F.3d 1068, 1073 (9th Cir. 2005) (quoting Bose Corp. v. Consumers Union, 466 U.S. 485, 499 (1984)); see also Underwager v. Channel 9 Australia, 69 F.3d 361, 366 (9th Cir. 1995) ("Although defamation is primarily governed by state law, the First Amendment safeguards for freedom of speech and press limit state law.")). In order to survive Fertitta Enterprises' motion to dismiss, Bergeron must establish not only that the comment about which he complains is "reasonably capable of sustaining a defamatory meaning," but also that it is not mere "comment within the ambit of the First Amendment." See id at 1073-74 (citations omitted).

The Court can resolve both of these questions as a matter of law. See id. at 1074 (citing Cochran v. NYP Holdings, Inc., 58 F. Supp. 2d 1113, 1120 (C.D. Cal. 1998), aff'd, 210 F.3d 1036, 1038 (9th Cir. 2000); Dodds v. Am. Broad. Co., 145 F.3d 1053, 1065-68 (9th Cir. 1998)





Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

(dismissing action for failure to state a claim because statements were non-actionable opinion); Dworkin v. Hustler Magazine, Inc., 668 F. Supp. 1408, 1415 (C.D. Cal. 1987) ("It is for the court to decide [whether a statement is actionable defamation] in the first instance as a matter of law."), aff'd, 867 F.2d 1188, 1193-94 (9th Cir. 1989)).

"When evaluating the threshold question of whether a statement is reasonably capable of sustaining a defamatory meaning, [the court] must interpret that statement 'from the standpoint of the average reader, judging the statement not in isolation, but within the context in which it is made.'" Id. at 1074 (quoting Norse v. Henry Holt & Co., 991 F.2d 563, 567 (9th Cir. 1993)).

"The First Amendment protects 'statements that cannot 'reasonably [be] interpreted as stating actual facts' about an individual.'" Id. (quoting Milkovich v. Lorain Journal Co., 497 U.S. 1, 20 (1990)). "Courts have extended First Amendment protection to such statements in recognition of 'the reality that exaggeration and non-literal commentary have become an integral part of social discourse.'" Id. (quoting Levinsky's, Inc. v. Wal-Mart Stores, Inc., 127 F.3d 122, 128 (1st Cir. 1997)). "By protecting speakers whose statements cannot reasonably be interpreted as allegations of fact, courts 'provide[] assurance that public debate will not suffer for lack of 'imaginative expression' or the 'rhetorical hyperbole' which has traditionally added much to the discourse of our Nation." Id. (quoting Milkovich, 497 U.S. at 20).

"When determining whether a statement can reasonably be interpreted as a factual assertion, [the court] must examine the 'totality of the circumstances in which it was made.'" Id. at 1074-75 (quoting Underwager, 69 F.3d at 366). As explained by the Ninth Circuit:

> First, we look at the statement in its broad context, which includes the general tenor of the entire work, the subject of the statements, the setting, and the format of the work. Next we turn to the specific context and content of the statements, analyzing the extent of figurative or hyperbolic language used and the reasonable expectations of the audience in that particular situation. Finally, we inquire whether the statement itself is sufficiently factual to be susceptible of being proved true or false.

Id. at 1075 (quoting Underwager, 69 F.3d at 366). "The context in which the statement appears is paramount in [the] analysis, and in some cases it can be dispositive." Id. (citing Dworkin, 867





Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

F.2d at 1193 (holding that courts must "examine the facts surrounding the publication, the context in which the statements were made, and the nature of the language used"); Koch v. Goldway, 817 F.2d 507, 509 (9th Cir. 1987) ("Context does resolve the matter.")). "A speaker's use of 'loose, figurative' language can also determine whether his or her statement can reasonably be interpreted as a factual allegation." Id.

When an opinion is based on disclosed facts, the opinion can only ever be punished if the stated facts themselves are false and demeaning. See Standing Comm. on Discipline of the United States Dist. Court v. Yagman, 55 F.3d 1430, 1438 (9th Cir. 1995); see also Dilworth v. Dudley, 75 F.3d 307 (7th Cir. 1996). Once the facts are correctly stated, an author's views about them are neither provably true nor provably false and therefore are protected.

In the case at hand, the underlying facts in the statement that Bergeron complains of in the Article are true. First, Bergeron has called himself an investigative journalist and holds himself out as such in numerous pleadings filed with this Court and on his website.[10] Second, Bergeron has himself indicated that he is investigating Debtor and Fertitta Enterprises' dealings with Debtor in pleadings filed with this Court and on his website. Third, Bergeron did previously sue Fertitta Enterprises, which Old Counterclaim was dismissed by the Court. In fact, and further confirming the lack of merit in his prior allegations, instead of amending his previous allegations from his Old Counterclaim, Bergeron abandoned these allegations in favor of a completely new defamation claim against Fertitta Enterprises in his Amended Counterclaim, which is based on a statement made while the Litigation was pending. In granting Fertitta Enterprises' previous motion to dismiss, this Court specifically held that Bergeron failed to state a claim upon which relief can be granted. Indeed, Bergeron himself admitted that Fertitta Enterprises was not culpable for defamation in his opposition to the previous motion to dismiss.

Notwithstanding that all of the foregoing underlying factual statements in the comment in the Article are true, when Fertitta Enterprises' attorney states his opinion regarding how he believes Bergeron approaches investigative journalism based upon these undeniable facts,

---

[10] As such, Bergeron is, at the very least, a limited public figure.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

Bergeron thinks he has a claim.[11] The comment Bergeron claims to be defamatory is simply opinion and cannot be defamatory as a matter of law.

**E. Fertitta Enterprises Is Not Liable For The Alleged Intentional Torts Of Its Agent.**

In the alternative, because defamation is an intentional tort, it would be outside the scope of an agent's agency, and thus something for which the individual tortfesor, not his or her principal, would be liable. See Rockwell v. Sun Harbor Budget Suites, 925 P.2d 1175, 1179 (Nev. 1996); Prell Hotel Corp. v. Antonacci, 469 P.2d 399, 400 (Nev. 1970). In the case at hand, there are no allegations of respondeat superior or that Fertitta Enterprises' attorney was otherwise acting within the scope of his agency in making the comment about Bergeron appearing in the Article. As such, any claim as to the principal, Fertitta Enterprises, must be dismissed as a matter of law, as the claim even potentially pled is as against the individual tortfeasor.

**F. No Further Leave To Amend Should Be Granted.**

Leave to further amend a complaint may be denied based on the following five factors: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint. See Allen v. City of Beverly Hills, 911 F.2d 367, 373 (9th Cir. 1990) (citing Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989)). The court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint. Id. (quoting Ascon Props., Inc., 866 F.2d at 1160)); see also Fidelity Fin. Corp. v. Federal Home Loan Bank of San Francisco, 792 F.2d 1432, 1438 (9th Cir. 1986).

---

[11] Moreover, although not part of Bergeron's defamation claim, the other statements made in the comment in the Article are also true. First, that the Old Counterclaim was "nonsense" is true in light of the Court's granting of a motion to dismiss the Old Counterclaim (and all other matters filed by Bergeron in this case), Bergeron's admission in his opposition to Fertitta Enterprises' motion to dismiss the Old Counterclaim that Fertitta Enterprises was not culpable for any defamation against Bergeron, and the fact that Bergeron has abandon any defamation claim based upon any of these prior allegations in his Amended Counterclaim. Second, Bergeron has also admitted in prior pleadings filed with this Court that prior to the Litigation he was neither a creditor of Debtor, nor had a relationship with Debtor such as a shareholder.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

In the case at hand, Bergeron's multitude of frivolous filings in this case have all been rejected by the Court, and his Old Counterclaim has also been dismissed. In fact, the Counterclaim does not replead any of the old defamation allegations against Fertitta Enterprises, and instead pleads the new theory that a comment made while the Litigation was pending was defamatory. As such, any further dismissal of this case should be without any leave for further amendment as Begeron has already been given ample opportunity to plead his case and has simply failed to do so.

## III.
## CONCLUSION

WHEREFORE, Fertitta Enterprises respectfully requests that the Court grant the Motion, and thereby dismiss the Amended Counterclaim against it pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Fertitta Enterprises also requests such other and further relief as is just and proper.

DATED this 24th day of November, 2008.

GORDON SILVER

By: ________________________
GREGORY E. GARMAN, ESQ.
MATTHEW C. ZIRZOW, ESQ.
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89169
Attorneys for Fertitta Enterprises, Inc.



Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555