# Exhibit 23

Russell,

Kirk and I very much look forward to sharing the information on Xyience's history that has been uncovered. We are very confident in the shareholder's ability to draw their own conclusions when they have the facts in front of them.

Adam

----- Original Message -----
From: Russell Pike <rpike@xyience.com>
To: Adam Frank; William Underhill AOL <bunderhi@aol.com>; Katie Lever <klever@gcamail.com>; Kirk Sanford <ksanford@gcamail.com>; mk@arcinvestmentpartners.com <mk@arcinvestmentpartners.com>
Cc: rsozzi@rvsventures.com <rsozzi@rvsventures.com>; rinaldi5@cox.net <rinaldi5@cox.net>; sjbock@hotmail.com <sjbock@hotmail.com>; brent@pbgmail.com <brent@pbgmail.com>; pb@crowncapitalsa.com <pb@crowncapitalsa.com>; kmaskatiya@gcamail.com <kmaskatiya@gcamail.com>; Ric Klingenberg <rklingenberg@xyience.com>; janisgrady@aol.com <janisgrady@aol.com>; flamencovivo@aol.com <flamencovivo@aol.com>; apwstrategies@gmail.com <apwstrategies@gmail.com>; Michael Eisner <meisner@eisnerlaw.com>; ksutton@eisnerlaw.com <ksutton@eisnerlaw.com>; jkjets@aol.com <jkjets@aol.com>; Marc Rock <marc.rock@gmail.com>; Susan Curry <scurry@Xyience.com>; Michael Levy <mlevy@Xyience.com>; sbock@cox.net <sbock@cox.net>; dianefrankteam@yahoo.com <dianefrankteam@yahoo.com>; kriech18@hotmail.com <kriech18@hotmail.com>; cjs@hexagoninc.com <cjs@hexagoninc.com>; TLC FORWARDING <terry@tlcconsulting.biz>; chubilly@yahoo.com <chubilly@yahoo.com>; billyzb@yahoo.com <billyzb@yahoo.com>; paul personal <paulgrady@aol.com>; Matt R. Friesl <Matt@aacapitalpartners.com>; Reuben Rios <rrios@Xyience.com>; Devin Keays <dkeays@xyience.com>; Siobhan Oldham <soldham@Xyience.com>; Michael Rusnak <mrusnak@Xyience.com>; plamatte@xyience.com <plamatte@xyience.com>; swierczbicki@xyience.com <swierczbicki@xyience.com>; Stephen Smith <ssmith@Xyience.com>; Dara Asuncion <dasuncion@Xyience.com>; Nina Rodriguez <nrodriguez@Xyience.com>; Darin T. Mahlke <dmahlke@Xyience.com>; ronaldsol@msn.com <ronaldsol@msn.com>
Sent: Tue Oct 02 17:21:22 2007
Subject: RE: XYIENCE NOTICE OF CESSATION OF OPERATIONS

Adam,

The truth will come out about your actions that have brought us to this point.
A shareholder meeting has been called to give full disclosure to the shareholders and determine proper action.

As stated below, I had agreed as long as Mike Clark was treated fairly, which he was not.

Shareholders will be receiving a report of your actions and will take appropriate action against all involved.

---

From: Adam Frank [mailto:adam@adam-frank.com]
Sent: Tuesday, October 02, 2007 2:10 PM
To: William Underhill AOL; Katie Lever; Kirk Sanford; mk@arcinvestmentpartners.com
Cc: rsozzi@rvsventures.com; Russell Pike; rinaldi5@cox.net; sjbock@hotmail.com; brent@pbgmail.com; pb@crowncapitalsa.com; kmaskatiya@gcamail.com; Ric Klingenberg; janisgrady@aol.com; flamencovivo@aol.com; apwstrategies@gmail.com; Michael Eisner; ksutton@eisnerlaw.com; jkjets@aol.com; Marc Rock; Susan Curry; Michael Levy; sbock@cox.net; dianefrankteam@yahoo.com; kriech18@hotmail.com; cjs@hexagoninc.com; TLC FORWARDING; chubilly@yahoo.com; billyzb@yahoo.com; paul personal; Matt R. Friesl; Reuben Rios; Devin Keays; Siobhan Oldham; Michael Rusnak; plamatte@xyience.com; swierczbicki@xyience.com; Stephen Smith; Dara Asuncion; Nina Rodriguez; Darin T. Mahlke
Subject: XYIENCE NOTICE OF CESSATION OF OPERATIONS
Importance: High

Board, Shareholders, and Employees:

This is formal notice that we are ceasing all business operations, because we have come to the conclusion that there is

**Form Number 1**

virtually no likelihood that there will be money to meet payroll obligations. (Nor can the company meet greater than $4M of other obligations that come due by Friday)

Even if we had the money for payroll, Bill Bullard, CEO of Fertitta Enterprises, has begun the foreclosure process, which will collect on the first $1,500,000 in value. Further, we have also received a notice of default from Darlis Investment and Trade Corp, the holders of the next $6,000,000 of secured debt. In addition, we are also starting to receive numerous notices of default pertaining to the vendor settlements and structured payments which we have worked so hard to line up. Thus, even to make payroll, we believe that we would need to raise nearly $8M by Friday because all of these obligations would need to be satisfied concurrently.

The issue that is preventing the Fertittas from funding the company and solving the aforementioned payment obligation has boiled down to Russell's unwillingness to sign an agreement required by the Fertitas whereby any stock that Russell, Billy, or Mike own would have a voting restriction in it which would transfer to any other shareholder who purchased the stock.

Russell, Billy, and Mike received this agreement last Thursday. As of Friday, the board believed that Russell, Mike, and Billy had signed the agreement. On Monday, we learned that only Mike Clark had in fact signed the voting agreement. There apparently had been some signals crossed on whether the voting agreement was in fact signed, and there are claims that Russell represented that he and his family had in fact signed the agreement. On Monday, Kirk and I received an email from Russell that he had finally read the agreement, and was taking issue with the requirement that all of his, Billy's, and Mike's share certificates would need to be imprinted with a Legend that made them non-voting only during the term that the Fertitta Loan was outstanding.

The board has already unanimously approved the Fertitta transaction.

In addition, shareholders (including Russell Pike, Billy Pike Jr, Mike Clark), have approved the Fertitta transaction as required by the Fertittas and by XYIENCE's own by-laws.

The concern that Russell has expressed is that this will result in diminution of value of those shares, and restrict his and Mike's ability to sell these shares.

Kirk and I went back to Bill Bullard and asked him to consider allowing the shares to become voting to the extent that Russell, Billy, or Mike transferred them to non-affiliated parties. Bullard refused, for the following reasons:

(1) He thought it inappropriate that the founders should continue to be out selling stock during this period while other investors need to wait and moreover while the company needs to raise more money

(2) He did not want to have to police to whom the shares were being transferred

(3) He has grown tired of this deal dragging on and there always being "one more issue"
Kirk and I had numerous follow up conversations with Russell and Bill Bullard to try to broker some sort of compromise. This morning, Russell told us that he would agree to have his shares imprinted with the Legend thereby restricting their ability to vote, even if sold or transferred, so long as we could broker some compromise which allowed Mike Clark to have some flexibility on selling his shares without the Legend.

In a final appeal, Kirk and I went back to Bullard to propose this. What Bullard begrudgingly agreed to was that 1,000,000 of Mike Clark's shares would be allowed to be transferred without voting restrictions, so long as (a) he complied with a sales process that was approved by the company and provided for review and approval of prospective purchasers (b) a process that made requisite disclosures to prospective purchasers.

Kirk and I went back to Russell with this proposal. Russell hung up abruptly and told us to tell Bullard there was *NO DEAL* and that Kirk and I should call Ray Sozzi as Ray had an alternative plan for the company, and that "Ray would not let the company go under."

Kirk and I have called Ray twice but have not heard back.

Today, I had a telephone conversation with Mike Clark and he said he was going to give this proposal some consideration.

STAD 10/8/07

It appears that Russell's self interest in continuing to sell his shares is preventing the company from doing what is in the company and the shareholder's best interest.

Anything that anyone can do to convince Russell of the selfishness of his actions and prevent this course of consequences would be greatly beneficial to the shareholders who stand to lose their entire investment if the company ceases operations.

In any event, the stark reality is that we need SEVERAL MILLION DOLLARS by Thursday. Regardless of anyone's opinion of the (only) deal on the table, we have gone back and forth several times and tried to broker a compromise, and we have clearly been told that there is no more room for discussions. To be clear, the only options are: 1) that Russell signs the document, or 2) the deal dies. There is no in-between, and nothing is open for discussion, and an answer must be given by end of day today.

We also have been open to any other financing proposals, but no firm offer has been received over the past several months. The likelihood of another deal coming through, and being negotiated, signed, and funded – by Thursday, is obviously extremely remote.

Accordingly, our duties require us to immediately inform you of the grave nature of this situation. Given Russell's refusal to cooperate, and the fact that will prevent the Fertitta deal from closing, we believe that there will not be any money for payroll, so we must cease business operations, and we also believe that the failure to make payments due Thursday and Friday for debts will result in foreclosure and/or bankruptcy. Therefore, we are sending this formal notice, and ceasing operations immediately.

We are attempting to schedule an immediate board meeting. If anything results that will save the company, we will immediately inform you, but based on the facts as we know them now, we are taking the action set forth above.

Thank you,

Kirk and Adam

# EXHIBIT 52

Communications with the SEC

from Rich Bergeron <rich.bergeron@gmail.com>
to kleins@sec.gov
date Tue, Mar 13, 2007 at 9:16 AM
subject Xyience, Inc.
mailed-by gmail.com
hide details 3/13/07

Reply

Ms. Klein,

I have been doing some major digging into the background of Russell Pike, the creator of Xyience, Inc., and I have found a tremendous amount of information pointing to major corruption at the company. I have heard that your office may be investigating Mr. Pike and Xyience, and I would like to help out in any way I can and also let you know that some of my sources have received death threats. There is apprently a Mark Neiber out there who someone close to Pike or Pike himself has contacted me about. I received one email that is a confirmation of death threats to Neiber.

I am getting close to being able to go to press with what I know. I do not want to jeopardize your investigation in any way by doing that. I will do whatever I can to make sure that does not happen. Please let me know what I can do. I have multiple sources who have given me information both on and off the record. I am sure I might be able to offer you a clue or two that you have yet to uncover.

Thanks,

Rich Bergeron
Fight News Unlimited
Editor/Writer/Webmaster
(617) 209-4325

from Klein, Sarit <Kleins@sec.gov>
to Rich Bergeron <rich.bergeron@gmail.com>
date Fri, Nov 9, 2007 at 10:57 AM
subject RE: Xyience
mailed-by sec.gov

hide details 11/9/07

Reply

Mr. Bergeron,

Thank you for your email and voice mail message. We appreciate receiving information from members of the public who believe a violation of the federal securities has occurred. Our acceptance of the

information, however, should not be construed as an indication by the Commission or its staff that any violations of law have been committed, not should it be considered a reflection upon any person, entity or security.

If you wish to provide us with additional information regarding this matter, please feel free to email it to me, with the understanding that your furnishing of any information is completely voluntary and not at the initiation or request of the SEC.

Sincerely,

Sarit Klein
Senior Counsel
Securities and Exchange Commission
Division of Enforcement
100 F Street, N.E.
Washington, D.C. 20549
Tel (202) 551-4577
Fax (202) 772-9278

from U.S. Securities and Exchange Commission <oiea@sec.gov>
reply-to "U.S. Securities and Exchange Commission" <oiea@sec.gov>
to "Bergeron, Richard" <rich.bergeron@gmail.com>
date Tue, Sep 11, 2007 at 2:10 PM
subject SEC Response - File HO1241298
mailed-by sec.gov

hide details 9/11/07

Reply

Dear Mr. Bergeron:

We are taking your complaint very seriously, and have referred it to the appropriate people within the SEC.

Please understand that the SEC conducts its investigations on a confidential basis and neither confirms nor denies the existence of an investigation unless we bring charges against someone involved. We do this to protect the integrity and effectiveness of our investigative process and to preserve the privacy of the individuals and entities involved. As a result, we will not be able to provide you with any future updates on the status of your complaint or of any pending SEC investigation.

Below is a flyer that describes our policy as it will apply to your complaint. Please contact me if you have other questions.

Sincerely,

MERRILY W KATZ
Office of Investor Education and Advocacy

U.S. Securities and Exchange Commission
(202) 551-6317

INFORMATION ABOUT SEC INVESTIGATIONS

Each year, thousands of investors ask the Securities and Exchange Commission to investigate the activities of other investors, financial professionals, corporations, brokerage firms, investment companies, stock exchanges, and others. These complaints generally suggest some impropriety or misconduct and sometimes make a plea to the SEC for direct assistance in resolving a grievance.

The SEC has the authority to investigate whether violations of the federal securities laws have occurred, and we make every effort to evaluate promptly and thoroughly the information provided by investors. But we cannot investigate every investor complaint. While many investor complaints do lead to full investigations and, if appropriate, to enforcement actions, we cannot guarantee that our review will lead to further investigation or that the SEC will take any legal action.

We also cannot provide you with updates on the status of your complaint or your request for an investigation. The SEC conducts investigations confidentially for two main reasons. First, we can conduct investigations more effectively if they are not announced publicly. For instance, important documents and evidence can be destroyed quickly if people hear of an investigation. Second, we keep our investigations confidential to protect the reputations of companies and individuals if we find no wrongdoing or decide we cannot bring a successful action against them. The SEC will not confirm or deny the existence of an investigation unless, and until, it becomes a matter of public record as the result of a court action or administrative proceeding.

When there is proof that someone has violated the securities laws, the sanctions may include financial penalties, orders to surrender profits, cease and desist orders, or an injunction by a court to prevent further violations. The SEC may also bar individuals from working for a securities firm, investment adviser, or investment company. We can also ask a federal court to bar individuals from being officers and directors of publicly held companies. In some situations, we may refer a case to the Department of Justice for possible criminal prosecution.

The SEC publishes news releases about its lawsuits and administrative actions, and the news media often report on them. You can read and download the SEC's ""Enforcement Actions"" on our website at www.sec.gov/divisions/enforce/enforceactions.shtml. Or you can obtain hard copies by contacting us at:

Office of Public Reference
100 F Street, N.E.
Washington, DC 20549-0102
Phone: (202) 551-8090
Fax: (202) 777-1027
E-mail: publicinfo@sec.gov

-----------------------------------------------------

COMPLAINT

---------------------------------------------------

Submitted: 2007-09-03
Send Copy: A copy of this may be sent to the entity.

INVESTOR INFORMATION
Name: Mr. Richard E. Bergeron
Address: 147 Old County Road
East Sandwich, MASSACHUSETTS (MA) 02537
UNITED STATES
Day Phone: 617-209-4325
Alt Phone:
Fax:
Email: rich.bergeron@gmail.com

ENTITY INFORMATION
Name: Xyience, Inc.
Type: Private/Closely Held Company
Rep.: Ronald Solomon, Russell Pike
Address: 10650 Charleston Blvd
Las Vegas, NEVADA (NV) 89135
UNITED STATES

SECURITY INFORMATION
Name:
Symbol:
Type:

COMPLAINT INFORMATION
Providable Documents:
- Correspondence to and from Firm
- Advertising or Marketing Materials
- Notes of conversation with Firm
- court documents and PPM paperwork

Description:
I have compiled an extensive investigative report at www.unlimitedfightnews.com/id16.html that describes in detail exactly what is going on at Xyience, Inc. under the direction of their founder, Convicted Felon Russell Craig Pike. In addition to what is available on the site I have recorded conversations detailing the company's ties to organized crime, a recent email from an analytics company that details how the company's actual sales are far out of line with their marketing claims, and contact information for various anonymous sources I have dealt with who have exclusive inside information. I have a tremendous amount of documentation and resources that would be useful in any investigation of the company and Russell Pike's corrupt and fraudulent activities there. Xyience played a significant role already in the SEC's investigation of AA Capital CEO and President John Orecchio.

My investigation has produced a vast array of information that could lead to prosecution of the individuals holding this company back from whatever venerable goals the employees

there are trying to accomplish. As a major sponsor of the UFC (Ultimate Fighting Championships) the company was at one time in a position to do wonders for the sport of Mixed Martial Arts. By all indications Pike and his inner circle of associates interfered with the mission of the company through their devious activity including skimming from company coffers, erratic purchases, failure to pay vendors and clients, and manipulating PPM booklets to appease certain potential investors. Pike apparently promised all initial investors that only 500,000 pre-IPO shares would ever be sold. Today there are millions in circulation.

Pike has been called a criminal mastermind and a genius who covers his tracks extremely well. It will take a concerted effort to determine the extent of the fraud that is ongoing at the company. I have decided to discontinue my reporting on the subject and turn over everything I can to the proper authorities. I have exhausted my own research and do not have the resources to dig deeper.

I am a graduate of military school who to this day follows an honor code in my personal life. I strongly believe in the principle of service before self. I have always wanted my writing to help people, and in this case I would like to help all the victims of this grand fraud find justice. Feel free to contact me with any questions you might have. I am willing to provide you any and all names and contact information of all my sources, even those who asked for anonymity. As long as those connected to Xyience do not find out who those sources are, I will provide what I can to help facilitate a strong investigation.

Thank You,

Rich Bergeron
617-209-4325

ACTION INFORMATION
Complained to:
- The firm
- Other Federal Regulators

Legal Action:
Description:

# Exhibit 53

Xyience Official Press Release

XYIENCE(R) ANNOUNCES $12 MILLION FUNDING AND SIGNING OF LONG TERM UFC(R) SPONSORSHIP

Building XYIENCE(R) Inc.
10/10/2007

XYIENCE(R) Inc. (pronounced zy-ince), one of the fastest growing brands in the beverage and nutritional supplements business, today announced that the company has received access to up to $12 million in a strategic funding effort from a group of investors. The company intends to use a significant portion of the investment to expand distribution of its Xenergy brand energy drink. The name Xenergy is a combination of Zen and Energy and is pronounced "Zenergy".

In just one year, Xenergy has increased distribution from 4,600 stores to 45,000 and can be found in such national retailers as 7-11, Kroger and GNC as well as in regional grocery and convenience stores around the country.

XYIENCE recently introduced three new Xenergy flavors, Mango Guava, Pink Lemon and Blu Pom, which join the popular original flavors of Citrus Clear, Cran-Razz and Big Apple. Containing no calories, sugar or carbohydrates, Xenergy is formulated to provide clean, sustainable energy. Scientifically fortified with vitamins, the proprietary blend is designed to prevent the crash ending often associated with other energy drinks.

XYIENCE also announced that the company's exclusive sponsorship relationship with the Ultimate Fighting Championship(R) (UFC(R)) has been extended for an additional three years. Xenergy is the official energy drink of the UFC(R), the world's leading professional mixed martial arts organization.

"XYIENCE has been a long time sponsor of the UFC(R) and we look forward to our future endeavors together as both of our companies continue their explosive growth," said Dana White, UFC(R) President.

"We believe that the combination of new financing and the extension of our UFC(R) relationship firmly positions the company for success as we embark on a worldwide expansion of the XYIENCE and Xenergy brands," said Adam Frank, XYIENCE CEO.

About XYIENCE(R)

XYIENCE, one of the fastest growing brands in the health related category, utilizes advanced science in the development of nutritional products and supplements necessary for maintaining a dynamic lifestyle. XYIENCE offerings, including energy drinks and nutritional supplements, represent an authentic lifestyle that is both functional and fashionable. For more information, visit http://www.xyience.com.

# EXHIBIT 54

DRAFT

FOR IMMEDIATE RELEASE

Contact: Maggie Feldman
702.553.5832
Maggie@magneticpublicrelations.com

**XYIENCE ANNOUNCES $12 MILLION FUNDING AND SIGNING OF LONG TERM UFC SPONSORSHIP**

(LAS VEGAS) October 9, 2007 – XYIENCE® Inc. (pronounced zy-ince), one of the fastest growing brands in the beverage and nutritional supplements business, today announced that the company has received $12 million in a strategic funding effort led by Fertitta Enterprises. The company will use the investment to expand distribution of its Xenergy brand energy drink. The name Xenergy is a combination of Zen and Energy and is pronounced "Zenergy".

In just one year, Xenergy has increased distribution from 4,600 stores to 45,000 and can be found in such national retailers as 7-11, Kroger and GNC as well as in regional grocery and convenience stores around the country.

XYIENCE recently introduced the three new Xenergy flavor additions of Mango Guava, Pink Lemon and Blu Pom, which join the popular original flavors of Citrus Clear, Cran-Razz and Big Apple. Containing no calories, sugar or carbohydrates, Xenergy is formulated to provide clean, sustainable energy. Scientifically fortified with vitamins, the proprietary blend is designed to prevent the crash ending often associated with other energy drinks.

XYIENCE also announced that the company's exclusive partnership with the Ultimate Fighting Championship (UFC) has been extended for an additional three years. Xenergy is the official energy drink of the UFC, the world's leading professional mixed martial arts organization.

"Xyience has been a long time partner of the UFC and we look forward to our future endeavors together as both of our companies continue their explosive growth," said Dana White, UFC president.

"The combination of new financing and the extension of our UFC partnership firmly position the company for success as we embark on a worldwide expansion of the XYIENCE and Xenergy brands," said Adam Frank, XYIENCE president.

**About XYIENCE®**

XYIENCE, one of the fastest growing brands in the health related category, utilizes advanced science in the development of nutritional products and supplements necessary for maintaining a dynamic lifestyle. XYIENCE offerings, including energy drinks and nutritional supplements, represent an authentic lifestyle that is both functional and fashionable.

###

# Exhibit 55

---------- Forwarded message ----------
From: Rich Bergeron <rich.bergeron@gmail.com>
Date: Tue, Jul 15, 2008 at 7:21 PM
Subject: Fwd: THE XYIENCE CASE
To: jmowbray@fclaw.com

Mr. Mowbray, you need to see this, too. You firm's reputation is on the line.

---------- Forwarded message ----------
From: Rich Bergeron <rich.bergeron@gmail.com>
Date: Tue, Jul 15, 2008 at 7:15 PM
Subject: THE XYIENCE CASE
To: JPEARSON@fclaw.com

--
Mr. Pearson, I am contacting you regarding the case your law. firm is still trying to flog like a dead horse in bankruptcy court for Xyience, Inc.

I'll be short and sweet. I have recently discovered some information about your client's fire sale of Xyience to Manchester Consolidated Corporation, which much like Kirk Sanford and Adam Frank, has a lengthy record of defrauding other companies. Karim Maskatiya, GCA, Manchester Consolidated Corporation, and Fertitta Enterprises are all running a game on your firm and making your firm cover it all up so they can make millions out of thin air. Anthony Pallante and William Smith are swindlers, too. Just like everyone who's ever run Xyience thus far. There's too many skeletons in the closet to not be suspicious and worried about the future direction of Xyience while these corporate crooks are in control. Everyone's scamming the last scam here, and you've got to know that by now.

I have evidence of even greater fraud than I could have even imagined at the outset. We are talking international money laundering, Pakistani power brokers running billion dollar empires just to skim off them with Bank of America's help. This is a global issue. As far as my case, it only gets worse for your firm if you continue the charade. I have spoken and will meet next week with an individual who wore a wire for 6 months for the FBI. This person was assisting them in operations to discover more about Global Cash Access' principal players, including former Co-CEO Kirk Sanford and big time Xyience investor Karim Maskatiya.

I gave your firm a chance to settle and a break from actively pursuing the story in the hopes that perhaps an amicable agreement could be reached in this case. The dirt just started coming to me in droves. I don't even have to look for it anymore. It lands on my doorstep, and I will be getting voluminous documents to back it all up. I am not going to sit on my hands any longer and let your firm protect the guilty parties while they pull off scam after scam. You are sanctioning obstruction of justice by protecting these people with your firm's reputation on the line. Your firm is assiting bankruptcy fraud. I know at this point the name Xyience itself isn't attached to any real easy to pin down target at this point. Everyone who's touched it has defrauded it at some level thus far. However, it is Fertitta Enterprises and the people they placed in charge who have set about this real chain reaction of fraudulent business dealings by shell corporations. I mean NEWCO??? Who calls their company Newco?

Your firm is doing the dirty work for the Fertittas when you should protect your client's interests and get out of this joke of a case someone else tried to pin on me for no reason other than to shut me up. I just want to come to an amicable settlement at this point, but your brainiac lawyers think they can make this pile of bullshit stick and smell good to the judge eventually. The more you press the matter, the more foolish your firm is going to look. Just a fair warning.

**Rich Bergeron**
**Editor/Writer/Webmaster**
**www.unlimitedfightnews.com**
**www.fightnewsunlimited.com**
**THE BEST FIGHT NEWS ON THE NET!!!**
**617-209-4325**

**from** Rich Bergeron <rich.bergeron@gmail.com>
**to** "PEARSON, JON" <JPEARSON@fclaw.com>
**date** Wed, Mar 12, 2008 at 3:21 PM
**subject** Re: Xyience v. Bergeron
**mailed-by** gmail.com

**hide details Mar 12**

**Reply**

**Mr. Pearson,**

**I have been doing some research on bankruptcy stays, and I am convinced that my case does not apply to Xyience's bankruptcy stay. For one, I am not a creditor or lender. I have neither provided any funds to Xyience I am attempting to collect, nor have I bought any stock in Xyience. I am seeking relief that is not related to actions protected by an automatic stay.**

**Furthermore, the action I am seeking relief for is the fraudulent filing of your client's case against me. That case was instituted long before your bankruptcy petition was filed.**

**I found the following explanation on a legal research site:**

**"In some cases however, the stay may not apply at all. For example, while the automatic stay stops foreclosures, certain actions incidental to a foreclosure sale may not be prohibited. The courts in Virginia have held that the automatic stay does not prevent a lender from recording a foreclosure deed from a sale that was completed before the bankruptcy petition was filed. Thus the first question the lender's attorney must answer is, "does the automatic stay bar the activity the lender wants to take?" If not, a lift stay is unnecessary."**

**Although I am not a lender, the above passage points out the importance of the timing of the action for which the claimant is seeking relief. Every explanation I have found thus far regarding stays points to lenders or creditors. I am neither, as you well know.**

**Furthermore, while you threaten to try to force me to pay the costs of trying to get the court to find me in contempt, I also have a legal remedy to force your client to pay my legal costs for having to file a motion to lift the stay that is not necessary in the first place. Your demand letter would be great proof of a direct, unfounded threat against me that is based on your firm's misunderstanding of the applicable law.**

**There are no collection of debt issues involved in my case. I am only seeking damages due to your client's fraudulent suit. I have looked at other cases against Xyience which the stay applied to, and they are cases in which the plaintiff was attempting to collect a debt or recover some kind of collateral or interest in the company. I am not seeking anything other than due justice for the entire fraudulent case your firm cannot even defend beyond saying that you don't have anything to do with the main players anymore. You can try to hang your hat on technicalities all you want, but any judge looking at this case is going to eventually have to examine the merits, and your client has none.**

So, do what you must as far as filing for contempt. Just remember:

1.) you won't get a penny in legal fees out of me because I have no assetts
2.) you will be asking the judge to find me in contempt for something I am innocent of
3.) you will have to pay my legal fees when you lose

If you think I'm wrong, just point me to the statute or point of law that proves it, and I'll file a motion to lift the stay, but as it stands I see no reason to waste my time filing something that is not necessary.
- Show quoted text -

On Mon, Mar 10, 2008 at 5:09 PM, PEARSON, JON <JPEARSON@fclaw.com> wrote:

Mr. Bergeron:

Please find attached to this e-mail a courtesy copy of the Notice of Entry of Order for the above-referenced case. A hard-copy has been mailed to you.

Jon T. Pearson
FENNEMORE CRAIG, P.C.
300 South Fourth Street
Suite 1400
Las Vegas, Nevada 89101
Direct: (702) 692-8015
Direct Fax: (702) 692-8099
Business Cell: (702) 569-6401

www.fennemorecraig.com

IRS CIRCULAR 230 DISCLOSURE: To ensure compliance with requirements imposed by the IRS, we inform you that, to the extent this communication (or any attachment) addresses any tax matter, it was not written to be (and may not be) relied upon to (i) avoid tax-related penalties under the Internal Revenue Code, or (ii) promote, market or recommend to another party any transaction or matter addressed herein (or in any such attachment). For additional information regarding this disclosure please visit our web site.

CONFIDENTIALITY NOTICE: The information contained in this message may be protected by the attorney-client privilege. If you believe that it has been sent to you in error, do not read it. Please immediately reply to the sender that you have received the message in error. Then delete it. Thank you.

--
Rich Bergeron
Editor/Writer/Webmaster
www.unlimitedfightnews.com
www.fightnewsunlimited.com
THE BEST FIGHT NEWS ON THE NET!!!
SPONSORED BY:
V-SHIELD:
http://www.myspace.com/needinvestors
www.extremecontactfighting.com
www.feelthepainfightgear.com
www.bulletfightgear.com

www.carnagefightgear.com
www.bloodybuddyfightgear.com

MAKE EASY MONEY:
http://bux.to/?r=Boxer47
http://ww1.yuwie.com/profile/?id=12501

CHECK OUT MY INVESTIGATIVE REPORTING:
www.unlimitedfightnews.com/xyience.htm

http://www.youtube.com/watch?v=ZtnTesjxmvw

from Rich Bergeron <rich.bergeron@gmail.com>
to jmowbray@fclaw.com
date Wed, Feb 27, 2008 at 3:02 AM
subject XYIENCE FRAUD
mailed-by gmail.com

hide details Feb 27

Reply

Mr. Mowbray,

I got the following email from one of your attorneys Tuesday:

Mr. Bergeron:

On January 18, 2008, Xyience filed a voluntary Chapter 11 petition in the United States Bankruptcy Court, District of Nevada, No. BK-S-08-10474-MKN ("Bankruptcy Case"). This firm, Fennemore Craig, P.C. ("Fennemore"), is Xyience's reorganization counsel in the Bankruptcy Case.

On February 25, 2008, Xyience filed a Substitution of Counsel substituting Fennemore in place of Hunterton & Associates in Xyience's state court case against you. We are aware that you have filed a Motion for Rule 11 Sanctions and a Motion to Dismiss ("Motions"). However, due to the voluminous documents that have been filed in this case, we are seeking an extension to file Xyience's oppositions to your Motions in order to permit this firm an opportunity to review all of the documents that have been filed in this case. We also request this additional time to allow our firm to address pressing matters arising in the Xyience Reorganization case.

Moreover, we are aware that the Court ordered that your Motion to Dismiss will be heard on March 5, 2008, and your Motion for Rule 11 Sanctions will be heard on March 18, 2008. Because we have just recently been substituted in this case, we are also seeking an extension to continue the hearings on your Motions for at least sixty (60) days.

**We will be requesting that the Court set one hearing for both of your motions to be held in Las Vegas, Nevada at a date and time when you are able to come to Las Vegas to personally attend those hearings.**

**Please let me know whether you are willing to stipulate to: (i) providing Xyience an extension to file its Oppositions to your Motions; and (ii) continue the hearings for your Motions for at least sixty (60) days and have the Court set one hearing for both of your motions to be held in Las Vegas, Nevada at a date and time when you are able to come to Las Vegas to personally attend those hearings.**

**If you have any questions, please contact me at the telephone number listed below, or you can reach me at jpearson@fclaw.com.**
**Regards,**

**Jon T. Pearson**
**FENNEMORE CRAIG, P.C.**

**I just want to make it very clear to you and your firm that I have no intention of letting any kind of extension go forward. Nor will I ever agree to attend a hearing in Vegas. If you read the attached counterclaim you will understand why. Lives have been threatened. I would not be safe for one minute in Vegas.**

**If you want to make the biggest mistake of your firm's life you can try to invent something out of nothing and pursue this case. If you want to do the right thing, you can either settle or take this one on the chin. $5 million in sanctions and $250,000 in attorney fees would be a slap on the wrist for what your client's done to this point.**

**Federal agencies are looking at your clients right now, and sooner or later they might even look into your law firm. You have no idea what your firm is about to get into. This is a first amendment issue, and I see nothing on your Web-site that qualifies any of your attorneys for that kind of work.**

**I am the kind of meticulous writer who backs up everything with facts. That actually makes me a pretty damn decent pro-se attorney. If I don't know how to file something, I find a way. That's what innocent people do. I know the process now. For the last few months Xyience, your new client, has been acting guilty. Everything they've done has been designed to delay justice. fraud is fraud and lies are lies. You can't erase or rewrite the truth no matter how many of your firm's lawyers you put on this case.**

**You have no idea what this case has done to me and how hard I have worked to make the March 5th and 18th hearings happen. They will go forward, and if your firm stands in the way of me getting justice any attorney you attach to the case will be crushed in public by a pro-se amateur. I guarantee that, and if you look back at my reports you will note that I have a peculiar knack for predicting the future. You**

cannot delay the inevitable.

--
Rich Bergeron
Editor/Writer/Webmaster
www.unlimitedfightnews.com
www.fightnewsunlimited.com

from PEARSON, JON <JPEARSON@fclaw.com>
to Rich Bergeron <rich.bergeron@gmail.com>
date Thu, Feb 28, 2008 at 8:28 PM
subject Xyience Incorporated v. Bergeron
mailed-by fclaw.com

hide details Feb 28 [Ltr to Mr. Bergeron to 147 Old Country Road.pdf,Ltr to Mr. Bergeron to 43 Longhill Drive.pdf]

Reply

Mr. Bergeron:

Please find attached to this e-mail a demand letter demanding that you immediately withdraw your counterclaims against Xyience Incorporated, and instead file an appropriate proof of claim in the Bankruptcy Court.

Regards,

Jon T. Pearson
FENNEMORE CRAIG, P.C.
300 South Fourth Street
Suite 1400
Las Vegas, Nevada 89101
Direct: (702) 692-8015
Direct Fax: (702) 692-8099
Business Cell: (702) 569-6401

www.fennemorecraig.com

IRS CIRCULAR 230 DISCLOSURE: To ensure compliance with requirements imposed by the IRS, we inform you that, to the extent this communication (or any attachment) addresses any tax matter, it was not written to be (and may not be) relied upon to (i) avoid tax-related penalties under the Internal Revenue Code, or (ii) promote, market or recommend to another party any transaction or matter addressed herein (or in any such attachment). For additional information regarding this disclosure please visit our web site.

CONFIDENTIALITY NOTICE: The information contained in this message may be protected by the attorney-client privilege. If you believe that it has been sent to you in error, do not read it. Please immediately reply to the sender that you have received the message in error. Then delete it. Thank you.

2 attachments — Download all attachments

**Ltr to Mr. Bergeron to 147 Old Country Road.pdf 167K**
**View as HTML Download**

**Ltr to Mr. Bergeron to 43 Longhill Drive.pdf 166K View as HTML Download**

**FENNEMORE CRAIG, P.C.**
Suite 1400 Bank of America Plaza
300 South Fourth Street
Las Vegas, Nevada 89101
(702) 692-8000

**Jon T. Pearson**
Direct Phone: (702) 692-8015
Direct Fax: (702) 692-8075
jpearson@fclaw.com

**Law Offices**
Phoenix (602) 916-5000
Tucson (520) 879-6800
Nogales (520) 281-3480
Las Vegas (702) 692-8000
Denver (303) 291-3200

February 28, 2008

***Via Certified Mail Return Receipt Requested***
***Receipt # 7007 0710 0004 4140 4568***
***and Via E-Mail at rich.bergeron@gmail.com***

Mr. Richard Bergeron
147 Old Country Road
East Sandwich, MA 02537

Re: Xyience Incorporated v. Richard Bergeron
Case No. A544781, Department XXIII

Dear Mr. Bergeron:

As you are aware, this firm represents Xyience Incorporated ("Xyience"), and on January 18, 2008, Xyience filed a voluntary petition for chapter 11 relief in the United States Bankruptcy Court, District of Nevada, as Case No. BK-S-08-10474-MKN ("Bankruptcy Case"). On or about February 19, 2008, you filed an Answer and Counterclaim for Declamatory [sic] relief against Xyience in the above-referenced case, which has not yet been served on Xyience or this office. Your counterclaims assert pre-petition claims against Xyience which must be asserted in the form of a proof of claim in the Bankruptcy Case, not in the form of non-bankruptcy litigation. Furthermore, your counterclaims were filed in violation of the automatic stay of Section 362(a) of the Bankruptcy Code.

The automatic stay is self-executing and it became effective immediately upon the filing of the January 18, 2008 voluntary Chapter 11 petition filed by Xyience. The automatic stay prohibits you from commencing or continuing litigation of any pre-petition claim against Xyience, regardless of whether Xyience would suffer irreparable harm from said litigation. In fact, Courts have held that even a party who is required to file a compulsory counterclaim in litigation with a debtor in bankruptcy should first seek permission from the Bankruptcy Court to file that counterclaim. You have neither sought nor obtained permission to file a counterclaim against Xyience.

**FENNEMORE CRAIG, P.C.**

Richard Bergeron
February 28, 2008
Page 2

It is therefore indisputable that you violated the bankruptcy automatic stay when you filed your counterclaims against Xyience. As a result, Xyience hereby ***demands*** that you immediately withdraw those counterclaims and instead file an appropriate proof of claim in the Bankruptcy Case. If you do not immediately withdraw your counterclaims, Xyience will have no other alternative but to file a Motion for an order to show cause why you should not be held in contempt for your willful violation of the automatic stay. If Xyience is required to file such a motion, Xyience will seek an award of damages against you for your willful violation of Section 362(a) of the Bankruptcy Code, including attorneys fees and costs. Please voluntarily dismiss your counterclaims prior to March 7, 2008, or Xyience will have no alternative but to file such a motion.

Sincerely,

FENNEMORE CRAIG, P.C.

Jon T. Pearson

JTP.mlh

# EXHIBIT 56

from DAVIS, LAUREL <LDAVIS@fclaw.com>
to Rich Bergeron <rich.bergeron@gmail.com>
date Sat, Jul 19, 2008 at 2:38 PM
subject RE: Out of Office AutoReply: REPLIES TO OUTSTANDING MOTIONS
mailed-by fclaw.com

hide details Jul 19

Reply

Mr. Bergeron, I have forwarded both of your emails to counsel for Manchester and counsel for Zyen. As you know, Manchester purchased all of the Xyience assets in the April 2008 sale transaction.

As stated on the record in the last two hearings in which you participated, the liquidating trustee to be appointed under the plan is the real party in interest to resolve this and other pending litigation. There is therefore no present opportunity resolve this litigation, and pending appointment of the liquidating trustee, no action will be taken.

Finally, you act at your own risk. Your proposed course of action appears calculated to deliberately violate the Court's injunction entered against you. You are already the subject of an order to show cause regarding contempt filed by Zyen, this proposed course of action is likely to engender a further request for relief.

Laurel Davis

From: Rich Bergeron [mailto:rich.bergeron@gmail.com]
Sent: Fri 7/18/2008 10:55 PM
To: DAVIS, LAUREL
Subject: Re: Out of Office AutoReply: REPLIES TO OUTSTANDING MOTIONS

- Show quoted text -
Ms. Davis,

Having hearing no word from your firm about any possible settlement I am moving forward with publicizing my latest findings. You should be aware that a New Jersey attorney is preparing litigation against Manchester Consolidated officials for defrauding other people and ruining other prospective businesses with pump and dump type scams. I doubt they intend to honor their promises to Xyience. It seems your client will never straighten up and fly right. I realize you are only doing your job, but you should really take a hard look at who you're protecting and for what.

I have a syndicated radio show appearance regarding the story this weekend, and I am going to spend most of next week updating the site with new content and information on this case and Xyience's latest scam artists.

I apologize if I have offended you or seemed like I've taken your actions against me personally. If you were in my shoes, you would understand. If you knew what I know about your client you wouldn't be able to sleep at night. You might think you are protecting a little supplement company and helping it get back on its feet. In reality

you are supporting a vast array of criminal offenses being hidden behind this company's operation and bankruptcy. I am learning more and more about the main players at GCA who orchestrated the entire bankruptcy. These people are engaged in illegal activity up to and including international money laundering. You seem like a smart person, but defending these crooks is a waste of your time. I hope you come to your senses and figure out what's really going on here before you find yourself up to your neck in guilt by association.

www.fennemorecraig.com

IRS CIRCULAR 230 DISCLOSURE: To ensure compliance with requirements imposed by the IRS, we inform you that, to the extent this communication (or any attachment) addresses any tax matter, it was not written to be (and may not be) relied upon to (i) avoid tax-related penalties under the Internal Revenue Code, or (ii) promote, market or recommend to another party any transaction or matter addressed herein (or in any such attachment). For additional information regarding this disclosure please visit our web site.

CONFIDENTIALITY NOTICE: The information contained in this message may be protected by the attorney-client privilege. If you believe that it has been sent to you in error, do not read it. Please immediately reply to the sender that you have received the message in error. Then delete it. Thank you.

# EXHIBIT 57

**[Xyience Incorporated Letterhead]**

September 14, 2007

Dear Xyience Incorporated Stockholder:

We are writing to give you an update on the Company's financial condition, and to seek your approval of a significant debt financing and certain related matters.

**Update on Financial Condition and Potential Financing Activities**

The Company's liquidity and capital resources currently are severely limited. Additionally, the Company has significant obligations outstanding to vendors, lenders, and other creditors. Accordingly, without an immediate infusion of significant capital, as well as a major restructuring of the Company's existing obligations, the Company will not be able to continue in existence.

Throughout the last several months, management has routinely conferred with members of the Board of Directors and significant stockholders to keep them apprised of the Company's financial condition and to solicit their input on potential financing alternatives. In an effort to raise the additional capital required to continue the Company's operations, the Company has (1) solicited indications of interest from its existing stockholder base, and (2) met with approximately 5 potential sources of additional financing.

Candidly, the response to the Company's proposal to raise additional capital from the Company's existing stockholder base was disappointing. As you are aware, the Company recently solicited indications of interest from its existing stockholder base for a potential new round of equity financing. Based on the response to date, the amount the Company reasonably believes it could raise from existing stockholders within the necessary time periods is well short of the amounts required. Accordingly, the Company has concluded that an internal raise would not be a viable, short-term financing solution to raise the additional capital necessary to continue its operations.

The response from potential outside investors, including several venture capital firms and factoring companies, also has not been encouraging, especially given the current capital markets' environment. Although several of these sources have indicated a mild interest in investing in the Company, and one may still have an interest, only one has completed due diligence and is currently willing to commit to providing sufficient capital in the time period necessary for the Company to continue its operations.

**Proposed Funding**

The Company has negotiated a Convertible Senior Secured Note and certain related transaction documents (collectively, the "**Transaction Documents**") with an investment group organized through Fertitta Enterprises ("**F.E.**"), pursuant to which the Company would have access to an immediate infusion of capital (the "**Funding**"). F.E. is a local investment management group which manages investments for members of the Fertitta family and other high net worth individuals.

Under the terms of the Funding, the Company would receive access to up to $12 million dollars of capital, subject to the satisfaction or waiver of the conditions contained in the Transaction Documents. A summary of the material terms of the Funding is attached hereto as **Exhibit A**. Copies of the Transaction Documents are available upon request.

The Company believes that the Funding is attractive for a number of reasons, including, without limitation, the following:

- Provides the Company with immediate working capital for its near term operations

- Provides the Company with a strategic partner with the ability to potentially widen the Company's distribution channels

- Provides the Company with an extremely well-respected partner, which should improve the Company's reputation and could improve the Company's ability to raise additional capital

- Provides the Company with access to additional resources and relationships in the beverage industry

**Matters for Stockholder Approval**

The Board of Directors has approved the Funding as being advisable and in the best interests of the Company and its stockholders, and has directed that the Funding be submitted to the stockholders for approval. **PURSUANT TO THE TERMS OF THE TRANSACTION DOCUMENTS, THE FUNDING WILL NOT CLOSE, AND THE COMPANY WILL NOT BE ENTITLED TO BORROW ANY MONEY, UNLESS THE FUNDING IS APPROVED BY 70% OF THE VOTING SHARES OF THE COMPANY OR THE COMPANY OBTAINS A WAIVER OF THIS REQUIREMENT.**

The Company seeks your approval to the Funding, as well as an amendment to the Company's Articles of Incorporation in order to increase the Company's authorized shares of common stock from 90 million to 200 million. Attached as **Exhibit B** you will find an Action by Written Consent for this purpose (the "**Consent**").

Please review the Consent, as well as the summary of the Funding very carefully. In doing so, you should also carefully consider the following information:

1. **Warrant Coverage**. As part of the Funding, the Company will issue to the lenders a warrant to purchase 10% of the Company's capital stock, on a fully diluted basis measured at the time of exercise, at a per share exercise price of $0.01 per share. The number of shares purchasable under this warrant will be increased by (A) an additional 10% of the Company's capital stock, on a fully diluted basis measured at the time of exercise, if certain representations and warranties set forth in the Transaction Documents prove to be inaccurate when made, and (B) an additional 40% of the Company's capital stock, on a fully diluted basis measured at the time of exercise, if the Company is unable to timely meet its obligations to certain material creditors, vendors, or lenders (each, an "**Additional Dilution Event**"). Thus, if both of those events occur, the lenders would be entitled to purchase 60% of the Company's capital stock on a fully diluted basis measured at the time of exercise, for a nominal purchase price, which would materially dilute your interest in the Company, and the lenders would have control over the Company, including, without limitation, the ability to elect its Board of Directors. The warrant also contains customary registration rights, anti-dilution rights, and other customary provisions.

2. **Equity Compensation to Adam Frank and Kirk Sanford**. The Board of Directors has approved an option grant to Adam Frank and Kirk Sanford, members of the Company's Board of Directors and management team, which allows each of Mr. Frank and Mr. Sanford to purchase 4.2 million shares of the Company's common stock at an exercise price equal to $2.50 per share (the "**Options**"). Neither Mr. Frank nor Mr. Sanford receive any cash compensation from the Company.

The Options are subject to the following vesting schedule:

- 25% percent of the Options will vest in equal monthly installments beginning on September 30, 2007 and ending on August 31, 2008 (the "**Vesting Period**").

- 37.5% of the Options will vest if the Company achieves $21.0 million in revenues in any 3 consecutive monthly period during the Vesting Period.

- 100% of the Options will vest on a change of control of the Company during the Vesting Period or the 6 month period thereafter.

The Options are contingent on the completion of the Funding (i.e., if the Funding does not close, the Options will not be granted). In addition, each of Mr. Frank and Mr. Sanford have agreed to forfeit the Options if an Additional Dilution Event occurs. Thus, by voting to approve the Funding you will, in essence, be voting to approve the Options described above, which, if vested and exercised, will materially dilute your percentage interest in the Company.

27

28

**Instructions**

If the Consent meets with your approval, please:

- Complete and sign the signature page of the Consent attached as **Exhibit B**; and
- Deliver the signature page to the Company by one of the following means:
  - By fax: Fax the signature page to the attention of the Company's Chief Financial Officer, Michael Levy, at 702.439.5495; or
  - By mail: Mail the signature page to the attention of the Company's Chief Financial Officer, Michael Levy at Xyience Incorporated, 10650 West Charleston Boulevard, Suite 110, Las Vegas, Nevada 89135; or
  - By PDF: PDF the signature page and email it to the Company's Chief Financial Officer, Michael Levy at mlevy@xyience.com

In order to ensure that the Funding can be completed in time to make available to the Company the funds needed to continue its operations, **PLEASE DELIVER THE CONSENT NO LATER THAN SEPTEMBER 18, 2007.**

If you have any questions regarding the foregoing, please contact Michael Levy, the Company's Chief Financial Officer, at 702.430.5407. We also urge you to contact Keith Sutton, of the Company's legal counsel, Eisner & Frank, at 310.855.3200.

EXHIBIT A

SUMMARY OF MATERIAL TERMS OF FUNDING TRANSACTION

The following sets forth a brief summary of certain of the material terms of the Transaction Documents and is qualified in its entirety by the Transaction Documents. Stockholders are urged to request a copy of the Transaction Documents and to read the Transaction Documents in their entirety, as those documents, and not this summary, set forth the terms of the Funding.

| | |
|---|---|
| **Commitment Amount:** | $12 million |
| **Interest:** | 15% per annum |
| **Commitment Fee:** | 2% of the Commitment Amount per annum, payable quarterly |
| **Maturity Date:** | 1 year, subject to extension if certain debt covenant ratios are satisfied |
| **Optional Conversion:** | The lenders have a right to convert all obligations under the Note into common stock upon the consummation of an equity financing in which the Company raises an amount equal to the outstanding principal. The conversion price is equal to the amount per share paid by the investors in such equity financing. |
| **Security:** | Senior secured lien on all of the Company's assets |
| **Warrant Coverage:** | 10% of the fully diluted capitalization of the Company on a rolling basis, which is increased by an additional (1) 10% of the fully diluted capitalization of the Company, on a rolling basis, if certain representations and warranties prove to be inaccurate when made, and (2) 40% of the fully diluted capitalization of the Company, on a rolling basis, if the Company is unable to timely meet its obligations to certain material creditors, vendors, or lenders. The number of shares is capped upon the occurrence of certain events. |
| **Board and Observer Rights:** | Lenders' representative to be appointed to Board. Lenders to have a Board observer. |
| **Right to Participate in Future Offerings:** | Lenders have a right of first refusal to purchase up to 50% of all future securities offerings of the Company. |

EXHIBIT B
ACTION BY WRITTEN CONSENT

**ACTION BY WRITTEN CONSENT**
**OF**
**HOLDERS OF A MAJORITY OF THE VOTING STOCK**
**OF**
**XYIENCE INCORPORATED**
**a Nevada corporation**

September __, 2007

The undersigned stockholders (the "**Stockholders**"), holding a majority of the outstanding shares of voting stock of Xyience Incorporated, a Nevada corporation (the "**Corporation**"), acting pursuant to the authorization of Section 78.320 of the Nevada Revised Statutes, hereby take the following actions by written consent in lieu of meeting and direct that this written consent be filed by the secretary of the Corporation with the minutes of the meetings of the stockholders.

**<u>Approval of Debt Financing</u>**

WHEREAS, the Board of Directors of the Corporation (the "**Board**") has approved the entering into by the Corporation of that certain Convertible Senior Secured Note (the "**Note**"), the Security Agreement, the Warrant, and the other documents and instruments contemplated thereby (collectively, the "**Transaction Documents**"), in each case, with Fertitta Enterprises, Inc. or one or more affiliates thereof (collectively the "**Lender**"), pursuant to which the Lender would loan to the Corporation the amounts, and on the terms and conditions, set forth in the Note (the "**Financing**").

WHEREAS, copies of the Transaction Documents were made available to the Stockholders pursuant to a letter from the Corporation dated September 14, 2007.

WHEREAS, the Stockholders desire to approve the entering into of the Financing and the performance by the Corporation of its obligations thereunder.

RESOLVED, that the Financing and entering into of the Transaction Documents and the performance by the Corporation of its obligations thereunder, are hereby ratified and approved in all respects.

**Amendment to Articles of Incorporation**

WHEREAS, the Board has approved an amendment to the Corporation's Articles of Incorporation pursuant to which the Corporation's authorized shares of stock would be increased to 200,000,000 (the "**Increase**").

NOW THEREFORE BE IT RESOLVED, that the Increase is hereby approved, ratified and affirmed in all respects.

[REMAINDER OF PAGE LEFT BLANK – SIGNATURE PAGE FOLLOWS]

**[SIGNATURE PAGE TO ACTION BY WRITTEN CONSENT APPROVING FUNDING TRANSACTION AND INCREASE IN AUTHORIZED STOCK]**

This Written Consent is executed as of the date first written above, and may be executed in counterparts and delivered by facsimile or other electronic means, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument.

Name of Stockholder: ______________________________

Signature: ____________________

Name of person signing on behalf of entity, if applicable: ______________

Title of person signing on behalf of entity, if applicable: ______________

Number of Shares Owned by Stockholder: __________________

__________________________ Total Shares ____

Date: __________________

From: Adam Frank [adam@adam-frank.com]
Sent: Thursday, October 04, 2007 1:37 PM
To: Adam Frank
Subject: XYIENCE - Fertitta Transaction Completed!!!

Importance: High

Dear XYIENCE Team,

We are very pleased to finally to tell you that we have closed our transaction with Fertitta Enterprises and that funding has been transmitted.

As you all know, getting this deal done has not been an easy process. In the end, everyone at XYIENCE pulled together in support of this deal and that is what matters most.

This funding is very significant for us as it will allow us to enter a new chapter of the Company's history with a committed strategic partner.

Thanks to everyone for your support through this transaction. XYIENCE has a unique team of talented people that have incredible passion, enthusiasm, and commitment to success.

We feel lucky to be part of such a great team and look forward to spectacular results.

Sincerely,

Kirk and Adam