**Entered on Docket**
**January 30, 2009**

**Hon. Mike K. Nakagawa**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

* * * * * *

| | |
|---|---|
| In re:<br><br>XYIENCE INCORPORATED, a Nevada corporation,<br>Debtor. | BK-S-08-10474-MKN<br><br>Chapter 11 |
| XYIENCE INCORPORATED, a Nevada corporation,<br>Plaintiff,<br>v.<br>RICHARD BERGERON, an individual,<br>Defendant. | Adversary No. 08-1082<br><br>Date: January 7, 2009<br>Time: 9:30 a.m. |
| RICHARD BERGERON, an individual,<br>Counterclaimant,<br>v.<br>XYIENCE INCORPORATED, a Nevada corporation; FERTITTA ENTERPRISES, INC., a Nevada corporation,<br>Counterdefendants. | |

**MEMORANDUM DECISION ON MOTION OF COUNTERDEFENDANT FERTITTA ENTERPRISES, INC. TO DISMISS AMENDED COUNTERCLAIM OF DEFENDANT/COUNTERCLAIMANT RICHARD BERGERON**

Counterdefendant Fertitta Enterprises, Inc.'s motion to dismiss was heard on January 7, 2009. The appearance of counsel and the parties were noted on the record. The matter was

taken under submission after presentation of oral arguments.

**BACKGROUND**[1]

On July 18, 2007, plaintiff Xyience Incorporated ("Xyience"), a Nevada corporation, commenced an action against defendant Richard Bergeron in the Eighth Judicial District Court for Clark County, Nevada ("State Court"), denominated Case No. A544781 ("State Court Action"). The complaint is framed as three separate causes of action, alleging defamation, tortuous (sic) interference with prospective economic advantage, and intentional interference with contract. No other parties were named in the complaint.

In the State Court Action, Xyience sought a preliminary injunction against Mr. Bergeron to enjoin him from placing and retaining on his internet website certain allegedly defamatory remarks concerning Xyience. Mr. Bergeron filed written opposition to the requested preliminary injunction.

The State Court ultimately issued an amended preliminary injunction order requiring Mr. Bergeron to remove false information about Xyience from his website and enjoining him from posting any representations intended to create an impression that Xyience is the subject of an investigation by the Securities and Exchange Commission. The preliminary injunction order further directed Mr. Bergeron to remove all articles from his website claiming that Xyience is defrauding investors or is engaged in a conspiracy to defraud investors.

After the preliminary injunction was entered, an involuntary Chapter 11 proceeding was commenced against Xyience on January 3, 2008, denominated Case No. BK-S-08-10049. Thereafter, Xyience commenced a voluntary Chapter 11 proceeding on January 22, 2008, denominated Case No. BK-S-08-10474. On January 31, 2008, the involuntary proceeding was dismissed by stipulation with the petitioning creditors, and the voluntary Chapter 11 proceeding went forward with Xyience as the debtor-in-possession.

---

[1] In the text and footnotes of this Memorandum Decision, all references to "Section" shall be to the provisions of the Bankruptcy Code appearing in Title 11 of the United States Code, unless otherwise indicated. All references to "FRCP" shall be to the Federal Rules of Civil Procedure. All references to "Rule" shall be to the Federal Rules of Bankruptcy Procedure, unless otherwise indicated.

While Xyience was in bankruptcy, Mr. Bergeron, appearing *in propria persona*, filed an answer in the State Court Action on February 19, 2008, that included a "Counterclaim for Declamatory (sic) Relief." ("Counterclaim") The Counterclaim includes claims against Xyience, as well as against Fertitta Enterprises, Inc. ("Fertitta"), a Nevada corporation.[2] That pleading is styled as four separate "counterclaims" alleging that Mr. Bergeron was defamed in pleadings filed by Xyience, that his rights under the First Amendment to the United States Constitution had been violated, that tortious interference with prospective economic advantage has occurred, and that he has been subjected to "pain and suffering."

After the Counterclaim was filed, Xyience removed the State Court Action to the bankruptcy court pursuant to a notice of removal filed under 28 U.S.C. section 1452(a). The State Court Action was assigned Adversary Proceeding No. 08-1082. Thereafter, Xyience filed a motion to dismiss the causes of action alleged in the Counterclaim. Thereafter, Mr. Bergeron filed an additional "First Amendment Brief".

On October 14, 2008, a memorandum decision was entered granting Xyience's motion to dismiss. An order was entered granting Xyience's motion to dismiss each of the claims set forth in the Counterclaim, but which also granted Mr. Bergeron leave to amend with respect to his claim for defamation. On November 3, 2008, an amended counterclaim ("Amended Counterclaim") was filed.

On November 24, 2008, Fertitta filed the instant motion seeking to dismiss Mr. Bergeron's amended counterclaim ("Fertitta Second Dismissal Motion")[3] under Federal Rule of Civil Procedure 12(b)(6). Mr. Bergeron filed written opposition ("Opposition") to which Fertitta filed a written reply brief.

On November 25, 2008, Mr. Bergeron filed a "Motion for an Immediate Show Cause

---

[2] As against Fertitta, Mr. Bergeron's pleading constitutes a third-party claim under FRCP 14, rather than a counterclaim under FRCP 13, since Fertitta was not an original party to the action commenced by Xyience.

[3] Citations to the written arguments submitted by parties will refer to the page number and then line number, separated by a colon, e.g., 4:10-15 would refer to page 4, line 10 through line 15 of the document.

Hearing to Strike to Strike the Perjured Declarations of Adam Frank (Dkt. # 3, Exh.3) and Jamie Cogburn (Dkt. #3, Exh. 8); and Motion to Vacate the Clark County District Court's Modified Preliminary Injunction." Xyience filed written opposition to both requests and a limited opposition was filed by Fertitta.

A hearing was conducted on Fertitta's present dismissal motion on January 7, 2009, along with Mr. Bergeron's requests. After oral arguments were presented, all of the matters were taken under submission.[4]

**APPLICABLE LEGAL STANDARDS**

Under FRCP 12(b)(6), incorporated by reference under Rule 7012, an action may be dismissed if it "fails to state a claim for which relief may be granted." The allegations of the complaint (or counterclaim) must be construed in the light most favorable to the plaintiff and all well-pleaded factual allegations are accepted as true. See Cahill v. Liberty Mutual Insurance Co., 80 F.3d 336. 337-38 (9th Cir. 1996). While the allegations of a pro se complaint are held to a less stringent standard than formal pleadings drafted by an attorney, sweeping conclusory allegations will not suffice. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988). General or vague allegations are not enough to withstand a motion to dismiss. See Funderburk v. McDaniel, 2007 WL 4191963 at *2 (D. Nev. November 21, 2007).

In Bell Atlantic Corporation v. Twombly, 550 U.S. 544,127 S.Ct. 1955 (2007), the Court recently observed as follows:

> While a complaint...does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds for his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of elements of a cause of action will not do...Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

127 S.Ct. at 1965. To avoid being dismissed for failure to state a claim, the complaint must set forth "...enough facts to state a claim for relief that is plausible on its face..." 127 S.Ct. at 1974. See, e.g., In re Friedman's Inc., 385 B.R. 381, 410 (S.D.Ga. 2008).

---

[4] Mr. Bergeron's requests are the subject of a separate memorandum decision and order.

Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by an amendment. See Kendall v. Visa U.S.A., Inc., 518 F.3d 1042, 1051 (9th Cir. 2008), citing Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).

**DISCUSSION**

The Amended Counterclaim seeks an award of punitive damages against Xyience and Fertitta in the amount of $10 million, interest at the legal rate, attorney's fees to be determined, $5 million in additional sanctions apparently for the benefit of third parties, and other relief as may be appropriate.

Paragraphs 36, 37 and 38 of the Amended Counterclaim allege that Xyience made certain defamatory statements or representations about Mr. Bergeron to third parties. With respect to Fertitta, only Paragraphs 39 and 40 of the Amended Counterclaim refer to any defamatory statements made, alleging as follows:

> 39. The September 15-21 issue of The Deal Magazine (http://www.thedeal.com/newsweekly/2008/09/rumble/print/) includes the following quote from Attorney Gregory Garman: "The suit is nonsense. Bergeron is neither a creditor or had any relationship with Xyience. HE BELIEVES THAT THE BEST WAY TO DO INVESTIGATIVE JOURNALISM IS TO SUE THE COMPANY YOU ARE TRYING TO INVESTIGATE."
>
> 40. Mr. Garman cannot state a fact he cannot possibly know since it is Bergeron's sole discretion as far as what he believes.

Amended Complaint, ¶¶ 39 and 40.[5]

Fertitta seeks to dismiss the Amended Counterclaim on any one of three possible grounds: (1) that it fails to state the essential elements of a defamation claim under applicable

[5] A copy of the entire article quoted in Paragraph 39 of the Amended Counterclaim is attached as Exhibit "1" to the Declaration of Matthew C. Zirzow, Esq., in Support of Counterdefendant, Fertitta Enterprises, Inc., to Dismiss Amended Counterclaim of Defendant/Counterclaimant , Richard Bergeron. The article may be considered under FRCP 12(b)(6) since the Amended Counterclaim necessarily relies on the document for publication of the allegedly defamatory statements on which Mr. Bergeron's claim is based and its authenticity is not contested. See Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001). The court notes that the language that appears in capitalized form in Paragraph 39 of the Amended Complaint are not capitalized, bolded, italicized, underscored, or otherwise emphasized in the article.

law, (2) that the alleged statement was not defamatory as a matter of law, and (3) that Fertitta cannot be held liable for the intentional tort of its agent. If the motion is granted, Fertitta also requests that further leave to amend not be allowed. Each of the grounds for dismissal are discussed below.

**I. The Essential Elements of a Defamation Claim.**

A defamation claim requires the plaintiff to prove that the defendant published or caused to be published a false statement of fact. See Blanck v. Hager, 360 F.Supp.2d 1137, 1159 (D.Nev. 2005). To state a claim for defamation, the plaintiff must allege (1) a false and defamatory statement made by the defendant, (2) the unprivileged publication of the statement to a third person, (3) fault of the defendant amounting to at least negligence, and (4) actual or presumed damages sustained by the plaintiff. Id. at 1159, citing Pegasus v. Reno Newspapers, Inc., 118 Nev. 706, 718, 57 P.3d 82, 90 (Nev. 2002). See also Jones v. Taibbi, 400 Mass. 786, 792-797, 512 N.E.2d 260, 264-267 (Mass. 1987).

Other than Paragraphs 39 and 40, the Amended Counterclaim makes no specific allegations with respect to Fertitta.[6] Paragraphs 41 through 47 refer to the plaintiff in the case, but the plaintiff in the adversary proceeding is Xyience rather than Fertitta. Even if Paragraphs 39 and 40 were sufficient as to the first element for a defamation claim, none of the remaining elements are pled.[7]

With respect to Fertitta, the Amended Counterclaim therefore does not allege the essential elements of actionable defamation and fails to state a claim for which relief may be granted.

**II. A False or Defamatory Statement.**

---

[6] Oddly, Paragraph 40 indicates only that Garman was not in a position to know what Mr. Bergeron believes, but does not allege that the statements appearing in Paragraph 39 are untrue.

[7] The requirement of an "unprivileged" publication may be at issue in any event since a common law limited privilege of reply is recognized in Nevada. See State v. Eighth Judicial District Court ex rel. County of Clark, 118 Nev. 140, 42 P.3d 233 (Nev. 2002).

It is well-established that statements of opinion are not defamatory as a matter of law. See Gertz v. Robert Welch, Inc., 418 U.S. 323, 339-40 (1974). Likewise, statements including exaggerations or hyperbole are not defamatory if a reasonable person would interpret the statement as "mere rhetorical hyperbole". See Wellman v. Fox, 108 Nev. 83, 88, 825 P.2d 208, 211 (Nev. 1992), citing Letter Carriers v. Austin, 418 U.S. 264, 283 (1974). Of course, true statements are not defamatory at all and neither are statements that are "substantially true". See Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 517 (1991). In determining whether a statement is reasonably capable of having a defamatory meaning, see Knievel v. ESPN, 393 F.3d 1068, 1073-74 (9th Cir. 2005), the statement must be judged in the context in which it is made, not in isolation. Id. at 1074.[8] See also Cole v. Westinghouse Broadcasting Company, Inc., 386 Mass. 303, 309, 435 N.E.2d 1021, 1025, cert. denied, 459 U.S. 1037 (1982).

Paragraph 39 identifies the allegedly defamatory statements made by Fertitta's attorney, Gregory Garman ("Garman"). The statements attributable to Garman can be broken down into the following: (a) that Mr. Bergeron's "[law]suit is nonsense", (b) that Mr. Bergeron is not a creditor of Xyience, (c) that Mr. Bergeron did not have any relationship with Xyience, and (d) that Mr. Bergeron believes that suing a company is the best way to do investigative journalism about the company.

The lawsuit referred to in the first statement is identified in Paragraph 27 of the Amended Counterclaim as being the State Court Action that was subsequently removed to bankruptcy court and in which Mr. Bergeron has filed his Amended Counterclaim. Garman's statement that the "suit is nonsense" clearly refers to the counterclaim that had been filed by Mr. Bergeron. His characterization of the original Counterclaim as being "nonsense" is nothing more than a non-

---

[8] The dissenting opinion in Knievel v. ESPN employed the expanded contextual analysis in Underwager v. Channel 9 Australia, 69 F.3d 361, 366 (9th Cir. 1995): "First, we look at the statement in its broad context, which includes the general tenor of the work, the subject of the statements, the setting, and the format of the work. Next we turn to the specific context and content of the statements, analyzing the extent of figurative or hyperbolic language used and the reasonable expectations of the audience in that particular situation. Finally, we inquire whether the statement itself is sufficiently factual to be susceptible of being proved true or false." 393 F.3d at 1080 (Bea, dissenting).

actionable statement of his opinion, compare Camer v. Seattle Post-Intelligencer, 723 P.2d 1195 (Wash.App. 1986)(dismissal of libel complaint affirmed on appeal)[9], given at a time when Fertitta's first motion to dismiss was under submission before this court. That the court subsequently issued its order granting the motion does not change the character of the statement as being one of opinion rather than of fact.

As to the second and third statements in Paragraph 39, Mr. Bergeron does not dispute that prior to the instant litigation he was not a creditor of Xyience and had no relationship to Xyience. See Fertitta Second Dismissal Motion at 15 n.11.[10] Because Garman's second and third statements set forth in Paragraph 39 are true, they are not defamatory as a matter of law and provide no basis for a claim. Moreover, both statements explain the basis for the opinion Garman expressed in the first statement.

Preceded by the first, second and third statements, the court concludes that Garman's fourth statement is either a further explanation for his opinion that the suit is "nonsense" or a separate statement than only can be characterized as an expression of his opinion. In this case, Mr. Bergeron initiated suit against Fertitta by way of a third-party claim since the State Court Action was commenced by Xyience. While his counterclaim against Xyience arguably was

---

[9] In Camer, the court observed: "One cannot determine the truth or falsity of statements such as '[t]he cases have become something of a joke' or '[w]hat these people do is hammer us with absolute nonsense you have to respond to'....We note that similar, if not more disparaging, statements in other contexts have been upheld as constitutionally protected opinion." 723 P.2d at 1202. See also Paterson v. Little, Brown & Co., 502 F.Supp.2d 1124, 1133 (W.D.Wash. 2007).

[10] As previously indicated at note 5, supra, the Amended Counterclaim does not allege that any of the statements appearing in Paragraph 39 are untrue. In his written opposition, the only statement in Paragraph 39 that Mr. Bergeron denies as being true is the fourth statement. See Opposition at 4:19-24. This is consistent with previous representations in this adversary proceeding. See Counterclaimant's Opposition to Xyience, Incorporated's Motion to Dismiss at 4:21 ("Bergeron is not now and never was a creditor in the bankruptcy case.") and 5:19-20 ("Bergeron is not a creditor in this bankruptcy and is also not named anywhere as a creditor in the bankruptcy documents."). See also Amended Counterclaim at ¶ 29 ("Bergeron also is not, and never has been, in business with a competitor of Xyience.") and ¶ 30 ("Bergeron is not now and never has been an employee of Xyience.").

compulsory under FRCP 13(a)[11], Mr. Bergeron's decision to sue Fertitta in this proceeding was his and his alone. Thus, it is true that Mr. Bergeron initiated a suit against the very entity that he apparently is trying to investigate.

Garman's statement that Mr. Bergeron believes such a step is the best way to conduct investigative journalism must be viewed in the context in which it actually appeared in the article. Contrary to the capitalized form in which it is reproduced in Paragraph 39 of the Amended Counterclaim, Garman's fourth statement is not highlighted in the article in any way and it is preceded by a variety of information. It is well-established that a "...statement of opinion based on fully disclosed facts can be punished only if the stated facts are themselves false and demeaning." Standing Committee on Discipline v.Yagman, 55 F.3d 1430, 1439 (9th Cir. 1995). See Driscoll v. Board of Trustees of Milton Academy, 70 Mass.App.Ct. 285, 296, 873 N.E.2d 1177, 1187 (Mass.App. 2007). The reason for this conclusion is that when "...the facts underlying a statement of opinion are disclosed, readers will understand they are getting the author's interpretation of the facts presented; they are therefore unlikely to construe the statement as insinuating the existence of additional, undisclosed facts." Id. at 1439, citing Phantom Touring, Inc. v. Affiliated Publications, 953 F.2d 724, 730 (1st Cir. 1992) and Lewis v. Time, Inc., 710 F.2d 549, 555 (9th Cir. 1983).[12]

In this instance, the article in which Garman's statements appear is entitled "Rumble" and generally depicts a morass of allegations, disputes, claims and contentions surrounding

---

[11] Under Rule 7013, however, a counterclaim is not compulsory unless it arises after the commencement of the bankruptcy case. Since the Xyience bankruptcy proceeding was commenced on January 3, 2008, any compulsory counterclaims against Xyience would have to have arisen after that date. Except for statements attributed to Xyience allegedly made in February 2008, see Amended Counterclaim at ¶ 38, all of the allegedly defamatory statements attributed to Xyience apparently were made prior to commencement of the bankruptcy case and would not have been subject to the compulsory counterclaim requirement of FRCP 13(a).

[12] The panel in Standing Committee on Discipline v. Yagman also quoted from comment "c" of the Restatement (Second) of Torts, § 566 (1977), which provides: "A simple expression of opinion based on disclosed ...nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is." 55 F.3d at 1439.

Xyience and the litigation spawned from its activities. The author observes that "...fisticuffs, and worse, are far from over. Litigation surrounds the former maker of the power drink known as Xenergy and the seemingly endless cast of characters involved in its creation, its day-to-day management and its descent into Chapter 11." The author then recites a variety of alleged facts that are sprinkled through the bankruptcy documents and in the lawsuit pleadings, and also includes excerpts of interviews of counsel for various parties.[13] The author concludes with the comment: "Surely the ring can be an unforgiving place. Xyience shareholders and unsecured creditors hope the courts aren't, too." It is within this context that Garman's statements in Paragraph 39 of the Amended Counterclaim must be considered.

With respect to the litigation between Mr. Bergeron and Fertitta, the readers of the publication were informed in the immediately preceding paragraph of the article that Mr. Bergeron is a "blogger" who initially was sued by Xyience.[14] They further were informed in the same preceding paragraph that Mr. Bergeron countersued not only Xyience but also Fertitta, seeking $15 million dollars in damages for alleged slander and defamation by Xyience employees and associates. Readers additionally were informed that Mr. Bergeron allegedly has

---

[13] While an attorney's comments to the media about pending litigation are not protected by a litigation privilege, they still may be protected as statements of opinion. See, e.g., Rothman v. Jackson, 49 Cal.App.4th 1134, 1148-49, 57 Cal.Rptr.2d 284, 294 (2d Dist. 1996).

[14] The article from which Paragraph 39 is quoted, also states: "By the time Zyen provided the money, Xyience was embroiled in a lawsuit against Bergeron, a self-employed journalist and blogger, over posts he wrote about it. In the lawsuit, filed in the Eighth Judicial District Court in Clark County, Nev., on July 18, 2007 (it became part of the bankruptcy proceedings on March 20), Xyience seeks $25 million in damages for defamation, tortious interference with prospective economic advantage, intentional interference with contract and injunctive relief." Later in the article, immediately prior to Garman's statements quoted in Paragraph 39, the author states: "Then there is the Bergeron situation. The blogger eventually countersued Xyience and Fertitta Enterprises on Feb.12, seeking $15 million in damages because he claims he was slandered and defamed in bogus blogs connected directly to Xyience employees and associates through IP addresses. The blogs call Bergeron a homosexual and characterized his writings as a personal vendetta against Xyience, court papers say. Bergeron says in court documents that he has had to borrow money from a cousin because of extreme mental anguish and an inability to work, since he's needed to 'rigorously defend the charges against him [and] restore his good name.'"

had to borrow money from a relative because of his "extreme mental anguish" and "inability to work" apparently brought on by a need to defend untrue statements made about him. Readers of the article were informed by Garman's second statement in Paragraph 39 that Mr. Bergeron is not a creditor of Xyience. The readers were informed in the third statement that Mr. Bergeron had no prior relationship with Xyience.

The tenor of the article is that the various litigants are locked in mortal combat, i.e., a figurative "rumble", involving allegations and counter-allegations, most of which have never been adjudicated. Because Mr. Bergeron had, in fact, sued the very party he was investigating at the time Garman's statement was made, the entire context of the article as well as the context of the statement itself, evokes an expression of opinion. While not figurative, Garman's statement as to Mr. Bergeron's belief is at most rhetorical hyperbole. Combined with Garman's first statement that Mr. Bergeron's suit is "nonsense", the court concludes that no reader would reasonably construe Garman's fourth statement as being factual or implying the existence of undisclosed facts.

Mr. Bergeron disagrees with this characterization, arguing that the fourth statement in Paragraph 39 could be considered an opinion only if Garman had qualified the statement by preceding it with "I think" or "In my analysis of the case." See Opposition at 3:10-11. Mr. Bergeron argues that the statement was not "figurative or hyperbolic" in nature, but was "definitively false on its face since Garman has never conversed with Bergeron and is clearly in no position to know what Bergeron believes." Id. at 3:14-16.[15]

The presence or absence of prefatory language such as "In my opinion" or "I think" does not control whether an expression is an actionable statement of fact or a protected statement of opinion. See Milkovich v. Lorain Journal Co., 497 U.S. 1, 18-19 (1990). Rather, the question is

---

[15] A defendant's expression of opinion about what the plaintiff believes or thinks is still a non-actionable statement of opinion if it does not imply a false factual assertion. See, e.g., Norse v. Henry Holt and Company, 991 F.2d 563, 567 (9th Cir. 1993) (defendant's statement that plaintiff "thought of himself as 'dark-horse Norse, ignored and unpublished' was not reasonably capable of a meaning that plaintiff had not been published; statement of plaintiff's perception about himself was actionable if it implies a false factual assertion).

whether a statement taken in its context is reasonably capable of a defamatory meaning. See Knievel v. ESPN, supra. As set forth above, the court concludes that the statement in context is an expression of opinion that does not imply the existence of undisclosed facts. Even if the court agreed with Mr. Bergeron that the fourth statement is not simply figurative language, compare Standing Committee on Discipline v.Yagman, supra, 55 F.3d at 1438, the statement still constitutes an expression of Garman's opinion in the relevant context.

Based on the foregoing, the court concludes that the language appearing in Paragraph 39 of the Amended Counterclaim constitutes a protected expression of opinion by Garman that is not actionable.

**III. Intentional Torts of an Agent.**

Defamation is a tort that can result from either intentional or negligent conduct. See generally R. Smolla, Law of Defamation 2d, § 3:4 (November 2008).[16] Historically, intentional torts of an employee have not served as a basis for vicarious liability of any employer. See Prell Hotel Corporation v. Antonacci, 469 P.2d 399, 400 (Nev. 1970). That no longer is the case. Under Section 41.745 of the Nevada Revised Statutes, the limitation on an employer's liability for intentional conduct of an employee requires a determination (1) that the conduct was a "truly independent venture" of the employee, (2) that the conduct was not committed in the course of the very task assigned to the employee, and (3) that the conduct was not reasonably foreseeable under the circumstances considering the nature and scope of employment.[17] These elements are in the conjunctive and the absence of any one of them precludes a determination that the liability limitation applies.

Fertitta argues that if Garman's statements in Paragraph 39 are defamatory, then the Amended Counterclaim alleges an intentional tort outside the scope of Garman's employment by

---

[16] As previously set forth at 6, supra, the third element of a defamation claim requires proof of defendant's fault amounting to at least negligence.

[17] Section 41.745 was enacted by the Nevada legislature in 1997, after the Nevada Supreme Court's decision in Rockwell v. Sun Harbor Budget Suites, 925 P.2d 1175, 1179 (Nev. 1996), cited by Fertitta. See Fertitta Second Dismissal Motion at 15:6-7.

Fertitta. See Fertitta Second Dismissal Motion at 15:4-12. Under Section 41.745, however, even an intentional tort may be the basis of employer liability if it foreseeably might occur as the employee is carrying out the task assigned by the employer. Indeed, the Rockwell v. Sun Harbor Budget Suites decision, cited by Fertitta, involved an intentional tort committed by an employee for which the employer's liability based on respondeat superior could be found. 925 P.2d at 1180-81.

In this particular case, the court cannot conclude that Garman's comments to the author of the magazine article as the legal representative of Fertitta was unforeseeable. It is hardly beyond purview for counsel to be contacted by a journalist for comment on pending litigation, especially in situations where the litigation itself concerns events that are highly publicized. While an employer arguably might not expect an employee to intentionally injure another, defamation is not strictly an intentional tort even when it is inartfully pleaded.

Under these circumstances, the court rejects Fertitta's additional argument that Garman's conduct, if actionable, would constitute an intentional tort for which it may not be held liable.[18] Because Fertitta's motion is correctly based on its two other grounds, however, the court's rejection of this ground is not fatal to Fertitta's request for dismissal.

**CONCLUSION**

For the reasons set forth above, the Amended Counterclaim must be dismissed with prejudice as to Fertitta Enterprises, Inc., for failure to a state claim for which relief may be granted. A separate order has been entered concurrently herewith.

Copies noticed through ECF to:

---

[18] The Amended Counterclaim does include the words "vicarious liability" with respect to Fertitta, see Amended Counterclaim at 10:2, but does not use the term in connection with the statements of Garman. Although the Amended Counterclaim contains no allegation that Garman was acting within the scope of his agency with Fertitta, or that Fertitta is liable under the doctrine of respondeat superior, Mr. Bergeron asserts in his written opposition that "vicarious liability applies" and that "The statement made by Garman was given while Garman was a direct legal employee of Fertitta Enterprises and was in a position to know that his statement was not true." Opposition at 2:8-10.

LAUREL E. DAVIS ldavis@fclaw.com, mhurtado@fclaw.com;lgolonka@fclaw.com

JON PEARSON jpearson@fclaw.com, mhurtado@fclaw.com

MATTHEW C. ZIRZOW bankruptcynotices@gordonsilver.com, bknotices@gordonsilver.com

MATTHEW E. MCCLINTOCK mmcclintock@bellboyd.com, sthoma@bellboyd.com

GREGORY E GARMAN bankruptcynotices@gordonsilver.com, bknotices@gordonsilver.com

and sent to BNC to:

RICH BERGERON
147 OLD COUNTY ROAD
EAST SANDWICH, MA 02537

# # #