E-Filed On 2-10-09

GORDON SILVER
GREGORY E. GARMAN, ESQ.
Nevada Bar No. 6654
E-mail: ggarman@gordonsilver.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@gordonsilver.com
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89169
Telephone (702) 796-5555
Facsimile (702) 369-2666
Attorneys for Fertitta Enterprises, Inc.

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>XYIENCE, INCORPORATED,<br>a Nevada corporation,<br><br>Debtor. | Case No.: BK-S-08-10474-MKN<br>Chapter 11 |
| XYIENCE INCORPORATED,<br>a Nevada corporation,<br><br>Plaintiff,<br>v.<br><br>RICHARD BERGERON, an individual,<br><br>Defendant. | Adversary No. 08-1082-MKN |
| RICHARD BERGERON, an individual,<br><br>Counterclaimant,<br>v.<br><br>XYIENCE INCORPORATED, a Nevada corporation; FERTITTA ENTERPRISES, INC., a Nevada corporation,<br><br>Counterdefendants. | **<u>OPPOSITION OF COUNTERDEFENDANT, FERTITTA ENTERPRISES, INC., TO DEFENDANT/COUNTERCLAIMANT, RICHARD BERGERON'S MOTION FOR RULE 11 AND 9011 SANCTIONS</u>**<br><br>Date: February 25, 2009<br>Time: 9:30 a.m. |

Counterdefendant, Fertitta Enterprises, Inc., a Nevada corporation ("Fertitta Enterprises"), by and through its counsel, the law firm of Gordon Silver, hereby submits its Opposition (the "Opposition") to the Motion for Rule 11 and 9011 Sanctions (the "Motion") [Docket No. 136] filed by Defendant/Counterclaimant, Richard Bergeron ("Bergeron").[1] Also submitted with Bergeron's Motion is an Affidavit of Richard Bergeron in Support of Amended Motion for Rule 11 and 9011 Sanctions (the "Bergeron Affidavit") [Docket No. 136-2 through 136-4].

This Opposition is made and based on the points and authorities which follow, the Declaration Of Gregory E. Garman, Esq. In Support Of Opposition Of Counterdefendant, Fertitta Enterprises, Inc., To Defendant/Counterclaimant, Richard Bergeron's Motion For Rule 11 And 9011 Sanctions (the "Garman Declaration"), the any papers or pleadings contained in this Court's file, judicial notice of which is hereby requested, and any arguments entertained at the time of any hearings on this matter.

## I.
## STATEMENT OF FACTS

1. On July 18, 2007, Xyience Incorporated, a Nevada corporation ("Xyience"), filed its Complaint (the "Complaint") against Bergeron in the Eighth Judicial District Court, Clark County, Nevada (the "State Court"), being Case No. A544781 (the "Litigation"). See Adv. Docket No. 3, Ex. 2.[2] Only Xyience was a plaintiff to this Complaint. Fertitta Enterprises was not a party to the Complaint, and never filed or signed any papers or pleadings in the Litigation while the matter was pending in State Court.

2. Also on July 18, 2007, Xyience first filed its Motion for Preliminary Injunction

[1] All references to "Section" herein shall be to the Bankruptcy Code appearing in Title 11 of the U.S. Code; all references to a "Rule" shall refer to the Federal Rules of Civil Procedure; all references to a "Bankruptcy Rule" shall refer to the Federal Rules of Bankruptcy Procedure; and all references to a "Local Rule" shall refer to the Local Rules of Practice of the U.S. District Court for the District of Nevada (or Bankruptcy Practice, where applicable).

[2] All references to the docket in this adversary proceeding are hereinafter referred to as "Adv. Docket," and all references to the docket in Xyience's underlying bankruptcy case are hereinafter referred to as "Docket."

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

(the "Preliminary Injunction Motion") against Bergeron in the Litigation seeking to restrain and enjoin him from posting allegedly defamatory remarks on the internet concerning Xyience and to remove certain allegedly false and defamatory articles from Bergeron's website. See id. at Exs. 3, 8 and 12. The Preliminary Injunction Motion was fully briefed by those parties. See id. at Exs. 13 (Bergeron Opposition), and 14 (Xyience Reply).

3. On September 6, 2007, the State Court issued its Preliminary Injunction Order (the "Preliminary Injunction Order"), which granted Xyience a preliminary injunction against Bergeron. See id. at Ex. 18.

4. On September 26, 2007, Xyience filed its Motion to Modify Preliminary Injunction Order in the Litigation, which the State Court thereafter granted. See id. at Exs. 22 and 28.

5. On January 3, 2008, an Involuntary Petition (the "Involuntary Petition") under Chapter 11 of the Bankruptcy Code was filed against Xyience, being Case No. BK-S-08-10049-MKN.

6. On January 18, 2008, Xyience filed its Voluntary Petition (the "Voluntary Petition") under Chapter 11 of the Bankruptcy Code, being Case No. BK-S-08-10474-MKN, thereby commencing the above-captioned bankruptcy case. See Docket No. 1.

7. On January 31, 2008, the Involuntary Petition against Xyience was dismissed pursuant stipulation, and its voluntary bankruptcy case proceeded. See Docket No. 55.

8. On February 19, 2008, Bergeron filed his Answer to Complaint and Counterclaim for Declamatory Relief [sic] (the "Old Counterclaim") in the Litigation. See Adv. Docket No. 3, Ex. 50. Bergeron filed his Old Counterclaim against not only Xyience, but also joined in Fertitta Enterprises for the first time as a party to the Litigation. Bergeron's Old Counterclaim alleged the following four counterclaims for relief against both Xyience and Fertitta Enterprises: (a) defamation, (b) violation of First Amendment rights, (c) tortious interference with prospective economic advantage, and (d) pain and suffering.

9. On March 20, 2008, Xyience removed the Litigation to Bankruptcy Court. See Adv. Docket No. 1.



Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

10. On March 24, 2008, Fertitta Enterprises filed its Motion to Dismiss Adversary Proceeding, which was fully briefed. See Adv. Docket Nos. 7 (Motion); No. 16 (Opposition), and 28 (Reply).

11. On March 28, 2008, Bergeron filed what he called an (I) Emergency Motion to Suspend Bankruptcy Proceedings Pending Investigation of Fraudulent Bankruptcy Filing, and (II) Motion for Summary Judgment on Defendant's Rule 11 Motion, Motion to Dismiss and Counterclaims (the "Motion to Suspend"), which was fully briefed. See Adv. Docket Nos. 11 (Motion); 17 (Xyience Opposition), 19 (Fertitta Enterprises Opposition), and 42 (Reply). Among other matters, Bergeron's Motion to Suspend requested sanctions against Xyience and Fertitta Enterprises, among other parties, as a result of an alleged "severe fraud" and "corrupt scheme" allegedly perpetrated by them against Xyience's shareholders and creditors, and the alleged "egregious injustices" he has had to face in defending the Litigation. See Adv. Docket No. 11, p. 2. Bergeron's Motion to Suspend sought a total award of $15,000,000.00, with $5,000,000.00 of that being a sanction, and $10,000,000.00 of that being a damage award for his counterclaims. Further, Bergeron believed his share of this recovery should be $1,500,000.00, while the rest should be distributed to Xyience's shareholders. See id. at pp. 33-34.

12. On April 9, 2008, Xyience also filed its own Motion to Dismiss and to Strike Bergeron's Old Counterclaim, which was fully briefed. See Adv. Docket Nos. 13 (Motion), 44 (Opposition), and 46 (Reply).

13. On May 6, 2008, Bergeron filed what he called his First Amendment Brief. See Adv. Docket No. 40.

14. On May 14, 2008, the Court held a hearing on various matters, including principally the motions to dismiss filed by Fertitta Enterprises and Xyience. The Court had authorized Bergeron to appear at this hearing via telephone, however, the Court and counsel in the courtroom had a very difficult time understanding Bergeron throughout this hearing because there was tremendous static from Bergeron's telephonic appearance. When questioned by the Court regarding the static, Bergeron stated that he was calling in via a computer telephone, and, quite absurdly, that he did not have a "land line" telephone readily available to him. Further,

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

after Xyience's counsel noted Bergeron's known tendency to make unauthorized recordings of previous court hearings and post them on his website (http://www.unlimitedfightnews.com), the Court specifically asked Bergeron whether he was currently or had ever recorded any portion of the May 14, 2008 hearing. Bergeron repeatedly stated on the record that he had not recorded and was not recording any part of the hearing.

15. Shortly after the May 14, 2008 hearing, counsel for Fertitta Enterprises discovered that a very static filled recording of the Court's May 14, 2008 hearing had been posted on the internet. This webpage posting purports to be an interview of Bergeron by a third party in a mixed martial arts forum, similar to what Bergeron does on his own website. The recording of the court hearing appearing on this webpage was obviously made by someone on the telephone and not obtained from the Court's own Electronic Court Recording Department because the Court and counsel in the courtroom were very difficult to hear.

16. On June 5, 2008, Fertitta Enterprises filed an Application for Order to Show Cause Re: Unauthorized Recording of Court Proceedings (the "OSC Application") and Declaration in support thereof. See Adv. Docket Nos. 51 and 52. Attached to the Declaration was a copy of the webpage on which the Bergeron interview appeared, together with a link to the unauthorized recording of the court hearing.

17. On July 11, 2008, Bergeron filed what he called his (1) Reply to Fertitta Enterprises Ex Parte Motion and (2) Motion to Compel Court to Rule on All Outstanding Motions (the "OSC Reply"). See Adv. Docket No. 54. In his OSC Reply, Bergeron asserted the following: "Bergeron has only conducted one recent interview with an obscure, Ireland-based website. The matter of the hearing's recording placed on that site is related to the documentary discussed in the interview. This Seattle-based filmmaker (who listened to the hearings on another line) could not get cameras approved for the courtroom and wanted to understand what Bergeron was dealing with in this case. Bergeron was not aware that the recording was being made, but the filmmaker did send him a copy of the recording later on, which Bergeron gave to the Ireland-based author of his interview." Id. at p. 3, ll. 4-12.

18. On August 18, 2008, the Court entered an Order to Show Cause (the "OSC")





Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

regarding the allegations of unauthorized recording of court proceedings made in Fertitta Enterprises' OSC Application. See Adv. Docket No. 56.

19. On August 29, 2008, Bergeron filed what he called his Response to Order to Show Cause And Motion to Recuse Judge Nakagawa (the "Motion to Recuse"), which was fully briefed. See Adv. Docket Nos. 60 (Motion),[3] and 63 (Fertitta Enterprises Opposition).

20. On September 18, 2008, Bergeron filed a Motion to Revoke the Bankruptcy Debtor's Reorganization Plan Approval Order, and Motion to Transfer Adversary Proceeding to Proper Venue (the "Motion to Revoke/Transfer Venue"), which was fully briefed. See Adv. Docket Nos. 66 (Motion); 69 (Fertitta Enterprises Opposition), and 71 (Xyience Joinder in Opposition).

21. On October 14, 2008, the Court entered the following decisions and orders: (a) denying Bergeron's Motion to Suspend, see Adv. Docket Nos. 72 and 104; (b) denying Bergeron's Motion to Recuse, see Adv. Docket Nos. 81 and 82; (c) denying Bergeron's Motion to Revoke/Transfer Venue, see Adv. Docket Nos. 73, 83, 84, 86, and 87;[4] (d) declining to award any sanctions for Bergeron's unauthorized recording of court proceedings, see Adv. Docket Nos. 79 and 80; (e) granting Fertitta Enterprises' Motion to Dismiss the Old Counterclaim, but granting Bergeron leave to amend his defamation counterclaim, see Adv. Docket Nos. 74 and 75; (f) granting Xyience's Motion to Dismiss the Old Counterclaim, but granting Bergeron leave to amend his defamation counterclaim, see Adv. Docket Nos. 76-78.

22. On November 3, 2008, Bergeron filed his Amended Counterclaim, see Adv. Docket No. 106, which abandoned his prior defamation allegations against Fertitta Enterprises, and instead asserted that he was defamed by a totally new comment made by Fertitta Enterprises' attorney, which comment Bergeron alleges was republished in an on-line newsweekly called TheDeal.com on September 12, 2008 (*i.e.*, long after the Litigation had been commenced).

---

[3] In this pleading, Bergeron further addressed the issue of his unauthorized recording of court proceedings, thereby adding to what he had previously stated in his OSC Reply.

[4] Adv. Docket Nos. 73 and 84 are duplicative.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

23. On November 24, 2008, Fertitta Enterprises filed a Motion to Dismiss Amended Counterclaim (the "New Fertitta Motion to Dismiss"), which was fully briefed. See Adv. Docket Nos. 111 (Motion), 125 (Opposition), 129 (Reply), 132 (Bergeron Further Brief).

24. On November 25, 2008, Bergeron filed what he called his Motion for an Immediate Show Cause Hearing to Strike the Perjured Declarations of Adam Frank and Jamie Cogburn; and Motion to Vacate the Clark County District Court's Modified Preliminary Injunction Order (the "Motion to Strike"), which was fully briefed. See Adv. Docket Nos. 117 (Motion), 122 (Fertitta Enterprises Limited Opposition), 127 (Xyience Opposition), 133 (Reply).

25. In its Limited Opposition to Bergeron's Motion to Strike, Fertitta Enterprises stated that it "takes no position with respect to Bergeron's request that Xyience's preliminary injunction against him be vacated or dissolved. Fertitta Enterprises was not a party to this Litigation when the preliminary injunction was entered, and, since being dragged into this Litigation by Bergeron as an additional counterdefendant some five (5) months after the injunction was issued, Fertitta Enterprises never supported the injunction or any evidence in support thereof." Adv. Docket No. 122, p. 7, ll. 3-9. In this pleading, Fertitta Enterprises also requested that if Bergeron was going to be allowed to make further telephonic appearances, then should be required to call in from a normal "landline" telephone, not a computer phone, so as to eliminate the significant static as well as to curtail any unauthorized recordings of court proceedings. See id. at pp. 8-9.

26. On January 21, 2009, Bergeron filed his instant Motion requesting various sanctions. From a procedural standpoint, Bergeron's Motion did not indicate any hearing date and time, nor was any notice of hearing filed at or around the time he filed his Motion. Instead, on February 5, 2009, Bergeron filed and served a Notice of Hearing (the "Notice of Hearing") [Adv. Docket No. 148], which specified a hearing date and time of February 25, 2009 at 9:30 a.m. In other words, Bergeron's Notice of Hearing was filed and served fifteen (15) days after his Motion, and only twenty (20) days before the hearing on his Motion.[5]

---

[5] Bergeron's Certificate of Service filed with his Notice of Hearing confirms that it was not served until February 5, 2009. [Adv. Docket No. 149].

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

27. Bergeron's Motion seeks sanctions against not only the parties and the attorneys in the Litigation, but also against persons and entities who have never made an appearance, or signed or filed any pleadings or papers in the Litigation—such as Zyen, LLC, Frank Fertitta, Jr., Frank Fertitta III, Lorenzo Fertitta, Bill Bullard, Station Casinos, Zuffa Marketing, LLC, and Zuffa, LLC (collectively, the "Nonparties"). Bergeron's Motion alleges that all of the foregoing parties should be liable for sanctions for "either directly, indirectly or completely vicariously culpable [sic] for continuing, funding, instigating, and/or fraudulently orchestrating the filing and maintenance of this frivolous lawsuit against Bergeron." Adv. Docket No. 136, p. 2, ll. 19-22. Bergeron's Motion seeks $150,000,000.00 in total sanctions and damages (*i.e.*, a tenfold increase from his previous request), with his take of this being $500,000.00, and the rest apparently being a recovery for Xyience's shareholders. See id. at pp. 10 and 42.

28. On January 30, 2009, the Court entered a decision and order denying Bergeron's Motion to Strike, see Adv. Docket Nos. 138 and 139, and granting the New Fertitta Motion to Dismiss, see Adv. Docket Nos. 141 and 142. In its decision to deny Bergeron's Motion to Strike, the Court specifically held that there was no reason to vacate the Nevada State Court's previous Preliminary Injunction Order. In its order granting the New Fertitta Motion to Dismiss, the Court dismissed Bergeron's defamation claim against Fertitta Enterprises with prejudice.

## II.
## LEGAL AUTHORITY

### A. Bergeron's Motion Violates Various Parts Of Local Bankruptcy Rule 9014.

Local Bankruptcy Rule 9014(b)(2)(C) requires that a movant provide at least twenty-five (25) days' advanced notice of a hearing, unless the Court shortens the time for good cause. In the case at hand, although Bergeron's Motion was filed outside of this time frame, it gave no indication of any hearing date and time. Moreover, Bergeron's Notice of Hearing for his Motion was filed and served fifteen (15) days after his Motion, and thus only twenty (20) days before the hearing on his Motion. As such, Bergeron has failed to give proper notice of the hearing for his Motion. Bergeron's failure to follow the rules creates significant problems for opposing counsel because they still must go to the time and expense of preparing and filing an opposition to his



Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

Motion, even though it is unknown whether, if ever, Bergeron's Motion will be set for hearing.[6] Regardless, Fertitta Enterprises would much prefer to have Bergeron's Motion adjudicated and be done with than have to deal with his nonsense further.

Local Bankruptcy Rule 9014(e) requires that all motions be no greater than twenty (20) pages long, unless leave of court is obtained. Bergeron's Motion is forty three (43) pages in length, and, because there does not appear to be an order entered granting him leave to file a motion in excess of this page limit, his Motion violates Local Bankruptcy Rule 9014(e) as well. Page limitations are of heightened concern with a litigant like Bergeron because his Motion, like many of his other pleadings in this case, contains little, if any, substance, and instead is rife with irrelevant and unsubstantiated arguments *ad hominem*, which are intended only to grandstand and to promote his own commercial interests. Indeed, Bergeron has flouted applicable page limits in many of his filings throughout this case. See, e.g., Adv Docket Nos. 11 (34 page motion), 39 (22 page reply), 40 (23 page brief), 117 (23 page motion). As a result, Fertitta Enterprises requests that the Court strike Bergeron's Motion to the extent it exceeds the applicable twenty (20) page limit.

**B. A *Pro Se* Litigant Cannot Recover Fees And Costs Pursuant To A Sanctions Motion.**

As part of his completely $150,000,000.00 request, Bergeron requests that $500,000.00 of that sum "be set aside for his work and unpaid time defending himself" in this Litigation. Motion, p. 42, ll. 19-21. As a *pro se* litigant, however, Bergeron cannot recover his attorneys' fees and costs because a non-attorney does not "incur" fees payable to oneself within the meaning of Bankruptcy Rule 9011(c)(1)(A).[7] See Massengale v. Ray, 267 F.3d 1298, 1303 (11th

[6] Moreover, it also creates uncertainty about the deadline for filing an opposition to the Motion.

[7] Bergeron's Motion requests sanctions pursuant to both Rule 11 and Bankruptcy Rule 9011, however, pursuant to Bankruptcy Rule 1001, the Bankruptcy Rules govern procedure in cases under title 11 of the U.S. Code. As such, Rule 11 has no application to this case. Nevertheless, Fertitta Enterprises agrees that given that these two rules parallel each other, this Court's application of Bankruptcy Rule 9011 is informed by Rule 11 jurisprudence. See Klein v. Wilson, Elser, Moskowitx, Edelman & Dicker (In re Highgate Equities, Ltd.), 279 F.3d 148, 151 (2d Cir. 2002).

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

Cir. 2001) (holding that pursuant to Rule 11 "[b]ecause a party proceeding *pro se* cannot have incurred attorneys' fees as an expense, a district court cannot order a violating party to pay a *pro se* litigant a reasonable attorney's fee as part of a sanction."); DiPaolo v. Moran, 277 F. Supp. 2d 528, 536-37 (E.D. Pa. 2003) (holding that pursuant to Rule 11 an attorney representing himself *pro se* could not recover as a sanction attorneys' fees for time spent defending himself, but could recover fees for time spent defending his law firm); see also Elwood v. Drescher, 456 F.3d 943, 946-48 (9th Cir. 2006) (applying Kay v. Ehrler, 499 U.S. 432, 435 (1991), to hold that a *pro se* attorney-defendant could not recover attorneys' fees under 42 U.S.C. § 1988); Manion v. American Airlines, Inc., 395 F.3d 428, 433 (D.C. Cir. 2004) (noting that a *pro se* litigant could not recover attorneys' fees costs, costs, or lost income as an expense within the context of sanctions pursuant to 28 U.S.C. § 1927, which statute contains the same "incurred" language as Bankruptcy Rule 9011); Pickholtz v. Rainbow Techs., Inc., 284 F.3d 1365, 1375 (Fed. Cir. 2002) (denying a fee award to a *pro se* litigant as a discovery sanction under Rule 37(a), which rule contains similar "incurred" language to Bankruptcy Rule 9011). In sum, because Bergeron has represented himself *pro se* throughout this litigation, he has not incurred any attorneys' fees and costs, and thus cannot seek such a recovery pursuant to Bankruptcy Rule 9011.

**C. Consequential Damages Cannot Be Recovered Pursuant To A Sanctions Motion.**

The great bulk of Bergeron's $150,000,000.00 in requested sanctions is apparently a recovery on behalf of Xyience shareholders. Bankruptcy Rule 9011, however, does not allow for an award for consequential damages, but rather only for the recovery of litigation fees and costs. See Lee v. Walters, 172 F.R.D. 421, 436 (D. Or. 1997) ("Even [Rule] 11 does not authorize an award of consequential damages, even though one of its main objectives is deterrence."); In re Masters, 224 B.R. 714, 718 (Bankr. E.D. Mo. 1998) ("[T]he Court notes that because an award of sanctions is not a substitute for the damages recoverable through a malicious prosecution action, consequential damages are not a valid measure of an appropriate sanction."); In re Spectee Group, Inc., 185 B.R. 146, 163 (Bankr. S.D.N.Y. 1995) ("Sanctions do not substitute for tort claims"); Business Guides, Inc. v. Chromatic Communications Enters., Inc., 121 F.R.D. 402, 406 (N.D. Cal. 1988) (holding that Rule 11 does not permit a party to recover excess business-



Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

related costs and lost profits), rev'd in part on other grounds, 892 F.2d 802 (9th Cir. 1989), aff'd, 498 U.S. 533 (1991).

Along the same lines, Bankruptcy Rule 9011 does not provide a basis for a cause of action to recover for tort damages. See Elliott v. M/V LOIS B., 980 F.2d 1001, 1007 (5th Cir. 1993) (holding with respect to Rule 11 that the Rules Enabling Act, 28 U.S.C. § 2072, that a rules of civil procedure "shall not abridge, enlarge or modify any substantive rights . . ."); Kirk Capital Corp. v. Bailey, 16 F.3d 1485, 1491 (8th Cir. 1994) ("Rule 11 is not a complete substitute for an abuse of process type cause of action."); Chris & Todd, Inc. v. Arkansas Dep't of Fin. & Admin., 125 F.R.D. 491, 493 (E.D. Ark. 1989) ("Rule 11 sanctions are not to be deemed a substitute for an action for malicious prosecution.").

As such, in the case at hand, Bergeron's attempt to recover damages, including but not limited to any damages on behalf of Xyience's shareholders, under the guise of a sanctions motion is simply not permitted as a matter of law.

**D. Bergeron Cannot Relitigate His Previously Denied Sanctions Motion.**

Bergeron made the same sanctions request he makes in his current Motion in his previously filed Motion to Suspend filed in March 2008. In fact, Bergeron even titles his current Motion as an "Amended Motion." Bergeron's previous Motion to Suspend, and the sanctions request therein, was fully briefed by the parties and thereafter denied by the Court. See Adv. Docket Nos. 11 (Motion to Suspend); 17 (Xyience Opposition), 19 (Fertitta Enterprises Opposition), 42 (Reply), 72 (Memorandum Decision) and 104 (Order).

As such, Bergeron's current Motion must be viewed as one or more of the following: a request to amend or make additional findings of the Court's prior decision (i.e., Adv. Docket No. 72) pursuant to Rule 52(b), to alter or amend the prior decision pursuant to Rule 59(e), or for relief from that prior decision pursuant to Rule 60.[8] See In re Walker, 332 B.R. 820 (Bankr. D. Nev. 2005) (holding that the Rules do not recognize a motion for reconsideration, that such a

[8] These rules are made applicable to bankruptcy cases by Bankruptcy Rules 7052, 9023 and 9024, respectively.





Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

motion must instead be brought pursuant to one or more of above-referenced Rules, and describing the standards for such relief).

In his Motion, however, Bergeron fails to meet the standards for any such relief, because he does not assert or provide any admissible evidence of any clear error, manifest injustice, change in controlling law, newly discovered evidence, mistake, surprise, excusable neglect, or other compelling reason to disturb the Court's prior denial of his requested sanctions. As such, Bergeron's Motion must be denied as it merely seeks to relitigate that which the Court has already decided, and fails to meet the stringent standards required for such relief.

**E. The Nonparties Cannot Be Liable For Sanctions.**

Bergeron's Motion seeks sanctions against not only the parties and the attorneys in the Litigation, but also against the Nonparties who have never made an appearance, much less signed, filed or later advocated any papers or pleadings in the Litigation. By its terms, however, Bankruptcy Rule 9011 applies only to a "pleading, written motion and other paper," which must be "present[ed] to the court (whether by signing, filing, submitting or later advocating)." Fed. R. Bankr. P. 9011(a) and (b); see Fed. R. Civ. P. 11, advisory committee notes, 1993 Amendments, Subdivisions (b) and (c) ("The rule applies only to assertions contained in papers filed with or submitted to the court."); Christian v. Mattel, Inc., 286 F.3d 1118, 1131 (9th Cir. 2002).

Bankruptcy Rule 9011(c) provides that sanctions can be imposed "upon the attorneys, law firms, or parties that have violated [the rule] or are responsible for the violation." Bergeron fails to indicate where these Nonparties have ever signed, filed or later advocated any papers or pleadings in this Litigation. As such, the only clause in Bankruptcy Rule 9011(c) under which the Nonparties could ever even potentially be liable for sanctions is as "parties that . . . are otherwise responsible for the violation." The contours of this language remain to be defined, however, evidentiary indicia of responsibility would necessarily include some involvement in the alleged wrongdoing. "[C]orporate officers or employees, apart from corporate counsel, who are not individually before the court (either as parties or counsel) would appear not to be subject to punishment under the Rule because they fall outside the letter of Rule 11(c)." Sanctions In Civil Litigation: A Review Of Sanctions By Rule, Statute, And Inherent Sanctions In Civil Litigation:

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

A Review Of Sanctions By Rule, Statute, And Inherent Power, SN009 ALI-ABA 1741, at *1766 (July 11-13, 2007); Chicago Bank of Commerce v. Amalgamated Trust and Savs. Bank (In re Memorial Estates, Inc.), 116 B.R. 108, 111-12 (N.D. Ill. 1990) (reversing the Bankruptcy Court's grant of sanctions pursuant to Bankruptcy Rule 9011 against the principal of an entity that was neither a party nor had filed any papers or pleadings in the bankruptcy case, because there was nothing to establish that the party should be held jointly liable for the sanctions).

In the case at hand, however, Bergeron does not articulate a basis or submit any admissible evidence such that the Court could pierce the corporate veil of the entities involved so as to impose alter ego liability on individual owners of any of the Nonparties. See, e.g., A.E. Rest. Assocs., LLC v. Giampietro (In re Giampietro), 317 B.R. 841 (Bankr. D. Nev. 2004) (explaining the standards for imposing alter ego liability in Nevada, but denying creditor's request to do so based upon the facts of that particular case). As such, Bergeron's Motion fails any reason why sanctions should ever be imposed on the Nonparties.

## F. Bergeron's Allegations Of Sanctionable Conduct Are Themselves Meritless.

### 1. Xyience's Claims And Actions Against Bergeron.

With respect to his sanctions request against Fertitta Enterprises, Bergeron's Motion never points to a specific pleading or paper in which Fertitta Enterprises or its attorneys (and/or the Nonparties for that matter) have ever advocated, adopted or otherwise joined in Xyience's request for the Preliminary Injunction Order or Xyience's claims against him. Bergeron forgets that he is the one who has dragged Fertitta Enterprises into this Litigation, not the other way around. Fertitta Enterprises has only ever defended itself in this Litigation, and has never asserted claims against Bergeron. Fertitta Enterprises is not and cannot be sanctioned for conduct undertaken by Xyience in this Litigation.

With regard to the merits of the Litigation, what has transpired in this Litigation speaks for itself. First, although not require to do so, Fertitta Enterprises has specifically disclaimed any responsibility for Xyience's claims against Bergeron in its pleadings before the Court. See, e.g., Adv. Docket No. 122, p. 7, ll. 3-9. Second, Bergeron's Old Counterclaim and Amended



Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

Counterclaim against Fertitta Enterprises have been dismissed with prejudice pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[9] Third, all of the other and various relief Bergeron has requested in this case—the Motion to Suspend, the Motion to Recuse, the Motion to Revoke/Transfer Venue, and the Motion to Strike--have all been denied by the Court. In sum, at every step of the way, the Court has rejected Bergeron's arguments, yet now with all of these other avenues foreclosed, Bergeron uses the only vehicle apparently left to continue his attacks: an ill-conceived and wholly inappropriate request for sanctions. See United States v. City of San Francisco, 132 F.R.D. 533, 537 (N.D. Cal. 1990) ("The proper means of attacking an opponent's position is through cogent legal argument in opposition papers, not through Rule 11."). Bergeron's use of Bankruptcy Rule 9011 demonstrates that he will stop at nothing to continue his harassing, vexatious litigation against Fertitta Enterprises and the Nonparties, even after his underlying claims have been dismissed with prejudice.

Throughout his Motion, Bergeron also claims to be vindicating the rights of Xyience's shareholders, however, he clearly lacks standing to do so as a matter of law. Indeed, as Bergeron is well aware, this Court has already decided this standing issue in related adversary proceedings, yet he still pursues this line of argument. See Klingenberg Children's Educ. Trust, et al. v. Key Mgmt., LLC, et al. (In re Xyience, Inc.), Adv. No. 08-1107, Docket No. 67 (dismissing a shareholder action against Xyience, Xyience's former officers and directors, Fertitta Enterprises, Zyen, LLC, and other defendants, for lack of standing); Official Comm. of Unsecured Creditors of Xyience, Inc. v. Zyen, LLC (In re Xyience, Inc.), Adv. No. 08-1094, Docket No. 17 (dismissing an action brought by Xyience's Official Committee of Unsecured Creditors against Zyen for lack of standing). Bergeron has previously been advised of these other litigations, yet he continues to pursue this Litigation. See Adv. Docket No. 69, p. 7; Adv. Docket No. 122, p. 7.

---

[9] To be sure, at the time Bergeron filed his Motion, Fertitta Enterprises' motion to dismiss the Amended Counterclaim had been fully briefed and heard by the Court, and the matter was *sub judice*, but had not been decided. Since the filing of Bergeron's Motion and prior to the hearing on it, however, the Court did render its decision. Although Bergeron's filing of the Motion itself was improper, Bergeron's continued pursuit of his Motion even after all of his claims against Fertitta Enterprises were dismissed with prejudice is exceedingly inappropriate.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

Moreover, Bergeron's lack of standing to pursue claims on behalf of Xyience shareholders is well-established. See Estate of Spirtos v. One San Bernardino County Super. Ct. Case Numbered SPR 02211 (In re Spirtos), 443 F.3d 1172, 1175-76 (9th Cir. 2006) (holding that trustees are the party possessing the right to sue on behalf of the bankruptcy estate); Smith v. Arthur Anderson, LLP, 421 F.3d 989, 1002-06 (9th Cir. 2005); Hamid v. Price Waterhouse, 51 F.3d 1411, 1421 (9th Cir. 1995); Schnelling v. Thomas (In re Agribiotech, Inc.), 319 B.R. 216 (D. Nev. 2004). Bergeron has been advised in numerous prior pleadings filed in this Litigation that he lacks standing to pursue claims on behalf of Xyience's shareholders, yet he still continues this utterly frivolous pursuit. See Adv. Docket No. 19, p. 14; Adv. Docket No. 28, pp. 8-9 (same); Adv. Docket No. 169, p. 7 (same). Bergeron's request for any recovery on behalf of Xyience's shareholders must be denied because he clearly lacks standing.

**2. The OSC Re: Unauthorized Record Of Court Proceedings.**

Bergeron alleges that Fertitta Enterprises and/or its attorneys should be sanctioned for their "unfounded request and motion for a show cause hearing regarding the court recording." Adv. Docket No. 136, p. 4, ll. 3-7. Along these lines, Bergeron alleges that Fertitta Enterprises' attorneys "provided the bulk of recent delays due to the fraudulently induced show cause hearing regarding the recording of a prior hearing." Id. at p. 22, ll. 11-14. Bergeron's allegations are simply not consistent with what has actually transpired in this case.

First, it is clear that an unauthorized recording of the court proceedings was made. Indeed, Bergeron himself acknowledged that the recording was made. See Adv. Docket Nos. 54 and 60. In response to the OSC, Bergeron alleged that an unidentified "Seattle-based filmmaker" was doing a documentary on Xyience and/or him, which filmmaker was listening in on the hearing on another line, and, unbeknownst to Bergeron at the time, made the recording, and later gave the recording to Bergeron. Although Bergeron's explanation of the recording's creation is rather incredulous to say the least, such an explanation is largely irrelevant because, regardless of the veracity of such an incredible explanation,[10] certainly at the time Fertitta Enterprises filed the

[10] Moreover, even if Bergeron's explanation regarding the recording's creation is true, Bergeron



Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

OSC Application and the Court entered the OSC, there were more than sufficient grounds to indicate that someone was making an unauthorized recording, and that they were doing so by and through Bergeron's telephonic appearance. As such, Fertitta Enterprises' OSC Application and the Court's OSC entered thereon were certainly proper.

Second, Bergeron's allegation that the OSC issue "provided the bulk of recent delays" is absurd. Fertitta Enterprises has only ever defended itself in this Litigation by filing motions to dismiss Bergeron's claims against it, and oppositions to all of Bergeron's various requests for relief. The only real complicating and delaying factor in this case has been Bergeron's nonsensical and duplicative pleadings—all of which have all been denied by the Court.

**3. Xyience's Joinder In A Fertitta Enterprises' Filing.**

Bergeron also alleges that Fertitta Enterprises' attorneys have filed motions that have been used by Xyience "to minimize the work they've had to do to proceed, and both parties have corroborated and colluded to support what is clearly a bogus case designed to improperly and unjustly enrich the principal players in the bankruptcy scheme." Adv. Docket No. 136, p. 22, ll. 14-20. In support of this allegation, Bergeron cites to his Motion to Revoke/Transfer Venue, see Adv. Docket No. 66, to which Fertitta Enterprises filed an opposition, see Adv. Docket No. 69, and in which opposition, Xyience joined. See Adv. Docket No. 71.

Bergeron's Motion to Revoke/Transfer Venue sought to revoke confirmation of Xyience's, as of then, yet to be entered Confirmation Order, and to transfer venue of this Litigation to the U.S. District Court for the District of Massachusetts. First of all, Xyience is free to join in any pleading any other party may file in this Litigation. Bergeron has sued both Xyience and Fertitta Enterprises on the same theories, so it should not come as any great surprise that these co-defendants may often make the same arguments in response. Both parties are fully entitled to defend themselves against Bergeron's attacks, and there is absolutely nothing

(continued)

should still bear responsibility for the recording because it occurred by and through his telephonic appearance. Simply stated, it is Bergeron's call, and thus his responsibility to make sure that he is not facilitating anyone else to violating any Local Rules. Along these lines, Bergeron never disclosed that this alleged "unidentified filmmaker" was listening in on any court proceedings, until after the OSC Application was filed.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

improper about joining in another defendant's pleadings.

Second, looking at the specific pleadings cited by Bergeron—Fertitta Enterprises' Opposition [Docket No. 69] and Xyience's "Joinder" [Docket No. 71]—indicates that no real effort was saved by Xyience in any event. Xyience's Joinder is not merely a simple joinder; rather, Xyience's opposition very specifically addressed the issues for five (5) pages, and included its own legal analysis and points and authorities. In other words, aside from the fact that there is nothing wrong with joining in a co-defendant's pleading as a mater of law, Bergeron's underlying theory that Xyience's joinder somehow saved it time or money in having to respond to his pleadings is disproven by reviewing the actual pleadings themselves.

In sum, Bergeron's allegations of sanctionable conduct committed by Fertitta Enterprises and/or its attorneys are utterly meritless. If anything, it is Bergeron who has engaged in frivolous and vexatious litigation against Fertitta Enterprises, not the other way around, and his sanctions Motion is a furtherance of his prior pattern of improper conduct.[11]

### G. The Court Can And Should Award Fertitta Enterprises Its Attorneys' Fees And Costs Incurred In Opposing Bergeron's Frivolous Motion.

Bankruptcy Rule 9011(c)(1)(A) provides, in pertinent part, that "[i]f warranted, the court may award the party prevailing on the motion the reasonable expenses and attorneys' fees incurred in presenting or opposing the motion." (emphases added). In other words, Bankruptcy Rule 9011(c)(1)(A) provides for prevailing-party fee shifting. The Advisory Committee Notes accompanying the 1993 Amendments to Rule 11, which amendments put into effect this fee-shifting provision, explain as follows:

> As under former Rule 11, the filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to

[11] Bergeron's Motion also argues that Fertitta Enterprises and/or the Nonparties could be sanctioned pursuant to the Court's inherent authority and/or Section 105(a) of the Bankruptcy Code. Before a court may impose sanctions under its inherent power, however, it must find that the lawyer or party "acted in bad faith, vexatiously, wantonly or for oppressive reasons." Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991). As set forth herein, Bergeron has not even established an entitlement to sanctions against Fertitta Enterprises pursuant to Bankruptcy Rule 9011, let alone the higher standard of bad faith conduct needed for sanctions pursuant to the Court's inherent power.





Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

> sanctions. However, service of a cross motion under Rule 11 should rarely be needed since under the revision the court may award to the person who prevails on the motion under Rule 11—whether the movant or the target of the motion—reasonable expenses, including attorneys' fees, incurred in presenting or opposing the motion.

As a result, if the Court denies Bergeron's Motion, the Court can award Fertitta Enterprises its attorneys' fees and costs incurred in having to oppose the Motion. See Riccard v. Prudential Ins. Co., 307 F.3d 1277, 1293-96 (11th Cir. 2002) (sanctioning plaintiff's attorney $10,000 for filing a baseless Rule 11 motion); Caribbean Wholesales & Serv. Corp. v. U.S. JVC Corp., 101 F. Supp. 2d 236, 246 (S.D.N.Y. 2000) (applying Rule 11(c)(1)(A) and awarding attorneys' fees to party forced to defend against a frivolous sanctions motion).[12] A party defending a Bankruptcy Rule 9011 motion need not comply with the separate document and 21 day safe-harbor provisions when counter-requesting sanctions. See Patelco Credit Union v. Sahmi, 262 F.3d 897, 913 (9th Cir. 2001) (applying Rule 11).

In evaluating whether sanctions are appropriate, *pro se* litigants are subject to an objective standard of conduct similar to represented parties. See Fed. R. Bankr. P. 9011(b) (applying when "an attorney or unrepresented party is certifying . . .") (emphasis added); Fed. R. Civ. P. 11, advisory committee notes, 1993 Amendments ("The rule retains the principle that attorneys and *pro se* litigants have an obligation to the court to refrain from conduct that frustrates the purpose of Rule 1."); Simpson v. Lear Astronics Corp., 77 F.3d 1170, 1177 (9th Cir. 1996) (holding that "while a district court can properly consider a plaintiff's *pro se* status in assessing sanctions, it cannot decline to impose any sanction where a violation has arguably occurred simply because the plaintiff is proceeding *pro se*").

"'Frivolous' filings are those that are 'both baseless and made without a reasonable and competent inquiry.'" Buster v. Greisen, 104 F.3d 1186, 1190 (9th Cir. 1997) (quoting Townsend

[12] In the alternative to Bankruptcy Rule 9011, Fertitta Enterprises also requests that the Court impose sanctions against Bergeron pursuant to its inherent power and/or Section 105(a) of the Bankruptcy Code. See In re Martinez, 393 B.R. 27 (Bankr. D. Nev. 2008); In re Aston-Nevada Ltd. P'ship, 391 B.R. 84 (Bankr. D. Nev. 2006).



Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

v. Holman Consulting Corp., 929 F.2d 1358, 1362 (9th Cir. 1990) (en banc)). Presenting again a written motion that was previously adjudicated deficient, without substantially addressing the factual or legal deficiencies previously adjudicated, violates the duty to conduct a reasonable inquiry into fact. See Valley Nat'l Bank of Ariz. v. Needler (In re Grantham Bros.), 922 F.2d 1438, 1442 (9th Cir. 1991) (affirming the bankruptcy court's imposition of sanctions pursuant to Bankruptcy Rule 9011 against an attorney because a portion of the complaint seeking a stay of a sale of real property was an "impermissible collateral attack" on the bankruptcy court's prior order authorizing the sale); Maisonville v. F2 America, Inc., 902 F.2d 746, 748-49 (9th Cir. 1990) (affirming grant of sanctions under Rule 11 for a frivolous motion for reconsideration because the attorney had failed to make any further inquiry after losing the first time around, and that such inquiry would have put him on notice that reconsideration was frivolous); Peabody v. Maud Van Cortland Hill Schroll Trust, 892 F.2d 772, 775 (9th Cir. 1990) (affirming grant of Rule 11 sanctions and stating that "[a] second presentation of the same, previously rejected, theory to the same court fairly defines 'frivolous.'"). If a matter is frivolous, it is no defense that the suit was filed as a public statement of protest or for other First Amendment purposes. See Lockary v. Kayfetz, 974 F.2d 1166, 1171-72 (9th Cir. 1992).

As applied in the case at hand, Bergeron should be sanctioned for filing the Motion because the Motion was so clearly improper for the reasons as set forth herein. The Court has already denied Bergeron sanctions, and he has no legal or factual right to such relief. In fact, it is quite clear that Bergeron's Motion and also naming the Nonparties in his Motion, many of whom are high profile businesses and/or persons in the community, is nothing more than an abusive litigation tactic intended to harass them. Even more insidiously, Bergeron's overreaching in this regard is a transparent attempt to make his own "story" about Xyience, which he has admitted he hopes to sell one day in a book or screenplay, more appealing.

The Garman Declaration establishes that Fertitta Enterprises has incurred the sum of $11,301.00 in attorneys' fees based on 27.3 hours of attorney time in preparing this Opposition, which fees Fertitta Enterprises requests it be awarded pursuant to Bankruptcy Rule 9011(c)(1)(A). See Garman Declaration, ¶ 4.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

Finally, Bergeron's ridiculous $150,000,000.00 sanctions request in his Motion is itself sanctionable because such a recovery is so clearly not permitted and so exorbitant that it is clearly only intended to harass Fertitta Enterprises and the Nonparties. See Frantz v. United States Powerlifting Fed'n, 836 F.2d 1063, 1066 (7th Cir. 1987) ("In a proceeding under Rule 11, the filing of a bloated request for fees is itself subject to sanctions . . ."); In re Central Ice Cream Co., 836 F.2d 1068, 1074 (7th Cir. 1987) ("An excessive request for fees is a sanctionable event . . ."). As such, the Court can and should sanction Bergeron for his absurdly inflated and legal impermissible request for sanctions.

**H. Demand For Compliance With Local Bankruptcy Rule 9017.**

Fertitta Enterprises hereby demands that Bergeron comply with Local Bankruptcy Rule 9017, including specifically that he be made available live and in person (not on the telephone) for cross-examination at the hearing on this Motion pursuant to 9017(d)(4) and (e). If Bergeron is not made available live and in person at the hearing, Fertitta Enterprises requests that the Court strike the Bergeron Affidavit.

## III. CONCLUSION

WHEREFORE, Fertitta Enterprises respectfully requests that the Court DENY Bergeron's Motion, and GRANT Fertitta Enterprises at least $11,301.00 in attorneys' fees and costs in having to oppose the Motion pursuant to Fed. R. Bankr. P. 9011(c)(1)(A), and/or pursuant to the inherent power of the Court and/or Section 105(a) of the Bankruptcy Code. Fertitta Enterprises also requests such other and further relief as is just and proper.

DATED this 10th day of February, 2009.

GORDON SILVER

By: ______________________
GREGORY E. GARMAN, ESQ.
MATTHEW C. ZIRZOW, ESQ.
Attorneys for Fertitta Enterprises, Inc.





Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555