RECEIVED & FILED

MAR 12 3 55 PM '09

U.S. BANKRUPTCY COURT
MARY A. SCHOTT, CLERK

Rich Bergeron
147 OLD COUNTY ROAD
East Sandwich, MA 02537
Telephone: (617) 209-4325
Defendant as Pro Se Attorney

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

In Re:

XYIENCE, INC., A Nevada Corporation

Debtor.

---

XYIENCE INCORPORATED, a Nevada Corporation,
Plaintiff,

v.

RICHARD BERGERON, an individual
Defendant.

---

RICHARD BERGERON, an Individual,

Counterclaimant,

v.

XYIENCE INCORPORATED, a Nevada corporation; FERTITTA ENTERPRISES, INC., a Nevada Corporation,

Counterdefendants.

No. BK-S-08-10474-MKN
Chapter 11

Eighth Judicial District Court
Las Vegas, Clark County, Nevada
Case No. A544781, Dept. XXIII

CASE NO. BK-2-08-AP-01082-MKN

**DEFENDANT AND COUNTER-CLAIMANT'S REPLY TO JOINDER BY XYIENCE, INCORPORATED IN OPPOSITION TO RICHARD BERGERON'S AMENDED MOTION FOR RULE 11 AND 9011 SANCTIONS FILED BY FERTITTA ENTERPRISES, INC.**

Hearing Date: __________, 2009

Time: 9:30 AM

Location: 300 Las Vegas Blvd. South
Courtroom #2
Las Vegas, NV 89101

# REPLY TO JOINDER BY XYIENCE, INCORPORATED IN OPPOSITION TO RICHARD BERGERON'S AMENDED MOTION FOR RULE 11 AND 9011 SANCTIONS FILED BY FERTITTA ENTERPRISES, INC.

Xyience, Incorporated relies largely on the Fertitta Enterprises opposition and evidence exclusion requests made by Attorney Laurel Davis to convince the court the company had no culpability in this matter. Once again there is absolutely no affidavit from any Xyience official, no affidavits from any of the engaged Fennemore Craig attorneys, no affidavit or declaration from anyone who can vouch for an alternate explanation other than what Bergeron has provided for this court.

**OBJECTION to Evidence Exclusions**

Xyience's pleading includes a chart of requested evidence exclusions that are solely designed to prevent an accurate accounting of events from being placed properly on the docket. Bergeron has intimate personal knowledge of the events he testifies to, and none of Davis's exclusions apply. Bergeron objects to each and every exclusion request, as no affidavit exists to contradict his stated testimony. Regarding the request to "strike or seal" paragraphs 57 and 58, this is highly irregular and should not be allowed for any reason. These paragraphs are wholly true and should not be concealed from this court for any reason. It is also disturbing that Xyience is suddenly standing up for the reputation of the Fertitta Family when the Fertitta Enterprises lawyers won't even support their case against Bergeron. There is also no evidence that these paragraphs are defamatory.

As far as unauthenticated exhibits, Bergeron has presented his affidavit in support of these exhibits and will supply additional exhibits to accompany this motion that he submitted for a motion to reconsider the judge's last evidentiary rulings.

Xyience cannot be allowed to completely obliterate Bergeron's entire defense by excluding every earnestly submitted and properly placed exhibit and affidavit when they have filed no affidavits of their own in this case. This tactic only furthers their liability for sanctions, as they are abusing the process to prevent Bergeron due relief based on the evidence and the rule of law.

Xyience attorneys have not explained to the court how their client can possibly account for Bergeron's testimony, and no argument beyond procedural nuance can absolve the company of their clear culpability for abusing the process here. These attorneys are only continuing to do so by trying to deceive the court and obscure evidence in this matter.

The formulaic list of requested exclusions is just that. There is not so much as even a sentence of explanation qualifying any of these requests to strike nearly all paragraphs of Bergeron's affidavit. There are many contentions that Bergeron's points are irrelevant, hearsay, or exclusionary because they regard "unauthenticated" exhibits. There are stipulations that forbid Bergeron from referencing "settlement negotiations" when no such negotiations took place outside of emails. What does Bergeron have to do to authenticate these exhibits and this evidence any more than he already has? He is not a lawyer, just an honest man trying to get the facts on the record. If it comes to testifying, he will do so.

The vast array of knowledge contained in Bergeron's reports has been sought out by other lawyers and experts, and some of his material even spawned follow up reports which dug a little deeper in a different direction. Namely, the third item that appears under most current Google searches for Xyience is a Sherdog.com piece about Bevanda Magica and the Fertitta Enterprises connection to the Xyience bankruptcy: (http://www.sherdog.com/news/articles/bevanda-magica-xyience-bankruptcy-filings-reveal-deep-ties-to-zuffa-11061).

Bergeron just recently received a call from an attorney representing a formidable legal opponent of Zuffa, LLC. Lawyers from the business world have also contacted Bergeron, such as those who were representing another bankrupted shareholder class defrauded by those behind Manchester Consolidated. Global Cash Access Officials have called him and emailed him to alert him of the history of Kirk Sanford, Omer Sattar, and Karim Maskatiya.

Two of the named parties in this motion agreed Bergeron's site was a resource. Whether that tape and that conversation transcript is admissible or not, it is a FACT that two CO-CEOs of Xyience referred to the site that is now www.xyiencesucks.com as a resource to find out the history of the company. Bergeron has been contacted for all manner of requests for information. An associate of one of Xyience's most well-advertised sponsored fighter, Wanderlei Silva, recently asked for some articles to bring to Silva about the company.

It is no coincidence that Bergeron is this sought after when it comes to these interconnected

business matters. Even in the face of these defamation claims he is still getting calls from people wanting to know more about what's going on or who have information to add to what he's already gathered. It is not so much by his design as it is by a simple twist of fate, but these days when certain people have some problem with the company, they contact Bergeron, and they tell him what happened to them.

Until these individuals and entities are held accountable for their transgressions, Bergeron will continue to get calls. He will continue to file new reports. The opposition to this current motion feigns innocence. Xyience has not taken any action to further limit Bergeron's speech even under the direct authority of an existing preliminary injunction. None of the named parties, despite being raked over the coals in Bergeron's pieces for their own contributory bad behavior, have taken any additional legal action against him. The truth is hard to swallow, but Bergeron's unexpected fighting back in this litigation is forcing the truth down their throats. They used the tools of the legal system available to them in hollow attempts to impugn Bergeron's character, and it backfired. The truth didn't go away, it got bigger. The same will happen to those who follow suit to try and squelch free speech and silence the truth in this matter. Bergeron does not ever intend to roll over and give up on his First Amendment right to print and disseminate the truth.

BASIS FOR DEBTOR AND FENNEMORE CRAIG SANCTIONS

While the initial pleading speaks for itself in this matter, it is necessary to confront some of Attorney Laurel Davis's bare allegations, obviously made without any valid investigation into the facts of the case.

For one, this motion is not an attempt to re-litigate anything. Bergeron filed a previous Rule 11 Motion that never came to a hearing and filed an updated and amended version ***of that motion alone***. This amended motion has nothing to do with the motion to suspend the bankruptcy and asks nothing of the court in regard to the actual core case.

As to the improper removal of this action, it should not matter whether protest was made at an earlier date. If the removal was not proper and this case was always a liability and not an asset, the firm and the debtor are both liable for defrauding this court and hijacking the process. Attorney Davis and Attorney Jon Pearson have maintained this case throughout the bankruptcy process as an

asset and only recently admitted in writing that the case is actually much more of a financial albatross.

The matter of standing has been raised time and again in these proceedings, with Fertitta Enterprises and Xyience attorneys battling over whether or not Bergeron can be considered to have standing on behalf of injured shareholders.

As far as Bergeron's responsibility for procedural posture, that is absolutely untrue. The fact remains that Bergeron is the party initially sued in this matter. Bergeron was haled to court in Nevada by Xyience. The fact that Xyience is no longer the aggressor is telling of their lack of an explanation and lack of any contradictory evidence as to his published claims. It also reveals that under Fertitta ownership the case languished because no further evidence could be found to back up the falsehoods Cogburn and Frank swore to. Yet, despite Fertitta Enterprises trying to maintain clean hands they still allowed Xyience to maintain this case against Bergeron even after they had the Xyience leadership replaced with their own implants.

Essentially, now Xyience and Fertitta Enterprises are accusing me of using the process they tried to crush me with. I'm just trying to fight back against them. As for the rest of those named in the Rule 11 claims, only Fertitta Enterprises attorneys answer for all those parties, with the exception of Xyience's defense of Omer Sattar, who has not personally responded to the motion in any form.

However, Xyience never coincidentally defends Attorney Jamie Cogburn in any manner shape or form. Yet they stand by his initial complaint and contributory evidence.

With regard to Attorney John Mowbray, he is listed on the firm's Web-site as the managing partner in Las Vegas. If he is managing the entire office at which Davis and Pearson both work at, they take orders from him. Bergeron thought Mowbray should know what the firm was getting into, and it is clear from subsequent emails that Mowbray did get the message and allowed his underlings to continue the case anyway.

Bergeron's Amended motion brings up several viable categories falling outside traditional Rule 11 and Rule 9011 sanctions stipulations, which allow the court to sanction culpable parties within the full scope of the law. Under special circumstances like those involved in this case, Bankruptcy Rule 9011 is the only outlet for relief for Abuse of Process claims. Fertitta Enterprises makes mention of only Rule 11 in relation to their claims that abuse of process and malicious prosecution claims under the rule are not Bergeron's only resort here. Rule 11 is an entirely different

animal in terms of interpretation of alternative methods of resolution. Within the context of the bankruptcy court Rule 9011 and Section 105(a) of the Bankruptcy Code are both plainly described as an adversary plaintiff's only possible choices of action in regard to a situation where an abuse of process initiated by the debtor occurred.

Rule 9011(c), Fed. R. Bankr. P., states that the court may "impose an appropriate sanction upon the attorneys . . . or parties" that are responsible for a violation of the rule. Section 105(a) of the Bankruptcy Code provides the following:

**"The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."**

However the interpretation of the intent of the initial Rule 11 statute goes, even when applying the spirit of Rule 11, there is subsequent controlling authority in Lockary v. Kayfetz, 974 F.2d 1166 (9th Cir. 1992), cert. denied sub nom. Pacific Legal Foundation v. Kayfetz, 113 S. Ct. 2397 (1993), which allowed for just the type of relief Bergeron is seeking here. In Lockary, the court affirmed sanctions awarded against the Pacific Legal Foundation ("PLF"), a nonprofit corporation that represented landowners, for orchestrating a frivolous lawsuit. The district court had determined that none of the individual plaintiffs or the attorneys had been involved in the wrongdoing. Therefore, "[t]he district court imposed sanctions on PLF, the entity which had controlled the litigation . . . and was, in the court's view, responsible for the substantial abuse of the court system." Id. at 1169. Although such a sanction was not possible under Rule 11 (because PLF was neither an attorney, a party, or a signatory), the Court determined that it was a proper exercise of the court's inherent powers to sanction PLF. Id. at 1170. See also Corder v. Howard Johnson & Co., 53 F.3d 225, 232 (9th Cir. 1995) (holding that courts may impose sanctions against a nonparty "to curb abusive litigation practices").

The subject of inherent authority to sanction was addressed by the Supreme Court in Chambers v. NASCO, Inc., 501 U.S. 32 (1991). In Chambers, the Supreme Court held that federal district courts possess the inherent power to sanction bad-faith conduct in litigation when that

conduct falls outside the scope of Federal Rule of Civil Procedure 11 or 28 U.S.C. S 1927. In Chambers, a party engaged in several years of vexatious litigation tactics in an effort to thwart the jurisdiction of the court. The district court sanctioned the defendant approximately $1 million. In affirming, the Supreme Court stated:

It has long been understood that "[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution," powers "which cannot be dispensed with in a Court, because they are necessary to the exercise of all others. " For this reason, "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."

By providing that bankruptcy courts could issue orders necessary "to prevent an abuse of process," Congress implied that bankruptcy courts have the inherent power to sanction that Chambers recognized exists within Article III courts. See also In re Courtesy Inns, Ltd. (Jones v. Bank of Santa Fe), 40 F.3d 1084, 1089 (10th Cir. 1994) ("We believe, and hold, that S 105 intended to imbue the bankruptcy courts with the inherent power recognized by the Supreme Court in Chambers."); In re Pace (Havelock v. Taxel), 159 B.R. 890, 904 (Bankr. 9th Cir. 1993) (holding that S 105 grants bankruptcy courts the ability to sanction egregious conduct), aff'd in relevant part, 67 F.3d 187 (9th Cir. 1995).

All named Fennemore Craig Attorneys, Omer Sattar, and Xyience are subject to a litany of available sanctions, and if the existing evidence does not go far enough in bearing that out, than cross-examination of pertinent parties and attorneys will.

Finally, the positions raised by Xyience and Fertitta Enterprises with respect to particular pleadings needing to be tied to any sanctions request fails to account for those sanctions Bergeron requests above and beyond the power of Rule 11 and 9011. Also, it is important to note that sanctions of some sort as outlined by Bergeron should logically apply to the named parties who clearly supported and/or motivated the initial Xyience complaint and subsequent pleadings in support of that fraudulent claim.

Xyience only objects to the Rule 11 and 9011 sanctions, and like Fertitta Enterprises does not argue against the need for the court's inherent powers to apply. Also, they further complicate their

own culpability by joining the Fertitta request for attorney fees based on a docket completely devoid of any sworn testimony from any Xyience representatives other than Adam Frank and the company's multiple attorneys. The Court can impose sanctions at will in this instance against the parties and attorneys responsible. These sanctions should be adequate deterrents to future bad faith behavior. In re Brooks-Hamilton, 329 B.R. 270 (9th Cir. BAP 2005), aff'd in part, rev'd in part, remanded, 271 Fed.Appx. 654 (2008), a bankruptcy court did not abuse discretion in imposing a six-month suspension from practice.

Bankruptcy courts must apply federal law in determining what sanctions are to be imposed for conduct by attorney or party in bankruptcy court litigation, In re. Larry's Apartment, L.L.C., 249 F.3d 832 (9th Cir. 2001).

Distinguishing *Townsend*, court finds that a filing may be filed for an improper purpose, even if it isn't frivolous. A restitutionary award compensating the opposing party for unnecessary litigation expenses - as opposed to a punitive fine paid to the court - is a particularly appropriate sanction in cases involving manipulative petition filed principally for purposes of delay and harassment, In re. Marsch, 36 F.3d 825 (9th Cir. 1994).

Courts have ruled previously that a party can be held to a reasonable inquiry standard, even though it did not sign a particular pleading. See Business Guides, Inc. v. Chromatic Commun. Enterprises, Inc., 111 S.Ct. 922 (1991). Business Guides - 892 F.2d 802 (9th Cir. 1989), aff'd, 498 U.S. 533, 111 S.Ct 922 (1991) - reasonable inquiry - objective standard applied (complete review).

Xyience and all the named parties in the Amended motion were obliged to conduct a full investigation into this case to determine what the merits were and what the value to the estate was. Now we find out Xyience admits the case is wasting the estate's time and resources.

There is no basis to call out these bare allegations of sanctionable behavior on Bergeron's part (as Xyience does so irresponsibly) without severe consequences applying as a result. Bergeron is acting in good faith to promote the truth while those opposing this request have at all times attempted to deny and obscure the truth while acting in bad faith to deny Bergeron and the shareholders in Xyience due relief. Bergeron has presented stacks of evidence and sworn testimony while the opposing attorneys have only tried to obscure the record and deny true justice.

Sanctions should issue at either the amount requested or an amount that will deter future behavior by these individuals and entities. It is up to the judge's discretion in this matter to set the

damages amount that is justified to prevent further abuse of process. Bergeron will file a further Adversary proceeding to block the reorganization plan and acquire damages for the entire shareholder class at a later date if necessary. He has already drafted part of that complaint and collected affidavits in support of that case.

Please take into consideration the Janis Grady Affidavit and the Bergeron affidavit along with previous affidavits and declarations filed by Bergeron and others in support of his pleadings. He has been in direct contact with victims of this scandal for the better part of the last two and a half years.

This case should be summarily dismissed for both lack of prosecution and abuse of process concerns, and sanctions should be issued that weigh the culpability of each party they are designed to impact. Hearings should be held to determine which among the class of shareholders (Please see ***Xyience Shareholder List as of 12/31/07*** from Case 08-10474-MKN Docket #1-7) are entitled to relief, and these individuals and vested entities should have an opportunity to levy their claims along with proof of share purchase in order to obtain relief. If some of these sanctions would be better placed in a shareholder trust, pending outcome of the entire litigation process here, that would also suffice.

DATED this 12th day of March, 2009.

IN PROPER PERSON

[signature]

Rich Bergeron
147 Old County Road
East Sandwich, MA 02537
617-209-4325
Attorney Pro-Se
Rich.Bergeron@gmail.com