RECEIVED
IN DROP BOX
MAR 13 4 22 PM '09
U.S. BANKRUPTCY COURT
MARY A. SCHOTT, CLERK

RECEIVED & FILED
'09 MAR 20 A9:22

Rich Bergeron
147 OLD COUNTY ROAD
East Sandwich, MA 02537
Telephone: (617) 209-4325
Defendant as Pro Se Attorney

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In Re:<br><br>XYIENCE, INC., A Nevada Corporation<br><br>Debtor. | No. BK-S-08-10474-MKN<br>Chapter 11<br><br>Eighth Judicial District Court<br>Las Vegas, Clark County, Nevada<br>Case No. A544781, Dept. XXIII |
| XYIENCE INCORPORATED, a Nevada Corporation,<br>Plaintiff,<br><br>v.<br><br>RICHARD BERGERON, an individual<br>Defendant. | CASE NO. BK-2-08-AP-01082-MKN<br><br>**DEFENDANT AND COUNTERCLAIMANT'S REPLY TO OPPOSITION OF COUNTERDEFENDANT, FERTITTA ENTERPRISES, INC., TO DEFENDANT/COUNTERCLAIMANT RICH BERGERON'S MOTION FOR RULE 11 AND 9011 SANCTIONS**<br><br>Hearing Date: March 25, 2009 |
| RICHARD BERGERON, an individual,<br><br>Counterclaimant,<br><br>v.<br><br>XYIENCE INCORPORATED, a Nevada corporation; FERTITTA ENTERPRISES, INC., a Nevada corporation,<br><br>Counterdefendants. | Time: 9:30 AM<br><br>Location: 300 Las Vegas Blvd. South<br>Courtroom #2<br>Las Vegas, NV 89101 |

DEFENDANT AND COUNTERCLAIMANT'S REPLY TO OPPOSITION OF COUNTER DEFENDANT, FERTITTA ENTERPRISES, INC., TO DEFT. AND COUNTERCLAIMANT RICH BERGERON'S AMENDED MOTION FOR RULE 11 AND 9011 SANCTIONS

While Fertitta Enterprises rejects the notion of Rule 11 and 9011 sanctions and provides a voluminous defense against those type of sanctions being levied against the company, the opposition filing they placed on the docket makes only one mention of 105(a) regarding the inherent powers of the court to sanction parties for bad faith. Furthermore, the Fertitta Enterprises opposition neglects to account for the difference in the application of Rule 11 in regard to bankruptcy cases. Throughout the opposition, Fertitta Enterprises attorneys make contentions related to Rule 11 only that they claim to be also applicable under Rule 9011 constraints. If these were matters of the spirit of the law, it would be a moot point, but these apples and oranges comparisons are dealing primarily with procedural issues. Abuse of process and malicious prosecution claims were not available in this case under any other outlet, and Bergeron cited in his motion the precedent cases proving such torts are by rule of law only available through a Rule 9011 motion in bankruptcy situations like this one.

FERTITTA OPPOSITION SPEAKS FOR PARTIES GORDON AND SILVER DOES NOT OFFICIALLY REPRESENT INDIVIDUALLY AND COLLECTIVELY

With respect to Section I paragraph 27 (page 8) of the Fertitta pleading, it is interesting that Gordon and Silver attorneys mention all by name who are directly connected to Fertitta Enterprises or the Fertitta Family's business operations. The rest of the parties they speak for in their pleading are referred to as "collectively, the 'Nonparties.'" Fertitta Enterprises should not be permitted to

speak for these individuals and entities, which are all perfectly capable of responding on their own. These parties can still be culpable for the court's inherent power to sanction even if they have "never made an appearance, or signed or filed any pleadings or papers in the Litigation…"

Though timing and pleading page limits are also raised as potential issues, Fertitta Enterprises in the same breath rejects these concerns as crucial to determining the value of the motion. However, Fertitta Enterprises does ask the judge to strike the complaint based on the page limit alone. At the same time they list four other pleadings filed by Bergeron breaching the same page limit. Since these items were not thrown out, why should this motion be eliminated from the docket?

With respect to Part II, section B of the Fertitta complaint, Bergeron does not request traditional legal fees as much as compensation for the abuse of process and the aggravation of having to defend himself against a frivolous case. The Fertitta argument in relation to legal fees not being applicable under Rule 11 for pro se attorneys has nothing to do with Bergeron's request. The court's inherent powers sanctions can provide special damages accounting for these damages asked for by Bergeron in the motion.

Part II, Section C of the Fertitta complaint regards consequential damages. Throughout much of this section Fertitta Enterprises attorneys neglect to mention any applicable 9th Circuit ruling in regard to Rule 9011. Also, again Fertitta Enterprises Attorneys fail to account for the different applications of Rule 9011 as to abuse of process claims. While the pleading points out "Rule 11 is not a complete substitute for an abuse of process type cause of action" there is no statute or precedent case raised to show that Rule 9011 is treated the same. In fact, Bergeron raised several more applicable cases in which the rule of law shows Rule 9011 is the only method of relief for

those having abuse of process claims to bring to bear as defendants in adversary proceedings.

Section D is highly irrelevant in its entirety as Bergeron is not attempting to relitigate any matter. His previous Rule 11 pleadings have never been adequately heard or ruled upon. Fertitta Enterprises improperly characterizes Bergeron's other motions as the same type and scope of this new, all-inclusive motion. This motion features much more definitive evidence attachments and affidavit support than any other previous motion requesting any type of sanctions and/or damages.

Fertitta Enterprises continually refers to the pleading aspect of Rule 9011 claims when Bergeron presented appeals level "bad faith" exceptions to this scenario. Fertitta Enterprises attorneys have not raised any new precedent cases or statutes, but rather they have resurrected the same stale Christian vs. Mattel reference which is simply one interpretation among many 9th Circuit and Supreme Court level cases.

Section D also outlines one aspect of Rule 9011 under which the so-called "Nonparties" could be liable. By doing so, they open the door to sanctions that should apply to themselves and the "Nonparties" they illegitimately attempt to represent. The pleading actually categorizes the relief Bergeron is after and admits this is an appropriate avenue for such relief. The argument that follows the explanation of the category under which all parties could be sanctioned accordingly fails to fully exonerate Fertitta Enterprises or any one of the so-called "Nonparties." Instead, the argument admits that the situation is up for interpretation and there is room for shaping new law in regard to this situation.

As far as the "alter ego liability" Fertitta Enterprises claims Bergeron is trying to seek judgment for, this is the first time Bergeron has even seen that term in legal paperwork. Bergeron's never mentioned such liability, although he has addressed vicarious liability and other avenues of

legal culpability the "Nonparties" clearly have in this situation.

Section F., Part 1 of the Fertitta pleading includes a telling statement: "Fertitta Enterprises has only ever defended itself in this Litigation, and has never asserted any claims against Bergeron." This is not entirely true and will be hashed out with a cross-examination of the attorneys acting on Fertitta Enterprises behalf. While it is true that Fertitta Enterprises did not officially seek any direct legal claims against Bergeron, that fact is no help to them in this situation. Their refusal to support Xyience is more damaging to their case than it is helpful. It is extremely odd, if not impossible for two companies connected at the hip (one being owned by the other) to be taking opposite positions in this proceeding. The ownership group of Fertitta Enterprises will not support the injunction or any pleading relating to it. Yet, Xyience is allowed to dance the fine bankruptcy line and cite the initial evidence without being held responsible thus far for not researching and investigating any of it. These Fertitta attorneys, namely Garman (See Janis Grady Affidavit), were, or at least should have been intricately aware of, the operations of Xyience.

Bergeron has reported a bevy of factual information about Fertitta Enterprises and the Fertitta and Maceo family. As of yet none of this information has been formally challenged by any of the parties he is requesting sanctions against. If he wrote any falsehoods about all this, he's besmirched all their names, too, but have any one of them sued? The attorneys for the company have actually entered some of Bergeron's reports into evidence here. While they deny the truth here on the record, they have not initiated any of their own claims, as they openly admit. This duality betrays the fact that they know Bergeron's reports are not only true but also "authenticated" enough to include as evidence.

At the bottom of page 13 of the Fertitta pleading, mention is made that "Fertitta Enterprises

has specifically disclaimed any responsibility for Xyience's claims against Bergeron in its pleadings before this court." Yet, this statement cannot possibly be reconciled when the fact remains that Fertitta Enterprises has been in direct control of Xyience since before the bankruptcy even began. Xyience continuously refuses to prosecute the case but has already put the nails in their own coffin by pressing it this far while knowing it is wasting the time and money of the estate. After all, it is now literally written in black and white in one of their own pleadings that they are sitting on this bad egg and waiting for the liquidation attorney to come make an omelet out of it. Every time they defend a motion like this, and every appearance they have to make in the future will be throwing money out the window when right now is the appropriate time for a settlement conference.

Fertitta Enterprises goes on to call the Rule 11 motion "the only vehicle apparently left to continue his [Bergeron's] attacks." While the attacks characterization is over-reaching and exaggerated, this motion is actually the only vehicle left, short of the existing counterclaim, for Bergeron to gain relief for the abuse of process that is ongoing in this case.

The rest of page 14 in the Fertitta opposition deals with Bergeron's standing to seek damages on behalf of shareholders injured by the abuse of process. The contentions that Bergeron has no standing and that the issue has already been decided in other proceedings are completely off base. Bergeron has standing enough to be dragged into this court against his will, so he should have standing to sue on behalf of those injured by the abuse in addition to himself. Fertitta Enterprises points to the other adversarial proceeding and previous developments in this case that have nothing to do with the matter at hand and the circumstances under which Bergeron is asking for relief on his behalf as well as for damaged shareholders.

Also, Bergeron has briefed this matter in past motions. In relations to the other adversary

proceeding, Xyience pushed to become the "Real Party Palintiff" only in order to kill the case, and it's clear the trustee cannot be relied upon to act in the best interest of the class of shareholders who have been injured by fraud here. Also, with respect to Xyience's own admission that continuing the initial matter against Xyience is a waste of the company's resources, the company cannot even be relied upon at this point to consider the best interests of the estate itself. Furthermore, Bergeron's claims for relief cannot possibly be characterized as property of the estate since the abuse of process resulted in the class of shareholders being denied their position in the estate.

Though Fertitta Enterprises points out that **prior pleadings** have advised that Bergeron cannot sue on behalf of shareholders, this very statement is preposterous. Pleadings filed on behalf of the opposition are not orders filed by the judge and have no final authority in the court.

In relation to the Show Cause Hearing pursued by Fertitta Enterprises the fact remains that the attorneys who orchestrated that effort had absolutely no definitive proof that Bergeron himself recorded the hearing in question. These attorneys pursued this action without performing an adequate investigation or even asking Bergeron or the Irish Interviewer Donal McGuinness (the operator of the Web-site the recording links first appeared on) themselves who recorded the hearing.

As far as blaming Bergeron for the delays in the case thus far, Bergeron would not even be litigating at this point if it was not for the opposition's concentrated efforts to keep this litigation going long enough to force Bergeron to give up.

With regard to Fertitta Enterprises and Xyience attorneys working as a team, Fertitta Enterprises admits in the opposition: "Bergeron has sued both Xyience and Fertitta Enterprises on the same theories, so it should not come as any great surprise that these co-defendants may often make the same arguments in response."

This revelation stops short in proclaiming that these parties are colluding with each other to avoid all culpability. The reality is both entities are controlled by the same main outfit: Fertitta Enterprises. This creates a scenario in which it just does not make sense for the two to work together on some aspects of the case and disagree so starkly in regard to other aspects of the litigation.

Fertitta Enterprises attorneys go on to call the Bergeron motion "a furtherance of his prior pattern of improper conduct." Yet, Fertitta Enterprises never before sought sanctions for any previous behavior by Bergeron until Bergeron himself raised the issue. As far as Bergeron being subject to sanctions the mere suggestion is absurd. Bergeron's filing is by no means baseless and is obviously the result of an intense investigation into the facts surrounding the case. Fertitta Enterprises outlines no definitive evidence to show Bergeron did not adequately investigate his claims. Also, Fertitta Enterprises goes to great lengths to describe how bringing the same exact motion a second time is subject to sanctions when that is not, in fact, what Bergeron is doing here.

Fertitta Enterprises has not yet provided any affidavit or declaration from anyone other than an attorney. The client has not come forward at all to deny culpability. These attorneys, namely Gregory Garman, continue to make assumptions based on false or erroneous information. Garman includes the following off-base statement in his pleading: "…also naming the Nonparties in his Motion, many of whom are high profile businesses and/or persons in the community, is nothing more than an abusive litigation tactic intended to harass them. Even more insidiously, Bergeron's overreaching in this regard is a transparent attempt to make his own 'story' about Xyience, which he has admitted he hopes to sell one day in a book or a screenplay, more appealing."

The entire idea that Bergeron is motivated entirely by the artistic gains he could achieve is a farce. This is a serious, altruistic cause that transcends the entire creative process. These burned

shareholders simply need relief, and Bergeron is the only person at this point who can adequately help them get it. Also, Bergeron named the additional parties because they are guilty, not because he just wanted to harass random businesses and individuals. Garman once again is speaking on behalf of Bergeron as if he knows what Bergeron is thinking. He produces no definitive evidence to back up his claims nor any affidavits from the principals he represents.

The implication that Bergeron can be sanctioned for asking for a high damage amount is raised by the Fertitta pleading as well, although they do so improperly and by manipulating the language of the law. The precedent cases cited have to do with "fees" rather than damages or sanctions requests. Bergeron cannot collect attorney fees according to Garman and therefore cannot provide an excessive request for fees. The instances mentioned also relate to Rule 11 motions rather than Rule 9011 requests.

Bergeron cannot appear live and in person because he cannot afford to fly to Las Vegas for hearings. He has an order to proceed informa pauperis in this matter and will not be able to personally attend the hearing. His lack of appearance should by no means prejudice his affidavit, which was properly secured and sworn to before a notary public. If the counter-defendants would like to cross examine him, they can afford to have him flown in for the hearing.

FURTHER POINTS OF LAW:

Because Rule 11 does not preempt state malicious prosecution claims normally, and because Congress intended to replicate that framework in bankruptcy adversary proceedings, Rule 9011 does not evidence Congress's intent to preempt malicious prosecution claims. Its importation militates, instead, directly against preemption. See Bates, 544 U.S. at 449 ("If Congress had intended to

deprive injured parties of a long available form of compensation, it surely would have expressed that intent more clearly."); Standard Oil Co. of N.J. v. United States, 221 U.S. 1, 59 (1911) ("[W]here words are employed in a statute which had at the time a well-known meaning at common law or in the law of this country, they are presumed to have been used in that sense unless the context compels to the contrary."). Whereas Bergeron has been denied by Judge Nakagawa the ability to pursue any other cross claims but defamation, clearly Rule 9011 has truly become the only other avenue for relief he can pursue.

Likewise, Bankruptcy Code section 105(a) does not evidence Congress's intent to preempt malicious prosecution claims predicated on conduct in an adversary proceeding. See 11 U.S.C. § 105(a). Section 105(a) is another example of where, instead of custom-building a bankruptcy rule, Congress imported general federal law that does not preempt, and said nothing to change that result. Section 105(a) is located in the "General Provisions" chapter of the current Bankruptcy Code. U.S.C., tit. 11, ch. 1. The substance of this section has existed since at least 1898. See Laura B. Bartell, Contempt of the Bankruptcy Court – A New Look, 1996 U. Ill. L. Rev. 1, 3–4 & n.15 (1996).[5] The section gives bankruptcy courts broad, general police powers:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process. 11 U.S.C. § 105(a).

One could certainly argue here that Abuse of Process is the chief reason for sanctions here and malicious prosecution charges also seem to overlap a bit.

The United States Supreme Court recognized in Chambers v. NASCO, Inc. that federal courts hearing general civil actions possess this same power inherently. 501 U.S. 32, 43–46 (1991). And like Bankruptcy Rule 9011, which Congress imported from federal procedural law at large, section 105(a) is also a direct import. See Jones v. Bank of Santa Fe (In re Courtesy Inns, Ltd., Inc.), 40 F.3d 1084, 1089 (10th Cir. 1994) ("We believe, and hold, that § 105 intended to imbue the bankruptcy courts with the inherent power recognized by the Supreme Court in Chambers. ") (citation omitted). The broad Chambers power does not preempt malicious prosecution claims in normal litigation, and the mere fact that Congress codified that power for bankruptcy cases did nothing to change its preemptive effect. For the same reasons that merely importing Rule 11 does not evidence Congress's intent to create an exceptional preemption result, importing the power recognized by Chambers does not either.

In addition to Rule 9011 and Section 105(a), Graber, the dissent, and cases like MSR Exploration, Ltd. v. Meridian Oil, Inc., 74 F.3d 910, 915–916 (9th Cir. 1996), cite various other Bankruptcy Code provisions in support of preemption. These provisions do not evidence the requisite intent because they address custom-built areas of bankruptcy law, not adversary proceedings, and because they fall far short of evidencing the intent to occupy the entire field of sanctions for abuse of adversary proceedings that preemption requires.

The tenets of 9011 clearly explain that Attorney fees can only be paid to a party upon motion in bankruptcy proceedings. Under Rule 9011, a court may award "an appropriate sanction" on its own motion, if it first issues an order to show cause describing the specific misconduct. Fed. R. Bankr. P. 9011(c)(1)(B). Rule 9011(c) sets forth the available sanctions, and limits any monetary sanction that is imposed pursuant to a sua sponte order to a penalty payable to the court. Shubov, 253

B.R. at 546; Fed. R. Civ. P. 11, Advisory Committee Notes to 1993 Amendments.

The issue at hand here, however, is categorically diabolical enough to warrant the stern application of § 105(a), (5) to impose sanctions for a pattern of bad faith conduct that transcends conduct addressed by particular rules or statutes. Chambers v. NASCO, Inc., 501 U.S. 32, 51 (1991); Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.)., 77 F.3d 278, 283 (9th Cir. 1996). As the Supreme Court explained in Chambers, "if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power." Chambers, 501 U.S. at 50.

> Pursuant to section 105(a), a bankruptcy court may take any necessary or appropriate action to enforce or implement court orders or rules, or to prevent an abuse of process. Rainbow Magazine, 77 F.3d at 284. Thus, a court may issue compensatory sanctions under either its ordinary civil contempt authority or its inherent sanction authority. Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1195-96 (9th Cir. 2003).
>
> A court exercises its power under civil contempt to remedy violation of a specific order. It exercises its inherent sanction authority more broadly; "to deter and provide compensation for a broad range of improper litigation tactics." Dyer, 322 F.3d at 1196 (emphasis added).

The Fertitta Enterprises prayer for their own legal fees is a pathetic attempt. Bergeron submits the attached affidavit of Janis Grady as an example of the evidence he is gathering directly from defrauded shareholders. Fertitta Enterprises is either complicit in the ongoing fraud or negligent in overlooking it as a direct owner/operator of Xyience, Incorporated even as this instant motion appears before the court.

The fact that Fertitta Enterprises attorneys so vociferously disagree with the contentions of Xyience's representation is peculiar to say the least. While Fertitta Enterprises has been in control of Xyience, Fennemore Craig attorneys have been fighting for this case as an "asset" of the estate.

Meanwhile, Fertitta Enterprises attorneys have not stepped forward to support their client's own offshoot company being rented out of bankruptcy. Fertitta Enterprises refuses to stand by the bogus evidence Xyience has submitted, and while attempting to be above the fray they forget that they supported all this for far too long and were negligent in allowing this behavior to continue. This is especially apparent in light of their recent confessions of how they feel about things.

After all, it is not in dispute that Fertitta Enterprises owns Xyience. There may be a few purposely created sideline companies to hide the direct connection, but it's there and should be openly obvious to the court at this stage.

The case against Bergeron should be dismissed with prejudice forthwith, and inherent power sanctions may be imposed by the court sua sponte. See Link v. Wabash R. Co., 370 U.S. 626, 629-32 (1962) (inherent power to dismiss a case sua sponte); Roadway Exp., Inc. v. Piper, 447 U.S. 752, 765-67 (1980) (inherent power to award fees sua sponte); § 105(a).

The inherent power to sanction bad-faith conduct is a separate and distinct source of authority, which is not displaced by the federal statutes and rules. Chambers, 501 U.S. at 46. It is broader than Rule 9011 sanctions and "extends to a full range of litigation abuses." Id. Thus, a court may sanction pursuant to its inherent authority even when the same conduct may also be punished under another sanctioning statute or rule. Id. at 49 ("[I]nherent power of a court can be invoked even if procedural rules exist which sanction the same conduct."); Link, 370 U.S. at 629-32 (holding, in sua sponte dismissal for failure to prosecute, that the existence of Fed. R. Civ. P. 41(b), which allows a party to move for dismissal for lack of prosecution, did not abrogate this "long . . . unquestioned" power); Primus Auto. Fin. Servs., Inc. v. Batarse, 115 F.3d 644, 648 (9th Cir. 1997) (citing with approval a Third Circuit case which held that it is not necessary for a court to "exhaust all other

sanctioning mechanisms prior to resorting to its inherent power).

Sanctions under a court's inherent power are justified against a party who willfully disobeys a court order or acts in bad faith, "which includes a broad range of willful improper conduct." Fink v. Gomez, 239 F.3d 989, 991-92 (9th Cir. 2001). To impose inherent power sanctions, a court must find that a party acted "in bad faith, vexatiously, wantonly, or for oppressive reasons." Chambers, 501 U.S. at 44.

Fertitta Enterprises and Xyience Incorporated, along with all other parties named in the Rule 11 motion conspired to defraud all investors in Xyience by silencing Bergeron through this lawsuit so they could bankrupt the company under the radar. This will all be exposed at a show cause hearing on this motion.

As far as Bergeron asking for an excessive judgment on this motion the following applies:

It is well established that a court may impose a sum that is appropriate for deterrence purposes, even if it exceeds the amount of the fees incurred by the opposing party. Frantz v. U.S. Powerlifting Fed'n, 836 F.2d 1063, 1066 (7th Cir. 1987) (addressing appropriate sanctions under former Rule 11).

A monetary penalty is an appropriate sanction, and such a penalty may be combined with other sanctions necessary to deter. Fed. R. Bankr. P. 9011(c)(2). See also 10 Collier on Bankruptcy ¶¶ 9011.02[2], 9011.09 (Lawrence P. King, et al. eds., 15th ed. rev. 2002) (citing Federal Civil Rule 11, and quoting the Advisory Committee Note to the 1993 Amendments, which states: "[U]nder unusual circumstances, particularly for (b)(1) violations, deterrence may be ineffective unless the sanction not only requires the person violating the rule to make a monetary payment, but also directs that some or all of this payment be made to those injured by the violation."); Schwartz v. Kujawa (In

re Kujawa), 270 F.3d 578, 583-84 (8th Cir. 2001) ("The cornerstone of imposing a monetary sanction. . . should be the selection of an amount no greater than sufficient to deter future misconduct by the party.")

Fertitta Enterprises purposely drove Xyience into the ground to benefit the principals and their circle of friends and associates. This cannot and should never be tolerated, especially not when a court of law is overseeing the process. The Fertitta family has a history tied directly to organized crime, but they have not been taught the important lesson yet that you can't run a company like the Mafia and get away with it in this country. You can't bribe an entire state to perpetually get away with financial murder. You can't hide the truth with a million lawyers fighting for a million years. Eventually the backlash will catch up to you. That's the statement message that needs to be sent here. And frankly, they have to be hit hard in the wallet to get that message across. They need to give something back in the form of restitution to all the people they lied to and stole from.

The astronomically high amount is in consideration of the hundreds of defrauded shareholders like Janis Grady who should receive a per-share valuation for being defrauded through this conspiracy to bankrupt the company, which was only possible because Bergeron was silenced with this litigation.

Also, one must consider the combined wealth of all sanctionable parties and their sheer numbers. Rising above all other parties, Fertitta Enterprises is by far the one party that can definitely afford the tens of thousands in legal fees they have spent to deny culpability. In moving forward, all the adverse parties named in the instant motion must be "prepared to shoulder the expense that [they] occassion[ed]" in filing and supporting the initial bogus claim against Bergeron for a purely improper purpose. Corder v. Howard Johnson & Co., 53 F.3d 225, 232 (9th Cir. 1995).

The instant amended motion also requests immediate dismissal of the initial frivolous action against Bergeron. Because a Rule 11 sanction "requires the determination of a collateral issue:

whether the attorney has abused the judicial process, and if so, what sanction would be appropriate, such a determination may be made after the principal suit has been terminated." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 396 (1990) (examining Civil Rule 11 which is analogous to Bankruptcy Rule 9011). Show cause hearings can determine the level of culpability each named party has in this instance and how much each should pay out to the court and the victims. The principal purpose of the motion is dispositive, seeking dismissal with prejudice and reversing the entire tenor of the case.

At this stage this matter can only be about how much the opposition should pay out for their transgressions. The fact that they deserve the full weight of these sanctions will be fully apparent after a rigorous show cause process that will confirm the stated arguments and testimony Bergeron has already provided.

The Bankruptcy Code shows Congress's legislative intent:

**"to create a whole system under federal control which is designed to bring together and adjust all of the rights and duties of creditors and embarrassed debtors alike. While it is true that bankruptcy law makes reference to state law at many points, the adjustment of rights and duties within the bankruptcy process itself is uniquely and exclusively federal. It is very unlikely that Congress intended to permit the superimposition of state remedies on the many activities that might be undertaken in the management of the bankruptcy process. [¶] Debtors' petitions, creditors' claims, disputes over reorganization plans, disputes over discharge, and innumerable other proceedings, would all lend themselves to claims of malicious prosecution. Those possibilities might gravely affect the already complicated processes of the bankruptcy court. [Citations.]" (*MSR Exploration, supra,* 74 F.3d at p. 914, fn. omitted.)**

Federal rules of evidence should apply as well as federal laws and statutes. The conversation with Frank and Sanford is perfectly admissible in this court. There is no settlement posture, debate, or discussion whatsoever in the conversation that was recorded.

Also take notice of the weight of all the affidavits presented with this motion and thus far in this case on behalf of Bergeron.

CONCLUSION:

Fertitta Enterprises has presented no definitive evidence that is adverse to Bergeron's. The legal arguments raised by the Fertitta opposition are also lacking and make too many assumptions that do not apply and legal conclusions that only further implicate these attorneys in sanctionable behavior. They clearly did not adequately research the law applying here despite their seeking over

$10,000 in legal fees. Their request for sanctions should be denied and Bergeron's should be upheld.

Bergeron has real trouble grasping the legal process at times, because to him it seems there's absolutely no room in the meticulous and purposely confounding practice of law for clear, plain logic to rule the day. He can't understand how to get this court to see and fully acknowledge the obvious here without playing some kind of legal game or finding the magic statute to win the day.

It's just not a viable argument for someone to claim Bergeron's motion for sanctions was not up to snuff and is sanctionable when a law firm had to bill their clients for 27 and a half hours of work just to respond to that motion.

Hearings should be held in this matter where all the parties named in this motion should be summoned to appear and be subjected to cross-examination. This motion should be treated as a separate claim from the already entered Counterclaims related now only to Xyience, Incorporated. This matter will easily be proven outright beyond the shadow of a doubt from the cross-examination of all named parties and any other appropriate witnesses each side wishes to call. A discovery process should take place as a result of this motion.

A show cause hearing that is entirely separate from the counterclaim process will be the best way to illustrate that the claims Bergeron has made are valid and based in fact. In this phase specific questions could be asked about what kind of an investigation, if any, into the charges was made, how engaged with the client were the firm and the lawyers, etc. Bergeron would be willing to be cross examined as well if necessary, though he cannot currently afford to fly to Las Vegas for such a hearing unless the opposition is willing to foot the bill.

The opposing attorneys have taken advantage of every technicality possible. Yet we have heard nothing about their interaction with **their own clients**. Garman presented a sheet of his hourly billing with blacked out portions all over it.

How do we know he wasn't teaming with the Xyience lawyer as both parties have denied? Where is the full disclosure? Why is it even necessary to hide who he was talking to?

This goes to show you that Garman and his clients are going to hide everything they can every step of the way. How can this kind of a billing statement be accepted and authenticated when my own duly presented and sworn-to evidence has been denied with no blacked out portions?

The fact is, all the parties named in this motion conspired to keep me quiet and succeeded for

just long enough to pull off all their diabolical financial scheming.

The fact that Fertitta Enterprises claims to have nothing to do with the position Xyience takes in these proceedings is on its face an indicator of their failure to control the very company they own. They also appear to have only recently addressed the fraudulent representations being made by their Web-site: www.xyience.com. That site now finally no longer lists the group of Ultimate Fighting Championship fighters who have not been sponsored by Xyience for months.

Fertitta Enterprises has not denied owning Xyience. So one question remains and is glaring before this court.

Why should Xyience's position be any different from Fertitta Enterprises' position in this matter?

Fertitta Enterprises and Manchester Consolidated are currently co-owners of Xyience. Before that Fertitta Enterprises bankrupted Xyience primarily through a surreptitiously created Fertitta Enterprises subsidiary (Zyen, LLC), which was fabricated and operated by Fertitta Enterprises financial mastermind: Bill Bullard.

The fact that the Fertitta family is connected to a checkered past riddled with organized crime activities is not in dispute (despite Xyience's ill-fitting descriptions of these matters as scandalous) and has been widely reported in the mainstream public press. This court also needs to recognize that this type of Mafia mentality is still apparent in the family's current and ongoing business practices. If these corporate thugs can be allowed to shake down businesses like Xyience at the drop of a dime and screw hundreds of shareholders, how many others will follow their example? How far will the next scheme they pull off have to go before they finally get busted? The era of look-the-other-way politics and unethical behavior needs to stop, and there's no better way to stop it than to sanction all these conspiring parties who put this whole fraudulent bankruptcy and this whole bogus case against me together.

The case should be dismissed with prejudice as far as Xyience's initial claims, the counterclaims should proceed, and the collective parties Bergeron seeks sanctions against should suffer the consequences of their bad faith actions in support of this matter. Shareholders who were really the end-result victims of this legal fraud designed to silence Bergeron should be the ultimate beneficiaries of damages, as a class. Some members of this class may have to be eliminated from the class due to egregious contributory negligence, and others may have to defer their payments to

victims of their further crimes (at least two such instances exist in which specific investors owe others restitution for financial crimes that their victims are actively seeking). Hearings should be held to hash out who among this class are qualified and even interested in collecting a refund on their shares.

Bergeron will file an entirely new adversary proceeding designed to prevent the discharge of the debtor and block the reorganization plan within the next two weeks. Evidence exists to prove that there was a catastrophic failure here and a breach of fiduciary duty that was done in a purposeful, malicious, calculated, and devious manner with the sole object of stealing this company out from the rightful owners. This motion may not be enough to promote justice, and as a result Bergeron does not intend to take any chances in fighting for the rights of the injured. He will pursue whatever avenue of relief he can for those injured parties who earnestly invested and were only later duped because Bergeron was silenced by this litigation.

Bergeron has no ulterior motive to continue litigating for another 3-5 years. There is no incentive now to dragging the process out when the record shows he cannot even collect legal fees for the time he spends on this matter. This is about promoting restitution to an entire class of former Xyience owners who have so far been completely overlooked by this process. This is about defending those who have no one else to speak for them.

*DATED this 12th day of March, 2009.*

IN PROPER PERSON

Rich Bergeron
147 Old County Road
East Sandwich, MA 02537
617-209-4325
Attorney Pro-Se