GORDON SILVER
GREGORY E. GARMAN, ESQ.
Nevada Bar No. 6654
E-mail: ggarman@gordonsilver.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@gordonsilver.com
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89169
Telephone (702) 796-5555
Facsimile (702) 369-2666
Attorneys for Fertitta Enterprises, Inc.

E-Filed On May 27, 2009

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>XYIENCE, INCORPORATED,<br>a Nevada corporation,<br><br>Debtor. | Case No.: BK-S-08-10474-MKN<br>Chapter 11 |
| XYIENCE INCORPORATED,<br>a Nevada corporation,<br><br>Plaintiff,<br>v.<br><br>RICHARD BERGERON, an individual,<br><br>Defendant. | Adversary No. 08-1082-MKN |
| RICHARD BERGERON, an individual,<br><br>Counterclaimant,<br>v.<br><br>XYIENCE INCORPORATED, a Nevada corporation; FERTITTA ENTERPRISES, INC., a Nevada corporation,<br><br>Counterdefendants. | **<u>MOTION OF COUNTERDEFENDANT, FERTITTA ENTERPRISES, INC., TO STRIKE AFFIDAVITS FILED BY DEFENDANT/COUNTERCLAIMANT, RICHARD BERGERON, AND FOR CIVIL CONTEMPT AND FILING BAR</u>**<br><br>Date: July 1, 2009<br>Time: 9:30 a.m. |

Counterdefendant, Fertitta Enterprises, Inc., a Nevada corporation ("Fertitta Enterprises"), by and through its counsel, the law firm of Gordon Silver, hereby submits its Motion (the "Motion") requesting that the Court strike the five (5) additional affidavits (collectively, the "Affidavits") [Adv. Docket Nos. 169-173] filed by Defendant/Counterclaimant, Richard Bergeron ("Mr. Bergeron") in this matter after the close of briefing and while the matters were submitted for decision with the Court. The Motion also requests that the Court hold Mr. Bergeron in civil contempt of court and impose a filing bar on him as a vexatious litigant. This Motion is made and based on the Request For Judicial Notice In Support Of Motion Of Counterdefendant, Fertitta Enterprises, Inc., To Strike Additional Affidavits Filed By Defendant/Counterclaimant, Richard Bergeron, And For Civil Contempt And Filing Bar (the "RJN"), the points and authorities that follows, the papers and pleadings on file herein, judicial notice of which is respectfully requested, and any argument of counsel made at the hearing on this matter.

## I.
## STATEMENT OF FACTS

1. On January 21, 2009, Mr. Bergeron filed his Amended Motion for Rule 11 and 9011 Sanctions (the "Amended Sanctions Motion") [Adv. Docket No. 136], which sought sanctions against Plaintiff/Counterdefendant, Xyience, Inc. ("Xyience"), Fertitta Enterprises, the Nonparties, and others.[1]

2. On January 30, 2009, the Court entered a decision and order granting the Motion to Dismiss filed by Fertitta Enterprises, thereby dismissing Mr. Bergeron's Amended Counterclaim against it with prejudice for failure to state a claim upon which relief can be granted [Adv. Docket Nos. 141 and 142]. As such, there are currently no claims pending against Fertitta Enterprises in this litigation; rather, the only matter remaining pending against Fertitta Enterprises is Mr. Bergeron's ill-conceived and wholly improper Amended Sanctions Motion. By contrast, Xyience still has claims pending against Mr. Bergeron, and Mr. Bergeron still has

[1] Unless otherwise indicated, all capitalized terms shall have the same meaning as set forth in the Sanctions Opposition (as hereinafter defined) filed by Fertitta Enterprises.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

claims pending against Xyience.

3. Also on January 30, 2009, the Court entered a decision and order denying what Mr. Bergeron called his Motion for an Immediate Show Cause Hearing to Strike the Perjured Declarations of Adam Frank and Jamie Cogburn; and Motion to Vacate the Clark County District Court's Modified Preliminary Injunction Order (the "Motion to Strike") [Adv. Docket Nos. 138 and 139].

4. On February 10, 2009, Fertitta Enterprises filed its Opposition (the "Sanctions Opposition") [Adv. Docket No. 150] to Mr. Bergeron's Amended Sanctions Motion.

5. On February 11, 2009, Xyience filed a Joinder [Adv. Docket No. 153] to Fertitta Enterprises' Sanctions Opposition.

6. On February 17, 2009, Mr. Bergeron filed his Motion to Reconsider [Docket No. 156] (the "Reconsideration Motion"), which sought to reconsider the Court's decision and order denying his Motion to Strike. As this Court is aware, Fertitta Enterprises took no position with respect to Mr. Bergeron's original Motion to Strike (other than a reservation of rights), as it was not a party to the litigation when Xyience sought the Preliminary Injunction Order, and has never adopted or advocated the Declarations of Adam Frank and Jamie Cogburn referenced therein. [Adv. Docket No. 122, p. 7]. In fact, the decision on Mr. Bergeron's Motion to Reconsider has no impact whatsoever on Fertitta Enterprises, or the decision on Mr. Bergeron's Amended Sanctions Motion vis-à-vis Fertitta Enterprises. In keeping with the foregoing, Fertitta Enterprises did not file any opposition to Mr. Bergeron's Reconsideration Motion either.

7. On February 24, 2009, the Court entered its Order On Ex Parte Motion Of Defendant/Counterclaimant Richard Bergeron For (1) Waiver Of Pleading Page Limit; (2) Continuance Of Scheduling Conference And Amended Rule 11 And 9011 Hearings; And (3) Priority Scheduling Of Motion To Reconsider Hearing (the "Scheduling Order") [Adv. Docket No. 160], which ordered as follows:

> 3. The following briefing schedule applies to the Amended Sanctions Motion as well as the Reconsideration Motion:
>
> (A) Mr. Bergeron's reply brief, if any, in support of the

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

> Amended Sanctions Motion must be served and filed no later than March 13, 2009;
>
> (B) Xyience's opposition and Fertitta's opposition, if any, to the Reconsideration Motion must be served and filed no later than March 13, 2009; and
>
> (C) Mr. Bergeron's reply brief, if any, in support of the Reconsideration Motion must be served and filed no later than March 26, 2009.
>
> 4. Upon close of the briefing period, both matters are deemed submitted.
>
> 5. In the event the court determines that oral argument will assist in the disposition of the submitted matters or that an evidentiary hearing is required, a scheduling order shall be issued. In the event of an evidentiary hearing is required in these matters, live testimony will be required of any witness offered by any party.

See id. at p. 3.

8. Following entry of the Scheduling Order, the parties filed the following additional papers:

a. On March 12, 2009, Mr. Bergeron filed his Reply [Adv. Docket No. 165] to the Xyience's Joinder in Fertitta Enterprises' Opposition to his Amended Sanctions Motion;

b. On March 13, 2009, Xyience filed its Opposition [Adv. Docket No. 164] to Mr. Bergeron's Reconsideration Motion; and

c. On March 20, 2009, Mr. Bergeron filed his Reply [Adv. Docket No. 168] to Fertitta Enterprises' opposition to his Amended Sanctions Motion.

Mr. Bergeron did not file any reply to Xyience's opposition to his Reconsideration Motion.

9. On May 5, 2009, which was forty (40) days after the close of briefing and after the matters had been submitted to the Court for decision per the Scheduling Order, Mr. Bergeron filed five (5) new Affidavits in support of his Amended Sanctions Motion, and without having sought or obtained leave of Court.

10. Four of the five Affidavits were all dated prior to the time Mr. Bergeron filed his





Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

Amended Sanctions Motion on January 21, 2009. Specifically, the Lesker Affidavit [Adv. Docket No. 169], was dated November 20, 2008; the Clark Affidavit [Adv. Docket No. 170], was dated December 21, 2008; the Bojrab Affidavit [Adv. Docket No 172], was dated December 18, 2008; and the Douglas Affidavit [Adv. Docket No. 173], was dated December 20, 2008.

11. The only remaining affidavit is the Corder Affidavit (the "Corder Affidavit") [Adv. Docket No. 171], which has an incorrect pleading cover on it that identifies it as the Clark Affidavit. The Corder Affidavit testifies that Mr. Corder was a shareholder of Xyience, and that the shares have now been rendered worthless by Xyience's bankruptcy filing.

## II. LEGAL ARGUMENT

### A. The Additional Affidavits Filed By Mr. Bergeron Should Be Stricken.

12. There is no reason Mr. Bergeron could not have filed all of his Affidavits by the close of briefing on his Amended Sanctions Motion (i.e., March 13, 2009) as required by the Scheduling Order. The Lesker, Clark, Bojrab and Douglas Affidavits were all dated in 2008, and thus were available at least three (3) months prior to the close of briefing on the Amended Sanctions Motion. As such, these four of the Affidavits must be stricken as untimely.

13. Moreover, these four Affidavits add absolutely nothing of relevance to the Amended Sanctions Motion; rather, they are simply what amounts to impact statements for disgruntled Xyience shareholders.

14. The Corder Affidavit, being the only remaining Affidavit, which is dated as of April 13, 2009, also adds absolutely nothing of relevance to Mr. Bergeron's Amended Sanctions Motion. If anything, all five of the Affidavits reflects the continuing damage Mr. Bergeron is causing by soliciting former Xyience shareholders for such affidavits with the apparent promise that he is their sole hope for obtaining a recovery on their failed investments, when he, in fact, has no standing to pursue their claims as a matter of law. Mr. Bergeron is engaged in the improper practice of law in this regard.

15. Moreover, to the extent the Corder Affidavit suggests that he did not have notice of Xyience's bankruptcy filing, this is patently false, as Mr. Corder was a plaintiff in the

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

shareholder action filed against Xyience and Fertitta Enterprises, Adv. No. 08-01107, which case has since been dismissed, and was also a party to an opposition to Xyience's request to use of cash collateral [Docket No. 67] at the outset of the bankruptcy case. As such, Mr. Corder had full notice of Xyience's bankruptcy filing, and thus there is no reason why his Affidavit also could not have been filed by the close of briefing on the Amended Sanctions Motion.

16. LR 9014(c)(2) provides that the Court may strike affidavits failing to comply with the requirements of subsection (c) of that rule. LR 9014(c) incorporates LR 9017, which rule provides for specific deadlines for the submission of evidence prior to a hearing on a contested matter. See LR 9017(d). As such, the Court can and should strike the Affidavits as being filed in violation of this rule.

**B. Mr. Bergeron Should Be Held In Civil Contempt Of Court.**

17. Mr. Bergeron's filing of the Affidavits is not merely a violation of the Local Rules; rather, even more egregious, it is a direct violation of the Court's Scheduling Order. A bankruptcy court may exercise civil contempt powers pursuant to the authority granted by Section 105(a) of the Bankruptcy Code. See In re USA Commercial Mortgage Co., Case No. BK-S-06-10725-LBR, Docket No. 7012, p. 7 (Bankr. D. Nev. Apr. 7, 2009)[2] (citing Caldwell v. Unified Capital Corp. (In re Rainbow Magazine), 77 F.3d 278, 284-85 (9th Cir. 1996); Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1189 n.13 (9th Cir. 2003) (stating that Rainbow Magazine's holding that civil contempt powers may be exercised by bankruptcy courts is the "settled law of the circuit")).

18. A violation of a specific and definite order of the court allows the court to invoke its civil contempt powers. See id. at pp. 7-8 (citing Renwick v. Bennett (In re Bennett), 298 F.3d 1059, 1069 (9th Cir. 2002) ("The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court.")). As such, the Court should find Mr. Bergeron in civil contempt for his violation of the Affidavits in violation of the Scheduling

[2] For ease of reference, a copy of this document, being an Order to Show Case entered by the Honorable Bruce A. Markell, is attached hereto as Exhibit "1."

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

Order, and impose an appropriate sanction.

19. In levying an appropriate form of sanction, the Court should review the totality of circumstances in this case, including but not limited to Mr. Bergeron's frivolous, harassing and duplicative filings throughout this case as previously addressed in Fertitta Enterprises' Sanctions Opposition. Mr. Bergeron continues to advocate his Amended Sanctions Motion, even all of his underlying claims for relief against Fertitta Enterprises have been dismissed for failure to state a claim upon which relief can be granted (a second time).

20. Further, Mr. Bergeron has indicated that even though the Court has dismissed all of his claims against Fertitta Enterprises in this action, he will institute another frivolous action against Fertitta Enterprises on behalf of Xyience shareholders to obtain some form of recovery as a result of the bankruptcy case. The evidence of Mr. Bergeron's bad faith, however, is not limited to the case at hand.

**C. <u>The Eppley Action Is Further Evidence Of Mr. Bergeron's Bad Faith.</u>**

21. Fertitta Enterprises has learned that Mr. Bergeron has recently been sued in other litigation, wherein he has engaged in a similar pattern of frivolous and harassing filings. Specifically, on March 30, 2009, Dr. Barry Eppley, MD, DMD ("Dr. Eppley") commenced an action against Lucille Iacovelli ("Ms. Iacovelli") in the U.S. District Court for the Southern District of Indiana (the "District Court"), being <u>Eppley v. Iacovelli</u>, Case No. 1:09-cv-00386-SEB-JMS (S.D. Ind. 2009) (the "Eppley Action"). <u>See</u> RJN, Ex. 1.

22. Dr. Eppley's Verified Complaint (the "Eppley Complaint") alleged claims against Iacovelli for defamation, trade disparagement, harassment, false designations and descriptions of fact, false light publicity, and injunctive relief. <u>See id.</u> at Ex. 2 (without exhibits). Mr. Bergeron has acted as Ms. Iacovelli's legal "representative" throughout this litigation, and continued to ghostwrite pleadings on her behalf. <u>See id.</u> at Ex. 6.

23. Dr. Eppley sought and obtained a temporary restraining order and preliminary injunction against Ms. Iacovelli, and those acting in concert with her, including Mr. Bergeron, for engaging in certain improper actions, including posting allegedly defamatory articles on the internet about Dr. Eppley. <u>See id.</u> at Exs. 3, 4, 7, 12-15. Mrs. Iacovelli and Mr. Bergeron

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

thereafter proceeded to violate those orders, and contempt proceedings were thereafter initiated and granted, with the issue of an appropriate sanctions against them remaining pending. See id. at Ex. 18.

24. The District Court has also entered an order prohibiting Mr. Bergeron from engaging in the unauthorized practice of law on behalf of Ms. Iacovelli, see id. at Ex. 4, and various other filings of Mr. Bergeron in the case. See id. at Exs. 5, 8, 9, 11, and 17. For example, and similar to the instant case, in the Eppley Action, Mr. Bergeron has attempted to recuse the presiding judge, which efforts have been rejected. See id. at Exs. 10, 16 and 19. Also similar to this case, in the Eppley Action, Mr. Bergeron, by and through Mrs. Iacovelli, has requested Rule 11 sanctions against Dr. Eppley and his counsel in the frivolous amount of $1,000,000.00, which rule he is again misusing to try and get "damages" even though he has no claims for relief or standing. See id. at Ex. 1 (docket entries 72 and 73). In sum, the Eppley Action demonstrated that Mr. Bergeron's has a history of engaging in similar frivolous litigation tactics, which the Court should also take into account in deciding the appropriate sanction in the case at hand.

**D. Mr. Bergeron Is A Vexatious Litigant And A Filing Bar Must Be Imposed.**

25. Under the power granted by Section 105(a) of the Bankruptcy Code, a bankruptcy court has the inherent power to sanction vexatious conduct. See Universal Bank, NA. v. Marvel (In re Marvel), 265 B.R. 605, 609 (Bankr. N.D. Cal. 2001); In re Rainbow Magazine, 77 F.3d 278, 283-84 (9th Cir. 1996). For a court to exercise its inherent power to sanction vexatious conduct, it must find that the litigant's conduct constituted bad faith. See Marvel, 265 B.R. at 609. The bad faith requirement can be satisfied when reckless conduct is "combined with an additional factor such as frivolousness, harassment, or an improper purpose." Gomez v. Vernon, 255 F.3d 1118, 1134 (9th Cir. 2002). A *pro se* litigant is subject to inherent power sanctions for engaging in bad faith conduct. See Van Sickle v. Holloway, 791 F.2d 1431, 1437 (10th Cir. 1986); Di Silvestro v. United States, 767 F.2d 30, 32 (2d Cir. 1985).

26. Inherent power sanctions for bad faith conduct are warranted in a wide variety of situations. Bad faith can exist, for example, where a litigant: (a) knowingly or recklessly raises a

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

frivolous argument, (c) argues a meritorious claim for the purpose of harassing an opponent, or (c) delays or disrupts the litigation. See Primus Auto. Fin. Servs., Inc. v. Batarse, 115 F.3d 644, 649 (9th Cir. 1997).

27. In addition to Section 105(a) of the Bankruptcy Code, the All Writs Act, 28 U.S.C. § 1651(a), provides the inherent power to enter pre-filing orders against vexatious litigants. See Molski v. Evergreen Dynasty Corp., 500 F.3d 1047, 1057 (9th Cir. 2007) (citing Weissman v. Quail Lodge Inc., 179 F.3d 1194, 1197 (9th Cir. 1999)); see also Kristan v. Turner (In re Kristan), 395 B.R. 500, 511 (B.A.P. 1st Cir. 2008).

28. "Flagrant abuse of the judicial process cannot be tolerated because it enables one person to preempt the use of judicial time that properly could be used to consider the meritorious claims of other litigants." Id. (quoting De Long v. Hennessey, 912 F.2d 1144, 1148 (9th Cir. 1990); and citing O'Loughlin v. Doe, 920 F.2d 614, 618 (9th Cir. 1990)). In De Long, the Ninth Circuit outlined four (4) factors for courts to examine before entering pre-filing orders, as follows:

> (1) The litigant must be given notice and a chance to be heard before the order is entered;
>
> (2) The court must compile "an adequate record for review;"
>
> (3) The court must make substantive findings about the frivolous or harassing nature of the partys litigation;
>
> (4) The vexatious litigant order "must be narrowly tailored to closely fit the specific vice encountered."

Id. (quoting De Long, 912 F.2d at 1147-48); see also Reilly v. Hussey (In re Reilly), 112 B.R. 1014, 1017 (B.A.P. 9th Cir. 1990) (citing cases).

29. The first two requirements are procedural considerations--that is, the factors define a specific method or course of action that courts should use to assess whether to declare a party a vexatious litigant and enter a pre-filing order. See id. at 1057-58. The latter requirements, are substantive considerations--that is, the factors help the court define who is, in fact, a "vexatious litigant" and construct a remedy that will stop the litigant's abusive behavior while not unduly infringing the litigant's right to access the courts. See id. at 1058.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

30. The first requirement—giving the litigant notice and a chance to be heard before the vexatious litigant order is entered—is satisfied by the filing of a motion and allowing the litigant to brief the issue or be heard at the hearing on the matter. See id. at 1058-59.

31. The second requirement—whether the court created an adequate record for review—is satisfied when the court includes a listing of all cases or motions that led the district court to conclude that a vexatious litigant order was needed, and a discussion or outline of them. See id. at 1059.

32. In applying the third and fourth requirements, which are the substantive requirements, the Ninth Circuit has held that the Second Circuit's five (5) factor test in Safir v. United States Lines, Inc., 792 F.2d 19 (2d Cir. 1986), provides a helpful framework in interpreting and applying these two substantive factors. See Molski, 500 F.3d at 1058 (citing Safir, 792 F.2d at 24). The five Safir factors are as follows:

> (1) The litigant's history of litigation and in particular whether it entailed vexatious, harassing, or duplicative suits;
>
> (2) The litigant's motive in pursuing the litigation, for example, whether the litigant had a good faith expectation of prevailing;
>
> (3) Whether the litigant is represented by counsel;
>
> (4) Whether the litigant has caused unnecessary expense to the parties or placed a needless burden on the courts; and
>
> (5) Whether other sanctions would be adequate to protect the courts and other parties.

Id. (citing Safir, 792 F.2d at 24).

33. In applying the third factor—"substantive findings about the frivolous or harassing nature of the party's litigation"—the court must "look at both the number and content of the filings as indicia of the frivolousness of the litigant's claims." Id. (quoting De Long, 912 F.2d at 1148). "An injunction cannot issue merely upon a showing of litigiousness. The plaintiff's claims must not only be numerous, but also be patently without merit." Id. (quoting Moy v. United States, 906 F.2d 467, 470 (9th Cir. 1990)).

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

34. The fourth and final factor is that the pre-filing order must be narrowly tailored to the vexatious litigant's wrongful behavior. See id. at 1061. In the case at hand, this could be accomplished by limiting the filing bar imposed against Mr. Bergeron to just matters dealing with Fertitta Enterprises and any of the Nonparties against whom he brought his Amended Sanctions Motion, and also limited to matters arising out of or related to the Xyience bankruptcy case, including but not limited to any claims of Xyience shareholders. Such a filing bar would need to exclude Xyience, at least at this juncture, as Xyience and Mr. Bergeron still have active claims pending against each other in this case.

35. This Court has given Mr. Bergeron every opportunity to plead his case, yet he has repeatedly failed to establish a claim upon which relief could be granted. Now, with all else having failed him, he continues to press his Amended Sanctions Motion with the filing of the five (5) additional Affidavits that add absolutely nothing of relevance. As such, Fertitta Enterprises a permanent solution needs to be imposed to put an end to Mr. Bergeron's frivolous, harassing and duplicative filings.

## III.
## CONCLUSION

WHEREFORE, Fertitta Enterprises respectfully requests that the Court order as follows:

1 Strike Mr. Bergeron's Affidavits as untimely and filed in violation of the deadlines ordered in the Scheduling Order;

2. Hold Mr. Bergeron in civil contempt for his filing the Affidavits in violation of the deadlines imposed in the Scheduling Order, and impose an appropriate sanction including but not limited to a bar on his filing any further pleadings as set forth herein;

3. Award Fertitta Enterprises its reasonable attorneys' fees and costs in having to file this Motion, as it was filed in response to Mr. Bergeron's Affidavits, which are a mere continuation of his improper Amended Sanctions Motion, for which Fertitta Enterprises already has a request pending that it be awarded its reasonable attorneys' fees and costs as set forth in its Sanctions Opposition; and

. . .





Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

4. Grant Fertitta Enterprises such other and further relief as is just and proper.

DATED this 27th day of May, 2009.

GORDON SILVER

By: ______________________
GREGORY E. GARMAN, ESQ.
MATTHEW C. ZIRZOW, ESQ.
Attorneys for Fertitta Enterprises, Inc.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

# EXHIBIT "1"

**Entered on Docket**
**April 07, 2009**

Hon. Bruce A. Markell
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

* * * * * *

| | |
|---|---|
| In re:<br><br>USA COMMERCIAL MORTGAGE COMPANY,<br><br>USA CAPITAL REALTY ADVISORS, LLC,<br><br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br><br>USA CAPITAL FIRST TRUST DEED FUND, LLC, and<br><br>USA SECURITIES, LLC,<br><br>Debtors. | Case No. BK-S-06-10725-LBR<br>Case No. BK-S-06-10726-LBR (closed)<br>Case No. BK-S-06-10727-LBR<br>Case No. BK-S-06-10728-LBR (closed)<br>Case No. BK-S-06-10729-LBR (closed<br><br>CHAPTER 11<br><br>Jointly Administered Under Case No. BK-S-06-10725-LBR<br><br>Date: May 27, 2009<br>Time: 9:30 a.m.<br>Courtroom: 3 |

**ORDER TO SHOW CAUSE**

The court orders CURTIS F. CLARK to appear and show cause why he has not violated FED. R. BANKR. P. 9011 and FED. R. BANKR. P. 9018, why the court should not bar Mr. Clark from filing further documents without obtaining prior court approval, and why Mr. Clark's conduct does not warrant referral to the district court for criminal contempt proceedings. The hearing on this order to show cause will be held on **May 27, 2009, at 9:30 a.m.**, in the Foley Federal Building, 300 Las Vegas Blvd. South, Las Vegas, Nevada, in Courtroom #3, before Judge Bruce A. Markell.

## FACTS

On February 12, 2009, the court clerk's office received and subsequently docketed a signed document from Curtis Clark (dkt. #6813) (the "Clark Response"). This document was sent in response to a motion filed by USACM Liquidating Trust, which sought the court's approval of a settlement with Debt Acquisition Company of America V, LLC.[1] The Clark Response offered general objections to the settlement, and set forth five particular objections/issues that Mr. Clark wished to bring to the court's attention. See Clark Response. The fifth such objection was entitled "Compass Partners." Id. ¶¶ 10-12. That entry stated:

> The Bankruptcy Court is a brothel. The John, Compass/Silar, paid $ 63 Million up front; to join the working girls. The madam, Judge Linda, pays the working girls and provides the condoms. This orgy is an all nighter.
>
> The Caps[2] are supposed to work for the Investors, yet completely ignored and/or covered up the Compass/Silar fraud. Judge Linda refused to acknowledge the Lenders Protection Group.
>
> LPG have been forced to hired their own attorney to force Compass/Silar to provide an accounting of interest received, loans paid off, and /or the status of foreclosed property. Something the 4 Trustees, Receiver and Manager and all of their attorneys, accountants, consultants and Court whores should have done.

Id. After receiving and reviewing this response, Judge Linda B. Riegle, the bankruptcy judge hearing this jointly administered case, recused herself from hearing all contempt or other disciplinary proceedings related to the Clark Response, and transferred those matters to the undersigned judge. See Recusal Order, February 19, 2009 (dkt. #6837).

---

[1] See Motion To Approve Settlement With Debt Acquisition Company Of America V, LLC (dkt. #6770). The settlement was approved on March 4, 2009. See Order Granting Motion To Approve Settlement With Debt Acquisition Company Of America V, LLC (dkt. #6893).

[2] Mr. Clark's response defines "CAPS" as "Court Appointed Parasites," and suggests that this term encompasses any trustee or other professional associated with these cases. See Clark Response ¶¶ 1-2. In Mr. Clark's words, CAPS refers to: "4 Trustees, a Receiver and a Manager. . . . Each [with] their own team of so-called experts: attorneys, accountants, consultants and Court whores." Id. ¶ 1.

## DISCUSSION

Mr. Clark's response to the proposed settlement casts aspersions on Judge Riegle, personally, and it questions the integrity of the bankruptcy court and the propriety of several aspects of the present case generally. Given the nature of the personal aspersions, it was appropriate (but not necessary) for Judge Riegle to transfer all matters related to the form and substance of the response to this judge. See Mayberry v. Pennsylvania, 400 U.S. 455, 465-66 (1971); United States v. Engstrom, 16 F.3d 1006, 1011 (9th Cir. 1994).

Upon review, there are at least five statements which may violate the Federal Rules of Bankruptcy Procedure and which may constitute cause to refer this matter to the district court for criminal contempt proceedings. The five objectionable statements are:

1. Stating that the Bankruptcy Court is a "brothel";
2. Stating that Judge Linda B. Riegle is a "madam";
3. Implying that professionals employed by the estate are comparable to prostitutes by stating that they are "working girls";
4. Stating that Judge Riegle "provides the condoms";
5. Likening the proceedings in the bankruptcy court to an "all night orgy."

Clark Response ¶ 10. Although these five statements alone are shocking, the entire Clark Response is beset with so many statements that could violate the federal rules or may be cause to make a criminal referral that the entire Clark Response is the subject of this order to show cause.

With respect to a possible violation of the federal rules, the applicable rules are FED. R. BANKR. P. 9011 and FED. R. BANKR. P. 9018. With regard to contempt, the applicable type of contempt is criminal contempt; however, the court recognizes that it does not have the authority to hold a party in criminal contempt. Notwithstanding this limitation, the court may make a referral of a matter to the district court so that criminal contempt proceedings may by commenced. These matters are discussed below.

### *A. Fed. R. Bankr. P. 9011*

In relevant part, FED. R. BANKR. P. 9011(b) provides:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, –
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; [and]
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Pursuant to FED. R. BANKR. P. 9011(c)(1)(B), the court, "[o]n its own initiative, [] may enter an order describing the specific conduct that appears to violate [FED. R. BANKR. P. 9011] subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto."

The Clark Response, and in particular the five statements identified above, may violate FED. R. BANKR. P. 9011(b)(1), as the response could reasonably be understood to be presented for an improper purpose. The indicated statements cast personal aspersions on Judge Riegle and could be construed as having been presented merely to harass her. To the extent that such statements could be transmutated into objections to the retention of particular estate professionals, such objections would still be improper, within the meaning of subsection (b)(1), in a response to a motion to approve a settlement (in that, assuming proper form and language, such objections would more likely be proper in response to applications to employ such professionals, or in response to motions to award fees to such professionals). Additionally, the response contains a variety of other

statements that appear to be presented for an improper purpose, as these statements do not argue a particular point and appear to be merely inflammatory.[3] Therefore, Mr. Clark is to appear and show cause that his response to the motion to approve settlement was in compliance with FED. R. BANKR. P. 9011(b)(1).

The Clark Response may also be in violation of subsections (b)(2) and (b)(3) of Rule 9011. The response makes several factual allegations that do not appear to be supported by the record, and it makes a variety of legal assertions that do not seem warranted by existing law. However, the court acknowledges that the record in these consolidated cases is substantial, and therefore Mr. Clark should have an opportunity to demonstrate the propriety of his response. Therefore, Mr. Clark is ordered to appear and show cause that his response was in compliance with FED. R. BANKR. P. 9011(b)(2) and (b)(3). Mr. Clark shall show, with admissible evidence, that each fact stated in his motion is supported by the record, and that the legal contention that such facts should be considered by the court in conjunction with its determination on whether to approve the USACM settlement is supported by existing law (or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law). Alternatively, to the extent that such statements are hyperbole, Mr. Clark shall show that such excesses were permissible advocacy and not attacks on Judge Riegle personally, or the bankruptcy court process generally.

### *B. FED. R. BANKR. P. 9018*

FED. R. BANKR. P. 9018 permits the court, "[o]n motion or on its own initiative, with or without notice, [to] make any order which justice requires . . . to protect any entity against scandalous or defamatory matter contained in any paper filed in a case under the Code."[4]

---

[3]For example, paragraph 13 of the Clark Response states that "[t]he USACM bankruptcy has proven to be a Judicial Farce. . . . Its sole purpose is to provide long term employment for Count Appointed Parasites. . . . The Investors have been screwed - twice."

[4]Rule 9018 is sufficiently similar to FED. R. CIV. P. 12(f) to warrant the use of Rule 12(f) case law to interpret Rule 9018. The primary difference between Rule 9018 and Rule 12(f) is that the bankruptcy rule is

"[S]candalous or defamatory material has been defined as material that would cause 'a reasonable person to alter their [*sic*] opinion of [a party] based on the statements therein, taking those statements in the context in which they appear.'" *In re* FiberMark, Inc., 330 B.R. 480, 507 (Bankr. D. Vt. 2005); see also Cobell v. Norton, 224 F.R.D. 1, 5 (D. D.C. 2004). Also, "[a]llegations may be stricken as scandalous if the matter bears no possible relation to the controversy or may cause the objecting party prejudice." Talbot v. Robert Matthews Distrib. Co., 961 F.2d 654, 664 (7th Cir. 1992). Material may be defamatory when it consists of untrue factual allegations. Knievel v. ESPN, 393 F.3d 1068, 1073-79 (9th Cir. 2005); Norse v. Henry Holt and Co., 991 F.2d 563, 567-68 (9th Cir. 1993).

Accordingly, if the Clark Response is found to be scandalous or defamatory, the court may strike it under Rule 9018. In this case, Mr. Clark has made several statements that appear to bear no possible relation to the issue presented to the court: whether the USACM settlement should be approved. Therefore, Mr. Clark shall appear and show cause why the entire Clark Response should not be stricken from the record under Rule 9018.

Additionally, the court has noted that, subsequent to the filing of the Clark Response, Mr. Clark has filed another document that may be found to be either scandalous or defamatory. See Letter from Curtis F. Clark, March 20, 2009 (dkt. #6968). This may indicate a pattern of improper behavior that requires court intervention. Pursuant to its powers under section 105(a) of the Bankruptcy Code, the court may bar Mr. Clark from filing anything further on the docket without first requesting court approval if Mr. Clark's actions are shown to be in bad faith.[5] Therefore, Mr.

---

broader – Rule 9018 applies to all documents, not just pleadings. Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983).

[5] 11 U.S.C. § 105(a) provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from,

Clark is to appear and show cause why the court should not make such an order barring Mr. Clark from making future court filings.

### *C. Referral of Criminal Contempt Matter*

At the hearing on the order to show cause, the court will also consider whether the form and content of the Clark Response provide cause for a referral to the district court for the initiation of criminal contempt proceedings. The court is considering making a criminal contempt referral because, as explained below, criminal contempt is the only type of contempt applicable under the circumstances.

There are two types of contempt: civil and criminal. F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc., 244 F.3d 1128, 1137-38 (9th Cir. 2001). The Supreme Court has noted that the distinction between the two forms of contempt is not always precise, and is determined by assessing the character of the relief that a contemplated sanction seeks to achieve. Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 827-28 (1994). To generalize, however, when a sanction seeks to coerce compliance with a court order, it is in the nature of civil contempt, and when a sanction is punitive and levied to vindicate the authority of the court or otherwise protect the integrity of the judicial process, it is in the nature of criminal contempt. See id.

In the Ninth Circuit, a bankruptcy court may exercise civil contempt powers, pursuant to the authority granted by 11 U.S.C. § 105(a). Caldwell v. Unified Capital Corp. (*In re* Rainbow Magazine), 77 F.3d 278, 284-85 (9th Cir.1996); Knupfer v. Lindblade (*In re* Dyer), 322 F.3d 1178, 1189 n.13 (9th Cir. 2003) (stating that Rainbow Magazine's holding that civil contempt powers may be exercised by bankruptcy courts is the "settled law of the circuit"). However, the court's civil contempt powers are not invoked with respect to the Clark Response, because Mr. Clark does not appear to have violated a specific and definite order of the court. See Renwick v. Bennett (*In re*

---

sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

Bennett), 298 F.3d 1059, 1069 (9th Cir. 2002) ("The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court."). Because any sanction levied against Mr. Clark would be related to the impropriety of the form and content of his response, if the Clark Response is contemptuous, it is so as a matter of criminal, not civil, contempt.[6] See Int'l Union, 512 U.S. at 829 ("When a contempt involves the prior conduct of an isolated, prohibited act, the resulting sanction has no coercive effect. . . . '[T]he defendant is furnished no key, and he cannot shorten the term by promising not to repeat the offense.'").

Bankruptcy courts do not have the authority to enter criminal contempt orders. Dyer, 322 F.3d at 1192-93 ("[T]he contempt authority conferred on bankruptcy courts under § 105(a) is a *civil* contempt authority. . . . [W]e conclude that criminal contempt sanctions are not available under § 105(a)."). In part, bankruptcy courts do not have criminal contempt authority because a person subject to a criminal contempt inquiry is entitled to certain constitutional and procedural protections, and the Ninth Circuit has determined that bankruptcy courts are "ill-equipped" to provide such protections. Dyer, 322 F.3d at 1193-94; see Int'l Union, 512 U.S. at 833 ("[C]riminal contempt sanctions are entitled to full criminal process."). Further, it has been suggested that the criminal contempt power of the judiciary may not be vested in a non-Article III court. Dyer, 322 F.3d at 1194 ("[A]llowing a non Article III court to adjudicate criminal contempt raises fundamental

---

[6]Courts have "inherent" powers that allow them to sanction bad faith conduct. Chambers v. NASCO, Inc., 501 U.S. 32, 55 (1991). A court's inherent authority is somewhat different from its authority to exercise powers relating to civil and criminal contempt. F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc., 244 F.3d 1128, 1136-38 (9th Cir. 2001). However, a bankruptcy court's inherent authority does not permit it to levy "serious punitive sanctions." Dyer, 322 F.3d at 1197. Moreover, whenever a court's inherent authority is exercised to impose sanctions that are criminal in nature, the various procedural rights and protections required when criminal contempt powers are exercised are invoked. Id.; F.J. Hanshaw, 244 F.3d at 1136-37 & n.5, 1139-40. Given that any sanction imposed would likely be "punitive and intended to vindicate the court's authority and the integrity of the judicial process" (as opposed to coercive), it is appropriate for the court to decline to couch any sanction in terms of its inherent powers, in favor of referring the matter to the district court for criminal contempt proceedings. See id. at 1138.

constitutional questions.").

Notwithstanding this limitation, a bankruptcy court may refer a criminal contempt matter to the district court for the district in which it sits.[7] Id. at n.17. Such a referral may be appropriate under the circumstances of this case. Therefore, Mr. Clark is ordered to appear and show cause why such a referral should not be made. In responding to this order, Mr. Clark is not foreclosed from arguing that he had a constitutional right to express himself as he did in the Clark Response, but, as set forth below, the court has anticipated that Mr. Clark may assert such right, and, having considered relevant First Amendment jurisprudence, it appears that, unless additional factors exist which are not apparent on the current record, Mr. Clark may not prevail on a claim that the First Amendment prevents this court from making a criminal referral or otherwise sanctioning Mr. Clark for his conduct in this case.

### *1. Mr. Clark's First Amendment Rights*

Mr. Clark's comments were inflammatory. Questioning the court's integrity by associating one of its judges with vile and illegal acts is at best questionable advocacy; at worst, it is sexist and puerile drivel that has no place in communications with the court. If Mr. Clark had chosen to publish his inflammatory comments by sending them in a letter to the local newspaper or putting them on a sign and displaying the sign on the public sidewalk in front of the courthouse, the court's ability to regulate that speech would be limited. Criminal contempt citations for judicial criticism that occurs in public has consistently been held to be impermissible by the Supreme Court.[8]

---

[7]The court notes that this referral procedure is qualitatively different from the procedure followed by some other courts, which entails permitting the bankruptcy court to make proposed findings and certify those findings to the district court. See Brown v. Ramsay (*In re* Ragar), 3 F.3d 1174, 1177-81 (8th Cir. 1993). If cause for referral is shown, instead of proposing findings of fact which may become final if Mr. Clark fails to object, see FED. R. BANKR. P. 9033, this court will merely refer the entire matter to the district court. It is this court's intention that if such a referral is made, the district court may initiate criminal contempt proceedings as a matter of its own discretion.

[8]This is rightly so, as it is neither keeping with the tradition nor spirit of this country to punish speech merely because the speaker is commenting on a member of the judiciary or a court case. Bridges v. State of

See New York Times Co. v. Sullivan, 376 U.S. 254 (1964).

> Where judicial officers are involved, this Court has held that concern for the dignity and reputation of the courts does not justify the punishment as criminal contempt of criticism of the judge or his decision. Such repression can be justified, if at all, only by a clear and present danger of the obstruction of justice.

Id. at 27 2-73 (internal citations and quotations omitted); see also Gentile v. State Bar of Nev., 501 U.S. 1030 (1991) (discussing the First Amendment as applied to a lawyer speaking to the press); Standing Comm. on Discipline of U.S. Dist. Court for Cent. Dist. of Cal. v. Yagman, 55 F.3d 1430 (9th Cir. 1995).[9]

Likewise, if Mr. Clark made the comments contained in the Clark Response directly to Judge Riegle during a court hearing and Judge Riegle had summarily sanctioned Mr. Clark for contempt, it is possible the court's ability to regulate Mr. Clark's speech would also be limited. The Supreme Court has explained that when a judge summarily sanctions a person for contemptuous in-court outbursts:

> 'The vehemence of the language used is not alone the measure of the power to punish for contempt. The fires which it kindles must constitute an imminent, not merely a likely, threat to the administration of justice. The danger must not be remote or even probable; it must immediately imperil . . . . (T)he law of contempt is not made for the protection of judges who may be sensitive to the winds of public opinion. Judges are supposed to be [persons] of fortitude, able to thrive in a hardy climate.' Craig v. Harney, 331 U.S. 367, 376 [] (1947). 'Trial courts . . . must be on guard against confusing offenses to their sensibilities with

---

Cal., 314 U.S. 252, 270-71 (1941) ("[E]nforced silence, however limited, solely in the name of preserving the digni[ty] of the bench, would probably engender resentment, suspicion, and contempt much more than it would enhance respect."); see also Standing Comm. on Discipline of U.S. Dist. Court for Cent. Dist. of Cal. v. Yagman, 55 F.3d 1430, 1434-35 (9th Cir. 1995) (discussed infra at note 9 and accompanying text).

[9]The court finds this case distinguishable from Yagman, 55 F.3d at 1430-45. First, unlike in Yagman, there was a matter pending before the court in this case – USACM's settlement approval motion. See id. at 1443. Second – and more significantly – Mr. Clark's statements were not made to the press or to Judge Riegle at a hearing; instead, they were incorporated into a substantive response to a settlement approval motion and filed on the court's public docket. See id. at 1434-35. Under such circumstances and for the reasons explained below, the court does not believe that the clear and present danger standard is applicable. See Spencer v. Dixon, 290 F. Supp. 531 (D. La. 1968); see also Hodges v. Gray, 321 Ark. 7, 17-18, 901 S.W.2d 1, 6 (1995); McCraw v. Adcox, 399 S.W. 2d 753 (Tenn. 1966); Cf. Yagman, 55 F.3d at 1445 with Int'l Soc. for Krishna Consciousness, Inc. v. Lee, 505 U.S. 672, 678 (1992).

> obstruction to the administration of justice.' Brown v. United States, 356 U.S. 148, 153 [] (1958).

*In re* Little, 404 U.S. 553, 555 (1972); see also Eaton v. City of Tulsa, 415 U.S. 697, 698 (1974) (finding it improper to find a person in contempt for the use of a single expletive, undirected at any particular person).

But Mr. Clark's communication was much different. He chose to publish his comments in the courthouse, by sending those comments to the court clerk, who was required to file the comments on the court's public electronic docket.[10] Mr. Clark's choice of forum – that is, his choice to express himself through and on the court's public docket – is of consequence with respect to the court's ability to regulate his expressive activities.

The court's ability to regulate speech on government property varies with the type of "forum" the property constitutes. Three types of forums have been recognized: (1) public forums; (2) designated or limited public forums; and (3) non-public or private forums. See Cornelius v. NAACP Legal Defense & Ed. Fund, Inc., 473 U.S. 788, 802 (1985); see also Int'l Soc. for Krishna Consciousness, Inc. v. Lee, 505 U.S. 672, 678 (1992) ("[Relevant caselaw] reflect[s], either implicitly or explicitly, a 'forum based' approach for assessing restrictions that the government seeks to place on the use of its property."). The government's ability to regulate expression is most limited when the government property at issue is a public forum, such as a public park or city sidewalk. Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45 (1983) ("[S]treets and parks . . . 'have immemorially been held in trust for the use of the public, and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.'") (quoting Hague v. Comm. Indus. Org., 307 U.S. 496, 515 (1939)). Government regulation is likewise limited when the property constitutes a "designated public forum," which may

---

[10] Fed. R. Bankr. P. 5005(a); see Klemm v. Astrue, 543 F.3d 1139 (9th Cir. 2008) (citing Cintron v. Union Pac. R.R. Co., 813 F.2d 917, 920 (9th Cir.1987) and Loya v. Desert Sands Unified Sch. Dist., 721 F.2d 279, 280 (9th Cir.1983)).

occur where the government has intentionally opened up its property for use by the public as a place for expressive activity. Perry Local Educ., 460 U.S. at 45-46; see also United States v. Am. Library Ass'n, Inc., 539 U.S. 194, 206 (2003).

Conversely, the government's ability to regulate expressive activity is great when its property constitutes a non-public or private forum. Davenport v. Wash. Educ. Ass'n, 551 U.S. 177 (2007); Good News Club v. Milford Central School, 533 U.S. 98, 131 (2001). And the court's docket, the means by which it gathers the parties' arguments in order to make decisions, is not a public forum. The purpose for its existence is limited: the cataloging and preservation of the documents considered by the court in the resolution of discrete disputes, and as a repository for the court's ruling on such matters. To efficiently serve these functions, many restrictions on the use of the docket exist: parties are, for example, limited to the number of pages they may use, the format in which their arguments may be presented, and whether they can use another citizen's private information. See Local Rules 9004; 9014; 11 U.S.C. §§ 107; 112; FED. R. BANKR. P. 9037. More importantly, however, Rule 9011 exists to ensure that arguments made are supported by recognized authority; Rule 9018 recognizes that scandalous and defamatory matter has no place in proper advocacy.

That the docket is open to the public, and that the clerk must accept all documents presented for filing,[11] are not indications that the docket is a public forum for citizens. Greer v. Spock, 424 U.S. 828, 836 (1976). Rather, it is a recognition of the transparency and fairness the court strives to maintain. It serves to illuminate the court's actions, not to provide disgruntled litigants with a forum to spew their bile. See American Library. As a result, given the status of the court's docket as a non-public forum, it follows that the court's ability to regulate expression on its public docket is greater than if it were a full public forum. Thus, with respect to the court's own docket, the government may control the time, place, manner, and even the content of speech. See

---

[11] See supra note 10 and accompanying text.

United States Postal Serv. v. Council of Greenburgh Civic Assocs., 453 U.S. 114, 129-30 (1981) ("[T]he First Amendment does not guarantee access to property simply because it is owned or controlled by the government. . . . [T]he State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated.") (internal quotations and citations omitted). The right of the government to regulate expression on its public docket is limited only by the requirements that the regulation be reasonable and that the "regulation is not an effort to suppress the speaker's activity due to disagreement with the speaker's view."[12] International Society, 505 U.S. at 678. That is the function of rules such as Rule 9011 and 9018.

Accordingly, while the First Amendment certainly protects Mr. Clark's right to express himself, that right is subject to reasonable regulation when the expression is done in connection with official court business that occurs within the courthouse on the court's own docket. Those regulations include Rule 9011 and Rule 9018, as well as the local rules on the format and filing of pleadings. These rules thus restrict matters which may be filed to those expressions that address the factual and legal issues before the court. These rules allow for robust, reasoned debate; they do not however, condone irrelevant and vituperative calumny. Given that these regulations are reasonable and do not regulate based on viewpoint, they are permissible restrictions on Mr. Clark's freedom of expression. Accordingly, as an initial matter, it does not appear that Mr. Clark's First Amendment rights would be impinged by a referral to the district court for criminal contempt proceedings.

***2. Law Governing Criminal Contempt***

If a criminal contempt referral is made, it will be made with reference to 18 U.S.C. §§ 401(1) and 401(3). "Criminal contempt under § 401(1) has four elements that must be proven beyond a reasonable doubt: (1) misbehavior, (2) in or near the presence of the court, (3) with criminal intent, (4) that resulted in an obstruction of the administration of justice." United States v.

[12]The "forum" analysis is applicable to non-physical property through which expression is transmitted, such as the court's on-line systems. Ark. Educ. Television Comm'n v. Forbes, 523 U.S. 666, 677 (1998) (using the forum analysis in the context of a television broadcast).

Ortlieb, 274 F.3d 871, 874 (5th Cir. 2001). Criminal contempt under section 401(3) "requires only that there has been 'disobedience or resistance" to a court's 'lawful . . . rule." United States v. Galin, 222 F.3d 1123, 1127 (9th Cir. 2000).

Courts have found litigants and counsel in criminal contempt for a variety of "misbehavior" and "disobedience." See Ortlieb, 274 F.3d at 873, 877 (upholding lawyer's contempt conviction for "repeatedly ma[king] vulgar and inappropriate comments to [the] Assistant United States Attorney . . . and the court" during the course of a six week trial); Galin, 222 F.3d at 1128 (contempt conviction upheld for lawyer that repeatedly violated courtroom protocol); United States v. Rrapi, 175 F.3d 742, 753-54 (9th Cir. 1999) (summary contempt for in-court outburst upheld); United States v. Brown, 832 F.2d 128, 131 (9th Cir. 1987) (contempt conviction upheld for in-court spectator that "interrupted the federal court proceeding by chanting slogans such as "No collaboration, no communication" and "Smash the grand jury," by clapping, and by resisting United States Marshals' directives to leave the courtroom. . . . [A] person of ordinary intelligence would know that such conduct in a courtroom is clearly prohibited by the statute."); In re Gustafson, 650 F.2d 1017, 1020 (9th Cir. 1981) (summary contempt upheld for, among other things, making a charge of judicial bias in closing remarks); see also Mayberry, 400 U.S. at 456-66 (remanded for re-trial before a new judge; on appeal from contempt conviction for continuously interrupting judge, using vulgar language, and otherwise engaging in conduct "not 'befitting an American courtroom'") (citations omitted); Illinois v. Allen, 397 U.S. 337, 343-44 (1970) (contempt citation would have been appropriate in response to criminal defendant's disruptive behavior in courtroom – court's alternative decision to remove defendant from courtroom was a more severe, but still appropriate, remedy to defendant's conduct); F.J. Hanshaw, 244 F.3d 1128-45 (remanded for retrial with greater procedural protections; contempt conviction arising from attempt to bribe a court-appointed receiver).

Although the court was unable to find a case that was directly analogous to the filing of

the Clark Response, these cases establish the propriety of criminal contempt convictions for litigants whose conduct was equally (and in some cases, less) reprehensible and violative of 18 U.S.C. § 401.

**CONCLUSION**

Mr. Clark is ordered to appear and show cause why he has not violated FED. R. BANKR. P. 9011 and FED. R. BANKR. P. 9018, why the court should not bar Mr. Clark from filing further documents without obtaining prior court approval and why the court should not make a criminal contempt referral of this matter to the United States District Court for the District of Nevada. Mr. Clark shall file a response to this order to show cause no later than **May 13, 2009**. Any party in interest, including the United States Trustee, may file a response to this order or Mr. Clark's response, with such filing to be made no later than **May 20, 2009**.

IT IS SO ORDERED.

Copies sent to:

BNC Mailing Matrix

ROB CHARLES on behalf of Attorney LEWIS AND ROCA LLP
rcharles@lrlaw.com, cjordan@lrlaw.com

U.S. TRUSTEE - LV - 11 - USTPRegion17.lv.ecf@usdoj.gov

FTI CONSULTING, INC.
2 NORTH CENTRAL AVENUE, STE 1200
PHOENIX, AZ 85004

LEWIS AND ROCA LLP on behalf of Creditor Committee OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR USA COMMERCIAL MORTGAGE COMPANY
3993 HOWARD HUGHES PKWY, #600
LAS VEGAS, NV

MARVIN C. RUTH on behalf of Plaintiff USACM LIQUIDATING TRUST
LEWIS AND ROCA LLP
40 N. CENTRAL AVENUE, SUITE 1900
PHOENIX, AZ 85004

AUGUST B. LANDIS
300 LAS VEGAS BLVD. S., #4300
LAS VEGAS, NV 89101

CURTIS F. CLARK
1403 PUEBLO DRIVE
BOULDER CITY, NV 89005

###