# ATTACHMENT A

# EXHIBIT "6"

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

==============================

**Dr. Barry Eppley, MD, DMD**

**Plaintiff,**

**v.**

**Lucille Iacovelli**
**Defendant.**

**CAUSE # 1:09-cv-0386SEB-JMS**

Lucille Iacovelli
Counter-Plaintiff

Rich Bergeron
Counter-Plaintiff

v.

Dr. Barry Eppley, MD, DMD
Counter-Defendant

Attorney Todd Richardson
Counter-Defendant

Lewis & Kappes Professional Corporation
Attorneys at Law
Counter-Defendant

# DEFENDANT'S ANSWER TO PLAINTIFF'S VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER, INJUNCTIVE RELIEF AND DAMAGES; AND COUNTERCLAIM FOR DECLAMATORY RELIEF

**"To use these problems by attempting to destroy those who protest against them is probably the most indecent thing that we can do. You can crucify Jesus, you can poison a Socrates, you can hang John Brown or Nathan Hale, you can kill a Che Guevara, you can jail a Eugene Debs or a Bobby Seale. You can assassinate John F. Kennedy or a Martin Luther King, but the problem remains. The solutions are essentially made by continuing and perpetuating with every breath you have the right of men to think, the right of men to speak boldly and unafraid, the right to be masters of their souls, the right to live free and die free."**

***Closing Argument by William M. Kuntsler in The State of Illinois v. Abbie Hoffman, et al.*, Chicago, Illinois, February, 1970.**

Defendant and Counter-Claimant Lucille Iacovelli, by way of fellow Counter-plaintiff Rich Bergeron, hereby answers the complaint of Plaintiff Dr. Barry Eppley, MD, DMD and requests the attachment of Attorney Todd Richardson and the law firm of Lewis & Kappes as counter-defendants, on personal knowledge as to each's own activities and on information and belief as to the activities of others, as follows.

Dr. Barry Eppley (hereinafter Eppley), Attorney Todd Richardson, and the law firm of Lewis & Kappes have schemed together to fabricate this frivolous litigation in what is clearly a massive abuse of process. Their complaint is based nearly entirely on an improperly classified "email" that purportedly came from Eppley's Web-site and was allegedly sent by Lucille Iacovelli herself. The "email" is actually not an email at all in the sense that it comes from anyone's inbox a site owner can verify.

The communication in question comes from a simple form that allows people to send comments and leave whatever email address and username they wish. This particular comment (now already on the docket as evidence) is very short and left by the username "lucillebella," using Lucille Iacovelli's G-mail address, which is public knowledge. Nowhere on the vast territory of the Internet that Iacovelli has made her mark of protest against Eppley has Lucille Iacovelli ever posted anything under that "lucillebella" tag or handle. In fact, a simple, quick, easy to perform "Google" search reveals a comment left on a critique of Eppley Lucille wrote that was left by "lucilebella" in May of 2007 (see exhibit D). The comment left is in full support of Eppley. Had Lewis & Kappes, Todd Richardson, and Dr. Barry Eppley done the slightest bit of research they could have avoided having Lucille committed to a mental psych ward as she was recently as a result of this bogus and fabricated public suicide threat.

Defendant and Counterclaimant Lucille Iacovelli has been speaking out for years about what Eppley did to her in 2001. Eppley performed surgical procedures on Iacovelli designed to correct previous surgical mistakes that were merely superficial at the time and did not interfere with Lucille's physical health. Today, because of the Eppley surgeries Lucille is confined to her home for most hours of the day, has to struggle for every breath, is forced to use several contraptions to help her alleviate the constant need to hold her facial muscles in the right position so she does not choke or suffocate, and has been living for the better part of a decade in this condition.

Dr. Eppley, Lewis & Kappes, and Attorney Todd Richardson have taken on this case with the intent to rush the process in a fraudulent manner. This goes beyond simple abuse of process and reaches borderline criminal behavior if it is discovered at any point that Eppley, Richardson, or the firm of Lewis & Kappes is in fact conspiring with the real originator of that public suicide comment posting. A thorough discovery phase in this case will show if this was simply a random critic or someone intimate with Eppley who forged that message for the very purpose of filing this suit in a manner that gives Lucille little time to respond. Iacovelli has evidence that this individual posting under the name "lucillebella" is in fact Eppley's business partner.

The Counter-Defendants have literally made a federal case out of this bogus public suicide threat. Lucille has no reason to gain "notoriety" in such a fashion. Furthermore, the remainder of the complaint and all the associated attachments and exhibits do not include a single formal affidavit or declaration from Eppley himself swearing he did not botch Lucille's operation in any fashion. Affidavits are attached to this very document from Lucille Iacovelli herself, Writer Rich Bergeron, and Documentary Filmmaker Erika Hahn. If necessary Affidavits will be sought from HBO Plastic Disasters Documentary Filmmakers Kate Davis and David Heilbroner as well.

The evidence will show Lucille Iacovelli has been through 8 years of personal Hell because of the damage Eppley did to her, and he is only filing this litigation to: serve his own ego; support his wealthy lifestyle by attracting rich clients who don't ask questions; and to try to force Lucille to voluntarily remove the truth about his past from the Internet. If anyone is creating a publicity stunt it is Eppley by immediately taking this to the federal level, having Lucille prematurely and needlessly committed for suicide watch observation to kick things off, and rushing the first hearing so it takes place less than a week after Iacovelli's been served all the paperwork.

The evidence will show Eppley made numerous past attempts to threaten other web-sites with litigation if they did not remove Lucille's well-founded complaints. Told he needed to address his concerns with Iacovelli herself, Eppley made further threats to at least one site administrator. (see exhibit A) Eppley has tried every trick in the book to get Lucille's postings taken off the Internet. Since he cannot find a way to bully her into doing it herself or get the sites she posts on to comply with his ridiculous demands, he fabricated this lawsuit to try to remove the truth from the Internet with a temporary restraining order. Allowing such an order to stand would be sanctioning a clear Prior Restraint and a direct violation of the First Amendment to the U.S. Constitution.

The Plaintiff's own evidence incriminates all the Counter-defendants. The commitment paperwork is there, the letter sent by Richardson that resulted in Lucille being taken into custody against her will, and even the basic description of the circumstances that show Lucille complained of adverse damage immediately after the surgery in a persistent and regular fashion. The plaintiff only casually dismisses Iacovelli's reports of post-op pain and other ailments without any adequate alternative explanation for her symptoms. Eppley provides no definitive evidence to show he did not injure Lucille, while on the contrary Lucille has thousands of documents, photographs, and materials chronicling the sad and agonizing life she's lived since the surgery.

As far as the persistent statements in the complaint that doctors have found nothing wrong with Lucille, those are baseless and fabricated conclusions. At least two doctors familiar with Lucille's condition have suggested a tracheotomy to relieve her breathing issues, but Lucille is certain this will not address her swallowing disorder (documented by fluoroscopic studies as caused by Eppley's operation), her retracted mandible, ear pain, tinnitus, and other debilitating conditions related to the surgery performed by Eppley.

Lucille Iacovelli lives on a poverty level income and cannot even afford to travel to Indiana for this hearing. Even if she could handle the trip physically, the plane ticket alone would bankrupt her. She could not afford to take legal action against Eppley for the damage done, so she did what she could afford to do out of a selfless duty to warn others of the dangers of plastic surgery. She took to the Internet where she's protested for years, though Eppley never sued before over any of her other past postings or her appearance on the HBO Documentary. She's written criticisms about Eppley for a long time, and the language of the complaint itself and all the supporting briefs and paperwork show that Eppley took this action not out of any compassion for Lucille. He did not get Lucille committed to save her life. He did it out of some foolish belief that it would save his business and his ego by allowing him an excuse to sue Lucille Iacovelli while she was still recovering from what was a horrendous ordeal for her when she was taken out of her home and committed against her will.

Furthermore, all of Eppley's harping about his vast accolades and accomplishments is irrelevant to whether or not he was a capable and qualified surgeon when he operated on Lucille in 2001. Even if he had achieved all those awards and certifications and such before the surgery, even the best surgeons make mistakes. There's no way Eppley can definitively prove he was absolutely impervious to making a mistake (or a series of mistakes) in surgery at the time he operated on

Lucille. In the face of Lucille's evidence that he did not make just one mistake, but a series of them, this complaint and Eppley's insistence through his lawyer that he is by no means culpable is hollow and does not bear any admissible legal evidentiary weight without a formal affidavit or declaration from the Doctor himself.

There is a reason Lucille Iacovelli was featured on the HBO Documentary "Plastic Disasters." She is literally a poster-child for the pitfalls of plastic surgery and has become a true Internet Icon for her courage to continue to adapt her daily routine to survive and continue to educate the masses about what happened to her at the hands of Eppley and other physicians. Her motivations lie in preventing other women from suffering the same fate, as her experience showed her Eppley acted in a severely negligent manner up to and including fabricating the operative report to show an anesthesiologist was in the room for Lucille's surgery when in fact that gentleman wrote her a signed letter that swore he was not. She has no choice but to be reminded every single day of the pain Dr. Barry Eppley caused her, and this litigation only jabs a hot poker into an open sore that will never heal.

Dr. Eppley, Lewis & Kappes, and Attorney Todd Richardson all willingly participated in concocting this frivolous litigation, representing a serious abuse of process on their part. The Defendant will also be filing a Dispositive Motion for Rule 11 Sanctions in response to the initial complaint and supportive filings that were put together without performing any adequate investigation or taking any appropriate precautions to verify who the comment on Eppley's site actually came from.

The law firm, attorney, and client should all be forced to pay appropriate damages to compensate Lucille for the mental, physical and financial stress this entire chain of frivolous litigation has already caused and is sure to cause in the future.

Counter-plaintiff Rich Bergeron is also due relief for being unjustly enjoined from supporting Lucille's efforts to spread the truth about what happened to her. Bergeron has collected voluminous notes and observed Lucille on numerous occasions. Attorney Richardson, Eppley, and Lewis & Kappes have done no investigation into Mr. Bergeron's background and have not charged him personally with any civil tort, yet somehow they seek to unconstitutionally enjoin him from writing about the facts of Lucille's case. This abuse of process would do direct damage to Mr. Bergeron's career as a significant amount of effort and work hours have been put into producing the book

already, and if Eppley is successful with this frivolous litigation Mr. Bergeron could be held in contempt for writing the truth.

## RESPONSE TO SPECIFIC ALLEGATIONS

1. The defendant and counter-claimants concurs with the plaintiff's contention as to the parties and addresses of residence. The defendant also concurs that this matter concerns damages exceeding $75,000.
2. Defendant and counter-claimants deny the allegations within paragraphs 4 and 5. While it is agreeable that there is a federal question involved in a First Amendment right to free speech case such as this, the venue of Indiana is not proper as the bulk of damage was done to Ms. Iacovelli and Mr. Bergeron in this matter. The counterclaims and attached evidence and affidavits will show Eppley's claims to be baseless. Ms. Iacovelli is in poor physical condition and cannot travel great distances. Dr. Eppley is a wealthy individual while Lucille Iacovelli and Rich Bergeron both live on a poverty level income. The most convenient venue for the most aggrieved parties here is Massachusetts (See Informa Pauperis paperwork from Bergeron and Iacovelli attached).
3. Defendant denies there are any trademark issues involved in this situation. The Lanham Act was not designed for individual names in relation to consumer complaints and criticism of an individual's personal actions. Furthermore, Lucille Iacovelli makes no profit off Mr. Eppley's name. She is not usurping his business or trying to capitalize on his client base in any manner.
4. Defendant and counter-claimants agree with paragraphs 4-8 in that Dr. Eppley is specialized, trained, certified and licensed to perform surgery and that he has marketed himself as a consummate expert in his field. Yet, his present state of training, certification, and notoriety has nothing to do with whether or not he has ever been involved in malpractice and negligence cases or botched surgeries in which patients could not afford to take legal action. Eppley's current credentials and background attached to his resume that he gained after the April 18, 2001 surgery have no bearing on whether or not he was susceptible to making a horrible series of rookie mistakes with Lucille's procedures at the time he performed them almost 8 years ago. Defendant also concurs that Eppley's name

may be trademarked. However, Lucille is using none of these marks in advertising a business of any sorts or in any way that is connected to her collecting any profit.

5. Defendant and counter-claimants deny the bulk of paragraph 10. Lucille Iacovelli's accusations have always been well-founded and documented. It is true that previous operations had been done and Ms. Iacovelli sought Dr. Eppley's assistance to correct the shortcomings of those previous procedures. However, the insinuation that Eppley did not know about these previous surgeries is altogether false.

6. Defendant and counter-claimants deny paragraph 11. Lucille Iacovelli has devoted countless hours of her life documenting through video, pictures, diagrams, and blogs the extensive damage done by the Eppley surgery. While Eppley himself may have never realized it during or immediately after the procedure, he was performing the kinds of nips and tucks on Lucille's face that would forever force her to adapt the way she breathes, eats, and performs daily tasks most people take for granted. He may have remembered the procedure was without incident, but he did not even properly document the anesthesiologist present, if there was one. (see exhibit B).

7. Defendant and Counter-Claimants concur with paragraph 12 except for the characterization of these efforts as unjustified behavior. Ms. Iacovelli's every waking moment has been permanently altered by Eppley's actions. Lucille had no other choice but to complain and seek restitution or corrective surgery of some sort to alleviate her suffering. Eppley smooth-talked her into having the initial procedures with him assuring he would do an excellent job and correct all the sagging left from botched pervious procedures. Eppley's surgical maneuvers went too far and did more than tighten skin. Muscles and other structure were damaged, separated and improperly stitched together. Ms. Iacovelli always provided extensive documentation and physical evidence with her criticisms of all the doctors who performed cosmetic procedures on her.

8. Defendant and Counter-Claimants Deny paragraphs 13 and 14. Ms. Iacovelli's allegations are all well-founded and based on extensive documentation, video and photographic evidence, and meticulously kept records. Ms. Iacovelli did not have these issues before the surgery. The previously unsatisfactory procedures did not affect her health adversely, but the work done by Eppley not only damaged her physically, it made her permanently wary

and afraid of medical establishments in general. She has found it hard to even conceive going under the knife again even if further surgery could somehow fix the extensively damaged muscles in her neck and face. A rugged outdoorswoman before the surgery, Lucille is now homebound most of her days and barely gets out to her back porch to fill her bird feeders. She struggles through supermarkets clutching a basket with her elbow so she can clamp down on her neck with her hands in order to breathe right. She drives often with a wooden spoon wedged in her neck. This is not feigned agony, suffering and constant adaptation to survive that Lucille must engage in on a daily basis, it is the real result of Eppley's poor surgical methods. Furthermore, at least two doctors have suggested based on knowledge of Lucille's condition that she get a tracheotomy for her breathing issues. These are not conclusions of people who believe nothing is wrong. Supporting affidavits will detail one such ear nose and throat doctor's suggestion to Lucille that was witnessed by both Lucille and Writer Rich Bergeron. Bergeron accompanied Iacovelli on a visit to Steven F. Mucci, M.D. on July 27, 2007 and heard Mucci recommend a tracheotomy. As far as the lack of a malpractice action against Eppley brought by Iacovelli, that does not take away from the fact that the surgery did extensive damage to Lucille. There is not very much in the way of accurate records to keep track of which doctors have been sued for malpractice and how often. The Internet has become one of the great independent industry regulators that allows people to communicate issues such as this and warn potential consumers of bad products or services. In this case, even a flawlessly performed service could potentially result in complications. Surgery is a great risk, and often those who get things named so cutely as "tummy tucks" and "nose jobs" don't think through the serious complications that can arise. One need only remember the death of Rapper Kanye West's mother from what was by all accounts a normal and successful and relatively minor cosmetic procedure. In a climate where doctors routinely protect each other for fear of malpractice rates going up for all physicians and hospitals, the death of a celebrity's mother might raise some eyebrows, but not the suffering of a poor, crippled woman from Cape Cod like Lucille Iacovelli.

9. Defendant and Counter-claimants concur with paragraph 15. All of Ms. Iacovelli's efforts were undertaken to provide some kind of relief for her suffering due to Eppley's botched

operation. She persisted in such a dedicated fashion only because she knew she was promoting the truth and posting important messages many other potential victims heeded. Lucille inspired countless people not to pursue plastic surgery period, be it from Eppley or any other qualified surgeon. Her communications may be considered harassment to Eppley, but it is impossible to even quantify the amount of pain Ms. Iacovelli endured because of Eppley and all the compounded life issues that extend from that pain and suffering. Consider the cold stares she encounters each time she ventures out to perform errands most of us find boring. To her they are an intense and stressful, increasingly agonizing task made worse when people ogle at her as she clutches a spoon pressed under her neck and walks through stores hunchbacked and wheezing.

10. Defendant and counter-claimants deny the allegations of paragraph 16 in that any of her postings or allegations have been false or improperly motivated.

11. Defendant and Counter-claimants concur with paragraphs 17 and 18 except for the classification of her campaign to promote the truth about her experience as false. The fact that she is proud of the extensive network she has built and that she has tried to negotiate settlements with Eppley are irrelevant to whether or not her material constitutes slander, defamation, or trademark infringement. The fact that her postings and educational efforts have resulted in Eppley losing business is only relevant if it is determined beyond a doubt that this is a result of wholly false accusations and allegations of wrongdoing. Eppley has provided no documentation or direct evidence to refute the vast volume of information and evidence Ms. Iacovelli has published in every corner of cyberspace to prove Eppley's negligence. It is also understandable that Ms. Iacovelli has gone through a range of emotions and tactical approaches to seeking relief for the damage done to her by Eppley. The experience changed her life in a wholly negative manner.

12. Defendant and Counter-Claimants concur with the first two sentences in paragraph 19 and the final two sentences. Lucille was disappointed regarding her depiction in the film and has expressed concern that much of the footage of her was taken out of context. As far as the doctors who examined her in the film, one can clearly be heard pointing to Lucille's abnormalities, so the assumption that the film showed an examination that proved there was nothing wrong with her is absolutely false and proves Attorney Richardson failed to

properly investigate this matter. All he would have had to do was watch the film to find the truth.

13. Defendant and Counter-Claimants deny paragraph 20. This communication is classified incorrectly as an "email." This posting was left in a comment box on Dr. Eppley's Web-site and left by the handle "lucillebella" which is not a handle Lucille herself has ever used before, but at least one of her detractors has. Someone who has been working with Dr. Eppley to counteract Lucille's postings is clearly fabricating this scenario for him to help add urgency to his frivolous lawsuit. Attorney Richardson has committed an offense worthy of judicial and monetary sanctions for failing to adequately investigate the source of this email and the possibility that it could be a hoax put together by his own client or someone working in coordination with Eppley. Ms. Iacovelli (see affidavit) did not write any of the emails in question pointing to a public suicide she was planning for the anniversary of Dr. Eppley's surgery on her.

14. Defendant and Counter-Claimants concur with paragraph 21 and 22 except for the characterization and out-of-context use of these facts to prove they support the theory that Iacovelli planned to commit public suicide on a date specific. The postings referred to by Richardson in the complaint and Ms. Iacovelli's own words simply indicate her desperation in regard to her constantly deteriorating physical condition. She has told anyone and everyone who will listen about the hands tied behind the back suicide technique that would ultimately prove Eppley's operation makes it absolutely essential that Lucille apply pressure to her neck and facial muscles in order to breathe and swallow properly. She has always explained this scenario in an "if I were to do this" fashion and certainly never definitively announced anywhere that she planned to do this as a massive public spectacle on a date specific. Furthermore, Attorney Richardson does not account for Lucille's statements about death being related to a death from the ultimate complications of Eppley's procedures on Lucille. Who is to say Ms. Iacovelli is not discussing death merely as a fact of her debilitating condition? As far as expressing thoughts of suicide, this is her right as a human being to discuss and theorize the what ifs in her state of physical and mental unrest. It is a natural part of the human condition to speak of suicide when a person like Lucille Iacovelli does not fit in with the mainstream,

is disfigured to some extent and pointed at when she is not being gawked at in public, and must physically exert pressure with her hands or other objects on her facial muscles in order to function at all. Should we commit every person in the world who writes in a blog or says out loud, "I wish I were dead?" Lucille has used the suicide description more as a matter of forcing people to look at her condition from her perspective and jar them into thinking of the extremes she deals with on a daily basis because of the botched surgery. Simply put, if Lucille just one day stopped holding all those tattered tissue structures and all the damaged muscles in the proper place, that would be all it would take for her to terminate her daily struggle to stay alive. This would not be suicide as much as succumbing naturally to her adverse condition caused by the damage done in surgery. At worst she is guilty of "thoughtcrime" for openly discussing her humanly understandable thoughts about taking her own life. However, there is no evidence (that was not fabricated, misinterpreted, or misunderstood) she actually planned to carry out any suicide attempt. Those who know her well understand her extreme and resilient ability to adapt to her disabilities and continue with every breath to fight for her right to complain about her ordeal and how it permanently altered her life. If she were to decide to leave this world it would not be a result of any bodily harm or injury she would do to herself as much as a "decision to stop fighting for every breath," as she wrote herself in one of her blogs. (Plaintiff Exhibit 27)

15. Defendant and Counter-Claimants deny paragraph 23. Lucille Iacovelli does not plan to commit suicide on April 18, 2009, and she never communicated plans to do so to anyone. Dr. Eppley's alerting of authorities in Massachusetts resulted in Lucille Iacovelli being unduly committed and put through a horrible and traumatic experience. Eppley and Attorney Richardson's only basis for taking this action was a message Richardson improperly classified as an "email." Even worse, Richardson, Eppley, and Lewis & Kappes did not even do a basic investigation to confirm the author of the "email" was in fact Lucille Iacovelli herself. The message did not come from Lucille's own email account by way of traditional email transfer. The method of communication was by way of a comment box on Eppley's Web-site (see exhibit C) that anyone can fill in with whatever information they want, pretending to be whoever they want as long as they have that

person's email address. As far as Iacovelli's future actions to expose this attempt to trump up a frivolous lawsuit with this fiasco to promote a fraudulent sense of urgency, Iacovelli has every right to publish her reaction to Eppley having her unfairly committed and filing this frivolous case. The action taken by Eppley, Lewis & Kappes, and Attorney Todd Richardson in filing this bogus case is based entirely on a fabricated comment posting that was never adequately verified. An attorney has a duty to investigate the facts of a case before submitting a complaint such as this, and Richardson and his firm should suffer Rule 11 sanctions and/or be required to pay damages to both Iacovelli and Bergeron for this abuse of civil process designed to circumvent their rights to free speech.

16. Defendant and Counter-Claimants deny paragraphs 24-43 as none of Iacovelli's postings are false, defamatory, or slanderous in any fashion. Her postings, videos, photographs, and comments on various forums related to Dr. Eppley all merely explain what she endured after the Eppley surgery and as a result of Eppley's surgical errors. Dr. Eppley has made devious attempts to threaten Web-sites with legal action like this if they did not remove Lucille's postings (see exhibit A). He has not taken any legal action until now, and only at this moment with the help of a wholly fabricated public suicide event stirred up by either a random supporter of Eppley or a co-conspirator. Any damage Lucille's criticisms may have caused are a result of an effective, fully documented, and well-founded educational campaign undertaken by Lucille to prevent the next person facing plastic surgery from experiencing what she did. Whether it can reasonably be said or claimed that Dr. Eppley is a different, more highly trained surgeon now than he was then is irrelevant to whether or not he made such mistakes in his past and is now even worse attempting to cover them up through a fabricated legal stunt and a hastily thrown together federal case. Dr. Eppley's conduct is reprehensible. The lawyer and firm supporting these bare, easily proven false allegations are one step above Eppley in their culpability in that these are the folks who are supposed to take action only after having completed an independent investigation of the allegations. Not even a cursory examination of the facts was accomplished here. Richardson and his accomplices at Lewis & Kappes never thought out the final results and the consequences of being wrong. Also, it appears no examination of the First Amendment law that applies was ever done. (See First Amendment Writ), and such an

order as Dr. Eppley claims to be "entitled to" is a clear prior restraint that is unconstitutional.

17. Defendant and Counter-Claimants have no knowledge to confirm or deny the information contained in paragraphs 44-46.

18. Defendant and Counter-Claimants deny each and every allegation contained within paragraphs 47-71. None of Lucille's accusations have been false, all can be backed up by voluminous evidence, and those which are based on opinion are fully and completely protected by the First Amendment to the U.S. Constitution. There are no significant trademark issues involved despite Eppley having a mark on his name. Iacovelli has never utilized Eppley's name or mark to usurp his business or make any profit. Those who visit Lucille's links would have to be pretty lacking in cognitive skills to think they were visiting an official Web-site or link approved by Dr. Barry Eppley himself. Lucille did not send the communications regarding a date specific public suicide, and any statements about her natural death and her "what if" plans were to help others understand the desperation of her condition and create extra effect through outrageous talk. Each and every action Lucille either consciously or unconsciously takes to make sure she lives through every day is evidence enough of her strong desire to stay alive and continue to be an advocate for people thinking twice before undergoing plastic surgery from Eppley or any other doctor out there. The unending number of adjustments, adaptations, and agonizing moments of helplessness she's had to deal with have caused her immeasurable physical, mental, and financial damage. She can no longer work a traditional job. She can barely manage to drive as her condition worsens. Easy daily tasks for most people are exhausting and often nearly impossible for Lucille. This litigation only adds to the mind-bending stress Lucille already deals with each and every day when she wakes up to face the true "daily grind" that is her life for one more day despite the pain she'll have to go through. Ms. Iacovelli has only truthfully reported her accounts of what happened, as any consumer and patient has a right to do. Dr. Eppley, in his efforts to circulate his "good name" and promote his business, could have easily printed a formal response to Lucille's complaints on all her postings which allowed comments, posted a statement about her claims on his own Web-site, or chosen a number of other methods besides litigation and

threatened litigation. Instead, he sued with trumped up and fabricated evidence that immediately put Lucille in a horribly unfair position and cast her in an unfavorable light before this court before she could even make an appearance in this matter or be served with the paperwork. Eppley, Richardson, and Lewis & Kappes have effectively prejudiced this court into thinking they justifiably had this woman committed against her will based on their fraudulent evidence. On the contrary, regardless of who fabricated this communication and tried to peg it as Lucille's, Richardson and his firm took direct and bold action without justifying whether an emergency situation even existed at all. They could have made all manner of secret inquisitions to Lucille to determine if she actually did plan to commit public suicide on any date. Yet, no, they only submitted a few lines of a comment message they purported to be a direct email from Lucille and managed to get her dragged against her will to a hospital ward for suicide watch observation. Embarrassing and demeaning to say the least, the experience was even more stressful considering Lucille's precarious physical health.

## JURISDICTION AND VENUE

19. By appearing telephonically at the April 7th hearing on Plaintiff's various filings and the initial complaint, Defendant and counter-claimants Iacovelli and Bergeron temporarily submit to the jurisdiction of Indiana by default, but there is also sufficient grounds to show that this litigation, upon argument and opposition presented at a future venue change hearing, may be subject to future removal to a Massachusetts court under 28 U.S.C. § 1441, § 1343 and also to seek an amended counter claim under § 1367.

## AFFIRMATIVE DEFENSES

1. Each and every separate claim for relief alleged by plaintiff and counter-defendant Barry Eppley, MD, DMD fails to state sufficient facts to constitute a cause of action against Defendant and fails to state a claim upon which relief may be granted.

2. Plaintiff is estopped from asserting its claims against Defendant.

3. Plaintiff's claims are barred by the doctrine of waiver.

3. Plaintiff's claims are barred by the statute of frauds.

4. Plaintiff's claims are barred by Plaintiff's failure to mitigate its damages, if any.

5. Plaintiff's claims are barred by the lack of consideration.

6. All injuries and damages, if any, allegedly suffered by Plaintiff are a result of Plaintiff's own acts or omissions.

7. WHEREFORE, Defendant and Counter-claimant Lucille Iacovelli, demands judgment dismissing all counts of Plaintiff's Complaint, together with appropriate abuse of process damages, Rule 11 sanctions, costs of fees associated with this suit and such other and further relief that the Court deems just and equitable.

**COUNTERCLAIMS**

As and for its Counterclaims against Barry Eppley, MD, DMD, Lewis & Kappes, and Lewis & Kappes Attorney Todd Richardson, Lucille Iacovelli and Rich Bergeron hereby alleges as follows:

1. Defendant and Counter-claimant Lucille Iacovelli is an individual and the operator of a series sole-proprietor, non-profit Web-sites that: promote patient advocacy; encourage patient awareness of plastic surgery risks; and warn against trusting doctors like those who left her in her current disabled condition. The principal place of Defendant and Counter-claimant Iacovelli's residence is in Forestdale, Massachusetts.
2. Counter-claimant Rich Bergeron is a lifelong writer who operates his own Web-sites unrelated to Iacovelli's and is planning to write a book on Iacovelli's plastic surgery experience. Bergeron has not published anything regarding Iacovelli as of yet and has not been named in this litigation as a defendant, yet the plaintiff in this matter attempts to enjoin his speech. The principal place of Counter-Plaintiff Bergeron's residence is in Abington, Massachusetts.
3. Counter-defendants Eppley, Richardson, and Lewis & Kappes, upon information and belief, are all Indiana residents and/or authorized to do business in the State of Indiana. Eppley's principal place of business is at Clarian North Medical Center, Suite 140, 11725 North Illinois Street, Carmel, Indiana 46032. Lewis & Kappes and Attorney Richardson's Principal Place of Business is at One American Square, Suite 2500, Indianapolis, Indiana 46282.
4. The true names and capacities, whether individual, corporate, associate, or otherwise, of fellow Counter-Defendants, including the real poster of the comment leading to this restraining order

charade, are not known at this time. Said potential Counter-Defendants are also liable for damages and/or sanctions resulting from Counter-Defendants' fraudulent activity. Counter-Plaintiff Iacovelli sues said Counter-Defendants as Does A-C and will ask for leave to amend this counter-complaint to show the true names and capacities of each Counter-Defendant at such time as the same has been ascertained.

## JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1367(a) as these Counterclaims are so related to the claims contained in Plaintiff's Complaint in that they form part of the same case or controversy under Article III of the United States Constitution and are compulsory Counterclaims under Fed. R. Civ. P. 13(a).
6. Venue is temporarily proper in this district pursuant to 28 U.S.C. § 1391(a) and (c) as both Counter-defendants reside in this district and are subject to personal jurisdiction in this district.
7. Defendant and Counter-claimant reserves the right to file a motion to change the venue of this matter due to the hardship in this case being heavily in Ms. Iacovelli and Mr. Bergeron's favor. Ms. Iacovelli and Mr. Bergeron cannot afford to travel to Indiana on their meager incomes (see attached informa pauperis paperwork). Further, Iacovelli cannot physically manage to make the trip due to her deteriorating condition, and there are federal question concerns regarding the violation of Iacovelli's First Amendment rights should this proposed temporary restraining order be allowed any permanence whatsoever. These issues may mandate a removal from Indiana in favor of the courts of Massachusetts.

## FACTS:

1. There was never any basis for this legal action as no tort has been committed by Iacovelli or Bergeron to justify circumventing their First Amendment Rights to free speech.
2. Iacovelli never intended to commit suicide on any date specific and never communicated the messages purported to be from her that led to her immediate commitment to a psychiatric ward.
3. Iacovelli has only ever printed the facts about Dr. Eppley's surgery and how it left her struggling to take every breath and constantly forced to manually hold her upper airway structure in place in order to breathe, swallow, and prevent asphyxiation.
4. Iacovelli's various "what if" references in past blogs and postings to suicide methods she could

undertake to prove a point are just hypothetical scenarios and not intended to be taken as promises or actual intentions she plans to carry out.

5. Iacovelli's daily struggle is unimaginably difficult and leaves her in varying stages of despair and emotional distress, but she has an amazing unbreakable spirit. She will continue to fight as an advocate for patients and would never commit suicide when she can be assured her example of fighting to the very last breath would be more lasting and appropriate as her legacy than a public spectacle that would be seen as a crude stunt.
6. Lucille Iacovelli is used to being painted as a psychologically disturbed person, but in reality she is very sane, extremely motivated by altruistic goals, and fully cognitively aware of what she is doing to promote her story.
7. Iacovelli is not on a campaign to falsely smear Dr. Eppley or any other doctor.
8. Iacovelli is not attempting to punish anyone for actions they did not actually take at some point to put her in her present state.
9. All of Iacovelli's verified communications and postings in regard to the actions of these doctors have been accurate and factual.
10. Iacovelli has never usurped Eppley's business or trademark in any fashion and has never tried to make people think her postings were sanctioned by Eppley.

**FIRST COUNTERCLAIM**

**(ABUSE OF PROCESS)**

11. Counter-plaintiff Lucille Iacovelli repeats the allegations set forth above as though fully set forth herein.
12. On March 30 at 1:47 P.M. Attorney Todd Richardson of the firm Lewis & Kappes filed an entirely frivolous verified complaint against Lucille Iacovelli, on behalf of Barry Eppley, MD, DMD, in United States District Court for the Southern District of Indiana.
13. Attorney Richardson's complaint and supporting evidence betrayed a lack of any appropriate investigation into who posted messages on Dr. Eppley's Web-site and made the triggering comments appear to come from Lucille.
14. Attorney Richardson went a step further with only this tiny shred of unverified evidence, in that he accomplished his goal to immediately undermine the credibility of Lucille by having her committed to a medical facility for suicide watch.

15. Richardson used this litigation and the commitment of Iacovelli to characterize his and Eppley's efforts as somehow necessary to prevent Iacovelli from defaming Eppley.
16. There is no indication in the legal pleadings from Eppley that the commitment efforts were designed to actually save Iacovelli's life. The motivation was clearly to eradicate Ms. Iacovelli's well-founded and documented accusations from the Internet. The chosen method was through promoting a false sense of urgency that would put Iacovelli in an even more awkward position than she's already in because of her physical ailments and poverty-level financial condition.
17. These selfish, crude, and manipulative efforts to undermine the true purpose of the court system and the legal process are despicable at best and possibly even criminal at worst. These efforts have been undertaken solely to cast Ms. Iacovelli and Mr. Bergeron in a bad light and create hysteria that would encourage urgency and a rush to judgment.
18. Attorneys are charged with defending their clients to the best of their abilities, but this does not protect them from failing to perform at least a basic examination of the reported facts their clients volunteer in consultation and leading up to a suit's formal filing.
19. The client, attorney, and firm in this case were all negligent in making allegations and filing a formal litigation without adequately investigating all the facts. Since this matter has a great deal of crossover from abuse of process areas to Rule 11 Sanctions, Defendant and Counterclaimants plan to file a future Rule 11 motion after first serving it on the counter-defendants and allowing them the proper "safe harbor" window to withdraw their claims.
20. The counter-defendants were entirely unjustified in having Lucille Iacovelli committed for suicide watch observation without any due evidence to prove she in fact planned to commit suicide or was even in any way mentally unbalanced.
21. The actions taken with respect to all the pleadings filed in this case and in support of the continuation of this frivolous case are clear abuses of process which must be punished by appropriate damages under this counterclaim and/or a Rule 11 sanctions request.
22. It is clear that in addition to failing to verify the poster of the comment on Eppley's site, Richardson and his accomplices at Lewis & Kappes never adequately investigated the First Amendment law surrounding prior restraints on free speech that bar application of their proposed temporary restraining order. A full trial's results must first determine that defamation or slander indeed occurred before injunctive relief can take effect. (See First Amendment Writ).

23. The counter-defendants' collective litigation scheme caused Lucille Iacovelli an extreme level of physical and mental stress. She has also endured considerable financial stress, including legal fees to her local attorney to clear up all the confusion and get released from her confinement. Bergeron has also been forced to abandon paid work to help Lucille battle these frivolous charges. If unable to pursue this book project as a result of this case Bergeron will also lose out on future income and career opportunities stemming from the possible publication.

24. Damage in excess of $75,000 is appropriate and should be paid to Ms. Iacovelli for being forced to endure a hastily thrown together legal claim, a false commitment, and all the associated stress and aggravation. Mr. Bergeron should also be awarded relief from any injunction and be left free to publish his story about Lucille without legal intervention. All of this action against Lucille was undertaken with absolutely no basis in fact and no affidavits from the client himself swearing he did not harm Lucille Iacovelli when he performed the 2001 surgery.

**POINTS OF LAW:**

Defendant and Counter-Plaintiffs Lucille Iacovelli and Rich Bergeron ask that formal judicial notice be taken of the following:

**Traguth v. Zuck, 710 F. 2d 90, 91 (1983):**

**"Implicit in the right to [self-representation] is the obligation on the part of the Court to make reasonable allowances to protect Pro Se litigants from inadvertent forfeiture of important rights because of their lack of legal training." And the "Court's duty is even broader in the case of a [Pro Se] defendant who finds [himself] in court against [his] will with little time to learn the intricacies of civil procedure and law." See 28 U.S.C.A. 1654.**

There is a wide array of U.S. Supreme Court Decisions proving the injunction proposed against Iacovelli is an unconstitutional Prior Restraint and a violation of her First Amendment rights:

**"When a branch of government, including the judiciary, restrains the publication of information that has been obtained lawfully by the media, it undermines the "main purpose" of the First Amendment, which is "to prevent all such previous restraints upon publications as [have] been practiced by other governments."** ***Nebraska Press*****, 427 U.S. at 557 (quoting** ***Patterson v. Colorado*****, 205 U.S. 454, 462 (1907))."**

**"The Supreme Court consistently has required the government to carry an exceptionally onerous burden to support a prior restraint, which "comes to th[e] Court with a 'heavy presumption' against its constitutional validity."** ***Organization for a Better Austin v. Keefe*****, 402 U.S. 415, 419 (1971) (quoting** ***Carroll v. Princess Anne*****, 393 U.S. 175, 181 (1968)). As another court explained, a "publication must threaten an interest more fundamental than the First Amendment itself" before a prior restraint may be imposed.** ***Procter & Gamble Co.*****, 78 F.3d at 227. As the Supreme Court has emphasized, "the barriers to prior restraint [must] remain high unless we are to abandon what the Court has said for nearly a quarter of our national existence and implied throughout all of it."**

*Nebraska Press*, **475 427 U.S. at 561."**

While Lucille is not a member of the traditional media, she is an avid blogger, a member of a new craze of social media movers and shakers with a wide following on the Internet. She feels a duty to use her skills and on-line reach to promote the truth about her story. She is not motivated by baseless rage or malice and can back up all of her claims with documented and detailed evidence. The claims against her are false and subject to either abuse of process damages or Rule 11 Sanctions.

**Probable cause for the filing of a suit exists only if, upon reasonable inquiry, a reasonable, intelligent, and prudent person would be induced to bring the action. Trotter, 632 N.E.2d at 1164. In this case there appears to have been no adequate inquiry whatsoever.**

WHEREFORE: The Counter-Plaintiffs Lucille Iacovelli and Rich Bergeron respectfully request judgment as follows:

1. For punitive damages in favor of the counter-plaintiff Iacovelli and against the counter-defendants in a sum of $100,000.00, plus interest therein.
2. For relief granted to Counter-plaintiff Bergeron from any restraining orders or further prior restraint efforts from the Plaintiff without due legal cause and evidentiary support.
3. For interest at the legal rate.
4. For attorney fees as special damages in a sum to be determined at trial for already paid attorney fees related to Counter-Plaintiff's unjust commitment and future costs of retaining a formal attorney for this matter.
5. For such and further relief as the court may deem just and proper in the premises.

*Dated April 6, 2009*

IN PROPER PERSON:

[signature]

Rich Bergeron
141 Green Street
Abington, MA 02351

[signature]

LUCILLE IACOVELLI
3 Deer Hollow Rd
Forestdale, MA 02644
Attorney Pro-Se

**EXHIBIT "7"**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DR. BARRY EPPLEY, MD DMD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 1:09-cv-386- SEB-JMS |
| vs. | ) | |
| | ) | |
| LUCILLE IACOVELLI, | ) | |
| | ) | |
| Defendant. | ) | |

**AMENDED ORDER CONTINUING PREVIOUSLY ISSUED TEMPORARY RESTRAINING ORDER**[1]

**On April 7, 2009**, Plaintiff appeared in person and by counsel and Defendant, acting *pro se*, appeared by telephone for hearing on the pending issues, including Plaintiff's request for the issuance of a preliminary injunction or, in the alternative, for an extension of the previously issued temporary restraining order. Also in attendance by telephone was **Defendant's** friend and associate, Rich Bergeron. The proceedings were transcribed by Court Reporter, Laura Howie-Walters.

The Court heard from the parties and from Mr. Bergeron and then ruled, as more fully explicated on the record, as follows:

1. The temporary restraining order issued on March 30, 2008, is extended through and including Friday, April 17, 2009.

[1] This order is amended simply to correct a typographical error in the Court's original order docketed at Docket No. 22. The second sentence of the Court's order should have identified Mr. Bergeron as Defendant's friend and associate, not Plaintiff's friend and associate. Accordingly, the word "Plaintiff's" in the second sentence of the Court's original order is replaced herein with the word "Defendant's." In addition, for clarity, the words "On this date" in the first sentence of the Court's original order are replaced herein with the words "On April 7, 2009." There are no other changes.

2. Defendant is admonished that: (a) she must comply with the Court's temporary restraining order immediately and without further delay; (b) any further non-compliance with the Court's temporary restraining order could result in sanctions; and (c) she cannot do the things restrained by the Court's temporary restraining order through others, by asking or encouraging them, directly or indirectly, to do for her what she, herself, is restrained from doing.

3. Mr. Bergeron, who admitted that after the Court's temporary restraining order was issued on March 30, 2009, he himself created or directed the creation of the website www.eppleyplasticsurgerysucks.com, was admonished that the Court's temporary restraining order extended to his creating or directing the creation of that website. Mr. Bergeron was further admonished that he, too, could become subject to contempt sanctions for violating the Court's temporary restraining order and that such website must immediately and without further delay, in accordance with the terms of the temporary restraining order, be removed from the public realm.

4. Plaintiff's Motion for Order to Show Cause Why Defendant and Those Acting in Concert with her Should Not Be Held in Contempt (Docket No. 18) is taken under advisement.

5. Plaintiff's Motion to Prohibit Non-Lawyer from Engaging in the Unauthorized Practice of Law (Docket No. 17) is **GRANTED.** Mr. Bergeron may not serve as Defendant's *de facto* lawyer or spokesperson in this cause.

6. Plaintiff's Motion for Preliminary Injunction is set for hearing on Friday, April 17, 2009, at 2:00 p.m. in Room 216 of the United States Courthouse in Indianapolis, Indiana.

7. Defendant is strongly encouraged to obtain properly licensed legal counsel to represent her in this cause.

8. Defendant is further advised that if she intends to continue to proceed *pro se*, any evidence she wishes to present to the Court at the April 17, 2009, hearing must be legally relevant and otherwise admissible, and that her *pro se* status will not serve to excuse deficiencies in her evidence.

As a final matter, Defendant is advised that while the Court permitted her to participate in the April 7, 2009, hearing by telephone, she has not made a request to participate in the April 17, 2009, hearing by telephone, and the Court has made no ruling on that issue. In the absence of such a request and Court ruling thereon, Defendant and her witnesses, if any, shall to appear at the April

17, 2009, hearing in person.

IT IS SO ORDERED.

Date: 04/13/2009

[signature]

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Gary P. Price
LEWIS & KAPPES
gprice@lewis-kappes.com

Todd Arthur Richardson
LEWIS & KAPPES
trichardson@lewis-kappes.com

Joseph Peter Rompala
LEWIS & KAPPES
jrompala@lewis-kappes.com

Lucille Iacovelli
luciacovelli@gmail.com

**EXHIBIT "8"**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | | |
|---|---|---|
| DR. BARRY EPPLEY,MD DMD, Plaintiff, | ) | |
| vs. | ) | No. 1:09-cv-386-SEB-JMS |
| LUCILLE IACOVELLI, Defendant. | ) | |

## Entry Concerning Selected Matters

The court, having considered the above action and the matters which are pending, makes the following rulings:

1. Any relief which can be thought to be sought through the defendant's "first amended writ" (dkt 25) is **denied** as inconsistent with the temporary restraining order issued on March 30, 2009, as extended on April 13, 2009, as a result of the hearing conducted on April 7, 2009, in which the defendant participated and to which she acceded.

2. Purported claims of Rich Bergeron in this action are of **no effect at this point.** Mr. Bergeron is not a party to the complaint, nor has he been made a party by appropriate proceedings subsequent to the filing of the complaint. No obligation to file a responsive pleading or otherwise respond to the claims purportedly set forth in Mr. Bergeron's filing exists. Any putative party may intervene in litigation in accordance with the *Federal Rules of Civil Procedure* and pertinent substantive law.

3. The defendant's filing of April 9, 2009 (dkt 24), is adequate as an answer to the complaint. **That filing is not effective as a purported counterclaim or third-party complaint.**

4. The defendant shall have **through April 22, 2009,** in which to file a counterclaim. If she does so, she shall comply with the requirement of Rule 8(a)(2) of the *Federal Rules of Civil Procedure* that pleadings contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ."; (b) the counterclaim shall comply with the requirement of Rule 10(b) that the allegations in a complaint (or counterclaim) be made in numbered paragraphs, each of which should recite, as far as practicable, only a single set of circumstances; (c) the counterclaim must identify what legal injury she claims to have suffered and what persons are responsible for each such legal injury; and (d) the counterclaim shall contain a clear statement of the relief which is sought.

5. A counterclaim shall not be combined with a third-party complaint. The defendant shall have **through April 22, 2009,** in which to file any third-party complaint. If a third-party complaint is filed, it too shall be composed within the guidelines reviewed in paragraph 4 of this Entry.

**IT IS SO ORDERED.**

Date: __04/13/2009

Sarah Evans Barker

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Gary P. Price
LEWIS & KAPPES
gprice@lewis-kappes.com

Todd Arthur Richardson
LEWIS & KAPPES
trichardson@lewis-kappes.com

Joseph Peter Rompala
LEWIS & KAPPES
jrompala@lewis-kappes.com

LUCILLE IACOVELLI
3 Deer Hollow Road
Forestdale, MA 02644

**EXHIBIT "9"**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | | |
|---|---|---|
| DR. BARRY EPPLEY, MD, DMD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | No. 1:09-cv-386-SEB-JMS |
| | ) | |
| LUCILLE IACOVELLI, | ) | |
| | ) | |
| Defendant. | ) | |

**Entry Concerning Selected Matters**

The court, having considered the above action and the matters which are pending, makes the following rulings:

1. The request to proceed *in forma pauperis* of Rich Bergeron (dkt 35) is **denied** because Mr. Bergeron is not a party to this action and has not been ordered to pay any fees or costs from which this court could grant him relief in connection with it.

2. The request of defendant Iacovelli to participate telephonically through her associate Mr. Bergeron at the hearing set for April 17, 2009, is insufficient on its face to demonstrate that such an arrangement would be effective in preserving either party's interests in this case. Cf. Fed.R.Civ.P. 43(a)(providing that a court may permit testimony in open court by contemporaneous transmission from a different location for good cause in compelling circumstances and with appropriate safeguards).

3. As noted previously, Mr. Bergeron is not a party to this case. Also as noted previously, the need for admissible evidence relative to the issue being considered -- whether the temporary restraining order should be converted into a preliminary injunction -- is vital. Also as noted, Mr. Bergeron cannot represent the defendant in the proceeding. 28 U.S.C. § 1654; *Lewis v. Lenc-Smith Mfg. Co.,* 784 F.2d 829, 830 (7th Cir. 1986). In addition, the quality of the telephone connection during the hearing of April 7, 2009, was so inferior -- due, according to the defendant's plausible surmise, to the fact that she was using an "internet telephone" -- that without considerable upgrade in equipment or the performance of existing equipment available to the defendant there could be no meaningful evidentiary presentation or argument concerning the important matter which will be addressed.

4. The defendant also seeks a continuance of the hearing set for April 17, 2009. The hearing of April 17, 2009, was set with the parties or their representatives participating. It was clear where and why the hearing would be conducted. There were no health or financial issues raised at that time relative to the defendant's appearance at the hearing. Although the defendant now suggests that such issues would make her appearance at the hearing a hardship, no documentation validating that effect has been offered and the circumstances suggested by the defendant are not alleged to have arisen since the hearing on April 7, 2009. For the above reasons, the defendant's request for a continuance of the hearing set for April 17, 2009, is **denied.**

**IT IS SO ORDERED.**

Date: __04/15/2009

Sarah Evans Barker

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Gary P. Price
LEWIS & KAPPES
gprice@lewis-kappes.com

Todd Arthur Richardson
LEWIS & KAPPES
trichardson@lewis-kappes.com

Joseph Peter Rompala
LEWIS & KAPPES
jrompala@lewis-kappes.com

Lucille Iacovelli
3 Deer Hollow Road
Forestdale, MA 02644

Court Reporter

**EXHIBIT "10"**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | | |
|---|---|---|
| DR. BARRY EPPLEY, MD, DMD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | No. 1:09-cv-386-SEB-JMS |
| | ) | |
| LUCILLE IACOVELLI, | ) | |
| | ) | |
| Defendant. | ) | |

**Entry Discussing Request for Recusal**

**I.**

The portion of the defendant's letter of April 14, 2009, in which she sought either a continuance of the hearing set for April 17, 2009, or the participation by telephone of her associate, Mr. Bergeron, in her place during that hearing has been considered. Those requests have been rejected.

**The hearing set for April 17, 2009, remains set.** *The defendant continues to be obligated to appear in person at the hearing, whether represented by counsel or not.*

**II.**

The defendant's letter of April 14, 2009, can also be understood as seeking the recusal of the undersigned. It will be referred to in this Entry as the recusal motion. There is a general presumption that a court acts according to the law and not personal bias or prejudice. *Withrow v. Larkin,* 421 U.S. 35, 47 (1975). The request for recusal, such as it is, has been fully considered.

> "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

28 U.S.C. § 455(a).[1] The goal of this provision is to avoid even the appearance of partiality. *See Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860 (1988); *In re Murchison,* 349 U.S. 133, 136 (1955) ("A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness."); *Bracy v. Schomig,* 286 F.3d 406, 418 (7th Cir. 2002)("[A] 'fair trial in a fair tribunal' . . . means [a defendant's] right to a judge who takes seriously his responsibility to conduct fair proceedings, a judge who looks out for the rights of even the most undeserving defendants.").

"[I]n reviewing a recusal motion, a court must proceed by 'examining the record facts and the law, and then deciding whether a reasonable person knowing and understanding all the relevant facts would recuse the judge.'" *United States v. Muyet,* 994 F.Supp. 550, 554 (S.D.N.Y. Mar. 4, 1998)(quoting 28 U.S.C. § 455(a)). Four circumstances are recited in support of the defendant's request for recusal. After careful review, it is clear that none of these circumstances supports the action defendant seeks.

- The defendant attacks the court's rulings in this action as legally incorrect. Legally incorrect rulings are proper grounds for appeal, not for recusal. *McLaughlin v. Union Oil Co. of Calif.*, 869 F.2d 1039, 1047 (7th Cir. 1989) ("Bias cannot be inferred from a mere pattern of rulings by a judicial officer, but requires evidence that the officer had it 'in' for the party for reasons unrelated to the officer's views of the law, erroneous as that view might be."). Rather, a judge's bias must "arise from an extrajudicial source." *O'Regan v. Arbitration Forums, Inc.,* 246 F.3d 975, 988 (7th Cir. 2001).

- The defendant asserts that the assigned district judge is biased against her. This assertion rests on the fallacy that the rulings herein indicate or reveal such a bias. The Supreme Court pointed out in *Liteky v. United States*, 510 U.S. 540, 555 (1994), judicial rulings alone "almost never constitute [a] valid basis for a bias or partiality motion." As noted above, however, adverse rulings against a party are not evidence of bias. *Matter of Huntington Commons Associates,* 21 F.3d 157, 158-59 (7th Cir. 1994); *Jaffree v. Wallace*, 837 F.2d 1461, 1465 (11th Cir. 1988) ("It is simply not enough to voice disagreement with previous rulings by [the judge] . . . [n]or is it enough to complain that [the judge] did not expressly consider some of appellant's motions.").

---

[1]Two federal statutes, 28 U.S.C. §§ 144 and 455, govern recusal. *See Hamm v. Bd. of Regents,* 708 F.2d 647, 651 (11th Cir. 1983). Section 144 relates only to charges of actual bias. *Henderson v. Dep't of Pub. Safety & Corr.,* 901 F.2d 1288, 1296 (5th Cir. 1990). Under § 455, a judge must *sua sponte* recuse herself if she knows of facts that would undermine the appearance of impartiality. *Liteky v. United States,* 510 U.S. 540, 547-48 (1994). There is in this case no affidavit sufficient under § 144, nor could there be, because the *pro se* defendant is without the means of satisfying the "certificate of counsel" requirement and is thus unable to seek disqualification under § 144. *See Robinson v. Gregory*, 929 F. Supp. 334, 337 (S.D.Ind. 1996). Her request for recusal is therefore treated as being made pursuant to 28 U.S.C. § 455(a), although in fact the standards for the two statutes are the same. *United States v. Balistrieri*, 779 F.2d 1191, 1202 (7th Cir. 1985) ("[W]e shall view judicial interpretations of 'personal bias or prejudice' under § 144 as equally applicable to § 455(b)(1).").

! The defendant also notes in support of her request for recusal that counsel of record for the plaintiff is also counsel of record for other litigants in other cases pending in this District and assigned to the undersigned. This court, however, has many matters assigned to its civil docket, both in terms of the number of cases and the demand for judicial interventions in those cases. Further, attorneys typically represent many clients in litigation. Far from being a factor from which the appearance of bias could be inferred, the appearance of counsel for the plaintiff as counsel for other litigants in this District in other cases assigned to the docket of the undersigned is routine and unexceptional in any sense.

! This leaves for consideration the question of whether recusal is warranted based on what the defendant has described as the judge's membership on the Board of Directors of an entity with which the plaintiff and/or his business are somehow associated. This might at first glance seem to constitute an extra-judicial connection between the plaintiff's business and the undersigned, but it is *inaccurate* factually and, even if it were accurate, the connection is so attenuated as to be inconsequential. A reasonable person, for the purpose of making a determination pursuant to § 455(b)(1), must necessarily be a well-informed person, *United States v. Evans,* 262 F.Supp.2d 1292, 1294 (D.Utah 2003)("In the recusal context, the reasonable person standard contemplates a 'well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person.'") (footnote and citation omitted), and the defendant here falls short of being either well-informed or correctly-informed as to these matters. Instead, a reasonable and well-informed person would have discovered that the Clarian Hospital's Board of which the undersigned is a member is not the same board of the entities with which the plaintiff and his business allegedly have some business relationship. There is no shared or common interest between the plaintiff and the Board on which the undersigned judge serves as a member. Thus, an objectively reasonable person would not find from these facts a basis for recusal of the undersigned.

Under § 455(a), the moving party must demonstrate an "objectively reasonable basis for questioning a judge's impartiality." *In re International Business Machines Corp.,* 45 F.3d 641, 644 (2d Cir. 1995). To prevail on a request for recusal, the facts alleged must be sufficiently definite and particular to convince a reasonable person that bias exists. The defendant has not presented or alleged any facts suggestive of bias in any form. She relates simply her frustration with the rulings with which she disagrees. She does so through her opinion and conclusions that these decisions evidence a bias against her. Such an allegation does not support the request she makes. *United States v. Sykes*, 7 F.3d 1331, 1339 (7th Cir. 1993) (citing *United States v. Balistrieri*, 779 F.2d 1191, 1199 (7th Cir. 1985)). A decision adverse to a party--even one adverse on all of the issues raised--is not evidence of bias where that decision is supported by the law and facts, as is the case here. See *Gleason v. Welborn,* 42 F.3d 1107, 1112 (7th Cir. 1994).

"[W]e remain ever mindful that attacks on a judge's impartiality may mask attempts to circumvent that judge's anticipated adverse decision." *In re Antar,* 71 F.3d 97, 101 (3d Cir. 1995). Section 455 "must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice." *Nichols v. Alley,* 71 F.3d 347, 351 (10th Cir. 1995)(*quoting Franks v. Nimmo,* 796 F.2d 1230, 1235 (10th Cir. 1986)). Neither is the statute intended to "bestow veto power over judges or to be used as a judge shopping device." *Id.*

Although this court is sufficiently occupied by cases in which disqualification is not sought, it will not and should not take flight from its responsibility to hear and decide the matters assigned to its docket on the basis of empty and meritless filings such as those presented here by the defendant. As stated in *New York City Housing Development Corporation v. Hart,* 796 F.2d 976, 980-81 (7th Cir. 1986):

> A judge may decide close calls in favor of recusal. But there must first be a close call. As we put it in *Suson v. Zenith Radio Corp.,* 763 F.2d 304, 308-09 n.2 (7th Cir. 1985), a "district judge is . . . obligated not to recuse himself without reason just as he is obligated to recuse himself when there is reason." *See also United States v. Baskes,* 687 F.2d 165, 170 (7th Cir. 1981).

The disqualification of a judge is a serious matter and must not be based on conjecture or mere opinion of a party or of parties. A reasonable question concerning this judge's impartiality, however, simply is not raised by the defendant's filing of April 14, 2009, or elsewhere. There is no close call to make in this case. The mere filing of a motion to recuse does not require disqualification, and the defendant offers nothing of substance beyond her mere request.[2]

The request for a change of judge thus fails under § 455(a)(1) because the circumstances reviewed above do not demonstrate an objectively reasonable basis for questioning my impartiality. In addition, no circumstances associated with this action warrant the disqualification of the undersigned judge under any provision of § 455(b).

**IT IS SO ORDERED.**

Date: 04/16/2009

Sarah Evans Barker

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

---

[2]The defendant's suggestion that she and her associates will sue the undersigned, as well as others, because of the rulings in this case does not form the legitimate basis for recusal of the undersigned. Parties are not permitted to make outrageous statements against a judge and then use their own statements as a basis for recusal. *F.D.I.C. v. Sweeney,* 136 F.3d 216, 219-20 (1st Cir. 1998); 13A Charles Alan Wright, et al., Federal Practice and Procedure § 3542 at 577-78 (2d ed. 1984). A party cannot force recusal merely by filing a complaint or a lawsuit against a judge. See *United States v. Martin-Trigona,* 759 F.2d 1017, 1020-21 (2d Cir. 1985); *In re Winslow,* 107 B.R. 752, 753 (D.Colo. 1989) (finding that a party's filing of a complaint with Judicial Counsel against a judge is not grounds for disqualifying the judge from further hearing matters involving the filing parties).

Distribution:

Gary P. Price
LEWIS & KAPPES
gprice@lewis-kappes.com

Todd Arthur Richardson
LEWIS & KAPPES
trichardson@lewis-kappes.com

Joseph Peter Rompala
LEWIS & KAPPES
jrompala@lewis-kappes.com

Lucille Iacovelli
3 Deer Hollow Road
Forestdale, MA 02644

**EXHIBIT "11"**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | | |
|---|---|---|
| DR. BARRY EPPLEY, MD, DMD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | No. 1:09-cv-386-SEB-JMS |
| | ) | |
| LUCILLE IACOVELLI, | ) | |
| | ) | |
| Defendant. | ) | |

**Entry Concerning Selected Matters**

The court, having considered the above action and the matters which are pending, makes the following rulings:

1. The defendant's request to proceed *in forma pauperis* (dkt 41) is **denied,** because the defendant has not been ordered to pay any fees or costs which this court could waive. This does not constitute any determination concerning the defendant's financial resources or situation, but rests on the fact that the defendant has not incurred, and does not currently owe, any court imposed fees.

2. Consistent with the discussions in paragraphs 3 and 4 of the Entry of April 15, 2009, the defendant's motion for continuance (dkt 43) of the hearing set for April 17, 2009, is again **denied.**

3. The defendant's motion for an order to show cause appears to include a request for sanctions pursuant to Rule 11 of the *Federal Rules of Civil Procedure* as well as a counterclaim against the plaintiff and the law firm representing the plaintiff. Insofar as the motion for an order to show cause rests on Rule 11, the motion violates the Rule's requirement that such a motion be preceded by notice to the opposing party and a 21-day opportunity to cure the allegedly improper pleading. Insofar as the motion for an order to show cause rests on the theories asserted in the defendant's counterclaim and third-party complaint, an order to show cause is not a procedurally appropriate means by which to develop or resolve such claims, and the counterclaim and third-party defendants have been given until a specific date in the future in which to file an answer or other responsive pleading to the counterclaim and the third party complaint. For these reasons, therefore, the defendant's motion for an order to show cause (dkt 43) is **denied.**

4. The defendant previously filed a document which the court treated as her request for the undersigned's recusal. The medley of new motions filed by the defendant on April 16, 2009, contains an explicit request for recusal. Although more formal in certain respects, the motion for recusal (dkt 43) filed on April 16, 2009, raises no significant additional grounds for recusal than those previously ruled upon and denied. The April 16, 2009, request for recusal is, therefore, also **denied** for the reasons explained in Part II of the Court's Entry issued on April 16, 2009.

5. The defendant has filed a motion to stay.

a. The defendant seeks a stay until the orders and rulings so far made by the Court can be reviewed on appeal. Up to the present, however, no rulings made in the case permit an immediate (interlocutory) appeal.[1] To stay the case would prevent it from leading to a final judgment, and, with no appellate review available, the result would be the indefinite suspension of the case. That would not serve the interests of the parties in resolving the claims which have been presented, would not serve the interests of the court in the proper management of its docket, would not serve the interests of the parties to other litigation who depend on the sound management of the docket so that they too can have their day in court, and would not serve the interests of justice.

b. To stay the case would be to cause the status quo to remain in effect. If the Temporary Restraining Order currently in effect remains in effect without the consent of the parties, it will be "deemed a preliminary injunction." *Chicago United Industries, Ltd., v. City of Chicago,* 445 F.3d 940, 943 (7th Cir. 2006).

c. All of the procedural issues raised by the defendant have, at this point, been addressed by the Court. She has had notice and is fully informed of the hearings set by the Court and of the matters which the Court expects to address. She has filed an answer to the Complaint. The request for a stay (dkt 43) is **denied.**

**IT IS SO ORDERED.**

Date: 04/17/2009

[signature]

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

---

[1]The denial of a motion to recuse, which has now occurred twice in the same week, is not an appealable order. *United States v. Balistrieri,* 779 F.2d 1191, 1204-05 (7th Cir. 1985). It is true that the denial of the defendant's requests for recusal of the assigned Article III judge is reviewable through an action for mandamus. *United States v. Horton*, 98 F.3d 313, 316 (7th Cir. 1996)("the denial of a request that the judge recuse himself under section 455(a) must be appealed immediately by application for writ of mandamus, or it is waived"); *United States v. Sidener,* 876 F.2d 1334, 1336 (7th Cir. 1989).

Distribution:

Gary P. Price
LEWIS & KAPPES
gprice@lewis-kappes.com

Todd Arthur Richardson
LEWIS & KAPPES
trichardson@lewis-kappes.com

Joseph Peter Rompala
LEWIS & KAPPES
jrompala@lewis-kappes.com

Lucille Iacovelli
3 Deer Hollow Road
Forestdale, MA 02644