Rich Bergeron
147 OLD COUNTY ROAD
East Sandwich, MA 02537
Telephone: (617) 209-4325
Defendant as Pro Se Attorney

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In Re:<br><br>XYIENCE, INC., A Nevada Corporation<br><br>Debtor. | No. BK-S-08-10474-MKN<br>Chapter 11<br><br>CASE NO. BK-2-08-AP-01082-MKN |
| XYIENCE INCORPORATED, a Nevada Corporation,<br>Plaintiff,<br><br>v.<br><br>RICHARD BERGERON, an individual<br>Defendant. | **DEFENDANT AND COUNTERCLAIMANT'S OPPOSITION TO FERTITTA ENTERPRISES, INC., MOTION TO STRIKE AFFIDAVITS FILED BY DEFENDANT/COUNTERCLAIMANT, AND FOR CIVIL CONTEMPT AND FILING BAR**<br><br>Hearing Date: July 1, 2009 |
| RICHARD BERGERON, an individual,<br><br>Counterclaimant,<br><br>v.<br><br>XYIENCE INCORPORATED, a Nevada corporation; FERTITTA ENTERPRISES, INC., a Nevada corporation,<br><br>Counterdefendants. | Time: 9:30 AM<br><br>Location: 300 Las Vegas Blvd. South<br>Courtroom #2<br>Las Vegas, NV 89101 |

**DEFENDANT AND COUNTERCLAIMANT'S OPPOSITION TO FERTITTA ENTERPRISES, INC., MOTION TO STRIKE AFFIDAVITS FILED BY DEFENDANT/COUNTERCLAIMANT, AND FOR CIVIL CONTEMPT AND FILING BAR**

The recently filed pleadings from Fertitta Enterprises accomplish nothing but a grand waste of this court's time. For starters, Attorney Matthew Zirzow's filings on behalf of Fertitta Enterprises seek to sanction Rich Bergeron with no basis for such action. Secondly, these pleadings attempt to categorize Bergeron's involvement in the Dr. Eppley vs. Iacovelli case as somehow sinister when he is only helping an innocent woman defend herself in a completely separate and irrelevant litigation going on at the moment in Indiana federal court. Bergeron has not been sanctioned in that case, is not a party to the litigation, and has not had any judgment issued against him. As far as his efforts to assist the defendant, Bergeron has done nothing wrong or worthy of sanctions. While the case itself is not important to this matter as it relates to sanctions against Bergeron, the fact that this matter is being raised by the opposition is important. It's an indication that Fertitta Enterprises will do everything possible to make this case about technicalities and obscure the real truth.

Rather than file any substantive evidence proving the merits of their own argument or the lack of Bergeron's argument, Fertitta Enterprises filed the instant motion here to intimidate Bergeron and force the judge to digest over 100 pages that prove nothing about Fertitta Enterprises or Xyience, or even Bergeron for that matter. This tactic was apparently designed to distract Judge Nakagawa from the real issues at hand, and the very fact that Fertitta Enterprises had to focus on irrelevant litigation is telling of their lack of any standing to bring sanctions against Bergeron for any behavior he exhibited while handling this case.

Fertitta Enterprises claims that Bergeron is engaging in vexatious litigation tactics without any due evidence of Bergeron filing anything with any bad faith purpose. Still, Attorney Zirzow tries to justify a filing bar being applied. There is no basis in law for such action, and there are no adequate conditions in this case that would rise to the level of requiring a filing bar.

As far as the five affidavits Bergeron submitted in support of the Rule 11 and 9011 Sanctions filing, Attorney Zirzow does not specifically object to any of the evidence contained within these documents. In fact, Zirzow completely minimizes the impact on his client of the four so-called "untimely" affidavits:

> 13. Moreover, these four Affidavits add absolutely nothing of relevance to the Amended Sanctions Motion; rather, they are simply what amounts to impact statements for disgruntled Xyience shareholders.

The next paragraph on the same page 5 of the same pleading addresses the fifth and most recent Cleveland Corder Affidavit. Zirzow contends that this affidavit "also adds nothing of relevance to Mr. Bergeron's Amended Sanctions Motion."

The above sentiments make the motion to strike a patently frivolous attempt by Zirzow and Fertitta Enterprises to strike evidence they don't even consider damaging or prejudicial to their client.

As far as Bergeron's lack of standing, there are some serious misconceptions being made by Zirzow in his most recent pleadings in regard to Bergeron's legal strategy. First of all, the Rule 9011 motion is the only way Bergeron CAN obtain any relief on behalf of the shareholders. As such, Bergeron has specifically framed the Rule 11 motion to benefit those who were injured most by the abuses of process involved in this case. It also targets who was most culpable in the conspiracy to commit bankruptcy fraud via silencing Bergeron. Bergeron was exploring the option of filing a new adversary case to block the reorganization plan, but there was simply no way to overcome the standing issue, and he worked with several legal advisors to decide the Rule 9011 motion was more appropriate to focus on.

Bergeron is now working with a local attorney. Attorney David Grossack teaches regular citizens how to represent themselves in court. Attorney Grossack has been instrumental in helping Bergeron make sense of this complicated litigation. Bergeron does not intend to file any further action against Fertitta Enterprises in relation to this particular case or on his own behalf in any capacity. However, Attorney Grossack (and other attorneys who have contacted Bergeron in relation to shareholder concerns) seem to think a Civil RICO claim is in order on behalf of all shareholders, former displaced Xyience employees, and any other party adversely affected by this fraudulent bankruptcy. Actual attorneys from California, Las Vegas, and Massachusetts would launch and assist with such litigation if it is ever undertaken, and Bergeron would only be a witness or consultant in such a case.

Bergeron recently provided instrumental help to legal representatives of the former owners of PRIDE Fighting, Dream Stage Entertainment (DSE). That company is in an

ongoing legal battle with the UFC over the destruction of PRIDE after the UFC allegedly agreed to keep the company running as a going concern when they bought it from the Japanese owners. Instead, the UFC killed PRIDE. This is strikingly similar to the Xyience situation with Fertitta Enterprises where they promised their investment would prevent bankruptcy when they really always intended to bankrupt the company after it served their purpose of justifying a $350 million loan for the UFC.

The money to buy PRIDE came from the same $350 million senior secured credit facility that the "Enron of MMA" piece on Bergeron's Web-site Fight News Unlimited (www.unlimitedfightnews.com/xyiencewow.htm) is based on. The Xyience sponsorship was key to that loan instrument, and the DSE attorneys are seeking the covenant documents of that instrument. These documents will prove that the Fertitta Xyience investment was motivated purely to set the stage for this loan instrument.

Page 11 of Bergeron's Amended Rule 9011 motion addresses both the requirement of "bad faith" needed to justify the court's inherent sanctioning power as well as the 8th Circuit Appeals Court ruling that supports Bergeron's standing to seek relief on behalf of shareholders:

> Sanctions under a court's inherent power are justified against a party who willfully disobeys a court order or acts in bad faith, "which includes a broad range of willful improper conduct." Fink v. Gomez, 239 F.3d 989, 991-92 (9th Cir. 2001). To impose inherent power sanctions, a court must find that a party acted "in bad faith, vexatiously, wantonly, or for oppressive reasons." Chambers, 501 U.S. at 44. A show cause hearing on this motion will prove beyond the shadow of doubt that bad faith exists in the instant case, but the attached exhibits and affidavits also speak to the bad faith filing argument.
>
> A monetary penalty is an appropriate sanction, and such a penalty may be combined with other sanctions necessary to deter. Fed. R. Bankr. P. 9011(c)(2). See also 10 Collier on Bankruptcy ¶¶ 9011.02[2], 9011.09 (Lawrence P. King, et al. eds., 15th ed. rev. 2002) (citing Federal Civil Rule 11, and quoting the Advisory Committee Note to the 1993 Amendments, which states: ***"[U]under unusual circumstances, particularly for (b)(1) violations, deterrence may be ineffective unless the sanction not only requires the person violating the rule to make a monetary payment, but also directs that some or all of this payment be made to those injured by the violation."); Schwartz v. Kujawa (In re Kujawa), 270 F.3d 578, 583-84 (8th Cir. 2001).***

Shareholders were severely injured by Bergeron's inability to focus on reporting the truth to them. The affidavits illustrate that fact. This frivolous suit filed by Xyience, fueled by Fertitta Enterprises officials and their implants at Xyience, and furthered by deceit, trickery, and technicalities, prevented shareholders from finding out the truth behind the real intentions Fertitta Enterprises had for the company. Those named in the Amended Rule 9011 motion used lawyers abusively, and those lawyers responded to their paychecks and avoided the facts at all cost, all the way through this litigation. Each individual and entity that had an impact on furthering and supporting this litigation against Bergeron had a hand in defrauding over 375 shareholders out of all interest in the company.

The shareholder affidavits are more than impact statements, as they outline what these individuals were told and when while the company steam-rolled to bankruptcy. It is crucial that this evidence be considered. Imagine if solving the case of an unsolved crime left cold for years on end relied on newly presented evidence that a court ruled was excluded by the constraints of a "briefing period." Why should such technicalities ever be allowed to derail justice? Just because the evidence could have and likely should have been placed on the docket earlier does not take away from the need for this evidence to remain in consideration.

Furthermore, Bergeron filed a pleading, supportive brief, and evidentiary affidavit explaining the need for breaching the constraints of the briefing period. Those documents were late to appear on the docket, though they arrived at the Court well before the Fertitta Enterprises filings. Bergeron also served these documents on all the attorneys for Xyience and Fertitta Enterprises. He will submit a certificate of service for all parties named in the Rule 9011 motion in the coming days.

Filing affidavits late for no reason, designed with spurious intent, and filled with unfounded, fantastical accusations might be cause for sanctions of some sort against Bergeron. However, what he did was a simple oversight here, a reflection of his lack of legal training and not of any lack of sincerity or just purpose. Bergeron is saddled with a great deal of responsibility in this litigation. He must go most of it alone, and it is infuriating and frustrating. He has to constantly try to be the one-man army of lawyers he must conjure up in himself to handle the continuous onslaught of legal malarkey thrown at him by the opposition. It would be an understatement to refer to Bergeron's current situation as a legal nightmare.

The ongoing First Amendment struggles Bergeron faces in this case and the Indianapolis

litigation (he is named in an unconstitutional injunction in that matter despite not being named as a party) are worthy of a *Twilight Zone* episode. This situation is a true life example of the non-fiction writer's most important mantra: "Fact is stranger than fiction." The two greatest projects of Bergeron's writing career have spawned frivolous litigation, and he's been forced to fight for his rights in two different free states now. Contrary to the baseless and bare contentions of Fertitta Enterprises and Dr. Barry Eppley attorneys, Lucille's filings are the product of collaboration. Bergeron and Grossack have effectively made Lucille her own legal advocate. She is taking an important role in her own defense, and she is crafting her own documents. She cannot afford any kind of paid legal help, in Indiana or in Massachusetts. Further, any violations alleged as far as Bergeron practicing as an attorney on her behalf are way off base. All parties subject to litigation are entitled to "counsel" and that is all Bergeron has provided Iacovelli in that case.

If Iacovelli's case contains pleadings that are very similar to that of this instant case it is only because Bergeron utilized his knowledge of what this case has taught him to help Iacovelli determine her best course of action. For instance, Bergeron learned here before this Court that recusing a judge without some personal conflict of interest or business connection being involved is highly unlikely and perhaps in hindsight was uncalled for in regard to Judge Nakagawa's late rulings.

Yet, in the Iacovelli case the judge is entrenched in the health care industry in Indiana, is on the board of directors for the parent company which runs all the hospitals the plaintiff practices in, and she is a blood relative of the CEO of that company. Judge Sarah Evans Barker also recently filed an order that basically claimed she is infallible in regards to the injunction she approved against Iacovelli that forbids not only defamatory statements about the plastic surgeon but also prohibits "disparaging" statements. That injunction is currently on its way to the 7th Circuit Appeals Court for review.

As far as Iacovelli's Rule 11 filings, they were not by any means carbon copies of the Rule 11 pleadings in this instant case. Iacovelli was given Bergeron's Rule 11 documents for reference, but she found her own statutes and submitted her own supporting facts for her own Rule 11 filings. Bergeron did suggest to Iacovelli that this course would be better for her to take than to counterclaim for abuse of process in Indiana. Bergeron and Grossack have both discussed a future filing on behalf of Bergeron here in Massachusetts and against Eppley, his attorneys, and Judge Barker herself. Such a claim will be strengthened if sanctions are issued against him for violating a clearly

unconstitutional injunction as has been issued in that case. The weaknesses of the injunction will be fully exposed in the appeals process.

The Iacovelli case is a wholly separate entity, but Attorney Zirzow opened that door and wants the court to take notice. Bergeron would also like the court to take notice of that case and consider the fact that no definitive adjudication has been made other than the appealed injunction. The attorneys for Fertitta Enterprises have dragged this case into the spotlight as if all the facts have been determined and the case has resulted in a judgment of some sort against Bergeron. That is not by any means true. In fact, there are two sanctions hearings in the two free states he's defending his rights in, both on the very same day: July 1, 2009.

Bergeron has not been specifically ordered to appear in Indiana for that case's show cause hearing, but if Iacovelli can manage to obtain a telephonic appearance for that date he will try to arrange to testify in that matter as a witness for her. It is these hearings that will ultimately determine if any court of law in either of these free states considers Bergeron's actions in defense of his right to free speech worthy of sanctions. To try to say that issue has already been decided in Indiana as the Zirzow pleading clearly tries to insinuate is another offense worthy of sanctions against him and his firm. Presenting voluminous pleadings from that case as supposed evidence is a further abuse of the process and a grand waste of Judge Nakagawa's time. These pleadings and the docket presented in the Iacovelli matter carry no weight whatsoever in deciding whether sanctions are appropriate here against Bergeron.

Yet, in relation to whether or not the Fertitta Enterprises attorney who drafted this garbage should be sanctioned, the presentation of the Iacovelli case alone as if it represents evidence of Bergeron's misconduct that is sanctionable in this court is frivolous by the very nature of that request. These are two wholly separate matters being adjudicated by wholly separate and unique judges in different jurisdictions and judicial realms. Fertitta Enterprises attorneys would rather have the judge's mind in Indiana rather than in Nevada where it needs to be focused.

The very inclusion of all these spurious and unfounded accusations of sanctionable behavior by Bergeron in Indiana is used by Zirzow as a method to distract Judge Nakagawa from the fact that Fertitta Enterprises has no argument to really explain away the bulk of the recently submitted affidavits. Rather than attack the overall substance of these affidavits he picks out only small snippets here and there and otherwise tries to chop these oak trees of evidence down with an ax

sharpened only by technicalities.

Speaking in technicalities, however, Federal Rules of Civil Procedure 12 contains several sub-sections which support the fact that all these pleadings filed by Fertitta Enterprises are untimely and technically moot. These objections were filed (on 5/28/09) more than 20 days after service of the affidavits in question (See Docket #174, Bergeron's Certificate of Service, citing 5/05/09 service date). Much like responses to initial claims must be offered within 20 days of service, so do objections and motions to strike:

12 (f) Motion To Strike.

The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act: (1) on its own; or (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, ***within 20 days*** after being served with the pleading. (emphasis added).

Therefore, it is also apparent that Fertitta Enterprises' failure to file their objections in time is yet another reason to deny the relief sought.

The fact that the hearing on the Rule 9011 motion has not been set yet has been completely overlooked by Attorney Zirzow. In paragraph 16 of his sanctions pleading Zirzow plainly states:

> 16. LR 9014(c)(2) provides that the Court may strike affidavits failing to comply with the requirements of subsection (c) of that rule. LR 9014(c) incorporates LR 9017, which rule provides for specific deadlines for the submission of evidence prior to a hearing on a contested matter. See LR 9017(d). As such, the Court can and should strike the Affidavits as being filed in violation of this rule.

Close attention should be paid to the wording above, specifically the words "prior to a hearing on the contested matter." As there has been no hearing set, this rule's application is moot.

Fertitta Enterprises cites *Renwick v. Bennett* (In re *Bennett*), 298 F.3d 1059, 1067-68 (9th Cir.2002) in relation to sanctions being appropriate here. In *Bennett*, former law partners sued each other over the proper interpretation of a post-discharge settlement agreement, where the parties agreed to pay a debt discharged in bankruptcy in exchange for a release of one partner's claims against the other. Id. at 1063. There were absolutely no similarities to this instant case, and the sanctions in play in that case were related to an injunction, not a scheduling order.

**BERGERON'S LATE FILINGS SHOULD BE CONSIDERED EXCUSABLE NEGLECT**

The determination of whether neglect is "excusable" is "an equitable one, taking account of

all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). Such circumstances include "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay . . . and whether the movant acted in good faith." *Id.* This list is not exhaustive. See *id.*

In *Pioneer*—which was a bankruptcy case involving a late proof of claim—a creditor represented by "an experienced bankruptcy attorney" missed the deadline for filing pre-petition claims because his lawyer overlooked the filing date in the bankruptcy court's notice. 507 U.S. at 384, 113 S.Ct. 1489. The bankruptcy court refused to find excusable neglect for the creditor's late filing, and the district court affirmed. See id. at 384-86, 113 S.Ct. 1489.

The Sixth Circuit reversed the bankruptcy court's refusal to accept the late-filed proofs of claim in *Pioneer*, and the Supreme Court affirmed. Id. at 386-87, 113 S.Ct. 1489. In holding that the bankruptcy court abused its discretion, the Supreme Court explained that the standard for excusable neglect is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission [, including]. . . the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith. *Id.* at 395, 113 S.Ct. 1489.

Here Bergeron is not an experienced lawyer of any sort, and he is certainly not a bankruptcy attorney. Excusable neglect in his case is expected as he must struggle to figure out the best course of action while constantly trying to educate himself on the procedure and precedents involved.

In *Pincay v. Andrews*, 389 F.3d 853 (9th Cir.2004) (en banc), The Court applied Pioneer to hold that the district court did not abuse its discretion by finding excusable neglect when a sophisticated law firm missed a filing deadline because of a paralegal's error. See *id.* At 860. Although that court did not hold that the district court was required to find excusable neglect under those circumstances, the justices upheld a finding of excusable neglect because they found the evidence sufficient to support it. *See id.*

In *Pioneer* and *Pincay*, sophisticated attorneys were let off the hook after missing filing deadlines. In fact, the Supreme Court in Pioneer went so far as to hold that it was an abuse of discretion not to find excusable neglect where a versed bankruptcy practitioner missed the

bankruptcy court's notice and failed to file a timely proof of claim. By contrast, Bergeron has been at all times unrepresented by counsel. It would be very strange indeed to find the neglect in this case inexcusable, when the neglect in *Pioneer* and *Pincay* by licensed and trained legal professionals was found excusable.

**THE DEBTOR'S REORGANIZATION PLAN DOES NOT PRECLUDE BERGERON FROM TAKING ACTION ON BEHALF OF THE SHAREHOLDER CLASS AND THERE IS NO OTHER LEGAL BASIS TO DO SO**

The current and effective reorganization plan in the core bankruptcy case has a stipulation that pertains directly to this litigation and makes this case immune from an injunction barring other litigation against the estate:

**8.4 Injunction. From and after the Effective Date, except for the shareholder derivative action presently pending as Adv. No. 08-1107, the Bergeron matter presently pending as Adv. No. 08-1082, the Committee Action presently pending as Adv. No. 08-1094, and except as provided in this Plan and the Confirmation Order, all entities that have held, currently hold or may hold a Claim or an Equity Interest or other right of a Equity Interest holder that is terminated pursuant to the terms of this Plan are permanently enjoined from taking any of the following actions on account of any such Claims or Equity Interests or rights: (a) commencing or continuing in any manner any action or other proceeding against the Liquidating Trust or its respective property; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Liquidating Trust or its respective property; (c) creating, perfecting or enforcing any Lien or encumbrance against the Liquidating Trust or its respective property; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Liquidating Trust or its respective property; and (d) commencing or continuing any action, in any manner or any place, that does not comply with or is inconsistent with the provisions of this Plan or the Bankruptcy Code. Nothing in the Plan shall affect, release, enjoin or impact in any way the prosecution of the Claims of Creditors treated by this Plan or the Litigation Claims transferred to the Liquidating Trust pursuant to this Plan.**

The Fertitta Enterprises pleadings in this case have continually taken postures that conceal or try to obscure the fact that they are still in a position of direct influence over Xyience and have been since Fertitta offshoot Zyen, LLC obtained a key lien position over Xyience. UFC and Fertitta Enterprises officials have exerted tremendous pressure on Xyience to support other entities like Cott Beverages, the UFC itself, and the Zuffa Marketing Group by directing funds to those entities before considering the bare needs of Xyience to remain a viable company. This Court should see through these hollow and dubious denials of connection and culpability from Fertitta Enterprises attorneys who clearly have no grasp of the facts at hand and have never conducted adequate investigations to determine those facts.

Fertitta Enterprises and their attorneys are abusing this court in every fashion they can to protect their own skins and save face. They have ruined so many lives with their irresponsible and selfish behavior, and they imagine power, influence, and money is all they will need to escape justice. One should consider the heinous requests of these lawyers (who all know Bergeron has an order to proceed informa pauperis in this case) for Bergeron to pay their legal fees. It would take Bergeron years to fund this whole frivolous argument launched by Fertitta Enterprises against him. As it is he is already almost $2,000 behind on his monthly rent because he's had to devote so much unpaid time to this case.

This request for legal fees would be self-explanatory coming from the debtor in this case, but coming from a viable, successful, and highly capitalized company like Fertitta Enterprises it is despicable and disgraceful behavior. These attorneys are most likely getting paid in full and on time by their clients. They get compensated comfortably even as they screw this case up royally and keep fighting it for all the wrong reasons. They probably drive fancy cars and don't work more than a few minutes from the Courthouse to boot.

Meanwhile Bergeron receives no hourly wage for fighting an altruistic battle to help a group of people he doesn't even have to lift a finger for in this case. Bergeron has no car, no house, and no valuable personal property of any kind beyond his Web-sites that make minimal income. Bergeron is also doing everything in his power to help these folks despite living thousands of miles from the Court in Nevada. He does all this out of a pure motivation to promote justice. The opposing attorneys are acting to promote their own self-preservation, hide the truth, and prevent justice. The amount of financial resources available to the Fertittas to accomplish these tasks is staggering, and Station Casinos has repeatedly announced plans for the Fertitta family to put $244 million of their own money into a restructuring of that company. If they can afford to put up that kind of personal capital, the family enterprise can certainly afford these legal fees.

Comparably, Bergeron has received extremely minimal help from the shareholders in this case he's helping at his own expense. Within the past few months as the national and local Las Vegas economy continues to decline, Bergeron has received absolutely nothing from shareholders other than affidavits and well wishes.

At some point this Court must realize that Bergeron has no impure motivations here and this is not some get rich quick scheme he orchestrated out of any desire to damage the parties

involved. After all, Xyience sued him. This exhaustive effort he's undertaken since is the result of a compassionate person who wants to use his journalistic skills to impact the world around him in a positive way. Given that he is in possession of a vast amount of research findings, witness accounts, telephonic recordings, and other evidence in relation to the fraud perpetrated on all these shareholders, it would be irresponsible and selfish of him to neglect to fight for these poor folks. They do not know how to fight for themselves and cannot afford lawyers to do so.

As Bergeron has said before in open court, in many ways he is a broken individual in terms of society's mold for the typical capitalist American. Fertitta Enterprises attorneys would have him punished for not being greedy and selfish like them. Yet, he can't help it. He is not motivated by dollar signs or getting something for nothing. He is willing to work long hours for no pay to promote justice for people who can't promote it for themselves. Bergeron is the antithesis of the Forbes 500 listed Fertitta brothers who have an insatiable appetite for spending and do not seem to care how they go about earning their paychecks and how many people they have to hurt to earn an extra buck.

If Bergeron was a selfish individual motivated by money alone he would be screaming from the rooftops about how he should be constantly rewarded and given a pat on the back for his work. Instead, Bergeron seeks only what he sees as fair compensation for his efforts. He does not by any means glorify his attempts to seek justice as anything more than they are: an honest man's attempt to help a group of people victimized by big business tycoons and common crooks in business suits. Many of these people will have no other outlet of relief if Bergeron cannot provide them the representation they need. It is a daunting task that would challenge the best of bankruptcy attorneys, but Bergeron is trying his best anyway in an effort primarily undertaken as his sole responsibility to accomplish.

If there is any remotely selfish reason behind Bergeron's actions it can only be attributed to the fact that a writer lives and dies by his or her reputation in the marketplace. Bergeron has been in various newspaper reporter positions over the years and has a work history primarily consisting of published work that is all non-fictional in nature. Such a work record, no matter how impressive, can easily be wiped out by any potential future employer discovering this lawsuit if it does not turn out in his favor. As long as this frivolous litigation hangs over his head it is a stain on his otherwise spotless and incident free history in non-fiction writing. He has always worked to help people with his writing and creative efforts in whatever capacity he can. He will be unable to effectively pursue

that mission in life if this lawsuit continues to obscure his motivations, intent, and record of acting with integrity and complete accuracy in all his writing endeavors.

**FERTITTA ENTERPRISES' LATEST PLEADINGS CONTAIN BLATANT LIES**

The Fertitta Enterprises sanctions pleading contains a section C. claiming the Eppley action represents Bergeron's bad faith. The section begins with the following outright lie:

> 21. Fertitta Enterprises has learned that Mr. Bergeron has recently been sued in other litigation, wherein he has engaged in a similar pattern of frivolous and harassing filings.

Contrary to that false statement, the record in the Eppley case clearly shows that Bergeron is not now and never has been considered an official party in that case as a plaintiff or defendant. He has therefore not "recently been sued in other litigation." Also, the only filing Bergeron has presented in that matter is his own affidavit in support of Iacovelli. Everything else has been presented by Iacovelli herself and is not relevant here. Any lawyer who bothered to do even a cursory examination of the facts at hand should have known not to make the above contentions, never mind open an entire section of a pleading with these bogus claims.

Attorney Zirzow does not stop at the above lies. He continues his lying spree with the following statement:

> Mr. Bergeron has acted as Ms. Iacovelli's legal "representative" throughout this litigation, and continued to ghostwrite pleadings on her behalf. See id. at Ex. 6.

There is no proof or evidence presented by Fertitta or Eppley attorneys proving Bergeron wrote any pleadings in the Eppley case, and no court ruling in that case has determined such, either. The above statement is framed as a clear fact when it is not. It is merely an allegation leveled at Bergeron by an attorney in an unrelated manner. Attorney Zirzow would be in no position to know about this case intimately enough to be able to discern what level of involvement Bergeron has in it, as he already demonstrated by having no idea that Bergeron has not been sued in this case.

Zirzow continues to try to paint Bergeron as being behind Iacovelli's motions and legal filings in the closing paragraph of section C. All these contentions are improper and off base. Iacovelli is responsible for her own pleadings and Bergeron's actions in the Iacovelli matter are completely inconsequential to deciding the issues at hand here. It was irresponsible, reckless, and

downright moronic for Attorney Zirzow to think he could get away with such blatant misrepresentations and improper characterizations of that suit to prejudice this court against Bergeron.

There is no basis for calling Bergeron a vexatious litigant, and he has been completely within his rights in the actions he's taken and the pleadings he's filed thus far. Attorney Zirzow's pleading motion includes an entire section devoted to trying to prove Bergeron is a vexatious litigant, but his analysis is completely inaccurate. No evidence of any bad faith exists, none of Bergeron's pleadings have been designed as methods of harassment, and the cited precedent cases do not involve the violation of a scheduling order as the main basis for sanctions.

What's worse is that despite the judge's lack of any definitive ruling on the Amended Rule 9011 motion, Fertitta Enterprises seem to imagine that they've already been cleared of all charges. They have essentially given their own conclusions and opinions the same weight of a judge's official ruling when none has been offered by Judge Nakagawa on this matter and their potential culpability for sanctions:

> 35. This Court has given Mr. Bergeron every opportunity to plead his case, yet he has repeatedly failed to establish a claim upon which relief could be granted. Now, with all else having failed him, he continues to press his Amended Sanctions Motion with the filing of the five (5) additional Affidavits that add absolutely nothing of relevance. As such, Fertitta Enterprises a permanent solution needs to be imposed to put an end to Mr. Bergeron's frivolous, harassing and duplicative filings.

In fact, Mr. Bergeron was only given one ultimate opportunity to pursue any actual claim against Fertitta Enterprises since he was instructed to reconstruct and confine his counterclaims against Fertitta and Xyience to include a defamation charge only. The Amended Rule 9011 motion was Bergeron's only other outlet of relief to pursue in the wake of the defamation charge being dropped in regard to Fertitta Enterprises. This is not a repeated failure to establish a claim by any stretch of the imagination. These are acceptable and understandable legal tactics given the circumstances. Further, Zirzow continues to claim all the affidavits offer nothing of relevance. While Bergeron knows this is a blatant lie and Zirzow is simply posturing, it is nonetheless not a mere insinuation by Zirzow. Zirzow mentions this lack of relevance as a common theme of this pleading

and in the context of this being a definitive fact that he is convinced of and voices such on behalf of his client. Therefore, he has essentially admitted that he is sure these documents will in no way prejudice his client in this matter.

Finally, Bergeron's motivation that has been repeatedly mentioned in open court is to help the injured class of shareholders. The goal is to get them some kind of relief for being screwed out of their rightful ownership positions in the company. They were completely shut out of the company based on complete lies spewed by Fertitta Enterprises officials and their company plants and loyal underlings. This fraud should not go unpunished or overlooked because of a briefing period or a technicality of any sort.

Bergeron has on more than one occasion asked this Court to sanction him for his willful violation of the preliminary injunction issued by the 8th District Court early on in the instant case. Judge Nakagawa has repeatedly refused to sanction Bergeron for such behavior despite Bergeron's continually admitting that he is violating the injunction now and will violate it in the future. Judge Nakagawa has not issued any sanction thus far against Bergeron for any reason. There is no basis to do so at this juncture, either. In fact, if Bergeron had the money to pay Attorney Zirzow's fees, he would gladly volunteer the funds for the latest pleadings. Bergeron's very grateful for these latest filings, which really do prove Zirzow should have his attorney fees paid by Bergeron, because all Zirzow's work on these motions should eventually favor Bergeron. The material is incompetently and irresponsibly crafted as a means to further his own client's case and is better off as a supportive pleading for Bergeron's sanctions motion instead.

Attorney Zirzow displays a patent inability to grasp the real case law at hand in this matter and the real factual issues underlying this case. He continues to attempt to obscure the record on behalf of his client by spewing blatant lies such as stating that Bergeron has been sued in the Eppley matter when he has not been. He further makes believe that the Amended sanctions motion has already been decided and he is just as good a judge on that matter as Judge Nakagawa himself.

Bergeron is simply exercising his rights in this matter to represent himself and defend himself from spurious and frivolous allegations. As such, because of the way this case shaped the actions and/or inaction of shareholders and prevented Bergeron from reporting the truth to them, he is seeking most of the relief on behalf of injured shareholders. His own relief should be minimal in comparison, but it should be granted nonetheless.

**CONCLUSION:**

This Court should disregard the latest Fertitta Enterprise filings as a matter of procedure since they were not filed within the 20-day objection period. Further, these pleadings are based on false statements of fact, and there is no basis for any sanctions or filing bar against Bergeron.

If the merits of the Amended Sanctions motion are not apparent now, they will be apparent after Bergeron is given his day in court to cross-examine those he named in the Rule 11 motion as culpable in this matter. He is also willing to be subjected to cross-examination himself as part of said hearing. Judge Nakagawa indicated he may or may not set a hearing date, and since no such date has been set the briefing period violation is by no means preventing Fertitta Enterprises from formulating an adequate response. In fact, the Court allowed a response more than 20 days after those affidavits were filed and there has still been no hearing set on the Amended Sanctions motion those affidavits support.

Whether or not the court throws out the objections of the Fertitta Enterprises attorneys on a technicality, the motion itself and supporting evidentiary attachments prove nothing that supports sanctioning Bergeron or striking the five affidavits Bergeron recently presented. Also, notice should be taken of Bergeron's latest pleadings requesting permission to circumvent the constraints of the briefing period. Also, the court should consider that these documents have already been served on the attorneys involved and will soon be served on all parties named in the Amended Rule 9011 sanctions motion.

No filing bar or sanction is appropriate here. Bergeron is the first to admit he is not the best lawyer. He has no formal training in the legal realm whatsoever and is only able to hack it because he works extremely hard at it. Any violation of the scheduling order that is the subject of the Fertitta sanctions request must be examined in the context of excusable neglect. Bergeron did not act out of any malicious attempt to prejudice the opposition, and they have been allowed ample opportunity to respond and object. Instead they waited far too long and filed a far too inadequate request that is unjustified and is framed in much more of a bad faith context than anything Bergeron has filed in these proceedings thus far.

It is therefore more sensible to apply sanctions to Fertitta Enterprises and their law firm as a

whole for allowing such a blatantly dishonest and diabolical motion to be filed without any adequate examination of the contentions made within it. A hearing should be set on the Rule 9011 sanctions to allow Bergeron ample time to raise the funds for such a trip to attend the hearing in person, and these latest Fertitta Enterprises pleadings should be added to that sanctions request as a matter of principle.

Attorney Zirzow has misrepresented the law, the facts, and even the circumstances of a case he has nothing to do with in order to improperly sway the court. This reflects poorly on himself, his law firm, and his client. This is the kind of behavior that sanctions are designed to confront and prevent. It is all the more egregious coming from a paid representative of the court who is qualified to practice law and should know better than to spout such blatant lies to support a frivolous position.

Bergeron should be allowed to proceed in this matter with no filing bar and no other improper constraints. There is no basis for any judgment against him in this instant matter, and even holding a hearing on such a flawed motion is questionable considering the circumstances. However, Bergeron is willing and able to plead his case at such a hearing and prove his intentions are and always have been purely designed to help the shareholders and their families recover something for their losses here.

Bergeron welcomes such an opportunity to plead his defense at the hearing, and he is confident that the Court will ultimately see that he has not acted with any ill will or bad faith in any of his filings or pleadings thus far in this case.

*DATED this 1st day of June, 2009.*

IN PROPER PERSON

[signature]

Rich Bergeron
147 Old County Road
East Sandwich, MA 02537
617-209-4325
Attorney Pro-Se