RECEIVED & FILED

'09 SEP 29 A9:57

Rich Bergeron
147 OLD COUNTY ROAD
East Sandwich, MA 02537
Telephone: (617) 209-4325
Defendant as Pro Se Attorney

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In Re:<br><br>XYIENCE, INC., A Nevada Corporation<br><br>Debtor. | No. BK-S-08-10474-MKN<br>Chapter 11<br><br>Eighth Judicial District Court<br>Las Vegas, Clark County, Nevada<br>Case No. A544781, Dept. XXIII |
| XYIENCE INCORPORATED, a Nevada Corporation,<br>Plaintiff,<br><br>v.<br><br>RICHARD BERGERON, an individual<br>Defendant. | CASE NO. BK-2-08-AP-01082-MKN<br><br>**DEFENDANT AND COUNTERCLAIMANT'S JOINT REPLY TO XYIENCE, INC. & FERTITTA ENTERPRISES OPPOSITIONS TO EX-PARTE MOTION FOR DISMISSAL, SUMMARY JUDGMENT, & RULE 9011 SANCTIONS HEARING** |
| RICHARD BERGERON, an Individual,<br><br>Counterclaimant,<br><br>v.<br><br>XYIENCE INCORPORATED, a Nevada corporation,<br><br>Counterdefendant. | Hearing Date: N/A<br>Hearing Time : N/A<br><br>Location: 300 Las Vegas Blvd. South<br>Courtroom #2<br>Las Vegas, NV 89101 |

**DEFENDANT AND COUNTERCLAIMANT'S JOINT REPLY TO XYIENCE, INC. & FERTITTA ENTERPRISES OPPOSITIONS TO EX-PARTE MOTION FOR DISMISSAL, SUMMARY JUDGMENT, & RULE 9011 SANCTIONS HEARING**

# INTRODUCTION

Fertitta Enterprises attorneys filed a limited opposition recently that Xyience, Incorporated attorneys joined. Xyience attorneys made the fatal flaw of pointing out that all matters should be set for hearing while simultaneously trying to object to and block a hearing on Rule 9011 sanctions.

Some serious questions are raised by this puzzling strategy of the opposing attorneys in this matter. Why is it that these attorneys are clamoring to get a hearing on this instant ex-parte motion and not interested in any hearing on a matter that has been on the docket for a much longer period and involves substantially higher damage claims? Why is it that Fertitta Enterprises and Xyience are so afraid of a Rule 9011 hearing? As for a hearing on this instant matter, it would be pointless considering the stark facts already available from simply perusing the record.

Both Xyience and Fertitta Enterprises attorneys make several misrepresentations and a few downright absurd statements in their opposition paperwork. More importantly, the absence of certain material, evidentiary support, and statements of explanation leaves Xyience and Fertitta Enterprises without any legal legs to stand on.

First of all, Xyience makes no accounting or explanation for statements made concluding that perpetuating this case is a waste of the estate's resources. The Xyience attorneys state that they feel compelled to allow the liquidation trustee to ultimately analyze and either pursue or drop the case. This is clearly an indicator that Fennemore Craig has no desire to prosecute the case on their own. They also admit they don't have any idea of whether the claims are valid enough for a liquidation trustee to prosecute. Yet, they claim in the same breath that it would be foolish to settle.

Xyience states no grounds that their case should be continued on the merits. Where is the new evidence? Where are the affidavits disputing those Bergeron has provided thus far? Xyience has proceeded in a wholly defensive and hollow manner since bringing this case into the bankruptcy court. This is a telltale sign that they intended to drown this case here, just one more aspect of the

intricate scheme this whole bankruptcy represents. Consider the fact that they are dragging their feet so badly in the core case that the Xyience attorneys, on September 1, 2009, surrendered documentation first ordered by this court to be volunteered on 1/31/2008.

Everything in the record for Xyience seems to hinge on technicalities, procedural nuances, and utter legal red tape that should have no bearing on the merits and the direct evidence Bergeron has been assembling diligently throughout this case. These bare denials cited by Xyience attorneys are just that. There is no affidavit or evidentiary support of such denials, from lawyers or named individuals playing a role in the alleged conspiracy to fraudulently bankrupt Xyience.

A judge has the sole discretion to decide these matters of procedure where Bergeron may be lacking in complete 100 percent compliance. The stringent standards of legal pleadings and procedural requirements have been daunting for Bergeron, and it is truly miraculous he has been able to get this far with no formal training. On top of that, there is so much more riding on Bergeron's success or failure here than whether or not he will collect any damages. Folks damaged by this case—regular people that Bergeron is the only one fighting for—had their lives ripped apart by the actions of Fertitta Enterprises in hijacking the company to serve their own needs. Retirement, college, and savings funds were wiped out. Families were altered forever as a real and direct consequence of the fraud perpetrated by all the entities named in the Rule 9011 motion now before the court and still not decided.

The Fertittas so overbuilt themselves into a corner with Station Casinos that the Reno courts are now saddled with one of the most complicated, contentious, and mind-boggling bankruptcy cases that system has seen in decades. The individuals and business entities attached to all these inter-connected entities and their collective irresponsible actions, as named in the Rule 9011 Motion, have at all times sacrificed the hopes and dreams of hundreds of innocent victims to bolster their own bottom lines. It's a game of maximum profit for minimum investment, and they don't care how they win it. The evidence presented thus far more than bears out the details of this grand conspiracy and the kind of shady, corrupt characters involved.

If being a great lawyer is all about hiding the truth and hijacking the nuances of process to handicap true justice, Fertitta Enterprises and Xyience, Incorporated have some of the best legal

minds in the business on this case. If somehow one could argue that being a good lawyer is actually more than that, that it involves a more noble pursuit of truth, then the opposing lawyers are devious and despicable men and women. They sully the lawyer and attorney mantle with their irresponsible, surreptitious, and deceptive practices.

These attorneys seek out minor points of process and continually try to indict Bergeron based on these legal slips rather than any serious weaknesses in the merits he's presented. For instance, Xyience points to "impermissable hearsay" in regard to Bart Donovan's affidavit, but there is no mention of any flaws involved in the other affidavits presented by Bergeron and Gary Nelson. They also never filed any formal objection to such hearsay that was granted by this court. There is no disputing that defamation occurred. There is no definitive affidavit or evidentiary support from any Xyience official denying these events occurred as described in the affidavits presented by Bergeron.

The opposing attorney affidavits are in actuality the bulk of the "impermissable hearsay" accepted thus far in this case, and all those statements should be disregarded in this matter as they relate to material facts. An attorney cannot testify for the client. If the opposition would like to get technical, what's good for the goose has to be good for the gander. They can't continue to contradict themselves and get away with it. They can't continue to say the same rules that apply to Bergeron don't also apply to their own filings and arguments. If a hearing must be held on the instant motion, it must also be true that there should be a hearing on the Rule 9011 motion.

## LEGAL ARGUMENT:

**FURTHER GROUNDS FOR DISMISSAL FOR FAILURE TO PROSECUTE**

Xyience Attorneys seem to have the conscious goal of keeping this case in absolute limbo until a liquidation trustee is put in place to deal with it. Though they point to a 45-day window in which this might happen, this could certainly change. There is no reason the resolution of the initial Xyience case should be delayed. The behavior of these attorneys seems perfectly suited for new Rule 9011 sanctions charges considering their latest opposition consciously seeks to needlessly delay these proceedings. These attorneys know there is no evidence, no justification, and no basis for continuing the hollow defamation charges against Bergeron. They have not submitted any contributory evidence, affidavits, or arguments calling for the core case to continue since bringing this litigation into this court.

The sole purpose for Xyience transferring this matter to this venue was clearly to confuse Bergeron and to bog this litigation down in technicalities. This latest excuse regarding the liquidation trustee should have no bearing on the proper resolution of this case. Xyience attorneys have repeatedly mentioned that this case is taking much needed resources away from the company. They also try to claim that admission of these cost concerns has no bearing on the merits, but that is clearly a lie. How can this case be a waste of the estate's money if there is any actual hope of recovery and potential for victory? After all, Xyience is asking for $25 million in damages. If the initial case is a waste of company resources that logically translates to mean that whatever the company's spent in legal fees has not resulted in getting closer to any recovery whatsoever. Yet, while Fennemore Craig attorneys complain about costs to the estate, they are not complaining about the paychecks they each get as a result of these undue costs levied on the estate. They state for the record that Xyience has a problem with the costs, but since they get paid regardless it's not the kind of concern that would lead to them suggesting to their client that a settlement be made.

Since the initial Jamie Cogburn case came before the 8th Circuit court, there have been no indications that any other lawyer working on this matter has found any new evidence, supporting documentation, or any justification whatsoever for continuing the case against Bergeron. There is no evidence whatsoever that any Fennemore & Craig lawyer even properly investigated the charges against Bergeron or even adequately analyzed the initial case as to whether there were any merits whatsoever.

As long as this case continues and there are major open matters in contention, Xyience will continue to exponentially waste money in lawyer fees paid to Fennemore & Craig lawyers. These same lawyers act as if the fees generated due to this litigation are expenses they are being forced to collect since only the liquidation attorney seems to have the authority to end this case before any further damage can be done.

The reality is this is a situation that the liquidation attorney will have no basis to believe he can prosecute if these current lawyers cannot. This case was filed more than two years ago, and all the various attorneys who have worked on it have been unable to even get discovery started. Xyience attorneys have made no compelling merit-based argument on why this case should continue against Bergeron. They have simply stated time and again that Bergeron's litigation strategy is draining their resources, forgetting that Bergeron would never be engaged in this situation if their company did not decide to bring a bogus case against him. They have also hinted that these concerns about fees have nothing to do with the merits of the case, yet they never actually expound on what those merits are. In fact, there are no merits to their initial case, and they have consciously avoided that reality and allowed their firm to be paid for work that they willingly admit is a waste of time and money.

Xyience's responsive pleading focuses improperly on only half of the basis for a failure to

prosecute dismissal. Rather than address their actual failure to prosecute the matter, Xyience attorneys contend that they have not failed to comply with any court order. They also continue by harping on "lesser available sanctions" which they do not detail or explain. There is no lesser sanction at this time that would be appropriate considering the facts on the record.

Xyience attorneys detail four factors courts are required to consider before dismissing a case for failure to prosecute. The first factor is "the public's interest in expeditious resolution of litigation." Xyience investors and Bergeron himself have been battling for justice for more than two years now. This case has been anything but expeditious, and the public interest would be served only by dismissing this matter immediately. Otherwise, this court is sending the message that if you want to silence a member of the media who is getting too close to your worst secrets, all you have to do is file a bogus lawsuit for defamation. Additionally, those who have followed this case can clearly see that all it takes is a fairly decent legal team to endlessly delay proceedings like this to the detriment of both parties and the benefit of the legal representatives.

The second factor mentioned is the "court's need to manage its docket." This court has enough legitimate cases to handle without having to humor Xyience attorneys by continuing this charade for them. There has been no earnest effort on the part of Xyience attorneys to prove there are any valid merits that justify continuing the initial case. More than two years have passed since the inception of this unfounded case, and there has been no discovery or movement toward trial. Proper management of the docket naturally calls for the dismissal of the initial case and proper closure of the counterclaim.

The third factor is "the risk of prejudice to the defendants." Obviously by tainting the court's outlook on Mr. Bergeron's honest investigative reporting with the initial case, Bergeron must be

looked upon by the judge in a prejudiced light. Bergeron always fought for the shareholders in this matter and tried to do everything in his power to help those who were swindled out of their hard-earned savings. To be labeled as a defamation defendant when no valid evidence exists to prove such bogus allegations is extremely prejudicial to his own claims and the valid resolution of the entire case. Before this litigation began, Bergeron was only doing his best to expose crooked and corrupt behavior at Xyience. Punished for his good deeds by this lawsuit, Bergeron refused to give in, knowing at all times he has been right about his accusations and reporting. Continuing these unfounded defamation claims will further prejudice Bergeron's case.

The fourth factor is "the public policy favoring disposition of cases on their merits." To dispose of this case on the merits, Xyience would somehow have to explain what the existing merits are. Lawyers for the company have so far failed to even suggest what the specific merits of their case might be. There has been no effort on the part of these attorneys to bolster the claims of the initial case in any fashion. It is only a series of technicality-laden arguments and procedural nuances that allowed the existing evidence to stand. That evidence consists of only one very shaky, hastily crafted, and completely baseless affidavit from Adam Frank, the only officer of Xyience to ever sign an affidavit in this case. Frank quickly removed himself from Xyience during the bankruptcy process and has never been questioned in court about the validity or lack thereof of his statements in the initial affidavit. This affidavit is compromised at best.

Xyience attorneys have been given more than two years to supplement the initial case with further sworn evidence, and they have done nothing significant to bolster the initial claims or celebrate the initial case's merits in any sufficient detail. They have shown no indication that they even looked into the initial claims properly. Instead, they simply blindly accepted all the allegations

as true and have fought tooth and nail to keep the matter in legal limbo as long as possible.

The fifth factor is "the availability of less drastic sanctions." As mentioned above, there do not appear to be any suggestions made by Xyience for exactly what other sanctions would be appropriate here. If the transfer to the liquidation attorney for determination is a less drastic sanction, it would be a sanction against Bergeron more than Xyience. That transfer would inject more delay in a process that has already dragged on for over two years.

Xyience attorneys do not explain any of these factors in light of the validity of their own initial claims against Bergeron. They further add, "There must be a showing of unreasonable delay." The entire purpose of Xyience removing this litigation to the bankruptcy court was to delay the resolution of this case. Their most recent pleading actually advocates further delay on no valid basis. There is mention of at least 45 days that will pass before a liquidation attorney can be seated, yet there is no valid argument that the liquidation attorney has to be in place before such a case can be properly adjudicated. There is no explanation of why the liquidation trustee will be better suited to analyze the case's merits or lack thereof. Waiting for a liquidation attorney is purely a delay tactic, and there is no justification for such incessant delay under the circumstances. The only party that will benefit in that context are the attorneys getting paid hourly wages to simply sit on this litigation and sink it with repeated delays.

**SUMMARY JUDGMENT IS APPROPRIATE UNDER THE CIRCUMSTANCES**

Judge Nakagawa said it best in his own memorandum decision (Docket # 72, dated 10/14/2008) on a previous summary judgment request made by Bergeron:

"FRCP 56 is applicable in adversary proceedings pursuant to Rule 7056. See In re Silva, 190 B.R. 889, 891 (B.A.P. 9th Cir. 1995). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56© A fact is "material" for summary judgment purposes if it might affect the outcome of suit under the governing substantive law. See Anderson V. Liberty Lobby, Inc., 477 U.S. 242, 248 (1985). **(Case 08-01082-MKN, Docket # 72, Page 4, line 6-12)**

The material facts of the counterclaim contend that defamation occurred against Bergeron, perpetrated by Xyience. As for the evidence of an adjusted damage amount of $1 million, it is really not possible to determine a better number. Besides, Xyience attorneys actually call this adjustment "kind." They know the damage amount is really impossible to quantify and Bergeron could certainly justify a much higher amount of damages as a result. Bergeron has had to spend hours too numerous to add up and quantify because of Xyience's defamation of his character. The collateral damage has been tremendous, and his career has been completely sidetracked. The self-imposed legal training, the organization and creation of countless files and endless paperwork, and the other hands on investigation and outside work associated with this case have cluttered Bergeron's life and taxed his ability to earn an appropriate income. The most difficult task has been trying to unite the various shareholders since so many of them were fed lies about Bergeron by officials from Xyience.

This case has so stressed Bergeron that he is more than willing to compromise, yet Xyience officials and attorneys act like they have no choice but to wait for a liquidation attorney in order to explore settlement, drop the case, or submit to a dismissal. They simply insist they must keep the case in a virtual limbo where they really don't care to address any issues involved until at least 45 days from now or whenever a trustee is appointed. This is unfair to both Xyience and Bergeron. If this firm after all this time has already decided the case is wasting the estate's resources, what will the appointment of a liquidation attorney really change about that assessment? What will holding onto this case and all its various expenses do to alleviate these cost concerns and cut the company's

losses? Why should Bergeron have to wait even longer than he already has for the court to decide what the opposition has already admitted in writing? It makes no sense to keep this litigation going just so yet another party can be brought in to analyze and dispose of the case after even more undue fees are levied against the estate.

Xyience attorneys actually complain just because they have to respond to Bergeron's earnest attempts to bring a sensible end to these proceedings. Yet, they cite no case law, statute, or rule of procedure which forbids them from analyzing the case on their own and adjudicating it judiciously if it will save the estate money. Consider this statement from page 4 of the Xyience opposition joinder:

> **"This case has caused the estate to incur fees and costs for responding to Bergeron's numerous motions that have no basis in either law or fact. The Debtor reiterates that it is the Liquidating Trustee, not the Debtor, who should make the determination whether the case is worth pursuing." (Docket # 190, dated 9/22/09, Page 4, Lines 16-19)**

In other words, Xyience attorneys say it is not their place to decide or analyze the merits of this case and whether it can still be held together somehow on this shaky framework of lies. Further, they point the finger at Bergeron and contend that his "numerous motions" have "no basis in either law or fact." Yet, if this is true and can be proven, why did they never seek any legal relief on behalf of Xyience in the form of Rule 9011 sanctions or any other sanctions against Bergeron? Why have they not provided any affidavit or evidentiary support proving Bergeron's motions have no basis in law or fact? The only explanation is that they are posturing blindly, as they have been doing the whole time this case has been before this court.

Consider the fact that it is Fertitta Enterprises attorneys doing the bulk of the legal infighting in this case, even after they have been cut off from the counterclaim. It is Fertitta Enterprises who is actually responsible for fraudulently bankrupting Xyience to complete their scheme to steal and sell the company out from under its valid shareholders. Both Xyience and Fertitta Enterprises attorneys

are conspiring to delay this case so the facts surrounding the fraudulent bankruptcy are kept under wraps for as long as possible. Also, since Fertitta Enterprises is not itself in bankruptcy, their legal expenditures will not be as closely scrutinized as those of Xyience's legal team.

The liquidation attorney will not be the one to ultimately decide this case. That will be up to Judge Nakagawa. There's no need to wait for a formality to occur when all the evidence has been presented to prove Xyience definitively defamed Bergeron. Xyience's responsive pleading gave no concrete background through exhibits or affidavits to justify the bare, unspecified denials they offered in their answer to the counterclaim. There has been no evidence presented that shows the liquidation attorney will have any ammunition to dispute Bergeron's charges, and nothing about waiting for a liquidation attorney makes any sense in that context. There is no need for a memorandum of facts when the record reveals what truly happened and the damage that has been done to Bergeron as a result.

**A HEARING ON RULE 9011 SANCTIONS SHOULD BE HELD**

Fertitta Enterprises attorneys specifically object to a Rule 9011 Sanctions hearing and claim Bergeron is not in compliance with the scheduling order on the sanctions motion because he filed a request to compel such a hearing. Though part of the instant motion deals with the 9011 sanctions issue, the bulk of the motion addresses other issues. This is a new motion and not a response or brief related directly to the Rule 9011 Sanctions motion that the scheduling order covers. Fertitta Enterprises attempts to constrain Bergeron's entire motion by claiming it violates the scheduling order. The attorneys for Fertitta Enterprises explain, "Bergeron has seized upon the Court's delay in

deciding his Amended Sanctions Motion to continually file further pleadings—including not only the untimely and improper Affidavits dealt with in the Motion to Strike, but also now the instant Motion—in direct contravention to the Scheduling Order."

The fact is, Bergeron's motion does not attempt to circumvent or defy any scheduling order at all. Bergeron simply provided an explanation and justification for a hearing to be held. It is interesting that the Fertitta Enterprises attorneys actually admit the court has delayed the decision on that hearing. There have been no recent decisions from the court on any outstanding matters, and as such Bergeron felt the need to call for a hearing to help resolve some of the complicated issues associated with this litigation. This instant motion is not meant as part of the argument for why sanctions should apply or what points of law should be discussed at such a hearing if it is ever held. The motion simply asserts Bergeron's argument that a hearing is justified under the circumstances. It should not therefore be constrained by a scheduling order designed for the sanctions motion itself. The part of the instant motion that deals with the sanctions hearing is actually a direct response to the passage of the briefing period on the sanctions motion and additional delays beyond that closing date without a hearing being held.

Fertitta Enterprises and Xyience attorneys both point to LR 9014 (a) and (b) "which requires all matters be set for hearing." These legal teams both claim that Bergeron's ex-parte request should be denied because there has been no hearing set. If this is true, then the converse should also follow to be true. In that spirit, there is plenty of justification for relief to be granted to Bergeron on the sanctions request if a hearing is **not** set on that matter when he has clearly asked for one. If Bergeron's supposed "failure to follow the Local Rules" is punishable by refusing him relief, what punishment is applicable for the court refusing to hold a hearing on another more important matter?

If these local rules are to apply to the instant motion, they must also apply to the sanctions motion. As such, any decision on this instant motion should correlate with a decision on the sanctions motion. If there must be a hearing to decide this instant motion, Bergeron would not object. He filed this motion as an ex-parte motion to minimize the potential delay considering the process has already been thoroughly drawn out. In this scenario, however, it also does not seem as if any hearing would add any substance to the record that cannot be added through the motion itself and subsequent pleadings. In the case of the sanctions motion, however, there are multiple individuals named who should be available to provide testimony and for cross-examination.

There simply cannot be one set of rules for one party and another set of rules for the other. Justice entails providing an equal playing field for both parties in a particular litigation. If there must be a hearing on this motion, the sanctions motion should also be set for a hearing. If there is no need for a sanctions hearing, there is no need for a hearing on this matter, either. Xyience and Fertitta Enterprises should not be able to pick and choose as to when the local rules apply and when they don't.

**CONCLUSION:**

Bergeron is simply trying to bring about an end to this long and painful litigation process through this instant motion. He is willing to accept any damage amount the court considers acceptable under the circumstances. Despite the loss of income, the various legal expenses, the time wasted, and all the other negative impacts this case has had on him thus far, Bergeron is more concerned about the investors he's been fighting for all along. The sanctions motion is his one

chance to show the court that these individuals and business entities deserve adequate relief for the suffering they've endured at the hands of the greedy corporate crooks that perpetrated this fraudulent bankruptcy.

In this context, Bergeron will utilize the damages in this case to bring these perpetrators to justice once and for all. He will help in any manner he can to promote the story of the whole saga and expose the people behind the scandal for what they truly are. All he asks of this court is to be allowed to do so without any undue stigma attached to his true story or prejudice unfairly attached to his good name because of a bogus complaint designed to silence him. Additionally, he should be awarded damages pursuant to the egregious damage done to him by Xyience's defamation of his character. Finally, he should be allowed to proceed with the Rule 9011 Sanctions hearing, which should be the last matter decided in these proceedings.

DATED this 28th day of September, 2009.

IN PROPER PERSON

Rich Bergeron
147 Old County Road
East Sandwich, MA 02537
617-209-4325
Attorney Pro-Se
Rich.Bergeron@gmail.com

## CERTIFICATE OF SERVICE

1. On September 28, 2009 I served the following document:

**DEFENDANT AND COUNTERCLAIMANT'S JOINT REPLY TO XYIENCE, INC. & FERTITTA ENTERPRISES OPPOSITIONS TO EX-PARTE MOTION FOR DISMISSAL, SUMMARY JUDGMENT, & RULE 9011 SANCTIONS HEARING**

2. I served the above-named document by the following means to the persons as listed below:

[x] a. **By direct email (as opposed to through the ECF system)** (list persons and email addresses):

Laurel E. Davis (NV Bar No. 3005) ldavis@fclaw.com
Jon T. Pearson (NV Bar No. 10182) jpearson@fclaw.com
GREGORY E GARMAN: bankruptcynotices@gordonsilver.com, bknotices@gordonsilver.com

I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

**I declare under penalty of perjury that the foregoing is true and correct.**

*DATED this 28th day of September, 2009.*

IN PROPER PERSON

Rich Bergeron
147 Old County Road
East Sandwich, MA 02537
617-209-4325
Attorney Pro-Se