Rich Bergeron
141 Green Street
Abington, MA 02351
Telephone: (617) 209-4325
Defendant/Counter-Claimant as Pro Se Attorney

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In Re:<br><br>XYIENCE, INC., A Nevada Corporation<br><br>Debtor. | No. BK-S-08-10474-MKN<br>Chapter 11<br><br>Eighth Judicial District Court<br>Las Vegas, Clark County, Nevada<br>Case No. A544781, Dept. XXIII |
| XYIENCE INCORPORATED, a Nevada Corporation,<br>Plaintiff,<br><br>v.<br><br>RICHARD BERGERON, an individual<br>Defendant. | CASE NO. BK-2-08-AP-01082-MKN<br><br>**DEFENDANT AND COUNTER CLAIMANT'S MOTION FOR LEAVE TO AMEND RULE 9011 SANCTIONS MOTION**<br><br>Hearing Date:____________, 2010 |
| RICHARD BERGERON, an individual,<br><br>Counterclaimant,<br><br>v.<br><br>XYIENCE INCORPORATED<br><br>Counterdefendant. | Time: 9:30 AM<br><br>Location: 300 Las Vegas Blvd. South<br>Courtroom #2<br>Las Vegas, NV 89101<br><br>RECEIVED<br>AND FILED<br><br>NOV 2 2010<br><br>U.S. BANKRUPTCY COURT<br>MARY A. SCHOTT, CLERK |

SCANNED

# DEFENDANT AND COUNTERCLAIMANT'S MOTION FOR LEAVE TO AMEND RULE 9011 SANCTIONS MOTION

**INTRODUCTION:**

Defendant and Counter-claimant Rich Bergeron (hereinafter "Bergeron") hereby respectfully requests leave of this honorable court for a period not more than 90 days from the date of approval to formally amend the outstanding and yet to be heard Rule 9011 Sanctions Motion.

Bergeron recently came to a mutual settlement agreement with Xyience's liquidation trustee Counsel Jon Backman regarding this motion, which would involve Xyience being removed from the amended version of the 9011 pleading. This is not the only reason for a need to amend this motion, however.

Additional evidence Bergeron uncovered reveals Xyience COO and CFO Mike Levy should be added as a party who should be sanctioned in the case for misconduct and for furthering the schemes surrounding the ongoing abuse of the bankruptcy process. Levy's role in the fraudulent bankruptcy was central and critical, and his ongoing position of power with the company is an indicator he's been paid off for his loyalty to the Fertitta family and Fertitta Enterprises.

Bergeron visited Bloomington, Illinois during the first week of February, 2010 to discuss this adversary case and the entire bankruptcy and history of Xyience with Attorney Jon Backman ("Backman"), who is working on behalf of the Trustee in this matter. Bergeron provided Backman with significant background information and documentation that would support his claims on behalf of creditors against those who bankrupted the estate fraudulently. Bergeron provided such information with absolutely no conditions and without any settlement considerations in mind. (*see Affidavit of Rich Bergeron In Support Of Motion For Leave to Amend Rule 9011 Sanctions Motion*)

Bergeron subsequently worked with Backman and cooperated as much as he could by providing answers to some of Backman's questions and documentation where appropriate. Knowing some of the legal representatives who perpetrated this bankruptcy were just as guilty as some of the common adversaries shared by Bergeron and Backman, Backman chose to compromise his integrity to insulate Attorney Laurel Davis and Fennemore Craig due to his need to get their approvals in future bankruptcy matters. Bergeron realized after that happened that Backman did not have the best interests of the shareholders in mind, and that the Rule 9011 motion has only become more essential

to pursue against the parties outside of the estate, including the culpable attorneys. Backman was in over his head already when he came on board with fast-approaching deadlines for filing adversary cases. He did not adequately pursue what would have been valid charges against the attorneys involved in filing fraudulent bankruptcy paperwork, and he did not follow through on any of his promises (independent of settlement discussions) to drop the frivolous case against Bergeron that initiated this whole process.

Even though Bergeron formally volunteered his help and information to the Estate, Mr. Backman and the Trustee David Herzog ("Herzog") have not lifted a finger to drop the $25 million claim against him that still persists. Backman told Bergeron on several occasions that the case would be dropped, but Backman has yet to file a single pleading in this case. The needless delay involved in dragging Bergeron along with false promises is sanction-worthy under Rule 9011, and if it continues Bergeron would feel compelled to also add Backman and Herzog to an amended Rule 9011 Motion if he is granted leave to amend. Their personal transgressions against Bergeron are independent of the Estate's as a whole and should be individually addressed as a result.

Backman played a central role in trying to placate Bergeron without following through on any of his most important promises, constantly reported that he would talk to the trustee with no reports of any actual follow through, and avoided taking any significant action to withdraw a complaint he and the Trustee knew to be invalid. This withdrawal was understood as necessary from the very beginning and not initially part of any settlement negotiation (*See Affidavit, Exhibit 1*). The lack of follow through on this Backman promise is admissible as a failure of the Trustee and his Counsel to perform their duties with due diligence.

Michael Levy drove Xyience into and through bankruptcy with intimate knowledge of the fraudulent activities involved in the process. His activities will be thoroughly discussed in new affidavits Bergeron intends to file if given the opportunity to amend the Rule 9011 motion. Levy's literal and figurative signature is all over the fraud in this case, and Bergeron will prove this in his amended motion and associated affidavits.

Bergeron plans to seek and secure affidavits from many more shareholders in the 90-day period of leave he requests. These include shareholders that only recently stepped forward and/or were identified as decision-makers for large Xyience shareholders. The $150 million damage amount will not be altered, and the request that the bulk of any favorable judgment go to Xyience

shareholders will be retained in the amended version. It is this class of individuals and entities holding shares prior to bankruptcy and the Fertitta Enterprises-driven fraud who suffered the most due to the bankruptcy case's perpetration. The bankruptcy was made easier to accomplish, and the shareholders were easier to sway because Bergeron was discredited with this frivolous case, thus the Rule 9011 sanctions motion serves as much more than any ordinary sanctions motion. The timing of the bankruptcy and threat of cessation of operations of Xyience initiated by the Fertitta Enterprises officials and company plants to give them the primary lien position is such that crucial moves were only made after an injunction was secured against Bergeron. Rule 9011 serves additionally as an abuse of process claim Bergeron is bringing against the culpable parties for initiating suit against him and pursuing a bankruptcy scheme they knew to be fraudulent.

The extreme and offensive abuse of process involved is extraordinary in scope and volume, and there are multiple courts involved, various firms and lawyers, and multiple corporations and entities. It is a daunting amount of work for one man to accomplish, and thus Bergeron requests a period of 90 days to review and re-dedicate himself to the process that has been completely stalled for almost a full year. This is despite several outstanding motions yet to be heard or decided upon by the sitting judge on the case.

Since Bergeron presented his amended Rule 9011 motion, other shareholders have come forward and expressed interest in writing affidavits about what they were told and/or not told about their investments when Fertitta Enterprises fraudulently secured the first lien position over the company. Bergeron also requires leave to re-submit affidavits from people who already volunteered previous affidavits. The renewing of these affidavits would account for conditions these shareholders have experienced over the passage of time without any promise of recovery. Those who wrote initial affidavits have expressed a willingness to submit entirely new sworn statements fully describing the representative losses these individuals have experienced.

This testimony comes from a general class of investors not otherwise represented in the bankruptcy process and directly in line for sanctions awards (see legal analysis below). These are the parties who were most severely injured in the fraudulent bankruptcy and because of the frivolous prosecution of the estate's case against Bergeron.

Bergeron's actions throughout these proceedings have been righteous, proper and above and beyond his duties as an investigative journalist. Bergeron has at all times in this case struggled

against the odds to provide some fair relief to the burned shareholders who have no other attorney or individual waging any other fight for them to obtain that recovery. From the first indications of fraud at the company to the current conditions where the shareholders have virtually no voice other than Bergeron's in the proceedings, his role in this case has always been to protect the company and its rightful owners from further damage caused by this massive and ongoing impropriety.

Granting Bergeron leave to amend the sanctions motion is proper under the circumstances due to the need to add new evidence and new parties who could be subject to sanctions. Bergeron also plans to reference evidence provided by Backman regarding their common adversaries. These new pieces of evidence obtained by Backman hit the docket long after Bergeron's most recent sanctions motion in the adversary proceeding. Specific exhibits entered onto the docket by Backman include communications indicating the Fertitta Enterprises lawyers made company officials fully aware of their fiduciary duties to shareholders that they would eventually ignore (see adversary case #09-1402-MKN, docket #54, Exhibit M).

Backman's case files consistently point out the same transgressions perpetrated by the same "usual suspects" Bergeron has been telling this bankruptcy court about since the very beginning of his involvement in this case. The Fertitta family involvement in this case, which was not coincidental by any means, led a group of co-conspirators to perpetrate the bankruptcy on their own terms and take advantage of a dying company to line their own pockets. This fraudulent scheme operated from the top down, leading many involved to act in a manner that makes it blatantly obvious this was a climate of official and sanctioned corruption.

Bergeron will provide evidence of this corruption on many levels. He will also provide evidence showing the devastating impact this corrupt behavior had on earnest shareholders who were duped by Fertitta Enterprises' promise to prevent bankruptcy rather than initiate it, which is what they ultimately did and planned to do all along.

As the liquidation attorney prosecutes his own adversary cases and settles claims designed to appease creditors and recover monies owed, parties still potentially liable for this outstanding sanctions request such as Fennemore, Craig P.C., Attorney Laurel Davis, Director John Mowbray, and Attorney Jon Pearson have had full compensation for their services approved already, even those services provided to prosecute the ongoing frivolous case against Bergeron.

The evidence shows these attorneys and this firm were forewarned and given plenty of

incentive to look deeper into the case and discover it was all a farce. These attorneys and this firm refused to investigate the facts, ignored the truth, and simply filed joinders to many of the Fertitta Enterprises motions in the case to avoid having to do their own work on the estate's behalf. They were all paid more than adequate wages for perpetrating the frivolous case against Bergeron to the detriment of justice and with the knowledge that such behavior would ultimately damage the Estate and waste the Estate's resources.

Furthermore, there is evidence in the very billing statements Fennemore Craig, P.C. attorneys filed with this court, that they colluded with the initiators of this fraud from day one. The one moving cog that connects all the players are these financial statements, indicating calls and communications with all the particulars. (See Core Bankruptcy Case 08-10474-mkn Doc. 198 & Exhibits, Doc. 451 & Exhibits)

If an out of town lawyer (Backman) and a pro-se representative (Bergeron) from the other side of the country could detect and prove fraud and collusion, why couldn't the Las-Vegas based attorneys on the front lines? The answer is because they were willfully doing the dirty work for their clients and operating as hired guns, collecting hefty billable hours for perpetuating lies. These attorneys engaged in and furthered a fraudulent bankruptcy scheme instead of raising red flags to stop it. Backman had a chance to call them on it and instead chose to coordinate his efforts with these same attorneys who perpetrated the bankruptcy fraud he is now forced to try to make sense of.

Because it is in some ways necessary for these lawyers to work closely with the liquidation trustee's office, Bergeron's motion is the only such request to hold these individuals and their firm responsible for their egregious transgressions and waste of the bankruptcy court's time. The evidence of their abuses of process rises above some of the rest of the accused parties due to their being in a much better position to know better and to facilitate the abuses of process within the courts.

Bergeron must also amend the motion to reflect the fact that Attorney Jon Pearson is no longer a Fennemore, Craig P.C. employee and now works for Ballard Spahr, LLP at 100 North City Parkway, Suite 1750, Las Vegas, Nevada 89106-4617. A copy of this pleading will be served on him at that address.

Bergeron will also amend the sanctions request by providing a formal breakdown of how the damages should be applied to each party. He will provide accurate records from the bankruptcy proving exactly how much Fennemore, Craig P.C. and the firm's attorneys were compensated for

work done on Bergeron's case, and he will make specific requests for exact suggested recovery amounts against all other attorneys, individuals and entities that carry on in the amended motion.

Bergeron will additionally provide research as to other historic sanctions awards in the same vein and appeals cases that prove these are the perfect circumstances for 9011 and 105 sanctions to apply. Bergeron will also justify the extremely large damage amount requested due to the severe nature of the multiple abuses of process that took place under the direction and control of Fertitta Enterprises principals, their partners and plants, and multiple executives, lawyers, and legal professionals.

**LEGAL ANALYSIS:**

It is clear that "[a ] pro se litigant must be given leave to amend his or her complaint unless it is 'absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Noll* v. *Carlson*, 809 F.2d 1446, 48 (9th Cir.'87) (quoting *Broughton* v. *Cutter Labs.*, 622 F.2d 458, 60 (9th Cir.'80)). The major deficiency of the motion in question is it is not specific enough and needs amendment to reflect current events and developments in research. Leave is absolutely necessary in this regard and also would accomplish the curing of other deficiencies such as previously challenged affidavits and additional supporting affidavits that could also be secured during the same leave period.

Bergeron recently communicated with parties who have intimate knowledge about the level of support given to the Fertittas by the Maskatiya family and the intricate involvement of the Global Cash Access parties in previous fraud prior to engaging in the lien agreement with Xyience and then the forced Bankruptcy. This background needs to be part of the case moving forward. Exhibit 2 to the attached affidavit in support of this motion also outlines other allegations regarding Maskatiya and his associates engaged in active fraud.

Additionally, Bergeron has been given no indication that the initial Rule 9011 Sanctions Motion will ever be ruled on. It serves justice to allow an amendment.

Rule 15(a) of the Federal Rules of Civil Procedure provides that a party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served. 'Otherwise a party may amend the party's pleading only by leave of court or by written consent of the

adverse party; and leave shall be freely given when justice so requires.' Fed.R.Civ.P. 15(a). Determining whether to give leave of court requires an exercise of discretion by the trial court. The exercise of that discretion is of course not unfettered, and the rule itself makes clear that leave shall be freely given when justice so requires. Unless a procedural matter is importantly related to an area of this court's exclusive jurisdiction, as a matter of convenience for district judges we will usually be guided by the views of the circuit in which the trial court sits with regard to general procedural issues. In re *Innotron Diagnostics*, 800 F.2d 1077, 80 n.3, 231 USPQ 178, 180 n.3 (Fed. Cir.'86); *Panduit Corp.* v. *All States Plastic Mfg. Co., Inc.*, 744 F.2d 1564, 223 USPQ 465 (Fed. Cir.'84). In this case, that is the Ninth Circuit.

The Ninth Circuit has made clear that '[i]n exercising its discretion, 'a court must be guided by the underlying purpose of Rule 15 -- to facilitate decision on the merits rather than on the pleadings or technicalities," *Leighton*, 833 F.2d at 186, quoting *U.S.* v. *Webb*, 655 F.2d 977, 79 (9th Cir.'81).

The Ninth Circuit has articulated four concerns it brings to the review of a trial court's exercise of discretion regarding motions to amend a pleading. 'These are: bad faith, undue delay, prejudice to the opposing party, and futility of amendment.' *Leighton*, at 186, citing *Loehr* v. *Ventura County Community College Dist.*, 743 F.2d 1310, 19 (9th Cir.'84), and *Howey* v. *United States*, 481 F.2d 1187, 90 (9th Cir.'73).

This motion is taken in good faith, supported by affidavit. This is not a matter of undue delay, since this motion is in part being filed in response to the Court's delay in deciding the initial motion.

There is no prejudice to the opposing party involved in allowing the motion to be amended, as no hearing has been held, and a new briefing period would also be necessary in this context. No decision has been made on the outstanding motion. Judge Nakagawa has taken no action to make this decision or even announce whether or not a hearing will be held on the matter. There is no reason to believe the amendment will prejudice any of those parties named as adversaries. All parties involved already in the initial motion are certainly aware the matter is still pending. Proper service of the amended pleading and this motion will be accomplished for all already-named parties, all parties to be named or who may potentially be named will also be notified of this motion, and no prejudice will apply.

In exercising its discretion, this circuit requires that district courts grant leave to amend with

"extreme liberality." *Morongo Band of Mission Indians* v. *Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). The party opposing a motion for leave to amend bears the burden of demonstrating that a "substantial reason exists to deny leave to amend." *Shipner* v. Eastern Air Lines, 868 F.2d 401, 407 (11th Cir. 1989).

SANCTIONS LAW APPLIES:

There is subsequent controlling authority on the issue of sanctions against parties in *Lockary v. Kayfetz*, 974 F.2d 1166 (9th Cir.1992), cert. denied sub nom. *Pacific Legal Foundation* v. *Kayfetz*, 508 U.S. 931, 113 S.Ct. 2397, 124 L.Ed.2d 298 (1993), which allowed for the severe sanctioning of a party (Caldwell). In *Lockary*, the court affirmed sanctions awarded against the Pacific Legal Foundation ("PLF"), a nonprofit corporation that represented landowners, for orchestrating a frivolous lawsuit. Therefore, "[t]he district court imposed sanctions on PLF, the entity which had controlled the litigation ... and was, in the court's view, responsible for the substantial abuse of the court system." *Id.* at 1169. Although such a sanction was not possible under Rule 9011 (because PLF was neither an attorney, a party, or a signatory), the appeals court determined that it was a proper exercise of the court's inherent powers to sanction *PLF. Id.* at 1170. Sanctions can clearly be imposed against a nonparty and non-attorney under the court's inherent powers. See also *Corder* v. *Howard Johnson & Co.*, 53 F.3d 225, 232 (9th Cir.1995) (holding that courts may impose sanctions against a nonparty "to curb abusive litigation practices").

Clearly the *modus operandi* of the Fertittas and their cooperative assistants and attorneys in this scheme is to use and abuse well-paid lawyers to cover up fraudulent actions. The most significant problem facing all those victimized in the case is that the lawyers were so willing and/or able to be abused. They should have known better and acted more responsibly, but they maintained the case and made this matter that much harder to challenge by dragging the process out and delaying the adjudication of matters like Bergeron's case. All parties Bergeron requests sanctions against are culpable and deserving. Most importantly, all sanctionable parties received more than due consideration and reward for their parts in the grand scheme.

Caldwell contended that irrespective of the law of the case doctrine, the bankruptcy court improperly sanctioned him. Caldwell was sanctioned $45,000 under Rule 9011 for signing a false

Statement of Affairs and $249,389.31 under the court's inherent powers for orchestrating Rainbow's bad-faith bankruptcy. Bankruptcy courts' power to sanction derives from Bankruptcy Rule 9011. Rule 9011 allows a bankruptcy court to sanction attorneys, parties, and individuals that file bad-faith documents before the court. We review an award of sanctions under an abuse of discretion standard. *Air Separation, Inc.* v. *Underwriters at Lloyd's of London*, 45 F.3d 288, 291 (9th Cir.1995).

III. A BANKRUPTCY COURT'S INHERENT POWER TO SANCTION

The subject of inherent authority to sanction was addressed by the Supreme Court in *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). In *Chambers*, the Supreme Court held that federal district courts possess the inherent power to sanction bad-faith conduct in litigation when that conduct falls outside the scope of Federal Rule of Civil Procedure 11 or 28 U.S.C. § 1927. In Chambers, a party engaged in several years of vexatious litigation tactics in an effort to thwart the jurisdiction of the court. The district court sanctioned the defendant approximately $1 million. In affirming, the Supreme Court stated:

It has long been understood that "[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution," powers "which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." For this reason, "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."

There can be little doubt that bankruptcy courts have the inherent power to sanction vexatious conduct presented before the court. The inherent power is recognized in the statutory grant Congress has provided the bankruptcy courts. 11 U.S.C. § 105(a) states: The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

By providing that bankruptcy courts could issue orders necessary "to prevent an abuse of

process," Congress impliedly recognized that bankruptcy courts have the inherent power to sanction that *Chambers* recognized exists within Article III courts. See also In re *Courtesy Inns, Ltd.* (*Jones* v. *Bank of Santa Fe*), 40 F.3d 1084, 1089 (10th Cir.1994) ("We believe, and hold, that § 105 intended to imbue the bankruptcy courts with the inherent power recognized by the Supreme Court in *Chambers*."); In re Pace (*Havelock v. Taxel*), 159 B.R. 890, 904 (9th Cir. *BAP* 1993) (holding that § 105 grants bankruptcy courts the ability to sanction egregious conduct), aff'd in relevant part, 67 F.3d 187 (9th Cir.1995).

CONCLUSION:

There is no reason for denial of this instant motion for leave under the current circumstances that mandate said amendment. This request should be taken as both a motion to amend a pleading as well as a motion to amend a complaint since Bankruptcy Rule 9011 operates in the spirit of an abuse of process complaint. It is thus essential that this motion be granted to promote due justice.

Individuals (namely specified attorneys) who made specific moves to perpetuate and exacerbate the fraudulent bankruptcy process and prosecute the frivolous case against Bergeron will not be targeted in any other proceeding without this motion proceeding. They will otherwise not even be questioned about their role in the grand scheme if Bergeron is unable to amend his sanctions motion and follow through with a formal hearing on the motion.

Justice and due process both demand and require that this motion be granted since it is taken in good faith, it is necessary and proper under the circumstances, and it is in the interest of furthering the case and initiating recovery for the otherwise unrepresented class of shareholders totaling over 340 individuals and/or entities. (*See Case # 08-10474-MKN, Docket # 1-7*)

Bergeron would respectfully request the earliest possible hearing for this instant motion to be heard and will submit a motion to appear telephonically due to his current financial state and inability to afford to personally travel to the jurisdiction.

The purpose of the Federal Rules of Civil Procedure is to bring about the "just, speedy and inexpensive determination of every action." Fed.R.Civ.P. 1. The disregard of the provisions of these rules and of elemental principles of civil procedure reflected in this case defeats that purpose. An abuse of process claim by way of the pending sanctions motion is the best way to prosecute the

transgressions of the individuals and entities who used these bankruptcy proceedings to line their own pockets through fraud, deceit, and purposeful obfuscation. All the while they have delayed and dragged out the case against Bergeron, and this includes the current Trustee and his Counsel.

Backman has no call to protect or insulate Attorney Laurel Davis as Bergeron witnessed him do, especially not when her fingerprints are all over the fraudulent bankruptcy process. Ms. Davis and her firm assisted Mr. Omer Sattar and other perpetrators in not only engaging in a fraudulent Bankruptcy, but also ensured these "executive" plants were rewarded with 6-figure compensation even while 12 individuals were terminated at the same time due to the economic state of the company. Sattar, a Global Cash Access plant, was intimately involved in the fraud throughout the Bankruptcy and took over where Frank and Sanford left off. It was Davis' duty along with her firm's duty to investigate the case and to act to stop fraud when they saw it instead of perpetrating it and subsequently covering it up. These lawyers knew of the connections between Fertitta Enterprises officials and the UFC's ownership. These lawyers had an obligation and a sworn duty to observe the law and refuse to carry out aspects of this bankruptcy plan they knew to be motivated by fraud. Instead, they collected a paycheck and looked the other way.

Leave to amend the outstanding motion is crucial to bringing this case to a suitable conclusion that satisfies those victims who are as yet not even being considered for payment as a result of their being defrauded out of their shares in Xyience. Xyience was built by these individuals and their influx of operating capital. Fertitta Enterprises, driven by a large and organized cabal of co-conspirators, swept the company out from under the rightful owners and stole it through the forced bankruptcy.

Backman has not shown any desire to fight for the rights of these shareholders or to help this class of defrauded victims gain any significant and adequate recovery. These individuals lost retirement funds, college funds for their children, family trusts, and personal assets they invested because the perpetrators of this grand fraud lied to them about the UFC partnership being good for the value of shares. Bergeron is the only individual who can adequately fight for the recovery these individuals are due. He was silenced by the abuses of the courts and the perpetrators used that period of silence to pull off their massive multi-level fraud. His amended motion will illustrate the full picture and account for the passage of nearly a year in his ongoing investigation. He submits this request with pure intent and without any malicious purpose.

Because all deadlines for filing such important litigation covering these areas of loss and naming all the culpable individuals and entities Bergeron named have passed, the amended Rule 9011 Sanctions Motion is the only way to get the proper relief to the defrauded shareholders. Bergeron will take the opportunity to amend very seriously and work diligently to put forward a stronger, more complete picture of the fraud with a plethora of supporting documentation and evidentiary material. A hearing should then be held giving Bergeron the opportunity to cross-examine the principals and where he will subject himself to cross-examination if his adversaries wish to question him.

*DATED this 15th th day of November, 2010.*

**IN PROPER PERSON**

Rich Bergeron
PO Box 5212
Weirs Beach, NH 03247
617-209-4325
Attorney Pro-Se
Rich.Bergeron@gmail.com