UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

LAS VEGAS, NEVADA

| | |
|---|---|
| In re: XYIENCE, INCORPORATED,<br><br>Debtor. | E-Filed: 09/26/13<br><br>Case No.<br>BK-S-08-10474-MKN<br>Chapter 11 |
| XYIENCE, INCORPORATED,<br><br>Plaintiff,<br><br>vs.<br><br>RICHARD BERGERON,<br><br>Defendant. | Adversary No.<br>08-01082-MKN |

TRANSCRIPT OF PROCEEDINGS
OF
HEARING RE: AMENDED MOTION
FOR RULE 11 AND RULE 9011 SANCTIONS, NO. 136
VOLUME 1
BEFORE THE HONORABLE LLOYD KING
UNITED STATES BANKRUPTCY JUDGE

Thursday, September 19, 2013

9:30 a.m.

Court Recorder: Helen C. Smith

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

APPEARANCES:

| | |
|---|---|
| For Gregory E. Garman, Gordon Silver, Ltd., and Fertitta Enterprises: | GREGORY E. GARMAN, ESQ.<br>Gordon Silver, Ltd.<br>3960 Howard Hughes Parkway<br>Ninth Floor<br>Las Vegas, Nevada 89169 |
| For Matthew C. Zirzow: | MATTHEW C. ZIRZOW, ESQ.<br>Larson & Zirzow<br>810 South Casino Center Boulevard<br>Suite 101<br>Las Vegas, Nevada 89101 |
| For Richard Bergeron: | RICHARD BERGERON<br>In Propria Persona<br>147 Old Country Road<br>East Sandwich, Massachusetts 02537 |

(Court convened at 9:43:00 a.m.)

THE CLERK: Bankruptcy court is now in session, the Honorable Lloyd King presiding.

THE COURT: Good morning. Be seated, please.

THE CLERK: This is in the 9:30 matter, Xyience, Inc., versus Bergeron, Adversary 08-1082.

Appearances, please.

MR. GARMAN: Good morning, your Honor. Greg Garman of Gordon Silver on behalf of myself, my firm, and the Fertitta entities.

THE COURT: Good morning.

MR. ZIRZOW: Your Honor, good morning. Matt Zirzow on behalf of myself. I was formerly associated with the Gordon Silver law firm and have started by own law firm in the last four months.

THE COURT: Good morning.

Would the telephonic participants please note their appearances.

MR. BERGERON: Good morning, your Honor. Rich Bergeron, pro se.

THE COURT: Good morning, Mr. Bergeron. This is Judge King. Can you hear me all right?

MR. BERGERON: Kind of faintly, but I can make out what you're saying.

THE COURT: Is that better?

MR. BERGERON: Yes.

THE COURT: All right. This is Mr. Bergeron's amended motion for Rule 9011 sanctions against various parties. This motion was originally filed in January of 2009. It's been fully briefed for quite a while.

And I would ask you, Mr. Bergeron, if you have anything to add to what's on file?

And for all parties, if you wish to be heard on things to add, I think a quarter of an hour is sufficient time limit.

So, Mr. Bergeron, do you have anything to add to what you have filed?

MR. BERGERON: Yes, your Honor. I would first like to formally object to Mr. Garman and Mr. Zirzow being granted the ability to represent parties when they have no standing to do so. This Court --

THE COURT: Mr. Garman --

MR. BERGERON: -- previously --

THE COURT: -- (indiscernible) --

MR. BERGERON: -- denied --

THE COURT: Excuse me. Mr. Garman just said that he represented himself and his firm. He didn't claim to represent --

MR. BERGERON: Your Honor --

THE COURT: -- anyone else.

MR. BERGERON: -- he intimated at the last hearing

that he would be representing all parties to the request.

MR. GARMAN: Your Honor, I represent the Fertitta entities, and that's also --

THE COURT: That's correct.

MR. GARMAN: -- who may or may not be the subject of the sanctions motion.

THE COURT: All right. But anyone else?

MR. GARMAN: I don't think so, and let me just be clear for the record. I previously represented Defendants Adam Frank, Omer Sattar, and Kirk Sanford who settled very early in the case. They're referenced in the motion.

I don't believe they're subject or parties to the request for sanctions, but it's a little unclear to me as they certainly are referenced, but it is my understanding that the sanctions are directed at Fertitta Enterprises, myself, my firm, and Mr. Zirzow, and Judge Davis and some --

MR. BERGERON: And --

MR. GARMAN: -- others, but the parties I'm here representing are the Fertitta entities, myself, and my firm.

THE COURT: Thank you.

Mr. Zirzow?

MR. ZIRZOW: And, your Honor, just for the clarity of record, I'm just here on behalf of myself. I was formerly an employee of the Gordon Silver law firm. I'm not here on behalf

of anyone else. I just join in the previously tendered opposition. I have nothing to add.

Thank you.

THE COURT: All right. Then Mr. Garman and Mr. Zirzow may proceed with the representations that they've stated to the Court this morning.

MR. BERGERON: Your Honor, as you also know, attorneys cannot testify for their clients. I would ask you to set aside a date early next year to hold an all-encompassing final hearing which will allow me the opportunity to be in the courtroom personally for direct and cross-examination.

And the remaining defending parties who are not here today should be subject to subpoena and be asked to appear. Their testimony is the most crucial.

THE COURT: All right.

MR. BERGERON: And I have statute cases that show that attorneys are not allowed to testify for their clients. Most importantly, the United States versus Edwards from the Ninth Circuit in 1998 being the case most applicable to this Court.

THE COURT: All right. You have not -- go ahead. I'm sorry.

MR. BERGERON: Go ahead, your Honor.

THE COURT: I didn't mean to interrupt. I thought you were through.

MR. BERGERON: The Fertitta attorneys should not be allowed to testify or represent all these parties here today especially in regard to the other attorneys named in the motion.

If they are allowed and expected to represent all these parties, they ought to be able to produce all their clients at a future hearing.

I have no objection to these attorneys testifying on their own behalf today, but they simply have no basis in law to provide any disputing testimony on behalf of their so-called clients.

And, your Honor, I would formally request this hearing today be designated as a scheduling conference or a preliminary hearing to the broader hearing to be held next year.

I have reached out to multiple potential witnesses since the last hearing, and some of them were enable to appear today but would like the opportunity to appear in the future if possible.

But I would like the opportunity to at least call a few witnesses today to show cause as to why a larger hearing featuring all the sanctionable parties is absolutely necessary.

I would also suggest that opening statements be offered today. I have some crucial remarks I need to make especially in light of the Court having to strike my latest pleading.

THE COURT: All right. All of your requests are

denied, Mr. Bergeron. This is a hearing on a motion for sanctions.

The matter is fully briefed, and there was no -- when we agreed that everything was fully filed in our conference, telephone conference, leading up to this, there was no suggestion of any witnesses being called. I don't see that the counsel that--

MR. BERGERON: Your Honor --

THE COURT: -- you refer --

MR. BERGERON: Rule --

THE COURT: -- to --

MR. BERGERON: -- 401 and --

THE COURT: Will you be --

MR. BERGERON: -- 402 of the --

THE COURT: -- be quiet and --

MR. BERGERON: -- Federal Rules --

THE COURT: -- let me --

MR. BERGERON: -- of Evidence --

THE COURT: -- finish, Mr. Bergeron. The --

MR. BERGERON: Yes, your Honor.

THE COURT: -- attorneys are allowed to argue on behalf of their clients. That's what they're doing. That's proper, and there is no basis for doing anything else. So I will ask you once again, please, to state if you have anything to add to what you have already filed.

MR. BERGERON: Yes, your Honor. Your Honor, I would cite the Rules of Evidence 401 and 402 that state that all admissible evidence, all relevant evidence is admissible.

And this testimony that I request for today -- mainly, Mr. William Pite, Jr., who has just provided me recent evidence that I did not have before -- it's applicable to these proceedings, as well as Mr. Bart Donovan (sic) and Mr. Gary Nelson who are in the courtroom today. They have taken time out of their schedule to be here today, and they'd like to be heard.

THE COURT: I appreciate appearances by parties, but I'm afraid you were misinformed as to the nature of what's happening this morning. Go ahead, Mr. Bergeron.

MR. BERGERON: Well, your Honor, I'd ask you to refer to Docket No. 160 in this case filed the 24th of February, 2009.

And that document states in paragraph 5, "In the event that the Court determines that oral argument will assist in the dispositions of the submitted matters or an evidentiary hearing is required, a scheduling order shall be issued.

In the event an evidentiary hearing is required on these matters, live testimony will be required of any witness offered by any party."

THE COURT: Yes. And the problem for you, Mr. Bergeron, is that you've gone far beyond what Rule 11 is

intended to cover.

You have sought damages in huge amounts and made wide-ranging accusations none of which are relevant to Rule 11, and that is why all your requests are being denied.

MR. BERGERON: Your Honor, I ask you to take judicial notice that this is beyond Rule 11. This is asking for 105 sanctions, Section 105 sanctions, as well as Rule 9011 bankruptcy sanctions in addition to Rule 11.

THE COURT: All right. Keep going.

MR. BERGERON: And, your Honor, the Fertitta individual and Fertitta Enterprises may logically be considered the most culpable parties to sanctions since it was their potential investment in Xyience that mandated the company's frivolous lawsuit to silence me, yet, their sanctionable behavior went above and beyond advocating this case being filed in the first place.

Fertitta Enterprises' counsel also committed multiple Rule 11 and 9011 violations in this matter. Mr. Garman, Mr. Zirzow, and Gordon Silver collectively worked to compound the case filings and add needless confusion to this case in their various pleadings.

They included volumes of documents from other unrelated cases and allowed the frivolous case against me to continue unabated while they were in direct or controlling position over Xyience due to their falsely characterized (indiscernible).

Though Garman and Zirzow claim in official court documents that Fertitta Enterprises never supported Xyience's case, there's no evidence that they ever made any reasonable inquiry into the facts of the case and how their clients could be culpable in inspiring it.

They don't even include a single affidavit or declaration from any of their actual clients or representatives of Fertitta Enterprises of any kind to show that their clients were not involved in any way in pushing and fully advocating the case.

If your Honor examines the Bart Donovan (sic) and Gary Nelson affidavits I submitted with the counterclaim, these sworn statements clearly outline in paragraph 9 of each affidavit how the silencing of my reporting paved the way for the Fertitta investment that put them in control of Xyience.

Paragraph 9 of Nelson's affidavit reads, "I told Donovan that" -- it says, I quote, "I told Donovan that Dana White, Lorenzo Fertitta, and Frank Fertitta would now be willing to provide Xyience with bridge financing for an IPO since Bergeron was out of the way," unquote.

Your Honor, this affidavit describes a conversation that took place shortly after the injunction against me hit the docket of the district court, exactly eight days to be precise.

We have two very incriminating statements there. We have the words "once Bergeron is out of the way" directly connected

to the Fertittas. We also have the words "bridge financing for an IPO" as the reason for their funding.

At this point in time before the bankruptcy back in September of 2007, Xyience's founder Russell Pike was spreading the word (indiscernible) --

THE COURT: Mr. Bergeron, are you there?

Madam Clerk, we seem to have lost the connection.

THE CLERK: Yes, we have, your Honor.

Mr. Bergeron? Okay. Hold on. Mr. Bergeron?

MR. BERGERON: Yes.

THE CLERK: Okay.

THE COURT: Mr. Bergeron, this is Judge King. I'm sorry. We lost the connection a few minutes ago when you were describing information that you received about eight days after a significant event. So if you would back up to that point, please, and start again.

MR. BERGERON: Do you remember the words, your Honor --

THE COURT: Pardon?

MR. BERGERON: -- that were heard? Do you remember the last words that were heard?

THE COURT: No.

MR. BERGERON: All right. Paragraph 9 of Gary Nelson's affidavit reads, "I told Donovan that Dana White, Lorenzo Fertitta, and Frank Fertitta would now be willing to

provide Xyience with bridge financing for an IPO since Bergeron was out of the way."

Your Honor, this affidavit describes a conversation that took place shortly after the injunction against me hit the docket of the district court.

We have two very incriminating statements there. We have the words "once Bergeron is out of the way" directly connected to the Fertittas. We also have the words "bridge financing" for an IPO as the reason for their funding.

At this point before the bankruptcy back in September of 2007 -- September 6th I believe is the exact date of this conversation described by Mr. Nelson and Mr. Bart Donovan (sic) -- Xyience's founder, Russell Pike, was trying to spread the word that the Fertittas were taking the company over, but he wasn't exactly describing it in those terms. He was basically calling it bridge financing.

Now, everybody likes to blame Russell Pike for this whole mess, but the Fertittas actually had to twist Pike's arm pretty hard to get this deal done, and that obviously included being pressured to get rid of all my negative publications about Xyience.

Mr. Pike was obviously challenged and baited by the Fertittas through William Bullard to file this suit with Jamie Cogburn as his attorney.

William Bullard was already cited in the court case for

sanctions related to his disrespect for this Court's directions.

Russell's brother William Pike, Jr., was right then in the middle of all this, and he is in the courtroom here today to tell us how this all happened.

The conversation Nelson describes and Bart Donovan (sic) confirms in his similar affidavit took place, as I said, on September 6th, 2007.

This was just eight days after -- or just eight days later, I should say, a funding consent letter describing the general terms of a Fertitta financing deal went out to shareholders. The date of that was September 14th. I believe that's on the record of my documentation, too.

Also, if you look over the initial lawsuit paperwork, it clearly delineated that the suit was motivated by the fact that multiple investors refused to put money into the company until the stories I wrote were removed from the Internet.

The Fertitta financing deal was obviously one of those withheld investments the paperwork was referring to.

Mr. Nelson is here today to further verify how he learned the information he included in his affidavit.

Your Honor, even if you choose to disregard or dismiss the evidence connecting the Fertittas to the claims against me just recently dismissed by Mr. Backman, you can't ignore the fact that Attorneys Zirzow and Garman filed multiple pleadings

that simply clouded the docket and asked for illegitimate relief.

They point out in their own opposition to this motion that the prevailing party in any sanctions request is entitled to financial consideration, yet, they have not been asked to pay out of pocket for their multiple failures in asking for attorneys fees to be paid by me.

They filed their own failed petition for sanctions regarding the court recording and even attempted to invoke a filing bar against me at one point with no basis for such request and no direct evidence proving that any of their allegations against me were true.

Your Honor, if you look at the full docket of this proceeding, it portrays the fact that these Fertitta attorneys were always trying to take advantage of my lack of legal training, always trying to obscure the truth, and always making attempts to deceive this Court.

Their opposition to this motion also tries to make the false contention that the sanction claims have already been ruled on. This is obviously not true.

The Court denied a summary judgment on my initial Rule 11 motion which is by no means the same as entering a final ruling on the motion which was later amended to include Bankruptcy Rule 9011 and inherent-power sanctions.

These dishonest and (indiscernible) beyond the general

support of the case they never bothered to make reasonable inquiries about.

Fennemore Craig and their attorneys Jon Pearson and Laurel Davis requested a 60-day continuance before filing anything significant in that case.

This was sufficient enough time to conduct an adequate investigation into the fraudulent claims against me. They were obligated to (indiscernible) the claims against me, but instead they blindly continued to pursue the case against me despite the lack of any foundation or merits to the initial claims.

They filed documents clearly advocating the initial case as did all other attorneys handling the case before and after (indiscernible) and Pearson.

Attorney (indiscernible) lack of proper investigation into the claims against me could result in sanctions. He ignored my attempts (indiscernible) the case as did both Mr. Pearson and Ms. Davis. (Indiscernible) to make (indiscernible) they simply went through the motions and kept (indiscernible) --

THE COURT RECORDER: Your Honor, I'm having trouble hearing.

MR. BERGERON: (Indiscernible) quote (indiscernible) --

THE COURT: Mr. Bergeron, excuse me. This is Judge King. I don't --

MR. BERGERON: -- the liquidating trustee, not the

debtor who should make the determination whether (indiscernible) adversary case is Docket No. 190 dated 09/22 (indiscernible).

THE COURT: Mr. Bergeron, if you'd stop for a moment. We're having trouble again with our telephone connections. Can you hear me?

Madam Clerk --

(Colloquy not on the record.)

THE COURT: -- can we do anything to deal with this difficulty?

THE CLERK: Mr. Bergeron?

MR. BERGERON: Okay. Can you hear me now? Yes?

THE CLERK: Yes. We can hear you now. Did you move away from the mike --

MR. BERGERON: Okay. What was the last part --

THE CLERK: -- when --

MR. BERGERON: -- you heard? Yes.

THE COURT: Madam Reporter, could you read back the last sentence that you have from Mr. Bergeron.

THE COURT RECORDER: The last thing I was able to hear was referring to a Docket No. 190, your Honor.

THE COURT: Were you able to hear that, Mr. Bergeron?

MR. BERGERON: 190 --

THE COURT: Yes.

MR. BERGERON: -- dated 09/20 -- your Honor?

THE COURT: Yes.

MR. BERGERON: Can you hear me, your Honor?

THE COURT RECORDER: There's still a problem, your Honor. Sorry.

THE COURT: We're still having some difficulty.

Madam Clerk, should we make a new telephone connection, perhaps, or what?

THE CLERK: We can try.

THE COURT: Mr. Bergeron, we're going to --

MR. BERGERON: Yes, your Honor.

THE COURT: We're going to ring off the connection and call you back and see if we can get a better connection.

MR. BERGERON: Okay.

THE COURT: Okay.

THE CLERK: Yeah.

THE COURT: Go --

MR. BERGERON: Okay.

THE COURT: Go ahead, please, Madam Clerk.

(Colloquy not on the record.)

THE CLERK: Mr. Bergeron?

MR. BERGERON: Yes.

THE CLERK: Okay. We can hear you much better.

MR. BERGERON: All right. As I said, the quote --

THE COURT: Madam Clerk.

MR. BERGERON: -- I just read from Ms. Laurel Davis,

this is from the adversary case as Docket No. 190 dated 09/22/09. This quote can be found on page 4 on lines 16 through 19.

This statement makes no sense under the circumstances because Laurel Davis, Jon Pearson, and the Fennemore Craig firm (indiscernible) and filed no sanctions motion of their own regarding the lack of any legal foundation to my motions.

Every attorney who signs any pleadings, even a pro se party, has a duty to make a reasonable inquiry into the case. If Fennemore Craig's attorneys did their homework like Jon Backman did they would have realized that the only solution would be to drop the case against me.

Mr. Backman took very little time to arrange a meeting with me and provided me funds to travel to Illinois to facilitate a two-day meeting to discuss the case and (indiscernible). Backman did this almost as soon as he was in a position to oversee the case.

This is because he obviously did his own independent investigation which none of the lawyers before him or after him accomplished. These attorneys simply did the bidding of their clients without regard for the ethical and professional responsibilities they swore to when they became lawyers in the first place.

Unless they appear at this point or at a future hearing, there is no proof on the existing record that they investigated

any of the claims that they supported and advocated. This in itself is the perfect scenario for sanctions to apply.

The drafter of this case, your Honor, Attorney Jamie Cogburn, knew when he filed the case that the company's claims had no legal basis.

As Mr. William Pike junior can attest to here today if you'll allow his testimony, Cogburn himself considered his own injunction request against me to be a prior restraint. He even felt the case would result in some free-speech advocacy groups filing briefs supporting my position in the matter.

Every attorney who touched the case or filed any supportive pleading following Cogburn should have known it had no merits or legal basis after a reasonable inquiry.

All of these attorneys and firms were obviously aware the case was filed for an improper purpose and was meant only to silence me from my reporting on the company's troubled history.

None of these attorneys until Attorney Backman came along did anything to remedy this situation. Backman dismissed all claims without conditions. This was not a settlement.

He allowed a summary judgment motion to go forward unopposed and never disputed the counterclaim I filed in any fashion.

He also settled the (indiscernible) claim and never filed any briefing or documents supporting (indiscernible) to try to (indiscernible).

(Colloquy not on the record.)

MR. BERGERON: He never saw the case against me as an asset, and his actions proving that fact speak volumes.

As to nonparties, the case of Porter versus Howard Johnson & Company from the Ninth Circuit in 1995 is most applicable.

I cited the same case in my reply brief to the Xyience's opposition to this motion, and the Ninth Circuit Court ruled that the Court -- that Courts may impose sanctions against a nonparty to, quote, "curb abusive litigation practices," unquote. Vicarious (indiscernible) applicable under the circumstances.

A party can be held to a reasonably -- reasonable inquiry standard even though it did not sign a particular pleading. The 1991 Supreme Court case of Business Guys, Incorporated, versus Chromatic Community Enterprises, Incorporated, clearly advocates that position.

Here's a direct quote (indiscernible) stated in the opinion of that case. "That a represented party may not be required to sign a pleading does not prohibit that party from attesting to the merit of a document filed on its behalf, and the signature of an attorney or party covers the same message of certification," unquote.

Later in that same opinion O'Connor adds, "There is no public-policy reason" -- this is a quote -- "not to hold

represented parties to a reasonable inquiry standard.

The client is often better positioned to investigate the facts supporting a pleading or paper, and the fact that a represented party is less able to investigate the legal basis for a paper or pleading means only that what is objectively reasonable for a client may differ from what is objectively reasonable for an attorney," unquote.

In this case --

THE COURT: I --

MR. BERGERON: -- both the parties --

THE COURT: Excuse --

MR. BERGERON: -- and their attorneys --

THE COURT: Mr. Bergeron.

MR. BERGERON: -- I am seeking --

THE COURT: Five more minutes, please.

MR. BERGERON: In this case, both the parties and their attorneys I am seeking sanctions against advocated and/or supported a case they knew to have no factual basis or foundation in law.

Of particular relevance here, inherent power also allows a federal Court to vacate its own judgment upon proof that a fraud has been perpetrated upon the Court.

The Supreme Court cases of Hazel Atlas Glass Company versus Hartford Empire Company from 1944 and Universal Oil Products Company versus Root Refining Company from 1946 are particularly

applicable here.

The Hazel Atlas Glass case concluded that, quote, "Tampering with the administration of justice in this manner involves for more than an injury to a single litigant. It is wrong against the institution set up to protect -- and it is a wrong against the institution set up to protect and safeguard the public," unquote.

Moreover, the Universal Oil case provides that a Court has a power -- has the power to conduct an independent investigation in order to determine whether it has been the victim of fraud.

Here the most defrauded class of individual victims is the shareholder class which was excluded from the bankruptcy because of the fraudulent process by which the Fertittas initiated and executed the bankruptcy filing.

It is this class which should be given priority consideration upon an official finding of fraud as a result of such an independent Court investigation that should be undertaken.

Also, there are other precedents which provide that the attorney or attorneys seeking an improper execution of a bankruptcy protection may likewise be precluded from recovering compensation for that petition if it is found to be filed in bad faith.

Your Honor, this is an extremely complicated matter and

being very new to the whole legal process it has been an absolute nightmare for me to navigate through the paperwork in this procedure.

I have spent thousands of hours over the last six-and-a -- six-plus years since this case began doing legal research and preparing the proper documentation.

Just reviewing this case for this hearing today has taken up multiple hours that I'll never get back. I've been up for nearly 20 hours straight making sure I would be as prepared as possible for any contingency that may confront me today. This case is so complex that even I struggle to remember all the pertinent details at times.

I would ask your Honor to take judicial notice of the full weight and breadth of this case, all witness affidavits, all pieces of evidence submitted for this motion in the initial case and injunction requests filed against me in 2007.

In term is of investigating the bankruptcy fraud at the root of this case, judicial notice should also be taken of Mr. Backman's voluminous work to expose what he called a, quote, "loan-to-own scheme," unquote, which involved the bulk of the parties that I ask for sanctions against here today.

All the attorneys opposing me so far received ample payment for their services just by being in a direct position to know and/or discover through reasonable inquiry that the entire case against me was a fraud.

They have provided no evidence or testimony that disputes the claims made in the instant motion. They've offered nothing to question or disprove the multiple affidavits and exhibits associated with this motion.

There are over 60 exhibits attached to my own affidavit and various other exhibits attached to the affidavits of other witnesses.

All of these must be adequately weighed, and I hope your Honor reserves your final decision until you've had a chance to get up to speed on the entire adversary proceeding.

The recent order accepting my summary judgment request on the counterclaim and dismissing the claims against me are crucial.

That order is proof beyond a reasonable doubt that there was nothing for the trustee to prosecute against me and nothing the estate could muster in defense regarding my case against Xyience. This was an indefensible case from the start.

Your Honor, you said yourself at the last hearing that this case has been going on too long. For someone who's only been in position to rule on this adversary proceeding for a tiny portion of its progression through the courts, that's saying something.

I've been dealing with these matters more than six years. It all started back in July of 2007 in Las Vegas district court. I've seen --

THE COURT: Well --

MR. BERGERON: -- three --

THE COURT: One --

MR. BERGERON: -- Judges --

THE COURT: One minute --

MR. BERGERON: -- oversee this case.

THE COURT: -- Mr. Bergeron.

MR. BERGERON: And I've had to prepare and review hundreds of docket entries. Since the bankruptcy took root, hundreds of (indiscernible) shareholders have been experiencing the ill effects more with each passing day. Their losses resulted directly from the behavior of the parties I seek sanctions against here today.

As far as my standing to be personally granted relief on their behalf, I realize that may not be appropriate under the circumstances.

Still, I do know the law supports a Court initiating an independent investigation into a situation like this especially where some of the parties accused have been sanctioned already in the core case. These folks absolutely deserve relief based on fraud perpetrated against them by the named parties in this motion.

Your Honor, I ask you here today to imagine what these people have to go through because of what these co-conspirators did to steal and bankrupt this company.

Imagine your life savings evaporating overnight not because some unforeseen accident happened or someone had bad luck. Imagine it was done by people who didn't need the money, people who were confident they would never be punished for stealing it. It was just a way for them to make more money. That's all.

Imagine how you would feel. The years turned to decades, and you had to think he have day about the fact that those people stole your money and got away with it. In some ways that's worse than losing the money itself.

This was no accident. In this case, it was all preplanned, and all the shareholder money was basically wrapped in a neat bow and handed to the people who coordinated the sham bankruptcy from the start.

The culpable party that I've named in this instant motion only began to take the steps to execute this fraudulent bankruptcy scheme after Xyience secured an injunction against me in the Las Vegas district court based upon false pretenses and junk law.

There's been no real accountability for the behavior of the parties I have named, and the one way to make sure the lesson is learned is to hand down a judgment that makes a real statement showing that the courts frown upon this abusive behavior particularly that that involves the involved attorneys.

Your Honor, I would able to get most of my work done to investigate this case with a phone and a computer. I also conducted face-to-face interviews with key principals during the time I was in Las Vegas. An official investigation with some real resources behind it could uncover much more, and it's all there to find.

The blueprints for such an investigation are already laid out over the course of my case and the trustee counsel's. This Court simply --

THE COURT: You --

MR. BERGERON: -- has to step up and act to initiate the investigation or task a federal agency or special prosecutor with accomplishing such an investigation.

THE COURT: All right. Your time is --

MR. BERGERON: As to any culpability --

THE COURT: Your time is up --

MR. BERGERON: -- for sanctions --

THE COURT: -- Mr. Bergeron.

Thank you.

Mr. Garman, did you wish to be heard?

MR. GARMAN: Yes, your Honor. Your Honor, I will try and be brief, but I think I can do this in five or six minutes, but I do fully expect an appeal and the desire to make a certain level of a record.

Your Honor, I think it's very important for us to start

from the proposition that this is a motion for sanctions under Rule 11 and Section 105 brought in an adversary proceeding to which we are not a party and not the prosecuting party.

Much has been made today about a lawyer named Jamie Cogburn who represented on a prepetition basis the debtor in this case. I will represent to the Court I've never met Jamie Cogburn to the best of my knowledge or ever spoke with Mr. Cogburn to the best of my knowledge. I have in no way nor have any of my clients ever been a moving party or prosecuting party in the case at hand.

Generally summarizing a response to the arguments that were made, almost all of them circle around Mr. Bergeron's discomfort with the absolute-priority rule and that shareholders didn't receive anything in this case.

It's not I. It was Congress who set forth the distribution scheme in which creditors must be paid in full prior to shareholders receiving anything.

Laurel Davis now Judge Davis was the debtor's counsel in this case who successfully confirmed a plan of reorganization, a plan which Mr. Bergeron attempted post confirmation to revoke a confirmation order to.

Judge Nakagawa fully heard that. I believe it was Judge Nakagawa who fully heard that. Nonetheless, it was denied.

MR. BERGERON: On a technicality, your Honor.

MR. GARMAN: And I have four arguments that I think are essential to highlight. Mr. Bergeron asked for $150,000,000 in damages of which he'd like 1.5 million to go to him.

As set forth in our pleadings, pro se litigants are not entitled to recover costs or attorneys fees as he has sought to do. Our points and authorities are clear and explicit --

MR. BERGERON: Your Honor, I object. It's -- it's --

MR. GARMAN: It --

MR. BERGERON: -- attorneys fees not costs as well. I'd ask you to cite a --

MR. GARMAN: Number --

MR. BERGERON: -- a precedent --

MR. GARMAN: Number --

MR. BERGERON: -- case for --

THE COURT: Please --

MR. BERGERON: -- costs.

THE COURT: Please --

MR. BERGERON: I believe it's --

THE COURT: Please let --

MR. GARMAN: Um-h'm.

MR. BERGERON: -- attorneys fees alone.

THE COURT: Excuse me --

MR. GARMAN: Um-h'm.

THE COURT: -- Mr. Garman.

Mr. Bergeron, please let Mr. Garman finish his argument. You'll have an opportunity to reply.

MR. GARMAN: Um-h'm. Number two --

MR. BERGERON: Yes, your Honor.

MR. GARMAN: We think we've set forth more than sufficient evidence to support the well-founded black-letter law that by way of sanctions you can't get consequential damages. They're all measured here in the loss of the share value. He wants I believe 2 or $3 per share.

Number three, it's very important for you to note that if you refer to Docket 104, these are allegations that were fully dealt with and denied by way of a previous motion.

Mr. Bergeron makes the -- advances the argument here today that he's uncovered new evidence. There are mechanisms under Rule 56 and others if new evidence is found to go back and seek to amend a prior ruling, but Docket 104 we believe fully dealt with these issues.

And, finally, in number four -- I highlighted on this earlier -- but nonparties can't be liable for damages in this case.

And it's very clear that the nexus of these damages in this case is related to an adversary proceeding brought on a prepetition basis, then continued to be prosecuted by the debtor to which we are not parties and most particularly we are not plaintiffs.

Your Honor, this has gone on five years now that --

MR. BERGERON: Six.

MR. GARMAN: It's gone on for me I believe five years now that I have been sued by Mr. Bergeron for defamation. I have been sued for a violation of his First Amendment rights. I have been sued by him for tortious interference with economic advantage, and I think there was another claim I was sued for that I don't recall off the top of my head.

You've heard testimony from Mr. Bergeron that was the basis for me obtaining both an injunction from this Court and a restraining order in a civil case.

You heard testimony live from Mr. Bergeron in other proceedings that he had admitted to hacking into the company's servers and most importantly threatening Mr. Bullard's children.

You heard testimony from me at a previous hearing that I feel threatened by Mr. Bergeron's actions. He's attempted to disqualify Judge Nakagawa. He appeals everything to no end.

I have no confidence notwithstanding the fact that I hope this adversary proceeding will be closed today that this will end my interaction with Mr. Bergeron going forward.

I have to live with the Web sites he puts up about me, and I have to live with the statements he makes, but I don't have to live with an abuse of the judicial process I don't believe.

This is the binder of what I think was filed in support of

today's hearing dating back to affidavits that were stricken, supplements, amendments, a variety of fugitive pleadings. This costs tens if not hundreds of thousands of dollars of Court time and my time, my client's time.

And way back in February of 2009 for a very limited subset of this, I filed Docket 150 and the accompanying declaration myself, and I'll note for the record that the only declaration that was submitted by my side in support of the opposition was a very brief declaration of myself which is Docket 151.

Docket 151, totals literally four pages including the traditional I'm over 18, mentally competent, and the like, where I work.

The only substantive paragraph is that in support of our countermotion for very limited attorneys fees, paragraph 4 indicates that we seek $11,301 in sanctions for having to deal with this based upon 27 .3 hours, and I submit redacted billing statements to that effect.

It might be futile. I will represent to the Court it's unlikely I could ever collect them. I do genuinely and seriously ask for counter sanctions based upon the frivolity of what has been put before you because at some point in time I believe there will be tools that are needed in order to deal with antics that take place in many instances outside of purview of this Court.

I have every hope and expectation that at the conclusion of

today this adversary will finally be closed once and for all. However, I lack confidence that this is the last I will hear of this and this is the last I will hear my name drug through the mud, that of my firm, and most importantly that of my client who the reason this is so important -- and I want to highlight one more time for you.

The reason this is so important to my client, these spurious allegations that are made against them, is they live in the most regulated industry that there can be, and these are occasionally picked up in the newspaper. These are occasionally picked up by others, and my clients have had to respond to them to gaming regulators and other -- in this and other jurisdictions based upon allegations that are made.

The continued dragging of my client's name through the mud on a personal level is one thing, but it jeopardizes their economic businesses to the extent that even though they are frivolous they have to be responded to, and that accounts for meaningful amounts of time and expense. And at some point in time, this needs to come to an end.

And so I certainly rest upon the pleadings that we filed some number of years ago and submit them to you for decision on this matter. I just wanted to highlight those few important I think additions of things that have been emphasized since 2009 when we filed these pleadings.

And while the Court may be inclined to just simply resolve

this matter once and for all, I do believe that under the circumstances my request in Docket 150 as evidenced by the declaration in Docket 151 both of which were filed in February of 2009 supporting the imposition of sanctions against Mr. Bergeron in the amount of $11,301 are appropriate under the circumstances.

Unless the Court has any questions, I have nothing further to add.

THE COURT: I have no questions.

MR. GARMAN: Thank you, your Honor.

THE COURT: Mr. Zirzow?

MR. ZIRZOW: Your Honor, I appear today because I left the Gordon Silver law firm in May, and while I was at the Gordon Silver law firm, I certainly participated and I believe signed the opposition, Docket No. 150.

Just for purposes of the record, your Honor, I would have filed a joinder if the Court would have allowed other filings. I don't want anybody to be prejudiced by my leaving the firm. I still would join in the arguments of Mr. Garman and Docket No. 150.

And just for clarity of the record, Mr. Bergeron counterclaimed against my previous clients. They did not sue him. He lost every single matter he filed on the merits, and his sanctions motion now is an attempt to --

MR. BERGERON: Your Honor, I object. It's

technicalities more than anything.

MR. ZIRZOW: Your Honor, he lost every matter on the merits, and so he's trying to accomplish by way of a sanctions motion relief that he could not recover on the merits.

Your Honor, Mr. Bergeron's counterclaims were dismissed for failure to state a claim. They did not proceed any further, and, actually, after he was allowed an opportunity to amend.

So you cannot accomplish by way of a sanctions motion what you could not accomplish on the merits. In fact, the claims didn't even survive a 12(b)(6) motion.

Your Honor, Mr. Bergeron asked for the introduction of evidence. There are legal reasons articulated in Docket 150 of the opposition as to why he legally is not entitled to recover sanctions. You don't need to get to the evidence. There are specific legal reasons most of which were articulated by Mr. Garman and most importantly that you cannot recover consequential damages.

After losing the claims on the merits, you cannot recover consequential damages via a sanctions motion, and that is exactly what he's trying to do. There's the additional problem of he was never a shareholder. He has no standing to recover those.

Your Honor, this case has been an incredible waste of judicial resources and an incredible waste of attorney time. The allegations are utterly meritless just like the merits

claims were dismissed on summary judgment. There's simply no basis for any sanctions and, if anything, counter sanctions are appropriate.

Thank you.

THE COURT: All right.

Mr. Bergeron, this is Judge King. You may have ten minutes to respond if you wish to do so.

MR. BERGERON: Your Honor, no general sanctions request filed on Mr. Garman's attorneys -- any of the attorneys or any of his parties he represents or Mr. Zirzow represented at the time has ever been filed or requested before today.

No other legal claims on behalf of Mr. Garman, Mr. Zirzow, or any of their clients have been filed to challenge the validity of any report I have ever published.

There is absolutely no definitive evidence to show I did not initiate a reasonable inquiry into the facts of this case and the legal background.

On the contrary, my investigation was deemed too intrusive and resulted in a restraining order filed against me for simply asking too many questions.

I didn't threaten anyone. I mentioned Mr. Bullard's children in a conversation that I left on his answering machine. It was construed as a threat, and it was not. In reality, I was trying too hard to investigate this case, if anything.

The fact that I was able to keep up with an at-Bar (phonetic) attorney or groups of at-Bar attorneys for so many years in this litigation is proof positive that I did an incredible amount of research into the law and the applicable procedure of the different Courts I appeared before.

And nothing indicates I'm asking for any consequential damages in this case. I have changed my position after your Honor's ruling as far as the standing.

I agree that traditionally in the bankruptcy courts I have no standing to ask for personal relief on my behalf to be granted to the shareholders.

What I'm asking here for today and what I have framed in the legal framework properly is for my own sanctions to be applied to me, and there's nothing in the law that they've cited definitively that says that a pro se party cannot collect sanctions.

The only thing in the law that supports any of their arguments is that I cannot obtain legal fees. Sanctions can be anything. Sanction are basically written in every sanctions rule as anything -- any payments sufficient enough to deter the repeated action of the abusive behavior.

The $150,000,000 request I'm asking now be handled by an independent investigation by the Court. They can come up with their own number, but $150,000,000 is just my suggestion, and it always has been.

The reality is this case cost the Court time and money, too. The Court itself is entitled to relief for this abuse Mr. Garman and Mr. Zirzow and the parties they purport to represent today are long overdue to pay for.

The complete fraud they executed on this Court is wide ranging, and that fraud has ruined lives that need to be made whole. One of those lives is my own.

And I honestly see my own personal 1.5-million-dollar request for relief as generous under the circumstances considering how long this case took me to prosecute and to support and to research and to become my own attorney. It's just a numerable amount of hours I can never get back.

And, your Honor, this case never should have seen the light of day of a courtroom. It never should have been filed in the first place. It never had any basis in fact.

And these attorneys can tell you all they want that their clients never supported the case, but they have no single affidavit or declaration from their clients that verifies that or authenticates that argument, nothing. And attorneys, as I said, cannot testify for their clients. It's not possible.

So any pleadings that they've attached, affidavits or declarations of their own testimony, it does not substitute for the testimony of their clients which is why there should be a further evidentiary hearing which allows these parties to appear. Otherwise, there should be a default judgment issued

against those parties who are not represented here today.

And, your Honor, I have spoken or I met with dozens of victims of this complex scheme. I've had to do an amazing amount of research with no discovery tools at my disposal. If I had them at my disposal I wouldn't know how to use them.

I've never attended a single day of law school. I've just talked to the real people at ground zero this company's orchestrated collapse.

I've heard of the sacrifices they had to make to deal with losing their investment in this company which the Fertittas have swept away and made their own, a perfect companion to the ultimate fighting championship.

This is no everyday scam. This is a very well-planned and executed fraud, and it's been hidden by the very artful and competent attorneys that are here today.

I respect Mr. Garman and Mr. Zirzow more than they know, and I am also confident enough to say they never lifted a finger to find the real truth behind this case because that was never in their client's best interest or their own.

Technicalities and a permeating anti-pro-se bias have driven this case far too long, your Honor. You admitted yourself you didn't even read most of my pleadings.

I come to you today as a man who always came to this Court as a sincere player in the process. I've learned to play the game as much as I don't like the rules.

However, my first duty is always as a writer. There's far more people out there who read books and watch documentaries than there are folks who spend their time reading court decisions.

The real story is already out there, already written. The Fertittas never stood by Xyience's case against me on the record and supposedly never advocated or supported it at any junction. That's a complete lie.

They never filed any civil action or any other court -- in any other court regarding my stories on them. That is as good as an admission that they've always known I was never guilty of defamation, yet, they supported and paid for the case against me and inspired Russell Pike to get it filed before they would put a penny into the company.

There are over 80 docket items on the district court case alone that gave rise to this adversary proceeding. Once the Fertitta Enterprises group put themselves in chief lien position over the company, they essentially resumed responsibility for funding and furthering this suit against me that the principals of that company inspired and manifested through friendly associates like Kirk Sanford and his friend Adam Frank who were both CEOs at the time. They were also driven by the Fertitta investment or supposed investment.

Both of them came to the table with a wide array of scandalous background of their own and court experience in

other fraudulent cases.

It all comes down to who you trust is telling the truth here, your Honor. Do you trust the person who filled the docket with as much documentation, precedent cases, and exhibits as possible or do you trust the (indiscernible) lawyers who have been at this for years and will be at it for the rest of their careers?

If you trust the professionals to have to ask where is the evidence, where is their evidence, if you trust these professionals, you have to ask where their evidence is.

Where is their conflicting client testimony? There aren't enough technicalities in the world to erase the fact that none of the defendants here today ever bothered to make a move to right something they new was wrong.

My case should have been dismissed by Kirk Sanford after he had me flown to New York City for a meeting. My travel was paid for by a Xyience check just as the company was losing money hand over fist.

They were throwing money away just for a chance to get me to align with them in their campaign against Russell Pike. They still needed me to support the company at that point rather than tell the truth about what was going on.

I understand now why attorneys get paid so much, your Honor. It is difficult work. And for me it's proven to be more stressful than any other work I have ever done.

Knowing I was targeted for no good reason but to shut me up adds a certain passion for me to these proceedings. Nothing carried me this far more than the concept of truth always shines through in the end.

If it is the end for me, your Honor, the truth and the record I presented speak volumes. It's a case record that could fill a dozen filing cabinets.

Real lawyers need to dive into these issues now and do something about all these nuggets of incriminating truths that reveal a sweeping pattern of fraud initiated by the sanctionable parties here.

A real prosecutor or a federal agency needs to take a hard look at the truth Mr. Backman and I discovered over the course of our years looking for and exposing the truth the opposition continues to try to hide about this bankruptcy.

Your Honor, you have the supreme power under Rule 105 to make a monumental judgment in this motion. It would be a slap on the wrist to let these people walk away splitting the 1.5 million dollar in relief I have requested across all named parties.

The rule on sanctions mandates that the sanction be enough to deter repetition of such acts of abuse that give rise to sanction requests.

I ask you to make your open determination of what the ultimate relief amount should be as is your right and privilege

as a bankruptcy Judge.

I ask you to define what putting an innocent man through six years of endless frustration is worth. I also ask you not to let the buck stop with my personal involvement with this case. This case is worthy of a much deeper examination of the facts.

For every person who provided me an affidavit for this case, there are dozens upon dozens of people who are standing in the same shoes and dealing with their own brand of financial stress wondering where the money to replace their incredible losses will come from.

The shareholders are the only class of people shut out of any chance of relief in this whole process. And if the Court finds they were defrauded, they should be given some kind of pro-share valuation for what they've lost after an independent Court examination into what really happened here which I have fully cited is possible under the law.

Your alternative is to let the appeals court decide all this as I will not rest until the evidence I have presented is taken seriously and acted upon in a manner I know this Court is capable of.

THE COURT: Thank you, Mr. Bergeron.

Is the matter submitted?

MR. GARMAN: Yes, your Honor.

THE COURT: All right. The matter is submitted.

This motion was originally filed on January 21st of 2009. An earlier motion by Mr. Bergeron for sanctions was denied by order. It --

MR. BERGERON: I'm having a hard time hearing you, your Honor.

THE COURT: I'm sorry. An earlier motion filed by Mr. Bergeron concerning Rule 11 was filed, and that was denied by order entered in this court on October 23rd, 2008.

MR. BERGERON: Your Honor, the initial rule of that motion was never denied. It was a summary judgment claim on that motion.

THE COURT: Just a moment.

MR. BERGERON: And that was included in the request to suspend the bankruptcy, and that was solely denied on a technicality because I did not serve all creditors.

THE COURT: The order that was filed on October 23rd, 2008 --

MR. BERGERON: I can't hear anything.

THE COURT: -- says that at page 2, starting at line 6, "It is hereby ordered that Defendant and Counterclaimant Richard Bergeron's emergency motion to suspend bankruptcy proceedings pending investigation --

MR. BERGERON: Your Honor, I'm not hearing you.

THE COURT: -- is further -- it is hereby ordered that Defendant and Counterclaimant Richard Bergeron's emergency

motion to suspend bankruptcy proceedings pending investigation of fraudulent bankruptcy filing and motion for summary judgment on Defendant's Rule 11 motion, motion to dismiss, and counterclaims be in the same are hereby denied." Now, I'm not going into the reasons and so forth. All I stated was that the prior motion was denied.

MR. BERGERON: And that was for a summary judgment not for the rule motion -- Rule 11 motion itself. It was for the summary-judgment issue alone. (Indiscernible) --

THE COURT: Now, Mr. Bergeron is very concerned about the rights of the shareholders, the former shareholders in this Xyience matter.

The rights of shareholders have been fully determined and fixed by the order confirming this debtor's plan of reorganization. That order is Docket No. 321 entered on October 23rd, 2008.

The shareholders had a full opportunity to participate in the reorganization if they wished to do so. They were given full notice of everything that was going on. Mr. Bergeron is not a shareholder. He is not an attorney. He had no standing to --

MR. BERGERON: Your Honor --

THE COURT: -- represent the --

MR. BERGERON: -- may I ask that we --

THE COURT: -- shareholders --

MR. BERGERON: -- reconnect again? You're fading --

THE COURT: No. You may --

MR. BERGERON: -- in and out.

THE COURT: What?

MR. BERGERON: May I ask that we reconnect the line again? You're fading in and out. I can't hear what you're saying.

THE COURT: Is this mike -- I'll try switching microphones, Mr. Bergeron. Is this one any better?

MR. BERGERON: Yes, much better.

THE COURT: All right. Thank you. Then let me rearrange my papers here. All right.

I was talking about the rights of shareholders having been determined in the plan of reorganization. As Mr. Garman stated, he's not the one who proposed the plan.

But what's called the absolute-priority rule in bankruptcy determines the sequence in which parties get paid, and we start with secured creditors, priority creditors, general unsecured creditors. All those creditors have to be paid in full before shareholders, the equity holders, are entitled to anything.

That didn't happen in this case, and the right -- it was determined that the shareholders were not entitled to compensation.

The shareholders themselves had an opportunity to proceed and participate in the reorganization case if they wished to do

so, but Mr. Bergeron was not a party withstanding, as has been determined, to represent the shareholders.

Now, Mr. Bergeron did meet with Mr. Backman who is counsel for the litigation trustee in this case, and Mr. Backman for the trustee whose name is Herzog did, in fact, file a lawsuit against the clients of Mr. Garman's firm, and that lawsuit was settled by -- the title of the lawsuit was Herzog versus Zyien, Z-y-i-e-n, LLC.

And that case and the claims many of which are similar to the claims that have been stated by Mr. Herzog, that matter was settled by an order entered May 22nd, 2012. That's Docket No. 695 in Adversary Proceeding 09-01402.

I'm satisfied that none of the named respondents to this adversary proceeding are guilty of any conduct sanctionable under Rule 11 or Rule 9011, and also I would deny the suggestion of independently imposing sanctions under Section 105 of the bankruptcy code. The --

MR. BERGERON: (Indiscernible) this decision.

THE COURT: Pardon?

MR. BERGERON: Can I ask you if you've reviewed the entire record of this case before coming to this decision.

THE COURT: I have reviewed this case before coming to this decision.

MR. BERGERON: You have read every document.

THE COURT: I'm not here to answer your questions,

Mr. Bergeron. I'm here to rule --

MR. BERGERON: You've admitted --

THE COURT: -- on your motion --

MR. BERGERON: -- at a prior hearing that you did not read my pleadings, your Honor. I think I'm justified to ask whether you've read the pleadings.

THE COURT: I've read what I need to read carefully to be entitled to rule on this matter. Now, please be quiet, Mr. Bergeron, while I continue to explain my ruling to you.

As I've indicated, none of the named respondents, those in court, those what are not in court, are guilty of any sanctionable conduct.

This is a complete misuse of Rule 11 and Rule 9011 by Mr. Bergeron. He says he's not seeking consequential damages, but he's seeking 150-million dollars for someone for something and a substantial amount of money for himself, and that is not appropriate.

MR. BERGERON: Based on what legal principle, your Honor, is it not appropriate?

THE COURT: Finally, Mr. Bergeron -- well, Mr. Bergeron, you are still subject to the order of this Court. For any future matters that you might wish to have in this court, you will appear personally not by telephone.

I excused you from that order for purposes of this hearing. And my reward was after we had all agreed that this was all

that was left on this hearing, in this adversary proceeding, that you filed a pleading seeking greatly to expand the scope of the matter, so that is why I am reminding you that you are still subject to that order requiring your personal appearance.

You've gone to great lengths to make unsupported accusations against counsel in this case. Mr. Garman, Mr. Zirzow, the firm of Gordon Silver are of high standing in this court and continue to be so.

And while they have requested sanctions against you, Mr. Bergeron, I am not going to award those sanctions not because I think they are undeserved but because I wish to try to bring this adversary to a conclusion.

Mr. Garman, I would ask you, please, to prepare proposed findings of fact, conclusions of law, and an order concerning this matter. That order will apply to all named respondents.

MR. GARMAN: Your Honor, would your preference be to simply incorporate your oral findings or to prepare independent findings?

THE COURT: Both, if you wish.

MR. GARMAN: Okay. Thank you, your Honor.

THE COURT: All right.

MR. BERGERON: Your Honor, I object to you not providing any of your own legal analysis on this matter. If this is an order from you, it should be your legal analysis not Mr. Garman's.

THE COURT: Does anyone else have anything to add? Apparently not. That concludes our hearing.

Thank you for your telephonic participation, Mr. Bergeron.

Madam Clerk, ring off the connection.

THE CLERK: Okay. Thank you, your Honor.

MR. GARMAN: Thank you, your Honor.

THE COURT: Okay. Thank you.

Everyone is excused.

(Court concluded at 10:45:24 a.m.)

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

/s/ Jennie Ellis 09/26/13

Jennie Ellis, Transcriptionist Date